Transcript, APLDIST, MEANSNO, SEAL

# U.S. Bankruptcy Court
## District of Colorado (Denver)
### Bankruptcy Petition #: 19–19816–EEB

|  |  |
|---|---|
| *Assigned to:* Elizabeth E. Brown | *Date filed:* 11/13/2019 |
| Chapter 7 | *Debtor discharged:* 04/12/2021 |
| Voluntary | *Deadline for objecting to discharge:* 04/20/2021 |
| Asset | *Deadline for financial mgmt. course:* 02/18/2020 |

*Debtor disposition:* Standard Discharge

**Debtor**
**Alexander Johnson**
8164 South Memphis Way
Englewood, CO 80112
ARAPAHOE–CO
SSN / ITIN: xxx–xx–4248

represented by **Jeffrey S. Brinen**
Kutner Brinen Dickey Riley, P.C.
1660 Lincoln St, Suite 1720
Denver, CO 80264
303–832–2400
**LEAD ATTORNEY**
Email: jsb@kutnerlaw.com

**Trustee**
**M. Stephen Peters**
Box 4610
Frisco, CO 80443
303–422–8501
peters@msplaw.org

represented by **Aaron J. Conrardy**
2580 W. Main Street
Suite 200
Littleton, CO 80120
303–296–1999
Fax : 303–296–7600
Email: aconrardy@wgwc–law.com

**Lindsay Riley**
Wadsworth Garber Warner Conrardy, P.C.
2580 W Main Street, Suite 200
Suite 200
Littleton, CO 80120
303–296–1999
Email: lriley@wgwc–law.com

**M. Stephen Peters**
Box 4610
Frisco, CO 80443
303–422–8501
Fax : 303–473–3118
Email: peters@msplaw.org

**U.S. Trustee**
**US Trustee**
Byron G. Rogers Federal Building
1961 Stout St.
Ste. 12–200
Denver, CO 80294
303–312–7230
USTPRegion19.DV.ECF@usdoj.gov

represented by **Paul Moss**
Byron G. Rogers Federal Building
1961 Stout St.
Ste. 12–200
Denver, CO 80294
303–312–7995
Fax : 303–312–7259
Email: Paul.Moss@usdoj.gov

| Filing Date | # | Docket Text |
|---|---|---|
| 11/13/2019 | 1 | Chapter 7 Voluntary Petition for Individual. Total Number of Creditors Uploaded: 6. filed by Jeffrey S. Brinen on behalf of Alexander Johnson. Section 521 Incomplete Filings due by 12/30/2019. (Brinen, Jeffrey) (Entered: 11/13/2019) |
| 11/25/2019 | 9 | Statement of Financial Affairs for Individual Filed by Jeffrey S. Brinen on behalf of Alexander Johnson. (Brinen, Jeffrey) (Entered: 11/25/2019) |
| 11/25/2019 | 11 | Schedule A/B: Property for Individual Filed by Jeffrey S. Brinen on behalf of Alexander Johnson (related document(s):1 Voluntary Petition−Chapter 7−case upload). (Brinen, Jeffrey) (Entered: 11/25/2019) |
| 11/25/2019 | 12 | Schedule C: Property Claimed as Exempt Filed by Jeffrey S. Brinen on behalf of Alexander Johnson (related document(s):1 Voluntary Petition−Chapter 7−case upload). (Brinen, Jeffrey) (Entered: 11/25/2019) |
| 11/25/2019 | 13 | Schedule D: Creditors having Claims Secured by Property And/Or Schedule E/F: Creditors Who Have Unsecured Claims For Individual Filed by Jeffrey S. Brinen on behalf of Alexander Johnson (related document(s):1 Voluntary Petition− Chapter 7−case upload). (Brinen, Jeffrey) (Entered: 11/25/2019) |
| 11/25/2019 | 14 | Schedule G: Executory Contracts and Unexpired Leases For Individual Filed by Jeffrey S. Brinen on behalf of Alexander Johnson (related document(s):1 Voluntary Petition− Chapter 7−case upload). (Brinen, Jeffrey) (Entered: 11/25/2019) |
| 11/25/2019 | 15 | Schedule H: For Individual Codebtors Filed by Jeffrey S. Brinen on behalf of Alexander Johnson (related document(s):1 Voluntary Petition−Chapter 7−case upload). (Brinen, Jeffrey) (Entered: 11/25/2019) |
| 11/25/2019 | 16 | Schedule I: Current Income For Individual Filed by Jeffrey S. Brinen on behalf of Alexander Johnson (related document(s):1 Voluntary Petition−Chapter 7−case upload). (Brinen, Jeffrey) (Entered: 11/25/2019) |
| 11/25/2019 | 17 | Schedule J: Current Expenditures For Individual Filed by Jeffrey S. Brinen on behalf of Alexander Johnson (related document(s):1 Voluntary Petition− Chapter 7−case upload). (Brinen, Jeffrey) (Entered: 11/25/2019) |
| 11/25/2019 | 18 | Declaration Under Penalty of Perjury for Individual Debtor's Filed by Jeffrey S. Brinen on behalf of Alexander Johnson (related document(s):1 Voluntary Petition− Chapter 7−case upload). (Brinen, Jeffrey) (Entered: 11/25/2019) |
| 11/25/2019 | 19 | Statement of Intent Filed by Jeffrey S. Brinen on behalf of Alexander Johnson. (Brinen, Jeffrey) (Entered: 11/25/2019) |
| 11/25/2019 | 20 | Chapter 7 Statement of Current Monthly Income − Form 122A−1 Filed by Jeffrey S. Brinen on behalf of Alexander Johnson. (Brinen, Jeffrey) (Entered: 11/25/2019) |
| 12/11/2019 | 25 | Amended Schedule A/B: Property for Individual Filed by Jeffrey S. Brinen on behalf of Alexander Johnson (related document(s):11 Schedule A/B). (Brinen, Jeffrey) (Entered: 12/11/2019) |

| | | | |
|---|---|---|---|
| 12/11/2019 | | 26 | Amended Schedule C: Property Claimed as Exempt Filed by Jeffrey S. Brinen on behalf of Alexander Johnson (related document(s):12 Schedule C). (Brinen, Jeffrey) (Entered: 12/11/2019) |
| 12/27/2019 | | 31 | Employee Pay Advice/Income Record, Pay Stubs, and/or No Employee Income Record Filed by Jeffrey S. Brinen on behalf of Alexander Johnson. (Brinen, Jeffrey) (Entered: 12/27/2019) |
| 02/18/2020 | | 47 | Motion to Extend Time Due To Other Reasons To File a Complaint Objecting to Discharge Under Section 727 or a Motion to Dismiss Under Section 707 Filed by Paul Moss on behalf of US Trustee. (Attachments: # 1 Proposed/Unsigned Order) (Moss, Paul) (Entered: 02/18/2020) |
| 02/18/2020 | | 48 | 9013−1.1 Notice Filed by Paul Moss on behalf of US Trustee (related document(s):47 Motion to Extend Time (Bankruptcy)).. 9013 Objections due by 3/10/2020 for 47,. (Moss, Paul) (Entered: 02/18/2020) |
| 02/18/2020 | | 52 | Motion To Seal/Restrict Public Access: Documentation in Support of Proof of Claim Filed by Joshua Sheade on behalf of Ritchie, Dillard, Davies & Johnson, P.C. (related document(s)51 Sealed Document). (Attachments: # 1 Exhibit 1 − Proposed Claim Attachment in lieu of Sealed Documents # 2 Proposed/Unsigned Order) (Sheade, Joshua) (Entered: 02/18/2020) |
| 02/19/2020 | | 54 | Order Granting Motion To File Under Seal Documentation in Support of Proof of Claim (related document(s):52 Motion To Seal/Restrict Public Access). (jss) (Entered: 02/19/2020) |
| 02/20/2020 | | 55 | Amended Schedule C: Property Claimed as Exempt Filed by Jeffrey S. Brinen on behalf of Alexander Johnson (related document(s):1 Voluntary Petition− Chapter 7−case upload, 12 Schedule C). (Brinen, Jeffrey) (Entered: 02/20/2020) |
| 03/18/2020 | | 62 | Order Granting The United States Trustees Motion To ExtendDeadlines To File A Complaint Objecting To Discharge Under 11U.S.C. § 727 Or Motion To Dismiss Under 11 U.S.C. § 707 (related document(s):47 Motion to Extend Time (Bankruptcy)). Document due by 4/20/2020 for 47, (jss) (Entered: 03/18/2020) |
| 05/01/2020 | | 74 | Motion to Convert Case From Chapter 7 To Chapter 11 Filed by Joshua Sheade on behalf of Ritchie, Dillard, Davies & Johnson, P.C. (related document(s)72 Motion To Seal/Restrict Public Access). (Attachments: # 1 Exhibits of Motion to Convert, or in the Alternative, Dismiss # 2 Proposed/Unsigned Order) (Sheade, Joshua) (Entered: 05/01/2020) |
| 06/08/2020 | | 89 | Objection Filed by Lindsay Riley on behalf of M. Stephen Peters (related document(s):68 Sealed Document, 74 Motion to Convert Case From Chapter 7 To Chapter 11). (Attachments: # 1 Certificate of Service) (Riley, Lindsay) (Entered: 06/08/2020) |
| 06/08/2020 | | 90 | Objection Filed by Jeffrey S. Brinen on behalf of Alexander Johnson (related document(s):74 Motion to Convert Case From Chapter 7 To Chapter 11, 75 Motion to Dismiss Case, 76 9013−1.1 Notice, 82 9013−1.1 Notice). (Brinen, Jeffrey) (Entered: 06/08/2020) |
| 08/13/2020 | | 91 | Certificate of Contested Matter Filed by Joshua Sheade on behalf of Ritchie, Dillard, Davies & Johnson, P.C. (related document(s):68 Sealed Document, 69 Sealed Document, 74 Motion to Convert Case From |

| | | | |
|---|---|---|---|
| | | | Chapter 7 To Chapter 11, <u>75</u> Motion to Dismiss Case, <u>77</u> Certificate of Service, <u>89</u> Objection, <u>90</u> Objection). (Sheade, Joshua) (Entered: 08/13/2020) |
| 09/01/2020 | | <u>95</u> | Minute Order. On or before October 9, 2020, the parties may file additional briefs on any legal issuesrelated to § 706(b) or § 707(b). The Court will hold a one–half day evidentiary hearing on the Motion on Monday, October26, 2020 at 9:30 a.m., in Courtroom F, United States Bankruptcy Court for the District ofColorado. The evidentiary hearing will be conducted by Zoom video conference. The Court willissue a separate order regarding procedures for the Zoom video conference and testconference.1. On or before October 13, 2020, the parties shall:a. Exchange pre–marked exhibits with one another. Defendant shall send theexhibits in care of Plaintiffs case manager. Plaintiff/Movant shall use numbers.Defendant/Respondent shall use letters. For every exhibit exceeding ten (10)pages in length, the party shall sequentially number each page of that exhibit atthe bottom of the page. Do not file the exhibits with the Court, except asprovided in paragraph 2(a)(i) below. b. File with the Court and serve on opposing party(parties) a List of Witnesses andExhibits, substantially in the form of L.B.F. 9070–1.1.2. On or before October 19, 2020, the parties shall:a. File with the Court and serve on opposing party(parties) any writtenobjections to the opposing partys exhibits.(i) If written objections are filed, the objector must attach a copy of thecontested exhibit for the Courts review, unless the nature of theobjection involves the fact that the party proffering the exhibit hasfailed to adequately identify and/or exchange it.(ii) If written objections are not filed, then all objections except as torelevancy will be deemed waived.(iii) The parties should be aware, however, that if the party offering theexhibit never refers to the exhibit either during testimony or in closingargument, then in the Courts discretion, it may not review or considerthe exhibit, despite its admission into evidence.3. After the hearing, the parties shall retain custody of their own exhibits inaccordance with Local Bankruptcy Rule 9070–1(a)(3). Parties may conduct discovery in this contested matter pursuant to L.B.R. 7026–2. (related document(s)<u>74</u> Motion to Convert Case From Chapter 7 To Chapter 11, <u>89</u> Objection, <u>90</u> Objection). Document due by 10/13/2020 for <u>89</u> and for <u>90</u> and for <u>74</u>, Document 2 due by 10/19/2020 for <u>89</u> and for <u>90</u> and for <u>74</u>, (jss) (Entered: 09/01/2020) |
| 11/24/2020 | | <u>104</u> | Support Brief or Memorandum Filed by Joshua Sheade on behalf of Ritchie, Dillard, Davies & Johnson, P.C. (related document(s):<u>74</u> Motion to Convert Case From Chapter 7 To Chapter 11, <u>75</u> Motion to Dismiss Case). (Attachments: # <u>1</u> Exhibit 1 – In re Schlehuber Transcript) (Sheade, Joshua) (Entered: 11/24/2020) |
| 11/25/2020 | | <u>105</u> | Joint List of Witnesses and Exhibits Filed by Jeffrey S. Brinen on behalf of Alexander Johnson (related document(s):<u>101</u> Order on Motion to Extend Time, <u>102</u> Order on Motion to Reschedule Hearing). (Brinen, Jeffrey) (Entered: 11/25/2020) |
| 11/25/2020 | | <u>107</u> | List of Witnesses and Exhibits Filed by Joshua Sheade on behalf of Ritchie, Dillard, Davies & Johnson, P.C. (related document(s):<u>74</u> Motion to Convert Case From Chapter 7 To Chapter 11, <u>75</u> Motion to Dismiss Case, <u>89</u> Objection, <u>90</u> Objection, <u>96</u> Order Setting Hearing, <u>101</u> Order on Motion to Extend Time, <u>102</u> Order on Motion to Reschedule Hearing). (Attachments: # <u>1</u> Attachment 1 – List of Exhibits for Hearing) (Sheade, Joshua) (Entered: 11/25/2020) |
| 12/02/2020 | | <u>108</u> | Joint Objection Filed by Lindsay Riley on behalf of M. Stephen Peters (related document(s):<u>107</u> Witness List and Exhibits). (Riley, Lindsay) |

| | | | |
|---|---|---|---|
| | | | (Entered: 12/02/2020) |
| 12/07/2020 | | 109 | Status Report Filed by Joshua Sheade on behalf of Ritchie, Dillard, Davies & Johnson, P.C. (related document(s):95 Minutes of Proceedings/Minute Order, 101 Order on Motion to Extend Time, 102 Order on Motion to Reschedule Hearing). (Attachments: # 1 Exh. 1 – Discovery Requests # 2 Exh. 2 – Discovery Dispute Correspondences # 3 Exh. 3 – Debtor's Document Production # 4 Exh. 4 – Subpoenas to Produce Documents # 5 Exh. 5 – E–mail Exchange with Chapter 7 Trustee # 6 Exh. 6 – LWE Objection Resolution E–mails) (Sheade, Joshua) (Entered: 12/07/2020) |
| 12/09/2020 | | 110 | Minute Order. Based on the findings and conclusions made on the record in open court, the Court DENIEDthe motion under 11 U.S.C. § 706(b) to convert the case to chapter 11. A separate judgmentwill enter. (related document(s)74 Motion to Convert Case From Chapter 7 To Chapter 11, 89 Objection, 90 Objection). (jss) (Entered: 12/09/2020) |
| 12/09/2020 | | 111 | Judgment (related document(s)110 Minutes of Proceedings/Minute Order). (jss) (Entered: 12/09/2020) |
| 12/23/2020 | | 114 | Notice of Appeal and Statement of Election to BAP Filed by Joshua Sheade on behalf of Ritchie, Dillard, Davies & Johnson, P.C. (related document(s)110 Minutes of Proceedings/Minute Order, 111 Judgment for BK Case). New Appeal Status Deadline 01/6/2021. (Sheade, Joshua) (Entered: 12/23/2020) |
| 02/16/2021 | | 117 | Order Denying Motion for Leave to Appeal and Dismissing Appeal. Entered by the Bankruptcy Appellate Panel on February 16, 2021 in Case No. CO 20–63. (related document(s)114 Notice of Appeal and Statement of Election). (mlr) (Entered: 02/16/2021) |
| 06/02/2021 | | 142 | Transcript of EVIDENTIARY HEARING ON THE MOTION TO CONVERT CHAPTER 7 BANKRUPTCY CASE TO CASE UNDER CHAPTER 11 OF THE BANKRUPTCY CODE PURSUANT TO 11 U.S.C. 706(b) OR, IN THE ALTERNATIVE, DISMISS BANKRUPTCY CASE PURSUANT TO 11 U.S.C. 707(b) FILED BY RITCHIE, DILLARD, DAVIES & JOHNSON, P.C. AND The OBJECTIONS THERETO FILED BY THE DEBTOR AND THE CHAPTER 7 TRUSTEE, M. STEPHEN PET. Date Of Hearing: 12/9/2020 before Judge Elizabeth E. Brown. THIS TRANSCRIPT WILL BE MADE ELECTRONICALLY AVAILABLE TO THE GENERAL PUBLIC 90 DAYS AFTER THE DATE OF FILING, TRANSCRIPT RELEASE DATE IS 8/31/2021. Until that time the transcript may be viewed at the Bankruptcy Court or a copy may be obtained from the official court transcriber. Requested by Onsager Fletcher Johnson on 5/18/2021. Transcribed and filed by AB Litigation Services. Total cost of Transcript $501.50 (RE: related document(s) 110 Minutes of Proceedings/Minute Order). Notice of Intent to Request Redaction Deadline Due By 6/9/2021. Redaction Request Due By 6/23/2021. Redacted Transcript Submission Due By 7/6/2021. Transcript Access Will Be Restricted Through 8/31/2021. (tjv) (Entered: 06/02/2021) |
| 06/02/2021 | | 143 | Notice of Filing of Official Transcript. Notice is hereby given that an official transcript of the EVIDENTIARY HEARING ON THE MOTION TO CONVERT CHAPTER 7 BANKRUPTCY CASE TO CASE UNDER CHAPTER 11 OF THE BANKRUPTCY CODE PURSUANT TO 11 U.S.C. 706(b) OR, IN THE ALTERNATIVE, DISMISS BANKRUPTCY CASE PURSUANT TO 11 U.S.C. 707(b) FILED BY RITCHIE, DILLARD, DAVIES & JOHNSON, P.C. AND The |

| | | | |
|---|---|---|---|
| | | | OBJECTIONS THERETO FILED BY THE DEBTOR AND THE CHAPTER 7 TRUSTEE, M. STEPHEN PETERS held on 12/9/2020 has been filed. Pursuant to the policy adopted by the Judicial Conference, transcripts are available for inspection only at the clerk's office or may be purchased from the court transcriber for a 90 day period. (related document(s)142 Transcript). (tjv) (Entered: 06/02/2021) |
| 10/07/2021 | | 158 | Chapter 7 Trustee's Final Report. Reviewed by Brittany Eichorn. Filed for Trustee Steve Peters. Filed by US Trustee (US Trustee) (Entered: 10/07/2021) |
| 10/07/2021 | | 160 | 9013−1.1 Notice Filed by M. Stephen Peters on behalf of M. Stephen Peters (related document(s):158 Chapter 7 Trustee's Final Report, 159 Chapter 7 Trustee's Application for Compensation).. 9013 Objections due by 10/28/2021 for 159 and for 158,. (Peters, M.) (Entered: 10/07/2021) |
| 10/28/2021 | | 162 | Objection Filed by Joshua Sheade on behalf of Ritchie, Dillard, Davies & Johnson, P.C. (related document(s):158 Chapter 7 Trustee's Final Report). (Sheade, Joshua) (Entered: 10/28/2021) |
| 11/01/2021 | | 163 | Amended Chapter 7 Trustee's Final Report. Reviewed by Brittany Eichorn. Filed for Trustee Steve Peters. Filed by US Trustee (US Trustee) (Entered: 11/01/2021) |
| 01/04/2022 | | 164 | Certificate of Contested Matter Filed by Aaron J. Conrardy on behalf of M. Stephen Peters (related document(s):162 Objection). (Conrardy, Aaron). Related document(s) 158 Chapter 7 Trustee's Final Report. **Modified on 1/4/2022 (jss).** added linkage to doc 158 (Entered: 01/04/2022) |
| 01/20/2022 | | 167 | Minute Order. Non−Evidentiary Hearing on M. Stephen Peters' Chapter 7 Trustee Final Report and the Objection filed by Ritchie, Dillard, Davies & Johnson, P.C. For the reasons stated on the record, the creditor's objection is overruled. The trustee's amended final report (Dkt. #163) and the distributions set forth therein are APPROVED. (related document(s)158 Chapter 7 Trustee's Final Report, 162 Objection). (mjb) (Entered: 01/20/2022) |
| 02/03/2022 | | 171 | Notice of Appeal and Statement of Election to District Court Filed by Joshua Sheade on behalf of Ritchie, Dillard, Davies & Johnson, P.C. (related document(s)110 Minutes of Proceedings/Minute Order, 111 Judgment for BK Case, 167 Minutes of Proceedings/Minute Order). New Appeal Status Deadline 02/17/2022. (Sheade, Joshua) (Entered: 02/03/2022) |
| 02/17/2022 | | 177 | Appellant Designation of Record and Statement of Issues On Appeal Civil Case # 22−cv−00332−REB−GPG Filed by Joshua Sheade on behalf of Ritchie, Dillard, Davies & Johnson, P.C.. Transmission of Record on Appeal Due by 03/21/2022. (Sheade, Joshua) (Entered: 02/17/2022) |
| 02/17/2022 | | 178 | Appellant Statement of Issues on Appeal Filed by Joshua Sheade on behalf of Ritchie, Dillard, Davies & Johnson, P.C. (related document(s)171 Notice of Appeal and Statement of Election). (Sheade, Joshua) (Entered: 02/17/2022) |
| 02/17/2022 | | 179 | Certification of No Transcript Ordered Filed by Joshua Sheade on behalf of Ritchie, Dillard, Davies & Johnson, P.C. (related document(s)171 Notice of Appeal and Statement of Election). (Sheade, Joshua) (Entered: 02/17/2022) |

| | | | |
|---|---|---|---|
| 03/02/2022 | | 180 | Appellee Designation of Record and Statement of Issues On Appeal Civil Case # CO–20–063 Filed by Lindsay Riley on behalf of M. Stephen Peters (related document(s)171 Notice of Appeal and Statement of Election). (Riley, Lindsay) (Entered: 03/02/2022) |

**Fill in this information to identify your case:**

United States Bankruptcy Court for the:

DISTRICT OF COLORADO

Case number *(if known)* _____

Chapter you are filing under:

☑ Chapter 7

☐ Chapter 11

☐ Chapter 12

☐ Chapter 13

☐ Check if this an amended filing

Official Form 101

# Voluntary Petition for Individuals Filing for Bankruptcy

12/17

The bankruptcy forms use *you* and *Debtor 1* to refer to a debtor filing alone. A married couple may file a bankruptcy case together—called a *joint case*—and in joint cases, these forms use *you* to ask for information from both debtors. For example, if a form asks, "Do you own a car," the answer would be yes if either debtor owns a car. When information is needed about the spouses separately, the form uses *Debtor 1* and *Debtor 2* to distinguish between them. In joint cases, one of the spouses must report information as *Debtor 1* and the other as *Debtor 2*. The same person must be *Debtor 1* in all of the forms.

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

---

**Part 1:    Identify Yourself**

|  | About Debtor 1: | About Debtor 2 (Spouse Only in a Joint Case): |
|---|---|---|
| **1. Your full name** <br> Write the name that is on your government-issued picture identification (for example, your driver's license or passport). <br><br> Bring your picture identification to your meeting with the trustee. | **Alexander** <br> First name <br><br> Middle name <br><br> **Johnson** <br> Last name and Suffix (Sr., Jr., II, III) | First name <br><br> Middle name <br><br> Last name and Suffix (Sr., Jr., II, III) |
| **2. All other names you have used in the last 8 years** <br> Include your married or maiden names. | | |
| **3. Only the last 4 digits of your Social Security number or federal Individual Taxpayer Identification number (ITIN)** | **xxx-xx-4248** | |

Debtor 1    **Alexander Johnson**                                Case number *(if known)*

|  | About Debtor 1: | About Debtor 2 (Spouse Only in a Joint Case): |
|---|---|---|

**4.** **Any business names and Employer Identification Numbers (EIN) you have used in the last 8 years**

Include trade names and *doing business as* names

■ I have not used any business name or EINs.

Business name(s)

EINs

☐ I have not used any business name or EINs.

Business name(s)

EINs

**5.** **Where you live**

**6105 S. Parker Road Apartment 5107
Aurora, CO 80016**
Number, Street, City, State & ZIP Code

**Arapahoe**
County

**If your mailing address is different from the one above, fill it in here.** Note that the court will send any notices to you at this mailing address.

Number, P.O. Box, Street, City, State & ZIP Code

If Debtor 2 lives at a different address:

Number, Street, City, State & ZIP Code

County

**If Debtor 2's mailing address is different from yours, fill it in here.** Note that the court will send any notices to this mailing address.

Number, P.O. Box, Street, City, State & ZIP Code

**6.** **Why you are choosing *this district* to file for bankruptcy**

*Check one:*

■ Over the last 180 days before filing this petition, I have lived in this district longer than in any other district.

☐ I have another reason.
Explain. (See 28 U.S.C. § 1408.)

*Check one:*

☐ Over the last 180 days before filing this petition, I have lived in this district longer than in any other district.

☐ I have another reason.
Explain. (See 28 U.S.C. § 1408.)

Debtor 1    **Alexander Johnson**                                            Case number *(if known)*

| Part 2: | Tell the Court About Your Bankruptcy Case |
|---|---|

**7.  The chapter of the Bankruptcy Code you are choosing to file under**

*Check one.* (For a brief description of each, see *Notice Required by 11 U.S.C. § 342(b) for Individuals Filing for Bankruptcy (Form 2010)).* Also, go to the top of page 1 and check the appropriate box.

■ Chapter 7

☐ Chapter 11

☐ Chapter 12

☐ Chapter 13

**8.  How you will pay the fee**

■ **I will pay the entire fee when I file my petition**. Please check with the clerk's office in your local court for more details about how you may pay. Typically, if you are paying the fee yourself, you may pay with cash, cashier's check, or money order. If your attorney is submitting your payment on your behalf, your attorney may pay with a credit card or check with a pre-printed address.

☐ **I need to pay the fee in installments.** If you choose this option, sign and attach the *Application for Individuals to Pay The Filing Fee in Installments* (Official Form 103A).

☐ **I request that my fee be waived** (You may request this option only if you are filing for Chapter 7. By law, a judge may, but is not required to, waive your fee, and may do so only if your income is less than 150% of the official poverty line that applies to your family size and you are unable to pay the fee in installments. If you choose this option, you must fill out the *Application to Have the Chapter 7 Filing Fee Waived* (Official Form 103B) and file it with your petition.

**9.  Have you filed for bankruptcy within the last 8 years?**

■ No.

☐ Yes.

| District | _____ | When | _____ | Case number | _____ |
|---|---|---|---|---|---|
| District | _____ | When | _____ | Case number | _____ |
| District | _____ | When | _____ | Case number | _____ |

**10.  Are any bankruptcy cases pending or being filed by a spouse who is not filing this case with you, or by a business partner, or by an affiliate?**

■ No

☐ Yes.

| Debtor | _____ | | Relationship to you | _____ |
|---|---|---|---|---|
| District | _____ | When _____ | Case number, if known | _____ |
| Debtor | _____ | | Relationship to you | _____ |
| District | _____ | When _____ | Case number, if known | _____ |

**11.  Do you rent your residence?**

☐ No.    Go to line 12.

■ Yes.    Has your landlord obtained an eviction judgment against you?

■ No. Go to line 12.

☐ Yes. Fill out *Initial Statement About an Eviction Judgment Against You* (Form 101A) and file it with this bankruptcy petition.

Debtor 1    **Alexander Johnson**                                                    Case number *(if known)*

| Part 3: | Report About Any Businesses You Own as a Sole Proprietor |
|---|---|

**12.  Are you a sole proprietor of any full- or part-time business?**

A sole proprietorship is a business you operate as an individual, and is not a separate legal entity such as a corporation, partnership, or LLC.

If you have more than one sole proprietorship, use a separate sheet and attach it to this petition.

■ **No.**    Go to Part 4.

☐ **Yes.**    Name and location of business

_____
Name of business, if any

_____

_____
Number, Street, City, State & ZIP Code

*Check the appropriate box to describe your business:*

☐    Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐    Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐    Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐    Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐    None of the above

**13.  Are you filing under Chapter 11 of the Bankruptcy Code and are you a *small business debtor*?**

For a definition of *small business debtor*, see 11 U.S.C. § 101(51D).

*If you are filing under Chapter 11, the court must know whether you are a small business debtor so that it can set appropriate deadlines. If you indicate that you are a small business debtor, you must attach your most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. 1116(1)(B).*

■ **No.**    I am not filing under Chapter 11.

☐ **No.**    I am filing under Chapter 11, but I am NOT a small business debtor according to the definition in the Bankruptcy Code.

☐ **Yes.**    I am filing under Chapter 11 and I am a small business debtor according to the definition in the Bankruptcy Code.

| Part 4: | Report if You Own or Have Any Hazardous Property or Any Property That Needs Immediate Attention |
|---|---|

**14.  Do you own or have any property that poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety? Or do you own any property that needs immediate attention?**

*For example, do you own perishable goods, or livestock that must be fed, or a building that needs urgent repairs?*

■ **No.**

☐ **Yes.**    What is the hazard?    _____

If immediate attention is needed, why is it needed?    _____

Where is the property?    _____

_____
Number, Street, City, State & Zip Code

Vol 1 11

| Debtor 1 | Alexander Johnson | Case number *(if known)* |
|---|---|---|

| **Part 5:** | **Explain Your Efforts to Receive a Briefing About Credit Counseling** |
|---|---|

| | About Debtor 1: | About Debtor 2 (Spouse Only in a Joint Case): |
|---|---|---|
| **15. Tell the court whether you have received a briefing about credit counseling.**

The law requires that you receive a briefing about credit counseling before you file for bankruptcy. You must truthfully check one of the following choices. If you cannot do so, you are not eligible to file.

If you file anyway, the court can dismiss your case, you will lose whatever filing fee you paid, and your creditors can begin collection activities again. | *You must check one:*

☑ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, and I received a certificate of completion.**

Attach a copy of the certificate and the payment plan, if any, that you developed with the agency.

☐ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, but I do not have a certificate of completion.**

Within 14 days after you file this bankruptcy petition, you MUST file a copy of the certificate and payment plan, if any.

☐ **I certify that I asked for credit counseling services from an approved agency, but was unable to obtain those services during the 7 days after I made my request, and exigent circumstances merit a 30-day temporary waiver of the requirement.**

To ask for a 30-day temporary waiver of the requirement, attach a separate sheet explaining what efforts you made to obtain the briefing, why you were unable to obtain it before you filed for bankruptcy, and what exigent circumstances required you to file this case.

Your case may be dismissed if the court is dissatisfied with your reasons for not receiving a briefing before you filed for bankruptcy. If the court is satisfied with your reasons, you must still receive a briefing within 30 days after you file. You must file a certificate from the approved agency, along with a copy of the payment plan you developed, if any. If you do not do so, your case may be dismissed.

Any extension of the 30-day deadline is granted only for cause and is limited to a maximum of 15 days.

☐ **I am not required to receive a briefing about credit counseling because of:**

   ☐ **Incapacity.**
   I have a mental illness or a mental deficiency that makes me incapable of realizing or making rational decisions about finances.

   ☐ **Disability.**
   My physical disability causes me to be unable to participate in a briefing in person, by phone, or through the internet, even after I reasonably tried to do so.

   ☐ **Active duty.**
   I am currently on active military duty in a military combat zone.

If you believe you are not required to receive a briefing about credit counseling, you must file a motion for waiver credit counseling with the court. | *You must check one:*

☐ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, and I received a certificate of completion.**

Attach a copy of the certificate and the payment plan, if any, that you developed with the agency.

☐ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, but I do not have a certificate of completion.**

Within 14 days after you file this bankruptcy petition, you MUST file a copy of the certificate and payment plan, if any.

☐ **I certify that I asked for credit counseling services from an approved agency, but was unable to obtain those services during the 7 days after I made my request, and exigent circumstances merit a 30-day temporary waiver of the requirement.**

To ask for a 30-day temporary waiver of the requirement, attach a separate sheet explaining what efforts you made to obtain the briefing, why you were unable to obtain it before you filed for bankruptcy, and what exigent circumstances required you to file this case.

Your case may be dismissed if the court is dissatisfied with your reasons for not receiving a briefing before you filed for bankruptcy.

If the court is satisfied with your reasons, you must still receive a briefing within 30 days after you file. You must file a certificate from the approved agency, along with a copy of the payment plan you developed, if any. If you do not do so, your case may be dismissed.

Any extension of the 30-day deadline is granted only for cause and is limited to a maximum of 15 days.

☐ **I am not required to receive a briefing about credit counseling because of:**

   ☐ **Incapacity.**
   I have a mental illness or a mental deficiency that makes me incapable of realizing or making rational decisions about finances.

   ☐ **Disability.**
   My physical disability causes me to be unable to participate in a briefing in person, by phone, or through the internet, even after I reasonably tried to do so.

   ☐ **Active duty.**
   I am currently on active military duty in a military combat zone.

If you believe you are not required to receive a briefing about credit counseling, you must file a motion for waiver of credit counseling with the court. |

Debtor 1   **Alexander Johnson**                                   Case number *(if known)* _____

| Part 6: | Answer These Questions for Reporting Purposes |
|---|---|

**16. What kind of debts do you have?**

16a. **Are your debts primarily consumer debts?** *Consumer debts* are defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."

☐ No. Go to line 16b.

☐ Yes. Go to line 17.

16b. **Are your debts primarily business debts?** *Business debts* are debts that you incurred to obtain money for a business or investment or through the operation of the business or investment.

☐ No. Go to line 16c.

■ Yes. Go to line 17.

16c. State the type of debts you owe that are not consumer debts or business debts

_____

**17. Are you filing under Chapter 7?**

☐ No.   I am not filing under Chapter 7. Go to line 18.

**Do you estimate that after any exempt property is excluded and administrative expenses are paid that funds will be available for distribution to unsecured creditors?**

☐ Yes.   I am filing under Chapter 7. Do you estimate that after any exempt property is excluded and administrative expenses are paid that funds will be available to distribute to unsecured creditors?

■ No

☐ Yes

**18. How many Creditors do you estimate that you owe?**

| | | |
|---|---|---|
| ■ 1-49 | ☐ 1,000-5,000 | ☐ 25,001-50,000 |
| ☐ 50-99 | ☐ 5001-10,000 | ☐ 50,001-100,000 |
| ☐ 100-199 | ☐ 10,001-25,000 | ☐ More than100,000 |
| ☐ 200-999 | | |

**19. How much do you estimate your assets to be worth?**

| | | |
|---|---|---|
| ☐ $0 - $50,000 | ☐ $1,000,001 - $10 million | ☐ $500,000,001 - $1 billion |
| ☐ $50,001 - $100,000 | ☐ $10,000,001 - $50  million | ☐ $1,000,000,001 - $10 billion |
| ■ $100,000 - $500,000 | ☐ $50,000,001 - $100 million | ☐ $10,000,000,001 - $50 billion |
| ☐ $500,001 - $1 million | ☐ $100,000,001 - $500 million | ☐ More than $50 billion |

**20. How much do you estimate your liabilities to be?**

| | | |
|---|---|---|
| ☐ $0 - $50,000 | ■ $1,000,001 - $10 million | ☐ $500,000,001 - $1 billion |
| ☐ $50,001 - $100,000 | ☐ $10,000,001 - $50  million | ☐ $1,000,000,001 - $10 billion |
| ☐ $100,001 - $500,000 | ☐ $50,000,001 - $100 million | ☐ $10,000,000,001 - $50 billion |
| ☐ $500,001 - $1 million | ☐ $100,000,001 - $500 million | ☐ More than $50 billion |

| Part 7: | Sign Below |
|---|---|

**For you**

I have examined this petition, and I declare under penalty of perjury that the information provided is true and correct.

If I have chosen to file under Chapter 7, I am aware that I may proceed, if eligible, under Chapter 7, 11,12, or 13 of title 11, United States Code. I understand the relief available under each chapter, and I choose to proceed under Chapter 7.

If no attorney represents me and I did not pay or agree to pay someone who is not an attorney to help me fill out this document, I have obtained and read the notice required by 11 U.S.C. § 342(b).

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I understand making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**/s/ Alexander Johnson**
_____                              _____
**Alexander Johnson**                                        Signature of Debtor 2
Signature of Debtor 1

Executed on   **November 13, 2019**                    Executed on   _____
                  MM / DD / YYYY                                        MM / DD / YYYY

Debtor 1   **Alexander Johnson**                                                      Case number *(if known)*

---

**For your attorney, if you are represented by one**

**If you are not represented by an attorney, you do not need to file this page.**

I, the attorney for the debtor(s) named in this petition, declare that I have informed the debtor(s) about elig bility to proceed under Chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each chapter for which the person is eligible.  I also certify that I have delivered to the debtor(s) the notice required by 11 U.S.C. § 342(b) and, in a case in which § 707(b)(4)(D) applies, certify that I have no knowledge after an inquiry that the information in the schedules filed with the petition is incorrect.

**/s/ Jeffrey S. Brinen**                                  Date   **November 13, 2019**
Signature of Attorney for Debtor                                 MM / DD / YYYY

**Jeffrey S. Brinen 20565**
Printed name

**Kutner Brinen, P.C.**
Firm name

**1660 Lincoln Street, Suite 1850**
**Denver, CO 80264**
Number, Street, City, State & ZIP Code

Contact phone   **303-832-2400**                    Email address   **jsb@kutnerlaw.com**

**20565 CO**
Bar number & State

---

## United States Bankruptcy Court
### District of Colorado

In re   **Alexander Johnson**

Debtor(s)

Case No.

Chapter   **7**

# VERIFICATION OF CREDITOR MATRIX

The above-named Debtor hereby verifies that the attached list of creditors is true and correct to the best of his/her knowledge.

Date:   **November 13, 2019**

**/s/ Alexander Johnson**

**Alexander Johnson**
Signature of Debtor

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **Alexander Johnson** |
| | First Name          Middle Name          Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name          Middle Name          Last Name |
| United States Bankruptcy Court for the: | DISTRICT OF COLORADO |
| Case number | |
| (if known) | |

☐ Check if this is an amended filing

## Official Form 107
## Statement of Financial Affairs for Individuals Filing for Bankruptcy                 4/19

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information.  If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:    Give Details About Your Marital Status and Where You Lived Before**

1.    What is your current marital status?

☐  Married
■  Not married

2.    During the last 3 years, have you lived anywhere other than where you live now?

☐  No
■  Yes. List all of the places you lived in the last 3 years. Do not include where you live now.

| Debtor 1 Prior Address: | Dates Debtor 1 lived there | Debtor 2 Prior Address: | Dates Debtor 2 lived there |
|---|---|---|---|
| **1337 Woodridge Drive Knoxville, TN 37919** | From-To: **May 2015 - July 2018** | ☐ Same as Debtor 1 | ☐ Same as Debtor 1 From-To: |

3.    Within the last 8 years, did you ever live with a spouse or legal equivalent in a community property state or territory? (*Community property states and territories* include Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington and Wisconsin.)

■  No
☐  Yes. Make sure you fill out *Schedule H: Your Codebtors* (Official Form 106H).

**Part 2     Explain the Sources of Your Income**

4.    Did you have any income from employment or from operating a business during this year or the two previous calendar years?
      Fill in the total amount of income you received from all jobs and all businesses, including part-time activities.
      If you are filing a joint case and you have income that you receive together, list it only once under Debtor 1.

☐  No
■  Yes. Fill in the details.

| | Debtor 1 | | Debtor 2 | |
|---|---|---|---|---|
| | Sources of income Check all that apply. | Gross income (before deductions and exclusions) | Sources of income Check all that apply. | Gross income (before deductions and exclusions) |
| From January 1 of current year until the date you filed for bankruptcy: | ■ Wages, commissions, bonuses, tips | **$283,916.00** | ☐ Wages, commissions, bonuses, tips | |
| | ☐ Operating a business | | ☐ Operating a business | |

Debtor 1 __Alexander Johnson__

Case number *(if known)* _____

| | Debtor 1 | | Debtor 2 | |
|---|---|---|---|---|
| | **Sources of income**<br>Check all that apply. | **Gross income**<br>(before deductions and exclusions) | **Sources of income**<br>Check all that apply. | **Gross income**<br>(before deductions and exclusions) |
| **For last calendar year:**<br>(January 1 to December 31, 2018 ) | ■ Wages, commissions, bonuses, tips<br><br>☐ Operating a business | $128,400.00 | ☐ Wages, commissions, bonuses, tips<br><br>☐ Operating a business | |
| **For the calendar year before that:**<br>(January 1 to December 31, 2017 ) | ■ Wages, commissions, bonuses, tips<br><br>☐ Operating a business | $25,105.00 | ☐ Wages, commissions, bonuses, tips<br><br>☐ Operating a business | |

**5.** **Did you receive any other income during this year or the two previous calendar years?**
Include income regardless of whether that income is taxable. Examples of *other income* are alimony; child support; Social Security, unemployment, and other public benefit payments; pensions; rental income; interest; dividends; money collected from lawsuits; royalties; and gambling and lottery winnings. If you are filing a joint case and you have income that you received together, list it only once under Debtor 1.

List each source and the gross income from each source separately. Do not include income that you listed in line 4.

■ No
☐ Yes. Fill in the details.

| | Debtor 1 | | Debtor 2 | |
|---|---|---|---|---|
| | **Sources of income**<br>Describe below. | **Gross income from each source**<br>(before deductions and exclusions) | **Sources of income**<br>Describe below. | **Gross income**<br>(before deductions and exclusions) |

| **Part 3:** | List Certain Payments You Made Before You Filed for Bankruptcy |
|---|---|

**6.** **Are either Debtor 1's or Debtor 2's debts primarily consumer debts?**

■ No. **Neither Debtor 1 nor Debtor 2 has primarily consumer debts.** *Consumer debts* are defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."

During the 90 days before you filed for bankruptcy, did you pay any creditor a total of $6,825* or more?

■ No.   Go to line 7.
☐ Yes   List below each creditor to whom you paid a total of $6,825* or more in one or more payments and the total amount you paid that creditor. Do not include payments for domestic support obligations, such as child support and alimony. Also, do not include payments to an attorney for this bankruptcy case.
\* Subject to adjustment on 4/01/22 and every 3 years after that for cases filed on or after the date of adjustment.

☐ Yes. **Debtor 1 or Debtor 2 or both have primarily consumer debts.**
During the 90 days before you filed for bankruptcy, did you pay any creditor a total of $600 or more?

☐ No.   Go to line 7.
☐ Yes   List below each creditor to whom you paid a total of $600 or more and the total amount you paid that creditor. Do not include payments for domestic support obligations, such as child support and alimony. Also, do not include payments to an attorney for this bankruptcy case.

| Creditor's Name and Address | Dates of payment | Total amount paid | Amount you still owe | Was this payment for ... |
|---|---|---|---|---|

Debtor 1 __Alexander Johnson__                     Case number (*if known*) _____

7. **Within 1 year before you filed for bankruptcy, did you make a payment on a debt you owed anyone who was an insider?**
   *Insiders* include your relatives; any general partners; relatives of any general partners; partnerships of which you are a general partner; corporations of which you are an officer, director, person in control, or owner of 20% or more of their voting securities; and any managing agent, including one for a business you operate as a sole proprietor. 11 U.S.C. § 101. Include payments for domestic support obligations, such as child support and alimony.

   ☑ No
   ☐ Yes. List all payments to an insider.

   | Insider's Name and Address | Dates of payment | Total amount paid | Amount you still owe | Reason for this payment |
   |---|---|---|---|---|
   | | | | | |

8. **Within 1 year before you filed for bankruptcy, did you make any payments or transfer any property on account of a debt that benefited an insider?**
   Include payments on debts guaranteed or cosigned by an insider.

   ☑ No
   ☐ Yes. List all payments to an insider

   | Insider's Name and Address | Dates of payment | Total amount paid | Amount you still owe | Reason for this payment Include creditor's name |
   |---|---|---|---|---|
   | | | | | |

**Part 4:   Identify Legal Actions, Repossessions, and Foreclosures**

9. **Within 1 year before you filed for bankruptcy, were you a party in any lawsuit, court action, or administrative proceeding?**
   List all such matters, including personal injury cases, small claims actions, divorces, collection suits, paternity actions, support or custody modifications, and contract disputes.

   ☐ No
   ☑ Yes. Fill in the details.

   | Case title Case number | Nature of the case | Court or agency | Status of the case |
   |---|---|---|---|
   | **Ritchie, Dillard, Davies and Johnson P.C.**<br><br>**v.**<br><br>**Alexander James Johnson** | **Breach of Contract** | **Arapahoe County District Court**<br>**7325 S. Potomac Street**<br>**Centennial, CO 80112** | ☑ Pending<br>☐ On appeal<br>☐ Concluded |

10. **Within 1 year before you filed for bankruptcy, was any of your property repossessed, foreclosed, garnished, attached, seized, or levied?**
    Check all that apply and fill in the details below.

    ☑ No. Go to line 11.
    ☐ Yes. Fill in the information below.

    | Creditor Name and Address | Describe the Property<br>Explain what happened | Date | Value of the property |
    |---|---|---|---|
    | | | | |

11. **Within 90 days before you filed for bankruptcy, did any creditor, including a bank or financial institution, set off any amounts from your accounts or refuse to make a payment because you owed a debt?**
    ☑ No
    ☐ Yes. Fill in the details.

    | Creditor Name and Address | Describe the action the creditor took | Date action was taken | Amount |
    |---|---|---|---|
    | | | | |

12. **Within 1 year before you filed for bankruptcy, was any of your property in the possession of an assignee for the benefit of creditors, a court-appointed receiver, a custodian, or another official?**
    ☑ No
    ☐ Yes

Debtor 1   **Alexander Johnson**                                                      Case number *(if known)*

| Part 5: | List Certain Gifts and Contributions |
|---------|--------------------------------------|

13. **Within 2 years before you filed for bankruptcy, did you give any gifts with a total value of more than $600 per person?**
- ☐ No
- ☒ Yes. Fill in the details for each gift.

| Gifts with a total value of more than $600 per person<br><br>Person to Whom You Gave the Gift and Address: | Describe the gifts | Dates you gave the gifts | Value |
|---|---|---|---|
| **Vivian Drake**<br>**415 Adair Street**<br>**Apt. A6**<br>**Gainesville, GA 30501**<br><br>Person's relationship to you: **Mother** | **Cash**<br>**October 2019 - $270; September 2019 - $350; August 2019 - $1150; July 2019 - $1530; May 2019 - $255; April 2019 - $325; February 2019 - $50; January 2019 - $680 and October 2018 - $100** | **Various Dates in 2019 and 2018** | $4,710.00 |

14. **Within 2 years before you filed for bankruptcy, did you give any gifts or contributions with a total value of more than $600 to any charity?**
- ☒ No
- ☐ Yes. Fill in the details for each gift or contribution.

| Gifts or contributions to charities that total more than $600<br>Charity's Name<br>Address (Number, Street, City, State and ZIP Code) | Describe what you contributed | Dates you contributed | Value |
|---|---|---|---|

| Part 6: | List Certain Losses |
|---------|---------------------|

15. **Within 1 year before you filed for bankruptcy or since you filed for bankruptcy, did you lose anything because of theft, fire, other disaster, or gambling?**
- ☒ No
- ☐ Yes. Fill in the details.

| Describe the property you lost and how the loss occurred | Describe any insurance coverage for the loss<br>Include the amount that insurance has paid. List pending insurance claims on line 33 of *Schedule A/B: Property*. | Date of your loss | Value of property lost |
|---|---|---|---|

| Part 7: | List Certain Payments or Transfers |
|---------|------------------------------------|

16. **Within 1 year before you filed for bankruptcy, did you or anyone else acting on your behalf pay or transfer any property to anyone you consulted about seeking bankruptcy or preparing a bankruptcy petition?**
Include any attorneys, bankruptcy petition preparers, or credit counseling agencies for services required in your bankruptcy.
- ☐ No
- ☒ Yes. Fill in the details.

| Person Who Was Paid<br>Address<br>Email or website address<br>Person Who Made the Payment, if Not You | Description and value of any property transferred | Date payment or transfer was made | Amount of payment |
|---|---|---|---|
| **Kutner Brinen, P.C.**<br>**1660 Lincoln Street**<br>**Suite 1850**<br>**Denver, CO 80264** | **Attorneys Fee and Filing Fee** | **November 12, 2019** | $5,500.00 |

| Debtor 1 | Alexander Johnson | Case number *(if known)* | |

17. **Within 1 year before you filed for bankruptcy, did you or anyone else acting on your behalf pay or transfer any property to anyone who promised to help you deal with your creditors or to make payments to your creditors?**
Do not include any payment or transfer that you listed on line 16.

■ No
☐ Yes. Fill in the details.

| Person Who Was Paid<br>Address | Description and value of any property transferred | Date payment or transfer was made | Amount of payment |
|---|---|---|---|

18. **Within 2 years before you filed for bankruptcy, did you sell, trade, or otherwise transfer any property to anyone, other than property transferred in the ordinary course of your business or financial affairs?**
Include both outright transfers and transfers made as security (such as the granting of a security interest or mortgage on your property). Do not include gifts and transfers that you have already listed on this statement.

☐ No
■ Yes. Fill in the details.

| Person Who Received Transfer<br>Address<br><br>Person's relationship to you | Description and value of property transferred | Describe any property or payments received or debts paid in exchange | Date transfer was made |
|---|---|---|---|
| Unrelated Third Party<br><br>None | Initial payment of $70,576; received reimbursement from investment partner of $30,000 within 30 days of initial payment | Purchase of investment property in Lower Lake, California | October 2019 |

19. **Within 10 years before you filed for bankruptcy, did you transfer any property to a self-settled trust or similar device of which you are a beneficiary?** (These are often called *asset-protection devices*.)

■ No
☐ Yes. Fill in the details.

| Name of trust | Description and value of the property transferred | Date Transfer was made |
|---|---|---|

**Part 8:** List of Certain Financial Accounts, Instruments, Safe Deposit Boxes, and Storage Units

20. **Within 1 year before you filed for bankruptcy, were any financial accounts or instruments held in your name, or for your benefit, closed, sold, moved, or transferred?**
Include checking, savings, money market, or other financial accounts; certificates of deposit; shares in banks, credit unions, brokerage houses, pension funds, cooperatives, associations, and other financial institutions.

■ No
☐ Yes. Fill in the details.

| Name of Financial Institution and Address *(Number, Street, City, State and ZIP Code)* | Last 4 digits of account number | Type of account or instrument | Date account was closed, sold, moved, or transferred | Last balance before closing or transfer |
|---|---|---|---|---|

21. **Do you now have, or did you have within 1 year before you filed for bankruptcy, any safe deposit box or other depository for securities, cash, or other valuables?**

■ No
☐ Yes. Fill in the details.

| Name of Financial Institution<br>Address *(Number, Street, City, State and ZIP Code)* | Who else had access to it?<br>Address *(Number, Street, City, State and ZIP Code)* | Describe the contents | Do you still have it? |
|---|---|---|---|

Debtor 1  **Alexander Johnson**                                          Case number (if known) _____

22. **Have you stored property in a storage unit or place other than your home within 1 year before you filed for bankruptcy?**

■ No
☐ Yes. Fill in the details.

| Name of Storage Facility<br>Address (Number, Street, City, State and ZIP Code) | Who else has or had access to it?<br>Address (Number, Street, City, State and ZIP Code) | Describe the contents | Do you still have it? |
| --- | --- | --- | --- |

**Part 9:**   Identify Property You Hold or Control for Someone Else

23. **Do you hold or control any property that someone else owns? Include any property you borrowed from, are storing for, or hold in trust for someone.**

■ No
☐ Yes.  Fill in the details.

| Owner's Name<br>Address (Number, Street, City, State and ZIP Code) | Where is the property?<br>(Number, Street, City, State and ZIP Code) | Describe the property | Value |
| --- | --- | --- | --- |

**Part 10:**   Give Details About Environmental Information

For the purpose of Part 10, the following definitions apply:

■ *Environmental law* means any federal, state, or local statute or regulation concerning pollution, contamination, releases of hazardous or toxic substances, wastes, or material into the air, land, soil, surface water, groundwater, or other medium, including statutes or regulations controlling the cleanup of these substances, wastes, or material.
■ *Site* means any location, facility, or property as defined under any environmental law, whether you now own, operate, or utilize it or used to own, operate, or utilize it, including disposal sites.
■ *Hazardous material* means anything an environmental law defines as a hazardous waste, hazardous substance, toxic substance, hazardous material, pollutant, contaminant, or similar term.

**Report all notices, releases, and proceedings that you know about, regardless of when they occurred.**

24. **Has any governmental unit notified you that you may be liable or potentially liable under or in violation of an environmental law?**

■ No
☐ Yes. Fill in the details.

| Name of site<br>Address (Number, Street, City, State and ZIP Code) | Governmental unit<br>Address (Number, Street, City, State and ZIP Code) | Environmental law, if you know it | Date of notice |
| --- | --- | --- | --- |

25. **Have you notified any governmental unit of any release of hazardous material?**

■ No
☐ Yes. Fill in the details.

| Name of site<br>Address (Number, Street, City, State and ZIP Code) | Governmental unit<br>Address (Number, Street, City, State and ZIP Code) | Environmental law, if you know it | Date of notice |
| --- | --- | --- | --- |

26. **Have you been a party in any judicial or administrative proceeding under any environmental law? Include settlements and orders.**

■ No
☐ Yes. Fill in the details.

| Case Title<br>Case Number | Court or agency<br>Name<br>Address (Number, Street, City, State and ZIP Code) | Nature of the case | Status of the case |
| --- | --- | --- | --- |

**Part 11:**   Give Details About Your Business or Connections to Any Business

27. **Within 4 years before you filed for bankruptcy, did you own a business or have any of the following connections to any business?**

☐ A sole proprietor or self-employed in a trade, profession, or other activity, either full-time or part-time
■ A member of a limited liability company (LLC) or limited liability partnership (LLP)

Debtor 1    **Alexander Johnson** _____    Case number (*if known*) _____

☐ A partner in a partnership

☐ An officer, director, or managing executive of a corporation

☐ An owner of at least 5% of the voting or equity securities of a corporation

☐ No. None of the above applies.  Go to Part 12.

■ Yes. Check all that apply above and fill in the details below for each business.

| Business Name<br>Address<br>(Number, Street, City, State and ZIP Code) | Describe the nature of the business<br><br>Name of accountant or bookkeeper | Employer Identification number<br>Do not include Social Security number or ITIN.<br><br>Dates business existed |
|---|---|---|
| **CB45, LLC**<br>**6105 S. Parker Road Apartment**<br>**5107**<br>**Centennial, CO 80016** | **Clothing** | **EIN:**    **83-2136066**<br><br>**From-To**    **2018 to Present** |

28.    Within 2 years before you filed for bankruptcy, did you give a financial statement to anyone about your business? Include all financial institutions, creditors, or other parties.

■ No

☐ Yes. Fill in the details below.

| Name<br>Address<br>(Number, Street, City, State and ZIP Code) | Date Issued |
|---|---|
| | |

**Part 12:    Sign Below**

I have read the answers on this *Statement of Financial Affairs* and any attachments, and I declare under penalty of perjury that the answers are true and correct. I understand that making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both.
18 U.S.C. §§ 152, 1341, 1519, and 3571.

**/s/ Alexander Johnson** _____    _____
**Alexander Johnson**                                           **Signature of Debtor 2**
**Signature of Debtor 1**

Date    **November 25, 2019** _____    Date    _____

Did you attach additional pages to *Your Statement of Financial Affairs for Individuals Filing for Bankruptcy* (Official Form 107)?
■ No
☐ Yes

Did you pay or agree to pay someone who is not an attorney to help you fill out bankruptcy forms?
■ No
☐ Yes. Name of Person _____. Attach the *Bankruptcy Petition Preparer's Notice, Declaration, and Signature* (Official Form 119).

**Fill in this information to identify your case and this filing:**

| | |
|---|---|
| Debtor 1 | **Alexander Johnson** |
| | First Name   Middle Name   Last Name |
| Debtor 2 | |
| (Spouse, if filing) | First Name   Middle Name   Last Name |
| United States Bankruptcy Court for the: | DISTRICT OF COLORADO |
| Case number | |

☐ Check if this is an
amended filing

## Official Form 106A/B
## Schedule A/B: Property                                    12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:    Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In**

1. **Do you own or have any legal or equitable interest in any residence, building, land, or similar property?**

   ☐ No. Go to Part 2.

   ■ Yes.  Where is the property?

**1.1**

| | |
|---|---|
| **9100 Rocky Creek Road** | **What is the property?** Check all that apply |
| Street address, if available, or other description | ■ Single-family home |
| | ☐ Duplex or multi-unit building |
| | ☐ Condominium or cooperative |
| **Lower Lake     CA     95457-0000** | ☐ Manufactured or mobile home |
| City     State     Z P Code | ☐ Land |
| | ■ Investment property |
| | ☐ Timeshare |
| | ☐ Other _____ |
| **Lake** | **Who has an interest in the property?** Check one |
| County | ☐ Debtor 1 only |
| | ☐ Debtor 2 only |
| | ☐ Debtor 1 and Debtor 2 only |
| | ■ At least one of the debtors and another |

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **$309,000.00** | **$154,500.00** |

**Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.**

☐ **Check if this is community property**
(see instructions)

Other information you wish to add about this item, such as local property identification number:

**50% interest**

2. **Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here**.......................................................=>

| |
|---|
| **$154,500.00** |

**Part 2:    Describe Your Vehicles**

**Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not?** Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

Debtor 1 __Alexander Johnson__     Case number *(if known)* _____

**3. Cars, vans, trucks, tractors, sport utility vehicles, motorcycles**

☐ No
■ Yes

| 3.1 | Make: | **Chevy** |
| | Model: | **Tahoe** |
| | Year: | **2007** |
| | Approximate mileage: | **221876** |
| | Other information: | |

**Who has an interest in the property?** Check one

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this is community property
(see instructions)

Do not deduct secured claims or exemp ions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

**Current value of the entire property?** $3,287.00

**Current value of the portion you own?** $3,287.00

| 3.2 | Make: | **Chevy** |
| | Model: | **Tahoe** |
| | Year: | **2018** |
| | Approximate mileage: | **16532** |
| | Other information: | |

**Who has an interest in the property?** Check one

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this is community property
(see instructions)

Do not deduct secured claims or exemp ions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

**Current value of the entire property?** $41,063.00

**Current value of the portion you own?** $41,063.00

**4. Watercraft, aircraft, motor homes, ATVs and other recreational vehicles, other vehicles, and accessories**
*Examples:* Boats, trailers, motors, personal watercraft, fishing vessels, snowmobiles, motorcycle accessories

■ No
☐ Yes

5  Add the dollar value of the portion you own for all of your entries from Part 2, including any entries for pages you have attached for Part 2. Write that number here.................................................................=>   **$44,350.00**

**Part 3:**  Describe Your Personal and  Household Items

Do you own or have any legal or equitable interest in any of the following items?

**Current value of the portion you own?** Do not deduct secured claims or exemptions.

**6. Household goods and furnishings**
*Examples:* Major appliances, furniture, linens, china, kitchenware
☐ No
■ Yes. Describe.....

| Queen Sleep Number Bed, Bedroom Set | **$2,000.00** |

**7. Electronics**
*Examples:* Televisions and radios; audio, video, stereo, and digital equipment; computers, printers, scanners; music collections; electronic devices including cell phones, cameras, media players, games
☐ No
■ Yes. Describe.....

| **Two Televisions ($500)** | |
| **2012 Macbook ($250)** | |
| **Playstation ($150)** | |
| **Go-Pro ($100)** | |
| **3 Headphones ($80)** | |
| **Bose Speakers ($50)** | **$1,130.00** |

Debtor 1   **Alexander Johnson**                                            Case number *(if known)*

8. **Collectibles of value**
   *Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; stamp, coin, or baseball card collections;
   other collections, memorabilia, collectibles
   ☑ No
   ☐ Yes.  Describe.....

9. **Equipment for sports and hobbies**
   *Examples:* Sports, photographic, exercise, and other hobby equipment; bicycles, pool tables, golf clubs, skis; canoes and kayaks; carpentry tools;
   musical instruments
   ☐ No
   ☑ Yes.  Describe.....

   | Golf Clubs ($250) | $250.00 |
   |---|---|

10. **Firearms**
    *Examples:* Pistols, rifles, shotguns, ammunition, and related equipment
    ☑ No
    ☐ Yes.  Describe.....

11. **Clothes**
    *Examples:* Everyday clothes, furs, leather coats, designer wear, shoes, accessories
    ☐ No
    ☑ Yes.  Describe.....

    | Misc mens clothing and accessories | $500.00 |
    |---|---|

12. **Jewelry**
    *Examples:* Everyday jewelry, costume jewelry, engagement rings, wedding rings, heirloom jewelry, watches, gems, gold, silver
    ☐ No
    ☑ Yes.  Describe.....

    | 3 Michael Kors Watches | $400.00 |
    |---|---|

13. **Non-farm animals**
    *Examples:* Dogs, cats, birds, horses
    ☑ No
    ☐ Yes.  Describe.....

14. **Any other personal and household items you did not already list, including any health aids you did not list**
    ☐ No
    ☑ Yes.  Give specific information.....

    | Weed Eater | $100.00 |
    |---|---|

15. **Add the dollar value of all of your entries from Part 3, including any entries for pages you have attached**
    **for Part 3. Write that number here** ............................................................................

    | $4,380.00 |
    |---|

**Part 4:  Describe Your Financial Assets**

| Do you own or have any legal or equitable interest in any of the following? | Current value of the portion you own? Do not deduct secured claims or exemptions. |
|---|---|

16. **Cash**
    *Examples:* Money you have in your wallet, in your home, in a safe deposit box, and on hand when you file your petition
    ☐ No
    ☑ Yes..............................................................................................................

Debtor 1    **Alexander Johnson**        Case number *(if known)* _____

| | | |
|---|---|---|
| | **Cash** | **$27,000.00** |

**17. Deposits of money**
   *Examples:* Checking, savings, or other financial accounts; certificates of deposit; shares in credit unions, brokerage houses, and other similar institutions. If you have multiple accounts with the same institution, list each.
   ☐ No
   ■ Yes.......................        Institution name:

| 17.1. | **Checking** | **Eastman Credit Union** | **$17,031.00** |
|---|---|---|---|
| 17.2. | **Savings** | **Eastman Credit Union** | **$2,025.00** |
| 17.3. | | **Investment UBS** | **$57,168.00** |

**18. Bonds, mutual funds, or publicly traded stocks**
   *Examples:* Bond funds, investment accounts with brokerage firms, money market accounts
   ■ No
   ☐ Yes.................        Institution or issuer name:

**19. Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture**
   ☐ No
   ■ Yes.  Give specific information about them...................

| Name of entity: | | % of ownership: | |
|---|---|---|---|
| **CB45** | | **100** % | **Unknown** |

**20. Government and corporate bonds and other negotiable and non-negotiable instruments**
   *Negotiable instruments* include personal checks, cashiers' checks, promissory notes, and money orders.
   *Non-negotiable instruments* are those you cannot transfer to someone by signing or delivering them.
   ■ No
   ☐ Yes. Give specific information about them
        Issuer name:

**21. Retirement or pension accounts**
   *Examples:* Interests in IRA, ERISA, Keogh, 401(k), 403(b), thrift savings accounts, or other pension or profit-sharing plans
   ☐ No
   ■ Yes. List each account separately.

| Type of account: | Institution name: | |
|---|---|---|
| **401(K)** | **NFL Player Benefits** | **$19,639.00** |

**22. Security deposits and prepayments**
   Your share of all unused deposits you have made so that you may continue service or use from a company
   *Examples:* Agreements with landlords, prepaid rent, public utilities (electric, gas, water), telecommunications companies, or others
   ☐ No
   ■ Yes. ....................        Institution name or individual:

| **Security Deposit for Rental** | | **$1,900.00** |
|---|---|---|

**23. Annuities** (A contract for a periodic payment of money to you, either for life or for a number of years)
   ■ No
   ☐ Yes.............        Issuer name and description.

| Debtor 1 | Alexander Johnson | Case number *(if known)* |
|---|---|---|

**24. Interests in an education IRA, in an account in a qualified ABLE program, or under a qualified state tuition program.**
26 U.S.C. §§ 530(b)(1), 529A(b), and 529(b)(1).
■ No
☐ Yes............. Institution name and description. Separately file the records of any interests.11 U.S.C. § 521(c):

**25. Trusts, equitable or future interests in property (other than anything listed in line 1), and rights or powers exercisable for your benefit**
■ No
☐ Yes.  Give specific information about them...

**26. Patents, copyrights, trademarks, trade secrets, and other intellectual property**
*Examples:* Internet domain names, websites, proceeds from royalties and licensing agreements
☐ No
■ Yes.  Give specific information about them...

| | |
|---|---|
| Logos<br>CB45 Logo and Chief Beast Logo<br>Both trademarked and copyrighted | Unknown |

**27. Licenses, franchises, and other general intangibles**
*Examples:* Building permits, exclusive licenses, cooperative association holdings, liquor licenses, professional licenses
■ No
☐ Yes.  Give specific information about them...

| Money or property owed to you? | Current value of the portion you own? Do not deduct secured claims or exemptions. |
|---|---|

**28.  Tax refunds owed to you**
■ No
☐ Yes. Give specific information about them, including whether you already filed the returns and the tax years.......

**29.  Family support**
*Examples:* Past due or lump sum alimony, spousal support, child support, maintenance, divorce settlement, property settlement
■ No
☐ Yes. Give specific information......

**30.  Other amounts someone owes you**
*Examples:* Unpaid wages, disability insurance payments, disability benefits, sick pay, vacation pay,  workers' compensation, Social Security benefits; unpaid loans you made to someone else
■ No
☐ Yes.  Give specific information..

**31.  Interests in insurance policies**
*Examples:* Health, disability, or life insurance; health savings account (HSA); credit, homeowner's, or renter's insurance
■ No
☐ Yes. Name the insurance company of each policy and list its value.

| Company name: | Beneficiary: | Surrender or refund value: |
|---|---|---|

**32.  Any interest in property that is due from you from someone who has died**
If you are the beneficiary of a living trust, expect proceeds from a life insurance policy, or are currently entitled to receive property because someone has died.
■ No
☐ Yes.  Give specific information..

**33.  Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment**
*Examples:* Accidents, employment disputes, insurance claims, or rights to sue
■ No
☐ Yes.  Describe each claim.........

Schedule A/B: Property

Debtor 1   **Alexander Johnson**                                    Case number *(if known)*

**34. Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims**
- ■ No
- ☐ Yes.  Describe each claim.........

**35. Any financial assets you did not already list**
- ■ No
- ☐ Yes.  Give specific information..

**36.** Add the dollar value of all of your entries from Part 4, including any entries for pages you have attached for Part 4. Write that number here.................................................................................................................

| $124,763.00 |

---

**Part 5:**   Describe Any Business-Related Property You Own or Have an Interest In. List any real estate in Part 1.

**37. Do you own or have any legal or equitable interest in any business-related property?**
- ☐ No. Go to Part 6.
- ■ Yes.  Go to line 38.

**Current value of the portion you own?**
Do not deduct secured claims or exemptions.

**38. Accounts receivable or commissions you already earned**
- ■ No
- ☐ Yes.  Describe.....

**39. Office equipment, furnishings, and supplies**
*Examples:* Business-related computers, software, modems, printers, copiers, fax machines, rugs, telephones, desks, chairs, electronic devices
- ■ No
- ☐ Yes.  Describe.....

**40. Machinery, fixtures, equipment, supplies you use in business, and tools of your trade**
- ☐ No
- ■ Yes.  Describe.....

| Speed and Agility Equipment ($100)<br>Boxing Equipment ($100) | $200.00 |

**41. Inventory**
- ■ No
- ☐ Yes.  Describe.....

**42. Interests in partnerships or joint ventures**
- ■ No
- ☐ Yes.  Give specific information about them...................
  - Name of entity:                                    % of ownership:

**43. Customer lists, mailing lists, or other compilations**
- ■ No.
- ☐ Do your lists include personally identifiable information (as defined in 11 U.S.C. § 101(41A))?
  - ■ No
  - ☐ Yes.  Describe.....

**44. Any business-related property you did not already list**
- ■ No

Debtor 1  **Alexander Johnson**                                     Case number *(if known)*

☐ Yes. Give specific information.........

45. **Add the dollar value of all of your entries from Part 5, including any entries for pages you have attached for Part 5. Write that number here**................................................................................................................

**$200.00**

| Part 6: | **Describe Any Farm- and Commercial Fishing-Related Property You Own or Have an Interest In.** |
|---------|---|
|         | If you own or have an interest in farmland, list it in Part 1. |

46. **Do you own or have any legal or equitable interest in any farm- or commercial fishing-related property?**

☑ No. Go to Part 7.

☐ Yes.  Go to line 47.

| Part 7: | **Describe All Property You Own or Have an Interest in That You Did Not List Above** |
|---------|---|

53. **Do you have other property of any kind you did not already list?**

*Examples:* Season tickets, country club membership

☑ No

☐ Yes. Give specific information.........

54. **Add the dollar value of all of your entries from Part 7. Write that number here** ....................................

**$0.00**

| Part 8: | **List the Totals of Each Part of this Form** |
|---------|---|

55. **Part 1: Total real estate, line 2** ...........................................................................................................      **$154,500.00**

56. **Part 2: Total vehicles, line 5**                                                      **$44,350.00**

57. **Part 3: Total personal and household items, line 15**                               **$4,380.00**

58. **Part 4: Total financial assets, line 36**                                          **$124,763.00**

59. **Part 5: Total business-related property, line 45**                                    **$200.00**

60. **Part 6: Total farm- and fishing-related property, line 52**                             **$0.00**

61. **Part 7: Total other property not listed, line 54**                             +        **$0.00**

62. **Total personal property.** Add lines 56 through 61...        **$173,693.00**      Copy personal property total      **$173,693.00**

63. **Total of all property on Schedule A/B.** Add line 55 + line 62                      **$328,193.00**

Official Form 106A/B                                Schedule A/B: Property                                      page 7

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com                                          Best Case Bankruptcy

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **Alexander Johnson** |
| | First Name     Middle Name     Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name     Middle Name     Last Name |
| United States Bankruptcy Court for the: | DISTRICT OF COLORADO |
| Case number | |
| (if known) | |

☐ Check if this is an amended filing

## Official Form 106C

# Schedule C: The Property You Claim as Exempt                    4/19

Be as complete and accurate as possible. If two married people are filing together, both are equally respons ble for supplying correct information. Using the property you listed on *Schedule A/B: Property* (Official Form 106A/B) as your source, list the property that you claim as exempt. If more space is needed, fill out and attach to this page as many copies of *Part 2: Additional Page* as necessary. On the top of any additional pages, write your name and case number (if known).

**For each item of property you claim as exempt, you must specify the amount of the exemption you claim. One way of doing so is to state a specific dollar amount as exempt. Alternatively, you may claim the full fair market value of the property being exempted up to the amount of any applicable statutory limit. Some exemptions—such as those for health aids, rights to receive certain benefits, and tax-exempt retirement funds—may be unlimited in dollar amount. However, if you claim an exemption of 100% of fair market value under a law that limits the exemption to a particular dollar amount and the value of the property is determined to exceed that amount, your exemption would be limited to the applicable statutory amount.**

### Part 1:    Identify the Property You Claim as Exempt

1. **Which set of exemptions are you claiming?** *Check one only, even if your spouse is filing with you.*

   ☑ You are claiming state and federal nonbankruptcy exemptions.   11 U.S.C. § 522(b)(3)

   ☐ You are claiming federal exemptions.   11 U.S.C. § 522(b)(2)

2. **For any property you list on *Schedule A/B* that you claim as exempt, fill in the information below.**

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own<br><br>Copy the value from *Schedule A/B* | Amount of the exemption you claim<br><br>*Check only one box for each exemption.* | | Specific laws that allow exemption |
|---|---|---|---|---|
| **2007 Chevy Tahoe 221876 miles**<br>Line from *Schedule A/B*: **3.1** | $3,287.00 | ☑ | $3,287.00 | Tenn. Code Ann. § 26-2-103 |
| | | ☐ | 100% of fair market value, up to any applicable statutory limit | |
| **2018 Chevy Tahoe 16532 miles**<br>Line from *Schedule A/B*: **3.2** | $41,063.00 | ☑ | $0.00 | Tenn. Code Ann. § 26-2-103 |
| | | ☐ | 100% of fair market value, up to any applicable statutory limit | |
| **Queen Sleep Number Bed, Bedroom Set**<br>Line from *Schedule A/B*: **6.1** | $2,000.00 | ☑ | $2,000.00 | Tenn. Code Ann. § 26-2-103 |
| | | ☐ | 100% of fair market value, up to any applicable statutory limit | |
| **Two Televisions ($500)**<br>**2012 Macbook ($250)**<br>**Playstation ($150)**<br>**Go-Pro ($100)**<br>**3 Headphones ($80)**<br>**Bose Speakers ($50)**<br>Line from *Schedule A/B*: **7.1** | $1,130.00 | ☑ | $1,130.00 | Tenn. Code Ann. § 26-2-103 |
| | | ☐ | 100% of fair market value, up to any applicable statutory limit | |

Debtor 1 **Alexander Johnson**

Case number (if known) _____

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own<br><br>Copy the value from *Schedule A/B* | Amount of the exemption you claim<br><br>*Check only one box for each exemption.* | | Specific laws that allow exemption |
|---|---|---|---|---|
| **Golf Clubs ($250)**<br>Line from *Schedule A/B*: **9.1** | $250.00 | ■ | $250.00 | **Tenn. Code Ann. § 26-2-103** |
| | | ☐ | 100% of fair market value, up to any applicable statutory limit | |
| **Misc mens clothing and accessories**<br>Line from *Schedule A/B*: **11.1** | $500.00 | ■ | $500.00 | **Tenn. Code Ann. § 26-2-104** |
| | | ☐ | 100% of fair market value, up to any applicable statutory limit | |
| **3 Michael Kors Watches**<br>Line from *Schedule A/B*: **12.1** | $400.00 | ■ | $400.00 | **Tenn. Code Ann. § 26-2-103** |
| | | ☐ | 100% of fair market value, up to any applicable statutory limit | |
| **Weed Eater**<br>Line from *Schedule A/B*: **14.1** | $100.00 | ■ | $100.00 | **Tenn. Code Ann. § 26-2-103** |
| | | ☐ | 100% of fair market value, up to any applicable statutory limit | |
| **Cash**<br>Line from *Schedule A/B*: **16.1** | $27,000.00 | ■ | $26.25 | **Tenn. Code Ann. §§ 26-2-106, 107** |
| | | ☐ | 100% of fair market value, up to any applicable statutory limit | |
| **Checking: Eastman Credit Union**<br>Line from *Schedule A/B*: **17.1** | $17,031.00 | ■ | $22,875.00 | **Tenn. Code Ann. §§ 26-2-106, 107** |
| | | ☐ | 100% of fair market value, up to any applicable statutory limit | |
| **Savings: Eastman Credit Union**<br>Line from *Schedule A/B*: **17.2** | $2,025.00 | ■ | $1,517.25 | **Tenn. Code Ann. §§ 26-2-106, 107** |
| | | ☐ | 100% of fair market value, up to any applicable statutory limit | |
| **401(K): NFL Player Benefits**<br>Line from *Schedule A/B*: **21.1** | $19,639.00 | ■ | $19,639.00 | **Tenn. Code Ann. § 26-2-111(1)(D)** |
| | | ☐ | 100% of fair market value, up to any applicable statutory limit | |
| **Speed and Agility Equipment ($100)**<br>**Boxing Equipment ($100)**<br>Line from *Schedule A/B*: **40.1** | $200.00 | ■ | $200.00 | **Tenn. Code Ann. § 26-2-111(4)** |
| | | ☐ | 100% of fair market value, up to any applicable statutory limit | |

3. **Are you claiming a homestead exemption of more than $170,350?**
(Subject to adjustment on 4/01/22 and every 3 years after that for cases filed on or after the date of adjustment.)

■ No

☐ Yes. Did you acquire the property covered by the exemption within 1,215 days before you filed this case?

    ☐ No

    ☐ Yes

**Fill in this information to identify your case:**

| Debtor 1 | **Alexander Johnson** | | |
|---|---|---|---|
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse if, filing) | First Name | Middle Name | Last Name |

United States Bankruptcy Court for the:    DISTRICT OF COLORADO

Case number
(if known)    _____

☐ Check if this is an amended filing

Official Form 106D
## Schedule D: Creditors Who Have Claims Secured by Property
12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).

**1. Do any creditors have claims secured by your property?**

☐ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.

■ Yes. Fill in all of the information below.

**Part 1:** List All Secured Claims

2. **List all secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim. If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor's name.

| | | **Column A** Amount of claim Do not deduct the value of collateral. | **Column B** Value of collateral that supports this claim | **Column C** Unsecured portion If any |
|---|---|---|---|---|
| **2.1** **Eastman Credit Union** Creditor's Name | Describe the property that secures the claim: **2018 Chevy Tahoe 16532 miles** | $52,003.00 | $41,063.00 | $10,940.00 |

**2021 Meadowview Lane**
**Kingsport, TN 37660**

Number, Street, City, State & Zip Code

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Nature of lien.** Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset) _____

**Who owes the debt?** Check one.
■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

Date debt was incurred _____    Last 4 digits of account number    **1717**

| **2.2** **Stearns Lending, LLC** Creditor's Name | Describe the property that secures the claim: **9100 Rocky Creek Road Lower Lake, CA 95457** | $238,441.00 | $309,017.89 | $0.00 |

**4 Hutton Center Drive**
**10th Floor**
**Santa Ana, CA 92707**

Number, Street, City, State & Zip Code

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Nature of lien.** Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset) _____

**Who owes the debt?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
■ At least one of the debtors and another
☐ Check if this claim relates to a community debt

Date debt was incurred _____    Last 4 digits of account number    _____

Debtor 1   **Alexander Johnson**

     First Name          Middle Name          Last Name

Case number (if known) _____

| | |
|---|---|
| **Add the dollar value of your entries in Column A on this page. Write that number here:** | **$290,444.00** |
| **If this is the last page of your form, add the dollar value totals from all pages.** **Write that number here:** | **$290,444.00** |

**Part 2:**  **List Others to Be Notified for a Debt That You Already Listed**

Use this page only if you have others to be notified about your bankruptcy for a debt that you already listed in Part 1. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the creditor in Part 1, and then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Part 1, list the additional creditors here. If you do not have additional persons to be notified for any debts in Part 1, do not fill out or submit this page.

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com          Best Case Bankruptcy

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **Alexander Johnson** |
| | First Name    Middle Name    Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name    Middle Name    Last Name |
| United States Bankruptcy Court for the: | DISTRICT OF COLORADO |
| Case number (if known) | |

☐ Check if this is an amended filing

## Official Form 106E/F
## Schedule E/F: Creditors Who Have Unsecured Claims                    12/15

Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY claims and Part 2 for creditors with NONPRIORITY claims. List the other party to any executory contracts or unexpired leases that could result in a claim.  Also list executory contracts on Schedule A/B: Property (Official Form 106A/B) and on Schedule G: Executory Contracts and Unexpired Leases (Official Form 106G). Do not include any creditors with partially secured claims that are listed in Schedule D: Creditors Who Have Claims Secured by Property. If more space is needed, copy the Part you need, fill it out, number the entries in the boxes on the left. Attach the Continuation Page to this page. If you have no information to report in a Part, do not file that Part. On the top of any additional pages, write your name and case number (if known).

**Part 1:**     List All of Your PRIORITY Unsecured Claims

1. **Do any creditors have priority unsecured claims against you?**
   ☐ No. Go to Part 2.
   ☑ Yes.

2. **List all of your priority unsecured claims.** If a creditor has more than one priority unsecured claim, list the creditor separately for each claim. For each claim listed, identify what type of claim it is. If a claim has both priority and nonpriority amounts, list that claim here and show both priority and nonpriority amounts. As much as possible, list the claims in alphabetical order according to the creditor's name. If you have more than two priority unsecured claims, fill out the Continuation Page of Part 1. If more than one creditor holds a particular claim, list the other creditors in Part 3.

   (For an explanation of each type of claim, see the instructions for this form in the instruction booklet.)

| | | | Total claim | Priority amount | Nonpriority amount |
|---|---|---|---|---|---|

**2.1** | **Colorado Department of Revenue**
Priority Creditor's Name
**1375 Sherman Street, Room 511**
**Denver, CO 80261**
Number Street City State Zip Code

**Who incurred the debt?** Check one.

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ **Check if this claim is for a  community debt**

**Is the claim subject to offset?**
☑ No
☐ Yes

Last 4 digits of account number _____    Total claim **$0.00**    Priority amount **$0.00**    Nonpriority amount **$0.00**

When was the debt incurred? _____

**As of the date you file, the claim is:** Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of PRIORITY unsecured claim:**

☐ Domestic support obligations
☑ Taxes and certain other debts you owe the government
☐ Claims for death or personal injury while you were intoxicated
☐ Other. Specify _____

**For Notice Purposes Only**

**2.2** | **Internal Revenue Service**
Priority Creditor's Name
**PO Box 7346**
**Philadelphia, PA 19101-7346**
Number Street City State Zip Code

**Who incurred the debt?** Check one.

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ **Check if this claim is for a  community debt**

**Is the claim subject to offset?**
☑ No
☐ Yes

Last 4 digits of account number _____    Total claim **$0.00**    Priority amount **$0.00**    Nonpriority amount **$0.00**

When was the debt incurred? _____

**As of the date you file, the claim is:** Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of PRIORITY unsecured claim:**

☐ Domestic support obligations
☑ Taxes and certain other debts you owe the government
☐ Claims for death or personal injury while you were intoxicated
☐ Other. Specify _____

**For Notice Purposes Only**

Debtor 1  **Alexander Johnson**                                  Case number (if known) _____

| **Part 2:** | **List All of Your NONPRIORITY Unsecured Claims** |

**3.   Do any creditors have nonpriority unsecured claims against you?**

☐ No. You have no hing to report in this part. Submit this form to the court with your other schedules.

■ Yes.

**4.   List all of your nonpriority unsecured claims in the alphabetical order of the creditor who holds each claim.** If a creditor has more than one nonpriority unsecured claim, list the creditor separately for each claim. For each claim listed, identify what type of claim it is. Do not list claims already included in Part 1. If more han one creditor holds a particular claim, list the other creditors in Part 3.If you have more than three nonpriority unsecured claims fill out the Continuation Page of Part 2.

|  |  | **Total claim** |
|---|---|---|

| 4.1 | **Eastman Credit Union** | Last 4 digits of account number   **1108** | **$19,778.00** |

Nonpriority Creditor's Name
**2021 Meadowview Lane**
**Kingsport, TN 37660**

When was the debt incurred?   _____

Number Street City State Zip Code

**Who incurred the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and one her
■ **Check if this claim is for a  community debt**

Is the claim subject to offset?

■ No
☐ Yes

**As of the date you file, the claim is:** Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify   _____

| 4.2 | **Ritchie, Dillard, Davies and Johnson P.C** | Last 4 digits of account number   _____ | **$900,436.32** |

Nonpriority Creditor's Name
**606 West Main Street, Suite 300**
**Knoxville, TN 37902**

When was the debt incurred?   _____

Number Street City State Zip Code

**Who incurred the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and ano her
☐ **Check if this claim is for a  community debt**

Is the claim subject to offset?

■ No
☐ Yes

**As of the date you file, the claim is:** Check all that apply

■ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify   **Services**

| **Part 3:** | **List Others to Be Notified About a Debt That You Already Listed** |

**5.** Use this page only if you have others to be notified about your bankruptcy, for a debt that you already listed in Parts 1 or 2. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the original creditor in Parts 1 or 2, then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Parts 1 or 2, list the additional creditors here. If you do not have additional persons to be notified for any debts in Parts 1 or 2, do not fill out or submit this page.

Name and Address
**Internal Revenue Service**
**Insolvency Unit**
**1999 Broadway**
**MS 5012 DEN**
**Denver, CO 80202-3025**

On which entry in Part 1 or Part 2 did you list the original creditor?
Line **2.2** of (Check one):

■ Part 1: Creditors with Priority Unsecured Claims
☐ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number   _____

Name and Address
**Office of the Attorney General**
**State of Colorado**

On which entry in Part 1 or Part 2 did you list the original creditor?
Line **2.1** of (Check one):

■ Part 1: Creditors with Priority Unsecured Claims
☐ Part 2: Creditors with Nonpriority Unsecured Claims

Official Form 106 E/F                  Schedule E/F: Creditors Who Have Unsecured Claims                  **Page 2 of 3**

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com                  Best Case Bankruptcy

| Debtor 1 | **Alexander Johnson** | | Case number (if known) | |

**1300 Broadway**
**Denver, CO 80203**

Last 4 digits of account number

| Name and Address | On which entry in Part 1 or Part 2 did you list the original creditor? |
|---|---|
| **Office of the Attorney General** **US Department of Justice** **950 Pennsylvania Avenue, NW** **Suite 4400** **Washington, DC 20530-0001** | Line **2.2** of (Check one): ■ Part 1: Creditors with Priority Unsecured Claims ☐ Part 2: Creditors with Nonpriority Unsecured Claims |

Last 4 digits of account number

| Name and Address | On which entry in Part 1 or Part 2 did you list the original creditor? |
|---|---|
| **Office of the US Attorney** **District of Colorado** **1801 California Street, Suite 1600** **Denver, CO 80202-2628** | Line **2.2** of (Check one): ■ Part 1: Creditors with Priority Unsecured Claims ☐ Part 2: Creditors with Nonpriority Unsecured Claims |

Last 4 digits of account number

| Name and Address | On which entry in Part 1 or Part 2 did you list the original creditor? |
|---|---|
| **State of Colorado** **Division of Securities** **1560 Broadway, Suite 900** **Denver, CO 80202-5150** | Line **2.1** of (Check one): ■ Part 1: Creditors with Priority Unsecured Claims ☐ Part 2: Creditors with Nonpriority Unsecured Claims |

Last 4 digits of account number

---

**Part 4:**   **Add the Amounts for Each Type of Unsecured Claim**

6.  Total the amounts of certain types of unsecured claims. This information is for statistical reporting purposes only. 28 U.S.C. §159. Add the amounts for each type of unsecured claim.

| | | | | | Total Claim |
|---|---|---|---|---|---|
| Total claims from Part 1 | 6a. | **Domestic support obligations** | 6a. | $ | 0.00 |
| | 6b. | **Taxes and certain other debts you owe the government** | 6b. | $ | 0.00 |
| | 6c. | **Claims for death or personal injury while you were intoxicated** | 6c. | $ | 0.00 |
| | 6d. | **Other.** Add all other priority unsecured claims. Write that amount here. | 6d. | $ | 0.00 |
| | 6e. | **Total Priority.** Add lines 6a through 6d. | 6e. | $ | 0.00 |

| | | | | | Total Claim |
|---|---|---|---|---|---|
| Total claims from Part 2 | 6f. | **Student loans** | 6f. | $ | |
| | 6g. | **Obligations arising out of a separation agreement or divorce that you did not report as priority claims** | 6g. | $ | 0.00 |
| | 6h. | **Debts to pension or profit-sharing plans, and other similar debts** | 6h. | $ | 0.00 |
| | 6i. | **Other.** Add all other nonpriority unsecured claims. Write that amount here. | 6i. | $ | 920,214.32 |
| | 6j. | **Total Nonpriority.** Add lines 6f through 6i. | 6j. | $ | 920,214.32 |

---

**Fill in this information to identify your case:**

Debtor 1  **Alexander Johnson**
First Name        Middle Name        Last Name

Debtor 2
(Spouse if, filing)  First Name        Middle Name        Last Name

United States Bankruptcy Court for the:  DISTRICT OF COLORADO

Case number
(if known)

☐ Check if this is an amended filing

## Official Form 106G
## Schedule G: Executory Contracts and Unexpired Leases            12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the additional page, fill it out, number the entries, and attach it to this page. On the top of any additional pages, write your name and case number (if known).

1. **Do you have any executory contracts or unexpired leases?**
   ☐ No. Check this box and file this form with the court with your other schedules.  You have nothing else to report on this form.
   ■ Yes. Fill in all of the information below even if the contacts of leases are listed on *Schedule A/B:Property* (Official Form 106 A/B).

2. **List separately each person or company with whom you have the contract or lease. Then state what each contract or lease is for (for example, rent, vehicle lease, cell phone).** See the instructions for this form in the instruction booklet for more examples of executory contracts and unexpired leases.

| Person or company with whom you have the contract or lease<br>Name, Number, Street, City, State and Z P Code | State what the contract or lease is for |
|---|---|
| 2.1  **The Grove at Cherry Creek Apartments**<br>**6107 S. Parker Road**<br>**Centennial, CO 80016** | **Rental Agreement** |

| **Fill in this information to identify your case:** |  |  |
|---|---|---|
| Debtor 1 | **Alexander Johnson** | |
| | First Name   Middle Name   Last Name | |
| Debtor 2 | | |
| (Spouse if, filing) | First Name   Middle Name   Last Name | |
| United States Bankruptcy Court for the: | DISTRICT OF COLORADO | |
| Case number (if known) | _____ | |

☐ Check if this is an amended filing

## Official Form 106H
## Schedule H: Your Codebtors                                    12/15

Codebtors are people or entities who are also liable for any debts you may have. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, and number the entries in the boxes on the left. Attach the Additional Page to this page. On the top of any Additional Pages, write your name and case number (if known). Answer every question.

**1. Do you have any codebtors?** (If you are filing a joint case, do not list either spouse as a codebtor.)

■ No
☐ Yes

**2. Within the last 8 years, have you lived in a community property state or territory?** (*Community property states and territories* include Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, and Wisconsin.)

■ No. Go to line 3.
☐ Yes. Did your spouse, former spouse, or legal equivalent live with you at the time?

**3. In Column 1, list all of your codebtors. Do not include your spouse as a codebtor if your spouse is filing with you. List the person shown in line 2 again as a codebtor only if that person is a guarantor or cosigner. Make sure you have listed the creditor on Schedule D (Official Form 106D), Schedule E/F (Official Form 106E/F), or Schedule G (Official Form 106G). Use Schedule D, Schedule E/F, or Schedule G to fill out Column 2.**

| *Column 1:* **Your codebtor** Name, Number, Street, City, State and Z P Code | *Column 2:* **The creditor to whom you owe the debt** Check all schedules that apply: |
|---|---|
| 3.1 _____ Name _____ Number   Street City           State        ZIP Code | ☐ Schedule D, line _____ ☐ Schedule E/F, line _____ ☐ Schedule G, line _____ |
| 3.2 _____ Name _____ Number   Street City           State        ZIP Code | ☐ Schedule D, line _____ ☐ Schedule E/F, line _____ ☐ Schedule G, line _____ |

Fill in this information to identify your case:

| | |
|---|---|
| Debtor 1 | **Alexander Johnson** |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | DISTRICT OF COLORADO |
| Case number (If known) | |

Check if this is:
☐ An amended filing
☐ A supplement showing postpetition chapter 13 income as of the following date:

_____
MM / DD/ YYYY

## Official Form 106I
## Schedule I: Your Income
12/15

Be as complete and accurate as possible. If two married people are filing together (Debtor 1 and Debtor 2), both are equally responsible for supplying correct information. If you are married and not filing jointly, and your spouse is living with you, include information about your spouse. If you are separated and your spouse is not filing with you, do not include information about your spouse. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

### Part 1:   Describe Employment

1. **Fill in your employment information.**

   If you have more than one job, attach a separate page with information about additional employers.

   Include part-time, seasonal, or self-employed work.

   Occupation may include student or homemaker, if it applies.

| | | Debtor 1 | Debtor 2 or non-filing spouse |
|---|---|---|---|
| Employment status | | ■ Employed<br>☐ Not employed | ☐ Employed<br>☐ Not employed |
| Occupation | | NFL | |
| Employer's name | | Denver Broncos | |
| Employer's address | | 13655 Broncos  Parkway<br>Englewood, CO 80112 | |
| How long employed there? | | 2 Years | |

### Part 2:   Give Details About Monthly Income

**Estimate monthly income as of the date you file this form.** If you have nothing to report for any line, write $0 in the space. Include your non-filing spouse unless you are separated.

If you or your non-filing spouse have more than one employer, combine the information for all employers for that person on the lines below. If you need more space, attach a separate sheet to this form.

| | | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|
| 2. | **List monthly gross wages, salary, and commissions** (before all payroll deductions).  If not paid monthly, calculate what the monthly wage would be. | 2. | $ 28,391.00 | $ N/A |
| 3. | **Estimate and list monthly overtime pay.** | 3. | +$ 0.00 | +$ N/A |
| 4. | **Calculate gross Income.**  Add line 2 + line 3. | 4. | $ 28,391.00 | $ N/A |

Debtor 1   **Alexander Johnson**                                    Case number (*if known*)

|  |  | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|
| **Copy line 4 here** | 4. | $ | 28,391.00 | $ N/A |

5. **List all payroll deductions:**

| | | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|
| 5a. **Tax, Medicare, and Social Security deductions** | 5a. | $ | 11,827.00 | $ N/A |
| 5b. **Mandatory contributions for retirement plans** | 5b. | $ | 0.00 | $ N/A |
| 5c. **Voluntary contributions for retirement plans** | 5c. | $ | 0.00 | $ N/A |
| 5d. **Required repayments of retirement fund loans** | 5d. | $ | 0.00 | $ N/A |
| 5e. **Insurance** | 5e. | $ | 0.00 | $ N/A |
| 5f. **Domestic support obligations** | 5f. | $ | 0.00 | $ N/A |
| 5g. **Union dues** | 5g. | $ | 0.00 | $ N/A |
| 5h. **Other deductions.** Specify: **Fines, Dues, other NFL Expenses** | 5h.+ | $ | 1,957.00 | + $ N/A |

6. **Add the payroll deductions.** Add lines 5a+5b+5c+5d+5e+5f+5g+5h.   6.   $ 13,784.00   $ N/A

7. **Calculate total monthly take-home pay.** Subtract line 6 from line 4.   7.   $ 14,607.00   $ N/A

8. **List all other income regularly received:**

8a. **Net income from rental property and from operating a business, profession, or farm**
Attach a statement for each property and business showing gross receipts, ordinary and necessary business expenses, and the total monthly net income.   8a.   $ 0.00   $ N/A

8b. **Interest and dividends**   8b.   $ 0.00   $ N/A

8c. **Family support payments that you, a non-filing spouse, or a dependent regularly receive**
Include alimony, spousal support, child support, maintenance, divorce settlement, and property settlement.   8c.   $ 0.00   $ N/A

8d. **Unemployment compensation**   8d.   $ 0.00   $ N/A

8e. **Social Security**   8e.   $ 0.00   $ N/A

8f. **Other government assistance that you regularly receive**
Include cash assistance and the value (if known) of any non-cash assistance that you receive, such as food stamps (benefits under the Supplemental Nutrition Assistance Program) or housing subsidies.
Specify:   8f.   $ 0.00   $ N/A

8g. **Pension or retirement income**   8g.   $ 0.00   $ N/A

8h. **Other monthly income.** Specify:   8h.+   $ 0.00   + $ N/A

9. **Add all other income.** Add lines 8a+8b+8c+8d+8e+8f+8g+8h.   9.   $ 0.00   $ N/A

10. **Calculate monthly income.** Add line 7 + line 9.   10.   $ 14,607.00   + $ N/A   = $ 14,607.00
Add the entries in line 10 for Debtor 1 and Debtor 2 or non-filing spouse.

11. **State all other regular contributions to the expenses that you list in** *Schedule J.*
Include contributions from an unmarried partner, members of your household, your dependents, your roommates, and other friends or relatives.
Do not include any amounts already included in lines 2-10 or amounts that are not available to pay expenses listed in *Schedule J.*
Specify:   11.   +$ 0.00

12. **Add the amount in the last column of line 10 to the amount in line 11.** The result is the combined monthly income.
Write that amount on the *Summary of Schedules* and *Statistical Summary of Certain Liabilities* and Related *Data,* if it applies   12.   $ 14,607.00

**Combined monthly income**

13. **Do you expect an increase or decrease within the year after you file this form?**
☐ No.
■ Yes. Explain: **Potential NFL Lockout eliminates Potential Cut from NFL at any time; Potential injury may significantly reduce income.**

Fill in this information to identify your case:

Debtor 1        **Alexander Johnson**

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:   DISTRICT OF COLORADO

Case number
(if known)

Check if this is:
☐ An amended filing
☐ A supplement showing postpetition chapter 13 expenses as of the following date:

_____
MM / DD / YYYY

Official Form 106J

## Schedule J: Your Expenses                                                  12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach another sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

### Part 1:   Describe Your Household

1.  **Is this a joint case?**

    ☐ No. Go to line 2.
    ☐ Yes. **Does Debtor 2 live in a separate household?**

    　　☐ No
    　　☐ Yes. Debtor 2 must file Official Form 106J-2, *Expenses for Separate Household* of Debtor 2.

2.  **Do you have dependents?**   ☐ No

    Do not list Debtor 1 and    ■ Yes.   Fill out this information for
    Debtor 2.                              each dependent.............

    Do not state the
    dependents names.

| Dependent's relationship to Debtor 1 or Debtor 2 | Dependent's age | Does dependent live with you? |
|---|---|---|
| **Mother** | | ■ No ☐ Yes |
| | | ☐ No ☐ Yes |
| | | ☐ No ☐ Yes |
| | | ☐ No ☐ Yes |

3.  **Do you expenses include expenses of people other than yourself and your dependents?**   ■ No   ☐ Yes

### Part 2:   Estimate Your Ongoing Monthly Expenses

Estimate your expenses as of your bankruptcy filing date unless you are using this form as a supplement in a Chapter 13 case to report expenses as of a date after the bankruptcy is filed. If this is a supplemental *Schedule J*, check the box at the top of the form and fill in the applicable date.

Include expenses paid for with non-cash government assistance if you know the value of such assistance and have included it on *Schedule I: Your Income* (Official Form 106I.)

| | **Your expenses** |
|---|---|

4.  **The rental or home ownership expenses for your residence.** Include first mortgage payments and any rent for the ground or lot.

    4.  $                    2,500.00

    **If not included in line 4:**

    4a.  Real estate taxes                                4a.  $        0.00
    4b.  Property, homeowner's, or renter's insurance     4b.  $       11.00
    4c.  Home maintenance, repair, and upkeep expenses    4c.  $       40.00
    4d.  Homeowner's association or condominium dues       4d.  $        0.00
5.  **Additional mortgage payments for your residence,** such as home equity loans   5.  $   0.00

Debtor 1 __Alexander Johnson__                     Case number (if known) _____

| | | | |
|---|---|---|---|
| 6. | **Utilities:** | | |
| | 6a.  Electricity, heat, natural gas | 6a. $ | 200.00 |
| | 6b.  Water, sewer, garbage collection | 6b. $ | 50.00 |
| | 6c.  Telephone, cell phone, Internet, satellite, and cable services | 6c. $ | 280.00 |
| | 6d.  Other. Specify: | 6d. $ | 0.00 |
| 7. | **Food and housekeeping supplies** | 7. $ | 910.00 |
| 8. | **Childcare and children's education costs** | 8. $ | 0.00 |
| 9. | **Clothing, laundry, and dry cleaning** | 9. $ | 200.00 |
| 10. | **Personal care products and services** | 10. $ | 2,000.00 |
| 11. | **Medical and dental expenses** | 11. $ | 50.00 |
| 12. | **Transportation.** Include gas, maintenance, bus or train fare. | | |
| | Do not include car payments. | 12. $ | 450.00 |
| 13. | **Entertainment, clubs, recreation, newspapers, magazines, and books** | 13. $ | 400.00 |
| 14. | **Charitable contributions and religious donations** | 14. $ | 100.00 |
| 15. | **Insurance.** | | |
| | Do not include insurance deducted from your pay or included in lines 4 or 20. | | |
| | 15a.  Life insurance | 15a. $ | 0.00 |
| | 15b.  Health insurance | 15b. $ | 0.00 |
| | 15c.  Vehicle insurance | 15c. $ | 550.00 |
| | 15d.  Other insurance. Specify: | 15d. $ | 0.00 |
| 16. | **Taxes.** Do not include taxes deducted from your pay or included in lines 4 or 20. | | |
| | Specify: | 16. $ | 0.00 |
| 17. | **Installment or lease payments:** | | |
| | 17a.  Car payments for Vehicle 1 | 17a. $ | 1,165.00 |
| | 17b.  Car payments for Vehicle 2 | 17b. $ | 0.00 |
| | 17c.  Other. Specify:  **Mortgage - California Property** | 17c. $ | 890.00 |
| | 17d.  Other. Specify: | 17d. $ | 0.00 |
| 18. | **Your payments of alimony, maintenance, and support that you did not report as deducted from your pay on line 5, _Schedule I, Your Income_ (Official Form 106I).** | 18. $ | 0.00 |
| 19. | **Other payments you make to support others who do not live with you.** | $ | 667.00 |
| | Specify:  **Advisory Fees** | 19. | |
| 20. | **Other real property expenses not included in lines 4 or 5 of this form or on _Schedule I: Your Income._** | | |
| | 20a.  Mortgages on other property | 20a. $ | 0.00 |
| | 20b.  Real estate taxes | 20b. $ | 0.00 |
| | 20c.  Property, homeowner's, or renter's insurance | 20c. $ | 0.00 |
| | 20d.  Maintenance, repair, and upkeep expenses | 20d. $ | 0.00 |
| | 20e.  Homeowner's association or condominium dues | 20e. $ | 0.00 |
| 21. | **Other:** Specify:  **Dogs** | 21. +$ | 250.00 |

| | | | |
|---|---|---|---|
| 22. | **Calculate your monthly expenses** | | |
| | 22a. Add lines 4 through 21. | $ | 10,713.00 |
| | 22b. Copy line 22 (monthly expenses for Debtor 2), if any, from Official Form 106J-2 | $ | |
| | 22c. Add line 22a and 22b.  The result is your monthly expenses. | $ | 10,713.00 |

| | | | |
|---|---|---|---|
| 23. | **Calculate your monthly net income.** | | |
| | 23a.  Copy line 12 _(your combined monthly income)_ from Schedule I. | 23a. $ | 14,607.00 |
| | 23b.  Copy your monthly expenses from line 22c above. | 23b. -$ | 10,713.00 |
| | 23c.  Subtract your monthly expenses from your monthly income.  The result is your _monthly net income._ | 23c. $ | 3,894.00 |

24. **Do you expect an increase or decrease in your expenses within the year after you file this form?**
    For example, do you expect to finish paying for your car loan within the year or do you expect your mortgage payment to increase or decrease because of a modification to the terms of your mortgage?

    ☐ No.

    ■ Yes.      Explain here: **Debtor expects to have a child in the first half of 2020.**

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **Alexander Johnson** |
| | First Name _____ Middle Name _____ Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name _____ Middle Name _____ Last Name |
| United States Bankruptcy Court for the: | DISTRICT OF COLORADO |
| Case number (if known) | _____ |

☐ Check if this is an amended filing

Official Form 106Dec

# Declaration About an Individual Debtor's Schedules

12/15

If two married people are filing together, both are equally responsible for supplying correct information.

**You must file this form whenever you file bankruptcy schedules or amended schedules. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.**

**Sign Below**

**Did you pay or agree to pay someone who is NOT an attorney to help you fill out bankruptcy forms?**

■ No

☐ Yes. Name of person _____   Attach *Bankruptcy Petition Preparer's Notice, Declaration, and Signature* (Official Form 119)

**Under penalty of perjury, I declare that I have read the summary and schedules filed with this declaration and that they are true and correct.**

X **/s/ Alexander Johnson**_____   X _____
  **Alexander Johnson**                        Signature of Debtor 2
  Signature of Debtor 1

  Date **November 25, 2019**_____   Date _____

Official Form 106Dec          **Declaration About an Individual Debtor's Schedules**

**Fill in this information to identify your case:**

Debtor 1    **Alexander Johnson**
First Name          Middle Name          Last Name

Debtor 2
(Spouse if, filing)    First Name          Middle Name          Last Name

United States Bankruptcy Court for the:    DISTRICT OF COLORADO

Case number
(if known)

☐ Check if this is an
amended filing

## Official Form 108
# Statement of Intention for Individuals Filing Under Chapter 7          12/15

**If you are an individual filing under chapter 7, you must fill out this form if:**

■ **creditors have claims secured by your property, or**

■ **you have leased personal property and the lease has not expired.**

**You must file this form with the court within 30 days after you file your bankruptcy petition or by the date set for the meeting of creditors, whichever is earlier, unless the court extends the time for cause. You must also send copies to the creditors and lessors you list on the form**

**If two married people are filing together in a joint case, both are equally responsible for supplying correct information. Both debtors must sign and date the form.**

**Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known).**

| Part 1: | List Your Creditors Who Have Secured Claims |
| --- | --- |

1. **For any creditors that you listed in Part 1 of Schedule D: Creditors Who Have Claims Secured by Property (Official Form 106D), fill in the information below.**

| Identify the creditor and the property that is collateral | What do you intend to do with the property that secures a debt? | Did you claim the property as exempt on Schedule C? |
| --- | --- | --- |
| Creditor's name: **Eastman Credit Union**<br><br>Description of property securing debt: **2018 Chevy Tahoe 16532 miles** | ☐ Surrender the property.<br>☐ Retain the property and redeem it.<br>■ Retain the property and enter into a *Reaffirmation Agreement.*<br>☐ Retain the property and [explain]: | ☐ No<br><br>■ Yes |
| Creditor's name: **Stearns Lending, LLC**<br><br>Description of property securing debt: **9100 Rocky Creek Road Lower Lake, CA 95457** | ☐ Surrender the property.<br>☐ Retain the property and redeem it.<br>☐ Retain the property and enter into a *Reaffirmation Agreement.*<br>■ Retain the property and [explain]:<br>**Continue Payments** | ■ No<br><br>☐ Yes |

| Part 2: | List Your Unexpired Personal Property Leases |
| --- | --- |

**For any unexpired personal property lease that you listed in Schedule G: Executory Contracts and Unexpired Leases (Official Form 106G), fill in the information below. Do not list real estate leases. Unexpired leases are leases that are still in effect; the lease period has not yet ended. You may assume an unexpired personal property lease if the trustee does not assume it. 11 U.S.C. § 365(p)(2).**

| Describe your unexpired personal property leases | Will the lease be assumed? |
| --- | --- |

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com          Best Case Bankruptcy

Debtor 1    **Alexander Johnson**                                                Case number (*if known*) _____

Lessor's name:
Description of leased
Property:                                                                      ☐ No

                                                                               ☐ Yes

Lessor's name:
Description of leased
Property:                                                                      ☐ No

                                                                               ☐ Yes

Lessor's name:
Description of leased
Property:                                                                      ☐ No

                                                                               ☐ Yes

Lessor's name:
Description of leased
Property:                                                                      ☐ No

                                                                               ☐ Yes

Lessor's name:
Description of leased
Property:                                                                      ☐ No

                                                                               ☐ Yes

Lessor's name:
Description of leased
Property:                                                                      ☐ No

                                                                               ☐ Yes

Lessor's name:
Description of leased
Property:                                                                      ☐ No

                                                                               ☐ Yes

**Part 3:**    **Sign Below**

**Under penalty of perjury, I declare that I have indicated my intention about any property of my estate that secures a debt and any personal property that is subject to an unexpired lease.**

X  **/s/ Alexander Johnson**                                X  _____
   **Alexander Johnson**                                        Signature of Debtor 2
   Signature of Debtor 1

   Date    **November 25, 2019**                               Date  _____

Official Form 108            **Statement of Intention for Individuals Filing Under Chapter 7**            page 2

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com                                    Best Case Bankruptcy

**Fill in this information to identify your case:**

Debtor 1    Alexander Johnson

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:   District of Colorado

Case number
(if known)

**Check one box only as directed in this form and in Form 122A-1Supp:**

☑ 1. There is no presumption of abuse.

☐ 2. The calculation to determine if a presumption of abuse applies will be made under *Chapter 7 Means Test Calculation* (Official Form 122A-2).

☐ 3. The Means Test does not apply now because of qualified military service but it could apply later.

☐ Check if this is an amended filing

## Official Form 122A - 1
# Chapter 7 Statement of Your Current Monthly Income

**12/15**

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for being accurate. If more space is needed, attach a separate sheet to this form. Include the line number to which the additional information applies. On the top of any additional pages, write your name and case number (if known). If you believe that you are exempted from a presumption of abuse because you do not have primarily consumer debts or because of qualifying military service, complete and file *Statement of Exemption from Presumption of Abuse Under § 707(b)(2)* (Official Form 122A-1Supp) with this form.

### Part 1:    Calculate Your Current Monthly Income

1. **What is your marital and filing status?** Check one only.

   ☐ **Not married**. Fill out Column A, lines 2-11.

   ☐ **Married and your spouse is filing with you.** Fill out both Columns A and B, lines 2-11.

   ☐ **Married and your spouse is NOT filing with you.** You and your spouse are:

      ☐ **Living in the same household and are not legally separated.** Fill out both Columns A and B, lines 2-11.

      ☐ **Living separately or are legally separated.** Fill out Column A, lines 2-11; do not fill out Column B. By checking this box, you declare under penalty of perjury that you and your spouse are legally separated under nonbankruptcy law that applies or that you and your spouse are living apart for reasons that do not include evading the Means Test requirements. 11 U.S.C § 707(b)(7)(B).

**Fill in the average monthly income that you received from all sources, derived during the 6 full months before you file this bankruptcy case.** 11 U.S.C. § 101(10A). For example, if you are filing on September 15, the 6-month period would be March 1 through August 31. If the amount of your monthly income varied during the 6 months, add the income for all 6 months and divide the total by 6. Fill in the result. Do not include any income amount more than once. For example, if both spouses own the same rental property, put the income from that property in one column only. If you have nothing to report for any line, write $0 in the space.

| | Column A<br>Debtor 1 | Column B<br>Debtor 2 or<br>non-filing spouse |
|---|---|---|
| 2. **Your gross wages, salary, tips, bonuses, overtime, and commissions** (before all payroll deductions). | $ _____ | $ _____ |
| 3. **Alimony and maintenance payments.** Do not include payments from a spouse if Column B is filled in. | $ _____ | $ _____ |
| 4. **All amounts from any source which are regularly paid for household expenses of you or your dependents, including child support.** Include regular contributions from an unmarried partner, members of your household, your dependents, parents, and roommates. Include regular contributions from a spouse only if Column B is not filled in. Do not include payments you listed on line 3. | $ _____ | $ _____ |

5. **Net income from operating a business, profession, or farm**

| | Debtor 1 | | |
|---|---|---|---|
| Gross receipts (before all deductions) | $ _____ | | |
| Ordinary and necessary operating expenses | -$ _____ | | |
| Net monthly income from a business, profession, or farm | $ _____  Copy here -> | $ _____ | $ _____ |

6. **Net income from rental and other real property**

| | Debtor 1 | | |
|---|---|---|---|
| Gross receipts (before all deductions) | $ _____ | | |
| Ordinary and necessary operating expenses | -$ _____ | | |
| Net monthly income from rental or other real property | $ _____  Copy here -> | $ _____ | $ _____ |

| 7. **Interest, dividends, and royalties** | $ _____ | $ _____ |
|---|---|---|

Debtor 1    **Alexander Johnson** _____     Case number (*if known*) _____

|  | Column A<br>Debtor 1 | Column B<br>Debtor 2 or<br>non-filing spouse |
|---|---|---|
| 8. **Unemployment compensation** | $ _____ | $ _____ |

Do not enter the amount if you contend that the amount received was a benefit under
the Social Security Act. Instead, list it here:

For you _____ $ _____

For your spouse _____ $ _____

9. **Pension or retirement income.** Do not include any amount received that was a
benefit under the Social Security Act.      $ _____    $ _____

10. **Income from all other sources not listed above.** Specify the source and amount.
Do not include any benefits received under the Social Security Act or payments
received as a victim of a war crime, a crime against humanity, or international or
domestic terrorism. If necessary, list other sources on a separate page and put the
total below.

. _____    $ _____    $ _____

_____    $ _____    $ _____

Total amounts from separate pages, if any.    + $ _____    $ _____

11. **Calculate your total current monthly income.** Add lines 2 through 10 for
each column. Then add the total for Column A to the total for Column B.

$ _____ + $ _____ = $ _____

**Total current monthly
income**

---

| **Part 2:** | Determine Whether the Means Test Applies to You |
|---|---|

12. **Calculate your current monthly income for the year.** Follow these steps:

12a. Copy your total current monthly income from line 11 ..................... **Copy line 11 here=>**    $ _____

Multiply by 12 (the number of months in a year)      **x 12**

12b. The result is your annual income for this part of the form    12b. $ _____

13. **Calculate the median family income that applies to you.** Follow these steps:

Fill in the state in which you live.    [_____]

Fill in the number of people in your household.    [_____]

Fill in the median family income for your state and size of household. ...................
To find a list of applicable median income amounts, go online using the link specified in the separate instructions
for this form. This list may also be available at the bankruptcy clerk's office.    13. $ _____

14. **How do the lines compare?**

14a. ☐ Line 12b is less than or equal to line 13. On the top of page 1, check box 1, *There is no presumption of abuse.*
Go to Part 3.

14b. ☐ Line 12b is more than line 13. On the top of page 1, check box 2, *The presumption of abuse is determined by Form 122A-2.*
Go to Part 3 and fill out Form 122A-2.

| **Part 3:** | Sign Below |
|---|---|

By signing here, I declare under penalty of perjury that the information on this statement and in any attachments is true and correct.

**X** **/s/ Alexander Johnson** _____

**Alexander Johnson**
Signature of Debtor 1

Date   **November 25, 2019** _____
     MM / DD / YYYY

If you checked line 14a, do NOT fill out or file Form 122A-2.

If you checked line 14b, fill out Form 122A-2 and file it with this form.

---

| Fill in this information to identify your case: | |
|---|---|
| Debtor 1 | **Alexander Johnson** |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | District of Colorado |
| Case number (if known) | |

☐ Check if this is an amended filing

## Official Form 122A - 1Supp
## Statement of Exemption from Presumption of Abuse Under § 707(b)(2)     12/15

File this supplement together with *Chapter 7 Statement of Your Current Monthly Income* (Official Form 122A-1), if you believe that you are exempted from a presumption of abuse. Be as complete and accurate as possible. If two married people are filing together, and any of the exclusions in this statement applies to only one of you, the other person should complete a separate Form 122A-1 If you believe that this is required by 11 U.S.C. § 707(b)(2)(C).

### Part 1     Identify the Kind of Debts You Have

1. **Are your debts primarily consumer debts?** *Consumer debts* are defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose." Make sure that your answer is consistent with the answer you gave at line 16 of the *Voluntary Petition for Individuals Filing for Bankruptcy* (Official Form 1).

   ■ No.   Go to Form 122A-1; on the top of page 1 of that form, check box 1, *There is no presumption of abuse,* and sign Part 3. Then submit this supplement with the signed Form 122A-1.

   ☐ Yes.  Go to Part 2.

### Part 2:     Determine Whether Military Service Provisions Apply to You

2. **Are you a disabled veteran** (as defined in 38 U.S.C. § 3741(1))?
   ☐ No.   Go to line 3.
   ☐ Yes.  Did you incur debts mostly while you were on active duty or while you were performing a homeland defense activity? 10 U.S.C. § 101(d)(1); 32 U.S.C. § 901(1).
      ☐ No.   Go to line 3.
      ☐ Yes.  Go to Form 122A-1: on the top of page 1 of that form, check box 1, *There is no presumption of abuse,* and sign Part 3. Then submit this supplement with the signed Form 122A-1.

3. **Are you or have you been a Reservist or member of the National Guard?**
   ☐ No.   Complete Form 122A-1. Do not submit this supplement.
   ☐ Yes.  Were you called to active duty or did you perform a homeland defense activity? 10 U.S.C. § 101(d)(1); 32 U.S.C. § 901(1).
      ☐ No.   Complete Form 122A-1. Do not submit this supplement.
      ☐ Yes.  Check any one of the following categories that applies:

         ☐ **I was called to active duty after September 11, 2001,** for at least 90 days and remain on active duty.

         ☐ **I was called to active duty after September 11, 2001,** for at least 90 days and was released from active duty on _____, which is fewer than 540 days before I file this bankruptcy case.

         ☐ **I am performing a homeland defense activity for at least 90 days.**

         ☐ **I performed a homeland defense activity for at least 90 days,** ending on _____, which is fewer than 540 days before I file this bankruptcy case.

> If you checked one of the categories to the left, go to Form 122A-1. On the top of page 1 of Form 122A-1, check box 3, *The Means Test does not apply now,* and sign Part 3. Then submit this supplement with the signed Form 122A-1. You are not required to fill out the rest of Official Form 122A-1 during the exclusion period. The *exclusion period* means the time you are on active duty or are performing a homeland defense activity, and for 540 days afterward. 11 U.S.C. § 707(b)(2)(D)(ii).
>
> If your exclusion period ends before your case is closed, you may have to file an amended form later.

**Fill in this information to identify your case and this filing:**

| | |
|---|---|
| Debtor 1 | **Alexander Johnson** |
| | First Name    Middle Name    Last Name |
| Debtor 2 | |
| (Spouse, if filing) | First Name    Middle Name    Last Name |
| United States Bankruptcy Court for the: | DISTRICT OF COLORADO |
| Case number | |

■ Check if this is an amended filing

## Official Form 106A/B
# Schedule A/B: Property                                    12/15

In each category, separately list and describe items. List an asset only once.  If an asset fits in more than one category, list the asset in the category where you think it fits best.  Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:**  Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In

1.  Do you own or have any legal or equitable interest in any residence, building, land, or similar property?

☐ No. Go to Part 2.

■ Yes.  Where is the property?

---

**1.1**

**9100 Rocky Creek Road**
Street address, if available, or other description

**Lower Lake          CA     95457-0000**
City                State      ZIP Code

**Lake**
County

**What is the property?** Check all that apply

■ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
■ Investment property
☐ Timeshare
☐ Other _____

**Who has an interest in the property?** Check one

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
■ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number:

**50% interest**

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **$309,000.00** | **$154,500.00** |

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.

_____

☐ Check if this is community property
(see instructions)

---

2.  **Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here.............................................................................=>**

**$154,500.00**

**Part 2:**  Describe Your Vehicles

Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not? Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

---

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com                                         Best Case Bankruptcy

Debtor 1    **Alexander Johnson**                                          Case number *(if known)*

3. **Cars, vans, trucks, tractors, sport utility vehicles, motorcycles**

☐ No
■ Yes

| 3.1 | Make: | **Chevy** | **Who has an interest in the property?** Check one | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.* |
|---|---|---|---|---|

3.1
Make: **Chevy**
Model: **Tahoe**
Year: **2007**
Approximate mileage: **221876**
Other information:

**Who has an interest in the property?** Check one
■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this is community property
(see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

Current value of the entire property?    Current value of the portion you own?
**$3,287.00**    **$3,287.00**

3.2
Make: **Chevy**
Model: **Tahoe**
Year: **2018**
Approximate mileage: **16532**
Other information:

**Who has an interest in the property?** Check one
■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this is community property
(see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

Current value of the entire property?    Current value of the portion you own?
**$41,063.00**    **$41,063.00**

4. **Watercraft, aircraft, motor homes, ATVs and other recreational vehicles, other vehicles, and accessories**
*Examples:* Boats, trailers, motors, personal watercraft, fishing vessels, snowmobiles, motorcycle accessories

■ No
☐ Yes

5   Add the dollar value of the portion you own for all of your entries from Part 2, including any entries for pages you have attached for Part 2. Write that number here...........................................................=>    **$44,350.00**

**Part 3:   Describe Your Personal and  Household Items**

| Do you own or have any legal or equitable interest in any of the following items? | Current value of the portion you own? Do not deduct secured claims or exemptions. |
|---|---|

6. **Household goods and furnishings**
*Examples:* Major appliances, furniture, linens, china, kitchenware
☐ No
■ Yes. Describe.....

| **Queen Sleep Number Bed, Bedroom Set** | **$2,000.00** |
|---|---|

7. **Electronics**
*Examples:* Televisions and radios; audio, video, stereo, and digital equipment; computers, printers, scanners; music collections; electronic devices including cell phones, cameras, media players, games
☐ No
■ Yes. Describe.....

**Two Televisions ($500)**
**2012 Macbook ($250)**
**Playstation ($150)**
**Go-Pro ($100)**
**3 Headphones ($80)**
**Bose Speakers ($50)**    **$1,130.00**

Debtor 1    **Alexander Johnson**                                     Case number *(if known)*

8. **Collectibles of value**
   *Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; stamp, coin, or baseball card collections; other collections, memorabilia, collectibles
   ■ No
   ☐ Yes.  Describe.....

9. **Equipment for sports and hobbies**
   *Examples:* Sports, photographic, exercise, and other hobby equipment; bicycles, pool tables, golf clubs, skis; canoes and kayaks; carpentry tools; musical instruments
   ☐ No
   ■ Yes.  Describe.....

   | Golf Clubs ($250) | $250.00 |
   |---|---|

10. **Firearms**
    *Examples:* Pistols, rifles, shotguns, ammunition, and related equipment
    ■ No
    ☐ Yes.  Describe.....

11. **Clothes**
    *Examples:* Everyday clothes, furs, leather coats, designer wear, shoes, accessories
    ☐ No
    ■ Yes.  Describe.....

    | Misc mens clothing and accessories | $500.00 |
    |---|---|

12. **Jewelry**
    *Examples:* Everyday jewelry, costume jewelry, engagement rings, wedding rings, heirloom jewelry, watches, gems, gold, silver
    ☐ No
    ■ Yes.  Describe.....

    | 3 Michael Kors Watches | $400.00 |
    |---|---|

13. **Non-farm animals**
    *Examples:* Dogs, cats, birds, horses
    ■ No
    ☐ Yes.  Describe.....

14. **Any other personal and household items you did not already list, including any health aids you did not list**
    ☐ No
    ■ Yes.  Give specific information.....

    | Weed Eater | $100.00 |
    |---|---|

15. **Add the dollar value of all of your entries from Part 3, including any entries for pages you have attached for Part 3. Write that number here** ................................................................

    | $4,380.00 |
    |---|

**Part 4:**  Describe Your Financial Assets

Do you own or have any legal or equitable interest in any of the following?                Current value of the portion you own?
                                                                                            Do not deduct secured claims or exemptions.

16. **Cash**
    *Examples:* Money you have in your wallet, in your home, in a safe deposit box, and on hand when you file your petition
    ☐ No
    ■ Yes........................................................................................................

| Debtor 1 | **Alexander Johnson** | Case number *(if known)* | |

| | | **Cash** | **$27,000.00** |

**17. Deposits of money**
    *Examples:* Checking, savings, or other financial accounts; certificates of deposit; shares in credit unions, brokerage houses, and other similar
        institutions. If you have multiple accounts with the same institution, list each.

☐ No
■ Yes.......................
                         Institution name:

| 17.1. | **Checking** | **Eastman Credit Union** | **$17,031.00** |
| 17.2. | **Savings** | **Eastman Credit Union** | **$2,025.00** |
| 17.3. | | **Investment UBS** | **$57,168.00** |

**18. Bonds, mutual funds, or publicly traded stocks**
    *Examples:* Bond funds, investment accounts with brokerage firms, money market accounts
■ No
☐ Yes.................
                Institution or issuer name:

**19. Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and
    joint venture**
☐ No
■ Yes.  Give specific information about them...................

| Name of entity: | | % of ownership: | |
| **CB45** | | **100** % | **Unknown** |

**20. Government and corporate bonds and other negotiable and non-negotiable instruments**
    *Negotiable instruments* include personal checks, cashiers' checks, promissory notes, and money orders.
    *Non-negotiable instruments* are those you cannot transfer to someone by signing or delivering them.
■ No
☐ Yes. Give specific information about them
                Issuer name:

**21. Retirement or pension accounts**
    *Examples:* Interests in IRA, ERISA, Keogh, 401(k), 403(b), thrift savings accounts, or other pension or profit-sharing plans
☐ No
■ Yes. List each account separately.

| Type of account: | Institution name: | | |
| **401(K)** | **NFL Player Benefits** | | **$19,639.00** |

**22. Security deposits and prepayments**
    Your share of all unused deposits you have made so that you may continue service or use from a company
    *Examples:* Agreements with landlords, prepaid rent, public utilities (electric, gas, water), telecommunications companies, or others
☐ No
■ Yes. .....................
                       Institution name or individual:

| **Security Deposit for
Rental** | | | **$1,900.00** |

**23. Annuities** (A contract for a periodic payment of money to you, either for life or for a number of years)
■ No
☐ Yes.............
          Issuer name and description.

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com             Best Case Bankruptcy

| Debtor 1 | Alexander Johnson | Case number *(if known)* |
|---|---|---|

**24. Interests in an education IRA, in an account in a qualified ABLE program, or under a qualified state tuition program.**
26 U.S.C. §§ 530(b)(1), 529A(b), and 529(b)(1).

■ No
☐ Yes............    Institution name and description. Separately file the records of any interests.11 U.S.C. § 521(c):

**25. Trusts, equitable or future interests in property (other than anything listed in line 1), and rights or powers exercisable for your benefit**

■ No
☐ Yes.  Give specific information about them...

**26.  Patents, copyrights, trademarks, trade secrets, and other intellectual property**
   *Examples:* Internet domain names, websites, proceeds from royalties and licensing agreements

☐ No
■ Yes.  Give specific information about them...

| | |
|---|---|
| Logos<br>CB45 Logo and Chief Beast Logo<br>Both trademarked and copyrighted | Unknown |

**27.  Licenses, franchises, and other general intangibles**
   *Examples:* Building permits, exclusive licenses, cooperative association holdings, liquor licenses, professional licenses

■ No
☐ Yes.  Give specific information about them...

| Money or property owed to you? | Current value of the portion you own?<br>Do not deduct secured claims or exemptions. |
|---|---|

**28.  Tax refunds owed to you**

■ No
☐ Yes. Give specific information about them, including whether you already filed the returns and the tax years.......

**29.  Family support**
   *Examples:* Past due or lump sum alimony, spousal support, child support, maintenance, divorce settlement, property settlement

■ No
☐ Yes. Give specific information......

**30.  Other amounts someone owes you**
   *Examples:* Unpaid wages, disability insurance payments, disability benefits, sick pay, vacation pay,  workers' compensation, Social Security benefits; unpaid loans you made to someone else

■ No
☐ Yes.  Give specific information..

**31.  Interests in insurance policies**
   *Examples:* Health, disability, or life insurance; health savings account (HSA); credit, homeowner's, or renter's insurance

■ No
☐ Yes. Name the insurance company of each policy and list its value.
      Company name:                    Beneficiary:                    Surrender or refund value:

**32.  Any interest in property that is due from you from someone who has died**
   If you are the beneficiary of a living trust, expect proceeds from a life insurance policy, or are currently entitled to receive property because someone has died.

■ No
☐ Yes.  Give specific information..

**33.  Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment**
   *Examples:* Accidents, employment disputes, insurance claims, or rights to sue

■ No
☐ Yes.  Describe each claim.........

Debtor 1   **Alexander Johnson**                                          Case number *(if known)*

**34. Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims**
- ■ No
- ☐ Yes.  Describe each claim.........

**35. Any financial assets you did not already list**
- ■ No
- ☐ Yes.  Give specific information..

**36.** Add the dollar value of all of your entries from Part 4, including any entries for pages you have attached
for Part 4. Write that number here...................................................................................................................

| $124,763.00 |
| --- |

| **Part 5:** | Describe Any Business-Related Property You Own or Have an Interest In. List any real estate in Part 1. |
| --- | --- |

**37. Do you own or have any legal or equitable interest in any business-related property?**
- ☐ No. Go to Part 6.
- ■ Yes.  Go to line 38.

**Current value of the portion you own?**
Do not deduct secured claims or exemptions.

**38. Accounts receivable or commissions you already earned**
- ■ No
- ☐ Yes.  Describe.....

**39. Office equipment, furnishings, and supplies**
*Examples:* Business-related computers, software, modems, printers, copiers, fax machines, rugs, telephones, desks, chairs, electronic devices
- ■ No
- ☐ Yes.  Describe.....

**40. Machinery, fixtures, equipment, supplies you use in business, and tools of your trade**
- ☐ No
- ■ Yes.  Describe.....

| Speed and Agility Equipment ($100)<br>Boxing Equipment ($100) | $200.00 |
| --- | --- |

**41. Inventory**
- ■ No
- ☐ Yes.  Describe.....

**42. Interests in partnerships or joint ventures**
- ■ No
- ☐ Yes.  Give specific information about them...................
  Name of entity:                                    % of ownership:

**43. Customer lists, mailing lists, or other compilations**
- ■ No.
- ☐ **Do your lists include personally identifiable information** (as defined in 11 U.S.C. § 101(41A))?

  - ■ No
  - ☐ Yes.  Describe.....

**44. Any business-related property you did not already list**
- ■ No

Official Form 106A/B                          Schedule A/B: Property                                    page 6

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com                                    Best Case Bankruptcy

Debtor 1    **Alexander Johnson**                                         Case number *(if known)*

☐ Yes. Give specific information.........

45.  **Add the dollar value of all of your entries from Part 5, including any entries for pages you have attached for Part 5. Write that number here**..................................................................................................................    **$200.00**

| Part 6: | Describe Any Farm- and Commercial Fishing-Related Property You Own or Have an Interest In. |
|---|---|
| | If you own or have an interest in farmland, list it in Part 1. |

46.  **Do you own or have any legal or equitable interest in any farm- or commercial fishing-related property?**

☑ No. Go to Part 7.

☐ Yes.  Go to line 47.

| Part 7: | Describe All Property You Own or Have an Interest in That You Did Not List Above |
|---|---|

53.  **Do you have other property of any kind you did not already list?**

*Examples:* Season tickets, country club membership

☑ No

☐ Yes. Give specific information.........

54.  **Add the dollar value of all of your entries from Part 7. Write that number here** .....................................    **$0.00**

| Part 8: | List the Totals of Each Part of this Form |
|---|---|

55.  **Part 1: Total real estate, line 2** ........................................................................................................    **$154,500.00**

56.  **Part 2: Total vehicles, line 5**    $44,350.00

57.  **Part 3: Total personal and household items, line 15**    $4,380.00

58.  **Part 4: Total financial assets, line 36**    $124,763.00

59.  **Part 5: Total business-related property, line 45**    $200.00

60.  **Part 6: Total farm- and fishing-related property, line 52**    $0.00

61.  **Part 7: Total other property not listed, line 54**    +    $0.00

62.  **Total personal property. Add lines 56 through 61**...    **$173,693.00**    Copy personal property total    **$173,693.00**

63.  **Total of all property on Schedule A/B. Add line 55 + line 62**    **$328,193.00**

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com                    Best Case Bankruptcy

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **Alexander Johnson** |
| | First Name · Middle Name · Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name · Middle Name · Last Name |
| United States Bankruptcy Court for the: | DISTRICT OF COLORADO |
| Case number | |
| (if known) | |

■ Check if this is an amended filing

## Official Form 106C
## Schedule C: The Property You Claim as Exempt                              4/19

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. Using the property you listed on *Schedule A/B: Property* (Official Form 106A/B) as your source, list the property that you claim as exempt. If more space is needed, fill out and attach to this page as many copies of *Part 2: Additional Page* as necessary. On the top of any additional pages, write your name and case number (if known).

**For each item of property you claim as exempt, you must specify the amount of the exemption you claim. One way of doing so is to state a specific dollar amount as exempt. Alternatively, you may claim the full fair market value of the property being exempted up to the amount of any applicable statutory limit. Some exemptions—such as those for health aids, rights to receive certain benefits, and tax-exempt retirement funds—may be unlimited in dollar amount. However, if you claim an exemption of 100% of fair market value under a law that limits the exemption to a particular dollar amount and the value of the property is determined to exceed that amount, your exemption would be limited to the applicable statutory amount.**

**Part 1:**   Identify the Property You Claim as Exempt

1. **Which set of exemptions are you claiming?** *Check one only, even if your spouse is filing with you.*

   ■ You are claiming state and federal nonbankruptcy exemptions.   11 U.S.C. § 522(b)(3)

   ☐ You are claiming federal exemptions.   11 U.S.C. § 522(b)(2)

2. **For any property you list on *Schedule A/B* that you claim as exempt, fill in the information below.**

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own<br>Copy the value from *Schedule A/B* | Amount of the exemption you claim<br><br>*Check only one box for each exemption.* | Specific laws that allow exemption |
|---|---|---|---|
| **2007 Chevy Tahoe 221876 miles**<br>Line from *Schedule A/B*: **3.1** | $3,287.00 | ■ $3,287.00<br>☐ 100% of fair market value, up to any applicable statutory limit | Tenn. Code Ann. § 26-2-103 |
| **2018 Chevy Tahoe 16532 miles**<br>Line from *Schedule A/B*: **3.2** | $41,063.00 | ■ $0.00<br>☐ 100% of fair market value, up to any applicable statutory limit | Tenn. Code Ann. § 26-2-103 |
| **Queen Sleep Number Bed, Bedroom Set**<br>Line from *Schedule A/B*: **6.1** | $2,000.00 | ■ $2,000.00<br>☐ 100% of fair market value, up to any applicable statutory limit | Tenn. Code Ann. § 26-2-103 |
| **Two Televisions ($500)**<br>**2012 Macbook ($250)**<br>**Playstation ($150)**<br>**Go-Pro ($100)**<br>**3 Headphones ($80)**<br>**Bose Speakers ($50)**<br>Line from *Schedule A/B*: **7.1** | $1,130.00 | ■ $1,130.00<br>☐ 100% of fair market value, up to any applicable statutory limit | Tenn. Code Ann. § 26-2-103 |

Debtor 1  **Alexander Johnson**                                                    Case number (if known)

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own<br><br>Copy the value from *Schedule A/B* | Amount of the exemption you claim<br><br>*Check only one box for each exemption.* | Specific laws that allow exemption |
|---|---|---|---|
| **Golf Clubs ($250)**<br>Line from *Schedule A/B*: **9.1** | $250.00 | ■ $250.00<br>☐ 100% of fair market value, up to any applicable statutory limit | **Tenn. Code Ann. § 26-2-103** |
| **Misc mens clothing and accessories**<br>Line from *Schedule A/B*: **11.1** | $500.00 | ■ $500.00<br>☐ 100% of fair market value, up to any applicable statutory limit | **Tenn. Code Ann. § 26-2-104** |
| **3 Michael Kors Watches**<br>Line from *Schedule A/B*: **12.1** | $400.00 | ■ $400.00<br>☐ 100% of fair market value, up to any applicable statutory limit | **Tenn. Code Ann. § 26-2-103** |
| **Weed Eater**<br>Line from *Schedule A/B*: **14.1** | $100.00 | ■ $100.00<br>☐ 100% of fair market value, up to any applicable statutory limit | **Tenn. Code Ann. § 26-2-103** |
| **Cash**<br>Line from *Schedule A/B*: **16.1** | $27,000.00 | ■ 75%<br>☐ 100% of fair market value, up to any applicable statutory limit | **Tenn. Code Ann. §§ 26-2-106, 107** |
| **Checking: Eastman Credit Union**<br>Line from *Schedule A/B*: **17.1** | $17,031.00 | ■ 75%<br>☐ 100% of fair market value, up to any applicable statutory limit | **Tenn. Code Ann. §§ 26-2-106, 107** |
| **Savings: Eastman Credit Union**<br>Line from *Schedule A/B*: **17.2** | $2,025.00 | ■ $1,517.25<br>☐ 100% of fair market value, up to any applicable statutory limit | **Tenn. Code Ann. §§ 26-2-106, 107** |
| **Investment UBS**<br>Line from *Schedule A/B*: **17.3** | $57,168.00 | ■ 75%<br>☐ 100% of fair market value, up to any applicable statutory limit | **Tenn. Code Ann. §§ 26-2-106, 107** |
| **401(K): NFL Player Benefits**<br>Line from *Schedule A/B*: **21.1** | $19,639.00 | ■ $19,639.00<br>☐ 100% of fair market value, up to any applicable statutory limit | **Tenn. Code Ann. § 26-2-111(1)(D)** |
| **Speed and Agility Equipment ($100)**<br>**Boxing Equipment ($100)**<br>Line from *Schedule A/B*: **40.1** | $200.00 | ■ $200.00<br>☐ 100% of fair market value, up to any applicable statutory limit | **Tenn. Code Ann. § 26-2-111(4)** |

3.  **Are you claiming a homestead exemption of more than $170,350?**
    (Subject to adjustment on 4/01/22 and every 3 years after that for cases filed on or after the date of adjustment.)

    ■  No

    ☐  Yes. Did you acquire the property covered by the exemption within 1,215 days before you filed this case?

    　　☐  No
    　　☐  Yes



| Employee Name: | Alexander J Johnson | Pay Date: | 11/8/2019 |
|---|---|---|---|
| Employee #: | 302251 | Pay Period: | 10/28/2019 - 11/10/2019 |
| Pay Frequency: | Bi-Weekly | Deposit Advice # | |
| Department: | Players | Employer Name: | PDB Sports LTD |
| Job Title: | Player | Employer Phone: | 303-649-9000 |

| Employee Address | Employer Address | | |
|---|---|---|---|
| 6105 S Parker Rd | 13655 Broncos Parkway | | |
| 5107 | Englewood, CO | Federal Filing Status: Single | State Filing Status: Single (CO) |
| Centennial, CO | 80112 | Federal Exemptions: 1/$0.00 | State Exemptions: 1 (CO) |
| 80016 | | | |

| | Current 10/28/2019 - 11/10/2019 | | | YID As of 11/10/2019 | |
|---|---|---|---|---|---|
| | Hours/Units | Rate | Amount | Hours/Units | Amount |
| **Earnings** | | | $ 67,058.82 | | $ 352,754.32 |
| Mini Camp | | | | | $ 1,142.84 |
| Performance Based Pay | | | | | $ 4,773.59 |
| Player Appearances | | | | | $ 7,410.81 |
| Player Per Diem | | | | | $ 13,428.55 |
| Player Salary | | $ 67,058.82 | | | $ 301,764.69 |
| Practice Squad Salary | | | | | $ 15,200.00 |
| Weight and Conditioning Pay | | | | | $ 8,427.84 |
| Hall of Fame Game | | | | | $ 606.00 |
| **Taxable Benefits** | | | | | |
| Comp Tickets | | | $ 174.00 | | $ 1,644.00 |
| **Pre-Tax Deductions** | | | $ 6,705.88 | | $ 6,705.88 |
| 401K % | | | $ 6,705.88 | | $ 6,705.88 |
| **Taxes** | | | $ 25,221.12 | | $ 143,772.73 |
| Fed W/H | | | $ 20,934.49 | | $ 112,098.74 |
| FICA EE | | | | | $ 8,239.80 |
| Fed MWT EE | | | $ 1,579.97 | | $ 6,528.36 |
| CA W/H | | | | | $ 1,877.00 |
| CO W/H | | | $ 2,500.00 | | $ 13,924.00 |
| DnvrCityOT-EE | | | $ 5.75 | | $ 17.25 |
| IN W/H | | | $ 200.91 | | $ 200.91 |
| OH W/H | | | | | $ 293.03 |
| CntnCityW/H | | | | | $ 172.73 |
| WI W/H | | | | | $ 420.91 |
| **Post-Tax Deductions** | | | $ 9,846.77 | | $ 29,418.80 |
| NFL Fine | | | $ 5,000.00 | | $ 7,105.00 |
| Union Dues | | | $ 2,183.82 | | $ 9,944.85 |
| Miscellaneous | | | $ 90.95 | | $ 90.95 |
| Game Tickets Home | | | $ 2,088.00 | | $ 8,268.00 |
| Game Tickets Away | | | $ 234.00 | | $ 2,435.00 |
| Jersey Purchase | | | $ 250.00 | | $ 1,250.00 |
| Football Purchase | | | | | $ 50.00 |
| Helmet Purchase | | | | | $ 275.00 |
| | Routing # | Account # | Amount | | Amount |
| **Net Pay** | | | $ 25,285.05 | | $ 172,856.91 |
| | 044000804 | XXXXXX4749 | $ 25,285.05 | | |

| Messages from your Employer | |
|---|---|
| | |

Page 1 of 1



| Employee Name: | Alexander J Johnson | Pay Date: | 10/25/2019 |
|---|---|---|---|
| Employee #: | 302251 | Pay Period: | 10/14/2019 - 10/27/2019 |
| Pay Frequency: | Bi-Weekly | Deposit Advice #: | |
| Department: | Players | Employer Name: | PDB Sports LTD |
| Job Title: | Player | Employer Phone: | 303-649-9000 |

**Employee Address**
6105 S Parker Rd
5107
Centennial, CO
80016

**Employer Address**
13655 Broncos Parkway
Englewood, CO
80112

Federal Filing Status: Single
Federal Exemptions: 1/$0.00

State Filing Status: Single (CO)
State Exemptions: 1 (CO)

| | Current 10/14/2019 - 10/27/2019 | | | YTD As of 10/27/2019 | |
|---|---|---|---|---|---|
| | Hours/Units | Rate | Amount | Hours/Units | Amount |
| **Earnings** | | | $ 67,058.82 | | $ 283,916.62 |
| Mini Camp | | | | | $ 1,142.84 |
| Performance Based Pay | | | | | $ 4,773.59 |
| Player Appearances | | | | | $ 5,631.93 |
| Player Per Diem | | | | | $ 13,428.55 |
| Player Salary | | $ | 67,058.82 | | $ 234,705.87 |
| Practice Squad Salary | | | | | $ 15,200.00 |
| Weight and Conditioning Pay | | | | | $ 8,427.84 |
| Hall of Fame Game | | | | | $ 606.00 |
| **Taxable Benefits** | | | | | |
| Comp Tickets | | | $ 316.00 | | $ 1,470.00 |
| **Taxes** | | | $ 28,156.51 | | $ 118,272.73 |
| Fed W/H | | | $ 23,468.20 | | $ 90,995.17 |
| FICA EE | | | | | $ 8,239.80 |
| Fed MWT EE | | | $ 1,583.31 | | $ 4,906.59 |
| CA W/H | | | | | $ 1,877.00 |
| CO W/H | | | $ 3,105.00 | | $ 11,356.00 |
| DnvrCityOT-EE | | | | | $ 11.50 |
| OH W/H | | | | | $ 293.03 |
| CntnCityW/H | | | | | $ 172.73 |
| WI W/H | | | | | $ 420.91 |
| **Post-Tax Deductions** | | | $ 7,019.82 | | $ 19,572.03 |
| NFL Fine | | | | | $ 2,105.00 |
| Union Dues | | | $ 2,183.82 | | $ 7,761.03 |
| Game Tickets Home | | | $ 3,856.00 | | $ 6,180.00 |
| Game Tickets Away | | | $ 480.00 | | $ 2,201.00 |
| Jersey Purchase | | | $ 500.00 | | $ 1,000.00 |
| Football Purchase | | | | | $ 50.00 |
| Helmet Purchase | | | | | $ 275.00 |
| | Routing # | Account # | Amount | | Amount |
| **Net Pay** | | | $ 31,882.49 | | $ 146,071.86 |
| | 044000804 | XXXXXX3704 | $ 31,882.49 | | |

**Messages from your Employer**

Page 1 of 1



| | | |
|---|---|---|
| **Employee Name:** Alexander J Johnson | **Pay Date:** | **10/11/2019** |
| **Employee #:** 302251 | **Pay Period:** | 9/30/2019 - 10/13/2019 |
| **Pay Frequency:** Bi-Weekly | **Deposit Advice #** | |
| **Department:** Players | **Employer Name:** | PDB Sports LTD |
| **Job Title:** Player | **Employer Phone:** | 303-649-9000 |

**Employee Address**
6105 S Parker Rd
5107
Centennial, CO
80016

**Employer Address**
13655 Broncos Parkway
Englewood, CO
80112

**Federal Filing Status:** Single
**Federal Exemptions:** 1/$0.00

**State Filing Status:** Single (CO)
**State Exemptions:** 1 (CO)

| | Current 9/30/2019 - 10/13/2019 | | | YTD As of 10/13/2019 | |
|---|---|---|---|---|---|
| | Hours/Units | Rate | Amount | Hours/Units | Amount |
| **Earnings** | | | $ 67,058.82 | | $ 216,857.80 |
| Mini Camp | | | | | $ 1,142.84 |
| Performance Based Pay | | | | | $ 4,773.59 |
| Player Appearances | | | | | $ 5,631.93 |
| Player Per Diem | | | | | $ 13,428.55 |
| Player Salary | | $ | 67,058.82 | | $ 167,647.05 |
| Practice Squad Salary | | | | | $ 15,200.00 |
| Weight and Conditioning Pay | | | | | $ 8,427.84 |
| Hall of Fame Game | | | | | $ 606.00 |
| **Taxable Benefits** | | | | | |
| Comp Tickets | | | $ 142.00 | | $ 1,154.00 |
| **Taxes** | | | $ 27,891.38 | | $ 90,116.22 |
| Fed W/H | | | $ 23,403.82 | | $ 67,526.97 |
| FICA EE | | | | | $ 8,239.80 |
| Fed MWT EE | | | $ 1,136.52 | | $ 3,323.28 |
| CA W/H | | | $ 568.29 | | $ 1,877.00 |
| CO W/H | | | $ 2,777.00 | | $ 8,251.00 |
| DnvrCityOT-EE | | | $ 5.75 | | $ 11.50 |
| OH W/H | | | | | $ 293.03 |
| CntnCityW/H | | | | | $ 172.73 |
| WI W/H | | | | | $ 420.91 |
| **Post-Tax Deductions** | | | $ 4,964.82 | | $ 12,552.21 |
| NFL Fine | | | $ 2,105.00 | | $ 2,105.00 |
| Union Dues | | | $ 2,183.82 | | $ 5,577.21 |
| Game Tickets Home | | | $ 426.00 | | $ 2,324.00 |
| Game Tickets Away | | | | | $ 1,721.00 |
| Jersey Purchase | | | $ 250.00 | | $ 500.00 |
| Football Purchase | | | | | $ 50.00 |
| Helmet Purchase | | | | | $ 275.00 |
| | Routing # | Account # | Amount | | Amount |
| **Net Pay** | | | $ 34,202.62 | | $ 114,189.37 |
| | 264279350 | XXXXX5359 | $ 34,202.62 | | |

**Messages from your Employer**

Page 1 of 1



| | | | | |
|---|---|---|---|---|
| **Employee Name:** | Alexander J Johnson | | **Pay Date:** | 10/3/2019 |
| **Employee #:** | 302251 | | **Pay Period:** | 9/30/2019 - 10/13/2019 |
| **Pay Frequency:** | Bi-Weekly | | **Check #:** | |
| **Department:** | Players | | **Employer Name:** | PDB Sports LTD |
| **Job Title:** | Player | | **Employer Phone:** | 303-649-9000 |

| Employee Address | Employer Address |
|---|---|
| 6105 S Parker Rd | 13655 Broncos Parkway |
| 5107 | Englewood, CO |
| Centennial, CO | 80112 |
| 80016 | |

**Federal Filing Status:** Single  
**Federal Exemptions:** 1/$0.00

**State Filing Status:** Single (CO)  
**State Exemptions:** 1 (CO)

| | | Current 9/30/2019 - 10/13/2019 | | | YTD As of 10/13/2019 | |
|---|---|---|---|---|---|---|
| | Hours/Units | Rate | Amount | Hours/Units | | Amount |
| **Earnings** | | | $ 1,759.23 | | $ | 149,798.98 |
| Mini Camp | | | | | $ | 1,142.84 |
| Performance Based Pay | | | | | $ | 4,773.59 |
| Player Appearances | | | $ 1,759.23 | | $ | 5,631.93 |
| Player Per Diem | | | | | $ | 13,428.55 |
| Player Salary | | | | | $ | 100,588.23 |
| Practice Squad Salary | | | | | $ | 15,200.00 |
| Weight and Conditioning Pay | | | | | $ | 8,427.84 |
| Hall of Fame Game | | | | | $ | 606.00 |
| **Taxable Benefits** | | | | | | |
| Comp Tickets | | | | | $ | 1,012.00 |
| **Taxes** | | | $ 259.23 | | $ | 62,224.84 |
| Fed W/H | | | $ 166.72 | | $ | 44,123.15 |
| FICA EE | | | | | $ | 8,239.80 |
| Fed MWT EE | | | $ 25.51 | | $ | 2,186.76 |
| CA W/H | | | | | $ | 1,308.71 |
| CO W/H | | | $ 67.00 | | $ | 5,474.00 |
| DnvrCityOT-EE | | | | | $ | 5.75 |
| OH W/H | | | | | $ | 293.03 |
| CntnCityW/H | | | | | $ | 172.73 |
| WI W/H | | | | | $ | 420.91 |
| **Post-Tax Deductions** | | | | | $ | 7,587.39 |
| Union Dues | | | | | $ | 3,393.39 |
| Game Tickets Home | | | | | $ | 1,898.00 |
| Game Tickets Away | | | | | $ | 1,721.00 |
| Jersey Purchase | | | | | $ | 250.00 |
| Football Purchase | | | | | $ | 50.00 |
| Helmet Purchase | | | | | $ | 275.00 |
| | Routing # | Account # | Amount | | | Amount |
| **Net Pay** | | | $ 1,500.00 | | $ | 79,986.75 |
| Check | | | $ 1,500.00 | | | |

| **Messages from your Employer** |
|---|
| |

Page 1 of 1



| Employee Name: | Alexander J Johnson | Pay Date: | 9/27/2019 |
|---|---|---|---|
| Employee #: | 302251 | Pay Period: | 9/16/2019 - 9/29/2019 |
| Pay Frequency: | Bi-Weekly | Deposit Advice : | |
| Department: | Players | Employer Name: | PDB Sports LTD |
| Job Title: | Player | Employer Phone: | 303-649-9000 |

**Employee Address**
6105 S Parker Rd
5107
Centennial, CO
80016

**Employer Address**
13655 Broncos Parkway
Englewood, CO
80112

Federal Filing Status: Single
Federal Exemptions: 1/$0.00

State Filing Status: Single (CO)
State Exemptions: 1 (CO)

| | Current 9/16/2019 - 9/29/2019 | | | YTD As of 9/29/2019 | |
|---|---|---|---|---|---|
| | Hours/Units | Rate | Amount | Hours/Units | Amount |
| **Earnings** | | | $      67,058.82 | | $    148,039.75 |
| Mini Camp | | | | | $        1,142.84 |
| Performance Based Pay | | | | | $        4,773.59 |
| Player Appearances | | | | | $        3,872.70 |
| Player Per Diem | | | | | $      13,428.55 |
| Player Salary | | | $      67,058.82 | | $    100,588.23 |
| Practice Squad Salary | | | | | $      15,200.00 |
| Weight and Conditioning Pay | | | | | $        8,427.84 |
| Hall of Fame Game | | | | | $           506.00 |
| **Taxable Benefits** | | | | | |
| Comp Tickets | | | $           174.00 | | $        1,012.00 |
| **Taxes** | | | $      30,757.48 | | $      61,965.61 |
| Fed W/H | | | $      23,415.66 | | $      43,956.43 |
| FICA EE | | | $        3,167.03 | | $        8,239.80 |
| Fed MWT EE | | | $           974.88 | | $        2,161.25 |
| CA W/H | | | | | $        1,308.71 |
| CO W/H | | | $        2,779.00 | | $        5,407.00 |
| DnvrCityOT-EE | | | | | $               5.75 |
| OH W/H | | | | | $           293.03 |
| CntnCityW/H | | | | | $           172.73 |
| WI W/H | | | $           420.91 | | $           420.91 |
| **Post-Tax Deductions** | | | $        3,825.82 | | $        7,587.39 |
| Union Dues | | | $        2,183.82 | | $        3,393.39 |
| Game Tickets Home | | | $        1,392.00 | | $        1,898.00 |
| Game Tickets Away | | | | | $        1,721.00 |
| Jersey Purchase | | | $           250.00 | | $           250.00 |
| Football Purchase | | | | | $             50.00 |
| Helmet Purchase | | | | | $           275.00 |
| | Routing # | Account # | Amount | | Amount |
| **Net Pay** | | | $      32,475.52 | | $      78,486.75 |
| | 264279350 | XXXXX5359 | $      32,475.52 | | |

**Messages from your Employer**

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Alexander Johnson | ) | Case No. 19-19816-EEB |
| SSN: xxx-xx-4248 | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |

### UNITED STATES TRUSTEE'S MOTION TO EXTEND DEADLINES TO FILE A COMPLAINT OBJECTING TO DISCHARGE UNDER 11 U.S.C. § 727 OR MOTION TO DISMISS UNDER 11 U.S.C. § 707

Patrick S. Layng, the United States Trustee for Region 19 (the "UST"), by and through his undersigned counsel, hereby requests, under Fed.R.Bankr.P. 4004(b) and 9006(b) and 1017(e), that the Court extend the time and deadlines for the UST to file a complaint objecting to Debtor's discharge under 11 U.S.C. § 727 or a motion to dismiss under 11 U.S.C § 707 (the "Motion to Extend Time"). In support of the Motion to Extend Time, the UST states and alleges as follows:

1.  Alexander Johnson (the "Debtor") filed a petition for chapter 7 bankruptcy relief on November 13, 2019.

2.  M. Stephen Peters (the "Trustee") was appointed chapter 7 trustee in this case and continues to serve in that capacity. The Debtor's § 341 meeting of creditors was concluded on January 3, 2020.

3.  Pursuant to 28 U.S.C. § 586(a)(3), the UST is charged with administrative oversight of the bankruptcy system in this District. Such oversight is part of the UST's overarching responsibility to enforce the laws as written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas Systems, Inc. (In re Columbia Gas Systems, Inc.),* 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that UST has "public interest standing" under 11 U.S.C. § 307 which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.),* 898 F.2d 498, 500 (6th Cir. 1990) (describing the UST as a "watchdog").

4.  Under 11 U.S.C. § 307, the UST has standing to be heard on the issues raised by this Motion to Extend Time.

5.  Currently the last day for the UST to file a complaint objecting to discharge under 11 U.S.C. § 727 or a motion to dismiss under 11 U.S.C. § 707 is February 18, 2020.

6.      Debtor's case is not a routine consumer case.[1]   Debtor has a contingent, unliquidated, disputed debt to "Ritchie, Dillard, Davies and Johnson, P.C." listed of $900,436.32 on his Schedule F which Debtor asserts is not a "consumer debt."   The UST requested information concerning this debt from the creditor's counsel but has not received an itemization of what this debt is and an explanation as to the breakdown of debts.  Ritchie, Dillard, Davies and Johnson, P.C. provided legal services to the Debtor pre-petition.  Ritchie, Dillard, Davies and Johnson, P.C. has not yet filed a proof of claim concerning their debt which indicates how their debt was incurred, hours billed, rates, expenses and matters which were billed.  A portion of this debt may be consumer in nature or non-consumer and/or business debt in nature.

7.      Debtor appears to have disposable income on his Schedules I/J, however, the UST does not have sufficient information to ascertain whether the nature of Debtor's debts are "primarily consumer" in nature in which 11 U.S.C. § 707(b) may apply.

8.      The UST appeared at Debtor's § 341 meeting of creditors and questioned the Debtor regarding his schedules and statement of financial affairs.  The UST has not had the opportunity to review all the facts and circumstances in Debtor's case and has only had some informal discovery in the case.  The UST would like to continue in informal discovery and may request a 2004 examination of the Debtor.

9.      The UST files this Motion to Extend to allow him the opportunity to investigate the circumstances of Debtor's filing, the proof of claims filed in the case, and may request a 2004 examination of the Debtor to better understand the Debtor's financial condition.  The UST intends to inquire from the Debtor further information related to his businesses, assets and liabilities.

10.      The Court has not granted Debtor a chapter 7 discharge.  Cause exists under Fed.R.Bankr.P. 4004(b)(1) and 9006(b) for an extension of the UST's deadlines under § 727 and § 707 as detailed below.

11.      Fed.R.Bankr.P. 4004(b)(1) provides that: "On motion of any party in interest, after notice and a hearing, the court may for cause extend the time to object to discharge.  Except as provided in subdivision (b)(2), the motion shall be filed before the time has expired."

12.      This Motion to Extend Deadline is timely because the current deadline to object to discharge has not expired.  Cause exists to grant the UST this Motion to Extend Time as there appears to be a lack of information concerning the claim or claims of Ritchie, Dillard, Davies and Johnson, P.C. and the exact amounts owed under the claim(s).  The type of claims and the amounts of claims have bearing on whether Debtor's case is a "primarily consumer case" and whether Debtor is eligible to remain in chapter 7.  Also, the claim of Ritchie, Dillard, Davies and Johnson, P.C. appears to have three distinct parts (for three distinct matters of representation), some or all which may ultimately be non-consumer and the UST does not have sufficient

---

[1] A review of the case indicates that the Debtor's debts are "business" in nature.  The debts do not appear to be "business" related.  The UST is ascertaining what the nature of debts are and whether they may be "consumer" in nature or otherwise.  The UST, however, has not had sufficient opportunity to review all the facts in Debtor's case.  As such, the UST seeks an extension of time herein to file a motion to dismiss under 11 U.S.C. § 707 and also to extend the UST's 727 deadline.

information to make that determination as no proof of claim has been filed.  Also, the UST is generally requesting more time to ascertain the Debtor's pre-petition financial affairs.  The UST intends to conduct some discovery to better understand Debtor's financial condition.

13.     The UST, pursuant to his duties under 28 U.S.C. § 586(a)(3)(D), is undertaking a review of the Debtor's case to evaluate the accuracy and completeness of the information in the Debtor's Voluntary Petition, Statement of Financial Affairs, and Schedules and requests further time to continue to review.

14.     For the reasons identified above, the UST requires additional time to investigate the issues in Debtor's case and seeks an additional 60-day extension, through April 20, 2020, of his current deadline to file a complaint objecting to discharge under 11 U.S.C. § 727 or whether the case should be dismissed under 11 U.S.C. § 707 in order to allow the UST to complete his investigation of the acts, conduct, and financial condition of the Debtor, and any other matters which may affect the administration of the Debtor's estate, or Debtor's right to a bankruptcy discharge.

WHEREFORE, the UST respectfully requests that the Court enter an order granting this Motion to Extend Time, extending through and including April 20, 2020, the UST's deadline to file a complaint objecting to discharge under 11 U.S.C. § 727 or to file a motion to dismiss under 11 U.S.C. § 707 and requests such other and further relief as the Court deems just and proper.

Dated:  February 18, 2020                    Respectfully submitted,

                                             PATRICK S. LAYNG
                                             UNITED STATES TRUSTEE
                                             /s/ Paul Moss
                                             By: Paul Moss, #26903
                                             Trial Attorney for the U.S. Trustee
                                             1961 Stout Street, Suite 12-200
                                             Denver, Colorado 80294
                                             (303) 312-7995 telephone
                                             Paul.Moss@usdoj.gov

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**

In re:                                    )
                                          )
Alexander Johnson                         )          Case No. 19-19816-EEB
SSN: xxx-xx-4248                          )          Chapter 7
                                          )
                    Debtor.               )

**ORDER GRANTING THE UNITED STATES TRUSTEE'S MOTION TO EXTEND
DEADLINES TO FILE A COMPLAINT OBJECTING TO DISCHARGE UNDER 11
U.S.C. § 727 OR MOTION TO DISMISS UNDER 11 U.S.C. § 707**

      The matter before the Court is the United States Trustee's motion for an extension of time of the deadlines to file a complaint objecting to Debtor's discharge under 11 U.S.C. § 727 or a motion to dismiss under 11 U.S.C § 707 (the "Motion to Extend Time").  Notice of the Motion to Extend Time was provided to interested parties and no objections have been filed. The Court has reviewed the Motion to Extend Time and finds that it is appropriate to extend the deadlines for the United States Trustee to file a complaint objecting to discharge under 11 U.S.C. § 727 or a motion to dismiss under 11 U.S.C. § 707 through and including April 20, 2020. Accordingly, it is

      **ORDERED THAT** the United States Trustee's Motion to Extend Time to file a complaint objecting to discharge under 11 U.S.C. § 727 or a motion to dismiss under 11 U.S.C. § 707 is **GRANTED.** The deadline for the United States Trustee to file a complaint under 11 U.S.C § 727 or motion to dismiss under 11 U.S.C. § 707 shall be April 20, 2020.

DATED: this _____ day of _____, 2020.

                  BY THE COURT:

                  _____
                  Elizabeth E. Brown, Judge
                  United States Bankruptcy Court

<div align="center">

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**

</div>

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Alexander Johnson | ) | Case No. 19-19816-EEB |
| SSN: xxx-xx-4248 | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |

**NOTICE OF:   UNITED STATES TRUSTEE'S MOTION TO EXTEND DEADLINES TO FILE A COMPLAINT OBJECTING TO DISCHARGE UNDER 11 U.S.C. § 727 OR MOTION TO DISMISS UNDER 11 U.S.C. § 707**

**OBJECTION DEADLINE: <u>March 10, 2020</u>**

**YOU ARE HEREBY NOTIFIED** that the United States Trustee has filed a Motion to Extend Deadlines to File a Complaint Objecting to Discharge Under 11 U.S.C. § 727 or a Motion to Dismiss under 11 U.S.C. § 707 with the Bankruptcy Court and requests the following relief:

The United States Trustee has requested a sixty day extension of time, through and including April 20, 2020, of the deadlines to file a complaint objecting to Debtor's discharge under 11 U.S.C. § 727 or to file a motion to dismiss under 11 U.S.C § 707 (the "Motion to Extend Time").

If you desire to oppose the Motion to Extend Time or object to the requested relief, your objection and request for hearing must be filed with the court on or before the objection deadline stated above, served on the movant at the address indicated below, and must state clearly all objections and any legal basis for the objections.  The court will not consider general objections.

In the absence of a timely, substantiated objection and request for hearing by an interested party, the court may approve or grant the aforementioned application without any further notice to creditors or other interested parties.

Dated:  February 18, 2020                 Respectfully submitted,

PATRICK S. LAYNG
UNITED STATES TRUSTEE
<u>/s/  Paul Moss</u>
By: Paul Moss, #26903
Trial Attorney for the U.S. Trustee
1961 Stout Street, Suite 12-200
Denver, Colorado 80294
(303) 312-7995 telephone
(303) 312-7259 facsimile
Paul.Moss@usdoj.gov

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| IN RE: | Case No. 19-19816 EEB |
| ALEXANDER JOHNSON, | Chapter 7 |
| Debtor. | |

## MOTION OF LAW OFFICES OF RITCHIE, DILLARD, DAVIES & JOHNSON, P.C. TO FILE UNDER SEAL DOCUMENTATION IN SUPPORT OF PROOF OF CLAIM

The LAW OFFICES OF RITCHIE, DILLARD, DAVIES & JOHNSON, P.C. ("***RDD&J***"), through undersigned counsel, hereby respectfully moves the United States Bankruptcy Court for the District of Colorado ("***Bankruptcy Court***") to File Under Seal Documentation in Support of its Proof of Claim *("**Motion**"*), and in support thereof, states as follows:

### JURISDICTION

1. The Bankruptcy Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. § 157(b)(2)(A) and (O), and 28 U.S.C. § 1334.[1] Furthermore, venue is proper before this Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicate for the relief requested is section 107(b) of Title 11 of the United States Code ("***Bankruptcy Code***"), Rule(s) 9018 and 9037(c) of the Federal Rules of Bankruptcy Procedure ("***Federal Rules***"), and Rule 9037-1 of the United States Bankruptcy Court for the District of Colorado Local Bankruptcy Rules ("***Local Rules***").[2]

### BACKGROUND

3. Alexander J. Johnson ("***Debtor***") filed a voluntary petition for bankruptcy relief ("***Petition***") under Chapter 7 of the Bankruptcy Code within this Bankruptcy Court on November 13, 2019 ("***Petition Date***"). *See* Dkt. No. 1.[3] M. Stephen Peters is the duly appointed Chapter 7 Trustee ("***Trustee***") of the Debtor's bankruptcy estate. Dkt. No. 4.

---

[1]   To the extent the Bankruptcy Court later determines it cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution absent consent of the parties, RDD&J hereby CONSENTS to the entry of a final order by the Bankruptcy Court in connection with this Motion. *See* FED.R.BANKR.P. 7008.

[2]   Hereinafter, unless otherwise stated, references to the Bankruptcy Code shall be cited as "11 U.S.C. § ____," references to the Federal Rules shall be cited as FED.R.BANKR.P. ____" and references to the Local Rules shall be cited as "L.B.R. ____."

[3]   Unless otherwise stated, "Dkt. No. ____" refers to the docket in the above-captioned Chapter 11 bankruptcy case; styled as, *In re Johnson*, Case No. 19-19816 EEB ("***Bankruptcy Case***").

4.      The Debtor is a public figure within the State of Colorado as a professional football player employed by the Denver Broncos. Dkt. No. 16 at p.1.

5.      Pursuant to *Schedule E/F: Creditors Who Have Unsecured Claims*, filed on November 25, 2019, the Debtor schedules RDD&J to hold an unsecured claim – albeit purportedly contingent, unliquidated and disputed – in the amount of $900,436.32 based on pre-petition services rendered. Dkt. No. 13 at p.4.

6.      On December 26, 2019, the Trustee filed a *Notice of Possible Dividends*, which provides that creditors "must file a claim with the court no later than 3/30/20." Dkt. No. 29.

7.      The basis for the claim of RDD&J stems from pre-petition legal services rendered on behalf of the Debtor, pursuant to certain and specific representation agreements dated November 20, 2014, September 3, 2015 and July 11, 2017 (hereinafter, collectively "***Representation Agreements***"). More specifically, RDD&J represented the Debtor in three (3) separate legal matters from November 19, 2014 up to and through February 14, 2019 ("***Representation Period***").

8.      Pursuant to certain and specific invoices dated December 12, 2017, October 8, 2018, November 27, 2018, November 28, 2018, February 12, 2019 and February 14, 2019 (hereinafter, collectively "***Invoices***"), RDD&J maintained a detailed ledger of services rendered and costs incurred throughout the Representation Period. Furthermore, RDD&J presented copies of said Invoices to the Debtor throughout the Representation Period, and additional copies of the Invoices together with a Statement Summary by and through correspondences dated November 11, 2018 and February 14, 2019 (hereinafter, collectively "***Attorney Communications***").

9.      Pursuant to the Invoices and an updated "***Statement Summary***," RDD&J files a proof of claim ("***Claim***") for the amount of $902,908.82 ("***Claim Amount***"). However, any and all services were performed within confidential and sensitive matters, which requires RDD&J to request attaching summaries and/or redacted documents as support for the Claim and filing under seal unredacted copies of such documents reflecting culmination of the work in each of the three legal matters as follows:

a.      Representation Agreements attached to the Claim as redacted and filed under seal as unredacted;

b.      Statement Summary attached to the Claim as unredacted;

c.      Invoices filed under seal;

d.      Attorney Communications filed under seal; and

e.      Orders entered in the aforementioned legal matters.

## **RELIEF REQUESTED**

10.     Herein, RDD&J respectfully requests that the Bankruptcy Court issue an Order authorizing RDD&J to file under seal ("***Proposed Seal Order***") unredacted copies of the Representation Agreements, Invoices, Attorney Communications, Orders entered in the 3 legal matters (hereinafter, collectively "***Claim Attachments***"). Furthermore, RDD&J seeks authorization

to attach a certain and specific "*Privilege Log*" – attached hereto as **EXHIBIT 1** and incorporated by reference herein – to the Proof of Claim in lieu of filing the Claim Attachments.

11.    11 U.S.C. § 107(b) provides in relevant part that, "[o]n request from a party in interest, the bankruptcy court shall….protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title." 11 U.S.C. § 107(b)(2).

12.    The Federal Rules sets forth the procedures for application of 11 U.S.C. § 107 as the Bankruptcy Court "may make any order which justice requires…(2) to protect any entity against scandalous or defamatory matter contained in any paper filed in a case under the Code, or (3) to protect governmental matters that are made confidential by statute or regulation." FED.R.BANKR.P. 9018.

13.    A party seeking protection under 11 U.S.C. § 107(b) need not demonstrate "good cause." *See e.g. Video Software Dealers Ass'n. v. Orion Pictures Corp. (In re Orion Pictures Corp.)*, 21 F.3d 24, 27-28 (2d.Cir.1994). Instead, if the material for which protection is sought satisfies one of the categories identified under 11 U.S.C. § 107(b), "the court is *required* to protect a requesting interested party and has no discretion to deny the application." *Id*. at 27 (emphasis in original).

14.    The Bankruptcy Court suppressing the Claim Attachments shall protect the Debtor from public scrutiny, scandal and/or defamation in relation to the past events and charges alleged within the State Actions and Conduct Matter; and shall allow RDD&J to demonstrate that its Claim arises from neither a contingent, unliquidated nor disputed debt without violating its statutory and ethical duties to protect the confidentiality of the Debtor unless and/or until the Debtor waives such rights and privileges or puts such matters at issue in a manner that requires public disclosure. *See e.g.* Tenn.Sup.Ct.R. 8, RPC 1.6.

15.    Furthermore, sealing the Claim Attachments would prejudice neither the Debtor nor the Trustee as the Debtor maintains copies thereof that he may disclose to the Trustee – should he choose – without violating either state or federal law. Alternatively, should the Debtor prefer otherwise, the Trustee may move to modify the Proposed Seal Order under FED.R.BANKR.P. 9018.

16.    However, unless and until RDD&J is ordered produce the Claim Attachments to any party other than the Debtor, the Bankruptcy Court should protect both (a) the Debtor from any further hardship or scandal of his past and (b) RDD&J from violating statutory and judicial duties of privacy and confidentiality. As the Claim Attachments are protected from disclosure under state and federal law, the Bankruptcy Court may allow RDD&J to file such under seal.

      WHEREFORE, the Law Offices of Ritchie, Dillard, Davies & Johnson, P.C. respectfully requests that the United States Bankruptcy Court for the District of Colorado enter an Order, substantially in the form attached hereto, (a) granting this Motion to (i) file under seal the unredacted Representation Agreements, Invoices, Attorney Communications and Orders entered in

the pre-petition legal matters; and (ii) file the Privilege Log, redacted Representation Agreements and the Statement Summary as publicly available documents attached to the Proof of Claim filed by RDD&J; (b) order that the unredacted Claim Attachments be kept under seal and not disclosed to any party except this Bankruptcy Court and the Debtor; and (c) grant such other and further relief as this Bankruptcy Court deems just and appropriate

DATED this 18th of February, 2020.

Respectfully submitted,
BERKEN CLOYES, P.C.

Joshua B. Sheade, Atty. Reg. No. 46993
1159 Delaware Street
Denver, Colorado 80204
Tel: (303) 623-4357
Fax: (720) 554-7853
Email: joshua@berkencloyes.com

*Attorneys for the LAW OFFICES OF RITCHIE, DILLARD, DAVIES & JOHNSON, P.C.*

4

## CERTIFICATE OF SERVICE

The undersigned certifies that on February 18, 2020, I served by the CM/ECF system, pre-paid first-class mail and/or other acceptable means (i.e. electronic correspondence or hand delivery), a copy of the foregoing **MOTION OF LAW OFFICES OF RITCHIE, DILLARD, DAVIES & JOHNSON, P.C. TO FILE UNDER SEAL DOCUMENTATION IN SUPPORT OF PROOF OF CLAIM** on all parties against whom relief is sought, and those otherwise entitled to service, pursuant to the FED.R.BANKR.P. and these L.B.R., at the following addresses:

### Via CM/ECF:

Jeffrey S. Brinen, Esq.
KUTNER BRINEN, P.C.
1660 Lincoln Street, Suite 1850
Denver, Colorado 80264

Paul Moss, Esq.
Office for the United States Trustee
Byron G. Rogers Federal Building
1961 Stout Street, Suite 12-200
Denver, Colorado 80294

Abbey Dreher, Esq.
BARRETT FRAPPIER & WEISSERMAN, LLP
4004 Belt Lane Road, Suite 100
Addison, Texas 75001

M. Stephen Peters, Esq.
CHAPTER 7 TRUSTEE
P.O. Box 4610
Frisco, Colorado 80443

Aaron J. Conrardy, Esq.
Lindsay Riley, Esq.
WADSWORTH GARBER WARNER CONRARDY, P.C.
2580 West Main Street, Suite 200
Littleton, Colorado 80120

By: _____

Joshua B. Sheade, Esq.
For BERKEN CLOYES, P.C.

5

**PRIVILEGE LOG**
**TO PROOF OF CLAIM OF RITCHIE, DILLARD, DAVIES & JOHNSON, P.C.**

**EXHIBIT 1**

| Claim Attachment No. | Description | Privilege Basis |
|---|---|---|
| 1 | Statement Summary for Alexander J. Johnson | NONE |
| 2 | Representation Agreement dated November 20, 2014 | Tenn.Sup.Ct.R. 8, RPC 1.6; Tennessee Code |
| 3 | Representation Agreement dated September 3, 2015 | Tenn.Sup.Ct.R. 8, RPC 1.6; United States Code |
| 4 | Representation Agreement dated July 11, 2017 | Tenn.Sup.Ct.R. 8, RPC 1.6; Tennessee Code |
| 5 | Invoice No. 21458 dated November 28, 2018 | Tenn.Sup.Ct.R. 8, RPC 1.6; Tennessee Code |
| 6 | Invoice No. 225 dated November 28, 2018 | Tenn.Sup.Ct.R. 8, RPC 1.6; Tennessee Code |
| 7 | Invoice No. 21188 dated December 12, 2017 | Tenn.Sup.Ct.R. 8, RPC 1.6; Tennessee Code |
| 8 | Invoice No. 223 dated November 27, 2018 | Tenn.Sup.Ct.R. 8, RPC 1.6; Tennessee Code |
| 9 | Invoice No. 21453 dated October 8, 2018 | Tenn.Sup.Ct.R. 8, RPC 1.6; United States Code |
| 10 | Invoice No. 224 dated November 27, 2018 | Tenn.Sup.Ct.R. 8, RPC 1.6; United States Code |
| 11 | Correspondence to Debtor via Federal Express and E-mail, dated November 28, 2018 | Tenn.Sup.Ct.R. 8, RPC 1.6; United States Code; Tennessee Code |
| 12 | Correspondence to Debtor via Federal Express and E-mail, dated February 14, 2019 | Tenn.Sup.Ct.R. 8, RPC 1.6; United States Code; Tennessee Code |
| 13 | Orders Entered in Legal Matters | Tenn.Sup.Ct.R. 8, RPC 1.6; Tennessee Code |

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

|  |  |
|---|---|
| IN RE:<br><br>ALEXANDER JOHNSON,<br><br><div align="center">Debtor.</div> | Case No. 19-19816 EEB<br><br>Chapter 7 |

## ORDER GRANTING MOTION TO FILE UNDER SEAL DOCUMENTATION IN SUPPORT OF PROOF OF CLAIM

**THIS MATTER** having come before the Court on the Motion to File Under Seal Documentation in Support of Proof of Claim ("Motion"), filed by the Law Offices of Ritchie, Dillard, Davies & Johnson, P.C. ("RDD&J"), pursuant to 11 U.S.C. § 107(b), FED.R.BANKR.P. 9018 and L.B.R. 9037-1. The Court having considered the Motion, any responses or arguments made thereto, and being duly advised, does hereby

**ORDER** that the Motion is **GRANTED**. Therefore, the Court does hereby

**FURTHER ORDER** that RDD&J is authorized to file the unredacted Representation Agreements, Invoices, Attorney Communications and Orders entered in the pre-petition legal matters under seal; and is authorized to file the redacted Representation Agreements, Statement Summary and the Privilege Log attached as Exhibit 1 to the Motion – itemizing the documents and records filed under seal – as attachments to its proof of claim.

DATED this ___ day of _____, 2020

BY THE COURT:

_____

Hon. Elizabeth E. Brown
United States Bankruptcy Court Judge

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

IN RE:

ALEXANDER JOHNSON,

Debtor.

Case No. 19-19816 EEB

Chapter 7

## ORDER GRANTING MOTION TO FILE UNDER SEAL DOCUMENTATION IN SUPPORT OF PROOF OF CLAIM

**THIS MATTER** having come before the Court on the Motion to File Under Seal Documentation in Support of Proof of Claim ("Motion"), filed by the Law Offices of Ritchie, Dillard, Davies & Johnson, P.C. ("RDD&J"), pursuant to 11 U.S.C. § 107(b), FED.R.BANKR.P. 9018 and L.B.R. 9037-1. The Court having considered the Motion, any responses or arguments made thereto, and being duly advised, does hereby

**ORDER** that the Motion is **GRANTED**. Therefore, the Court does hereby

**FURTHER ORDER** that RDD&J is authorized to file the unredacted Representation Agreements, Invoices, Attorney Communications and Orders entered in the pre-petition legal matters under seal; and is authorized to file the redacted Representation Agreements, Statement Summary and the Privilege Log attached as Exhibit 1 to the Motion – itemizing the documents and records filed under seal – as attachments to its proof of claim.

DATED: this 19th day of February, 2020.

BY THE COURT:

Elizabeth E. Brown

Hon. Elizabeth E. Brown
United States Bankruptcy Court Judge

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **Alexander Johnson** |
| | First Name          Middle Name          Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name          Middle Name          Last Name |
| United States Bankruptcy Court for the: | DISTRICT OF COLORADO |
| Case number (if known) | 19-19816-EEB |

☑ Check if this is an
amended filing

## Official Form 106C

# Schedule C: The Property You Claim as Exempt                    4/19

Be as complete and accurate as possible. If two married people are filing together, both are equally respons ble for supplying correct information. Using the property you listed on *Schedule A/B: Property* (Official Form 106A/B) as your source, list the property that you claim as exempt. If more space is needed, fill out and attach to this page as many copies of *Part 2: Additional Page* as necessary. On the top of any additional pages, write your name and case number (if known).

**For each item of property you claim as exempt, you must specify the amount of the exemption you claim. One way of doing so is to state a specific dollar amount as exempt. Alternatively, you may claim the full fair market value of the property being exempted up to the amount of any applicable statutory limit. Some exemptions—such as those for health aids, rights to receive certain benefits, and tax-exempt retirement funds—may be unlimited in dollar amount. However, if you claim an exemption of 100% of fair market value under a law that limits the exemption to a particular dollar amount and the value of the property is determined to exceed that amount, your exemption would be limited to the applicable statutory amount.**

**Part 1:**    Identify the Property You Claim as Exempt

1. **Which set of exemptions are you claiming?** *Check one only, even if your spouse is filing with you.*

   ☐ You are claiming state and federal nonbankruptcy exemptions.  11 U.S.C. § 522(b)(3)

   ☑ You are claiming federal exemptions.  11 U.S.C. § 522(b)(2)

2. **For any property you list on *Schedule A/B* that you claim as exempt, fill in the information below.**

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own<br>Copy the value from *Schedule A/B* | Amount of the exemption you claim<br>*Check only one box for each exemption.* | Specific laws that allow exemption |
|---|---|---|---|
| **2007 Chevy Tahoe 221876 miles**<br>Line from *Schedule A/B*: **3.1** | $3,287.00 | ☑ $3,287.00<br>☐ 100% of fair market value, up to any applicable statutory limit | **11 U.S.C. § 522(d)(2)** |
| **Queen Sleep Number Bed, Bedroom Set, Two Televisions, 2012 Macbook, Playstation, Go Pro, 3 Headphones, Bose Speakers**<br>Line from *Schedule A/B*: **6.1** | $3,130.00 | ☑ $3,130.00<br>☐ 100% of fair market value, up to any applicable statutory limit | **11 U.S.C. § 522(d)(3)** |
| **Golf Clubs ($250)**<br>Line from *Schedule A/B*: **9.1** | $250.00 | ☑ $250.00<br>☐ 100% of fair market value, up to any applicable statutory limit | **11 U.S.C. § 522(d)(5)** |
| **Misc mens clothing and accessories**<br>Line from *Schedule A/B*: **11.1** | $500.00 | ☑ $500.00<br>☐ 100% of fair market value, up to any applicable statutory limit | **11 U.S.C. § 522(d)(3)** |
| **3 Michael Kors Watches**<br>Line from *Schedule A/B*: **12.1** | $400.00 | ☑ $400.00<br>☐ 100% of fair market value, up to any applicable statutory limit | **11 U.S.C. § 522(d)(4)** |

Software Copyright (c) 1996-2020 Best Case, LLC - www.bestcase.com                    Best Case Bankruptcy

Debtor 1  **Alexander Johnson**                                    Case number (if known)

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own<br><br>Copy the value from *Schedule A/B* | Amount of the exemption you claim<br><br>*Check only one box for each exemption.* | Specific laws that allow exemption |
|---|---|---|---|
| **Checking: Eastman Credit Union**<br>Line from *Schedule A/B*: **17.1** | $17,031.00 | ☑ $13,650.00<br>☐ 100% of fair market value, up to any applicable statutory limit | **11 U.S.C. § 522(d)(5)** |
| **401(K): NFL Player Benefits**<br>Line from *Schedule A/B*: **21.1** | $19,639.00 | ☑ $19,639.00<br>☐ 100% of fair market value, up to any applicable statutory limit | **11 U.S.C. § 522(d)(12)** |
| **401(K): NFL Player Benefits**<br>Line from *Schedule A/B*: **21.1** | $19,639.00 | ☑ $0.00<br>☐ 100% of fair market value, up to any applicable statutory limit | **11 U.S.C. § 522(b)(3)(C)** |
| **Speed and Agility Equipment ($100)**<br>**Boxing Equipment ($100)**<br>Line from *Schedule A/B*: **40.1** | $200.00 | ☑ $200.00<br>☐ 100% of fair market value, up to any applicable statutory limit | **11 U.S.C. § 522(d)(6)** |

3. **Are you claiming a homestead exemption of more than $170,350?**
   (Subject to adjustment on 4/01/22 and every 3 years after that for cases filed on or after the date of adjustment.)

   ☑ No
   ☐ Yes. Did you acquire the property covered by the exemption within 1,215 days before you filed this case?

      ☐ No
      ☐ Yes

Software Copyright (c) 1996-2020 Best Case, LLC - www.bestcase.com                                    Best Case Bankruptcy

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

In re:                                    )
                                          )
Alexander Johnson                         )          Case No. 19-19816-EEB
SSN: xxx-xx-4248                          )          Chapter 7
                                          )
                 Debtor.                  )

## ORDER GRANTING THE UNITED STATES TRUSTEE'S MOTION TO EXTEND DEADLINES TO FILE A COMPLAINT OBJECTING TO DISCHARGE UNDER 11 U.S.C. § 727 OR MOTION TO DISMISS UNDER 11 U.S.C. § 707

The matter before the Court is the United States Trustee's motion for an extension of time of the deadlines to file a complaint objecting to Debtor's discharge under 11 U.S.C. § 727 or a motion to dismiss under 11 U.S.C § 707 (the "Motion to Extend Time"). Notice of the Motion to Extend Time was provided to interested parties and no objections have been filed. The Court has reviewed the Motion to Extend Time and finds that it is appropriate to extend the deadlines for the United States Trustee to file a complaint objecting to discharge under 11 U.S.C. § 727 or a motion to dismiss under 11 U.S.C. § 707 through and including April 20, 2020. Accordingly, it is

**ORDERED THAT** the United States Trustee's Motion to Extend Time to file a complaint objecting to discharge under 11 U.S.C. § 727 or a motion to dismiss under 11 U.S.C. § 707 is **GRANTED.** The deadline for the United States Trustee to file a complaint under 11 U.S.C § 727 or motion to dismiss under 11 U.S.C. § 707 shall be April 20, 2020.

DATED: this 18th day of March, 2020.

BY THE COURT:

Elizabeth E. Brown, Judge
United States Bankruptcy Court

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| IN RE: | Case No. 19-19816 EEB |
| ALEXANDER JOHNSON, | |
| Debtor. | Chapter 7 |

## MOTION OF LAW OFFICES OF RITCHIE, DILLARD, DAVIES & JOHNSON, P.C. TO FILE UNDER SEAL MOTION TO CONVERT PURSUANT TO 11 U.S.C § 706(b) OR, IN THE ALTERNATIVE, DISMISS PURSUANT TO 11 U.S.C. § 707(b) AND EXHIBITS INCORPORATED BY REFERENCE THEREIN

The LAW OFFICES OF RITCHIE, DILLARD, DAVIES & JOHNSON, P.C. ("***RDD&J***"), through undersigned counsel, hereby respectfully moves the United States Bankruptcy Court for the District of Colorado ("***Bankruptcy Court***") to File Under Seal the Motion to Convert Pursuant To 11 U.S.C § 706(b) or, in the Alternative, Dismiss Pursuant to 11 U.S.C. § 707(b), and Exhibits Incorporated by Reference Therein ("***Second Motion to Seal***"), and in support thereof, states as follows:

### JURISDICTION

1.  The Bankruptcy Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. § 157(b)(2)(A) and (O), and 28 U.S.C. § 1334.[1] Furthermore, venue is proper before this Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.  The statutory predicate for the relief requested is section 107(b) of Title 11 of the United States Code ("***Bankruptcy Code***"), Rule(s) 9018 and 9037(c) of the Federal Rules of Bankruptcy Procedure ("***Federal Rules***"), and Rule 9037-1 of the United States Bankruptcy Court for the District of Colorado Local Bankruptcy Rules ("***Local Rules***").[2]

### BACKGROUND

3.  Alexander J. Johnson ("***Debtor***") filed a voluntary petition for bankruptcy relief ("***Petition***") under Chapter 7 of the Bankruptcy Code within this Bankruptcy Court on November 13, 2019 ("***Petition Date***"). *See* Dkt. No. 1.[3] M. Stephen Peters is the duly appointed Chapter 7 Trustee ("***Trustee***") of the Debtor's bankruptcy estate. Dkt. No. 4.

---

[1] To the extent the Bankruptcy Court later determines it cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution absent consent of the parties, RDD&J hereby CONSENTS to the entry of a final order by the Bankruptcy Court in connection with this Motion. *See* FED.R.BANKR.P. 7008.

[2] Hereinafter, unless otherwise stated, references to the Bankruptcy Code shall be cited as "11 U.S.C. § ____," references to the Federal Rules shall be cited as "FED.R.BANKR.P. ____" and references to the Local Rules shall be cited as "L.B.R. ____."

[3] Unless otherwise stated, "Dkt. No. ____" refers to the docket in the above-captioned Chapter 11 bankruptcy case; styled as, *In re Johnson*, Case No. 19-19816 EEB ("***Bankruptcy Case***").

4. The Debtor is a public figure within the State of Colorado as a professional football player employed by the Denver Broncos. Dkt. No. 16 at p.1.

5. Pursuant to *Schedule E/F: Creditors Who Have Unsecured Claims*, filed on November 25, 2019, the Debtor schedules RDD&J to hold an unsecured claim – albeit contingent, unliquidated and disputed – in the amount of $900,436.32 based on pre-petition services rendered. Dkt. No. 13 at p.4.

6. On February 18, 2020, RDD&J timely filed Proof of Claim 2-1 ("**Claim**") for the amount of $902,908.82 ("**Claim Amount**") contemporaneously with the *Motion of Law Offices of Ritchie, Dillard, Davies & Johnson, P.C. to File Under Seal Documentation in Support of Proof of Claim* ("**First Motion to Seal**"). Dkt. No. 52; *see also* Claim No. 2-1 at p.2; *accord* Dkt. No. 29 (claims bar date of March 30, 2020).

7. Pursuant to Seal Motion, which the Bankruptcy Court granted on February 19, 2020, RDD&J sought to file under seal unredacted representation agreements, invoices, attorney-client communications and pleadings entered on the dockets of pre-petition legal matters to "protect the Debtor from public scrutiny, scandal and/or defamation in relation to the past events…and allow RDD&J to demonstrate that its Claim arises…without violating its statutory or ethical duties…" Dkt. No. 52 at p.3 (¶14).

8. On April 20, 2020, RDD&J filed under seal an unredacted *Motion of Law Offices of Ritchie, Dillard, Davies & Johnson, P.C. to Convert Chapter 7 Bankruptcy Case to Case Under Chapter 11 of the Bankruptcy Code Pursuant To 11 U.S.C § 706(b) or, in the Alternative, Dismiss Bankruptcy Case Pursuant to 11 U.S.C. § 707(b)* ("**Sealed Motion**"), and filed six (6) exhibits incorporated by reference therein shortly thereafter ("**Sealed Exhibits**"). *See generally* Dkt. No(s). 68-69.

9. Pursuant to the *Order to File* entered on April 21, 2020, the Bankruptcy Court sets forth a deadline of April 28, 2020 for RDD&J to "file a motion requesting the Court to allow it to file the Motion and exhibits under seal and a proposed order…" Dkt. No. 70.

10. On April 22, 2020, RDD&J conveyed the Sealed Motion and Sealed Exhibits to the Debtor by and through electronic means and correspondences that included RDD&J requesting input from the Debtor as to necessary redactions and a proposed *Notice Pursuant To FED.R.BANKR.P. 1017, 2002, 9006(d), 9013 And Local Bankruptcy Rule 9013-1* ("**Proposed Notice**").

11. As of this Motion, the Debtor has approved the redactions to the Sealed Motion and Sealed Exhibits (hereinafter, collectively "**Redacted Motion**") in the form attached hereto as **EXHIBIT 1** and incorporated by reference herein; but has not offered any position as to the Proposed Notice attached hereto as **EXHIBIT 2** and incorporated by reference herein.

## **RELIEF REQUESTED**

12. Herein, RDD&J respectfully requests that the Bankruptcy Court issue an Order authorizing RDD&J to file under seal ("**Proposed Seal Order**") unredacted copies of the Sealed Motion and Sealed Exhibits. Furthermore, RDD&J seeks authorization to file the Redacted Motion

and only the certain and specific exhibits attached thereto without filing any privilege log as any reference, description or identification of the Sealed Exhibits shall lead RDD&J to violate confidentiality protections imposed under federal and state statutes.

13. 11 U.S.C. § 107(b) provides in relevant part that, "[o]n request from a party in interest, the bankruptcy court shall….protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title." 11 U.S.C. § 107(b)(2).

14. Pursuant to FED.R.BANKR.P. 9018, the Bankruptcy Court "may make any order which justice requires…(2) to protect any entity against scandalous or defamatory matter contained in any paper filed in a case under the Code, or (3) to protect governmental matters that are made confidential by statute or regulation."

15. A party seeking protection under 11 U.S.C. § 107(b) need not demonstrate "good cause." *See e.g. Video Software Dealers Ass'n. v. Orion Pictures Corp. (In re Orion Pictures Corp.)*, 21 F.3d 24, 27-28 (2d.Cir.1994). Instead, if the material for which protection is sought satisfies one of the categories identified under 11 U.S.C. § 107(b), "the court is *required* to protect a requesting interested party and has no discretion to deny the application." *Id*. at 27 (emphasis in original).

16. Analogous to the First Motion to Seal, the Bankruptcy Court suppressing the Sealed Motion and Sealed Exhibits shall protect the Debtor from public scrutiny, scandal and/or defamation in relation to applicable pre-petition legal matters that are deemed confidential to the extent that RDD&J would violate the legal protections afforded to the Debtor by merely mentioning the statutory basis for which the privacy rights derive.

17. Furthermore, the Debtor holding the sole and exclusive right to waive such privacy rights under applicable federal and state statutes conflicts with any requirements imposed upon RDD&J under 11 U.S.C. § 107(c)(3). In lieu of violating statutory, judicial and ethical duties of privacy and confidentiality, RDD&J seeks authorization to effectuate service of the Proposed Notice that would provide, *inter alia*, as follows: "**due to the sensitive nature of the allegations asserted within the Sealed Motion, any request for a copy of the Sealed Motion and/or the Sealed Exhibits shall be made upon the Debtor by and through his counsel.**" Exh. 2 at pp.1-2 (emphasis in original).

18. As the Debtor maintains copies of the Sealed Motion and Sealed Exhibits, which he may disclose to the Trustee, the Office of the United States Trustee or any other interested party entitled to a copy thereof under 11 U.S.C. § 107(c); suppressing the Sealed Motion and the Sealed Exhibits would prejudice neither the Debtor nor the Trustee.

19. Therefore, the Bankruptcy Court may allow RDD&J to file the Sealed Motion and Sealed Exhibits under seal as protected from disclosure under state and federal law. In addition, the Bankruptcy Court should protect the Debtor's rights and RDD&J's legal duties by authorizing RDD&J to file the Proposed Notice – setting forth an objection deadline in accordance with FED.R.BANKR.P. 1017(f)(1), 2002(a)(4) and 9006(d) – contemporaneously with the Redacted Motion under the two (2) applicable Case Management/Electronic Case Filing ("*CM/ECF*") events.

WHEREFORE, the Law Offices of Ritchie, Dillard, Davies & Johnson, P.C. respectfully requests that the United States Bankruptcy Court for the District of Colorado enter an Order, substantially in the form attached hereto, (a) granting this Motion to (i) file under seal the unredacted *Motion of Law Offices of Ritchie, Dillard, Davies & Johnson, P.C. to Convert Chapter 7 Bankruptcy Case to Case Under Chapter 11 of the Bankruptcy Code Pursuant To 11 U.S.C § 706(b) or, in the Alternative, Dismiss Bankruptcy Case Pursuant to 11 U.S.C. § 707(b)* and the 6 exhibits incorporated by reference therein; and (ii) file the Redacted Motion, which includes two (2) of the Sealed Exhibits, as publicly available pleadings filed by RDD&J under the CM/ECF events of Motion to Convert and Motion to Dismiss; (b) order that the unredacted Claim Attachments be kept under seal and not disclosed to any party except this Bankruptcy Court and the Debtor; (c) authorize RDD&J to file the Proposed Notice, together with a certificate of service, that establishes a deadline for objecting to the Redacted Motion as twenty-one (21)-days after the entry of an Order related hereto; and (d) grant such other and further relief as this Bankruptcy Court deems just and appropriate

DATED this 28th of April, 2020.


Respectfully submitted,
BERKEN CLOYES, P.C.


Joshua B. Sheade, Atty. Reg. No. 46993
1159 Delaware Street
Denver, Colorado 80204
Tel: (303) 623-4357
Fax: (720) 554-7853
Email: joshua@berkencloyes.com

*Attorneys for the LAW OFFICES OF RITCHIE, DILLARD, DAVIES & JOHNSON, P.C.*

4

## CERTIFICATE OF SERVICE

The undersigned certifies that on February 28, 2020, I served by the CM/ECF system, pre-paid first-class mail and/or other acceptable means (i.e. electronic correspondence or hand delivery), a copy of the foregoing **MOTION OF LAW OFFICES OF RITCHIE, DILLARD, DAVIES & JOHNSON, P.C. TO FILE UNDER SEAL MOTION TO CONVERT PURSUANT TO 11 U.S.C § 706(b) OR, IN THE ALTERNATIVE, DISMISS PURSUANT TO 11 U.S.C. § 707(b) AND EXHIBITS INCORPORATED BY REFERENCE THEREIN** on all parties against whom relief is sought, and those otherwise entitled to service, pursuant to the FED.R.BANKR.P. and these L.B.R., at the following addresses:

**Via CM/ECF:**

Jeffrey S. Brinen, Esq.
KUTNER BRINEN, P.C.
1660 Lincoln Street, Suite 1850
Denver, Colorado 80264

Paul Moss, Esq.
Office for the United States Trustee
Byron G. Rogers Federal Building
1961 Stout Street, Suite 12-200
Denver, Colorado 80294

Abbey Dreher, Esq.
BARRETT FRAPPIER & WEISSERMAN, LLP
4004 Belt Lane Road, Suite 100
Addison, Texas 75001

M. Stephen Peters, Esq.
CHAPTER 7 TRUSTEE
P.O. Box 4610
Frisco, Colorado 80443

Aaron J. Conrardy, Esq.
Lindsay Riley, Esq.
WADSWORTH GARBER WARNER CONRARDY, P.C.
2580 West Main Street, Suite 200
Littleton, Colorado 80120

By: _____
       Joshua B. Sheade, Esq.
       For BERKEN CLOYES, P.C.

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| IN RE: | |
| | Case No. 19-19816 EEB |
| ALEXANDER JOHNSON, | |
| | Chapter 7 |
| Debtor. | |

---

### MOTION OF LAW OFFICES OF RITCHIE, DILLARD, DAVIES & JOHNSON, P.C. TO CONVERT CHAPTER 7 BANKRUPTCY CASE TO CASE UNDER CHAPTER 11 OF THE BANKRUPTCY CODE PURSUANT TO 11 U.S.C § 706(b) OR, IN THE ALTERNATIVE, DISMISS BANKRUPTCY CASE PURSUANT TO 11 U.S.C. § 707(b)

---

The LAW OFFICES OF RITCHIE, DILLARD, DAVIES & JOHNSON, P.C. ("**RDD&J**"), through undersigned counsel, hereby respectfully moves the United States Bankruptcy Court for the District of Colorado ("**Bankruptcy Court**") to Convert the above-captioned Chapter 7 Bankruptcy Case to a Case Under Chapter 11 of the Bankruptcy Code Pursuant to 11 U.S.C. § 706(b) or, in the Alternative, Dismiss the above-captioned Bankruptcy Case Pursuant to 11 U.S.C. § 707(b) (**"Motion"**), and in support thereof, states as follows:

### JURISDICTION

1.  The Bankruptcy Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. § 157(b)(2)(A) and 28 U.S.C. § 1334.[1] Furthermore, venue is proper before this Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.  The statutory predicate for the relief requested is sections 706(b) and/or 707(b)(2) of Title 11 of the United States Code ("**Bankruptcy Code**") and Rule 1017 of the Federal Rules of Bankruptcy Procedure ("**Federal Rules**").[2]

### BACKGROUND

3.  Alexander J. Johnson ("**Debtor**") filed a voluntary petition for bankruptcy relief ("**Petition**") under Chapter 7 of the Bankruptcy Code within this Bankruptcy Court on November 13, 2019 ("**Petition Date**"). *See* Dkt. No. 1.[3] M. Stephen Peters is the duly appointed Chapter 7 Trustee ("**Trustee**") of the Debtor's bankruptcy estate. Dkt. No. 4.

---

[1]  To the extent the Bankruptcy Court later determines it cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution absent consent of the parties, RDD&J hereby CONSENTS to the entry of a final order by the Bankruptcy Court in connection with this Motion. *See* FED.R.BANKR.P. 7008.

[2]  Unless otherwise stated, references to the Bankruptcy Code shall be cited as "11 U.S.C. § ___," references to the Federal Rules shall be cited as "FED.R.BANKR.P. ___" and references to the United States Bankruptcy Court for the District of Colorado Local Bankruptcy Rules ("**Local Rules**") shall be cited as "L.B.R. ___."

[3]  Unless otherwise stated, "Dkt. No. ___" refers to the docket in the above-captioned Chapter 7 bankruptcy case; styled as, *In re Johnson*, Case No. 19-19816 EEB ("**Bankruptcy Case**").

4.  The Debtor schedules RDD&J to hold an unsecured – albeit contingent, unliquidated and disputed – claim in the amount of $900,436.32 based on pre-petition services rendered. Dkt. No. 13 at p.4.

5.  On February 18, 2020, RDD&J timely filed Proof of Claim 2-1 ("*Claim*") for the amount of $902,908.82 ("***Claim Amount***") contemporaneously with the *Motion of Law Offices of Ritchie, Dillard, Davies & Johnson, P.C. to File Under Seal Documentation in Support of Proof of Claim* ("***Seal Motion***"). Dkt. No. 52; *see also* Claim No. 2-1 at p.2; *accord* Dkt. No. 29 (claims bar date of March 30, 2020). As proof that the Claim arises from legal representation of the Debtor between November 19, 2014 and February 14, 2019 ("***Representation Period***"), RDD&J produced, *inter alia*, as follows:

     a.  representation agreements dated November 20, 2014, September 3, 2015 and July 11, 2017 (hereinafter, collectively "***Representation Agreements***");

     b.  a certain and specific Statement Summary; and

     c.  billing statements dated December 12, 2017, October 8, 2018, November 27, 2018 and November 28, 2018 (hereinafter, collectively "***Invoices***").

     *See* Claim No. 2-1, Part 2; Dkt. No. 52-1; *see also* Dkt. No. 51 ████████████

6.  

7.  Although RDD&J's Claim accounts for approximately seventy-four percent (74.3%) of the total debts scheduled, the Debtor represents that he need not complete the *Chapter 7 Statement of Your Currently Monthly Income* ("***Means Test Statement***") as exempt from the presumption of abuse. Dkt. No. 20; *cf. generally* Dkt. No. 13.

8.  Should this Bankruptcy Court require the Debtor to calculate his current monthly income ("**CMI**"), RDD&J offers a projected Means Test Statement for a 2-person and 4-person household attached hereto as **EXHIBIT 5** and incorporated by reference herein, derived from the 2019 Year to Date earnings the Debtor discloses within pay advices, *Schedule I: Your Income* and *Schedule J: Your Expenses* (hereinafter, collectively "**CMI Schedules**"). *See* Dkt. No. 31; *see also* Dkt. No. 16-17 (mother as dependent and expecting child).

9.  Pursuant to the CMI Schedules, filed on November 25, 2019, the Debtor maintains a monthly disposable income in the amount of $3,894.00 by and through earning an average monthly net income of $14,607.00 as a professional football player employed by the Denver Broncos. Dkt. No(s). 16, 17 at p.2; *see also* Dkt. No. 31 (year to date net pay of $172,856.91 as of November 10, 2019, which amount does not include a substantial amount of Debtor's 2019 income, as much of his income was paid during the last part of 2019); *cf.* Denver 2019 Schedule, available at: http://www.nfl.com/schedules/2019/REG/Broncos (seven (7) games remaining as of November 10, 2019). Although the Debtor enumerates potential reasons he may experience a decrease in his income within the year after the Petition Date, he fails to disclose that his current contract with the Denver Broncos provides for an increase in income from a base salary of $570,000.00 during the 2019 season to a base salary of $660,000.00 during the 2020 season. Dkt. No. 16 at p.2; *cf. e.g.* Spotrac, available at: https://www.spotrac.com/nfl/denver-broncos/aj-johnson-27931/; Over the Cap: NFL Salary Cap, Contracts, Salaries, Bonuses and Analysis, available at: https://overthecap.com/player/alexander-johnson/7710/.

10.  Furthermore, the Debtor holds a one hundred percent (100.0%) membership interest in CB45, LLC ("**CB45**"), a limited liability company formed with the Florida Secretary of State on September 19, 2018. Dkt. No(s). 9 at p.7, 11 at p.4. Although CB45 sells male, female and youth apparel, the Debtor omits from *Schedule I* a financial statement as proof that the entity realizes a monthly profit or loss. *Ibid.*; *see also* CB45: Shop, available at: https://chiefbeast.com/collections/all; *but cf.* Dkt. No. 16.

11.  On December 19, 2019, the Trustee commenced the 341 Meeting of Creditors, which was adjourned and concluded on January 3, 2020 ("**341 Meeting**"). Dkt. No(s). 24, 30. At the 341 Meeting, the Debtor testified that he relocated but has yet to file a notice of change of address within the Bankruptcy Case.

12.  Upon information and belief, the Debtor purchased a residential real property located at 90 North Galapago Street, Unit 11, Denver, Colorado 80223 on December 10, 2019 – approximately twenty-seven (27) days after the Petition Date – for a purchase price of $455,000.00 ("**Purchase Price**"). Pursuant to a REcolorado CoreLogic Property Detail ("**MLS Report**") attached hereto as **EXHIBIT 6** and incorporated by reference herein, an Alexander J. Johnson financed $386,750.00 of the Purchase Price, which implies a cash payment for the remaining balance of $68,250.00.

13.  On February 20, 2020, the Debtor filed an *Amended Schedule C: the Property You Claim as Exempt* in response to the *Objections to Debtor's Claims of Exemptions* filed by the Trustee on January 30, 2020. Dkt. No(s). 55, 60. As the Debtor amended his claim of

exemptions to reflect allowances under 11 U.S.C. § 522 [Dkt. No. 56 at p.2], RDD&J estimates the value of non-exempt scheduled assets in the amount of $140,403.00 and the sum of funds distributable to unsecured creditors as the amount of $129,632.85.

14.   On or about February 18, 2020, RDD&J filed the Claim and the Seal Motion contemporaneously with the *Joinder of Law Offices of Ritchie, Dillard, Davies & Johnson, P.C. to United States Trustee's Motion to Extend Deadlines to File a Complaint Objecting to Discharge Under 11 U.S.C. § 727 or Motion to Dismiss Under 11 U.S.C. § 707* ("***Joinder***").

15.   Upon no party objecting the *United States Trustee's Motion to Extend Deadlines to File a Complaint Objecting to Discharge Under 11 U.S.C. § 727 or Motion to Dismiss Under 11 U.S.C. § 707* [Dkt. No. 47], the Bankruptcy Court extended the deadlines for objecting to discharge or moving to dismiss up to and through April 20, 2020. Dkt. No. 62.

## RELIEF REQUESTED

16.   Herein, RDD&J seeks for the Bankruptcy Court to issue an Order converting the above-captioned Bankruptcy Case to a case under Chapter 11 of the Bankruptcy Code, pursuant to 11 U.S.C. § 706(b). Alternatively, RDD&J moves this Bankruptcy Court to dismiss the Bankruptcy Case under 11 U.S.C. § 707(b).

### A.   Conversion of the Bankruptcy Case Most Inures to the Benefit of All Parties.

17.   Section 706(b) of the Bankruptcy Code provides that "[o]n request of a party in interest and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 11 of this title at any time." 11 U.S.C. § 706(b). As the Bankruptcy Court may convert this Bankruptcy Case to a case under Chapter 11 without the Debtor's consent, but not to a case under Chapter 13, the Bankruptcy Court should first decide whether "the [D]ebtor may be a debtor under [Chapter 13]." 11 U.S.C. §§ 706(b)-(d).

### i.   The Non-Contingent and Liquidated Claim of RDD&J Exceeds the Debt Limitations Under 11 U.S.C. § 109(e).

18.   Should the Bankruptcy Court find that the debt incurred to RDD&J is noncontingent and liquidated, the Debtor does not qualify for bankruptcy protection under Chapter 13 of the Bankruptcy Code as the Claim Amount exceeds the section 109(e) debt limit adjusted amount of $419,275.00. *See* Revision of Certain Dollar Amounts in the Bankruptcy Code Prescribed Under Section 104(a) of the Code, 84 Fed.Reg. 3488 (February 12, 2019). *Federal Register: The Daily Journal of the United States*. Web. 12 February 2019.

19.   A contingent claim, "[a]s defined by Black's Law Dictionary,…is '[o]ne which has not accrued and which is dependent on some future event that may never happen.'" *In re Parker*, 264 B.R. 685, 697 (10th Cir.B.A.P.2001)(quoting *Black's Law Dictionary* 290 (5th ed.1979)); *aff'd* 313 F.3d 1267 (10th Cir.2002). By adopting "the conduct theory," The *Parker* Court rationalized that a claim exists as of the date the action and/or conduct giving rise to the liability occurred. *Parker*, 264 B.R. at 696; *aff'd* 313 F.3d at 1269-70; *see also In re Salazar*, 348 B.R. 559, 568 (Bankr.D.Colo.2006).

20.   "Whether a debt is liquidated turns on whether it is subject to 'ready determination and precisions in computation of the amount due.'" *In re Hanson*, 275 B.R. 593, 596 (Bankr.D.Colo.2002); *see also In re Adams*, 373 B.R. 116, 120 (10th Cir.BAP 2007). The Bankruptcy Court also recognizes that "a debtor's dispute, defenses or counterclaims, do not affect the character and classification of claim as being *liquidated*.'" *Hanson*, 275 B.R. at 596-97 (emphasis in original) (quoting *In re Clark*, 91 B.R. 570, 574 (Bankr.D.Colo. 1988) (internal citations omitted)).

21.   Herein, the documents supporting the Claim demonstrate that RDD&J commenced, rendered and completed all services contemplated under the Representation Agreements prior to the Petition Date. *See e.g.* Dkt. No. 51 ███████████████████████████ ████████████████████████████ The Invoices also disclose the specific basis for each and every service rendered throughout the Representation Period, and the hourly rates set forth in the Representation Agreements allow for a precise calculation of the amount the Debtor owes to RDD&J.

22.   As the Claim arises from legal services rendered on behalf of the Debtor prior to the Petition Date, and RDD&J calculates the Claim Amount based on approved services at hourly rates set forth in the Representation Agreements executed by the Debtor, the entire sum of the Claim is noncontingent and liquidated. Therefore, the relief afforded under Chapter 13 of the Bankruptcy Code is not available to the Debtor as RDD&J's Claim exceeds the unsecured debt limitation of 11 U.S.C. § 109(e).

###   ii.   Conversion to Chapter 11 Shall Maximize the Value of the Estate.

23.   The Bankruptcy Court should find that conversion of the Bankruptcy Case to a reorganization under Chapter 11 shall benefit all parties in interest as allowing the Debtor to retain control of the bankruptcy estate while maximizing the value thereof by paying unsecured creditors five (5) years of gross disposable income.

24.   In determining this issue, sister courts have looked for guidance from the Supreme Court of the United States and rationalize that "[s]ince there are no specific grounds for conversion, a court 'should consider anything relevant that would further the goals of the Bankruptcy Code.'" *Proudfoot Consulting Co. v. Gordon (In re Gordon)*, 495 B.R. 683, 692 (Bankr.N.D.Ga.2012)(quoting *In re Lobera*, 454 B.R. 824, 854 (Bankr.D.N.M.2011)); *see also Toibb v. Radloff*, 501 U.S. 157, 164 (1991)(citing *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 351-54 (1985)("Chapter 11 also embodies the general Code policy of maximizing the value of the bankruptcy estate")). In addition, the United States Bankruptcy Appellate Panel for the Eight Circuit recognized that "the bankruptcy court acted within its discretion by determining that the Debtor's ability to pay was 'far and away an important factor under [§] 706(b).'" *Schlehuber v. Fremont Nat'l Bank & Trust Co. (In re Schlehuber)*, 489 B.R. 570, 575 (8th Cir.BAP 2013).

25.   Herein, the CMI Schedules demonstrate that a monthly disposable income between the amount of $7,837.85 and $9,241.85, which equates to distributions to unsecured creditors between the total sum of $470,271.08 and $554,511.08. Alternatively, the gross disposable

income disclosed under *Schedule I: Your Income* shall allow holders of unsecured claims to receive a pro rata share of $233,640.00, which is a sum approximately eighty percent *80%) greater than the funds subject to distribution by the Trustee.

26.    Furthermore, if the Debtor did purchase the residential real property by and through paying cash in the amount of $68,250.00, conversion to a reorganization under Chapter 11 shall allow him to retain his property without any party inquiring why he failed to disclose such money as an asset of the bankruptcy estate.

27.    Therefore, the ability for the Debtor to retain possession and control of the bankruptcy estate while maximizing the value of the estate for the benefit of his creditors demonstrates that conversion of the Bankruptcy Case to a case under Chapter 11 is in the best interest of all parties.

   **B.    The Bankruptcy Case is Subject to Dismissal Under 11 U.S.C. § 707(b) as the Claim of RDD&J is a Consumer Debt.**

28.    Although conversion to a case under Chapter 11 is in the best interest of all parties, the Bankruptcy Court may dismiss the Bankruptcy Case as a presumption of abuse arises under 11 U.S.C. §§ 707(b)(1) and (2).

29.    Should the Bankruptcy Court disagree with RDD&J on converting the Bankruptcy Case, the Bankruptcy Court should determine whether the Claim of RDD&J is a consumer debt and, if so, whether a substantial abuse of the provisions of Chapter 7 arises under 11 U.S.C. § 707(b)(2) for which the Debtor cannot rebut upon the presumption shifting. *See In re Palmer*, 542 B.R. 289, 292 (Bankr.D.Colo.2015); *see also In re Banks*, 345 B.R. 328, 330 (Bankr.D.Colo.2016) (enumerating whether debtor is an individual as third element).

       *i.    The RDD&J Claim is a Consumer Debt.*

30.    The Bankruptcy Court must first determine whether the attorneys' fees and litigation costs due and owing to RDD&J is a "consumer debt." *See e.g. In re Durant*, 586 B.R. 212, 217 (Bankr.D.Md.2018). The Bankruptcy Code defines a "consumer debt" as a debt incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C. § 101(8); *see also In re Stewart*, 175 F.3d 796, 806 (10th Cir.1999); *Durant*, 586 B.R. at 219 ("debt that an individual debtor undertakes to serve her private affairs").

31.    In determining what constitutes a consumer debt, the Tenth Circuit Court of Appeals adopted the "profit motive" test articulated within *Citizens Nat'l Bank v. Burns (In re Burns)*, 894 F.2d 361 (10th Cir.1990).[4] *Stewart*, 175 F.3d at 806 (quoting *Burns*, 894 F.2d at 363)("'non-consumer' debt as a debt incurred with a 'profit motive'"); *but cf. e.g. Durant*, 586 B.R. at 220 ("interstitial" debts include tax claims "with a purpose to benefit

---

[4]    The *Burns* Court further rationalizes that "[t]he legislative history of [the predecessor to section 101(8)] indicates that it was adapted from the definition used in various consumer protection laws…and the courts have turned to the test articulated in cases decided under those laws to determine when a debt falls within the above description." *Burns*, 894 F.2d at 363 (citing *In re Booth*, 858 F.2d 1051, 1054 (5th Cir.1988)(citing H.Rep. No. 95-595, 95th Cong. 1st Sess. (1977); S.Rep. No. 95-989 2nd Sess. 22 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5808. H.R.Rep. No. 95-595 (1977)).

the public" and "some tort claims…characterized as involuntary with a purpose to compensate the victim").

32.     Within the context of legal fees, classification as consumer or non-consumer debt turns primarily on the basis for the legal services purchased. *Patti v. Fred Ehrich, P.C. (In re Patti)*, 304 B.R. 182, 188 (E.D.Pa.2003).

33.     

34.

35.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

WHEREFORE, the Law Offices of Ritchie, Dillard, Davies & Johnson, P.C. respectfully requests that the United States Bankruptcy Court for the District of Colorado enter an Order, substantially in the form attached hereto, (a) granting this Motion to either (i) convert the above-captioned Chapter 7 Bankruptcy Case to a case under Chapter 11 of the Bankruptcy Code, pursuant to 11 U.S.C. § 706(b); or, in the alternative (ii) dismissing the above-captioned Bankruptcy Case as the Claim of RDD&J is a consumer debt that gives rise to a presumption of abuse under 11 U.S.C. § 707(b)(2); and (b) grant such other and further relief as this Bankruptcy Court deems just and appropriate

DATED this 20th of April, 2020.

Respectfully submitted,
BERKEN CLOYES, P.C.

Joshua B. Sheade, Atty. Reg. No. 46993
1159 Delaware Street
Denver, Colorado 80204
Tel: (303) 623-4357
Fax: (720) 554-7853
Email: joshua@berkencloyes.com

*Attorneys for the LAW OFFICES OF RITCHIE, DILLARD, DAVIES & JOHNSON, P.C.*

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

IN RE:

ALEXANDER JOHNSON,

                        Debtor.

Case No. 19-19816 EEB

Chapter 7

---

### ORDER GRANTING MOTION TO FILE UNDER SEAL DOCUMENTATION IN SUPPORT OF PROOF OF CLAIM

---

       **THIS MATTER** having come before the Court on the *Motion of Law Offices of Ritchie, Dillard, Davies & Johnson, P.C. to Convert Chapter 7 Bankruptcy Case to Case Under Chapter 11 of the Bankruptcy Code Pursuant To 11 U.S.C § 706(b) or, in the Alternative, Dismiss Bankruptcy Case Pursuant to 11 U.S.C. § 707(b)* ("Motion"), filed by the Law Offices of Ritchie, Dillard, Davies & Johnson, P.C. ("RDD&J"), pursuant to 11 U.S.C. §§ 706(b), 707(b)(2), and FED.R.BANKR.P. 1017(e). The Court having considered the Motion, any responses or arguments made thereto, and being duly advised, does hereby

       **FIND** that RDD&J demonstrates that conversion of the above-captioned Chapter 7 bankruptcy case to a case under Chapter 11 of Title 11 of the United States Code is in the best interest of all parties as furthering the goals of the Bankruptcy Code. Therefore, the Court does hereby

       **ORDER** that the Motion is **GRANTED**.

DATED this ____ day of _____, 2020

                                            BY THE COURT:

                                            _____

                                            Hon. Elizabeth E. Brown
                                            United States Bankruptcy Court Judge

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| IN RE: | |
| | Case No. 19-19816 EEB |
| ALEXANDER JOHNSON, | |
| | Chapter 7 |
| Debtor. | |

## ORDER GRANTING MOTION TO FILE UNDER SEAL DOCUMENTATION IN SUPPORT OF PROOF OF CLAIM

      **THIS MATTER** having come before the Court on the *Motion of Law Offices of Ritchie, Dillard, Davies & Johnson, P.C. to Convert Chapter 7 Bankruptcy Case to Case Under Chapter 11 of the Bankruptcy Code Pursuant To 11 U.S.C § 706(b) or, in the Alternative, Dismiss Bankruptcy Case Pursuant to 11 U.S.C. § 707(b)* ("Motion"), filed by the Law Offices of Ritchie, Dillard, Davies & Johnson, P.C. ("RDD&J"), pursuant to 11 U.S.C. §§ 706(b), 707(b)(2), and FED.R.BANKR.P. 1017(e). The Court having considered the Motion, any responses or arguments made thereto, and being duly advised, does hereby

      **FIND** that RDD&J demonstrates that the presumption of abuse arises as the Debtor has incurred primarily consumer debts as such term is defined under 11 U.S.C. §§ 101(8). Therefore, the Court does hereby

      **ORDER** that the Motion is **GRANTED**. Therefore, the above-captioned bankruptcy case is hereby **DISMISSED**.

DATED this ____ day of _____, 2020

BY THE COURT:

_____
Hon. Elizabeth E. Brown
United States Bankruptcy Court Judge

EXHIBIT 5

| November 10, 2019 YTD/11.5 Months | Debtor 1 | Debtor 2 or Non-Filing Spouse | Total |
|---|---|---|---|
| **INCOME** | | | |
| Gross Wages | $ 30,674 29 | $ - | |
| Alimony and Maintenance Payments | $ - | $ - | |
| Third-Party Contributions | $ - | $ - | |
| Net Business, Profession, Farm Income | $ - | $ - | |
| Net Rental Property Income | $ - | $ - | |
| Interest, Dividends & Royalties | $ - | $ - | |
| Unemployment Compensation | $ - | $ - | |
| Pension or Retirement Income | $ - | $ - | |
| Additional Sources | $ - | $ - | |
| **CURRENT MONTHLY INCOME** | | | $ 30,674 29 |
| **Multiply by 12** | | | $ 368,091 46 |
| **Colorado 2-Person Household Median Family Income** | | | $ 79,711 00 |
| **DEDUCTIONS** | | | |
| Spousal Personal Expenses | $ - | $ - | |
| Food, Clothing & Household Items | $ 1,288 00 | $ - | |
| Out-of-Pocket Health Care Allowance | $ 169 00 | $ - | |
| Housing and Utilities - Operating | $ 541 00 | $ - | |
| Housing and Utilities - Rent | $ 1,417 00 | $ - | |
| Actual Housing Expense Amount | $ 542 00 | $ - | |
| Vehicle Operation | $ 424 00 | $ - | |
| Vehicle Ownership No  1 | $ - | $ - | |
| Vehicle Ownership No  2 | $ 508 00 | $ - | |
| Public Transit | $ - | $ - | |
| Additional Transportation | $ 217 00 | $ - | |
| Taxes (YTD/11 5) | $ 12,501 98 | $ - | |
| Involuntary Deductions (YTD/11 5) | $ 1,627 46 | $ - | |
| Life Insurance | $ - | $ - | |
| Court-Ordered Payments | $ - | $ - | |
| Education | $ - | $ - | |
| Childcare | $ - | $ - | |
| Additional Health Care Expenses | $ - | $ - | |
| Optional Telephone Services | $ - | $ - | |
| **Total IRS Allowances** | | | $ 19,235 44 |
| Health Insurance | $ - | $ - | |
| Disability Insurance | $ - | $ - | |
| Health Savings Account | $ - | $ - | |
| Contributions to Family Care | $ - | $ - | |
| Protection Against Violence | $ - | $ - | |
| Additional Home Energy Costs | $ - | $ - | |
| Dependent Education | $ - | $ - | |
| Additional Food & Clothing | $ 42 00 | $ - | |
| Charitable Contributions | $ 100 00 | $ - | |
| **Total Additional Expense Deductions** | | | $ 142 00 |

| | | | |
|---|---|---|---|
| Home Mortgage | $ 890 00 | $ - | |
| Loan Vehicle No  1 | $ 1,165 00 | $ - | |
| Loan Vehicle No  2 | $ - | $ - | |
| Priority Claims | $ - | $ - | |
| Chapter 13 Eligibility Plan Payments | $ - | $ - | |
| Total Secured & Priority Debt Obligations | | $ | 2,055 00 |
| TOTAL DEDUCTIONS | | $ | 21,432 44 |
| MONTHLY DISPOSABLE INCOME FOR 60 MONTHS | | | |
| Adjusted Current Monthly Income | $ 30,674 29 | | |
| Total Deductions | $ 21,432 44 | | |
| Monthly Disposable Income | $ 9,241 85 | | |
| FOR 60 MONTHS | $ 554,511.08 | | |
| PRESUMPTION OF ABUSE EXCEPTION | | | |
| Total Unsecured Debts | $ 922,686 82 | | |
| Multiply by 25% | $ 230,671 71 | | |
| CMI CAN PAY 25% | YES | | |

**EXHIBIT 5**
**Motion to Convert Pursuant 11 U.S.C. § 706(b) or, in the Alternative,**
**Dismiss Pursuant to 11 U.S.C. § 707(b)**
**Page 2 of 4**

| November 10, 2019 YTD/11.5 Months | Debtor 1 | Debtor 2 or Non-Filing Spouse | Total |
|---|---|---|---|
| **INCOME** | | | |
| Gross Wages | $ 30,674 29 | $ - | |
| Alimony and Maintenance Payments | $ - | $ - | |
| Third-Party Contributions | $ - | $ - | |
| Net Business, Profession, Farm Income | $ - | $ - | |
| Net Rental Property Income | $ - | $ - | |
| Interest, Dividends & Royalties | $ - | $ - | |
| Unemployment Compensation | $ - | $ - | |
| Pension or Retirement Income | $ - | $ - | |
| Additional Sources | $ - | $ - | |
| **CURRENT MONTHLY INCOME** | | | $ 30,674 29 |
| **Multiply by 12** | | | $ 368,091 46 |
| **Colorado 4-Person Household Median Family Income** | | | $ 105,947 00 |
| **DEDUCTIONS** | | | |
| Spousal Personal Expenses | $ - | $ - | |
| Food, Clothing & Household Items | $ 1,786 00 | $ - | |
| Out-of-Pocket Health Care Allowance | $ 279 00 | $ - | |
| Housing and Utilities - Operating | $ 630 00 | $ - | |
| Housing and Utilities - Rent | $ 1,648 00 | $ - | |
| Actual Housing Expense Amount | $ - | $ - | |
| Vehicle Operation | $ 424 00 | $ - | |
| Vehicle Ownership No  1 | $ - | $ - | |
| Vehicle Ownership No  2 | $ 508 00 | $ - | |
| Public Transit | $ - | $ - | |
| Additional Transportation | $ 217 00 | $ - | |
| Taxes (YTD/11 5) | $ 12,501 98 | $ - | |
| Involuntary Deductions (YTD/11 5) | $ 1,627 46 | $ - | |
| Life Insurance | $ - | $ - | |
| Court-Ordered Payments | $ - | $ - | |
| Education | $ - | $ - | |
| Childcare | $ - | $ - | |
| Additional Health Care Expenses | $ 1,000 00 | $ - | |
| Optional Telephone Services | $ - | $ - | |
| **Total IRS Allowances** | | | $ 20,621 44 |
| Health Insurance | $ - | $ - | |
| Disability Insurance | $ - | $ - | |
| Health Savings Account | $ - | $ - | |
| Contributions to Family Care | $ - | $ - | |
| Protection Against Violence | $ - | $ - | |
| Additional Home Energy Costs | $ - | $ - | |
| Dependent Education | $ - | $ - | |
| Additional Food & Clothing | $ 60 00 | $ - | |
| Charitable Contributions | $ 100 00 | $ - | |
| **Total Additional Expense Deductions** | | | $ 160 00 |

**EXHIBIT 5**
**Motion to Convert Pursuant 11 U.S.C. § 706(b) or, in the Alternative,**
**Dismiss Pursuant to 11 U.S.C. § 707(b)**
**Page 3 of 4**

| Home Mortgage | $ | 890 00 | $ | - | |
| Loan Vehicle No  1 | $ | 1,165 00 | $ | - | |
| Loan Vehicle No  2 | $ | - | $ | - | |
| Priority Claims | $ | - | $ | - | |
| Chapter 13 Eligibility Plan Payments | $ | - | $ | - | |
| Total Secured & Priority Debt Obligations | | | $ | 2,055 00 | |
| TOTAL DEDUCTIONS | | | $ | 22,836 44 | |
| **MONTHLY DISPOSABLE INCOME FOR 60 MONTHS** | | | | | |
| Adjusted Current Monthly Income | $ | 30,674 29 | | | |
| Total Deductions | $ | 22,836 44 | | | |
| Monthly Disposable Income | $ | 7,837 85 | | | |
| **FOR 60 MONTHS** | $ | **470,271.08** | | | |
| **PRESUMPTION OF ABUSE EXCEPTION** | | | | | |
| Total Unsecured Debts | $ | 922,686 82 | | | |
| Multiply by 25% | $ | 230,671 71 | | | |
| **CMI CAN PAY 25%** | **YES** | | | | |

**EXHIBIT 5**
**Motion to Convert Pursuant 11 U.S.C. § 706(b) or, in the Alternative,**
**Dismiss Pursuant to 11 U.S.C. § 707(b)**
**Page 4 of 4**

# 90 Galapago St #11, Denver, CO 80223-1595, Denver County



EXHIBIT 6

| **2** | **1,226** | **619** | **$455,000** |
|---|---|---|---|
| MLS Beds | MLS Sq Ft | Lot Sq Ft | MLS Sale Price |
| **3** | **N/A** | **N/A** | **12/10/2019** |
| MLS Baths | Yr Built | Type | MLS Sale Date |

## Owner Information

| | | | |
|---|---|---|---|
| Owner Name: | **Johnson Alexander J** | Mailing ZIP 4: | **1595** |
| Mailing Address: | **90 Galapago St #11** | Mailing Carrier Route: | **C033** |
| Mailing City & State: | **Denver, CO** | Owner Occupied: | **Yes** |
| Mailing Zip: | **80223** | | |

## Location Information

| | | | |
|---|---|---|---|
| Property Zip: | **80223** | Range: | **68W** |
| Property Zip4: | **1595** | Section: | **10** |
| Property Carrier Route: | **C033** | Quarter: | **SW** |
| Subdivision: | **Lake Archer Sub** | Block: | **4** |
| Census Tract: | **21.00** | Lot: | **8** |
| Township: | **04S** | | |

## Tax Information

| | | | |
|---|---|---|---|
| PIN: | **5103-06-085** | % Improved: | **91%** |
| Alternate PIN: | **164298444** | Tax District: | **DENV** |
| Schedule Number: | **0510306085000** | | |
| Legal Description: | **LAKE ARCHER SUB B4 PTN L8 & L9 COM NW COR L10 E 79.83FT S 53.12FT TPOB TH S 14.83FT W 41.74FT N 14.83FT E 41.74FT TPOB** | | |

## Assessment & Tax

| Assessment Year | 2019 | 2018 |
|---|---|---|
| Market Value - Land | $15,500 | |
| Market Value - Improved | $158,000 | |
| Market Value - Total | $173,500 | |
| Assessed Value - Land | $1,110 | |
| Assessed Value - Improved | $11,300 | |
| Assessed Value - Total | $12,410 | |

| Tax Year | Total Tax | |
|---|---|---|
| 2019 | $895 | |

## Characteristics

| | | | |
|---|---|---|---|
| Lot Acres: | **0.0142** | Baths - Total: | **MLS: 3** |
| Lot Sq Ft: | **619** | MLS Total Baths: | **3** |
| Year Built: | **MLS: 2019** | Baths - Half: | **MLS: 1** |
| Bldg Sq Ft - Finished: | **MLS: 1,226** | Garage Capacity: | **MLS: 1** |
| Bedrooms: | **MLS: 2** | | |

## Listing Information

| | | | |
|---|---|---|---|
| MLS Listing Id: | **8633416** | MLS Close Price: | **$455,000** |
| MLS Days On Market: | **209** | MLS Listing Contract Date: | **04/26/2019** |
| MLS Status: | **Closed** | MLS Close Date: | **12/10/2019** |
| MLS Status Change Date: | **12/10/2019** | MLS List Office Name: | **MODUS REAL ESTATE** |

**REcolorado**
The data within this report is compiled by CoreLogic from public and private sources. The data is deemed reliable, but is not guaranteed. The accuracy of the data contained herein can be independently verified by the recipient of this report w th the applicable county or mun cipality.

**Property Detail**

Page 1 of 2

MLS Current Price: $459,900                         MLS List Agent Full Name: Sold St. Germain Moore Team
MLS Original List Price: **$474,900**              MLS Area: **DENVER**

## Last Market Sale & Sales History

| | | | |
|---|---|---|---|
| Sale Date: | **Tax: 12/04/2019 MLS: 12/10/2019** | Deed Type: | **Special Warranty Deed** |
| Sale Price: | **$455,000** | Owner Name: | **Johnson Alexander J** |
| Document Number: | **173539** | Seller: | **Baker 14 LLC** |

| | |
|---|---|
| Sale Date | 12/04/2019 |
| Sale Price | $455,000 |
| Buyer | Johnson Alexander J |
| Seller | Baker 14 LLC |
| Document Number | 173539 |
| Document Type | Special Warranty Deed |

## Mortgage History

| | |
|---|---|
| Mortgage Date | 12/11/2019 |
| Mortgage Amount | $386,750 |
| Mortgage Lender | Cherry Crk Mtg Co Inc |
| Borrower | Johnson Alexander J |
| Mortgage Type | Conventional |
| Mortgage Purpose | 1st Time Sale |
| Mortgage Term | 30 |
| Mortgage Term | Years |

## Property Map



*Lot Dimensions are Estimated



REcolorado

The data within this report is compiled by REcolorado from public and private sources. The data is not guaranteed accurate. The accuracy of the data contained herein can be independently verified by the recipient of this report with the applicable county or municipality.

**EXHIBIT 6**
**Motion to Convert Pursuant 11 U.S.C. § 706(b) or, in the Alternative**
**Dismiss Pursuant to 11 U.S.C. § 707(b)**
**Page 2 of 6**

Property Detail

Page 2 of 2

**Full Property View**

## 90 N Galapago Street Unit #11, Denver, CO 80223     ----     **$455,000** - Closed

| History |
|---|

## Listing History from MLS

ListingID: 2844594   Sts: Expired      **90 N Galapago Street Unit #12, Denver, CO 80223**   LA: Gearhart Moore Team
Parcel #: 5103-06-074                        Residential, Multi-Family              LO: Modus Real Estate



| Effective Date | Change Type | Prev -> New | Change Timestamp | Days in MLS |
|---|---|---|---|---|
| 12/30/2019 | Expired | WTH->EXP | 12/31/19 - 12:10 AM | 46 |
| 12/10/2019 | Withdrawn | ACT->WTH | 12/10/19 - 11:46 AM | 46 |
| 10/25/2019 | New Listing | ACT-> $529,900 | 10/25/19 - 07:07 AM | |

ListingID: 6649610   Sts: Closed      **90 N Galapago Street Unit #10, Denver, CO 80223**   LA: Gearhart Moore Team
Parcel #: 5103-06-074                        Residential, Multi-Family              LO: Modus Real Estate



| Effective Date | Change Type | Prev -> New | Change Timestamp | Days in MLS |
|---|---|---|---|---|
| 12/05/2019 | Closed | ($373,000) | 12/05/19 - 05:35 PM | 36 |
| 11/04/2019 | Pending | ACT->PND | 11/08/19 - 04:25 PM | 36 |
| 10/25/2019 | Price Increase | $379,750->$379,900 | 10/25/19 - 07:16 AM | 22 |
| 10/16/2019 | Price Decrease | $379,900->$379,750 | 10/16/19 - 10:02 PM | 13 |
| 10/03/2019 | New Listing | ACT-> $379,900 | 10/03/19 - 01:01 PM | |

ListingID: 2003574   Sts: Closed      **90 N Galapago Street Unit #5, Denver, CO 80223**   LA: Gearhart Moore Team
Parcel #: 5103-06-074                        Residential, Multi-Family              LO: Modus Real Estate



| Effective Date | Change Type | Prev -> New | Change Timestamp | Days in MLS |
|---|---|---|---|---|
| 10/28/2019 | Closed | ($379,900) | 10/28/19 - 03:00 PM | 6 |
| 09/30/2019 | Pending | ACT->PND | 09/30/19 - 01:32 PM | 6 |
| 09/24/2019 | New Listing | ACT-> $379,900 | 09/24/19 - 08:44 PM | |

ListingID: 7953743   Sts: Closed      **90 N Galapago Street Unit #14, Denver, CO 80223**   LA: Gearhart Moore Team
Parcel #: 5103-06-074                        Residential, Multi-Family              LO: Modus Real Estate

| Effective Date | Change Type | Prev -> New | Change Timestamp | Days in MLS |
|---|---|---|---|---|
| 10/22/2019 | Closed | ($539,597) | 11/07/19 - 01:04 PM | 41 |
| 09/28/2019 | Pending | ACT->PND | 10/04/19 - 03:21 PM | 41 |
| 09/12/2019 | Price Decrease | $544,900->$544,500 | 09/12/19 - 03:21 PM | 19 |
| 08/24/2019 | New Listing | ACT-> $544,900 | | |

<span style="color:red">**EXHIBIT 6**
**Motion to Convert Pursuant to 11 U.S.C. § 706(b) or, in the Alternative,**
**Dismiss Pursuant to 11 U.S.C. § 707(b)**
**Page 3 of 6**</span>



---

ListingID: 2433901  Sts: Closed          90 N Galapago Street Unit #2, Denver, CO 80223     LA: Gearhart Moore Team
Parcel #: 5103-06-074                              Residential, Multi-Family                LO: Modus Real Estate



| Effective Date | Change Type | Prev -> New | Change Timestamp | Days in MLS |
|---|---|---|---|---|
| 11/04/2019 | Closed | ($537,500) | 11/04/19 - 03:41 PM | 37 |
| 09/30/2019 | Pending | ACT->PND | 09/30/19 - 01:57 PM | 37 |
| 09/24/2019 | Price Decrease | $544,500->$539,900 | 09/24/19 - 08:12 PM | 31 |
| 09/12/2019 | Price Decrease | $544,900->$544,500 | 09/12/19 - 03:19 PM | 19 |
| 08/24/2019 | New Listing | ACT-> $544,900 | 08/24/19 - 04:42 PM | |

---

ListingID: 5377264  Sts: Closed          90 N Galapago Street Unit #9, Denver, CO 80223     LA: Gearhart Moore Team
Parcel #: 5103-06-074                              Residential, Multi-Family                LO: Modus Real Estate

| Effective Date | Change Type | Prev -> New | Change Timestamp | Days in MLS |
|---|---|---|---|---|
| 11/04/2019 | Closed | ($529,000) | 11/05/19 - 01:11 PM | 61 |
| 10/19/2019 | Pending | ACT->PND | 10/24/19 - 02:07 PM | 61 |
| 10/16/2019 | Price Decrease | $532,500->$532,249 | 10/16/19 - 10:02 PM | 53 |
| 10/04/2019 | Price Decrease | $534,500->$532,500 | 10/04/19 - 03:22 PM | 41 |
| 09/12/2019 | Price Decrease | $534,900->$534,500 | 09/12/19 - 03:20 PM | 19 |
| 08/24/2019 | New Listing | ACT-> $534,900 | 08/24/19 - 04:21 PM | |

---

ListingID: 5731164  Sts: Closed          90 N Galapago Street Unit #4, Denver, CO 80223     LA: Gearhart Moore Team
Parcel #: 5103-06-074                              Residential, Multi-Family                LO: Modus Real Estate



| Effective Date | Change Type | Prev -> New | Change Timestamp | Days in MLS |
|---|---|---|---|---|
| 09/12/2019 | Closed | ($474,900) | 09/12/19 - 03:11 PM | 0 |
| 08/23/2019 | Pending | ACT->PND | 08/23/19 - 09:46 AM | 0 |
| 08/23/2019 | New Listing | ACT-> $474,900 | 08/23/19 - 09:38 AM | |

---

ListingID: 2750934  Sts: Closed          90 N Galapago Street Unit #8, Denver, CO 80223     LA: Charles Moore
Parcel #: 5103-06-074                              Residential, Multi-Family                LO: Modus Real Estate

| Effective Date | Change Type | Prev -> New | Change Timestamp | Days in MLS |
|---|---|---|---|---|
| 10/01/2019 | Closed | ($549,900) | 10/02/19 - 06:34 AM | 77 |
| 09/05/2019 | Pending | ACT->PND | 09/06/19 - 03:40 PM | 77 |
| 08/23/2019 | Price Decrease | $550,000->$549,900 | 08/24/19 - 11:11 AM | 65 |

EXHIBIT 6
Motion to Convert Pursuant to 11 U.S.C. § 706(b) or, in the Alternative,
Dismiss Pursuant to 11 U.S.C. § 707(b)
Page 4 of 6



| 08/19/2019 | Price Decrease | $554,900->$550,400 | 08/19/19 - 10:25 AM | 59 |
| 08/19/2019 | Price Increase | $549,900->$554,900 | 08/19/19 - 10:18 AM | 59 |
| 07/31/2019 | Price Decrease | $554,900->$549,900 | 07/31/19 - 09:39 PM | 40 |
| 06/21/2019 | New Listing | ACT-> $554,900 | 06/21/19 - 09:11 PM | |

**ListingID:** 6383622  **Sts:** Closed                90 N Galapago Street Unit #1, Denver, CO 80223   **LA:** Gearhart Moore Team
**Parcel #:** 5103-06-074                                      Residential, Multi-Family                                  **LO:** Modus Real Estate



| Effective Date | Change Type | Prev -> New | Change Timestamp | Days in MLS |
|---|---|---|---|---|
| 08/16/2019 | Closed | ($549,000) | 08/16/19 - 03:22 PM | 0 |
| 05/06/2019 | Pending | ACT->PND | 05/06/19 - 01:01 PM | 0 |
| 05/06/2019 | New Listing | ACT-> $559,000 | 05/06/19 - 12:59 PM | |

**ListingID:** 8633416  **Sts:** Closed                90 N Galapago Street Unit #11, Denver, CO 80223   **LA:** Gearhart Moore Team
**Parcel #:** 5103-06-074                                      Residential, Multi-Family                                  **LO:** Modus Real Estate



| Effective Date | Change Type | Prev -> New | Change Timestamp | Days in MLS |
|---|---|---|---|---|
| 12/10/2019 | Closed | ($455,000) | 12/10/19 - 11:47 AM | 209 |
| 11/20/2019 | Pending | ACT->PND | 11/21/19 - 04:56 PM | 209 |
| 10/25/2019 | Price Increase | $457,750->$457,900 | 10/25/19 - 07:17 AM | 182 |
| 10/16/2019 | Price Decrease | $457,900->$457,750 | 10/16/19 - 10:02 PM | 173 |
| 10/04/2019 | Price Decrease | $459,900->$457,900 | 10/04/19 - 03:22 PM | 161 |
| 09/24/2019 | Price Decrease | $464,500->$459,900 | 09/24/19 - 08:13 PM | 151 |
| 09/12/2019 | Price Decrease | $464,900->$464,500 | 09/12/19 - 03:20 PM | 139 |
| 08/30/2019 | Price Decrease | $469,900->$464,900 | 08/30/19 - 03:00 PM | 126 |
| 07/31/2019 | Price Decrease | $474,900->$469,900 | 07/31/19 - 09:44 PM | 96 |
| 04/26/2019 | New Listing | ACT-> $474,900 | 04/26/19 - 02:35 PM | |

**ListingID:** 1970539  **Sts:** Expired                90 N Galapago Street Unit #10, Denver, CO 80223   **LA:** Gearhart Moore Team
**Parcel #:** 5103-06-074                                      Residential, Multi-Family                                  **LO:** Modus Real Estate



| Effective Date | Change Type | Prev -> New | Change Timestamp | Days in MLS |
|---|---|---|---|---|
| 10/03/2019 | Expired | WTH->EXP | 10/03/19 - 12:42 PM | 187 |
| 09/24/2019 | Withdrawn | ACT->WTH | 09/24/19 - 08:44 PM | 187 |
| 09/17/2019 | Price Decrease | $392,500->$389,500 | 09/17/19 - 10:20 AM | 180 |
| 09/06/2019 | Price Decrease | $394,500->$392,500 | 09/06/19 - 04:29 PM | 169 |
| 08/30/2019 | Price Decrease | $399,500->$394,500 | 08/30/19 - 03:00 PM | 162 |
| 08/23/2019 | Price Decrease | $400,000->$399,500 | 08/23/19 - 11:12 AM | 155 |
| 08/19/2019 | Price Increase | $399,500->$400,000 | 08/19/19 - 10:26 AM | 151 |
| 07/31/2019 | Price Increase | $399,000->$399,500 | 07/31/19 - 09:48 PM | 132 |
| 03/21/2019 | New Listing | ACT-> $399,000 | 03/21/19 - 09:15 PM | |

**EXHIBIT 6**

**Motion to Convert Pursuant 11 U.S.C. § 706(b) or, in the Alternative,**

**Dismiss Pursuant to 11 U.S.C. § 707(b)**

**Page 5 of 6**

ListingID: 5615825  Sts: Closed     **90 N Galapago Street Unit #3, Denver, CO 80223**     LA: Gearhart Moore Team
Parcel #: 5103-06-074       Residential, Multi-Family     LO: Modus Real Estate



| Effective Date | Change Type | Prev -> New | Change Timestamp | Days in MLS |
|---|---|---|---|---|
| 08/19/2019 | Closed | ($535,000) | 08/19/19 - 08:04 PM | 0 |
| 03/13/2019 | Pending | ACT->PND | 03/13/19 - 09:04 PM | 0 |
| 03/13/2019 | New Listing | ACT-> $544,900 | 03/13/19 - 09:01 PM | |

ListingID: 7400460  Sts: Closed     **90 N Galapago Street Unit #7, Denver, CO 80223**     LA: Gearhart Moore Team
Parcel #: 5103-06-074       Residential, Multi-Family     LO: Modus Real Estate



| Effective Date | Change Type | Prev -> New | Change Timestamp | Days in MLS |
|---|---|---|---|---|
| 08/19/2019 | Closed | ($554,900) | 08/19/19 - 01:20 PM | 0 |
| 03/09/2019 | Pending | ACT->PND | 03/09/19 - 08:53 AM | 0 |
| 03/09/2019 | New Listing | ACT-> $554,900 | 03/09/19 - 08:52 AM | |

ListingID: 5693782  Sts: Expired     **90 N Galapago Street Unit #13, Denver, CO 80223**     LA: Matthew Jackson
Parcel #: 5103-06-074       Residential, Multi-Family     LO: Modus Real Estate



| Effective Date | Change Type | Prev -> New | Change Timestamp | Days in MLS |
|---|---|---|---|---|
| 10/31/2019 | Expired | WTH->EXP | 11/01/19 - 12:11 AM | 160 |
| 07/31/2019 | Withdrawn | ACT->WTH | 07/31/19 - 09:43 PM | 160 |
| 02/21/2019 | New Listing | ACT-> $539,000 | 02/21/19 - 09:10 PM | |

## Sale History from Public Records

| Sale Date | Sale Price | Nom | Buyer Name(s) | Seller Name(s) | Doc. # | Document Type | Title Company | Multi/Split Sale |
|---|---|---|---|---|---|---|---|---|
| 12/04/19 | $455,000 | | Johnson Alexander J | Baker 14 Llc | 173539 | Special Warranty Deed | | |

## Mortgage History

| Date | Amount | Mortgage Lender | Mortgage Type | Mrtg Type Code | Term | Int Rate | Int Rate Type | Borrower Name(s): | Title Company |
|---|---|---|---|---|---|---|---|---|---|
| 12/11/19 | $386,750 | | CONVENTIONAL | YEARS | 30 | | | Johnson Alexander J | |

**EXHIBIT 6**
**Motion to Convert Pursuant 11 U.S.C. § 706(b) or, in the Alternative,**
**Dismiss Pursuant to 11 U.S.C. § 707(b)**
**Page 6 of 6**

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO**

EXHIBIT
2

| | |
|---|---|
| IN RE: | Case No. 19-19816 EEB |
| ALEXANDER JOHNSON, | Chapter 7 |
| Debtor. | |

**NOTICE PURSUANT TO FED.R.BANKR.P. 1017, 2002, 9006(d), 9013 AND LOCAL BANKRUPTCY RULE 9013-1 OF MOTION OF LAW OFFICES OF RITCHIE, DILLARD, DAVIES & JOHNSON, P.C. TO DISMISS CHAPTER 7 BANKRUPTCY CASE PURSUANT TO 11 U.S.C. § 707(b) OR, IN THE ALTERNATIVE, CONVERT BANKRUPTCY CASE TO CASE UNDER CHAPTER 11 OF THE BANKRUPTCY CODE PURSUANT TO 11 U.S.C § 706(b)**

**OBJECTION DEADLINE: May \_\_, 2020**

**TO ALL PARTIES IN INTEREST:**

**NOTICE IS HEREBY GIVEN** that the Law Offices of Ritchie, Dillard, Davies & Johnson, P.C. ("**RDD&J**") has filed a *Motion to Convert Chapter 7 Bankruptcy Case to Case Under Chapter 11 of the Bankruptcy Code Pursuant to 11 U.S.C § 706(b) or, in the Alternative, Dismiss Bankruptcy Case Pursuant to 11 U.S.C. § 707(b)* ("**Sealed Motion**"), with the United States Bankruptcy Court for the District of Colorado ("**Bankruptcy Court**") and requests certain and specific relief, as follows:

An Order to convert the above-captioned bankruptcy case filed by Alexander Johnson ("**Debtor**") under Chapter 7 of Title 11 of the United States Code ("**Bankruptcy Code**") to a reorganization under Chapter 11 of the Bankruptcy Code, pursuant to 11 U.S.C. § 706(b). As an alternative to conversion, RDD&J seeks for the Bankruptcy Court to dismiss the above-captioned bankruptcy case pursuant to 11 U.S.C. §§ 707(b)(1) and (2).

Pursuant to the *Motion to File Under Seal Motion to Convert Pursuant to 11 U.S.C § 706(b) or, in the Alternative, Dismiss Pursuant to 11 U.S.C. § 707(b) and Documentation in Support Thereof* ("**Motion to Seal**") , RDD&J filed the Sealed Motion and all exhibits incorporated by reference therein (hereinafter, collectively "**Sealed Exhibits**") under seal to protect the Debtor from public scrutiny, scandal and/or defamation in relation to past legal matters. Therefore, contemporaneously with this Notice, RDD&J files a redacted version of the Sealed Motion and only those Sealed Exhibits disclosing information discoverable within public records (hereinafter, collectively "**Redacted Motion**").

A copy of the Redacted Motion is on file with the Clerk of the Bankruptcy Court, which is located at 721 19th Street, Denver, Colorado 80202-2508. Alternatively, you may obtain a copy of the Redacted Motion from RDD&J, by and upon request to undersigned. **Otherwise, due to the sensitive nature of the allegations asserted within the Sealed Motion, any request for a copy**

of the Sealed Motion and/or the Sealed Exhibits shall be made upon the Debtor by and through his counsel. Furthermore, <u>the Debtor reserves all right to deny said request without first needing to move the Bankruptcy Court for a protection order</u>, in accordance with the federal and state statutes that entitle the Debtor to such confidentiality and the *Order Granting Motion to Motion to Convert Pursuant To 11 U.S.C § 706(b) or, in the Alternative, Dismiss Pursuant to 11 U.S.C. § 707(b), and Exhibits Incorporated by Reference Therein*.

If you oppose the Sealed Motion, or otherwise object to the requested relief, you must: (1) file an objection and request for hearing on or before the objection deadline stated above, and (2) serve such objection and hearing request on the movant at the address indicated below. Any objection and request for hearing filed with the Bankruptcy Court must clearly state all objections, and any legal basis for the objections. The Bankruptcy Court will not consider general objections.

In the absence of a timely, substantiated objection and request for hearing by an interested party, the Bankruptcy Court may approve or grant the requested relief without any further notice to creditors or other interested parties.

DATED this ____8th of April, 2020.


Respectfully submitted,
BERKEN CLOYES, P.C.


_____
Joshua B. Sheade, Atty. Reg. No. 46993
1159 Delaware Street
Denver, Colorado 80204
Tel: (303) 623-4357
Fax: (720) 554-7853
Email: joshua@berkencloyes.com

*Attorneys for the LAW OFFICES OF RITCHIE, DILLARD, DAVIES & JOHNSON, P.C.*

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

IN RE:

ALEXANDER JOHNSON,

                                    Debtor.

Case No. 19-19816 EEB

Chapter 7

## ORDER GRANTING MOTION TO FILE UNDER SEAL DOCUMENTATION IN SUPPORT OF PROOF OF CLAIM

**THIS MATTER** having come before the Court on the Motion to File Under Seal the Motion to Convert Pursuant To 11 U.S.C § 706(b) or, in the Alternative, Dismiss Pursuant to 11 U.S.C. § 707(b), and Exhibits Incorporated by Reference Therein ("Motion"), filed by the Law Offices of Ritchie, Dillard, Davies & Johnson, P.C. ("RDD&J"), pursuant to 11 U.S.C. § 107(b), FED.R.BANKR.P. 9018 and L.B.R. 9037-1. The Court having considered the Motion, any responses or arguments made thereto, and being duly advised, does hereby

**ORDER** that the Motion is **GRANTED**. Therefore, the Court does hereby

**FURTHER ORDER** that RDD&J is authorized to file the unredacted *Motion of Law Offices of Ritchie, Dillard, Davies & Johnson, P.C. to Convert Chapter 7 Bankruptcy Case to Case Under Chapter 11 of the Bankruptcy Code Pursuant To 11 U.S.C § 706(b) or, in the Alternative, Dismiss Bankruptcy Case Pursuant to 11 U.S.C. § 707(b)* ("Sealed Motion") under seal; and is authorized to file the redacted version of the Sealed Motion and Exhibits 5 and 6 thereto, collectively attached to the Motion as Exhibit 1 ("Redacted Motion"). Therefore, the Court does hereby

**FURTHER ORDER** that RDD&J is authorized to file within the above-captioned bankruptcy case and effectuate service of the *Notice Pursuant To FED.R.BANKR.P. 1017, 2002, 9006(d), 9013 And Local Bankruptcy Rule 9013-1* contemporaneously with the Redacted Motion, which shall be filed within forty-eight (48) hours of the Court entering this Order; and such Notice shall set forth a deadline for any and all interested parties to object to the Redacted Motion of twenty-one (21) days of the date hereof.

DATED this ____ day of _____, 2020

BY THE COURT:

_____
Hon. Elizabeth E. Brown
United States Bankruptcy Court Judge

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

IN RE:

ALEXANDER JOHNSON,

                Debtor.

Case No. 19-19816 EEB

Chapter 7

## ORDER GRANTING MOTION TO FILE UNDER SEAL MOTION TO CONVERT

**THIS MATTER** having come before the Court on the Motion to File Under Seal the Motion to Convert Pursuant To 11 U.S.C § 706(b) or, in the Alternative, Dismiss Pursuant to 11 U.S.C. § 707(b), and Exhibits Incorporated by Reference Therein ("Motion"), filed by the Law Offices of Ritchie, Dillard, Davies & Johnson, P.C. ("RDD&J"), pursuant to 11 U.S.C. § 107(b), FED.R.BANKR.P. 9018 and L.B.R. 9037-1. The Court having considered the Motion, any responses or arguments made thereto, and being duly advised, does hereby

**ORDER** that the Motion is **GRANTED**. Therefore, the Court does hereby

**FURTHER ORDER** that RDD&J is authorized to file the unredacted *Motion of Law Offices of Ritchie, Dillard, Davies & Johnson, P.C. to Convert Chapter 7 Bankruptcy Case to Case Under Chapter 11 of the Bankruptcy Code Pursuant To 11 U.S.C § 706(b) or, in the Alternative, Dismiss Bankruptcy Case Pursuant to 11 U.S.C. § 707(b)* ("Sealed Motion") under seal; and is authorized to file the redacted version of the Sealed Motion and Exhibits 5 and 6 thereto, collectively attached to the Motion as Exhibit 1 ("Redacted Motion"). Therefore, the Court does hereby

**FURTHER ORDER** that RDD&J is authorized to file within the above-captioned bankruptcy case and effectuate service of the *Notice Pursuant To FED.R.BANKR.P. 1017, 2002, 9006(d), 9013 And Local Bankruptcy Rule 9013-1* contemporaneously with the Redacted Motion, which shall be filed within forty-eight (48) hours of the Court entering this Order; and such Notice shall set forth a deadline for any and all interested parties to object to the Redacted Motion of twenty-one (21) days of the date hereof.

DATED this <u>29th</u> day of <u>April</u>, 2020

BY THE COURT:

*[signature]*

Hon. Elizabeth E. Brown
United States Bankruptcy Court Judge

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| IN RE: | Case No. 19-19816 EEB |
| ALEXANDER JOHNSON, | Chapter 7 |
| Debtor. | |

---

### MOTION OF LAW OFFICES OF RITCHIE, DILLARD, DAVIES & JOHNSON, P.C. TO CONVERT CHAPTER 7 BANKRUPTCY CASE TO CASE UNDER CHAPTER 11 OF THE BANKRUPTCY CODE PURSUANT TO 11 U.S.C § 706(b) OR, IN THE ALTERNATIVE, DISMISS BANKRUPTCY CASE PURSUANT TO 11 U.S.C. § 707(b)

---

The LAW OFFICES OF RITCHIE, DILLARD, DAVIES & JOHNSON, P.C. ("***RDD&J***"), through undersigned counsel, hereby respectfully moves the United States Bankruptcy Court for the District of Colorado ("***Bankruptcy Court***") to Convert the above-captioned Chapter 7 Bankruptcy Case to a Case Under Chapter 11 of the Bankruptcy Code Pursuant to 11 U.S.C. § 706(b) or, in the Alternative, Dismiss the above-captioned Bankruptcy Case Pursuant to 11 U.S.C. § 707(b) (***"Motion"***), and in support thereof, states as follows:

### JURISDICTION

1. The Bankruptcy Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. § 157(b)(2)(A) and 28 U.S.C. § 1334.[1] Furthermore, venue is proper before this Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicate for the relief requested is sections 706(b) and/or 707(b)(2) of Title 11 of the United States Code ("***Bankruptcy Code***") and Rule 1017 of the Federal Rules of Bankruptcy Procedure ("***Federal Rules***").[2]

### BACKGROUND

3. Alexander J. Johnson ("***Debtor***") filed a voluntary petition for bankruptcy relief ("***Petition***") under Chapter 7 of the Bankruptcy Code within this Bankruptcy Court on November 13, 2019 ("***Petition Date***"). *See* Dkt. No. 1.[3] M. Stephen Peters is the duly appointed Chapter 7 Trustee ("***Trustee***") of the Debtor's bankruptcy estate. Dkt. No. 4.

---

[1]   To the extent the Bankruptcy Court later determines it cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution absent consent of the parties, RDD&J hereby CONSENTS to the entry of a final order by the Bankruptcy Court in connection with this Motion. *See* FED.R.BANKR.P. 7008.

[2]   Unless otherwise stated, references to the Bankruptcy Code shall be cited as "11 U.S.C. § ___," references to the Federal Rules shall be cited as "FED.R.BANKR.P. ___" and references to the United States Bankruptcy Court for the District of Colorado Local Bankruptcy Rules ("***Local Rules***") shall be cited as "L.B.R. ___."

[3]   Unless otherwise stated, "Dkt. No. ___" refers to the docket in the above-captioned Chapter 7 bankruptcy case; styled as, *In re Johnson*, Case No. 19-19816 EEB ("***Bankruptcy Case***").

4.    The Debtor schedules RDD&J to hold an unsecured – albeit contingent, unliquidated and disputed – claim in the amount of $900,436.32 based on pre-petition services rendered. Dkt. No. 13 at p.4.

5.    On February 18, 2020, RDD&J timely filed Proof of Claim 2-1 ("*Claim*") for the amount of $902,908.82 ("*Claim Amount*") contemporaneously with the *Motion of Law Offices of Ritchie, Dillard, Davies & Johnson, P.C. to File Under Seal Documentation in Support of Proof of Claim* ("*Seal Motion*"). Dkt. No. 52; *see also* Claim No. 2-1 at p.2; *accord* Dkt. No. 29 (claims bar date of March 30, 2020). As proof that the Claim arises from legal representation of the Debtor between November 19, 2014 and February 14, 2019 ("*Representation Period*"), RDD&J produced, *inter alia*, as follows:

    a.    representation agreements dated November 20, 2014, September 3, 2015 and July 11, 2017 (hereinafter, collectively "*Representation Agreements*");

    b.    a certain and specific Statement Summary; and

    c.    billing statements dated December 12, 2017, October 8, 2018, November 27, 2018 and November 28, 2018 (hereinafter, collectively "*Invoices*").

*See* Claim No. 2-1, Part 2; Dkt. No. 52-1; *see also* Dkt. No. 51 ██████████

6.



7.    Although RDD&J's Claim accounts for approximately seventy-four percent (74.3%) of the total debts scheduled, the Debtor represents that he need not complete the *Chapter 7 Statement of Your Currently Monthly Income* ("*Means Test Statement*") as exempt from the presumption of abuse. Dkt. No. 20; *cf. generally* Dkt. No. 13.

8.   Should this Bankruptcy Court require the Debtor to calculate his current monthly income ("**CMI**"), RDD&J offers a projected Means Test Statement for a 2-person and 4-person household attached hereto as **EXHIBIT 5** and incorporated by reference herein, derived from the 2019 Year to Date earnings the Debtor discloses within pay advices, *Schedule I: Your Income* and *Schedule J: Your Expenses* (hereinafter, collectively "**CMI Schedules**"). *See* Dkt. No. 31; *see also* Dkt. No. 16-17 (mother as dependent and expecting child).

9.   Pursuant to the CMI Schedules, filed on November 25, 2019, the Debtor maintains a monthly disposable income in the amount of $3,894.00 by and through earning an average monthly net income of $14,607.00 as a professional football player employed by the Denver Broncos. Dkt. No(s). 16, 17 at p.2; *see also* Dkt. No. 31 (year to date net pay of $172,856.91 as of November 10, 2019, which amount does not include a substantial amount of Debtor's 2019 income, as much of his income was paid during the last part of 2019); *cf.* Denver 2019 Schedule, available at: http://www.nfl.com/schedules/2019/REG/Broncos (seven (7) games remaining as of November 10, 2019). Although the Debtor enumerates potential reasons he may experience a decrease in his income within the year after the Petition Date, he fails to disclose that his current contract with the Denver Broncos provides for an increase in income from a base salary of $570,000.00 during the 2019 season to a base salary of $660,000.00 during the 2020 season. Dkt. No. 16 at p.2; *cf. e.g.* Spotrac, available at: https://www.spotrac.com/nfl/denver-broncos/aj-johnson-27931/; Over the Cap: NFL Salary Cap, Contracts, Salaries, Bonuses and Analysis, available at: https://overthecap.com/player/alexander-johnson/7710/.

10.  Furthermore, the Debtor holds a one hundred percent (100.0%) membership interest in CB45, LLC ("**CB45**"), a limited liability company formed with the Florida Secretary of State on September 19, 2018. Dkt. No(s). 9 at p.7, 11 at p.4. Although CB45 sells male, female and youth apparel, the Debtor omits from *Schedule I* a financial statement as proof that the entity realizes a monthly profit or loss. *Ibid*.; *see also* CB45: Shop, available at: https://chiefbeast.com/collections/all; *but cf.* Dkt. No. 16.

11.  On December 19, 2019, the Trustee commenced the 341 Meeting of Creditors, which was adjourned and concluded on January 3, 2020 ("**341 Meeting**"). Dkt. No(s). 24, 30. At the 341 Meeting, the Debtor testified that he relocated but has yet to file a notice of change of address within the Bankruptcy Case.

12.  Upon information and belief, the Debtor purchased a residential real property located at 90 North Galapago Street, Unit 11, Denver, Colorado 80223 on December 10, 2019 – approximately twenty-seven (27) days after the Petition Date – for a purchase price of $455,000.00 ("**Purchase Price**"). Pursuant to a REcolorado CoreLogic Property Detail ("**MLS Report**") attached hereto as **EXHIBIT 6** and incorporated by reference herein, an Alexander J. Johnson financed $386,750.00 of the Purchase Price, which implies a cash payment for the remaining balance of $68,250.00.

13.  On February 20, 2020, the Debtor filed an *Amended Schedule C: the Property You Claim as Exempt* in response to the *Objections to Debtor's Claims of Exemptions* filed by the Trustee on January 30, 2020. Dkt. No(s). 55, 60. As the Debtor amended his claim of

exemptions to reflect allowances under 11 U.S.C. § 522 [Dkt. No. 56 at p.2], RDD&J estimates the value of non-exempt scheduled assets in the amount of $140,403.00 and the sum of funds distributable to unsecured creditors as the amount of $129,632.85.

14. On or about February 18, 2020, RDD&J filed the Claim and the Seal Motion contemporaneously with the *Joinder of Law Offices of Ritchie, Dillard, Davies & Johnson, P.C. to United States Trustee's Motion to Extend Deadlines to File a Complaint Objecting to Discharge Under 11 U.S.C. § 727 or Motion to Dismiss Under 11 U.S.C. § 707* ("**Joinder**").

15. Upon no party objecting the *United States Trustee's Motion to Extend Deadlines to File a Complaint Objecting to Discharge Under 11 U.S.C. § 727 or Motion to Dismiss Under 11 U.S.C. § 707* [Dkt. No. 47], the Bankruptcy Court extended the deadlines for objecting to discharge or moving to dismiss up to and through April 20, 2020. Dkt. No. 62.

## RELIEF REQUESTED

16. Herein, RDD&J seeks for the Bankruptcy Court to issue an Order converting the above-captioned Bankruptcy Case to a case under Chapter 11 of the Bankruptcy Code, pursuant to 11 U.S.C. § 706(b). Alternatively, RDD&J moves this Bankruptcy Court to dismiss the Bankruptcy Case under 11 U.S.C. § 707(b).

### A. Conversion of the Bankruptcy Case Most Inures to the Benefit of All Parties.

17. Section 706(b) of the Bankruptcy Code provides that "[o]n request of a party in interest and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 11 of this title at any time." 11 U.S.C. § 706(b). As the Bankruptcy Court may convert this Bankruptcy Case to a case under Chapter 11 without the Debtor's consent, but not to a case under Chapter 13, the Bankruptcy Court should first decide whether "the [D]ebtor may be a debtor under [Chapter 13]." 11 U.S.C. §§ 706(b)-(d).

### i. The Non-Contingent and Liquidated Claim of RDD&J Exceeds the Debt Limitations Under 11 U.S.C. § 109(e).

18. Should the Bankruptcy Court find that the debt incurred to RDD&J is noncontingent and liquidated, the Debtor does not qualify for bankruptcy protection under Chapter 13 of the Bankruptcy Code as the Claim Amount exceeds the section 109(e) debt limit adjusted amount of $419,275.00. *See* Revision of Certain Dollar Amounts in the Bankruptcy Code Prescribed Under Section 104(a) of the Code, 84 Fed.Reg. 3488 (February 12, 2019). *Federal Register: The Daily Journal of the United States*. Web. 12 February 2019.

19. A contingent claim, "[a]s defined by Black's Law Dictionary,…is '[o]ne which has not accrued and which is dependent on some future event that may never happen.'" *In re Parker*, 264 B.R. 685, 697 (10th Cir.B.A.P.2001)(quoting *Black's Law Dictionary* 290 (5th ed.1979)); *aff'd* 313 F.3d 1267 (10th Cir.2002). By adopting "the conduct theory," The *Parker* Court rationalized that a claim exists as of the date the action and/or conduct giving rise to the liability occurred. *Parker*, 264 B.R. at 696; *aff'd* 313 F.3d at 1269-70; *see also In re Salazar*, 348 B.R. 559, 568 (Bankr.D.Colo.2006).

4

20.     "Whether a debt is liquidated turns on whether it is subject to 'ready determination and precisions in computation of the amount due.'" *In re Hanson*, 275 B.R. 593, 596 (Bankr.D.Colo.2002); *see also In re Adams*, 373 B.R. 116, 120 (10th Cir.BAP 2007). The Bankruptcy Court also recognizes that "a debtor's dispute, defenses or counterclaims, do not affect the character and classification of claim as being *liquidated*.'" *Hanson*, 275 B.R. at 596-97 (emphasis in original) (quoting *In re Clark*, 91 B.R. 570, 574 (Bankr.D.Colo. 1988) (internal citations omitted)).

21.     Herein, the documents supporting the Claim demonstrate that RDD&J commenced, rendered and completed all services contemplated under the Representation Agreements prior to the Petition Date. *See e.g.* Dkt. No. 51 ███████████████████████████ ██████████████████████████████ The Invoices also disclose the specific basis for each and every service rendered throughout the Representation Period, and the hourly rates set forth in the Representation Agreements allow for a precise calculation of the amount the Debtor owes to RDD&J.

22.     As the Claim arises from legal services rendered on behalf of the Debtor prior to the Petition Date, and RDD&J calculates the Claim Amount based on approved services at hourly rates set forth in the Representation Agreements executed by the Debtor, the entire sum of the Claim is noncontingent and liquidated. Therefore, the relief afforded under Chapter 13 of the Bankruptcy Code is not available to the Debtor as RDD&J's Claim exceeds the unsecured debt limitation of 11 U.S.C. § 109(e).

> **ii.     Conversion to Chapter 11 Shall Maximize the Value of the Estate.**

23.     The Bankruptcy Court should find that conversion of the Bankruptcy Case to a reorganization under Chapter 11 shall benefit all parties in interest as allowing the Debtor to retain control of the bankruptcy estate while maximizing the value thereof by paying unsecured creditors five (5) years of gross disposable income.

24.     In determining this issue, sister courts have looked for guidance from the Supreme Court of the United States and rationalize that "[s]ince there are no specific grounds for conversion, a court 'should consider anything relevant that would further the goals of the Bankruptcy Code.'" *Proudfoot Consulting Co. v. Gordon (In re Gordon)*, 495 B.R. 683, 692 (Bankr.N.D.Ga.2012)(quoting *In re Lobera*, 454 B.R. 824, 854 (Bankr.D.N.M.2011)); *see also Toibb v. Radloff*, 501 U.S. 157, 164 (1991)(citing *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 351-54 (1985)("Chapter 11 also embodies the general Code policy of maximizing the value of the bankruptcy estate")). In addition, the United States Bankruptcy Appellate Panel for the Eight Circuit recognized that "the bankruptcy court acted within its discretion by determining that the Debtor's ability to pay was 'far and away an important factor under [§] 706(b).'" *Schlehuber v. Fremont Nat'l Bank & Trust Co. (In re Schlehuber)*, 489 B.R. 570, 575 (8th Cir.BAP 2013).

25.     Herein, the CMI Schedules demonstrate that a monthly disposable income between the amount of $7,837.85 and $9,241.85, which equates to distributions to unsecured creditors between the total sum of $470,271.08 and $554,511.08. Alternatively, the gross disposable

income disclosed under *Schedule I: Your Income* shall allow holders of unsecured claims to receive a pro rata share of $233,640.00, which is a sum approximately eighty percent *80%) greater than the funds subject to distribution by the Trustee.

26.   Furthermore, if the Debtor did purchase the residential real property by and through paying cash in the amount of $68,250.00, conversion to a reorganization under Chapter 11 shall allow him to retain his property without any party inquiring why he failed to disclose such money as an asset of the bankruptcy estate.

27.   Therefore, the ability for the Debtor to retain possession and control of the bankruptcy estate while maximizing the value of the estate for the benefit of his creditors demonstrates that conversion of the Bankruptcy Case to a case under Chapter 11 is in the best interest of all parties.

    **B.**    **The Bankruptcy Case is Subject to Dismissal Under 11 U.S.C. § 707(b) as the Claim of RDD&J is a Consumer Debt.**

28.   Although conversion to a case under Chapter 11 is in the best interest of all parties, the Bankruptcy Court may dismiss the Bankruptcy Case as a presumption of abuse arises under 11 U.S.C. §§ 707(b)(1) and (2).

29.   Should the Bankruptcy Court disagree with RDD&J on converting the Bankruptcy Case, the Bankruptcy Court should determine whether the Claim of RDD&J is a consumer debt and, if so, whether a substantial abuse of the provisions of Chapter 7 arises under 11 U.S.C. § 707(b)(2) for which the Debtor cannot rebut upon the presumption shifting. *See In re Palmer*, 542 B.R. 289, 292 (Bankr.D.Colo.2015); *see also In re Banks*, 345 B.R. 328, 330 (Bankr.D.Colo.2016) (enumerating whether debtor is an individual as third element).

        *i.*    *The RDD&J Claim is a Consumer Debt.*

30.   The Bankruptcy Court must first determine whether the attorneys' fees and litigation costs due and owing to RDD&J is a "consumer debt." *See e.g. In re Durant*, 586 B.R. 212, 217 (Bankr.D.Md.2018). The Bankruptcy Code defines a "consumer debt" as a debt incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C. § 101(8); *see also In re Stewart*, 175 F.3d 796, 806 (10th Cir.1999); *Durant*, 586 B.R. at 219 ("debt that an individual debtor undertakes to serve her private affairs").

31.   In determining what constitutes a consumer debt, the Tenth Circuit Court of Appeals adopted the "profit motive" test articulated within *Citizens Nat'l Bank v. Burns (In re Burns)*, 894 F.2d 361 (10th Cir.1990).[4] *Stewart*, 175 F.3d at 806 (quoting *Burns*, 894 F.2d at 363)("'non-consumer' debt as a debt incurred with a 'profit motive'"); *but cf. e.g. Durant*, 586 B.R. at 220 ("interstitial" debts include tax claims "with a purpose to benefit

---

[4]  The *Burns* Court further rationalizes that "[t]he legislative history of [the predecessor to section 101(8)] indicates that it was adapted from the definition used in various consumer protection laws…and the courts have turned to the test articulated in cases decided under those laws to determine when a debt falls within the above description." *Burns*, 894 F.2d at 363 (citing *In re Booth*, 858 F.2d 1051, 1054 (5th Cir.1988)(citing H.Rep. No. 95-595, 95th Cong. 1st Sess. (1977); S.Rep. No. 95-989 2nd Sess. 22 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5808. H.R.Rep. No. 95-595 (1977)).

the public" and "some tort claims…characterized as involuntary with a purpose to compensate the victim").

32.     Within the context of legal fees, classification as consumer or non-consumer debt turns primarily on the basis for the legal services purchased. *Patti v. Fred Ehrich, P.C. (In re Patti)*, 304 B.R. 182, 188 (E.D.Pa.2003).

33.     

34.     

35.     

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

WHEREFORE, the Law Offices of Ritchie, Dillard, Davies & Johnson, P.C. respectfully requests that the United States Bankruptcy Court for the District of Colorado enter an Order, substantially in the form attached hereto, (a) granting this Motion to either (i) convert the above-captioned Chapter 7 Bankruptcy Case to a case under Chapter 11 of the Bankruptcy Code, pursuant to 11 U.S.C. § 706(b); or, in the alternative (ii) dismissing the above-captioned Bankruptcy Case as the Claim of RDD&J is a consumer debt that gives rise to a presumption of abuse under 11 U.S.C. § 707(b)(2); and (b) grant such other and further relief as this Bankruptcy Court deems just and appropriate

DATED this 20th of April, 2020.

Respectfully submitted,
BERKEN CLOYES, P.C.

Joshua B. Sheade, Atty. Reg. No. 46993
1159 Delaware Street
Denver, Colorado 80204
Tel: (303) 623-4357
Fax: (720) 554-7853
Email: joshua@berkencloyes.com

*Attorneys for the LAW OFFICES OF RITCHIE, DILLARD, DAVIES & JOHNSON, P.C.*

8

# EXHIBIT 1
### of
### *Motion to Convert Pursuant to 11 U.S.C § 706(b) or, in the Alternative, Dismiss Pursuant to 11 U.S.C. § 707(b)*:

## *FILED UNDER SEAL*
### pursuant to *Order Granting Motion to File Under Seal Motion to Convert*

# EXHIBIT 2

**of**

***Motion to Convert Pursuant to 11 U.S.C § 706(b) or, in the
Alternative, Dismiss Pursuant to 11 U.S.C. § 707(b):***

# *FILED UNDER SEAL*

**pursuant to** ***Order Granting Motion to File Under Seal
Motion to Convert***

# EXHIBIT 3

**of**

*Motion to Convert Pursuant to 11 U.S.C § 706(b) or, in the Alternative, Dismiss Pursuant to 11 U.S.C. § 707(b)*:

# *FILED UNDER SEAL*

**pursuant to *Order Granting Motion to File Under Seal Motion to Convert***

# EXHIBIT 4

**of**

*Motion to Convert Pursuant to 11 U.S.C § 706(b) or, in the Alternative, Dismiss Pursuant to 11 U.S.C. § 707(b)*:

# *FILED UNDER SEAL*

**pursuant to** *Order Granting Motion to File Under Seal Motion to Convert*

EXHIBIT 5

| November 10, 2019 YTD/11.5 Months | Debtor 1 | Debtor 2 or Non-Filing Spouse | Total |
|---|---|---|---|
| **INCOME** | | | |
| Gross Wages | $ 30,674 29 | $ - | |
| Alimony and Maintenance Payments | $ - | $ - | |
| Third-Party Contributions | $ - | $ - | |
| Net Business, Profession, Farm Income | $ - | $ - | |
| Net Rental Property Income | $ - | $ - | |
| Interest, Dividends & Royalties | $ - | $ - | |
| Unemployment Compensation | $ - | $ - | |
| Pension or Retirement Income | $ - | $ - | |
| Additional Sources | $ - | $ - | |
| **CURRENT MONTHLY INCOME** | | | $ 30,674 29 |
| **Multiply by 12** | | | $ 368,091 46 |
| **Colorado 2-Person Household Median Family Income** | | | $ 79,711 00 |
| **DEDUCTIONS** | | | |
| Spousal Personal Expenses | $ - | $ - | |
| Food, Clothing & Household Items | $ 1,288 00 | $ - | |
| Out-of-Pocket Health Care Allowance | $ 169 00 | $ - | |
| Housing and Utilities - Operating | $ 541 00 | $ - | |
| Housing and Utilities - Rent | $ 1,417 00 | $ - | |
| Actual Housing Expense Amount | $ 542 00 | $ - | |
| Vehicle Operation | $ 424 00 | $ - | |
| Vehicle Ownership No  1 | $ - | $ - | |
| Vehicle Ownership No  2 | $ 508 00 | $ - | |
| Public Transit | $ - | $ - | |
| Additional Transportation | $ 217 00 | $ - | |
| Taxes (YTD/11 5) | $ 12,501 98 | $ - | |
| Involuntary Deductions (YTD/11 5) | $ 1,627 46 | $ - | |
| Life Insurance | $ - | $ - | |
| Court-Ordered Payments | $ - | $ - | |
| Education | $ - | $ - | |
| Childcare | $ - | $ - | |
| Additional Health Care Expenses | $ - | $ - | |
| Optional Telephone Services | $ - | $ - | |
| **Total IRS Allowances** | | | $ 19,235 44 |
| Health Insurance | $ - | $ - | |
| Disability Insurance | $ - | $ - | |
| Health Savings Account | $ - | $ - | |
| Contributions to Family Care | $ - | $ - | |
| Protection Against Violence | $ - | $ - | |
| Additional Home Energy Costs | $ - | $ - | |
| Dependent Education | $ - | $ - | |
| Additional Food & Clothing | $ 42 00 | $ - | |
| Charitable Contributions | $ 100 00 | $ - | |
| **Total Additional Expense Deductions** | | | $ 142 00 |

| Home Mortgage | $ | 890 00 | $ | - | |
| Loan Vehicle No  1 | $ | 1,165 00 | $ | - | |
| Loan Vehicle No  2 | $ | - | $ | - | |
| Priority Claims | $ | - | $ | - | |
| Chapter 13 Eligibility Plan Payments | $ | - | $ | - | |
| Total Secured & Priority Debt Obligations | | | $ | 2,055 00 | |
| TOTAL DEDUCTIONS | | | $ | 21,432 44 | |
| MONTHLY DISPOSABLE INCOME FOR 60 MONTHS | | | | | |
| Adjusted Current Monthly Income | $ | 30,674 29 | | | |
| Total Deductions | $ | 21,432 44 | | | |
| Monthly Disposable Income | $ | 9,241 85 | | | |
| FOR 60 MONTHS | $ | 554,511.08 | | | |
| PRESUMPTION OF ABUSE EXCEPTION | | | | | |
| Total Unsecured Debts | $ | 922,686 82 | | | |
| Multiply by 25% | $ | 230,671 71 | | | |
| CMI CAN PAY 25% | YES | | | | |

**EXHIBIT 5**
**Motion to Convert Pursuant 11 U.S.C. § 706(b) or, in the Alternative,**
**Dismiss Pursuant to 11 U.S.C. § 707(b)**
**Page 2 of 4**

Vol 1 92

| November 10, 2019 YTD/11.5 Months | Debtor 1 | Debtor 2 or Non-Filing Spouse | Total |
|---|---|---|---|
| **INCOME** | | | |
| Gross Wages | $ 30,674 29 | $ - | |
| Alimony and Maintenance Payments | $ - | $ - | |
| Third-Party Contributions | $ - | $ - | |
| Net Business, Profession, Farm Income | $ - | $ - | |
| Net Rental Property Income | $ - | $ - | |
| Interest, Dividends & Royalties | $ - | $ - | |
| Unemployment Compensation | $ - | $ - | |
| Pension or Retirement Income | $ - | $ - | |
| Additional Sources | $ - | $ - | |
| **CURRENT MONTHLY INCOME** | | $ 30,674 29 | |
| **Multiply by 12** | | $ 368,091 46 | |
| **Colorado 4-Person Household Median Family Income** | | $ 105,947 00 | |
| **DEDUCTIONS** | | | |
| Spousal Personal Expenses | $ - | $ - | |
| Food, Clothing & Household Items | $ 1,786 00 | $ - | |
| Out-of-Pocket Health Care Allowance | $ 279 00 | $ - | |
| Housing and Utilities - Operating | $ 630 00 | $ - | |
| Housing and Utilities - Rent | $ 1,648 00 | $ - | |
| Actual Housing Expense Amount | $ - | $ - | |
| Vehicle Operation | $ 424 00 | $ - | |
| Vehicle Ownership No 1 | $ - | $ - | |
| Vehicle Ownership No 2 | $ 508 00 | $ - | |
| Public Transit | $ - | $ - | |
| Additional Transportation | $ 217 00 | $ - | |
| Taxes (YTD/11 5) | $ 12,501 98 | $ - | |
| Involuntary Deductions (YTD/11 5) | $ 1,627 46 | $ - | |
| Life Insurance | $ - | $ - | |
| Court-Ordered Payments | $ - | $ - | |
| Education | $ - | $ - | |
| Childcare | $ - | $ - | |
| Additional Health Care Expenses | $ 1,000 00 | $ - | |
| Optional Telephone Services | $ - | $ - | |
| **Total IRS Allowances** | | $ 20,621 44 | |
| Health Insurance | $ - | $ - | |
| Disability Insurance | $ - | $ - | |
| Health Savings Account | $ - | $ - | |
| Contributions to Family Care | $ - | $ - | |
| Protection Against Violence | $ - | $ - | |
| Additional Home Energy Costs | $ - | $ - | |
| Dependent Education | $ - | $ - | |
| Additional Food & Clothing | $ 60 00 | $ - | |
| Charitable Contributions | $ 100 00 | $ - | |
| **Total Additional Expense Deductions** | | $ 160 00 | |

**EXHIBIT 5**
**Motion to Convert Pursuant 11 U.S.C. § 706(b) or, in the Alternative,**
**Dismiss Pursuant to 11 U.S.C. § 707(b)**
**Page 3 of 4**

| | | | |
|---|---|---|---|
| Home Mortgage | $ | 890 00 | $ | - |
| Loan Vehicle No  1 | $ | 1,165 00 | $ | - |
| Loan Vehicle No  2 | $ | - | $ | - |
| Priority Claims | $ | - | $ | - |
| Chapter 13 Eligibility Plan Payments | $ | - | $ | - |

| | | |
|---|---|---|
| **Total Secured & Priority Debt Obligations** | $ | 2,055 00 |
| **TOTAL DEDUCTIONS** | $ | 22,836 44 |

| **MONTHLY DISPOSABLE INCOME FOR 60 MONTHS** | | |
|---|---|---|
| Adjusted Current Monthly Income | $ | 30,674 29 |
| Total Deductions | $ | 22,836 44 |
| Monthly Disposable Income | $ | 7,837 85 |
| **FOR 60 MONTHS** | $ | **470,271.08** |

| **PRESUMPTION OF ABUSE EXCEPTION** | | |
|---|---|---|
| Total Unsecured Debts | $ | 922,686 82 |
| Multiply by 25% | $ | 230,671 71 |
| **CMI CAN PAY 25%** | **YES** | |

**EXHIBIT 5**
**Motion to Convert Pursuant 11 U.S.C. § 706(b) or, in the Alternative,**
**Dismiss Pursuant to 11 U.S.C. § 707(b)**
**Page 4 of 4**

# 90 Galapago St #11, Denver, CO 80223-1595, Denver County



EXHIBIT
6

| 2 | 1,226 | 619 | $455,000 |
|---|---|---|---|
| MLS Beds | MLS Sq Ft | Lot Sq Ft | MLS Sale Price |
| 3 | N/A | N/A | 12/10/2019 |
| MLS Baths | Yr Built | Type | MLS Sale Date |

## Owner Information

| | | | |
|---|---|---|---|
| Owner Name: | Johnson Alexander J | Mailing ZIP 4: | 1595 |
| Mailing Address: | 90 Galapago St #11 | Mailing Carrier Route: | C033 |
| Mailing City & State: | Denver, CO | Owner Occupied: | Yes |
| Mailing Zip: | 80223 | | |

## Location Information

| | | | |
|---|---|---|---|
| Property Zip: | 80223 | Range: | 68W |
| Property Zip4: | 1595 | Section: | 10 |
| Property Carrier Route: | C033 | Quarter: | SW |
| Subdivision: | Lake Archer Sub | Block: | 4 |
| Census Tract: | 21.00 | Lot: | 8 |
| Township: | 04S | | |

## Tax Information

| | | | |
|---|---|---|---|
| PIN: | 5103-06-085 | % Improved: | 91% |
| Alternate PIN: | 164298444 | Tax District: | DENV |
| Schedule Number: | 0510306085000 | | |
| Legal Description: | LAKE ARCHER SUB B4 PTN L8 & L9 COM NW COR L10 E 79.83FT S 53.12FT TPOB TH S 14.83FT W 41.74FT N 14.83FT E 41.74FT TPOB | | |

## Assessment & Tax

| Assessment Year | 2019 | 2018 |
|---|---|---|
| Market Value - Land | $15,500 | |
| Market Value - Improved | $158,000 | |
| Market Value - Total | $173,500 | |
| Assessed Value - Land | $1,110 | |
| Assessed Value - Improved | $11,300 | |
| Assessed Value - Total | $12,410 | |

| Tax Year | Total Tax |
|---|---|
| 2019 | $895 |

## Characteristics

| | | | |
|---|---|---|---|
| Lot Acres: | 0.0142 | Baths - Total: | MLS: 3 |
| Lot Sq Ft: | 619 | MLS Total Baths: | 3 |
| Year Built: | MLS: 2019 | Baths - Half: | MLS: 1 |
| Bldg Sq Ft - Finished: | MLS: 1,226 | Garage Capacity: | MLS: 1 |
| Bedrooms: | MLS: 2 | | |

## Listing Information

| | | | |
|---|---|---|---|
| MLS Listing Id: | 8633416 | MLS Close Price: | $455,000 |
| MLS Days On Market: | 209 | MLS Listing Contract Date: | 04/26/2019 |
| MLS Status: | Closed | MLS Close Date: | 12/10/2019 |
| MLS Status Change Date: | 12/10/2019 | MLS List Office Name: | MODUS REAL ESTATE |

REcolorado

The data within this report is compiled by CoreLogic from public and private sources. The data is deemed reliable, but is not guaranteed. The accuracy of the data contained herein can be independently verified by the recipient of this report w th the applicable county or mun cipality.

**Property Detail**

Vol: 95

| MLS Current Price: | $489,900 | MLS Selling Agent Full Name: | Gerhart Moore Team |
| MLS Original List Price: | $474,900 | MLS Area: | **DENVER** |

## Last Market Sale & Sales History

| | | | |
| --- | --- | --- | --- |
| Sale Date: | **Tax: 12/04/2019 MLS: 12/10/2019** | Deed Type: | **Special Warranty Deed** |
| Sale Price: | **$455,000** | Owner Name: | **Johnson Alexander J** |
| Document Number: | **173539** | Seller: | **Baker 14 LLC** |

| | |
| --- | --- |
| **Sale Date** | 12/04/2019 |
| **Sale Price** | $455,000 |
| **Buyer** | Johnson Alexander J |
| **Seller** | Baker 14 LLC |
| **Document Number** | 173539 |
| **Document Type** | Special Warranty Deed |

## Mortgage History

| | |
| --- | --- |
| **Mortgage Date** | 12/11/2019 |
| **Mortgage Amount** | $386,750 |
| **Mortgage Lender** | Cherry Crk Mtg Co Inc |
| **Borrower** | Johnson Alexander J |
| **Mortgage Type** | Conventional |
| **Mortgage Purpose** | 1st Time Sale |
| **Mortgage Term** | 30 |
| **Mortgage Term** | Years |

## Property Map

 

*Lot Dimensions are Estimated

REcolorado

The data within this report is compiled by CoreLogic from public and private sources. The data is deemed reliable, but is not guaranteed. The accuracy of the data contained herein can be independently verified by the recipient of this report with the applicable county or municipality.

EXHIBIT 6
Motion to Convert Pursuant 11 U.S.C. § 706(b) or, in the Alternative, Property Detail
Dismiss Pursuant to 11 U.S.C. § 707(b)
Page 2 of 6
Vol 1 96

Page 1 of 2

**Full Property View**

### 90 N Galapago Street Unit #11, Denver, CO 80223      ----      **$455,000**  -  Closed

History

## Listing History from MLS

ListingID: 2844594  Sts: Expired
Parcel #: 5103-06-074

**90 N Galapago Street Unit #12, Denver, CO 80223**  LA: Gearhart Moore Team
Residential, Multi-Family  LO: Modus Real Estate



| Effective Date | Change Type | Prev -> New | Change Timestamp | Days in MLS |
|---|---|---|---|---|
| 12/30/2019 | Expired | WTH->EXP | 12/31/19 - 12:10 AM | 46 |
| 12/10/2019 | Withdrawn | ACT->WTH | 12/10/19 - 11:46 AM | 46 |
| 10/25/2019 | New Listing | ACT-> $529,900 | 10/25/19 - 07:07 AM | |

ListingID: 6649610  Sts: Closed
Parcel #: 5103-06-074

**90 N Galapago Street Unit #10, Denver, CO 80223**  LA: Gearhart Moore Team
Residential, Multi-Family  LO: Modus Real Estate



| Effective Date | Change Type | Prev -> New | Change Timestamp | Days in MLS |
|---|---|---|---|---|
| 12/05/2019 | Closed | ($373,000) | 12/05/19 - 05:35 PM | 36 |
| 11/04/2019 | Pending | ACT->PND | 11/08/19 - 04:25 PM | 36 |
| 10/25/2019 | Price Increase | $379,750->$379,900 | 10/25/19 - 07:16 AM | 22 |
| 10/16/2019 | Price Decrease | $379,900->$379,750 | 10/16/19 - 10:02 PM | 13 |
| 10/03/2019 | New Listing | ACT-> $379,900 | 10/03/19 - 01:01 PM | |

ListingID: 2003574  Sts: Closed
Parcel #: 5103-06-074

**90 N Galapago Street Unit #5, Denver, CO 80223**  LA: Gearhart Moore Team
Residential, Multi-Family  LO: Modus Real Estate



| Effective Date | Change Type | Prev -> New | Change Timestamp | Days in MLS |
|---|---|---|---|---|
| 10/28/2019 | Closed | ($379,900) | 10/28/19 - 03:00 PM | 6 |
| 09/30/2019 | Pending | ACT->PND | 09/30/19 - 01:32 PM | 6 |
| 09/24/2019 | New Listing | ACT-> $379,900 | 09/24/19 - 08:44 PM | |

ListingID: 7953743  Sts: Closed
Parcel #: 5103-06-074

**90 N Galapago Street Unit #14, Denver, CO 80223**  LA: Gearhart Moore Team
Residential, Multi-Family  LO: Modus Real Estate

| Effective Date | Change Type | Prev -> New | Change Timestamp | Days in MLS |
|---|---|---|---|---|
| 10/22/2019 | Closed | ($539,597) | 11/07/19 - 01:04 PM | 41 |
| 09/28/2019 | Pending | ACT->PND | 10/04/19 - 03:21 PM | 41 |
| 09/12/2019 | Price Decrease | $544,900->$544,500 | 09/12/19 - 03:21 PM | 19 |
| 08/24/2019 | New Listing | ACT-> $544,900 | | |

**EXHIBIT 6**

**Motion to Convert Pursuant to 11 U.S.C. § 706(b), or in the Alternative,**

**Dismiss Pursuant to 11 U.S.C. § 707(b)**

**Page 3 of 6**



ListingID: 2433901  Sts: Closed
Parcel #: 5103-06-074

**90 N Galapago Street Unit #2, Denver, CO 80223**
Residential, Multi-Family

LA: Gearhart Moore Team
LO: Modus Real Estate



| Effective Date | Change Type | Prev -> New | Change Timestamp | Days in MLS |
|---|---|---|---|---|
| 11/04/2019 | Closed | ($537,500) | 11/04/19 - 03:41 PM | 37 |
| 09/30/2019 | Pending | ACT->PND | 09/30/19 - 01:57 PM | 37 |
| 09/24/2019 | Price Decrease | $544,500->$539,900 | 09/24/19 - 08:12 PM | 31 |
| 09/12/2019 | Price Decrease | $544,900->$544,500 | 09/12/19 - 03:19 PM | 19 |
| 08/24/2019 | New Listing | ACT-> $544,900 | 08/24/19 - 04:42 PM | |

ListingID: 5377264  Sts: Closed
Parcel #: 5103-06-074

**90 N Galapago Street Unit #9, Denver, CO 80223**
Residential, Multi-Family

LA: Gearhart Moore Team
LO: Modus Real Estate



| Effective Date | Change Type | Prev -> New | Change Timestamp | Days in MLS |
|---|---|---|---|---|
| 11/04/2019 | Closed | ($529,000) | 11/05/19 - 01:11 PM | 61 |
| 10/19/2019 | Pending | ACT->PND | 10/24/19 - 02:07 PM | 61 |
| 10/16/2019 | Price Decrease | $532,500->$532,249 | 10/16/19 - 10:02 PM | 53 |
| 10/04/2019 | Price Decrease | $534,500->$532,500 | 10/04/19 - 03:22 PM | 41 |
| 09/12/2019 | Price Decrease | $534,900->$534,500 | 09/12/19 - 03:20 PM | 19 |
| 08/24/2019 | New Listing | ACT-> $534,900 | 08/24/19 - 04:21 PM | |

ListingID: 5731164  Sts: Closed
Parcel #: 5103-06-074

**90 N Galapago Street Unit #4, Denver, CO 80223**
Residential, Multi-Family

LA: Gearhart Moore Team
LO: Modus Real Estate



| Effective Date | Change Type | Prev -> New | Change Timestamp | Days in MLS |
|---|---|---|---|---|
| 09/12/2019 | Closed | ($474,900) | 09/12/19 - 03:11 PM | 0 |
| 08/23/2019 | Pending | ACT->PND | 08/23/19 - 09:46 AM | 0 |
| 08/23/2019 | New Listing | ACT-> $474,900 | 08/23/19 - 09:38 AM | |

ListingID: 2750934  Sts: Closed
Parcel #: 5103-06-074

**90 N Galapago Street Unit #8, Denver, CO 80223**
Residential, Multi-Family

LA: Charles Moore
LO: Modus Real Estate

| Effective Date | Change Type | Prev -> New | Change Timestamp | Days in MLS |
|---|---|---|---|---|
| 10/01/2019 | Closed | ($549,9... | 10/02/19 - 06:34 AM | 77 |
| 09/05/2019 | Pending | ACT->PND | 09/06/19 - 03:40 PM | 77 |
| 08/23/2019 | Price Decrease | $550,...->$549,900 | 08/... | 63 |

**EXHIBIT 6**

**Motion to Convert Pursuant to 11 U.S.C. § 706(b), or, in the Alternative, Dismiss Pursuant to 11 U.S.C. § 707(b)**



| | | | | |
|---|---|---|---|---|
| 08/19/2019 | Price Decrease | $554,900->$550,400 | 08/19/19 - 10:25 AM | 59 |
| 08/19/2019 | Price Increase | $549,900->$554,900 | 08/19/19 - 10:18 AM | 59 |
| 07/31/2019 | Price Decrease | $554,900->$549,900 | 07/31/19 - 09:39 PM | 40 |
| 06/21/2019 | New Listing | ACT-> $554,900 | 06/21/19 - 09:11 PM | |

ListingID: 6383622  Sts: Closed
Parcel #: 5103-06-074

**90 N Galapago Street Unit #1, Denver, CO 80223**
Residential, Multi-Family

LA: Gearhart Moore Team
LO: Modus Real Estate



| Effective Date | Change Type | Prev -> New | Change Timestamp | Days in MLS |
|---|---|---|---|---|
| 08/16/2019 | Closed | ($549,000) | 08/16/19 - 03:22 PM | 0 |
| 05/06/2019 | Pending | ACT->PND | 05/06/19 - 01:01 PM | 0 |
| 05/06/2019 | New Listing | ACT-> $559,000 | 05/06/19 - 12:59 PM | |

ListingID: 8633416  Sts: Closed
Parcel #: 5103-06-074

**90 N Galapago Street Unit #11, Denver, CO 80223**
Residential, Multi-Family

LA: Gearhart Moore Team
LO: Modus Real Estate



| Effective Date | Change Type | Prev -> New | Change Timestamp | Days in MLS |
|---|---|---|---|---|
| 12/10/2019 | Closed | ($455,000) | 12/10/19 - 11:47 AM | 209 |
| 11/20/2019 | Pending | ACT->PND | 11/21/19 - 04:56 PM | 209 |
| 10/25/2019 | Price Increase | $457,750->$457,900 | 10/25/19 - 07:17 AM | 182 |
| 10/16/2019 | Price Decrease | $457,900->$457,750 | 10/16/19 - 10:02 PM | 173 |
| 10/04/2019 | Price Decrease | $459,900->$457,900 | 10/04/19 - 03:22 PM | 161 |
| 09/24/2019 | Price Decrease | $464,500->$459,900 | 09/24/19 - 08:13 PM | 151 |
| 09/12/2019 | Price Decrease | $464,900->$464,500 | 09/12/19 - 03:20 PM | 139 |
| 08/30/2019 | Price Decrease | $469,900->$464,900 | 08/30/19 - 03:00 PM | 126 |
| 07/31/2019 | Price Decrease | $474,900->$469,900 | 07/31/19 - 09:44 PM | 96 |
| 04/26/2019 | New Listing | ACT-> $474,900 | 04/26/19 - 02:35 PM | |

ListingID: 1970539  Sts: Expired
Parcel #: 5103-06-074

**90 N Galapago Street Unit #10, Denver, CO 80223**
Residential, Multi-Family

LA: Gearhart Moore Team
LO: Modus Real Estate



| Effective Date | Change Type | Prev -> New | Change Timestamp | Days in MLS |
|---|---|---|---|---|
| 10/03/2019 | Expired | WTH->EXP | 10/03/19 - 12:42 PM | 187 |
| 09/24/2019 | Withdrawn | ACT->WTH | 09/24/19 - 08:44 PM | 187 |
| 09/17/2019 | Price Decrease | $392,500->$389,500 | 09/17/19 - 10:20 AM | 180 |
| 09/06/2019 | Price Decrease | $394,500->$392,500 | 09/06/19 - 04:29 PM | 169 |
| 08/30/2019 | Price Decrease | $399,500->$394,500 | 08/30/19 - 03:00 PM | 162 |
| 08/23/2019 | Price Decrease | $400,000->$399,500 | 08/23/19 - 11:12 AM | 155 |
| 08/19/2019 | Price Increase | $399,500->$400,000 | 08/19/19 - 10:26 AM | 151 |
| 07/31/2019 | Price Increase | $399,000->$399,500 | 07/31/19 - 09:48 PM | 132 |
| 03/21/2019 | New Listing | ACT-> $ | 03/21/19 - 09:15 PM | |

**EXHIBIT 6**

**Motion to Convert Pursuant 11 U.S.C. § 706(b) or, in the Alternative,**
**Dismiss Pursuant to 11 U.S.C. § 707(b)**
**Page 5 of 6**

ListingID: 5615825  Sts: Closed          **90 N Galapago Street Unit #3, Denver, CO 80223**   LA: Gearhart Moore Team
Parcel #: 5103-06-074                              Residential, Multi-Family          LO: Modus Real Estate



| Effective Date | Change Type | Prev -> New | Change Timestamp | Days in MLS |
|---|---|---|---|---|
| 08/19/2019 | Closed | ($535,000) | 08/19/19 - 08:04 PM | 0 |
| 03/13/2019 | Pending | ACT->PND | 03/13/19 - 09:04 PM | 0 |
| 03/13/2019 | New Listing | ACT-> $544,900 | 03/13/19 - 09:01 PM | |

ListingID: 7400460  Sts: Closed          **90 N Galapago Street Unit #7, Denver, CO 80223**   LA: Gearhart Moore Team
Parcel #: 5103-06-074                              Residential, Multi-Family          LO: Modus Real Estate

| Effective Date | Change Type | Prev -> New | Change Timestamp | Days in MLS |
|---|---|---|---|---|
| 08/19/2019 | Closed | ($554,900) | 08/19/19 - 01:20 PM | 0 |
| 03/09/2019 | Pending | ACT->PND | 03/09/19 - 08:53 AM | 0 |
| 03/09/2019 | New Listing | ACT-> $554,900 | 03/09/19 - 08:52 AM | |

ListingID: 5693782  Sts: Expired          **90 N Galapago Street Unit #13, Denver, CO 80223**   LA: Matthew Jackson
Parcel #: 5103-06-074                              Residential, Multi-Family          LO: Modus Real Estate



| Effective Date | Change Type | Prev -> New | Change Timestamp | Days in MLS |
|---|---|---|---|---|
| 10/31/2019 | Expired | WTH->EXP | 11/01/19 - 12:11 AM | 160 |
| 07/31/2019 | Withdrawn | ACT->WTH | 07/31/19 - 09:43 PM | 160 |
| 02/21/2019 | New Listing | ACT-> $539,000 | 02/21/19 - 09:10 PM | |

## Sale History from Public Records

| Sale Date | Sale Price | Nom | Buyer Name(s) | Seller Name(s) | Doc. # | Document Type | Title Company | Multi/Split Sale |
|---|---|---|---|---|---|---|---|---|
| 12/04/19 | $455,000 | | Johnson Alexander J | Baker 14 Llc | 173539 | Special Warranty Deed | | |

## Mortgage History

| Date | Amount | Mortgage Lender | Mortgage Type | Mrtg Type Code | Term | Int Rate | Int Rate Type | Borrower Name(s): | Title Company |
|---|---|---|---|---|---|---|---|---|---|
| 12/11/19 | $386,750 | | CONVENTIONAL | YEARS | 30 | | | Johnson Alexander J | |

**EXHIBIT 6**
**Motion to Convert Pursuant 11 U.S.C. § 706(b) or, in the Alternative,**
**Dismiss Pursuant to 11 U.S.C. § 707(b)**
**Page 6 of 6**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| IN RE: | Case No. 19-19816 EEB |
| ALEXANDER JOHNSON, | Chapter 7 |
| Debtor. | |

**ORDER GRANTING MOTION TO CONVERT CHAPTER 7 BANKRUPTCY CASE**
**TO CASE UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**
**PURSUANT TO 11 U.S.C § 706(b)**

**THIS MATTER** having come before the Court on the *Motion of Law Offices of Ritchie, Dillard, Davies & Johnson, P.C. to Convert Chapter 7 Bankruptcy Case to Case Under Chapter 11 of the Bankruptcy Code Pursuant To 11 U.S.C § 706(b) or, in the Alternative, Dismiss Bankruptcy Case Pursuant to 11 U.S.C. § 707(b)* ("Motion"), filed by the Law Offices of Ritchie, Dillard, Davies & Johnson, P.C. ("RDD&J"), pursuant to 11 U.S.C. §§ 706(b), 707(b)(2), and Fed.R.Bankr.P. 1017(e). The Court having considered the Motion, any responses or arguments made thereto, and being duly advised, does hereby

**FIND** that RDD&J demonstrates that conversion of the above-captioned Chapter 7 bankruptcy case to a case under Chapter 11 of Title 11 of the United States Code is in the best interest of all parties as furthering the goals of the Bankruptcy Code. Therefore, the Court does hereby

**ORDER** that the Motion is **GRANTED**.

DATED this _____ day of _____, 2020

BY THE COURT:

_____
Hon. Elizabeth E. Brown
United States Bankruptcy Court Judge

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 19-19816 EEB |
| ALEXANDER JOHNSON, | ) | |
| | ) | Chapter 7 |
| Debtor. | ) | |

---

## TRUSTEE'S OBJECTION TO MOTION OF LAW OFFICES OF RITCHIE, DILLARD, DAVIES & JOHNSON, P.C. TO CONVERT CHAPTER 7 BANKRUPTCY CASE TO CASE UNDER CHAPTER 11 OF THE BANKRUPTCY CODE PURSUANT TO 11 U.S.C. § 706(b) OR, IN THE ALTERNATIVE, DISMISS BANKRUPTCY CASE PURSUANT TO 11 U.S.C. § 707(b)

---

M. Stephen Peters, chapter 7 trustee, hereby submits his objection to the Motion of Law Offices of Ritchie, Dillard, Davis & Johnson, P.C. to Convert Chapter 7 Bankruptcy Case to Case Under Chapter 11 of the Bankruptcy Code Pursuant to 11 U.S.S. § 706(b) or, in the Alternative, Dismiss Bankruptcy Case Pursuant to 11 U.S.C. § 707(b) (the "Motion"), and in support thereof states as follows:

### BACKGROUND

1.  Alexander Johnson (the "Debtor") filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code on November 13, 2019.

2.  M. Stephen Peters is the duly appointed chapter 7 trustee (the "Trustee") for the Debtor's bankruptcy estate.

3.  On December 19, 2019, the Trustee commenced the § 341 Meeting of Creditors, which adjourned and concluded on January 3, 2020.

4.  On February 18, 2020, the Law Offices of Ritchie, Dillard, Davies & Johnson, P.C. ("RDD&J") filed a proof of claim for an unsecured claim in the amount of $902,908.82 for services rendered and costs incurred under legal representation agreements ("the Claim").

5.  On February 18, 2020, the United States Trustee filed a motion to extend the deadlines to file a complaint objection to discharge under 11 U.S.C. § 727 or motion to dismiss under 11 U.S.C. § 727.  Docket No. 47.

6.  RDD&J filed a joinder to the United States Trustee's request extending the deadlines.  Docket No. 53.  In the joinder, RDD&J did not request to be included as a party to which the request relief would apply.  Instead, RDD&J offered additional reasons for granting the United States Trustee's request.

7.      On March 18, 2020, the Court granted the United States Trustee's request and entered its Order Granting the United States Trustee's Motion to Extend Deadlines to File a Complaint Objection to Discharge under 11 U.S.C. § 727 or Motion to Dismiss under 11 U.S.C. § 707 (the "Extension Order").  Docket No. 62.

8.      In the Extension Order, the Court ordered as follows: "The deadline for the United States Trustee to file a complaint under 11 U.S.C. § 727 or motion to dismiss under 11 U.S.C. § 707 shall be April 20, 2020."  By its own language, the Extension Order only applied to the United States Trustee and to no other party.

9.      The United States Trustee did not file a motion to dismiss nor did it file a complaint objecting to discharge.

10.      On April 20, 2020, 120 days after the commencement of the Meeting of Creditors, RDD&J filed the Motion seeking conversion of the case from a case under chapter 7 to a case under chapter 11 pursuant to 11 U.S.C. § 706(b), or, in the alternative, seeking dismissal of the case pursuant to 11 U.S.C. § 707(b).  Docket No. 68.

11.      In its Motion, RDD&J asserts that the legal services forming the basis of its Claim stem from its representation of the Debtor in three separate legal matters: (1) *State of Tennessee v. Alexander J. Johnson, et al.*, Case No. 104964A ("2015 Case"); (2) *State of Tennessee v. Alexander J. Johnson, et al.*, Case No. 111778 ("2017 Case"); and (3) *The University of Tennessee v. Alexander Johnson* ("Conduct Case").  RDD&J's Motion at ¶ 6.

12.      The 2015 Case and 2017 Case were criminal cases against the Debtor, and the Conduct Case was a proceeding by the University of Tennessee to revoke the Debtor's degree within a student disciplinary matter.  *Id.*

13.      RDD&J's Claim represents the majority of the Debtor's total debts.

## ARGUMENT

14.      RDD&J's Motion seeking dismissal should be denied because (1) the motion to dismiss is untimely under Fed. R. Bankr. P. 1017(e)(1), and (2) Debtor's case does not qualify for dismissal under 11 U.S.C. § 707(b) because Debtor's debts are not primarily consumer debts.

**I.      RDD&J's motion for dismissal pursuant to 11 U.S.C. § 707(b) is untimely under Fed. R. Bankr. P. 1017(e)(1).**

15.      Fed. R. Bankr. P. 1017(e)(1) provides that a motion to dismiss a case for abuse under § 707(b) may be filed only within 60 days after the first date set for the meeting of creditors under § 341(a), unless the court extends the time for filing the same for cause upon a request filed before the time has expired.  Fed. R. Bankr. P. 1017(e)(1).

16.      The Meeting of Creditors commenced on December 19, 2019.  RDD&J did not file a motion to dismiss the case for abuse under §707(b) or request an extension within the 60 day deadline, which was February 17, 2020.  Instead, presumably relying on the Extension Order, RDD&J filed the instant Motion seeking dismissal for abuse under §707(b) 120 days after the first

date set for the meeting of creditors.  The Extension Order does not apply to RDD&J.  It only applies to the United States Trustee.  Thus, the Motion should be denied for being untimely.

## II.   <u>The Debtor's case does not qualify for dismissal under 11 U.S.C. § 707(b) because Debtor's debts are not primarily consumer debts.</u>

17.    11 U.S.C. § 707(b) is not applicable because the majority of Debtor's debts are not consumer debts. The debt owed to RDD&J in connection with defending criminal and disciplinary lawsuits were not incurred voluntarily and are therefore not consumer debts.

18.    11 U.S.C. § 707(b)(1) provides that a court may dismiss a case filed by an individual debtor under chapter 7 whose debts are *primarily consumer debts*.  11 U.S.C. § 707(b)(1).  The Bankruptcy Code defines a "consumer debt" as a debt incurred by an individual primarily for a personal, family, or household purpose.  11 U.S.C. §101(8).  The term "consumer debt" must be narrowly construed.  *See In re Sijan,* 611 B.R. 850, 855 (Bankr. S.D. Ohio 2020). "Implicit in the Code's definition of consumer debt is the element of volition.  That is, the subject indebtedness must necessarily be voluntarily 'incurred' by the debtor for the purposes specified in § 101(8)."[1]  *In re Marshalek*, 158 B.R. 704, 707 (Bankr. N.D. Ohio 1993) (concluding that a judgment resulting from a vehicular accident is not a consumer debt – the debtor "did not voluntarily incur the civil judgments which were adjudicated against him and certainly did not incur the judgment debts 'primarily for personal, family or household purpose'").

19.    The analysis should focus on the cause of the debt.  While Debtor voluntarily engaged RDD&J, RDD&J was engaged because Debtor faced two criminal cases and a disciplinary matter, which are unquestionably involuntary in nature.  Engaging RDD&J is not different conceptually then when a debtor goes to a hospital.  A debtor voluntarily chooses the hospital (*i.e.* debtor may refuse care or choose a different medical provider even in emergent situations), yet the medical debt is still not a consumer debt because the cause of the debt (*i.e.* the medical emergency) was not incurred voluntarily.  Like the debtor in *In re Sijan* that did not intend to have a near death experience, the Debtor here did not intend to get entangled in two criminal cases and one disciplinary case, all of which he prevailed.  *See In re Sijan*, 611 B.R. at 855-856. This is not the type of debt "that individuals willingly incur in their daily affairs."  *Id.* at 856.

20.    Because the Debtor's debts are not primarily consumer debts within the meaning of the Bankruptcy Code, the Motion should be denied.

---

[1] In support of argument that the legal fees subject of its Claim should be classified as "consumer debt," RDD&J discusses two cases: *In re Woerner*, 1989 WL 237631 (Bankr. E.D. Pa. Mar. 17, 1989) and *In re Renteria*, 456 B.R. 444 (Bankr. E.D. Cal. 2011), aff'd, 470 B.R. 838 (B.A.P. 9th Cir. 2012).  Similar to RDD&J's Motion, both of these cases completely ignore the volition element implicit in the Code's definition of "consumer debt," and should not be given any precedential weight for that reason.

**III.**     **Trustee does not oppose conversion to chapter 11 if Debtor consents.**

21.     11 U.S.C. § 707(b)(1) provides that a case may be converted "with the debtor's consent . . . to a case under chapter 11 of 13 of this title." (emphasis added).  RDD&J argues that consent is only needed for conversions to chapter 13.  Motion at ¶ 17.  This is an incorrect statement of the law.  The plan language of § 707(b)(1) requires Debtor's consent for a conversion to chapter 11.

WHEREFORE, Trustee requests entry of an order denying the Motion, and for such other and further relief as this Court may deem just and appropriate.

DATED this 8th day of June, 2020.

<div style="margin-left:40%">

Respectfully submitted,

WADSWORTH GARBER WARNER CONRARDY, P.C.

*/s/ Lindsay S. Riley*
Aaron J. Conrardy, #40030
Lindsay S. Riley, Texas Bar #240837979
2580 West Main Street, Suite 200
Littleton, Colorado 80120
(303) 296-1999 / (303) 296-7600 FAX
aconrardy@wgwc-law.com
lriley@wgwc-law.com
*Attorneys for M. Stephen Peters, chapter 7 trustee*

</div>

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

In re:                                      )
                                            )     Case No. 19-19816 EEB
ALEXANDER JOHNSON,                          )
                                            )     Chapter 7
                              Debtor.       )

_____

## CERTIFICATE OF SERVICE

_____

     I do hereby certify that on the 8th day of June, 2020, I served a true and correct copy of **Trustee's Objection to the Motion of Law Offices of Ritchie, Dillard, Davis & Johnson, P.C.'s Motion of Law Offices of Ritchie, Dillard, Davis & Johnson, P.C. to Convert Chapter 7 Bankruptcy Case to Case Under Chapter 11 of the Bankruptcy Code Pursuant to 11 U.S.S. §706(b) or, in the Alternative, Dismiss Bankruptcy Case Pursuant to 11 U.S.C. §707(b)**, by United States first-class mail, postage prepaid thereon, or electronically through CM/ECF where indicated, to those persons listed below:

Alexander Johnson
6105 S. Parker Road Apartment 5107
Aurora, CO 80016

Abbey Dreher
co.ecf@bdfgroup.com

Jeffrey S. Brinen
vlm@kutnerlaw.com

M. Stephen Peters
CO31@ecfcbis.com

US Trustee
USTPRegion19.DV.ECF@usdoj.gov



     */s/ Angela C. Garcia*_____
     For Wadsworth Garber Warner Conrardy, P.C.

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| ALEXANDER JOHNSON, | ) | Case No. 19-19816-EEB |
| SSN: XXX-XX-4248 | ) | |
| | ) | Chapter 7 |
| Debtor. | ) | |

**OBJECTION TO MOTION OF LAW OFFICES OF RITCHIE, DILLARD, DAVIES &
JOHNSON, P.C. TO CONVERT CHAPTER 7 BANKRUPTCY CASE TO
CASE UNDER CHAPTER 11 OF THE BANKRUPTCY CODE PURSUANT
TO 11 U.S.C. § 706(b) OR, IN THE ALTERNATIVE, DISMISS
BANKRUPTCY CASE PURSUANT TO 11 U.S.C. § 707(b)**

The Debtor, Alexander Johnson (the "Debtor"), by and through his attorneys, Kutner
Brinen, P.C., hereby objects to the Motion of Law Offices of Ritchie, Dillard, Davies & Johnson,
P.C. ("Ritchie") to Convert Chapter 7 Bankruptcy Case to Case Under Chapter 11 of the
Bankruptcy Code Pursuant to 11 U.S.C. § 706(b) or, in the Alternative, Dismiss Bankruptcy
Case Pursuant to 11 U.S.C. § 707(b) (the "Motion to Convert or Dismiss"), and as grounds
therefor states as follows:

## I.   PROCEDURAL BACKGROUND

1.   The Debtor filed for relief under Chapter 7 of the Bankruptcy Code on November 13,
2019 (the "Petition Date").  The Debtor's Voluntary Petition states that the Debtor's debts are
not primarily consumer debts (Docket No. 1).

2.   The Debtor's meeting of creditors was set for December 19, 2019.

3.   Fed. R. Bankr. P. 1017(e)(1) provides that, ". . . a motion to dismiss a case for abuse
under 11 U.S.C. § 707(b) must be filed within 60 days after the first date set for the meeting of
creditors under § 341(a), unless, on request filed before the time has expired, the court for cause
extends the time for filing the motion to dismiss."

4.   On February 18, 2020, the deadline for filing a motion to dismiss pursuant to 11
U.S.C § 707(b) (the "Dismissal Motion Deadline")[1], the United States Trustee (the "UST") filed
its Motion to Extend Deadlines to File a Complaint Objecting to Discharge Under 11 U.S.C. §
727 or Motion to Dismiss Under 11 U.S.C. § 707, seeking a sixty-day extension of the Dismissal

---

1. February 17, 2020 would have been the sixtieth day, but it was President's Day.

Motion Deadline through April 20, 2020 (the "Extension Motion") (Docket No. 47).

5.   On February 19, 2020, the day after the Dismissal Motion Deadline, Ritchie filed a Joinder of Law Offices of Ritchie, Dillard, Davies & Johnson, P.C. to United States Trustee's Motion to Extend Deadlines to File a Complaint Objecting to Discharge Under 11 U.S.C. § 727 or Motion to Dismiss Under 11 U.S.C. § 707 (the "Joinder") (Docket No. 53).

6.   On March 18, 2020, the Court entered an Order granting the Extension Motion (the "Extension Order"), which stated that

> [t]he Court has reviewed the [Extension Motion] and finds that it is appropriate to extend the deadlines for the **United States Trustee** to file … a motion to dismiss under 11 U.S.C. § 707 through and including April 20, 2020.  Accordingly it is ordered that … [t]he deadline for the **United States Trustee** to file a … motion to dismiss under 11 U.S.C. § 707 shall be April 20, 2020."  (Docket No. 62) (emphasis added).

7.   The Extension Order did not make any finding with respect to the Joinder or an extension of the Dismissal Motion Deadline for Ritchie, and Ritchie never sought to clarify or amend the Extension Order.  Thus, the Extension Order applies exclusively to the UST.

8.   After consideration, the UST elected not to seek dismissal or conversion of the Debtor's bankruptcy case, and not to object to the Debtor's discharge.

9.   Ritchie filed the Motion to Convert or Dismiss on April 20, 2020.

**A.   The Motion to Convert or Dismiss Should be Denied as Untimely**

10. Ritchie violated Fed. R. Bankr. P. 1017(e)(1) by filing the Joinder after the Dismissal Motion Deadline.  As set forth in the Notes of Advisory Committee on 1991 amendments, Note to Subdivision (e), "[s]ince dismissal for substantial abuse has the effect of denying the debtor a discharge in the chapter 7 case based on matters which may be discovered early, a motion to dismiss under § 707(b) is analogous to an objection to discharge pursuant to Rule 4004 and, therefore, should be required to be made within a specified time period."

11. Ritchie had the opportunity to file its own motion to extend the Dismissal Motion Deadline, but failed to do so.  Ritchie should not be permitted to circumvent Rule 1017(e) by filing its Joinder to the timely filed Extension Motion after the Dismissal Motion Deadline had passed.

12. In the event the Court determines that the Motion to Dismiss or Convert was timely filed, the Debtor alternatively argues as set forth below.

## II.     FACTUAL BACKGROUND

### A.   False Accusations and Criminal Charges

13. The Debtor played college football at the University of Tennessee.  Going into his senior season, he was projected to be an All-American and to be drafted in the next National Football League ("NFL") Draft.

14. In November 2014, during the Debtor's senior year, false accusations of sexual assault (the "Accusations") were levied against him.

15. The Accusations upended the Debtor's life. Aside from the Accusations being reported in the local press, he was immediately suspended from the football team and was the subject of an investigation by the Knoxville (TN) police department.  In February 2015, the Debtor was indicted on charges related to the Accusations (the "Criminal Case").

16. The Criminal Case nearly destroyed the Debtor's career before it started and has severely damaged the Debtor's earning potential for his career.  Prior to the commencement of the Criminal Case, the Debtor had been invited to the scouting combine, an invitation only showcase run by the NFL for players who are expected to be drafted to work out for and meet with various NFL team scouts and executives; however, his invitation was rescinded due to the Criminal Case.  As a result of the Criminal Case, not only was the Debtor undrafted in the 2015 NFL Draft, no team would sign him after the draft.  The Debtor was therefore denied the ability to pursue his career pending determination of the Criminal Case.

### B.   Ritchie's Representation of the Debtor

17. After the Accusations were made against the Debtor, he was told by his football coach at University of Tennessee to contact Ritchie.  On or about November 20, 2014, the Debtor executed a representation agreement for Ritchie to represent the Debtor in the investigation of the Accusations and on any charges brought as a result of the Accusations (the "2014 Representation Agreement").

18. The 2014 Representation Agreement required a non-refundable retainer in the amount of $15,000.  The amount of the retainer was based upon, among other factors, "the firm's best estimate of the amount of time which will be expended to represent [the Debtor]."  Claim No. 2-1, Part 2 at 3.  The 2014 Representation Agreement further stated that "[i]f the time expended in this representation exceeds 80% of the non-refundable retainer already paid and/or if there are

formal charges brought against [the Debtor], the firm will consult with [the Debtor] to discuss the necessity of an additional retainer." *Id*. at 4.

19. The Debtor executed two additional representation agreements with Ritchie.  One was for representation in a Student Conduct civil matter brought by the University of Tennessee to revoke the Debtor's degree due to the Accusations (the "2015 Representation Agreement").   The second was for representation in a matter unrelated to the Accusations (the "2017 Representation Agreement"). Both matters were resolved and the Debtor was able to keep his degree.

20. The trial for the Criminal Case did not begin until July 2018, approximately three and a half years after the Debtor was indicted.  The trial lasted five days and the defense rested without calling any witnesses.  At the conclusion of the trial, the jury took less than ninety minutes to return a verdict of not guilty on all counts.

21. More than three and a half years after the false Accusations were first made, during which time the Debtor was unable to pursue his career, the Criminal Case was finally concluded and the Debtor was exonerated.

**C.  Ritchie's Claim**

22. When the Debtor filed his bankruptcy case, he listed Ritchie as holding a contingent, unliquidated, and disputed claim in the amount of $900,436.32 (Docket No.13).

23. On February 18, 2020, Ritchie filed a proof of claim asserting a claim in the total amount of $902,908.82 (the "Proof of Claim").  Claim No. 2-1.

24. Pursuant to the summary attached to the Proof of Claim, the total amount of fees and costs billed by Ritchie to represent the Debtor in the investigation of the Accusations and the Criminal Case under the 2014 Representation Agreement was $819,079.18.  The summary states that $91,460.37 of the billed amount was paid prior to the Petition Date, and asserts a claim for fees and expenses owed pursuant to the 2014 Representation Agreement in the amount of $727,618.81.  Claim No. 2-1, Part 2 at 2.

25. The summary for the Proof of Claim additionally provides that the amounts owed under the 2015 Representation Agreement and the 2017 Representation Agreement are $159,572.37 and $15,717.37, respectively, and that no payments have been made for such fees and expenses.  *Id*.

**D.  The Debtor and The NFL**

26. After prevailing in the Criminal Case, the Debtor signed a contract with the Denver

4

Broncos in August 2018 (the "Contract").  The Contract was for a three-year period with annual compensation at the league minimum salary.  Other than a $35,000 signing bonus and $15,000 of salary in 2018 (both gross amounts), no portion of the Contract was guaranteed, meaning that anytime during the duration of the Contract, the Broncos could release the Debtor for any reason and not be obligated to pay him any additional compensation.  The Debtor is not eligible to become an unrestricted free agent, which allows him to sign a contract with any team in the league, until the offseason before the 2022 season.

27. Since the Debtor missed what should have been the first three years of his career fighting the false Accusations and Criminal Case, he is that much older than other players with a similar amount of experience.  Considering his age, injury risks, and the certainty of a decline in his play as he ages, the Criminal Case will reduce the number of years the Debtor is able to play in the NFL, and significantly diminish his career earnings.  The Debtor will turn 31 during the 2022 NFL season and, if he is still able to play in the NFL at that time, his options for signing a contract when he becomes an unrestricted free agent will be limited due to his age.

28. Players with non-guaranteed contracts are easy to release for NFL teams, and they typically do so if players are injured, their performance declines, or if the team finds a less expensive alternative.  The Broncos already released the Debtor once in November 2018, before they decided to re-sign him to their practice squad from which he had to earn his way back onto the active roster.  While on the practice squad, a player earns substantially less than when he is on the active roster.

**E.  Galapago Street Property**

29. The Motion asserts that post-petition the Debtor purchased residential real property located at 90 North Galapago Street, Unit 11, Denver, Colorado 80223.  Clearly, Ritchie discovered that someone with the same name as the Debtor purchased this property and, without any further evidence, asserts that it was the Debtor.  Such allegation is false.  The Debtor has not purchased any real property post-petition.

**F.  CB45, LLC**

30. CB45, LLC is a limited liability company formed by the Debtor to sell merchandise with the Debtor's jersey number.  At this point CB45, LLC generates minimal income for the Debtor.

## III.   ARGUMENT

31. No grounds exist to convert the Debtor's bankruptcy case to a case under Chapter 11 of the Bankruptcy Code pursuant to 11 U.S.C. § 706(b) or, alternatively, to dismiss the Debtor's bankruptcy case pursuant to 11 U.S.C. § 707(b).

**A.  Conversion to Chapter 11 under 11 U.S.C. § 706(b)**

32. Section 706(b) of the Bankruptcy Code provides that a case may be converted from Chapter 7 of the Bankruptcy Code to Chapter 11 of the Bankruptcy Code, but does not list any standards for when such a conversion should occur.  11 U.S.C. § 706(b); *In re Smith*, 544 B.R. 126, 131 (Bankr. W.D. Tex. 2016); *Proudfoot Consulting Co. v. Gordon (In re Gordon)*, 465 B.R. 683, 692 (Bankr. N.D. Ga. 2102).  Instead, the decision to convert a case under section 706(b) is up to the discretion of the Court.  *Gordon*, 465 B.R. at 692.

33. In determining whether to convert a case, Courts have examined a number of factors, including whether conversion inures to the benefit of all parties, including the Debtor, and the Debtor's ability to pay and fund a plan of reorganization.  *See Smith*, 544 B.R. at 131; *In re Baker*, 503 B.R. 751, 757 (Bankr. M.D. Fla. 2013).

**i.  Conversion of this case to Chapter 11 does not inure to the benefit of all parties.**

34. Conversion of the Debtor's case to a case under Chapter 11 does not provide any benefit to the Debtor.  Rather, it would be extremely detrimental.

35. When courts have analyzed whether to convert a case, they have broadly examined whether the conversion is in the best interests of all parties including the debtor, creditors, and other parties in interest.  *See Smith*, 544 B.R. at 131 ("not an inquiry solely into the best interest of the creditors or even the best interest of the estate, but rather a broader inquiry into what will collectively benefit the debtor, the creditors and any other parties with a stake in the case"); *Gordon*, 465 B.R. at 693-94 ("The Courts analyzing conversion under Section 706(b) typically have no trouble finding conversion is in the best interest of creditors.  The more difficult question is whether conversion is in the best interest of the Debtor.").

36. Ritchie's sole argument in the Motion as to why conversion will benefit the Debtor is that the Debtor will be able to retain the real property that Ritchie asserts the Debtor purchased after the Petition Date.  This argument fails since the Debtor did not purchase any such property.  In fact, the Debtor would not receive any benefit from the case being converted to Chapter 11, and would be enormously harmed by a conversion.

37. In determining whether to convert a Chapter 7 case to Chapter 11 where conversion

6

may increase the amount of the estate, but did not provide a benefit to the Debtor, the Court in *In re Lobera* held:

> [C]onversion to Chapter 11 would not further the interests of the Debtor or those that depend on him for support. The obviously apparent reasons for the existence of a bankruptcy law available to individuals is to discharge debt and provide a fresh start. If the Court were to order conversion of this case to Chapter 11, the Debtor would be unable to automatically reconvert it to Chapter 7. *See* Section 1112(a)(3) … Instead, he would be trapped in a Chapter 11 proceeding that he does not need and does not want. There is no business to reorganize. This is not the fresh start tha[t] Congress envisioned. Balancing this consideration against the increased estate, the Court finds the case should not be converted to Chapter 11.

454 B.R. 824, 854-55 (Bankr. D. N.M. 2011) (footnote omitted).

38. If his case is converted to Chapter 11, the Debtor would incur significant additional fees and costs and his fresh start would be delayed. The Criminal Case has already seriously damaged his life and career, and converting his case to Chapter 11 would continue the harm. Given that the Debtor only has a limited amount of time to play in the NFL, even if he is successful and remains injury-free, conversion to Chapter 11 would result in the Debtor having to pay his disposable income into a plan for the remainder of his career and would leave him with limited funds to live on after his NFL career ends.

39. Additionally, since a conversion to Chapter 11 would be done involuntarily and without the consent of the Debtor, "there are potential constitutional problems with compelling an individual Chapter 7 debtor to convert to Chapter 11" due to the constitutional right against involuntary servitude set forth in the thirteenth amendment. *In re Snyder*, 509 B.R. 945, 955 (Bankr. D. N.M. 2014). This constitutional issue is likely to "constitute grounds to convert or dismiss Debtor's Chapter 11 case if Movants § 706(b) conversion motion were granted." *Id.*

40. Conversion of this case to Chapter 11 does not inure to the benefit of all parties in interest, since the only party in interest who may possibly receive a benefit from conversion is Ritchie.

**ii.  The Motion overstates the Debtor's ability to pay in a Chapter 11 case.**

41. In the Motion, Ritchie alleges that the Debtor would be able to make distributions to unsecured creditors in the amount of between $470,271.08 and $554,511.08 over the course of a

five-year plan if the case is converted to Chapter 11.[2]  These calculations are purely speculative, and if anything, overestimate the amount of distributions that would occur in a Chapter 11.  The calculations assume that the Debtor will play in the NFL throughout the five-year plan period, which is unlikely.  It is more likely that the Debtor will no longer be employed in the NFL by the end of his plan term.

42.  The average NFL career is only around two and a half to four and a half years; the average age of an NFL player is approximately 26 years old; and the position the Debtor plays, linebacker, has one of the highest rates of concussions for any position.[3]   Additionally, very few NFL players remain in the NFL beyond the age of 30.[4]  As an example, on the opening weekend of the 2017 NFL season, out of the 53 players on a team's active roster an average of only 7.47 players were age 30 or older and each year the number of players 30 years or older in the NFL is decreasing.[5]

43.  Given these numbers and the Debtor's age, it is unlikely that the Debtor's NFL career will continue through the entire five-year term of a plan.

44.  The calculations used in the Motion also fail to consider the likelihood that the Debtor's expenses will increase over the next five years.  The Debtor can be traded or released from the Broncos at any time and have to move to a city with a higher cost of living without receiving an increase in salary.  Further, the Debtor will be in the age range at which many people begin to start a family.  In fact, only a week ago the Debtor had his first child. The Debtor's infant daughter and any additional children will certainly increase his expenses in the near term and well beyond the life of his NFL career.

45.  Another variable not factored in the calculations in the Motion is how the Covid-19 pandemic will affect players' salaries over the next few seasons.  It is highly likely that NFL

---

2. If this case remains in Chapter 7, the Debtor anticipates paying approximately $90,000 in nonexempt property to the Chapter 7 Trustee.

3. *See* https://www.statista.com/statistics/240102/average-player-career-length-in-the-national-football-league/; https://www.wsj.com/articles/the-shrinking-shelf-life-of-nfl-players-1456694959; https://www.espn.com/esports/story/_/id/20733853/the-average-age-esports-versus-nfl-nba-mlb-nhl; https://www.chicagotribune.com/sports/bears/ct-spt-bears-nfl-players-shelf-life-20180830-story html; https://www.usatoday.com/story/sports/nfl/2017/11/09/cornerbacks-suffer-most-concussions-according-nfl-report/849749001/

4. *See* https://www.chicagotribune.com/sports/bears/ct-spt-bears-nfl-players-shelf-life-20180830-story.html ("There are exceptions, but most players will have a tough time sticking around the league beyond age 30."); https://socalledfantasyexperts.com/aging-curve-nfl-defensive-players-dl-lb-db/

5. *See* https://www.chicagotribune.com/sports/bears/ct-spt-bears-nfl-players-shelf-life-20180830-story.html; https://fivethirtyeight.com/features/the-nfl-is-no-league-for-old-men/.

games this season, if a full season is even played, and possibly in future seasons will be played without fans or with a limited number of fans.  This will impact the NFL's overall revenue and the league may require players to take pay cuts as a result.[6]  Other sports leagues around the world have seen players take pay cuts ranging from 25% to 70%.  Even if players' salaries are not reduced for the upcoming season, any reductions in the league's revenue will lower the NFL's future salary caps and affect the amount teams can pay players in future contracts.  A veteran player whose contract is not guaranteed, such as the Debtor, will be even more vulnerable to being released if teams seek to cut salary costs to cover for any decreases in revenues, since those players can be released at no additional cost to the team.

46. Given the uncertainty about the Debtor's future income and expenses and the additional fees and costs the Debtor would incur in a Chapter 11 case, the Ritchie Motion's position on the Debtor's ability to pay creditors through a plan appears overstated and certainly speculative.

**B.  Dismissal under 11 U.S.C. § 707(b)**

47. As a threshold issue explained above, dismissal pursuant to section 707(b) should be denied as Ritchie's Motion to Convert or Dismiss was not timely filed.  Aside from Ritchie's late filing, in order for section 707(b) of the Bankruptcy Code to apply, more than half of the amount of the claims against the Debtor must be consumer debts.  11 U.S.C. §707(b)(1).

48. In this case, the total amount of all claims asserted against the Debtor's estate is $1,219,008.04.  Since Ritchie asserts that its claim for fees and expenses owed pursuant to the 2014 Representation Agreement is $727,618.81, that claim alone represents more than half of the total claims asserted against the Debtor's estate.  As such, if the claim for fees and expenses owed pursuant to the 2014 Representation Agreement is a non-consumer debt, section 707(b) will not apply to the Debtor's case.

49. A "consumer debt" is defined by the Bankruptcy Code as a "debt incurred by an individual primarily for a personal, family, or household purpose."  11 U.S.C. §101(8).

**i.    Ritchie's claim for fees and expenses owed pursuant to the 2014 Representation Agreement is a non-consumer debt.**

50. Courts have held that the term "consumer debt" should be narrowly construed.  *See In*

---

6. https://www.cbssports.com/nfl/news/nfl-reportedly-considering-asking-players-to-take-salary-cuts-if-revenue-drops-due-to-coronavirus/.

*re White*, 49 B.R. 869, 872 (W.D. N.C. 1985); *In re Costantino*, 72 B.R. 189, 192 (Bankr. D. S.C. 1986); *In re Sijan*, 611 B.R. 850, 855 (Bankr. S.D. Ohio 2020).

51. Courts have held that a debt incurred with a profit motive is a non-consumer debt, but that a lack of a profit motive does not conclusively make a debt a consumer debt.  *In re Garcia*, 606 B.R. 98, 106 (Bankr, D. N.M. 2019).  In order for a debt to be a consumer debt, the debt must be voluntarily incurred.  *In re Marshalek*, 158 B.R. 704, 707 (Bankr. N.D. Ohio 1993).  Certain involuntary debts, such as taxes and tort judgments, are deemed to be non-consumer debts. *See White*, 49 B.R. at 872-73; *In re Peterson*, 524 B.R. 808, 813 (Bankr. S.D. Ind. 2015); *IRS v. Westberry (In re Westberry)*, 215 F.3d 589 (6th Cir. 2000).  Similarly, courts have found emergency medical debts to be non-consumer.  *Sijan*, 611 B.R. at 856-57.  Other courts have held that in order for a debt to be a consumer debt, the debt must be "incurred for the consumption of the necessities or luxuries of daily existence."  *Garcia*, 606 B.R. at 105-06 (citing *In re Manning*, 126 B.R. 984 (M.D. Tenn. 1991).

52. The Debtor was forced to incur the debt due to the false Accusations being made against him that gave rise to the Criminal Case.  Similar to a debtor who agrees to have an emergency life saving medical procedure, the Debtor entered into the 2014 Representation Agreement voluntarily, but the debt owed to Ritchie resulted involuntarily because of the Accusations and "is not the type of debt that a debtor would expect to incur in his daily affairs." *Sijan*, 611 B.R. at 856.

53. The fact that a debt is not a business debt does not make it a consumer debt. *Peterson*, 524 B.R. at 812-13.  A debt that is incurred personally must still meet the definition of a consumer debt.  *Id*. at 812.  Just because a debt has some kind of personal, family, or household purpose does not make it a consumer debt.  *Sijan*, 611 B.R. at 856-57.

54. In this case, the Debtor had a clear profit motive in retaining Ritchie (the firm recommended to him by the person he most trusted, his football coach), since he was unable to pursue his career until the Criminal Case was resolved successfully, and was faced with losing his career entirely.  His profit motive was simply the ability to earn a living as a professional athlete, something he had worked towards for much of his life.

55. Additionally, the amount of Ritchie's claim far exceeded the amount the Debtor would have expected to pay for such services when he entered into the 2014 Representation Agreement.  The actual amount that Ritchie charged the Debtor was nearly fifty-five times the

10

amount that it was originally estimated to cost per the 2014 Representation Agreement. Ritchie never clearly explained to the Debtor how much his representation would truly cost and never demanded an adequate retainer for the amount of fees and expenses that were incurred.

56. As such, the high amount of Ritchie's claim was a shock to the Debtor and was not voluntarily incurred.

57. Based on the foregoing, the Motion should be denied.

WHEREFORE the Defendant respectfully requests that the Court make and enter an Order denying the Motion, and granting such further and additional relief as to the Court may appear proper.

Dated: June 8, 2020                              Respectfully submitted,


                                      By:/s/ Jeffrey S. Brinen
                                          Jeffrey S. Brinen, #39276
                                          **KUTNER BRINEN, P.C.**
                                          1660 Lincoln Street, Suite 1850
                                          Denver, CO  80264
                                          Telephone:  (303) 832-2400
                                          Fax: (303) 832-1510
                                          Email: jsb@kutnerlaw.com

## CERTIFICATE OF SERVICE

I certify that on June 8, 2020, I served a complete copy of \the foregoing **OBJECTION TO MOTION OF LAW OFFICES OF RITCHIE, DILLARD, DAVIES & JOHNSON, P.C. TO CONVERT CHAPTER 7 BANKRUPTCY CASE TO CASE UNDER CHAPTER 11 OF THE BANKRUPTCY CODE PURSUANT TO 11 U.S.C. SECTION 706(b) OR, IN THE ALTERNATIVE, DISMISS BANKRUPTCY CASE PURSUANT TO 11 U.S.C. SECTION 707(b)** on the following parties in compliance with the Federal Rules of Bankruptcy Procedure and the Court's Local Rules:


Paul Moss, Esq.
US Trustee's Office
1961 Stout Street
Suite 12-200
Denver, CO 80294

M. Stephen Peters, Esq.
Chapter 7 Trustee
Box 4610
Frisco, CO 80443

Joshua Sheade, Esq.
1159 Delaware Street
Denver, CO 80204

Abbey Dreher, Esq.
4004 Belt Line Road
Suite 100
Addison, TX 75001

Aaron J. Conrardy, Esq.
Lindsay Riley, Esq.
Wadsworth Garber Warner Conrardy, P.C.
2580 West Main Street, Suite 200
Littleton, CO 80120


**/s/Vicky Martina**
**Vicky Martina**
**Kutner Brinen PC**

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| IN RE: | |
| | Case No. 19-19816 EEB |
| ALEXANDER JOHNSON, | |
| | Chapter 7 |
| Debtor. | |

---

### CERTIFICATE OF CONTESTED MATTER AND REQUEST FOR HEARING

---

On April 20, 2020, THE LAW OFFICES OF RITCHIE, DILLARD, DAVIES & JOHNSON, P.C. ("**Movants**"), through undersigned counsel, filed the *Motion of Law Offices of Ritchie, Dillard, Davies & Johnson, P.C. to Convert Chapter 7 Bankruptcy Case to Case Under Chapter 11 of the Bankruptcy Code Pursuant to 11 U.S.C. § 706(b)* [("**Conversion Motion**")] *or, in the Alternative, Dismiss Bankruptcy Case Pursuant to 11 U.S.C. § 707(b)* ("**Dismissal Motion**") as sealed documents at Docket Nos. 68 and 69, and filed the Motion as unsealed and redacted on May 1, 2020 at Docket Nos. 74 and 75, pursuant to L.B.R. 2002-1 or 9013-1. The Movants hereby certify, to the United States Bankruptcy Court for the District of Colorado ("**Court**"), that the following is true and correct:

1. The Movants timely served the Conversion Motion, Dismissal Motion (hereinafter, collectively "***Motions***"), *Notice Pursuant to Fed.R.Bankr.P. 1017, 2002, 9006(d), 9013 and L.B.R. 9013-1 of [the Motions]* [Dkt. No. 76 ("**Notice**")], *[Proposed] Order Granting Motion to Convert Chapter 7 Bankruptcy Case to Case Under Chapter 11 of the Bankruptcy Code Pursuant to 11 U.S.C. § 706(b)* [Dkt. No. 74-2 ("***Proposed Conversion Order***"), and *[Proposed] Order Dismissing Bankruptcy Case Pursuant to 11 U.S.C. § 707(b)* [Dkt. No. 75-2 ("***Proposed Dismiss Order***")] upon all parties against whom relief is sought and those otherwise entitled to service, pursuant to the FED.R.BANKR.P. and these L.B.R., as shown on the *L.B.R. 9013-1 Certificate of Service of Motion, Notice, and Proposed Order* ("**Certificate of Service**") – in substantial compliance with L.B.F. 9013-1.2 – filed contemporaneously with the Motions and Notice on May 1, 2020. Dkt. No. 77.

2. In accordance with the *Order for Compliance with Local Bankruptcy Rule 9013-1 or Other Applicable Rules of Procedure Regarding Service and Notice* [Dkt No. 79], the Movants timely filed and served the *Amended Notice Pursuant to FED.R.BANKR.P. 1017, 2002, 9006(d), 9013 and L.B.R. 9013-1 of [the Motions]* [Dkt. No. 82 ("**Amended Notice**")] upon all parties against whom relief is sought and those otherwise entitled to service, pursuant to the FED.R.BANKR.P. and these L.B.R., as shown on the Certificate of Service filed contemporaneously with the Amended Notice on May 11, 2020. Dkt. No. 82.

3. M. Stephen Peters, the duly appointed Chapter 7 trustee ("**Trustee**") for the bankruptcy estate of Alexander Johnson ("**Debtor**") filed the *Trustee's Objection to [the Motions]* on June 8, 2020 at Docket No. 89 ("**Trustee's Objection**").

4.     On June 8, 2020, the Debtor filed an *Objection to [the Motions]* at Docket No. 90 ("***Debtor's Objection***").

5.     The docket numbers for the relevant pleadings and/or documents are, as follows:

    a.     The Conversion Motion and all documents attached thereto and served therewith, filed as a sealed document on or about April 20, 2020 at Docket No. 68 and as redacted on or about May 1, 2020 at Docket No. 74;

    b.     The Proposed Conversion Order filed on May 1, 2020 at Docket No. 74-2;

    c.     The Dismissal Motion and all documents attached thereto and served therewith, filed as a sealed document on or about April 20, 2020 at Docket No. 69 and as redacted on or about May 1, 2020 at Docket No. 75;

    d.     The Proposed Dismissal Order filed on May 1, 2020 at Docket No. 75-2;

    e.     The Amended Notice filed on May 11, 2020 at Docket No. 82;

    f.     The Trustee's Objection filed on June 8, 2020 at Docket No. 89; and

    g.     The Debtor's Objection filed on June 8, 2020 at Docket No. 90.

6.     Prior to filing this Certificate, the Movant and the Debtor met, conferred and made a good faith effort to resolve this matter without the necessity of a hearing by and through telephonic and electronic means, otherwise protected by FED.R.EVID. 408.

7.     The Trustee opines that resolution of this contested matter may benefit from a preliminary hearing to resolve disputed legal issues arising under the Dismissal Motion, which the Movant and Debtor believe may require an evidentiary hearing, as follows:

    a.     Whether the Dismissal Motion was timely filed; and

    b.     Whether the Debtor incurred a consumer or non-consumer debt to the Movant.

8.     Resolution of this contested matter will also require an evidentiary hearing on, at a minimum, the Conversion Motion. The Movant and the Debtor foresee and estimate the hearing to proceed as follows:

    a.     <u>Summary of Factual Issues to be Tried</u>: Pursuant to the Motion, the Trustee's Objection and the Debtor's Objection, the factual issues remaining for trial include, but are not limited to, as follows:

        i.     Whether conversion of the Debtor's case from Chapter 7 to Chapter 11 inures to the benefit of all parties, including the Debtor;

        ii.     Whether the Debtor's future income is tangible;

    b.     <u>Estimate of Time Required for Hearing</u>: no less than two (2)-days and no greater than three (3)-days;

    c.     <u>Number of Witnesses Anticipated</u>: Three (3) to four (4) witnesses;

d.    <u>Expert Witness Testimony Requirements</u>: Two (2) expert witnesses – Debtor and Movant each retaining 1 expert – to prove whether a professional athlete's future income is a tangible amount.

e.    <u>Necessary Discovery and, the Nature of, and Time Required for Discovery</u>: The Movant seeks to conduct discovery including, but not limited to, propounding written discovery requests upon and taking the deposition of the Debtor, disclosure of written reports prepared and signed by retained experts, delivering subpoenas upon third-parties knowledgeable of the Debtor's financial affairs and employment status as of both November 13, 2019 ("***Petition Date***") and the date hereof. Therefore, the Movant requests, as follows:

    i.    Fed.R.Bankr.P. 7026 through 7037 apply to this contested matter;

    ii.    The Movant, Debtor and Trustee (hereinafter, collectively "***Participants***") prepare and file a joint report under FED.R.CIV.P. 26(f), and

    iii.    The Court issue a scheduling order, pursuant to FED.R.CIV.P. 16(b), upon receiving the Participants' joint report.

WHEREFORE, the Law Offices of Ritchie, Dillard, Davies & Johnson, P.C. respectfully requests that this Court enter an Order setting this contested matter for a hearing, pursuant to L.B.R. 9013-1(d), and grant such other and further relief as this Court deems appropriate and just.

DATED this 13th of August, 2020.

Respectfully submitted,
BERKEN CLOYES, P.C

Joshua B. Sheade, Atty. Reg. No. 46993
1159 Delaware Street
Denver, Colorado 80204
Tel: (303) 623-4357
Fax: (720) 554-7853
Email: joshua@berkencloyes.com
*Attorneys for the Movant*

3

## CERTIFICATE OF SERVICE

The undersigned certifies that on August 13, 2020, I served by the Case Management/Electronic Case Filing ("*CM/ECF*") system, pre-paid first-class mail and/or other acceptable means (i.e. hand delivery or electronic mail), a copy of the foregoing **CERTIFICATE OF CONTESTED MATTER AND REQUEST FOR HEARING** on all parties against whom relief is sought and those otherwise entitled to service pursuant to the FED.R.BANKR.P., and these L.B.R., at the following addresses:

**Via CM/ECF:**

M. Stephen Peters, Esq.
CHAPTER 7 TRUSTEE
P.O. Box 4610
Frisco, Colorado 80443

Aaron J. Conrardy, Esq.
Lindsay Riley, Esq.
WADSWORTH GARBER WARNER CONRARDY, P.C.
2580 West Main Street, Suite 200
Littleton, Colorado 80120

Abbey Dreher, Esq.
BARRETT FRAPPIER & WEISSERMAN, LLP
4004 Belt Lane Road, Suite 100
Addison, Texas 75001

Jeffrey S. Brinen, Esq.
KUTNER BRINEN, P.C.
1660 Lincoln Street, Suite 1850
Denver, Colorado 80264

Paul Moss, Esq.
OFFICE FOR THE UNITED STATES TRUSTEE
Byron G. Rogers Federal Building
1961 Stout Street, Suite 12-200
Denver, Colorado 80294

By: _____

Joshua B. Sheade, Esq.
For BERKEN CLOYES, P.C.

### UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF COLORADO

### _Minute Order_

---

Date:  September 1, 2020    **Honorable Elizabeth E. Brown, Presiding**
Ruth S. Mares, Law Clerk

---

In re:   Alexander Johnson,    Case. No. 19-19816 EEB
Chapter 7

         Debtor.

---

| Counsel | Appearances | | Representing | |
|---------|-------------|---|--------------|---|
| Counsel | Lindsay Riley* | | Trustee | M. Stephen Peters, chapter 7 trustee* |
| Counsel | Jeffrey Brinen* | | Debtor | |
| Counsel | Joshua Sheade* | | Creditor | Ritchie, Dillard, Davies & Johnson, P.C. |
| Counsel | | | Creditor | |
| Counsel | | | Creditor | |
| Counsel | | | Creditor | |

*telephone appearance

Proceedings:  Non-Evidentiary Hearing on Motion to Convert Chapter 7 Bankruptcy Case to Case Under Chapter 11 of the Bankruptcy Code Pursuant to 11 U.S.C. § 706(b) or, in the Alternative, Dismiss Bankruptcy Case Pursuant to 11 U.S.C. § 707(b) filed by Ritchie, Dillard, Davies & Johnson, P.C. and the Objections thereto filed by the Debtor and the Chapter 7 Trustee, M. Stephen Peters☐ Witnesses Sworn     ☐ See Attached List          ☐ Exhibits Entered

☒ Evidentiary Hearing[1]

☐

Orders:

☒ **On or before October 9, 2020**, the parties may file additional briefs on any legal issues related to § 706(b) or § 707(b).

☒ The Court will hold a one-half day evidentiary hearing on the Motion on **Monday, October 26, 2020 at 9:30 a.m.**, in Courtroom F, United States Bankruptcy Court for the District of Colorado.  The evidentiary hearing will be conducted by Zoom video conference.  The Court will issue a separate order regarding procedures for the Zoom video conference and test conference.

1.  **On or before October 13, 2020,** the parties shall:

    a.  Exchange pre-marked exhibits with one another. Defendant shall send the exhibits in care of Plaintiff's case manager.  Plaintiff/Movant shall use numbers.  Defendant/Respondent shall use letters.  For every exhibit exceeding ten (10) pages in length, the party shall sequentially number each page of that exhibit at the bottom of the page.  _Do not file the exhibits with the Court_, except as provided in paragraph 2(a)(i) below.

---

[1] This hearing is considered evidentiary for statistical purposes.

    b.  File with the Court and serve on opposing party(parties) a List of Witnesses and Exhibits, substantially in the form of L.B.F. 9070-1.1.

2.  **On or before October 19, 2020,** the parties shall:

    a.  File with the Court and serve on opposing party(parties) any written objections to the opposing party's exhibits.

        (i)    If written objections are filed, the objector must attach a copy of the contested exhibit for the Court's review, unless the nature of the objection involves the fact that the party proffering the exhibit has failed to adequately identify and/or exchange it.

        (ii)    If written objections are not filed, then all objections except as to relevancy will be deemed waived.

        (iii)    The parties should be aware, however, that if the party offering the exhibit never refers to the exhibit either during testimony or in closing argument, then in the Court's discretion, it may not review or consider the exhibit, despite its admission into evidence.

3.  **After the hearing,** the parties shall retain custody of their own exhibits in accordance with Local Bankruptcy Rule 9070-1(a)(3).

☒ Parties may conduct discovery in this contested matter pursuant to L.B.R. 7026-2.

---

Date: September 1, 2020.

BY THE COURT:

_____
Elizabeth E. Brown, U.S. Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| IN RE:<br><br>ALEXANDER JOHNSON,<br><br>                   Debtor. | Case No. 19-19816 EEB<br><br>Chapter 7 |

### RITCHIE, DILLARD, DAVIES & JOHNSON, P.C.'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO CONVERT PURSUANT TO 11 U.S.C. § 706(b) OR, IN THE ALTERNATIVE, DISMISS PURSUANT TO 11 U.S.C. § 707(b)

RITCHIE, DILLARD, DAVIES & JOHNSON, P.C. ("***Creditor***"), through undersigned counsel, hereby respectfully submits to the United States Bankruptcy Court for the District of Colorado ("***Bankruptcy Court***") this Supplemental Brief ("***Brief***") in support of *Motion to Convert Chapter 7 Bankruptcy Case to Case Under Chapter 11 Of the Bankruptcy Code Pursuant to 11 U.S.C § 706(b) or, in the Alternative, Dismiss Bankruptcy Case Pursuant to 11 U.S.C. § 707(b)* [Dkt. Nos. 68-69. 74-75 ("***Motion***")],[1] and in support thereof, states as follows:

### I.    FACTUAL BACKGROUND

1.  Alexander J. Johnson ("***Debtor***") filed a voluntary petition for bankruptcy relief ("***Petition***") under Chapter 7 of Title 11 of the United States Code ("***Bankruptcy Code***") within this Bankruptcy Court on November 13, 2019 ("***Petition Date***"). *See* Dkt. No. 1. M. Stephen Peters is the duly appointed Chapter 7 Trustee ("***Trustee***") of the Debtor's bankruptcy estate. Dkt. No. 4.

2.  Pursuant to the Petition, the Debtor asserts having incurred primarily business debts, which exempts him from the presumption of abuse analysis under the *Chapter 7 Statement of Your Current Monthly Income*. Dkt. No. 1 at p.6 (Line 16); *see also* Dkt. No. 20.

3.  The Debtor is employed by the Denver Broncos as a professional football player, for which he earns a "monthly take-home pay" of $14,607, a year-to-date 2020 annual income – as of the Petition Date – of $283,916.00, and a "monthly net income" of $3,894.00. Dkt. No. 16 at p.2 (Line 7); Dkt. No. 17 at p.2 (Line 23c); Dkt. No. 9 at p.1 (Line 4); *but cf.* Dkt. No. 31 at p.1 (gross annual income of $352,754.32).

4.  In addition to his monthly income, the Debtor discloses such assets to include, without limitation, as follows: (a) fifty percent (50%) in real property known by street and number as 9100 Rocky Creek Road, Lower Lake, California 95457 ("***California Property***"), purchased on or about October 8, 2019, for which he "received reimbursement from investment partner within 30 days of initial payment;" (b) 2007 Chevy Tahoe; (c) 2018 Chevy Tahoe; (d) cash funds in the amount of $27,000.00; (e) Eastman Credit Union

---

[1]    Unless otherwise stated, "Dkt. No. _____" refers to the docket in the above-captioned Chapter 7 bankruptcy case; styled as, *In re Johnson*, Case No. 19-19816 EEB ("***Bankruptcy Case***").

checking account to maintain the sum of $17,031.00; (f) Eastman Credit Union savings account to maintain the sum of $2,025.00; and (g) UBS Financial Services, Inc. investment account to maintain the sum of $57,168.00. Dkt. No. 25 at pp.1-2, 4; Dkt. No. 9 at p.5.

5.    Upon taking into consideration the allowed exemptions pursuant to 11 U.S.C. § 522 and security interests, the Debtor projects the bankruptcy estate to maintains an approximate value of $124,853.50. *See* Dkt. No. 25; *cf*. Dkt. No. 55.

6.    The Creditor filed Proof of Claim 2-1 ("*Claim*") for the amount of $902,908.82 ("*Claim Amount*") on February 18, 2020, which stems from legal services rendered within three (3) legal matters. In addition to such Claim, the Debtor incurred a debt in the amount of $52,003.00 to Eastman Credit Union secured against the 2018 Chevy Tahoe, a debt of $238,441.00 to Stearns Lending, LLC secured against the California Property and an unsecured debt in the amount of $19,778.00 to Eastman Credit Union. *See* Dkt. No. 13.

7.    On September 1, 2020, the Bankruptcy Court presided over a non-evidentiary hearing on the Motion and objections thereto raised by the Debtor and Trustee on June 8, 2020 [Dkt. Nos. 89-90 (hereinafter, collectively "*Objections*")]; and, at the conclusion thereof, invited "the parties [to] file additional briefs on any legal issues related to § 706(b) or § 707(b)." Dkt. No. 95 at p.1. Pursuant to the *Order Granting Motion to Continue Evidentiary Hearing and Extend Pre-Hearing Deadlines*, granted on September 23, 2020, the Bankruptcy Court extended such briefing deadline up to and through November 24, 2020 ("*Briefing Deadline*"). Dkt. No. 102 at p.1.

## II.   <u>LEGAL ARGUMENT</u>

8.    An analysis of any section of the Bankruptcy Code begins with the language of the statute and, "as long as the statutory scheme is coherent and consistent, there generally is no need for a court to inquire beyond the plain language of the statute." *United States v. Ron Pair Enters.*, 489 U.S. 235, 240-41 (1989); *see also Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992)("must presume that a legislature says in a statute what it means and means in a statute what it say there").

9.    Pursuant to the plain language of 11 U.S.C. § 706, four (4) factors limits conversion of a Chapter 7 bankruptcy case to a case under Chapter 11 of the Bankruptcy Code, as follows: (i) applies to a case under Chapter 7; (ii) a "party in interest" must request conversion; (iii) "notice and a hearing" are required prior to conversion; and (iv) the Debtor must be eligible to reorganize under Chapter 11 of the Bankruptcy Code. 11 U.S.C. §§ 706(b), (d).

10.   Although the legislative history provides that "whether to convert is…based on what will most inure to the benefit of all parties in interest," Congress neither expressed whose interests must be balanced as "parties in interest" nor discussed the weight afforded to the interests of the Debtor and his creditors. H.R. Rep. No. 95-595, 95th Cong., 1st Sess. at 380 (1977). Regardless, "it is the statute, and not the Committee Report, which is the authoritative expression of the law, and the statute prominently *omits* reference to [the legislative history]" *City of Chicago v. Environmental Def. Fund*, 511 U.S. 328, 337, 114 S.Ct. 1588, 128 L.Ed. 2d 302 (1994).

2

11.   Furthermore, Congress passed the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("**BAPCPA**"), P.L. 109-8, 119 Stat. 23 (2005) with the intention "to correct perceived abuses of the bankruptcy system." *Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 232, 130 S.Ct. 1324, 176 L.Ed.2d 79 (2010); *see also* H.R. Rep. No. 109-31, 109th Cong., 1st Sess. at 2 (2005), *reprinted in* 2005 U.S.C.C.A.N. 89 ("restoring personal responsibility and integrity in the bankruptcy system and ensure that the system is fair for both debtors and creditors"). The legislative history for BAPCPA discusses four (4) reasons for reforming the Bankruptcy Code, as follows: (a) increase of consumer bankruptcy filings; (b) significant losses creditors "passed on to responsible Americans who live up to their financial obligations;" (c) pre-BAPCPA "loopholes and incentives…that allows…opportunistic personal filings and abuse;" and (d) the Bankruptcy Code ha[d] no clear mandate requiring these debtors to repay their debts." H.R. Rep. No. 109-31 at 3-5.

12.   Under BAPCPA, Congress added individual Chapter 11 provisions to encourage the Debtor to repay a portion of his debts with disposable monthly income, and afforded the Debtor the power to veto conversion from Chapter 7 to a case under Chapter 12, Chapter 13 and Chapter 11 in cases of individual debtors with primarily consumer debts. 11 U.S.C. §§ 706(c), 707(b)(1); *Proudfoot Consulting Co. v. Gordon (In re Gordon)*, 465 B.R. 683, 691-92 (Bankr.N.D.Ga.2012).

13.   However, Congress did not amend section 706(b) to grant veto power to individual debtors with primarily business debt. *Russello v. United States*, 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983)("generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion"); *see also Gordon*, 465 B.R. at 692.

14.   A comparison of section 706(b) to other provisions of the Bankruptcy Code demonstrates that Congress also chose neither to subject conversion to a finding of fraud, abuse or cause nor require that the Bankruptcy Court balance the interests of parties in interest against those of the Debtor. *See e.g.* 11 U.S.C. §§ 707(b)(1), 1112(b)(1), 1307(c), 721, 305(a)(1),; *see also Dewsnup v. Timm*, 502 U.S. 410, 419, 112 S.Ct. 773, 116 L.Ed.2d 903 ("When Congress amends the bankruptcy laws, it does not write 'on a clean slate'").

15.   Therefore, the Bankruptcy Court determining only whether the Debtor is eligible to file a case under Chapter 11 of the Bankruptcy Code would be consistent with the plain language of 11 U.S.C. §§ 706(b) and (d).

16.   Alternatively, "[s]ince there are no specific grounds for conversion, a court 'should consider anything relevant that would further the goals of the Bankruptcy Code.'" *Gordon*, 465 B.R. at 692 (quoting *In re Lobera*, 454 B.R. 824, 854 (Bankr.D.N.M.2011)).

17.   The *Gordon* Court rationalized that the analysis begins "with the acknowledgment that the debtor can pay more in a Chapter 11 case than in a Chapter 7 case, which is a benefit to creditors;" and found that payments of projected disposable income would entitle creditors to a distribution of approximately forty-five percent (45%) *Id.* at 693. Therefore, the *Gordon* Court granted conversion to a case under Chapter 11 as "an appropriate remedy provided by Congress for a non-consumer debtor with an ability to pay to avoid the same

abuses of the bankruptcy system identified in the consumer area." *Id.* at 694.

18.    In addition to the factors relied on by the *Gordon* Court – most notably, ability to repay debt, whether a confirmable plan under Chapter 11 is feasible and benefit to parties in interest – *In re Hardigan*, 490 B.R. 437 (2013) presents an additional factor determining the appropriateness of conversion. The *Hardigan* Court rationalized that "[i]n *Gordon*, however, the debtor was not subject to the abuse provisions of § 707(b) as Debtor here is because that debtor did not have primarily consumer debts…[and] where both § 706 and § 707(b) may apply, the more specific provisions of § 707(b) should take precedence." *Hardigan*, 490 B.R. at 446 (citing *RadLAX Gateway Hotel v. Amalgamated Bank*, 566 U.S. 639, 132 S.Ct. 2065, 2070-71, 182 L.Ed.2d 967 (2012)).

19.    Within *Schlehuber v. Fremont Nat'l Bank, et. al (In re Schlehuber)*, 558 Fed. Appx. 715 (8th Cir.2014), the United States Court of Appeals for the Eighth Circuit affirmed the United States Bankruptcy Appeallate Panel for the Eighth Circuit based on the rational of the *Toibb* Court. *Ibid.* (citing *Toibb v. Radloff*, 501 U.S. 157, 163, 111 S.Ct. 2197, 115 L.Ed.2d 145 (1991)("Chapter 11 embodies general Bankruptcy Code policy of maximizing value of bankruptcy estate")). The Eighth Circuit Bankruptcy Appellate Panel rationalized that the debtor's interests are not controlling in whether to convert under 11 U.S.C. § 706(b) and the United States Bankruptcy Court for the District of Nebraska did not error in finding that the ability to pay was the most important consideration. *Schlehuber v. Fremont Nat'l Bank, et. al (In re Schlehuber)*, 489 B.R. 570, 576 (8th Cir. BAP 2013), *aff'd* 558 Fed. Appx. 715.

20.    Analogous to the *Hardigan* Court's reasoning, whether the debtor identified his debts as primarily consumer or primarily non-consumer debts was a relevant factor in determining the appropriateness of conversion. Therein, the *Schlehuber* Court rationalized that "[t]he [creditor] sought relief under § 706(b) because that is a provision under which a creditor may seek to convert a case without the Debtor's consent, not because the [creditor] was trying to circumvent another Bankruptcy Code provision." *Id.* at 575.

21.    Pursuant to the *Transcript of Motion Hearing Before Honorable Thomas L. Saladino United States Bankruptcy Court Chief Judge* entered on the docket of *In re Schlehuber*, Case No. 12-80151-TLS at Dkt. No. 109 (Bankr.D.Neb. Nov. 9, 2012), attached hereto as **EXHIBIT 1** and incorporated by reference herein, the United States Bankruptcy Court for the District of Nebraska found that   "the ability to pay is far and away an important factor under [§] 706(b) and ought to be looked at here as one of those situations where the debtor's income historically through is substantial – very substantial." *Id.* at p.35. Furthermore, the Honorable Chief Judge Saladino alludes to the benefit to the Debtor in converting to a case under Chapter 11 of the Bankruptcy Code, as follows:

> [T]here is no constitutional right to a discharge. If debtor wants a discharge, debtor needs to follow the bankruptcy rule. Debtor chose to file bankruptcy. Nobody forced the debtor into Chapter 7. When the debtor chose Chapter 7, 706(b) was there. Debtor knew about it or is presumed to have known about it, so nobody is forcing that provision on

> the debtor. Debtor chose it. So if debtor knew this conversion
> to Chapter 11 was a possibility and that Chapter 11 contains
> the variety of provisions including 1115, 1127, 1129, that
> may affect the debtors' future income.
>
> …If debtors' want a bankruptcy discharge, they need to
> follow the rules. They had a choice. They will have a choice
> in the Chapter 11, discharge or no discharge, Chapter 11 plan
> or dismissal…

*Id*. at p.35.

22.   Herein, the Debtor discloses a monthly disposable income of $3,894.00, which accounts for monthly payments to Eastman Credit Union and Stearns Lending, LLC. Notwithstanding any further and future reductions in expenses including, but not limited to, personal care products and entertainment costs [Dkt. No. 17 at p.2], conversion to Chapter 11 of the Bankruptcy Code under 11 U.S.C. § 706(b) would allow unsecured creditors to receive distributions in the approximate amount of $233,640.00, compared to the Chapter 7 bankruptcy estate's projected maximum value. *Cf.* ¶5 *supra*.

23.   In addition, *Schlehuber* Court rationalizes that the Debtor's ability to pay creditors more under Chapter 11 than in a case under Chapter 7 benefits the Debtor by allowing him to discharge any and all remaining balance of his unsecured debts at the conclusion of a Chapter 11 Plan of Reorganization. Therefore, the discharge arising after conclusion of a Chapter 11 Plan weighs in favor of all parties in interest, shall ensure the Debtor meets the goals of the Bankruptcy Code as intended by Congress, and stymie further and future use of the primarily non-consumer debts loophole used by parties able to repay their debts but exempt from the means test.

24.   Should the Bankruptcy Court disagree with the reasoning of the *Schlehuber* Court, the Creditor intends to offer additional evidence as proof that conversion of the Bankruptcy Case to a case under Chapter 11 of the Bankruptcy Code shall inure to the benefit of all parties in interest.

25.   Alternatively, if the Bankruptcy Court finds that the Debtor incorrectly classifies his liabilities as primarily consumer dets, the Office for the United States Trustee may be afforded additional time to substitute, join or ratify the section 707(b) argument, pursuant to FED.R.CIV.P. 17 as made applicable to this Bankruptcy Case under FED.R.BANKR.P. 7017. *In re Integrated Agri, Inc.*, 331 B.R. 419, 426-27 (Bankr.C.D.ll.2004). Furthermore, "such substitution [or joinder/ratification] shall relate back to the commencement of the case[,]…even permitted after the statute of limitations has run. *In re Dygert*, 232 B.R. 155, 158 (Bankr.D.Minn.1999)(citing 6A Wright, Miller & Kane, Federal Practice & Procedure: Civil 2d § 1555, at 413 (2d ed. 1990); *see also In re Czykoski*, 320 B.R. 385, 390 (Bankr.N.D.Ind.2005(FED.R.CIV.P. 17(a) applicable to "[e]very action, including contested matters in bankruptcy proceedings…).

### III.    CONCLUSION

Although Congress has amended Title 11 of the United States Code on numerous occasions

since 1978, the plain language of 11 U.S.C. § 706(b) remains silent as to what factors the Bankruptcy Court should consider in determining whether conversion of the Bankruptcy Case to a case under Chapter 11 of the Bankruptcy Code is appropriate. Instead of looking to the legislative intent, the Bankruptcy Court should look to the plain language of section 706(b) and not the legislative history omitted from the statute itself. As exemplified by other provisions of the Bankruptcy Code, Congress knows how to draft a stricter set of factors for allowing conversion if it so wanted but has declined to do so. Alternatively, recent case precedent provides that a can pay debtor may not use the primarily business debts presumption of abuse exception to circumvent the overarching goal of applying monthly disposable income to repay creditors. Therefore, Ritchie, Dillard, Davies & Johnson, P.C. respectfully requests that the United States Bankruptcy Court finds that the Debtor is entitled to the benefit of a discharge only after he repays some portion of his debts within a confirmable Chapter 11 Plan of Reorganization, as such requirement would equally benefit all parties in interest.

DATED this 24th of November, 2020.

Res ectfull  submitted,

BER  CLOYES P C

Joshua B. Sheade, Atty. Reg. No. 46993
1159 Delaware Street
Denver, Colorado 80204
Tel: (303) 623-4357
Fax: (720) 554-7853
Email: joshua@berkencloyes.com

*Attorneys for the LAW OFFICES OF RITCHIE, DILLARD, DAVIES & JOHNSON, P.C.*

## CERTIFICATE OF SERVICE

The undersigned certifies that on November 24, 2020, I served by the Case Management/Electronic Case Filing ("*CM/ECF*") system, pre-paid first-class mail and/or other acceptable means (i.e. electronic correspondence or hand delivery), a copy of the foregoing **RITCHIE, DILLARD, DAVIES & JOHNSON, P.C.'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO CONVERT PURSUANT TO 11 U.S.C. § 706(b) OR, IN THE ALTERNATIVE, DISMISS PURSUANT TO 11 U.S.C. § 707(b)** on all parties against whom relief is sought, and those otherwise entitled to service, pursuant to the FED.R.BANKR.P. and these L.B.R., at the following addresses:

**Via CM/ECF:**

M. Stephen Peters, Esq.
CHAPTER 7 TRUSTEE
P.O. Box 4610
Frisco, Colorado 80443

Jeffrey S. Brinen, Esq.
KUTNER BRINEN, P.C.
1660 Lincoln Street, Suite 1850
Denver, Colorado 80264

6

Aaron J. Conrardy, Esq.
Lindsay Riley, Esq.
WADSWORTH GARBER WARNER CONRARDY, P.C.
2580 West Main Street, Suite 200
Littleton, Colorado 80120

Abbey Dreher, Esq.
BARRETT FRAPPIER &WEISSERMAN, LLP
4004 Belt Lane Road, Suite 100
Addison, Texas 75001

Paul Moss, Esq.
OFFICE FOR THE UNITED STATES TRUSTEE
Byron G. Rogers Federal Building
1961 Stout Street, Suite 12-200
Denver, Colorado 80294

By: _____

Joshua B. Sheade, Esq.
For BERKEN CLOYES, P.C.

<div style="border: solid">
EXHIBIT
1
</div>

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEBRASKA


IN RE:                    .      Case No. BK12-80151 (TLS)
                          .
JAMES AND STEPHANIE       .
SCHLEHUBER,               .
                          .      111 South 18th Plaza
                          .      Suite 1125
                          .      Omaha, NE 68102
          Debtors.        .
                          .      October 22, 2012
. . . . . . . . . . . . ..        9:04 a.m.

                TRANSCRIPT OF MOTION HEARING
          BEFORE HONORABLE THOMAS L. SALADINO
    UNITED STATES BANKRUPTCY COURT CHIEF JUDGE



APPEARANCES:

For the U.S. Trustee,     Office of the U.S. Trustee
Patricia Fahey:           By:  JERRY L. JENSEN, ESQ.
                          111 S. 18th Plaza, Suite 1148
                          Omaha, NE 68102

TELEPHONIC APPEARANCES:

For the Debtors:          Telpner, Peterson, Smith, Ruesch,
                          Thomas & Simpson, LLP
                          By:  NICOLE BENDENE HUGHES, ESQ.
                          25 Maine Place, Suite 200
                          Council Bluffs, IA 51503


Audio Operator:           Mary Moller



 Proceedings recorded by electronic sound recording, transcript
             produced by transcription service.

_____

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@jjcourt.com**

**(609)586-2311     Fax No. (609) 587-3599**

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 162 of 516
Case 4:21-cv-03281-EBS   Doc #: 10-1   Filed: 11/04/20   Entered: 11/04/20 03:09:55   Page 2 of 37
Document   Page 2 of 37

2

TELEPHONIC APPEARANCES (Cont'd):

For Fremont National Bank:     Yost, Schafersman, Lamme,
                                 Hillis, Mitchell, Schulz &
                                 Hartmann, PC
                               By:  TIMOTHY M. SCHULZ
                               Westcourt Building
                               81 West Fifth Street
                               Fremont, NE 68025


For the U.S.A.:                U.S. Department of Justice,
                                 Civil Division
                               By:  VICTOR ZHAO
                               P.O. Box 875
                               Ben Franklin Station
                               Washington, D.C. 20044


For Real Property Holdings:    Knudsen Law Firm
                               By:  TREV E. PETERSON
                               3800 VerMaas Place, Suite 200
                               Lincoln, NE 68502

                        - - -

3

```
 1              COURT CLERK:  Please rise.  The United States
 2  Bankruptcy Court for the District of Nebraska is now in
 3  session.  Chief Judge Thomas L. Saladino presiding.
 4              THE COURT:  Thank you.  Please be seated.
 5              All right.  Good morning, folks.  I expecting -- we
 6  only have one in the courtroom, so we must have some on the
 7  phone.
 8              All right.  We're here in the Chapter 7 case of James
 9  and Stephanie Schlehuber, Case Number 12-80151.  We've got a
10  motion to convert, resistences and some motions to seal.  So as
11  I understand it, we have -- well, first of all, in the
12  courtroom we have Mr. Jerry Jensen representing the United
13  States Trustee.  So -- I understand on the phone we have --
14  well, I don't know who's on the phone.  So let's start with
15  who's representing the debtors.
16              MS. HUGHES:  Nicole Hughes, Your Honor.
17              THE COURT:  Thank you.  Ms. Hughes, you will need to
18  speak up because you were difficult to hear there.
19              MS. HUGHES:  Okay.
20              THE COURT:  Do we have anybody representing the
21  trustee?
22                      (No audible response)
23              THE COURT:  We do not.  Do we have Mr. Schulz for
24  Fremont National Bank?
25              MR. SCHULZ:  Yes, Your Honor.
26              THE COURT:  All right.  Mr. Victor Zhao for the
```

4

 1  U.S.A.?

 2          MR. ZHAO:  Good morning, Your Honor.  I am present.

 3          THE COURT:  Great.  And do we have any other

 4  appearances?

 5          MR. PETERSON:  Your Honor, please enter the

 6  appearance of Trev Peterson on behalf of Real Property

 7  Holdings, a creditor and party in interest in the case.

 8          THE COURT:  Okay, thank you.

 9          All right.  Why don't we start with the motions to

10  seal so that we can address that right off the bat.  We've got

11  a motion to seal by Fremont National Bank.  What's going on

12  there?

13          MR. SCHULZ:  Your Honor, Tim Schulz speaking.  I

14  filed Filings Number 71 through 81 under seal.  Just under, I

15  guess, out of abundance of caution due to the sensitive

16  financial nature of the documents, including tax returns, other

17  personal financial information.  So I'm not quite sure it's a

18  propriety of how those are to be filed, but, again, out of

19  abundance of caution, I filed those as sealed.  I'll leave that

20  to the Court's determination if they remained sealed.

21          THE COURT:  Okay.  So I need to --

22          MR. SCHULZ:  I've had Filings 82 through 89 that were

23  filed as not sealed.

24          THE COURT:  Okay.  Well, sealed documents need to be

25  -- or documents need to be sealed only for some specific basis;

5

1  confidential or proprietary type information.  If it's things

2  like Tax ID Numbers and that sort of thing, you can simply

3  redact the document rather than seal it.  So --

4          MR. SCHULZ:  I believe I have redacted even under the

5  sealed portion standard -- sealed manner of filing, I think

6  I've already redacted.

7          MR. JENSEN:  Your Honor, I believe that's one of the

8  reasons for the sealed -- motion to seal was that on some of

9  the discovery documents that the bank had requested from the

10 debtor, the debtor got a confidentiality order or some kind of

11 agreement that they had regarding ---I think, some kind of

12 propriety information regarding how Mr. Schlehuber's pay and

13 how he's paid from Salesforce.com, but perhaps debtor's counsel

14 can provide more information on that.  But that was my

15 understanding of some of this anyway.

16         MS. HUGHES:  Your Honor, this is Nicole Hughes, and

17 if it helps the situation, I don't know which sealed document

18 it is, but the document that -- the title of it is FY13 Social

19 Enterprise Compensation Plan and Business Rules is an extremely

20 confidential document of Salesforce.com's outlining the

21 compensation plans for more than just Mr. Schlehuber, but all

22 of their employees similarly situated.  And when the bank

23 filed their motion to compel, we asked that specifically that

24 document be kept confidential and only filed under seal for

25 that reason.  I don't have any other objection to the other

6

1  documents being unsealed.

2          THE COURT:  Okay.  Have the other documents been

3  redacted?

4          MR. SCHULZ:  I believe all the other documents, Your

5  Honor, have been redacted.  The filing that has previously been

6  ordered as confidential and to be filed under sealed, I

7  believe, it's Filing Number 7 -- 77, I think that's the

8  document that Ms. Hughes was referring to.

9          THE COURT:  Okay.  Let me pull that up really quick.

10  It is -- yes, it's -- it's the Fiscal Year 13 Social Enterprise

11  Compensation Plan?

12          MR. SCHULZ:  Correct, Your Honor.

13          THE COURT:  Is that it, Ms. Hughes?

14          MS. HUGHES:  Yes, it is, Your Honor.

15          THE COURT:  Okay.  So -- and Ms. Hughes has no

16  objection to the other documents being unsealed, so we're going

17  to grant Fremont National Bank's motion to seal as to Document

18  Number 77 only, and therefore the Court will unseal -- or how

19  do we do that, does anybody know?

20          DONNA:  Judge, I --

21          THE COURT:  Do you guys do that or do we?

22          DONNA:  Judge, I do.  Courtroom can go in and unseal

23  those documents.

24          THE COURT:  Okay.

25          DONNA:  This is Donna.

1          THE COURT:  Thanks, Donna.  So the Court will unseal

2     Numbers 71 through 76, and 78 through 81, is that right, folks?

3          MR. SCHULZ:  That should be correct, Your Honor.

4          MS. HUGHES:  Yes, Your Honor.

5          THE COURT:  All right.  So, we'll do that.

6          Mr. Jensen, you've also got a motion to seal.  Has

7     that become moot?

8          MR. JENSEN:  Yes, I believe it has.  My -- I had

9     filed a motion to seal the brief that I filed yesterday in

10    support of the motion to convert because I made reference to

11    some of the documents that Mr. Schulz had filed under seal, but

12    my brief does not refer to the documents that's been seal --

13    the one document that's been sealed.  So it only refers to the

14    other documents that the Court just unsealed, so I believe that

15    the brief can be unsealed at this point.

16         THE COURT:  Okay.  And that is Filing Number 91.  So

17    91 -- so we're going to mark the U.S. Trustee's motion to seal

18    as moot due to the ruling above, therefore, Number 91 shall be

19    unsealed.  Okay.  That takes care of the motions to seal.

20         Donna, any questions on that?

21         DONNA:  No, I haven't.

22         THE COURT:  Thanks.

23         DONNA:  I'll go ahead and unrestrict those.

24         THE COURT:  Okay.  That moves us then to the motion

25    to convert by Fremont National Bank.  That would be Mr. Schulz.

8

1          MR. SCHULZ:  Yes, Your Honor.  And prior to -- are
2  you prepared for some argument at this point?
3          THE COURT:  Well, you probably want to put your
4  evidence in first.
5          MR. SCHULZ:  Well -- yes, I've got -- I guess should
6  offer Evidentiary Filings 71 through 89, inclusive of all, and
7  also --
8          THE COURT:  Now are these -- hold on a second.  I
9  need to see what these are because if you've got any affidavits
10 or things that we need to address individually, and that these
11 are just documents of various sorts --
12         MR. SCHULZ:  They are -- preliminarily perhaps, Your
13 Honor, the Affidavit of Nick Sassman (phonetic).  That's Filing
14 Number 69.  I would offer that as the affidavit and that's on
15 behalf of --
16         THE COURT:  All right.  Any objection to Filing
17 Number 69?
18         MS. HUGHES:  No, Your Honor.
19         THE COURT:  Okay.  That will be received.  And then
20 the rest are documents you're saying?
21         MR. SCHULZ:  Yes, essentially, they were all
22 documents that were provided in response to discovery requests.
23         THE COURT:  Okay.  So that's 71 through what?
24         MR. SCHULZ:  Eighty-nine.
25         THE COURT:  Through 89, any objections to any of

9

1   those?

2           MS. HUGHES:  No, Your Honor.

3           THE COURT:  All right.  Those will be received.

4   Okay.  If that's all your evidence, you can go ahead and argue,

5   Mr. Schulz.

6           MR. SCHULZ:  And, Your Honor, may I preliminarily

7   inquire whether or not the Court would grant me leave to file a

8   brief in support of my argument in light of the evidence that's

9   now been received?

10          THE COURT:  Yes, I think that'll probably be

11  appropriate.

12          MS. SCHULZ:  Okay.  That would allow me to shorten my

13  argument, I think, considerably if I'm given leave to file a

14  brief.  But, Your Honor, to summarize, the first set of

15  schedules filed by the debtors in this case indicated disposal

16  income of approximately $4600 per month of disposal income.

17          If there were a repayment plan pursuant to a Chapter

18  11 bankruptcy, that would allow for approximately $278,000 to

19  be repaid over a five-year term.  Subsequent to the filing of

20  the initial schedules of the debtors, Fremont National Bank

21  filed a motion to convert on the basis that there's a

22  substantial amount of disposal income with which can be applied

23  towards a plan and unsecured debtors like Fremont National

24  Bank.

25          Subsequent to the filing of the motion to convert,

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 170 of 516
Case 1:23-33361-EEB   Doc #:104-1 Filed 11/09/20 Entered 11/09/20 23:45:30 Page 10 of
Document 37 Page 10 of 37

10

1    the debtors then filed amended schedules and a resistance to

2    the motion to convert.  The amended schedules, there was income

3    provided of Mr. Schlehuber's substantially less than the first

4    set of schedules that were filed, and not surprisingly the

5    expenses were then increased to reflect on amended schedule

6    filed in May of a net loss to the Schlehubers on a per month

7    basis.

8           Now, part of the documents that were provided in

9    discovery, specifically Filing -- well, it is Filing Number, I

10   believe it's 78, Your Honor.  There were various pay stubs

11   provided by Mr. Schlehuber from January through June 15th of

12   this year, and as of June 15th of this year, for the calendar

13   year, Mr. Schlehuber had a gross pay of approximately $275,000

14   through less than six months of the year.

15          When the amended schedules were filed on May 4th,

16   just a few days prior, Mr. Schlehuber was issued a pay stub

17   which indicated pay through April of $78,279.  That equates to

18   nearly $19,500 per month of income to Mr. Schlehuber.  Yet, a

19   few days after that on May 3rd, he signs amended schedules

20   saying he only makes about 15,000 a month.  That flies right in

21   the face of the very documentation and pay information that he

22   provided through discovery.  He's on pace for this year to make

23   nearly a half a million dollars.

24          Mr. Schlehuber makes arguments that his quota has

25   gone up trying to imply that it will substantially reduce his

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 171 of 516
Case 12:13-bk-33861-EEB   Doc#:109-1 Filed 11/09/20 Entered 11/09/20 23:45:30 Page 11 of
Document 37   Page 11 of 37

11

1  ability to earn income.  It appears that -- and good for him,

2  he's found a great new employer that pays a substantial amount

3  of money for work well done, and apparently Mr. Schlehuber's

4  doing an excellent job at his work, to be commended for.  But

5  he's making a substantial amount of money in excess of what's

6  listed on his schedules, and it's laid out right in the

7  documents.

8          If you look at his ability to pay over time, his

9  average W-2 wages for 2009, 2010 and 2011 are about $222,500.

10  If you use even that information, subtract out what they state

11  to be their monthly expenses, which are arguments elsewhere

12  that are excessive, that still leaves about $4500 a month of

13  disposable income to be applied towards a plan.  That's about

14  $275,000.

15          So if you look at the current income statements

16  filed, to initially start this case, look at their average

17  wages over the last three years, take into account Mr.

18  Schlehuber's earnings, substantially in excess of what he's

19  listing on his schedules, there is an abundance of money that

20  can be paid.

21          Now, I don't know if it's realistic he's going to

22  make this level of income consistently over time, but if he

23  does that would equate to about a million and a half or 1.6

24  over five years at his current rate of pay that he's provided

25  through payroll information.  So I think there's substantial

Case 1:22-cv-00332-REB    Document 9-1    Filed 03/03/22    USDC Colorado    Page 172 of 516
Case 1:23-cv-01361-EBS    Doc#:104-1 Filed 11/09/20 Entered 11/09/20 23:45:30 Page 12 of
Document 37 Page 12 of 37

12

1  evidence to support that it would be appropriate and fit the

2  spirit of a bankruptcy code to make these folks be part of a

3  Chapter 11 plan and make payments towards creditors, including

4  unsecured creditors like Fremont National Bank.

5      It would allow them to pay what they can afford,

6  that's been proven by the income that's been earned over time.

7  It allows for a successful rehabilitation and a fresh start for

8  these folks.  It allows them to maintain a meaningful

9  relationship between the debtors and creditors to ensure

10  obligations of the debtors are met, and it restores personal

11  responsibility for these folks in that they clearly, I think,

12  have the ability to pay.

13      So that summarizes my argument, Your Honor.  I would

14  like to be given the opportunity to brief this to provide some

15  more detail, but I think it's very appropriate under the

16  circumstances that a conversion be directed from a Chapter 7 to

17  a Chapter 11 under the Bankruptcy Code.  Thank you, Your Honor.

18      THE COURT:  Okay.  Well, I guess your legal argument

19  for -- I mean, that was all factual.  What's your legal

20  argument for the right to convert?

21      MR. SCHULZ:  Well, I think as the facts are applied

22  to the law that it's in the best interest of all parties

23  involved, including the creditors and the debtors, to have a

24  conversion under Chapter 11.  I think, some of the basis for

25  that law is set forth in Mr. Jensen's brief, and it would be

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 173 of 516
Case 1:21-33361-EEB   Doc#:104-1   Filed:11/09/20   Entered:11/09/20 23:49:30   Page 13 of
Document 37   Page 13 of 37

13

1   addressed in my brief, as well.

2         THE COURT:  Okay.  All right.  Trying to figure out

3   who to have go next.  Mr. -- why don't we have Mr. Jensen since

4   you're also seeking to apparently join in the motion to

5   convert, is that -- or supporting it?

6         MR. JENSEN:  That's correct, Your Honor, we support

7   it.  The U.S. Trustee does support the motion to convert to 11

8   filed by -- and the Fremont National Bank.  The U.S. Trustee

9   also supports the United States' position on the constitutional

10  challenge that the debtors lack standing and the dispute is not

11  ripe.  Alternatively, the U.S. Trustee supports the United

12  States' position that this case -- that this Court should

13  reject the debtors' constitutional challenges.

14        We would urge the Court to adopt the position on the

15  constitutional issues as set forth in the United States

16  memorandum that is filed at Docket Number 58, and Mr. Zhao, of

17  the Civil Division of the U.S. Department of Justice appearing

18  this morning concerning -- and he'll answer any questions the

19  Court has regarding the constitutional issues.

20        With regard to whether the Court should grant the

21  motion to convert to Chapter 11, the U.S. Trustee would, first

22  of all, ask the Court to take judicial notice of the bankruptcy

23  petition schedules at Filing Number 1, in particular, the

24  schedule of current income and the current -- schedule of

25  current expenditures.

14

1          THE COURT:  Okay.  I'll take judicial notice of the

2   debtors' schedules and amended schedules.

3          MR. JENSEN:  The U.S. Trustee has filed a brief in

4   support of Fremont National and motion to convert to an 11.

5   That brief provides a detailed explanation of the case law and

6   the issue of converting a Chapter 7 case to Chapter 11, the

7   reasons why we believe that conversion to Chapter 11 is in the

8   best interest of the parties in this case, so I won't reiterate

9   those arguments.

10          In summary, it appears that the debtor, James

11   Schlehuber, does have significant disposable income that would

12   allow him to repay a significant amount to unsecured creditors

13   in a Chapter 11 case.  The U.S. Trustee does understand that

14   the debtors are now legally separated, and that Stephanie

15   Schlehuber has significantly less income than her husband, and

16   the U.S. Trustee has no objection to allowing Stephanie

17   Schlehuber to remain in Chapter 7 and receive her discharge.

18   We are only joining in the request to convert Mr. Schlehuber's

19   case.

20          The original Schedule I filed by Mr. Schlehuber

21   indicates that his gross monthly income was about over $23,000

22   a month or an annualized income of over $279,000 a year.  Their

23   original Schedules I and J, as Mr. Schulz indicated, showed

24   disposable income of $4600 a month which would pay about over

25   275,000 to unsecured creditors in a five-year plan.  And this

15

1  was before any modifications to expenses were made such as a

2  contribution to the 401(k) in the amount of $1934 a month or

3  $23,000 a year.

4          And after Fremont National filed its motion to

5  convert to an 11, the debtors then did file amended Schedules I

6  and J which reduced Mr. Schlehuber's gross monthly income by

7  about $9,000 a month to $14,333.  The debtors appeared to argue

8  there's been some type of change in the commission structure

9  for Mr. Schlehuber.  However, the pay statements for the period

10  ending on June 15th, which had been filed and received into

11  evidence, indicates that Mr. Schlehuber's year-to-date income

12  as to that date was $225,000.  This is a monthly average of

13  over $40,000 a month.  And obviously Mr. Schlehuber continues

14  to earn a very high income, and there's no doubt that he would

15  have the ability to repay a significant amount to his unsecured

16  creditors if the case was converted a Chapter 11.

17          The main case that the U.S. Trustee relies on in

18  support of the conversion of this case to Chapter 11 is the

19  In re Gordon case from the Northern District of George which is

20  addressed in our brief.  That case ruled that in a non-consumer

21  debt case, the issue of whether the debtors have the ability to

22  repay creditors should be considered in determining whether a

23  Chapter 7 case should be converted to a Chapter 11 under

24  Section 706(b) of the Bankruptcy Code.

25          The Gordon case specifically held that the ability to

1   pay is a factor that should be used in evaluating the

2   appropriate chapter in which a debtor should operate in order

3   to obtain a discharge.  The Court further states that nothing

4   in the text of Section 706(b) prevents the conversion of an

5   individual debtor with primarily non-consumer debt.

6            This is a case in which James Schlehuber earns at

7   least $200,000 a year and may earn as much as $480,000 a year

8   based on the schedules and the evidentiary documents.  This is

9   a case in which the debtor currently does have the ability to

10  repay creditors.  The debtor is, basically, arguing that he

11  doesn't want to repay his creditors, and the Court can't make

12  him do so.

13           While the Court may not be able to force him to repay

14  his creditors, the Court may determine what Chapter

15  Mr. Schlehuber should be in if he wants to take advantage of

16  the Bankruptcy Code and the provisions therein.  So we join in

17  Fremont National Bank's motion to convert the case to Chapter

18  11 as to Mr. Schlehuber.

19           THE COURT:  Thank you.  Well, Mr. Zhao, I think I'm

20  going to have you still wait until we hear from Mr. -- or

21  Ms. Hughes.

22           MS. HUGHES:  Thank you, Your Honor.  This is Nicole

23  Hughes appearing on behalf of James and Stephanie Schlehuber.

24  I would like to first offer James' affidavit at Docket Number

25  67 and Stephanie's affidavit at Docket Number 68.

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 177 of 516
Case 1:23-33301-EEB   Doc #:104-1 Filed:11/09/20 Entered:11/09/20 23:45:30 Page 17 of
Document 37   Page 17 of 37

17

1            THE COURT:  Any objections?

2            MR. SCHULZ:  No objection, Your Honor, from Jim

3    Schulz.

4            THE COURT:  So it will be received.

5            MS. HUGHES:  Thank you, Your Honor.

6            As is noted in -- and I think agreed to by everybody

7    -- under 706(b), on a request of a party in interest, the Court

8    may convert a case under Chapter 7 to Chapter 11, and I want to

9    put emphasis on may.  It doesn't mandate that the Court does

10   it.  In this case, over 99 percent of the debtors' unsecured

11   debt stems from investments in real estate, in other words,

12   business debt which is, I think, a very significant fact in

13   this case.

14           Fremont National Bank, the only creditor requesting

15   conversion, at least up until this morning's hearing, is owed

16   merely five percent of that unsecured debt.  The two largest

17   creditors in the case, owed about approximately $1.5 million,

18   have no objection to this case proceeding as a Chapter 7, and I

19   think that's also significant as to possibly, you know, an

20   unrevealed motive for this motion.

21           That being said, I'd also think everybody would agree

22   that the decision whether to convert is left to the discretion

23   of the Court as to what will enure to the benefit of all

24   parties.  That includes creditors and debtors.  I haven't heard

25   any arguments or seen any in the motions and briefs that would

1  explain how this was in debtors' best interest.  I would argue

2  that it certainly is not in their best interest or in the best

3  interest of those people that depend on them for support.

4        The debtors wanted to discharge their debt, obtain a

5  fresh start, and it will be a significant financial harm to the

6  debtors by being converted to a Chapter 11 and forced to pay

7  post-petition earnings to creditors as they'll be trapped in a

8  proceeding that they don't want to be in or need to be in.

9        In other cases on motions to convert, courts have

10 considered the factors in Section 1112(b), which governs

11 conversions from Chapter 11s to Chapter 7s.  Some of these

12 factors include the continuing loss to the estate, absence of a

13 reasonable likelihood of rehabilitation.  As stated in the

14 affidavit, the debtors are not willing to voluntarily

15 contribute their post-petition earnings to a Chapter 11 plan

16 which makes conversion futile.

17       In this case, there's also no reasonable

18 likelihood of a --

19       THE COURT:  What makes conversion futile?

20       MS. HUGHES:  The fact the debtors aren't willing

21 voluntarily contribute their post-petition earnings to a

22 Chapter 11 plan which kind of relates to some of the other

23 factors which is whether they have a business to reorganize.

24       In this case, there's no business to reorganize as

25 all the business debts were from investments in real estate.

19

1   All those assets, which actually were owned by closely held

2   limited liability companies and corporations, have all been

3   surrendered to the secured creditors.

4           In fact, In re Lenartz, which is the case that was

5   cited in the U.S. Trustee's brief, the Court held that

6   conversion to Chapter 11 was unwise as the debtors had no

7   business to reorganize.  They were each employed and worked for

8   salary based on their personal services, which is similar facts

9   to the instant case, in that there's no business to reorganize

10  as all those assets have been either surrendered and/or

11  liquidated, and they're both paid based on their personal

12  services.

13          Looking at the debtors' assets, business operations

14  and whether a separate business infrastructure exists, which is

15  another factor the courts have considered in ruling on motions

16  to convert, there's no substantial income producing assets with

17  which to fund the plan.  And if the debtors aren't willing to

18  voluntarily contribute their post-petition earnings, that

19  doesn't leave a lot to fund a plan.

20          And so -- which leads to another factor is whether

21  there's a possibility of a confirmable plan.  In Wet-Jet

22  International, which is a case that we've cited in our brief in

23  ruling on a motion to convert to Chapter 11, in that case the

24  court placed the burden on the moving party to demonstrate

25  probability of a confirmable plan of reorganization.  Fremont

1   National Bank has not demonstrated any likelihood that there

2   could be a confirmable plan, especially in light of the

3   debtors' varying income and their pending separation

4   proceeding.

5          I know there's been a lot of discussion this morning

6   about debtor's earnings, and at any point in time we could

7   re-look at pay stubs and how much he would earn per month would

8   have changed because his income varies so wildly because it's

9   so much based on commission structure which is all based on

10  what he sells that month.  And his commission structure, as can

11  be seen on the sealed document, is very complex.

12         It has to do with what their quotas are and if they

13  meet so much of the quota, then their percentage of commissions

14  depend on sales.  I'm not sure if my client thoroughly

15  understands his commission structure, but I can say, in

16  reviewing, that it's very complex, and it changes every single

17  month as far as how much he is paid.

18         Fremont National Bank's motion and the United States

19  Trustee's brief concentrate their arguments for conversion on

20  arguments resembling 707(b) arguments for dismissal based on

21  substantial abuse.  The substantial abuse inquiry focuses

22  primarily on debtors' ability to pay creditors measured by

23  evaluating the debtors' financial condition in a hypothetical

24  Chapter 13.

25         In this morning in the bank's arguments and that of

21

1  the U.S. Trustee's, pretty much the only factor that they're

2  arguing is ability to pay.  While that may be a factor the

3  Court should consider, I don't think it should be the only

4  factor.  Otherwise, there's pretty much nothing that

5  distinguishes a 706(b) motion from a 707(b) motion.

6          In the United States Trustee's brief, it primarily

7  cites 707(b) decisions, and the United States Trustee asserts

8  that they're, you know, able to pay -- the debtors are able to

9  pay their creditors over a five-year repayment plan.  It goes

10  through and scrutinizes each of debtors' monthly expenses, in

11  essence, a substantial abuse evaluation and argument.

12          To permit a 707(b) type inquiry, you know, in this

13  case on a 706(b) conversion request would basically allow the

14  bank to easily just circumvent the limitations that are on

15  dismissals incorporated in 707(b) which requires that the

16  debtors' debt to be primarily that of consumer in nature.

17          In re Graham, which is also cited in our brief, was a

18  Northern District of Iowa case, and in that case, the Court

19  held that, in essence, a 706(a) conversion or 706 -- I'm sorry

20  -- 706(b) conversion might amount to an order to the debtors to

21  work for their pre-petition creditors, and thus would be like

22  mandatory Chapter 13 proceeding.

23          On the subject of mandatory Chapter 13 proceedings,

24  Congress has made it very clear that they believe the

25  Thirteenth Amendment prohibits involuntary servitude and thus

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 182 of 516
Case 1:21-bk-33361-HLB   Doc#104-1 Filed 11/09/20 Entered 11/09/20 23:45:30 Page 22 of
Document 37   Page 22 of 37

22

```
 1  it cannot force a wage earner into a Chapter 13.  At this time,
 2  I'm not sure if the Court would like me to address our
 3  constitutional challenge or wait in reply to Mr. Zhao's
 4  arguments.
 5          THE COURT:  Well, no.  It's your challenge, so go
 6  ahead.
 7          MR. HUGHES:  In this case, we constitutionally
 8  challenge three provisions of Chapter 11; 1115(a)(2) defining
 9  property of the estate, 1127(e) on modification, and
10  1129(a)(15) on confirmation.  We don't believe there can be a
11  confirmable plan since the debtors are not willing to
12  voluntarily contribute their post-petitions earnings, and
13  therefore, this plan will not yield a greater dividend to
14  unsecured creditors in their current Chapter 7 proceeding.
15          Conversion in a Chapter 11 plan cannot be forced on
16  the debtors on terms requiring payments of their future
17  earnings because a compulsory payment would violate Chapter 13
18  and equate to involuntary servitude.  In addition, the
19  bankruptcy estate is defined differently in Chapter 7 and
20  Chapter 11 which places the burden on the debtors.
21          This nonuniformity violates the equal protection
22  cause.  For the Court to enter a coercive order requiring the
23  debtors to pay involuntarily would then amount to unlawful
24  imprisonment.  This Court can construe the statutes as
25  prohibiting involuntary conversions to Chapter 11 in
```

23

1  individuals -- in cases filed by individuals.  This is what the

2  court held in <u>In re Lenartz</u> out of the District of Idaho which

3  is, again, cited in our brief.  And we are asking the Court to

4  hold that here that this case cannot be converted because it

5  would be an involuntary conversion in a case filed by

6  individuals.

7        In addition, we would ask the Court to take into

8  consideration all factors, not just their ability to pay, and

9  to look at how this affects all parties in interest, not just

10  Fremont National Bank, and possibly Real Property Holdings, who

11  just recently entered its appearance in this hearing.

12        Thank you, Your Honor.

13        THE COURT:  Thank you.  Mr. Zhao, your turn.

14        MR. ZHAO:  Thank you, Your Honor.  Victor Zhao for

15  the Department Of Justice representing the United States to

16  address the debtors' constitutional challenges.

17        The challenges are based on the potential allocation

18  of the debtors' post-petition disposal income toward creditor

19  repayment, but the circumstances here illustrate precisely the

20  type of situation for which the doctrines of ripeness and

21  constitutional standing were created.

22        The debtors are, in effect, protesting against what

23  may potentially happen in a Chapter 11 proceeding to their

24  post-petition disposal income, but here, we are in a Chapter 7,

25  and we're not yet in a Chapter 11.  To be sure, Fremont is

24

1  seeking conversion of this case, but the doctrines of ripeness

2  and standing counsels that a Court refrain from hearing and

3  adjudicating the type of dispute until a dispute is concrete

4  rather than theoretical, and any injury alleged is actual or

5  imminent rather they hypothetical.

6          Here, what we have is a theoretical dispute based on

7  what may happen to the debtors, in other words, a hypothetical

8  injury to the debtors, should the Court decide to convert this

9  case to a Chapter 11.  There's not a proposed reorganization

10 plan on the table.  There's not an objection to a proposed plan

11 on the table, and there's nothing with which a Court -- this

12 Court can evaluate the debtors' constitutional challenge,

13 meritless as they may be.

14         But should the Court decide to address the

15 constitutional challenge which include challenges based on the

16 Thirteen Amendment prohibition of slavery, equal protection and

17 various criminal law, constitutional protections under the

18 Fifth and Sixth Amendments, the Court should reject those

19 challenges.  The challenges overlook a significant legal

20 truism; that is, that bankruptcy relief is not a constitutional

21 right, but rather a privilege.

22         No law requires this Court to grant a bankruptcy

23 discharge to the debtors.  The debtors' chief complaint is that

24 it should not be allowed to -- it should not be forced to work

25 for the benefit of their creditors, but there's no compulsion

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 185 of 516
Case 19-12281-EEB   Doc #104-1 Filed 11/09/20 Entered 11/09/20 23:45:30 Page 25 of
Document 37   Page 25 of 37

25

1    of any sort here.  Even if a plan were to be proposed that

2    allocates a portion of the debtors' post-petition disposal

3    income, the debtors can choose to participate in that

4    reorganization plan and receive, potentially, a discharge or it

5    may choose to not work and as a result, not a receive a

6    bankruptcy discharge.  Having that choice does not equate to

7    compulsion.  Indeed, having that choice means that there is no

8    compulsion.  Therefore, the debtors' challenge, based on the

9    Thirteenth Amendment, fails.

10        The debtor also launches challenges under the equal

11   protection mandates of the Constitution.  However, equal

12   protection does not apply here because the debtor alleges that

13   a debtor is treated differently under Chapter 7 than from

14   Chapter 11, but those debtors are dissimilarly situated.

15        Case law allows the United States Congress to

16   legislate and fashion different relief for different classes of

17   debtors and to structure the relief accordingly.  This is under

18   the cases of Krass and Gibbons from the Supreme Court.  So the

19   different treatment for a Chapter 11 debtor from a Chapter 7

20   debtor does not violate equal protection.  But even if the

21   Court were to engage in equal protection review, the challenged

22   provisions are constitutional.

23        The debtor concedes that it's the rational basis test

24   that applies here; that is, if the classification is rationally

25   related to a legitimate state interest.  All of the challenged

1  provisions were not pursuant to the BAPCPA Amendments in 2005,

2  and that particular act has the stated purpose of improving

3  bankruptcy law and practice by restoring personal

4  responsibility and integrity in the bankruptcy system and

5  ensuring that the system is fair for both debtors and

6  creditors.

7       Here, the challenged provisions -- it cannot be

8  argued that the challenge provisions do not -- are not

9  rationally related to those legitimate federal interests, and

10  the debtors have not so alleged.  Indeed, they do not challenge

11  that their federal interests are legitimate, and they have not

12  indicated how the provisions are not rationally related.  And

13  under the abundant case law illustrating how a bankruptcy court

14  is to treat constitutional challenges based on the rational

15  basis, I think these provisions easily pass that standard.

16       And finally, the debtor challenges based on various

17  criminal law protections in the Fifth and Sixth Amendments, but

18  those challenges are misplaced.  The various jurisprudence

19  prudence prohibiting incarceration for debt doesn't mean that

20  the provisions are unconstitutional, it simply means that

21  there's no mechanism to compel the debtors to comply with the

22  Chapter 11 to obtain a discharge.  The Court's enforcement

23  option should the debtor refuse to contribute its post-petition

24  disposal income is to dismiss their case and deny the

25  discharge, not to impose any sort of potential of incarceration

27

1   for failure to pay debt, but is to simply dismiss the case and

2   deny the discharge.

3          Therefore, the United States would like to

4   incorporate the remainder of its argument set forth in its

5   brief, and we'll certainly be available to answer the Court's

6   questions if it has any, but, at this time, I would like to

7   reserve an opportunity to answer the questions, but that is the

8   conclusion of my presentation.

9          THE COURT:  Thank you.  Ms. Hughes, how do you

10  respond to the argument that was raised by Mr. Schulz that when

11  you filed amended schedules, they really were nothing close to

12  reality as far as evidence with respect to pay stubs were

13  concerned?

14         MS. HUGHES:  Thank you, Your Honor.

15         When the amended schedules were filed -- maybe a

16  little bit of explanation as to the calculations that were done

17  both on the schedules and the amended schedules would help

18  clarify the situation.  When the Schedules I and J were

19  calculated, Schedule I was calculated looking at the debtor's

20  past income -- actually, about his last six months worth of

21  income.  And then as I had my first meeting, there was some

22  questionings on income at that time.  And so we sat the debtors

23  back down and said okay, you know, we filed these schedules

24  saying, you know, this is what your income is, and now that

25  doesn't seem to be -- you know, you don't seem to agree that

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 188 of 516
Case 1:21-33361-EEB   Doc #104-1 Filed 11/09/20 Entered 11/09/20 23:45:30   Page 28 of
Document 37   Page 28 of 37

28

1  that's correct.  And they're saying, well, yeah, if you look at

2  just the last six months, but to forecast out going forward,

3  what our income -- you know, what -- and I'm primarily talking

4  about Mr. Schlehuber as I think everybody is because I think

5  this entire time, Mrs. Schlehuber's income has been

6  consistently represented, and her pay stubs reflect that.

7          But as far as Mr. Schlehuber is concerned, you know,

8  we were trying to basically forecast out what would happen over

9  this year, and that's saying, well we know he's going to get

10  his salary, and at that time, based on the compensation

11  structure and what was represented by his employer, you know,

12  this is what we thought it would look like for this year.

13          Now, I will be the first one to admit, looking at

14  Mr. Schulz's exhibit with -- showing his post-petition pay

15  stubs up till June 15th, it doesn't look that way.  And it does

16  look like he's going to earn more than what his amended

17  Schedules I and J show, but when those were prepared and

18  signed, we anticipated that to be more representative than the

19  original Schedule I that was prepared.

20          THE COURT:  Okay.  I guess I still don't understand

21  though.  You're saying that the amended schedules are based on

22  projections?

23          MS. HUGHES:  Correct, Your Honor.

24          THE COURT:  Okay.  All right.  Mr. Peterson, are you

25  weighing in on anything, or are you just listening?

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 189 of 516
Case 1:21-33396-EEB   Doc #104-1 Filed 11/04/20 Entered 11/04/20 23:45:30 Page 28 of
Document 37   Page 29 of 37

29

1          MR. PETERSON:  I'm just listening, Judge.

2          THE COURT:  All right.  Thank you.

3          Ms. Hughes, do you wish to respond to anything else

4    that was raised by the various parties?  What about -- such as

5    the ripeness standing argument?

6          MS. HUGHES:  Thank you, Judge.

7          As far as we do believe this issue is ripe and before

8    the Court because once converted, you know, they're basically

9    going to be in a forced Chapter 11, and so, I think, you know,

10   the United States wants to say, well, this isn't ripe because

11   they're not in 11 yet, but, I mean, we have look at, well, is

12   it constitutional for them to be put into a Chapter 11, and

13   that's what we're arguing.

14         THE COURT:  Okay.  Well, let's talk about that for a

15   second.  If we get there, and as Mr. Zhao said, there is no

16   constitutional right to a bankruptcy discharge.  So, if your

17   clients have voluntarily chosen to take advantage of the

18   provisions of Chapter 7, and those provisions say that the

19   Court can convert you to Chapter 11, what constitutional

20   provision says the Court can't do that when the debtor doesn't

21   have a right to be -- constitutional right to be in bankruptcy

22   in the first place?

23         MS. HUGHES:  We certainly would agree that there's no

24   constitutional right to file bankruptcy or to obtain a

25   discharge.  However, we argue about the constitutionality of

30

1   forcing individual debtors into a Chapter 11 and forcing them

2   to repay earnings similarly to being forced into a Chapter 13

3   if, you know, they met that limitation there.

4   THE COURT:  Well, hold it.  If they're forced into an

5   11 because they have substantial income, they can choose not to

6   contribute their income to a plan.  So what's going to happen?

7   MS. HUGHES:  They're immediately going to be

8   converted back.

9   THE COURT:  No.  They're going to get dismissed

10   because the two options at that point are -- well, there are

11   three, conversion being one, but the other two options are

12   confirm a plan or dismiss the case, right?

13   MS. HUGHES:  I would agree those are the options,

14   yes, Your Honor.

15   THE COURT:  So, again, what -- I guess, I'm a little

16   confused by how the Constitution even comes into this when

17   there is no constitutional right to a discharge.  The debtors

18   can choose to give their future income into a plan in order to

19   get that discharge, but if they don't, then they're going to be

20   kicked out of bankruptcy.

21   MS. HUGHES:  Which, Your Honor, if I may address that

22   -- the Court's question for a moment.  But if the Court can

23   convert them to a Chapter 11 and they can choose not to

24   contribute their post-petition earnings to the plan, and then

25   the Court can dismiss their case, and this is all based on the

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 191 of 516
Case 1:23-cv-00361-REB   Doc#104-1   Filed 11/09/20   Entered 11/09/20 23:45:30   Page 31 of
Document 37   Page 31 of 37

31

1  debtor's ability to pay, which then goes back to my argument of

2  then this is essentially a 707(b) motion just called a 707 --

3  or 706(b) motion.  Because, in essence, a Chapter 7

4  non-consumer debtor can still be dismissed out if they won't

5  pay their post-petition earnings just based on their ability to

6  pay because I still don't think anybody's argued any factor in

7  this case other than ability to pay, and I don't think that

8  should be the only factor that this Court looks at in deciding

9  whether this case is in the best -- whether a conversion is in

10 the best interest of all parties.

11         THE COURT:  Isn't that the most important factor

12 though?

13         MS. HUGHES:  I would certainly agree that it's a

14 factor.  I don't think it's the most important factor.  I mean,

15 looking at -- I mean, the primary purpose of a Chapter 11,

16 based on my understanding, is rehabilitation of the debtor's

17 financial situation and reorganization of the their business.

18 And in this case, neither of those purposes would happen

19 because it's not going to help rehabilitate their financial

20 situation to be put into a Chapter 11, and they have no

21 business with which to reorganize, but, I think, looking at the

22 purpose of the chapter they're being put in is also an

23 important factor to be looked at in looking at whether it's in

24 the best interest of all parties.

25         THE COURT:  Ms. Hughes, when did this legal

Case 1:22-cv-00332-REB Document 9-1 Filed 03/03/22 USDC Colorado Page 192 of 516
Case 1:21-33361-EEB Doc#104-1 Filed 11/04/20 Entered 11/04/20 23:49:30 Page 32 of
Document 37
Page 32 of 37

32

1 separation proceeding get filed between these two? Was it

2 post-petition?

3          MS. HUGHES: Yes, it was, Your Honor. And I,

4 truthfully, do not know at what point it was filed. I know

5 that there's been -- I have -- in their recently filed

6 affidavits, we cite to a temporary order that was entered in

7 that case, and in their previously filed affidavits, when this

8 hearing was scheduled the first time we cited to affidavits,

9 cited to a different temporary order. I know that proceeding

10 was filed this calendar year. I know it was after they filed

11 bankruptcy. We do not represent either party in that case for

12 obvious conflict of interest reasons, so I don't -- I'm not

13 sure when it was actually filed. I know the most recent

14 temporary order increased alimony for potentially any --

15          THE COURT: Okay. But it was post-petition?

16          MS. HUGHES: Yes, it was, Your Honor.

17          THE COURT: Where is Stephanie living now?

18          MS. HUGHES: She is living in an apartment near West

19 Rhodes that recently in this most recent temporary order that

20 was entered, which the Court can take judicial notice of the

21 orders entered in that case, Mr. Schlehuber was just ordered to

22 pay her $5,000 to furnish an apartment located at 9222 Birch

23 Street, Apartment 111, as an advance on part of the property

24 settlement.

25          THE COURT: Okay. Why is it a legal separation and

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 193 of 516
Case 1:23-cv-02361-CHS   Doc #:104-1 Filed 11/09/20 Entered 11/09/2023 45:30 Page 33 of
Document 37   Page 33 of 37

33

1   not a divorce, any idea?

2          MS. HUGHES:  That's a question that I have no answer

3   to, and up until about a week ago, I was not aware that it was

4   a legal separation proceeding because it was always represented

5   to our office that it was a dissolution proceeding, and not

6   until I filed this most recent order did my office even become

7   aware it was a legal separation.

8          THE COURT:  Well, just -- I mean, to be completely

9   up front, the reason I'm asking those questions, which are

10  probably not relevant, is I'm just curious whether that is a

11  legal separation of convenience for purposes of this motion or

12  whether it is a true situation, but you, obviously, would not

13  have that answer.

14         MS. HUGHES:  Your Honor, if I may just state one

15  thing.  As their counsel and an officer of the court, I can

16  tell you that this legal separation was not anticipated at the

17  time of filing.  It was not anticipated even at the first

18  meeting, but only shortly thereafter, based on some

19  extramarital activities that one of the spouses engaged in.

20         THE COURT:  Okay.  Got it.  All right.  Mr. Schulz,

21  Mr. Jensen has raised the prospect of conversion only applying

22  to James.  What are your thoughts on that?

23         MR. SCHULZ:  Well, that may be correct given her

24  level of income.  The only factor now that I -- I guess, need

25  to be able to analyze is apparently she is going to be

1   receiving a substantial amount of income by way of alimony

2   which is simply transferring money from one of the parties to

3   the other which still may be money available that can be

4   applied towards the plan, and I haven't been able to look yet

5   -- I haven't seen yet a temporary order which changes the

6   amount of temporary alimony.  One of my filings indicated that

7   the alimony obligations was $1500 a month.  Apparently, that's

8   going up pursuant to an amended temporary order which I haven't

9   seen yet, but there may now be additional income to her that

10  maybe could be included in possible payments of the plan, as

11  well.  Prior to that, probably not, but you may be able to now.

12          THE COURT:  Okay.  All right.  Well, prior to the

13  hearing -- well, anybody else want to weigh in on anything?

14              (No audible response)

15          THE COURT:  All right.  Prior to the hearing, I did

16  review the brief and some of the evidence and, you know, this

17  really boils down to the legal issue raised by Ms. Hughes, but

18  as Mr. Zhao pointed out, we're not yet there.  I have to agree

19  with the United States that the matter probably is not ripe yet

20  because a lot of things could happen under a Chapter 11 plan.

21  So we really have to focus on the motion to convert itself

22  without the constitutional questions, and I think the ability

23  to pay is far and away an important factor under 706(b) and

24  ought to be looked at here as one of those situations where the

25  debtor's income historically through -- at least the only

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 195 of 516
Case 1:21-cv-03361-HES   Doc #104-1 Filed 11/04/20 Entered 11/04/20 23:45:30 Page 35 of Document 37   Page 35 of 37

35

1  evidence I've got is through the middle this year and nobody

2  has put on evidence since the middle of this year -- through

3  the middle of this year is substantial -- very substantial.

4  And therefore, the debtor has the ability to fund a Chapter 11

5  plan and should do so.  And therefore, a 706(b) should apply,

6  at least, as to James Schlehuber.

7          Even if it wasn't -- even if it was ripe for

8  consideration at this time, I would still be granting the

9  motion to convert because as we discussed and as the United

10  States discussed in its brief and as the U.S. Trustee discussed

11  in its brief, there is no constitutional right to a discharge.

12  If debtor wants a discharge, debtor needs to follow the

13  bankruptcy rule.  Debtor chose to file bankruptcy.  Nobody

14  forced the debtor into Chapter 7.  When the debtor chose

15  Chapter 7, 706(b) was there.  Debtor knew about it or is

16  presumed to have known about it, so nobody is forcing that

17  provision on the debtor.  Debtor chose it.  So if debtor knew

18  this conversion to Chapter 11 was a possibility and that

19  Chapter 11 contains the variety of provisions including 1115,

20  1127, 1129, that may affect the debtors' future income.

21          So regardless if whether it's ripe, I'd still be

22  granting the motion.  If debtors' want a bankruptcy discharge,

23  they need to follow the rules.  They had a choice.  They will

24  have a choice in the Chapter 11, discharge or no discharge,

25  Chapter 11 plan or dismissal, I suppose.

Case 1:22-cv-00332-REB    Document 9-1    Filed 03/03/22    USDC Colorado    Page 196 of 516
Case 1:23-cv-00361-EHS    Doc #: 104-1 Filed: 11/09/20 Entered: 11/09/20 23:45:30 Page 36 of
Document 37                Page 36 of 37

36

1          So with that, the evidence I have also indicates that

2    these factors do not apply to Stephanie.  Her income has been

3    consistent throughout.  It's not excessive.  The

4    representations are that the parties are in the process of a

5    legal separation.  I do not believe that there are factors that

6    would require conversion of her Chapter 7 case to Chapter 11,

7    not at this time anyway.  So I am going to grant the motion to

8    convert to Chapter 11 filed by Fremont National Bank as to

9    James Schlehuber only.

10          Anything else for today?

11          MS. HUGHES:  Judge, the only other thing is, I think,

12    we'll have to deconsolidate the cases.

13          THE COURT:  Yes, I assume that'll have to be done

14    first in order to do the conversion.  So if Stephanie will

15    remain in this case as a Chapter 7 for now, and James will end

16    up in Chapter 11 presumably with a new case number.  Donna?

17          COURT CLERK:  Yes, I'll have to check and see which

18    one will be deconsolidated.  I'm assuming it's him.  I'm not

19    sure.

20          THE COURT:  Okay.  All right.  Anything else, folks?

21          MR. SCHULZ:  No, Your Honor.

22          THE COURT:  All right.  Thank you very much.  You're

23    all excused.  Have a good day.

24          MS. HUGHES:  Thank you, Your Honor.

25          MR. ZHAO:  Thank you, Your Honor.

37

```
 1          THE COURT:  Yes.

 2          COURT OFFICER:  Please rise.

 3                    * * * * *

 4              C E R T I F I C A T I O N

 5          I, MELISA TULOTTA, court approved transcriber,

 6    certify that the foregoing is a correct transcript from the

 7    official electronic sound recording of the proceedings in the

 8    above-entitled matter, and to the best of my ability.

 9

10

11    /s/ Melisa Tulotta_____

12    MELISA TULOTTA

13    J&J COURT TRANSCRIBERS, INC.      DATE: November 8, 2012

14

15

16

17

18

19

20

21

22

23

24

25
```

**Fill in this information to identify your case**

## UNITED STATES BANKRUPTCY COURT DISTRICT OF COLORADO

| Debtor 1: | ALEXANDER JOHNSON | Case #: | 19-19816-EEB |
|---|---|---|---|
| | First Name    Middle Name    Last Name | | |
| Debtor 2: | | Chapter: | 7 |
| | First Name    Middle Name    Last Name | | |

**Local Bankruptcy Form 9070-1.1**
**Joint List of Witnesses and Exhibits**

**Complete applicable sections.**

The Debtor, Alexander Johnson ("Debtor") and the Chapter 7 Trustee, M. Stephen Peters ("Trustee"), by and through their respective undersigned counsel, hereby designate the following witnesses and exhibits for the hearing on the Motion to Convert Chapter 7 Bankruptcy Case to Case under Chapter 11 of the Bankruptcy Code Pursuant to 11 U.S.C. Section 706(b) or, in the Alternative, Dismiss Bankruptcy Case Pursuant to 11 U.S.C. Section 707(b) (the "Motion") set for **December 9, 2020**, at **9:30 A.M.** at the U.S. Bankruptcy Court, U.S. Custom House, 721 19th Street, Fifth Floor, Denver, Colorado 80202.

## Part 1   Witnesses

Party **will call** the following witnesses:

| Witness name | Nature of testimony |
|---|---|
| M. Stephen Peters, Chapter 7 Trustee | Mr. Peters will testify regarding the Chapter 7 case administration. |
| Alexander Johnson, Debtor | Mr. Johnson will testify as to all issues raised in, and regarding, the Motion, including his desire to remain in Chapter 7 and the reasons therefor. |
| Any witness called by Movant | |
| Any witness necessary for rebuttal | |

Party **may call** the following witnesses:

| Witness name | Nature of testimony |
|---|---|
| Abram Elam, Debtor's Personal Advisor | Mr. Elam may testify testify as to all issues raised in, and regarding, the Motion, including the Debtor's current employment and future prospects. |
| | |

| Part 2 | Exhibits |

| Exhibit number | Description | Offered (Yes/No) | Admitted (Yes/No) | Additional comments (electronic, video, paper, etc.) |
|---|---|---|---|---|
| A | Bankruptcy Schedules; Amended Schedules A and B dated December 11, 2019; Amended Schedule C dated December 11, 2019; Amended Schedule C dated November 27, 2019; Amended Schedules A and B dated December 18, 2019; Amended Schedule C dated December 18, 2019; Amended Schedule C dated February 20, 2020; Amended Schedule C dated February 21, 2020 | | | |
| B | Statement of Financial Affairs | | | |
| C | Any document listed by Movant | | | |
| D | Any document necessary for rebuttal | | | |

| Part 3 | Signature |

DATED: November 25, 2020

Respectfully submitted,

By: _____ */s/Jeffrey S. Brinen*_____
    Jeffrey S. Brinenn #20565
    **KUTNER BRINEN, P.C.**
    1660 Lincoln St., Suite 1850
    Denver, CO 80264
    Telephone: (303) 832-2400
    Email: jsb@kutnerlaw.com

By: */s/ Lindsay S. Riley*_____
    Aaron J. Conrardy #40030
    Lindsay S. Riley, #54771
    **WADSWORTH GARBER WARNER CONRARDY, P.C.**
    2580 Main Street, Suite 200
    Littleton, CO 80120
    Telephone: (303) 296-7600
    Email:aconrardy@wgwc-law.com
    Email:lriley@wgwc-law.com

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| IN RE:<br><br>ALEXANDER JOHNSON,<br><br>              Debtors. | Case No. 19-19816 EEB<br><br>Chapter 7 |

### RITCHIE, DILLARD, DAVIES & JOHNSON, P.C.'S LIST OF WITNESSES AND EXHIBITS

RITCHIE, DILLARD, DAVIES & JOHNSON, P.C. ("**RDD&J**"), through undersigned counsel, hereby respectfully designates witnesses and exhibits for the one-half day evidentiary hearing on the *Motion to Convert Chapter 7 Bankruptcy Case to Case Under Chapter 11 Of the Bankruptcy Code Pursuant to 11 U.S.C § 706(b) or, in the Alternative, Dismiss Bankruptcy Case Pursuant to 11 U.S.C. § 707(b)* [Dkt. Nos. 68-69. 74-75 ("**Motion**")] set for December 9, 2020 at 9:30 a.m. ("**Hearing**") before the United States Bankruptcy Court for the District of Colorado, Courtroom F, U.S. Custom House, 721 19th Street, Denver, Colorado 80202, identified as follows:

### WITNESSES

A.     RDD&J **WILL CALL** the following witnesses:

1.    **Alexander Johnson** ("*Debtor*"): Mr. Johnson shall offer testimony regarding (i) his schedules and disclosures filed within the above-captioned bankruptcy case; (ii) any and all assets, liabilities, transactions and occurrences omitted from or misrepresented within said schedules; and (iii) any issues, allegations and/or claims enumerated within and relating to the Motion and/or the *Objection to Motion* [Dkt. No. 90], among any other matters as the need arises.

2.    **M. Stephen Peters, Chapter 7 Trustee** ("*Trustee*"): Mr. Peters shall offer testimony regarding (i) administration of the Chapter 7 bankruptcy estate; and (ii) any issues, allegations and/or claims enumerated within and relating to the Motion and/or the *Trustee's Objection to Motion* [Dkt. No. 89], among any other matters as the need arises.

B.     RDD&J **MAY CALL** the following witnesses:

1.    **Laura Burdine:** Ms. Burdine may offer testimony regarding CB45, LLC including, but not limited to, (i) her interest in the entity; (ii) the business of the entity and income generated therefrom; (iii) use of funds received through PayPal, Venmo and Stripe; and (iv) any other relevant matters within her personal knowledge as the need arises.

2.    **Tammy Miller:** Ms. Miller shall offer testimony regarding (i) her ownership interest in 9100 Rocky Creek Road, Lower Lake, California 95457; (ii) her transfers, transactions and/or occurrences with the Debtor, if any; and (iii) any other matters as the need arises.

3.    **Eric Miller**: Mr. Miller may offer testimony regarding (i) his membership interest in Bestia Princpal, LLC; (ii) any ownership interest in 9100 Rocky Creek Road, Lower Lake,

California 95457; (iii) his transfers, transactions and/or occurrences with the Debtor, if any; and (iv) any other relevant matters within his personal knowledge as the need arises.

4.    **Richard P. Slivka; PDB Sports, Ltd.**: Mr. Slivka, or any other authorized representative of PDB Sports, Ltd. *doing business as* the Denver Broncos as the entity may designate, may testify regarding any and all relevant issues and facts alleged within the Motion as related to the Debtor's past, present and future employment with the Denver Broncos and any other relevant matters as the need arises.

5.    **Wayne Ritchie:** Mr. Ritchie is an attorney with RDD&J who may offer testimony on any issues, allegations and/or claims enumerated within and/or relating to the Motion within his personal knowledge, among any other matters as the need arises.

6.    Any witness identified by the Debtor and Trustee.

7.    Any witness necessary to authenticate any exhibit.

8.    Any witness necessary for foundation.

9.    Any witness necessary for impeachment and/or rebuttal purposes.

## EXHIBITS

RDD&J intends to introduce at the Hearing those exhibits enumerated in **ATTACHMENT 1**, which is attached hereto and incorporated by reference herein.


DATED this 25th of November, 2020.


Respectfully submitted,
BERKEN CLOYES, P.C.


        /s/ *Joshua Sheade*
Joshua B. Sheade, Atty. Reg. No. 46993
1159 Delaware Street
Denver, Colorado 80204
Tel: (303) 623-4357
Fax: (720) 554-7853
Email: joshua@berkencloyes.com

*Attorneys for the LAW OFFICES OF RITCHIE, DILLARD, DAVIES & JOHNSON, P.C*

2

## CERTIFICATE OF SERVICE

The undersigned certifies that on November 25, 2020, I served by the Case Management/Electronic Case Filing ("*CM/ECF*") system, pre-paid first-class mail and/or other acceptable means (i.e. electronic correspondence or hand delivery), a copy of the foregoing **RITCHIE, DILLARD, DAVIES & JOHNSON, P.C.'S LIST OF WITNESSES AND EXHIBITS** on all parties against whom relief is sought, and those otherwise entitled to service, pursuant to the FED.R.BANKR.P. and these L.B.R., at the following addresses:

**Via CM/ECF:**

Aaron J. Conrardy, Esq.
Lindsay Riley, Esq.
WADSWORTH GARBER WARNER CONRARDY, P.C.
2580 West Main Street, Suite 200
Littleton, Colorado 80120

Jeffrey S. Brinen, Esq.
KUTNER BRINEN, P.C.
1660 Lincoln Street, Suite 1850
Denver, Colorado 80264

By: _____ /s/ *Joshua Sheade* _____
Joshua B. Sheade, Esq.
For BERKEN CLOYES, P.C.

**ATTACHMENT 1**

**LIST OF EXHIBITS FOR HEARING**

Case Number:  19-19816 EEB

Submitted by:  RITCHIE, DILLARD, DAVIES & JOHNSON, P.C. ("*Creditor*")

In connection with:  Hearing on the *Motion to Convert Chapter 7 Bankruptcy Case to Case Under Chapter 11 Of the Bankruptcy Code Pursuant to 11 U.S.C § 706(b) or, in the Alternative, Dismiss Bankruptcy Case Pursuant to 11 U.S.C. § 707(b)* [Dkt. Nos. 68-69. 74-75 ("*Motion*")] filed by the Creditor and the Objections thereto [Dkt. Nos. 89-90] filed by Alexander Johnson ("*Debtor*") and M. Stephen Peters, Chapter 7 Trustee ("*Trustee*") on June 8, 2020.

Date of Trial:  Wednesday, December 9, 2020 at 9:30 A.M.

| EXHIBIT NO. | DESCRIPTION | OFFERED (Yes/No) | ADMITTED (Yes/No) | ADDITIONAL COMMENTS |
|---|---|---|---|---|
| Creditor's Exhibit 1 | FED.R.EVID. 902(11) Affidavit from Eastman Credit Union Custodian of Record. | | | |
| Creditor's Exhibit 2 | Eastman Credit Union monthly statements for Debtor-maintained Member No. x0237 from January 1, 2017 through October 31, 2020. | | | |
| Creditor's Exhibit 3 | Eastman Credit Union Member No. x0237 Cancelled Checks from January 1, 2017 through October 31, 2020. | | | |
| Creditor's Exhibit 4 | Eastman Credit Union Member No. x0237 Deposits from January 1, 2017 through October 31, 2020. | | | |

RITCHIE, DILLARD, DAVIES & JOHNSON, P.C's Lists of Exhibits for Trial
*In re Alexander Johnson*, Case No. 19-19816 EEB
Wednesday, December 9, 2020
Page 1 of 6

Vol 1 174

| | | | | |
|---|---|---|---|---|
| Creditor's Exhibit 5 | Eastman Credit Union Member No. x0237 Wire Details and Certificate, dated October 8, 2019. | | | |
| Creditor's Exhibit 6 | Eastman Credit Union member service agreements and signature card for depository accounts under Member No. x0237. | | | |
| Creditor's Exhibit 7 | Eastman Credit Union monthly statements for CB45, LLC-maintained Member No. x6748 from March 1, 2019 through October 31, 2020. | | | |
| Creditor's Exhibit 8 | Eastman Credit Union Member No. x6748 Cancelled Checks from March 1, 2019 through October 31, 2020. | | | |
| Creditor's Exhibit 9 | Eastman Credit Union business service agreement and signature card for depository accounts under Member No. x6748. | | | |
| Creditor's Exhibit 10 | FED.R.EVID. 902(11) Declaration of Custodian of Records of PayPal, Inc.. | | | |
| Creditor's Exhibit 11 | PayPal Account Info for Alexander Johnson. | | | |
| Creditor's Exhibit 12 | PayPal Transaction Ledger for Debtor-Maintained Account No. 7445 from December 20, 2018 through November 13, 2020. | | | |

RITCHIE, DILLARD, DAVIES & JOHNSON, P.C's Lists of Exhibits for Trial
*In re Alexander Johnson*, Case No. 19-19816 EEB
Wednesday, December 9, 2020
Page 2 of 6

Vol 1 175

| Creditor's Exhibit 13 | Venmo Account Information for Alexander Johnson. | | | |
|---|---|---|---|---|
| Creditor's Exhibit 14 | Venmo Transaction Ledger for Debtor-Maintained Account No. 3794 from November 27, 2018 through September 25, 2020. | | | |
| Creditor's Exhibit 15 | Venmo Account Information for CB45, LLC. | | | |
| Creditor's Exhibit 16 | Venmo Transaction Ledger for CB45,LLC-Maintained Account No. 8458 from November 26, 2018 through November 12, 2020. | | | |
| Creditor's Exhibit 17 | UBS Financial Services Inc. Resource Management Account No. x8202 from October 1 through November 29, 2020. | | | |
| Creditor's Exhibit 18 | Uniform Residential Loan Application for Debtor dated October 2, 2019. | | | |
| Creditor's Exhibit 19 | Uniform Residential Loan Application for Tammy Miller dated October 2, 2019. | | | |
| Creditor's Exhibit 20 | Undated Letter from Debtor to "Leana" related to Tammy and Eric Miller. | | | |
| Creditor's Exhibit 21 | Fidelity National Title Company of California Estimated Buyer's Statement dated October 3, 2019. | | | |

RITCHIE, DILLARD, DAVIES & JOHNSON, P.C's Lists of Exhibits for Trial
*In re Alexander Johnson*, Case No. 19-19816 EEB
Wednesday, December 9, 2020
Page 3 of 6

| | | | | |
|---|---|---|---|---|
| Creditor's Exhibit 22 | Debtor's PDB Sports, Ltd. *dba* Denver Broncos pay advices from January 1, 2017 through January 1, 2020. | | | |
| Creditor's Exhibit 23 | Uniform Players Contract and addendums thereto between Debtor and PDB Sports, Ltd. *dba* Denver Broncos. | | | |
| Creditor's Exhibit 24 | Square, Inc. Cash App Account Information for Debtor. | | | |
| Creditor's Exhibit 25 | Square, Inc. Cash App Transaction Ledger for Debtor-maintained Account. | | | |
| Creditor's Exhibit 26 | Stripe, Inc. Account Information for Debtor | | | |
| Creditor's Exhibit 27 | Stripe, Inc. Transaction Ledger for Debtor-maintained Account. | | | |
| Creditor's Exhibit 28 | Stripe, Inc. Account Information for CB45, LLC | | | |
| Creditor's Exhibit 29 | Stripe, Inc. Transaction Ledger for CB45, LLC-maintained Account. | | | |
| Creditor's Exhibit 30 | California Secretary of State Electronic Filing of LLC Registration – Articles of Organization for Bestia Principal LLC filed on August 2, 2019. | | | |
| Creditor's Exhibit 31 | California Secretary of State Statement of Information (Limited Liability Company) | | | |

RITCHIE, DILLARD, DAVIES & JOHNSON, P.C's Lists of Exhibits for Trial
*In re Alexander Johnson*, Case No. 19-19816 EEB
Wednesday, December 9, 2020
Page 4 of 6

Vol 1 177

| | | | | |
|---|---|---|---|---|
| | for Bestia Principal LLC filed on August 12, 2019 at Document No. 19-D06342. | | | |
| Creditor's Exhibit 32 | Electronic Articles of Organization for Florida Limited Liability Company regarding CB45, LLC filed on September 19, 2018 at Document No. L18000223429. | | | |
| Creditor's Exhibit 33 | 2019 Florida Limited Liability Company Annual Report for CB45, LLC filed on May 14, 2019. | | | |
| Creditor's Exhibit 34 | 2020 Florida Limited Liability Company Annual Report for CB45, LLC filed on June 30, 2020. | | | |
| Creditor's Exhibit 35 | *Voluntary Petition for Individuals Filing for Bankruptcy* [Dkt. No. 1] filed on November 13, 2019. | | | |
| Creditor's Exhibit 36 | *Schedule I: Your Income* [Dkt. No. 16] filed on November 25, 2019. | | | |
| Creditor's Exhibit 37 | *Schedule J: Your Expenses* [Dkt. No. 17] filed on November 25, 2019. | | | |
| Creditor's Exhibit 38 | *Declaration About an Individual Debtor's Schedules* [Dkt. No. 18] filed on November 25, 2019. | | | |
| Creditor's Exhibit 39 | Case Management/Electronic Case Filing system-maintained Docket Report for | | | |

RITCHIE, DILLARD, DAVIES & JOHNSON, P.C's Lists of Exhibits for Trial
*In re Alexander Johnson*, Case No. 19-19816 EEB
Wednesday, December 9, 2020
Page 5 of 6

Vol 1 178

| | | | | |
|---|---|---|---|---|
| | Chapter 7 Bankruptcy Case No. 19-19816 EEB. | | | |
| | | | | |
| | Any documents identified by the Debtor and Trustee. | | | |
| | Any documents necessary for foundation. | | | |
| | Any document necessary for rebuttal or impeachment. | | | |
| | | | | |

RITCHIE, DILLARD, DAVIES & JOHNSON, P.C's Lists of Exhibits for Trial
*In re Alexander Johnson*, Case No. 19-19816 EEB
Wednesday, December 9, 2020
Page 6 of 6

Vol 1 179

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 19-19816 EEB |
| ALEXANDER JOHNSON, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |

---

## JOINT OBJECTIONS TO EXHIBITS

---

The Debtor, Alexander Johnson ("Debtor") and the Chapter 7 Trustee, M. Stephen Peters ("Trustee"), by and through their respective undersigned counsel, hereby submit their Objections to Exhibits, and in support thereof state as follows:

1. The Debtor filed for relief under Chapter 7 of the Bankruptcy Code on November 13, 2019.

2. Ritchie, Dillard, Davies & Johnson, P.C. (the "Creditor") filed a Motion to Convert Chapter 7 Bankruptcy Case to Case under Chapter 11 of the Bankruptcy Code Pursuant to 11 U.S.C. Section 706(b) or, in the Alternative, Dismiss Bankruptcy Case Pursuant to 11 U.S.C. Section 707(b) ("Motion").

3. On September 1, 2020, the Court entered an Order and Notice of Trial by Video Conference with respect to the Motion. This Order was subsequently amended by the Court's Order Granting Motion to Continue Evidentiary Hearing and Extend Pre-Hearing Deadlines entered on September 23, 2020 (the "Scheduling Order") (Dkt. #101).

4. The Scheduling Order requires the parties to exchange exhibits on or before November 25, 2020. Additionally, on or before December 2, 2020, parties must file objections to such exhibits. The Scheduling Order also requires any objecting party to attach a copy of the contested exhibit to any objection.

5. The Creditor timely exchanged its list of witnesses and exhibits but failed to comply with the portion of the Scheduling Order requiring that those exhibits be exchanged on or before November 25, 2020. Indeed, the only three exhibits the Creditor has provided to date, labeled Creditor's Exhibits 22-24, were provided just this afternoon by way of an email that also expressed the Creditor's intent to file an amended witness and exhibit list that will alter, remove and renumber various exhibits. At this time, it is unclear to the Debtor and the Trustee exactly what the Creditor intends to designate as its exhibits.

6. Accordingly, the Debtor and Trustee object to "Creditor's Exhibits 1-34" identified in the Creditor's List of Witnesses and Exhibits filed on November 25, 2020 at Docket No. 107 as untimely. Because the Creditor failed to provide copies of its intended exhibits, the Debtor and the Trustee and have not had an opportunity to determine whether they are objectionable on other grounds, and hereby reserve their rights to make further objections upon receipt and review of the same.

WHEREFORE, the Debtor and Trustee request that the Court sustain their objections to the above exhibits and for such other and further relief the Court deems just and necessary.

Dated this 2nd day of December, 2020.

Respectfully submitted,

**WADSWORTH GARBER WARNER CONRARDY, P.C**.

*/s/ Lindsay S. Riley*
Aaron J. Conrardy, #40030
Lindsay S. Riley, #54771
2580 West Main Street, Suite 200
Littleton, Colorado 80120
303-296-1999 / 303-296-7600 FAX
aconrardy@wgwc-law.com
lriley@wgwc-law.com
*Attorneys for M. Steven Peters, Chapter 7 Trustee*

**KUTNER BRINEN, P.C.**

*/s/ Jeffrey S. Brinen*
Jeffrey S. Brinen, #39276
1660 Lincoln Street, Suite 1850
Denver, CO  80264
Telephone: (303) 832-2400
Fax: (303) 832-1510
Email: jsb@kutnerlaw.com
*Attorneys for the Debtor*

## CERTIFICATE OF SERVICE

The undersigned certifies that on December 2, 2020, I served by United States prepaid first-class mail, or electronically through CM/ECF where indicated, a copy of the **JOINT OBJECTIONS TO EXHIBITS** on all parties against whom relief is sought and those otherwise entitled to service pursuant to the Fed.R.Bankr.P. and the L.B.R. at the following addresses:

Alexander Johnson
c/o Jeffrey S. Brinen
jsb@kutnerlaw.com

Paul Moss
Paul.Moss@usdoj.gov

M. Stephen Peters
peters@msplaw.org

Joshua Sheade
joshua@berkencloyes.com

U.S. Trustee
USTPRegion19.DV.ECF@usdoj.gov

_/s/ Angela Garcia_____
For Wadsworth Garber Warner Conrardy, P.C.

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| IN RE: | Case No. 19-19816 EEB |
| ALEXANDER JOHNSON, | |
| Debtor. | Chapter 7 |

### STATUS REPORT

RITCHIE, DILLARD, DAVIES & JOHNSON, P.C. ("***Creditor***"), through undersigned counsel, hereby respectfully submits to the United States Bankruptcy Court for the District of Colorado ("***Court***") this Status Report ("***Report***"), and states as follows:

1.  Alexander Johnson ("***Debtor***") filed a voluntary petition for bankruptcy relief under Chapter 7 of Title 11 of the United States Code ("***Bankruptcy Code***") within this Court on November 13, 2019. Dkt. No. 1.[1]  The Debtor is a professional football player employed by PDB Sports, Ltd. ("***Denver Broncos***"), whose 2019 Form W-2 discloses gross wages of 2019 of $555,093.21. *See* ¶12, *infra*; *cf.* Dkt. Nos. 9, 16.

2.  M. Stephen Peters, as the duly-appointed Chapter 7 Trustee ("***Trustee***") of the Debtor's bankruptcy estate, filed a *Notice of Possible Dividends* on December 26, 2019. Dkt. No. 29.

3.  On April 20, 2020, the Creditor filed a *Motion to Convert [ ] Pursuant to 11 U.S.C § 706(b) or, in the Alternative, Dismiss [ ] Pursuant to 11 U.S.C. § 707(b)* ("***Motion***"). Dkt. No. 68.

4.  Pursuant to the *Minute Order* dated September 1, 2020, the Court ordered that "[p]arties may conduct discovery…pursuant to L.B.R. 7026-2" and set a one-half day evidentiary hearing ("***Hearing***") on the Motion, and objections [Dkt. Nos. 89-90] thereto. Dkt. No. 95. The Hearing is currently set to commence on December 9, 2020. Dkt. No. 101 at p.1.

### A.     Pre-Hearing Discovery Matters

5.  On September 11, 2020, the Creditor served the Debtor with the *First Set of Interrogatories and Requests for Production of Documents* in the form attached hereto as **EXHIBIT 1**, whereby seeking information primarily related to the Debtor's income. Such requests followed with written correspondences and telephone calls by and between the Debtor and Creditor up to and through September 24, 2020, of which written correspondences dated September 17 through September 21, 2020 are attached hereto as **EXHIBIT 2** and incorporated by reference herein

6.  Such discovery dispute remained unresolved as of October 30, 2020, when the Debtor and Creditor agreed to limit the discovery requests to production of documents for the period commencing on November 13, 2017 instead of November 13, 2015.

---

[1]   Unless otherwise stated, "Dkt. No. ____" refers to the docket in the above-captioned Chapter 7 bankruptcy case styled as: *In re Johnson*, Case No. 19-19816 EEB ("***Bankruptcy Case***").

7.    Notwithstanding agreeing to the modified requests, the Debtor retreated to his original assertion "that the requests are unwarranted" and solely disclosed "documents that were provided to the Trustee," pursuant to electronic correspondences dated November 6, 2020 attached hereto as **EXHIBIT 3** and incorporated by reference herein. Furthermore, the Debtor **failed to produce his pay advices and tax returns, which he admitted was relevant to the Hearing during the October 30 telephone call and previously provided to the Trustee in accordance with 11 U.S.C. § 521(e)(2)**.

8.    As the Debtor reiterated his refusal to comply with FED.R.CIV.P. 34, as made applicable herein under FED.R.BANKR.P. 7034, fifty-six (56) days after service of the discovery requests, the Creditor sought the requested documents and records by and through *Subpoena[s] to Produce…* delivered to third-parties on November 10, 2020 in the form attached hereto as **EXHIBIT 4** and incorporated by reference herein. As of this Report, the Creditor has received production from Eastman Credit Union and PayPal, Inc., partial production from the Denver Broncos, and a request for additional time from LoanCare, LLC on behalf of Stearns Lending, LLC.

9.    The Creditor attempted to avoid the need for the Court to intervene by delivering said subpoenas and continuing to pursue resolution of the discovery dispute with the Debtor by and through six (6) e-mails and four (4) telephone calls between November 19 through November 25, 2020. However, all such efforts concluded by either voicemail or counsel for the Debtor agreeing to call back but not following through.

10.    As evading communication is not ordinary course for counsel of the Debtor, the Creditor questions whether such efforts was not part of the larger effort to escape production of documents damaging to the Debtor's defense against conversion.

### B.   Communication from the Trustee Followed by Contrary Action

11.    Pursuant to a telephone conference on September 11, 2020, counsel for the Trustee advised that the Trustee does not oppose conversion of this Bankruptcy Case to a case under Chapter 11 of the Bankruptcy Code as conversion would benefit all beneficiaries of the bankruptcy estate including, but not limited to, holders of administrative expenses. Furthermore, the Trustee suggested that the Creditor withdraw its request for dismissal under 11 U.S.C. § 707(b) by rationalizing that the Creditor would benefit more from liquidation of non-exempt assets than pursuing a civil action.

12.    Due to the September 11 telephone call with the Trustee, the *Joint List of Witnesses and Exhibits* ("***Joint LWE***") filed on November 25, 2020 surprised the Creditor. Dkt. No. 105. Following the Joint LWE and *Joint Objections to Exhibits* ("***LWE Objection***") filed on December 2, 2020 [Dkt. No. 108], the Creditor asked the Trustee how he is acting in the best interest of all beneficiaries by now challenging conversion considering unsecured creditors is the only unprotected class either under Chapter 7 or Chapter 11 by electronic means on December 3, 2020 attached hereto as **EXHIBIT 5** and incorporated by reference herein.

13.    On December 7, 2020, the Trustee advised the Creditor that he intends to provide his logic as to why a professional football player with 2019 gross wages of $555,093.21 and a contracted yearly salary of $393,000.00 for the 2019 season and $423,000.00 for the 2020

season will not pay a higher dividend to unsecured creditors within a case under Chapter 11 within a more detailed response the week of December 14, 2020. Exh. 5 at pp.3-4.

14.   As the estate will distribute dividends, the Creditor suspects that the Trustee seeks to keep the Debtor within the confines of Chapter 7 for reasons contrary to his statutory duties.

### C.   Efforts to Resolve Joint Objection Thwarted by the Trustee

15.   Pursuant to two (2) telephone conferences with counsel for the Debtor on December 3, 2020, undersigned explained his proof of providing the Creditor's exhibits by electronic means on or about November 25, 2020 and asked why the Debtor failed to mention not receiving such disclosures during a call on November 30, 2020, which prompted the Debtor to obtain the Trustee's authorization to propose that the Creditor allow the Debtor and Trustee (hereinafter, collectively "***Respondents***") up to and through December 7, 2020 to object to the Creditor's exhibits as consideration for withdrawing the Joint Objection. Such telephone call concluded with the Creditor accepting the Respondents' proposal and agreeing, at the Debtor's request, to draft the stipulation.

16.   Upon the Creditor drafting and presenting the stipulation to the Respondents on December 4, 2020, the Trustee advised that "[they]'ll discuss [the] proposal…and get back to you" by and through a correspondence attached hereto as **EXHIBIT 6** and incorporated by reference herein. Such assertion that the stipulation was a proposal and not a firm agreement – analogous to the Debtor's foreseeable argument to the aforementioned October 30 discovery dispute resolution – led to an exchange of correspondences [Exh. 6 at pp.1-3] and ensuing phone call wherein the Debtor offered for the Respondents to withdraw the Joint Objection if the Creditor allows for objections to exhibits at the Hearing.

17.   The December 4 telephone call concluded with the Debtor requesting an answer to the second proposal on December 7, 2020, but before the Creditor could either accept or reject, the Trustee again changed the terms and conditions pursuant to a correspondence on December 6, 2020. *Id.* at p.6. As of this Report, the Debtor has abstained from "weigh[ing] in" on the constantly changing terms as requested by the Trustee. *Id.*

WHEREFORE, Ritchie, Dillard, Davies & Johnson, P.C. respectfully requests that the United States Bankruptcy Court for the District of Colorado intervene and assist with resolving the above-enumerated issues and disputes arising between September 11, 2020 and the date of this Report; and grant such other and further relief as this Court deems just and appropriate.

DATED this 7th of December, 2020.

Respectfully submitted,
BERKEN CLOYES, P.C.

Joshua B. Sheade, Atty. Reg. No. 46993
1159 Delaware Street
Denver, Colorado 80204
Tel: (303) 623-4357
Fax: (720) 554-7853
Email: joshua@berkencloyes.com
*Attorneys for the Creditor*

3

## CERTIFICATE OF SERVICE

The undersigned certifies that on December 7, 2020, I served by the Case Management/Electronic Case Filing ("*CM/ECF*") system, pre-paid first class mail and/or other acceptable means (i.e. via hand delivery or electronic mail), a true and correct copy of the foregoing **STATUS REPORT** on all parties against whom relief is sought and those otherwise entitled to service pursuant to the FED.R.BANKR.P. and these L.B.R., at such addresses as follows:

### Via CM/ECF:

M. Stephen Peters, Esq.
CHAPTER 7 TRUSTEE
P.O. Box 4610
Frisco, Colorado 80443

Aaron J. Conrardy, Esq.
Lindsay Riley, Esq.
WADSWORTH GARBER WARNER CONRARDY, P.C.
2580 West Main Street, Suite 200
Littleton, Colorado 80120

Abbey Dreher, Esq.
BARRETT FRAPPIER &WEISSERMAN, LLP
4004 Belt Lane Road, Suite 100
Addison, Texas 75001

Jeffrey S. Brinen, Esq.
KUTNER BRINEN, P.C.
1660 Lincoln Street, Suite 1850
Denver, Colorado 80264

Paul Moss, Esq.
OFFICE FOR THE UNITED STATES TRUSTEE
Byron G. Rogers Federal Building
1961 Stout Street, Suite 12-200
Denver, Colorado 80294

By: _____

Joshua B. Sheade, Esq.
For BERKEN CLOYES, P.C.

4

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

EXHIBIT
1

IN RE:

ALEXANDER JOHNSON,

Debtor.

Case No. 19-19816 EEB

Chapter 7

## RITCHIE, DILLARD, DAVIES & JOHNSON, P.C.'S FIRST SET OF INTERROGATORIES
## AND REQUESTS FOR PRODUCTION OF DOCUMENTS TO ALEXANDER JOHNSON

RITCHIE, DILLARD, DAVIES & JOHNSON, P.C. ("*CREDITOR*"), through undersigned counsel, hereby respectfully propounds and serves these First Set of Interrogatories and Requests for Production of Documents ("*Discovery Requests*") upon Alexander Johnson ("*DEBTOR*"), pursuant to FED.R.CIV.P. 26 33 and 34, as made applicable to the contested matter arising from the *Motion to Convert Chapter 7 Bankruptcy Case to Case Under Chapter 11 Of the Bankruptcy Code Pursuant to 11 U.S.C § 706(b) or, in the Alternative, Dismiss Bankruptcy Case Pursuant to 11 U.S.C. § 707(b)* and objections thereto filed within the above-captioned bankruptcy case through FED.R.BANKR.P. 7026, 7033, 7034 and 9014, and respectfully requests as follows:

## I.    INSTRUCTIONS

1.     DEBTOR shall answer each interrogatory separately and fully, in writing and under oath, pursuant to the requirements of FED.R.CIV.P. 33(b).

2.     In responding to these Discovery Requests, DEBTOR is required to respond based upon both: (a) information known or available to DEBTOR or in his possession, custody, or control; and (b) information known or available to, or in the possession, custody, or control of his agents, representatives, attorneys, accountants, or any other person under his control.

3.     These Discovery Requests shall be deemed continuing and DEBTOR shall be under a duty to supplement his responses to these Discovery Requests, pursuant to FED.R.CIV.P. 26 and FED.R.BANKR.P. 7026.

4.     In responding to these Discovery Requests, CREDITOR respectfully requests that DEBTOR restate and type each discovery request immediately before setting forth his response.

5.     Production of documents and tangible things requested hereby shall be made at the offices of **BERKEN CLOYES, P.C., 1159 Delaware Street, Denver, Colorado 80204**; shall begin no later than thirty (30)-days after DEBTOR is served with these Discovery Requests or, if sooner, at such other time and place as may be mutually agreed upon between the CREDITOR and DEBTOR ("*Parties*"); and shall continue during reasonable business hours and for consecutive business days thereafter until completed. DEBTOR shall produce documents as they are kept in the ordinary course of business or shall organize and label them to correspond with the categories in these Discovery Requests.

6.      If DEBTOR objects to any of the following Discovery Requests on grounds of vagueness or ambiguity, or that it does not understand the meaning of a word or phrase, then for each such discovery request DEBTOR shall set forth his own clarification or good faith definition of the word or phrase in doubt, together with the source of his definition, and respond fully to such discovery request using DEBTOR's clarification or definition.

7.      If DEBTOR cannot answer any discovery request in full after exercising due diligence to obtain the information necessary to do so, DEBTOR shall answer to the extent possible, stating with specificity the efforts made to secure the requested information and the reason(s) for his inability to answer the remainder of the discovery request.

8.      With respect to each of the following Discovery Requests, if DEBTOR lacks all or part of the information necessary to fully answer any discovery request, but knows the identity of another person(s), entity(ies), or source(s) who or which has or may have such information, DEBTOR shall identify such other person(s), entity(ies), or source(s) and for each, DEBTOR shall state his understanding of his, her, or his knowledge that is or may be pertinent to the subject matter(s) of such discovery request(s).

9.      In the event DEBTOR withholds documents and/or other information requested within these Discovery Requests on the basis that such materials are privileged or protected from disclosure as work product, or for any other reason, DEBTOR shall state the nature of the privilege and/or protection and provide the following information with respect to each document withheld:

   a.     The date appearing on the document and, if it has no date, the date or approximate date on which it was prepared;

   b.     The name and current address of the person(s) who signed the document and, if it was not signed, the name and current address of the person(s) who prepared it;

   c.     The name and current address of the person(s) to whom the document was directed and the person(s) to whom any copy of the document was directed or provided;

   d.     A description of the nature of the document (e.g., correspondence, memorandum, note, etc.);

   e.     A general description of the subject matter(s) of the document;

   f.     If the document reflects or refers to a meeting or conversation, identify all persons who were present at or parties to the meeting or conversation and describe who those persons are;

   g.     The name and current address of the person(s) having present possession, custody, or control of the document and all copies thereof; and

   h.     The grounds on which the document has been withheld.

10.     If DEBTOR knows that any document(s) falling within the scope of these Discovery Requests has been destroyed, lost, or is unavailable for any reason, DEBTOR shall produce a written list of all such documents, identifying each document as follows: (i) the request(s) the document pertains to; (ii) date; (iii) addressor's or author's name, title, and address; (iv) addressee's name, title, and address; (v) the name and address of every

2

other person to whom the document was sent or shown, including copies thereof; (vi) the nature of the document; (vii) the subject matter of the document; (viii) the best description possible of the exact content of the document; and (ix) the reason for his destruction or unavailability.

11.     If DEBTOR invokes the provisions of FED.R.CIV.P. 33(c) - the option to produce business records - then DEBTOR shall identify each such document from which the answer to any discovery request may be derived or ascertained, state the time and place DEBTOR will afford the CREDITOR a reasonable opportunity to examine or inspect such document(s), identify the present location of such document(s), and, if possible, enclose a copy of such document(s) with the responses to these Discovery Requests.

12.     All DOCUMENTS produced shall be identified as to their nature and shall be specifically designated as to which number of the production requests they respond.

## II.     DEFINITIONS

Unless otherwise indicated or necessarily required by the context of a certain and specific discovery question, the capitalized terms and definitions identified hereinafter shall apply throughout the remainder of these Discovery Requests, as follows:

1.     "*Person*" means any natural person, firm, association, organization, partnership, business, corporation, or other legal entity.

2.     "*You*" or "*Your*" means Alexander Johnson as the DEBTOR in the above-captioned Chapter 7 bankruptcy case – styled as *In re Johnson*, Case No. 19-19816 EEB – together with his agents, representatives, attorneys, accountants, auditors, investigators, and all others acting on DEBTOR's behalf.

3.     "*Bankruptcy Court*" means the United States Bankruptcy Court for the District of Colorado.

4.     "*Bankruptcy Case*" means the certain and specific bankruptcy case commenced by DEBTOR within the Bankruptcy Court under Chapter 7 of Title 11 of the United States Code ("*Bankruptcy Code*"); styled as *In re Johnson*, Case No. 19-19816 EEB.

5.     "*Petition Date*" means November 13, 2019, which is the date that the DEBTOR commenced his Bankruptcy Case.

6.     "*Contested Matter*" means the certain and specific dispute arising within the Bankruptcy Case concerning the *Motion to Convert Chapter 7 Bankruptcy Case to Case Under Chapter 11 Of the Bankruptcy Code Pursuant to 11 U.S.C § 706(b) or, in the Alternative, Dismiss Bankruptcy Case Pursuant to 11 U.S.C. § 707(b)* filed by CREDITOR and objections thereto filed by DEBTOR and M. Stephen Peters, Esq., Chapter 7 Trustee duly-appointed to administer the bankruptcy estate of DEBTOR, which the Bankruptcy Court has set for a trial to commence on October 26, 2020 at 9:30 a.m..

7.     "*CB45*" means CB45, LLC; a certain and specific Florida limited liability company formed on September 19, 2018 by and through filing Electronics Articles of Organization with the Florida

3

Department of State Division of Corporations at Document No. L18000223429, which identifies DEBTOR as manager, Elam Abram as a member and principle place of business of 6231 PGA Boulevard, Suite 104-203, Palm Beach Gardens, Florida 33418; together with its agents, representatives, attorneys, accountants, auditors, investigators, and all others acting on its behalf.

8. "*Mr. Elam*" means Abram Elam, the person identified as registered agent for CB45 within public records maintained by the Florida Department of State Division of Corporations, wherein he discloses a principal place of business and mailing address of 6231 PGA Boulevard, Suite 104-203, Palm Beach Gardens, Florida 33418; together with his agents, representatives, attorneys, accountants, auditors, investigators, and all others acting on his behalf.

9. "*Bestia Principal*" means Bestia Principal LLC, a certain and specific California limited liability company formed on August 2, 2019 by and through filing Articles of Organization with the California Secretary of State at Entity Filing No. 201921810446, and filed a Statement of Information on August 2, 2019 that identifies Eric Miller as manager, DEBTOR as an additional member, principle place of business of 9100 Rocky Creek Road, Lower Lake, California 95457 and a mailing address of 926 Windsor Green Boulevard, Goodlettsville, Tennessee 37072; together with its agents, representatives, attorneys, accountants, auditors, investigators, and all others acting on its behalf.

10. "*Mr. Miller*" means Eric A. Miller, the person identified as registered agent for Bestia Principal within public records maintained by the California Secretary of State, wherein he discloses a service of process address of 21177 Calistoga Road, Middletown, California 95461; together with his agents, representatives, attorneys, accountants, auditors, investigators, and all others acting on his behalf.

11. "*California Property*" means a certain and specific real property disclosed by DEBTOR within *Schedule A/B: Property*, as filed within the Bankruptcy Case at Docket No. 11, known by street and number as 9100 Rocky Creek Road, Lower Lake, California 95457.

12. "*NFL 401(k)*" means a certain and specific retirement or pension account disclosed by DEBTOR disclosed by DEBTOR under paragraph 21 of *Schedule A/B: Property*, as filed within the Bankruptcy Case at Docket No. 11, to maintain the sum of $19,639.00 as of the Petition Date.

13. "*Advisor*" means a certain and specific person undisclosed by the Debtor under *Schedule G: Executory Contracts and Unexpired Leases* – filed at Docket No. 14 – but identified as the recipient of "Advisory Fees" in the monthly amount of $667.00 under *Schedule J: Your Expenses*, as filed within the Bankruptcy Case at Docket No. 17; together with such persons agents, representatives, attorneys, accountants, auditors, investigators, and all others acting on such persons behalf.

14. "*NFL*" means the National Football League, NFL Enterprises, LLC and/or National Football League Inc., a trade association that governs, comprises of and is financed by its thirty-two (32) member teams, which maintains a principal place of business at 345 Park Avenue, 7th Floor, New York, NY 10154; together with its agents, representatives,

attorneys, accountants, auditors, investigators, and all others acting on its behalf.

15.    "*Denver Broncos*" means PDB Sports, LTD., *doing business as* Denver Broncos Football Club a certain and specific Colorado limited partnership formed on April 1, 1992 by and through filing a Certificate of Limited Partnership with the Colorado Secretary of State at Document No. 19921033617, which maintains a principal place of business known by street and number as 13655 Broncos Parkway, Englewood, Colorado 80112, and whom is the employer of DEBTOR as of the Petition Date; together with its agents, representatives, attorneys, accountants, auditors, investigators, and all others acting on its behalf.

16.    "*Document*", "*Documents*", or "*Documentation*" means all items described as documents in FED.R.CIV.P. 34(a), as made applicable to the Adversary Proceeding under FED.R.BANKR.P. 7034, and FED.R.EVID. 100, including, but not limited to, as follows: any writings (whether electronic, handwritten, typed, printed or otherwise made), e-mails, electronic data, graphs, charts, tapes or recordings, notebooks, work papers, memoranda, drafts, instructions, diaries, calendars, appointment books, transcripts, reports, histories, summaries, studies, tests, evaluations, appraisals, transcripts of telephone conversations, compilations, lists, information stored in computers or other data storage, schedules, budgets, estimates, opinions, purchase orders, charge orders, acknowledgments, distributions, requisitions, invoices, authorizations, statements, vouchers, checks, canceled checks, bank statements, warranties, representations, accounting records, worksheets, contracts, inter-office or intra-office memoranda, all attachments to the foregoing and all drafts and revisions of drafts of any kind, including drafts, working papers, each copy, copies or reproductions of any of the foregoing, not identical to the original and any and all other written, printed, typed or otherwise recorded matter or whatever nature, regardless of whether they are originals, duplicates or copies.

17.    "*Communication*" means the transmittal of information by any means (in the form of facts, ideas, inquiries or otherwise), and shall include all written, oral, electronic, e-mail, or telephone inquiries, messages, letters, memoranda, discussions, conversations, negotiations, agreements, understandings, meetings, and interviews.

18.    "*Identify*" **when used with regard to a PERSON** means to state the person's full name, last known address and telephone number and relationship to You, and if the person is not a natural person, to state in addition the person's organizational nature (i.e., joint venture, corporation, or partnership), and to state the full name of the officer, agent or employee acting on behalf of the non-natural person.

19.    "*Identify*" **when used with respect to a DOCUMENT or DOCUMENTS** means:

   a.    To specify the nature of the documents (e.g., letter, memorandum, credit report, telephone call sheet, etc.);

   b.    To state the date, if any appearing on the document, or if none, the date upon which such document was prepared;

   c.    To describe in general the subject matter of the document;

   d.    To identify each person who wrote, signed, dictated or otherwise participated in the preparation of the document;

**Ritchie, Dillard, Davies & Johnson, P.C.'s Status Report
EXHIBIT 1**

e.      To identify each person, if any, who was an addressee thereof;

f.      To state the file or files in which such document is or has been placed or assigned;

g.      To state or give the identifying symbol of such document; and

h.      To identify the person or persons having control of or control over such document.

20.     "*Identify*" __when used with respect to a DATE__ means to state the exact day, month and year, if ascertainable, or if not ascertainable, the best approximation, including any relationship in time to other events.

21.     "*Relate To*", "*Relates To*", "*Related To*", or "*Relating To*" mean to support, tend to prove or disprove, refer to, summarize, reflect, pertain to, constitute, contain, embody, mention, show, comprise, evidence, discuss, describe, address, or comment upon.

### III.      __DISCOVERY REQUESTS__

Please be advised that these Discovery Requests are continuing and impose upon You the burden to supplement Your responses in accordance with FED.R.CIV.P. 26(e), as made applicable to this Proceeding under FED.R.BANKR.P. 7026.

### A.      __INTERROGATORRIES.__

1.      INTERROGATORY NO. 1: Identify all persons who were consulted, provided information or assisted with preparation of YOUR responses to these Discovery Requests and provide for each such person their relation to YOU together with a description of the nature of the consultation, the assistance or information provided.

2.      INTERROGATORY NO. 2: Identify each, every, any and all persons whom YOU pay the Advisory Fees, in whole or in part, as YOUR Advisor and provide for each such person their relation to YOU and the date YOU entered into, executed and/or made any oral or written agreements and/or contracts that created and/or establishes the relationship, rights and responsibilities among, by and between YOU and each and every Advisor.

3.      INTERROGATORY NO. 3: Identify each, every, any and all payments you tendered to Mr. Elam from November 13, 2015 up to and through the Petition Date, and for each payment identify the transaction date, the transaction amount, the form of payment, the account from which YOU paid Mr. Elam, the originating source of funds YOU received to pay Mr. Elam and the services performed, materials performed or other adequate consideration YOU received in exchange for each payment.

4.      INTERROGATORY NO. 4: Identify each, every, any and all assets of real and personal property, both tangible and intangible, that Mr. Elam possessed, maintained, controlled and/or held in trust on YOUR behalf as custodian, power of attorney, trustee, advisor, manager, agent, assistant or otherwise from November 13, 2015 up to and through the Petition Date including, but not limited to, commercial or residential real property, raw materials, goods, financial depository accounts, investments accounts, retirement accounts, security trading accounts, trademarks, logos, websites, electronic mail addresses, ownership in other entities, stocks, bonds, furniture, fixtures and equipment.

6

5.     INTERROGATORY NO. 5: Identify each, every, any and all payments you tendered to Mr. Miller from November 13, 2015 up to and through the Petition Date, and for each payment identify the transaction date, the transaction amount, the form of payment, the account from which YOU paid Mr. Miller, the originating source of funds YOU received to pay Mr. Miller and the services performed, materials performed or other adequate consideration YOU received in exchange for each payment.

6.     INTERROGATORY NO. 6: Identify each, every, any and all assets of real and personal property, both tangible and intangible, that Mr. Miller possessed, maintained, controlled and/or held in trust on YOUR behalf as custodian, power of attorney, trustee, advisor, manager, agent, assistant or otherwise from November 13, 2015 up to and through the Petition Date including, but not limited to, commercial or residential real property, raw materials, goods, financial depository accounts, investments accounts, retirement accounts, security trading accounts, trademarks, logos, websites, electronic mail addresses, ownership in other entities, stocks, bonds, furniture, fixtures and equipment

7.     INTERROGATORY NO. 7: Identify the operations of CB45 by and through explaining, in detail, the names of its officers, directors, members and agents, goods sold, services rendered, sources of revenue, sources of expenses, gross revenue and net revenue on a monthly basis from November 13, 2017 up to and through the Petition Date.

8.     INTERROGATORY NO. 8: Identify each, every, any and all assets of real and personal property, both tangible and intangible, that CB45 owned, possessed, maintained and/or controlled from November 13, 2017 up to and through the Petition Date including, but not limited to, commercial or residential real property, raw materials, goods, financial depository accounts, investments accounts, retirement accounts, security trading accounts, trademarks, logos, websites, electronic mail addresses, ownership in other entities, stocks, bonds, furniture, fixtures and equipment.

9.     INTERROGATORY NO. 9: Identify the operations of Bestia Principal by and through explaining, in detail, the names of its officers, directors, members and agents, goods sold, services rendered, sources of revenue, sources of expenses, gross revenue and net revenue on a monthly basis from November 13, 2017 up to and through the Petition Date.

10.    INTERROGATORY NO. 10: Identify each, every, any and all assets of real and personal property, both tangible and intangible, that Bestia Principal owned, possessed, maintained and/or controlled from November 13, 2017 up to and through the Petition Date including, but not limited to, commercial or residential real property, raw materials, goods, financial depository accounts, investments accounts, retirement accounts, security trading accounts, trademarks, logos, websites, electronic mail addresses, ownership in other entities, stocks, bonds, furniture, fixtures and equipment.

11.    INTERROGATORY NO. 11: Identify each, every, any and all persons and/or entities that prepared and/or filed each of YOUR federal and state tax returns together with any and all schedules, attachments, documents, correspondence and exhibits filed with said returns at any time between January 1, 2017 and the Petition Date, and for each person and/or entity who assisted in the preparation of each return and/or work papers proposed in connection

7

with and/or related to such return, identify each such tax return, each person and/or entity, the full name and address of the present custodian of each return, and the full name and address of the present custodian of the business records and source documents which were used to support the data listed on each return.

12.     INTERROGATORY NO. 12: Identify each, every, any and all persons and/or entities that prepared and/or filed each of each of every federal and state tax returns together with any and all schedules, attachments, documents, correspondence and exhibits filed with said returns at any time between January 1, 2017 and the Petition Date for any persons, entities, partnerships and/or other organizations for which YOU were a party – including, but not limited to, CB45 and Bestia Principal – whether individually, as a named agent, member, officer, director, owner or partner for any such entities and/or organization, as a party to a jointly filed return or as a party to a multi-party return, and for each person and/or entity who assisted in the preparation of each return and/or work papers proposed in connection with and/or related to such return, identify each such tax return, each person and/or entity, the full name and address of the present custodian of each return, and the full name and address of the present custodian of the business records and source documents which were used to support the data listed on each return.

13.     INTERROGATORY NO. 13: Identify each, every, any and all persons and/or entities that performed accounting services on behalf of YOU and/or any persons, entities, partnerships and/or other organizations for which YOU were a party – including, but not limited to, CB45 and Bestia Principal – whether individually, as a named agent, member, officer, director, owner or partner for any such entities and/or organization at any time between January 1, 2017 and the Petition Date, and for each person and/or entity who rendered any such accounting services, identify each and every such person and/or entity, the time period each person and/or entity performed such work and the name of the person(s) or entity(ies) for which the work was performed.

14.     INTERROGATORY NO. 14: Identify each and every instance from November 13, 2015 up to and through the Petition Date that YOU purchased any legal, equitable or beneficial interest in any real property, specifying, for each such instance, the address of the property purchased, the approximate date of the purchase, the full name(s) and address(es) of the seller(s), the purchase price, the nature of YOUR ownership interest, the name and address of each person and/or entity with whom YOU purchased the property, and the name and address of the present custodian and location of all closing documents pertaining to each purchase.

15.     INTERROGATORY NO. 15: Identify each and every instance from November 13, 2015 up to and through the Petition Date that YOU sold any legal, equitable or beneficial interest in any real property, specifying, for each such instance, the address of the property sold, the approximate date of the sale, the full name(s) and address(es) of the purchaser(s), the sale price, the nature of YOUR ownership interest at the time of the sale, the name and address of each person and/or entity with whom YOU owned the property at the time of sale, and the name and address of the present custodian and location of all closing documents pertaining to each sale.

**Ritchie, Dillard, Davies & Johnson, P.C.'s Status Report
EXHIBIT 1**

16.    INTERROGATORY NO. 16: Identify each residence address YOU have used at any time between November 13, 2015 up to and through the Petition Date, and for each such instance identify each, every, any and all legal, equitable and/or beneficial interest YOU held, possessed, maintained and/or controlled in said real property YOU identified as YOUR residence address.

17.    INTERROGATORY NO. 17: Identify each and every business banking account, internet account, investment account, security trading account, certificate of deposit account and/or any other financial depository account possessed, maintained and/or controlled by any entity, organization or partnership in which YOU used at any time between November 13, 2017 up to and through the Petition Date, and for each such account identify the full name of the account owner, financial institution, account name and account number.

18.    INTERROGATORY NO. 18: Identify each and every third party's banking account, internet account, investment account, security trading account, certificate of deposit account and/or any other financial depository account possessed, maintained and/or controlled by any party other than YOU in which YOU used at any time between November 13, 2017 up to and through the Petition Date, and for each such account identify the full name of the account owner, financial institution, account name and account number.

19.    INTERROGATORY NO. 19: Identify by legal name, state of incorporation, and tax identification number, all business entities of any type in which YOU have or have had an ownership interest of any kind, received any income from, and/or have acted as a director, member, officer, shareholder, and/or principal for at any time between November 13, 2015 up to and through the Petition Date including, but not limited to, CB45 and Bestia Principal.

20.    INTERROGATORY NO. 20: Identify by name, business and account number each financial account of any kind, whether at a bank, brokerage or other financial institution or business, maintained at any time by any and all entities, partnerships and/or other organizations for which YOU were a party – including, but not limited to, CB45 and Bestia Principal – whether individually, as a named agent, member, officer, director, owner or partner for any such entities and/or organization, and for each such account identify the location and custodian of all records thereof.

21.    INTERROGATORY NO. 21: Identify by full name and address each source of income of any kind YOU have had at any time between November 13, 2017 up to and through the Petition Date.

22.    INTERROGATORY NO. 22: Identify each, every, any and all persons and/or entities that acted, conducted business and/or negotiated a contractual agreement on your behalf related to, arising from and/or concerning YOU playing professional football including, but not limited to, employment YOU have had or have considered as a professional athlete within the NFL under executory contracts and/or agreements by and between YOU and the Denver Broncos and/or any other organization within the NFL, endorsement agreements, investments YOU have made or have considered making, and for each such person or entity identify their principal place of business and the total sum YOU have paid each of them

**Ritchie, Dillard, Davies & Johnson, P.C.'s Status Report**
**EXHIBIT 1**

from November 13, 2015 up to and through the Petition Date.

**B.**     **REQUEST FOR PRODUCTION OF DOCUMENTS.**

Kindly segregate and produce for inspection and copying, or in lieu thereof, produce a true and correct copy of each and every Document related to such Requests for Production of Documents, as follows:

1.     REQUEST FOR PRODUCTION OF DOCUMENTS NO. 1: Produce All Documents, records and information to include, but not limited to, bank statements, check ledgers, cancelled checks, deposit slips, teller and/or mobile deposited checks and wire transfer records for any and all accounts including, but not limited to, checking accounts, savings accounts, money market accounts, investment accounts, retirement accounts, certificate of deposit accounts, trust accounts, operating accounts, payroll accounts, business checking accounts and mobile payment services including, but not limited to, Venmo, Paypal, Zelle, Apple Pay and/or Google Pay that YOU maintained, possessed and/or controlled with any bank, financial or brokerage institution or business of any kind either independently, jointly with any third-party and/or for which YOU had signatory authority between November 13, 2015 up to and through the date of these Discovery Requests.

2.     REQUEST FOR PRODUCTION OF DOCUMENTS NO. 2: Produce All Documents, records and information to include, but not limited to, bank statements, check ledgers, cancelled checks, deposit slips, deposited checks and wire transfer records for any and all accounts including, but not limited to, checking accounts, savings accounts, money market accounts, investment accounts, retirement accounts, certificate of deposit accounts, trust accounts, operating accounts, payroll accounts, business checking accounts and mobile payment services that CB45 maintained, possessed and/or controlled with any bank, financial or brokerage institution or business of any kind either independently, jointly with any third-party and/or for which YOU had signatory authority between November 13, 2015 up to and through the date of these Discovery Requests.

3.     REQUEST FOR PRODUCTION OF DOCUMENTS NO. 3: Produce All Documents, records and information to include, but not limited to, bank statements, check ledgers, cancelled checks, deposit slips, deposited checks and wire transfer records for any and all accounts including, but not limited to, checking accounts, savings accounts, money market accounts, investment accounts, retirement accounts, certificate of deposit accounts, trust accounts, operating accounts, payroll accounts, business checking accounts and mobile payment services that Bestia Principal maintained, possessed and/or controlled with any bank, financial or brokerage institution or business of any kind either independently, jointly with any third-party and/or for which YOU had signatory authority between November 13, 2015 up to and through the date of these Discovery Requests.

4.     REQUEST FOR PRODUCTION OF DOCUMENTS NO. 4: Produce All Documents, records and information to include, but not limited to, bank statements, check ledgers, cancelled checks, deposit slips, deposited checks and wire transfer records for any and all accounts including, but not limited to, checking accounts, savings accounts, money market accounts, investment accounts, retirement accounts, certificate of deposit accounts, trust accounts, operating accounts, payroll accounts, business checking accounts and mobile

payment services that each, every, any and all persons, entities, organizations, corporations, limited liability companies, joint ventures, partnerships and/or sole proprietorships other than CB45 and Bestia Principal, for which YOU individually or as a named agent, member, officer, director, owner or partner of any such entities, partnerships and/or organizations maintained, possessed and/or controlled with any bank, financial or brokerage institution or business of any kind either independently, jointly with any third-party and/or for which YOU had signatory authority between November 13, 2015 up to and through the date of these Discovery Requests.

5.  REQUEST FOR PRODUCTION OF DOCUMENTS NO. 5: Produce All Documents, records and information to include, but not limited to, bank statements, check ledgers, cancelled checks, deposit slips, deposited checks and wire transfer records for any and all accounts including, but not limited to, checking accounts, savings accounts, money market accounts, investment accounts, retirement accounts, certificate of deposit accounts, trust accounts, operating accounts, payroll accounts, business checking accounts and mobile payment services that Mr. Elam possessed, maintained, controlled and/or held in trust, independently, jointly with any third-party and/or for which he had signatory authority on YOUR behalf as custodian, power of attorney, trustee, advisor, manager, agent, assistant or otherwise with any bank, financial or brokerage institution or business of any kind either individually or as a named agent, member, officer, director, owner, partner or investor for any persons, entities, organizations, corporations, limited liability companies, joint ventures, partnerships and/or sole proprietorships for which YOU invested into, funded, maintained, possessed and/or controlled from November 13, 2015 up to and through the date of these Discovery Requests.

6.  REQUEST FOR PRODUCTION OF DOCUMENTS NO. 6: Produce All Documents, records and information to include, but not limited to, bank statements, check ledgers, cancelled checks, deposit slips, deposited checks and wire transfer records for any and all accounts including, but not limited to, checking accounts, savings accounts, money market accounts, investment accounts, retirement accounts, certificate of deposit accounts, trust accounts, operating accounts, payroll accounts, business checking accounts and mobile payment services that Mr. Miller possessed, maintained, controlled and/or held in trust independently, jointly with any third-party and/or for which he had signatory authority on YOUR behalf as custodian, power of attorney, trustee, advisor, manager, agent, assistant or otherwise with any bank, financial or brokerage institution or business of any kind either individually or as a named agent, member, officer, director, owner, partner or investor for any persons, entities, organizations, corporations, limited liability companies, joint ventures, partnerships and/or sole proprietorships for which YOU invested, funded, maintained, possessed and/or controlled from November 13, 2015 up to and through the date of these Discovery Requests.

7.  REQUEST FOR PRODUCTION OF DOCUMENTS NO. 7: Produce All Documents, records and information to include, but not limited to, bank statements, check ledgers, cancelled checks, deposit slips, deposited checks and wire transfer records for any and all accounts including, but not limited to, checking accounts, savings accounts, money market accounts, investment accounts, retirement accounts, certificate of deposit accounts, trust accounts, operating accounts, payroll accounts, business checking accounts and mobile

11

payment services that each, every, any and all Advisor(s) possessed, maintained, controlled and/or held in trust independently, jointly with any third-party and/or for which he had signatory authority on YOUR behalf as custodian, power of attorney, trustee, advisor, manager, agent, assistant or otherwise with any bank, financial or brokerage institution or business of any kind either individually or as a named agent, member, officer, director, owner, partner or investor for any persons, entities, organizations, corporations, limited liability companies, joint ventures, partnerships and/or sole proprietorships for which YOU invested into, funded, maintained, possessed and/or controlled from November 13, 2015 up to and through the date of these Discovery Requests.

8.     REQUEST FOR PRODUCTION OF DOCUMENTS NO. 8: Produce All Documents, records and information to include, but not limited to, monthly statements, account ledgers, transaction ledgers, quarterly reports, annual reports, check ledgers, cancelled checks, deposit slips, deposited checks, mobile payment transfers and wire transfer records for YOUR NFL 401(k) from November 13, 2017 up to and through the Petition Date.

9.     REQUEST FOR PRODUCTION OF DOCUMENTS NO. 9: Produce All Documents, records and corporate formalities including, but not limited to, Operating Agreements, Bylaws, Minutes of Meetings, Corporate Resolutions, actions occurring without meetings minutes and waivers of notices for and/or related to CB45, Bestia Principal, and each, every, any and all other persons, entities, organizations, corporations, limited liability companies, joint ventures, partnerships and/or sole proprietorships for which YOU invested into, funded, maintained, possessed and/or controlled from November 13, 2015 up to and through the Petition Date.

10.    REQUEST FOR PRODUCTION OF DOCUMENTS NO. 10: Produce All Documents, records, ledgers, reports, journals, books and financial statements including, but not limited to, general ledgers, balance sheets, profit and loss reports, income statements, accounts payable, accounts receivable and transaction ledgers, as produced in the native electronic format for the account or bookkeeping program used by CB45, Bestia Principal, and each, every, any and all other persons, entities, organizations, corporations, limited liability companies, joint ventures, partnerships and/or sole proprietorships for which YOU invested into, funded, maintained, possessed and/or controlled from November 13, 2015 up to and through the Petition Date including, but not limited to, data files stored as a QuickBooks or Quickens file extension, account registers, financial statements, ledgers, and/or records submitted to any third party, bank, lending institution and/or creditor.

11.    REQUEST FOR PRODUCTION OF DOCUMENTS NO. 11: Produce All Documents, records, forms, schedules, statements, disclosures, reports, and amendments thereto for personal income tax returns that the Debtor filed individually and/or jointly with any third-party with the Internal Revenue Service ("*IRS*") and any jurisdiction within the United States including, but not limited to, the Colorado Department of Revenue ("*CDOR*") for the period of January 1, 2017 up to and through the Petition Date.

12.    REQUEST FOR PRODUCTION OF DOCUMENTS NO. 12: Produce All Documents, records, forms, schedules, statements, disclosures, reports, and amendments thereto for tax returns any entities, organizations, corporations, limited liability companies, joint ventures,

**Ritchie, Dillard, Davies & Johnson, P.C.'s Status Report**
**EXHIBIT 1**

partnerships and/or sole proprietorships YOU controlled, managed, operated or owned, in whole or in part, including, but not limited to, CB45 and Bestia Principal filed with the IRS and any jurisdiction within the United States including, but not limited to, CDOR and/or the States of California, Florida and/or Tennessee between January 1, 2017 up to and through the Petition Date.

13. REQUEST FOR PRODUCTION OF DOCUMENTS NO. 13: Produce All Documents, records, Form W-2, Schedule K-1, Form 1099 and/or pay advices that YOU and/or any entity owned, operated or managed by YOU received as related to each, every any and all payment of income, dividends, distributions, salary, bonuses, commissions, repayment of loan(s), and/or on account of expense reports for any and all services rendered and/or loans advanced as an employee, officer, director, manager, owner, member, lender and/or independent contractor for any and all entities, organizations, corporations, limited liability companies, joint ventures, partnerships and/or sole proprietorships including, but not limited to, CB45 and Bestia Principal between November 13, 2017 up to and through the Petition Date.

14. REQUEST FOR PRODUCTION OF DOCUMENTS NO. 14: Produce All Documents, records, Form W-2, Schedule K-1, Form 1099 and/or pay advices that YOU and/or any entity owned, operated or managed by YOU received as related to each, every any and all payment of income, dividends, distributions, salary, bonuses, commissions, repayment of loan(s), and/or on account of expense reports for any and all services rendered and/or loans advanced as an employee of any organization within the NFL including, but not limited to, performance as a professional athlete with the Denver Broncos, in accordance with any and all endorsement agreements and/or arising from, relating to and/or concerning the marketing or advertising of YOU as professional athlete, the NFL, the Denver Broncos and/or any other organization or team within or affiliated with the NFL from November 13, 2017 up to and through the date of these Discovery Requests.

15. REQUEST FOR PRODUCTION OF DOCUMENTS NO. 15: Produce All Documents, records, related to executory agreements and unexpired leases YOU executed as an employee, officer, director, manager and/or holder of an ownership interest including, but not limited to, employment agreements, nondisclosure agreements, non-compete agreements, franchise agreements, lease agreements, endorsement agreements and Form W-9s for, on behalf or as authorized agent of any and all ventures including, but not limited to, corporations, limited liability companies, joint ventures, partnerships and/or sole proprietorships to include, but not limited to, CB45 and/or Bestia Principal from November 13, 2107 up to and through the date of these Discovery Requests.

16. REQUEST FOR PRODUCTION OF DOCUMENTS NO. 16: Produce All Documents and records related to executory agreements and unexpired leases any Advisor, Mr. Elam and/or Mr. Miller executed on YOUR behalf as custodian, power of attorney, trustee, advisor, manager, agent, assistant or otherwise for YOU in YOUR capacity as an employee, named agent, member, officer, director, owner or partner for any limited liability companies, joint ventures, partnerships and/or sole proprietorships for which YOU invested into, funded, maintained, possessed and/or controlled to include, but not limited to, CB45 and/or Bestia Principal from November 13, 2017 up to and through the date of

13

these Discovery Requests including, but not limited to, employment agreements, nondisclosure agreements, non-compete agreements, franchise agreements, lease agreements, endorsement agreements and Form W-9s.

17.   REQUEST FOR PRODUCTION OF DOCUMENTS NO. 17: Produce All Documents and records related to unexpired leases YOU executed or any Advisor, Mr. Elam and/or Mr. Miller executed on YOUR behalf as custodian, power of attorney, trustee, advisor, manager, agent, assistant or otherwise for the lease, possession and control of any residential and/or commercial real properties YOU leased from November 13, 2017 up to and through the date of these Discovery Requests.

18.   REQUEST FOR PRODUCTION OF DOCUMENTS NO. 18: Produce All Documents and records related to contracts, executory agreements and/or unexpired leases YOU executed, entered into and/or made, or any Advisor, Mr. Elam and/or Mr. Miller executed, entered into and/or made on YOUR behalf as custodian, power of attorney, trustee, advisor, manager, agent, assistant or otherwise, which concerns, arises under and/or relates to work YOU have performed or have considered performing, any investments YOU have made or considered making, and/or any employment YOU have had or have considered having arising from, relating to and/or concerning YOU playing professional football with the Denver Broncos and/or any other organization or team within or affiliated with the NFL including, but not limited to, employment agreements, nondisclosure agreements, non-compete agreements, endorsement agreements and Form W-9s from November 13, 2017 up to and through the date of these Discovery Requests.

19.   REQUEST FOR PRODUCTION OF DOCUMENTS NO. 19: Produce All Documents and records related to contracts, executory agreements and/or unexpired leases YOU executed, entered into and/or made, or any Advisor, Mr. Elam and/or Mr. Miller executed, entered into and/or made on YOUR behalf as custodian, power of attorney, trustee, advisor, manager, agent, assistant or otherwise, which concerns, arises under and/or relates to work YOU have performed or have considered performing, any investments YOU have made or considered making, and/or any employment YOU have had or have considered having arising from, relating to and/or concerning the marketing or advertising of YOU as professional athlete, the NFL, the Denver Broncos and/or any other organization or team within or affiliated with the NFL including, but not limited to, employment agreements, nondisclosure agreements, non-compete agreements, endorsement agreements and Form W-9s from November 13, 2017 up to and through the date of these Discovery Requests.

20.   REQUEST FOR PRODUCTION OF DOCUMENTS NO. 20: Produce All Documents and records related to executory agreements and/or unexpired leases by and between YOU and any Advisor, Mr. Elam and/or Mr. Miller including, but not limited to, employment agreements, nondisclosure agreements, non-compete agreements, endorsement agreements, investor agreements, agency agreements, power of attorneys and Form W-9s from November 13, 2015 up to and through the date of these Discovery Requests.

21.   REQUEST FOR PRODUCTION OF DOCUMENTS NO. 21: Produce All documents and records related to the purchase, sale, transfer, conveyance, ownership, management, maintenance, operation and/or construction of the California Property from November 13,

**Ritchie, Dillard, Davies & Johnson, P.C.'s Status Report**
**EXHIBIT 1**

2018 up to and through the date of these Discovery Requests including, but not limited to, deeds, deeds of trust, mortgages, settlement statements, title insurance, monthly mortgage and/or loan statements, lease agreements, rent rolls, rent receipts, tax assessments, tax payments, property insurance policies, property expenses, tax returns, management agreements, subleases, partnership agreements and/or joint ventures agreements.

22. REQUEST FOR PRODUCTION OF DOCUMENTS NO. 22: Produce All documents and records related to YOUR financial statements, records and history that YOU produced to any and all financial, lending and/or brokerage institutions including, but not limited to, loan officers and/or underwriters during the application process for securing a loan for the purchase, sale, transfer, conveyance, ownership, management, maintenance, operation and/or construction of the California Property from November 13, 2018 up to and through the date of these Discovery Requests including, but not limited to, the loan application and closing statements for which YOU executed under penalty of perjury that YOUR financial records and information are true and correct to the best of YOUR knowledge.

23. REQUEST FOR PRODUCTION OF DOCUMENTS NO. 23: Produce All Communications by and between YOU and Mr. Elam, Mr. Miller and/or each, every, any and all Advisors concerning and/or relating to any and all negotiations of contracts and agreements YOU have executed, entered into and/or made that concerns and/or relates to work YOU have performed or have considered performing, any investments YOU have made or considered making, and/or any employment YOU have had or have considered having arising from, relating to and/or concerning YOU playing professional football with the Denver Broncos and/or any other organization or team within or affiliated with the NFL from November 13, 2017 up to and through the date of these Discovery Requests.

24. REQUEST FOR PRODUCTION OF DOCUMENTS NO. 24: Produce All Communications for which YOU were the sender, recipient, carbon copied and/or blind carbon copied by and between the Denver Broncos and/or any other organization or team within or affiliated with the NFL and YOU, Mr. Elam, Mr. Miller and/or each, every, any and all Advisors concerning and/or relating to any and all negotiations of contracts and agreements YOU have executed, entered into and/or made and/or have considered executing, entering into and/or making that concerns and/or relates to work YOU have performed or have considered performing, any investments YOU have made or considered making, and/or any employment YOU have had or have considered having arising from, relating to and/or concerning YOU playing professional football from November 13, 2017 up to and through the date of these Discovery Requests.

25. REQUEST FOR PRODUCTION OF DOCUMENTS NO. 25: Produce All Communications by and between YOU and Mr. Elam, Mr. Miller and/or each, every, any and all Advisors concerning and/or relating to any and all negotiations of contracts and agreements YOU have executed, entered into and/or made that concerns and/or relates to work YOU have performed or have considered performing, any investments YOU have made or considered making, and/or any employment YOU have had or have considered having arising from, relating to and/or concerning the operations and management of each, every, any and all limited liability companies, joint ventures, partnerships and/or sole proprietorships for which YOU are a named agent, member, officer, director, owner,

partner, investor and/or controller including, but not limited to, CB45 and/or Bestia Principal from November 13, 2017 up to and through the date of these Discovery Requests.

26. REQUEST FOR PRODUCTION OF DOCUMENTS NO. 26: Produce All Communications by and between YOU and Mr. Elam, Mr. Miller and/or each, every, any and all Advisors concerning and/or relating to any and all executory contracts and agreements executed, entered into and/or made by and between YOU and Mr. Elam, Mr. Miller and/or each, every, any and all Advisors, and transfer or payment of money, resources or assets on account of any such executory contracts and/or agreements between November 13, 2015 up to and through the date of these Discovery Requests.

27. REQUEST FOR PRODUCTION OF DOCUMENTS NO. 27: Produce All Communications by and between YOU and Mr. Elam, Mr. Miller and/or each, every, any and all Advisors concerning and/or relating to any and all transfers or payments of money, resources or that YOU transferred, granted, gifted, contributed, conveyed and/or paid to Mr. Elam, Mr. Miller and/or each, every, any and all Advisors not in the ordinary course of business or in accordance with any executory contracts or agreements between November 13, 2017 up to and through the Petition Date.

28. REQUEST FOR PRODUCTION OF DOCUMENTS NO. 28: Produce All Documents and Communications YOU reference, describe, reviewed, relied upon, identified or otherwise refer to within YOUR responses to the above-enumerated Interrogatories.

DATED this 11th of September, 2020.

Respectfully submitted,
BERKEN CLOYES, P.C

Joshua B. Sheade, Atty. Reg. No. 46993
1159 Delaware Street
Denver, Colorado 80204
Tel: (303) 623-4357
Fax: (720) 554-7853
Email: joshua@berkencloyes.com

*Attorneys for the LAW OFFICES OF RITCHIE, DILLARD, DAVIES & JOHNSON, P.C.*

## CERTIFICATE OF SERVICE

The undersigned certifies that on September 11, 2020, I served by the Case Management/Electronic Case Filing ("*CM/ECF*") system, pre-paid first-class mail and/or other acceptable means (i.e. electronic correspondence or hand delivery), a copy of the foregoing **RITCHIE, DILLARD, DAVIES & JOHNSON, P.C.'S FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS TO ALEXANDER JOHNSON** on all parties against whom relief is sought, and those otherwise entitled to service, pursuant to the FED.R.BANKR.P. and these L.B.R., at the following addresses:

**Via CM/ECF:**

Jeffrey S. Brinen, Esq.
KUTNER BRINEN, P.C.
1660 Lincoln Street, Suite 1850
Denver, Colorado 80264

By: _____

Joshua B. Sheade, Esq.
For BERKEN CLOYES, P.C.

**KUTNER BRINEN, P.C.**
ATTORNEYS AT LAW
1660 LINCOLN STREET
SUITE 1850
DENVER, COLORADO 80264-9911

MADELEINE G  KVALHEIM
MGK@kutnerlaw.com

TELEPHONE 303-832-2400
TELECOPIER 303-832-1510



EXHIBIT
2

WRITER'S DIRECT
(303) 832-3819

September 21, 2020

<u>**VIA E-MAIL TRANSMISSION**</u>
<u>**AND U.S. MAIL**</u>

Joshua B. Sheade
Berken Cloyes PC
1159 Delaware Street
Denver, CO 80204
joshua@berkencloyes.com

   Re: In re Alexander Johnson, Bankr. Case No 19-19816-EEB
     Objections to Interrogatories and Discovery Requests

Dear Mr. Sheade:

  I am contacting you on behalf of our client, Alexander Johnson ("Mr. Johnson" or "Debtor"), in regards to the *Ritchie, Dillard, Davies & Johnson, P.C.'s First Set of Interrogatories and Requests for Production of Documents to Alexander Johnson* ("Interrogatories" and "Request for Production," collectively the "Discovery" or "Discovery Requests") from our client.

  The Discovery Requests were served on the Debtor on September 11, 2020.  As a courtesy, we corresponded with you via email on September 17, 2020, noting our general concern with the breadth of the Discovery and our objections. As discussed, the Court allowed limited discovery on your client's *Motion to Convert* on the topic of whether conversion would benefit the Debtor. Your discovery is in the nature of a Rule 2004 examination, and its effects are to harass and burden the Debtor.

  Your response was that you interpreted the nature of the Court's discovery differently: whether Mr. Johnson would benefit from holding all rights, powers, and responsibilities of a trustee under 11 U.S.C. §§ 1107(a) and 704(a)(2), (5) and (7)-(12), as incorporated by reference under 11 U.S.C. § 1106(a)(1). We disagree with this theory as the basis for Discovery. First, it is not what the Court intended. Second, it is not supported by case law on the topic of forcible conversion. To the extent there are avoidance and recovery actions available, they are addressable in the instant chapter 7 case.

  As explained in *In re Lobera,* there are no factors propounded by the Bankruptcy Code that a creditor must meet to prove a case should be converted from one under chapter 7 of the code to one under chapter 11. *In re Lobera*, 454 B.R. 824, 854 (Bankr. D.N.M. 2011). Instead, case law looks at whether conversion would benefit the Debtor – on that we seem to agree. However, *Lobera* explains that a benefit to the debtor must be viewed in light of their right to a fresh start. *Id.* The

Page 2
Joshua B. Sheade
September 21, 2020

only factor enumerated by the courts on the topic of conversion is whether or not a converted case would have the probability of confirming a plan of reorganization. *Id*. Thus, the correct analysis is what supports a finding that the Debtor here would be successful in a chapter 11 case that would not result in immediate liquidation. See *In re Watkins*, 132 B.R. 781, 782 (Bankr. S.D.F.L. 1991) (noting that conversion from chapter 7 to chapter 11 for purposes of liquidation is "not compatible with the purpose of a chapter 11 proceeding"). Your client has the burden to prove they could and would propose a confirmable plan, and that that plan justifies the administrative expenses that would accrue in a chapter 11 proceeding. *Id.* To that end, discovery regarding the Debtor's future income and expenses is relevant. Historical financial information about the Debtor, or entities not in a bankruptcy case, is irrelevant.

Below is an itemized list of our specific objections to each problematic Discovery request:

| Interrogatory #3 | This request is not relevant to the topic of whether conversion will lead to a confirmable chapter 11 plan. The request is not reasonably calculated to lead to the discovery of relevant evidence. The request seeks information that is too broad in scope and duration, and information that would have been listed in Debtor's petition, schedules, and/or statement of financial affairs such that this request is duplicative, overly burdensome, and meant to harass the Debtor. |
| --- | --- |
| Interrogatory #4 | This request is not relevant to the topic of whether conversion will lead to a confirmable chapter 11 plan. The request is not reasonably calculated to lead to the discovery of relevant evidence. The request seeks information that is too broad in scope and duration, and information that would have been listed in Debtor's petition, schedules, and/or statement of financial affairs such that this request is duplicative, overly burdensome, and meant to harass the Debtor. |
| Interrogatory #5 | This request is not relevant to the topic of whether conversion will lead to a confirmable chapter 11 plan. The request is not reasonably calculated to lead to the discovery of relevant evidence. The request seeks information that is too broad in scope and duration, and information that would have been listed in Debtor's petition, schedules, and/or statement of financial affairs such that this request is duplicative, overly burdensome, and meant to harass the Debtor. |
| Interrogatory #6 | This request is not relevant to the topic of whether conversion will lead to a confirmable chapter 11 plan. The request is not reasonably calculated to lead to the discovery of relevant evidence. The request seeks information that is too broad in scope and duration, and information that would have been listed in Debtor's petition, schedules, and/or statement of financial affairs such that this request is duplicative, overly burdensome, and meant to harass the Debtor. |

Page 3
Joshua B. Sheade
September 21, 2020

| Interrogatory #7 | This request is not relevant to the topic of whether conversion will lead to a confirmable chapter 11 plan. The request is not reasonably calculated to lead to the discovery of relevant evidence. The request seeks information that is too broad in scope and duration, and requests information about a non-Debtor party, such that this request is duplicative, overly burdensome, and meant to harass the Debtor. |
|---|---|
| Interrogatory #8 | This request is not relevant to the topic of whether conversion will lead to a confirmable chapter 11 plan. The request is not reasonably calculated to lead to the discovery of relevant evidence. The request seeks information that is too broad in scope and duration, and requests information about a non-Debtor party, such that this request is duplicative, overly burdensome, and meant to harass the Debtor. |
| Interrogatory #9 | This request is not relevant to the topic of whether conversion will lead to a confirmable chapter 11 plan. The request is not reasonably calculated to lead to the discovery of relevant evidence. The request seeks information that is too broad in scope and duration, and requests information about a non-Debtor party, such that this request is duplicative, overly burdensome, and meant to harass the Debtor. |
| Interrogatory #10 | This request is not relevant to the topic of whether conversion will lead to a confirmable chapter 11 plan. The request is not reasonably calculated to lead to the discovery of relevant evidence. The request seeks information that is too broad in scope and duration, and requests information about a non-Debtor party, such that this request is duplicative, overly burdensome, and meant to harass the Debtor. |
| Interrogatory #12 | This request is not relevant to the topic of whether conversion will lead to a confirmable chapter 11 plan. The request is not reasonably calculated to lead to the discovery of relevant evidence. The request seeks information that is too broad in scope and duration, and requests information about a non-Debtor party, such that this request is duplicative, overly burdensome, and meant to harass the Debtor. |
| Interrogatory #13 | This request is not relevant to the topic of whether conversion will lead to a confirmable chapter 11 plan. The request is not reasonably calculated to lead to the discovery of relevant evidence. The request seeks information that is too broad in scope and duration, and requests information about a non-Debtor party, such that this request is duplicative, overly burdensome, and meant to harass the Debtor. |
| Interrogatory #14 | This request is not relevant to the topic of whether conversion will lead to a confirmable chapter 11 plan. The request is not reasonably calculated to lead to the discovery of relevant evidence. The request seeks information that is too broad in scope |

Page 4
Joshua B. Sheade
September 21, 2020

|  | and duration, and information that would have been listed in Debtor's petition, schedules, and/or statement of financial affairs such that this request is duplicative, overly burdensome, and meant to harass the Debtor. |
|---|---|
| Interrogatory #15 | This request is not relevant to the topic of whether conversion will lead to a confirmable chapter 11 plan. The request is not reasonably calculated to lead to the discovery of relevant evidence. The request seeks information that is too broad in scope and duration, and information that would have been listed in Debtor's petition, schedules, and/or statement of financial affairs such that this request is duplicative, overly burdensome, and meant to harass the Debtor. |
| Interrogatory #16 | This request is not relevant to the topic of whether conversion will lead to a confirmable chapter 11 plan. The request is not reasonably calculated to lead to the discovery of relevant evidence. The request seeks information that is too broad in scope and duration, and information that would have been listed in Debtor's petition, schedules, and/or statement of financial affairs such that this request is duplicative, overly burdensome, and meant to harass the Debtor. |
| Interrogatory #17 | This request is not relevant to the topic of whether conversion will lead to a confirmable chapter 11 plan. The request is not reasonably calculated to lead to the discovery of relevant evidence. The request seeks information that is too broad in scope and duration, and information that would have been listed in Debtor's petition, schedules, and/or statement of financial affairs such that this request is duplicative, overly burdensome, and meant to harass the Debtor. |
| Interrogatory #18 | This request is not relevant to the topic of whether conversion will lead to a confirmable chapter 11 plan. The request is not reasonably calculated to lead to the discovery of relevant evidence. The request seeks information that is too broad in scope and duration, and information that would have been listed in Debtor's petition, schedules, and/or statement of financial affairs such that this request is duplicative, overly burdensome, and meant to harass the Debtor. |
| Interrogatory #20 | This request is not relevant to the topic of whether conversion will lead to a confirmable chapter 11 plan. The request is not reasonably calculated to lead to the discovery of relevant evidence. The request seeks information that is too broad in scope and duration, and information that would have been listed in Debtor's petition, schedules, and/or statement of financial affairs such that this request is duplicative, overly burdensome, and meant to harass the Debtor. |
| Interrogatory #22 | This request is not relevant to the topic of whether conversion will lead to a confirmable chapter 11 plan. The request is not |

Page 5
Joshua B. Sheade
September 21, 2020

|  | reasonably calculated to lead to the discovery of relevant evidence. The request seeks information that is too broad in scope and duration, overly burdensome, and meant to harass the Debtor. |
|---|---|
| Request for Production #1 | The request seeks information that is too broad in scope and duration, overly burdensome, and meant to harass the Debtor. Instead Debtor will agree to produce the items requested from the year preceding the date of filing his Bankruptcy case. |
| Request for Production #2 | This request is not relevant to the topic of whether conversion will lead to a confirmable chapter 11 plan. The request is not reasonably calculated to lead to the discovery of relevant evidence. The request seeks information that is too broad in scope and duration, and requests information about a non-Debtor party, such that this request is duplicative, overly burdensome, and meant to harass the Debtor. |
| Request for Production #3 | This request is not relevant to the topic of whether conversion will lead to a confirmable chapter 11 plan. The request is not reasonably calculated to lead to the discovery of relevant evidence. The request seeks information that is too broad in scope and duration, and requests information about a non-Debtor party, such that this request is duplicative, overly burdensome, and meant to harass the Debtor. |
| Request for Production #4 | This request is not relevant to the topic of whether conversion will lead to a confirmable chapter 11 plan. The request is not reasonably calculated to lead to the discovery of relevant evidence. The request seeks information that is too broad in scope and duration, and requests information about a non-Debtor party, such that this request is duplicative, overly burdensome, and meant to harass the Debtor. |
| Request for Production #5 | The request seeks information that is too broad in scope and duration, overly burdensome, and meant to harass the Debtor. Instead Debtor will agree to produce the items requested from the year preceding the date of filing his Bankruptcy case. |
| Request for Production #6 | The request seeks information that is too broad in scope and duration, overly burdensome, and meant to harass the Debtor. Instead Debtor will agree to produce the items requested from the year preceding the date of filing his Bankruptcy case. |
| Request for Production #7 | The request seeks information that is too broad in scope and duration, overly burdensome, and meant to harass the Debtor. Instead Debtor will agree to produce the items requested from the year preceding the date of filing his Bankruptcy case. |
| Request for Production #10 | This request is not relevant to the topic of whether conversion will lead to a confirmable chapter 11 plan. The request is not reasonably calculated to lead to the discovery of relevant evidence. The request seeks information that is too broad in scope and duration, and requests information about a non-Debtor party, |

Page 6
Joshua B. Sheade
September 21, 2020

| | such that this request is duplicative, overly burdensome, and meant to harass the Debtor. |
|---|---|
| Request for Production #14 | This request is duplicative as Debtor will be producing his tax returns. |
| Request for Production #15 | This request is not relevant to the topic of whether conversion will lead to a confirmable chapter 11 plan. The request is not reasonably calculated to lead to the discovery of relevant evidence. |
| Request for Production #18 | This request is vague and Debtor objects to use of the terms "considered performing", "considered making", and "considered having." Debtor will produce relevant documents relating to work performed, investments made, and employment in the specified time period. |
| Request for Production #19 | This request is vague and Debtor objects to use of the terms "considered performing", "considered making", and "considered having." Debtor will produce relevant documents relating to work performed, investments made, and employment in the specified time period. |
| Request for Production #20 | This request is not relevant to the topic of whether conversion will lead to a confirmable chapter 11 plan. The request is not reasonably calculated to lead to the discovery of relevant evidence. |
| Request for Production #21 | This request is not relevant to the topic of whether conversion will lead to a confirmable chapter 11 plan. The request is not reasonably calculated to lead to the discovery of relevant evidence. |
| Request for Production #22 | This request is not relevant to the topic of whether conversion will lead to a confirmable chapter 11 plan. The request is not reasonably calculated to lead to the discovery of relevant evidence. |
| Request for Production #23 | This request is not relevant to the topic of whether conversion will lead to a confirmable chapter 11 plan. The request is not reasonably calculated to lead to the discovery of relevant evidence. |
| Request for Production #24 | This request is not relevant to the topic of whether conversion will lead to a confirmable chapter 11 plan. The request is not reasonably calculated to lead to the discovery of relevant evidence. |
| Request for Production #25 | This request is not relevant to the topic of whether conversion will lead to a confirmable chapter 11 plan. The request is not reasonably calculated to lead to the discovery of relevant evidence. |
| Request for Production #26 | This request is not relevant to the topic of whether conversion will lead to a confirmable chapter 11 plan. The request is not reasonably calculated to lead to the discovery of relevant evidence. |

**Ritchie, Dillard, Davies & Johnson, P.C.'s Status Report**
**EXHIBIT 2**

Page 7
Joshua B. Sheade
September 21, 2020

| Request for Production #27 | The request seeks information that is too broad in scope and duration, overly burdensome, and meant to harass the Debtor. Instead Debtor will agree to produce the items requested from the year preceding the date of filing his Bankruptcy case. |
|---|---|

 

     We hope to resolve this amicably, however, if we do not hear from you by the close of business tomorrow, September 22, 2020, we will email the Judge's chamber to request a hearing on the matter in accordance with L.B.R. 7026-1(d).   If you have any questions or concerns, or would like to discuss this matter further, please do not hesitate to contact me at (303) 832-2400.

Yours truly,

Madeleine G. Kvalheim

**Joshua B. Sheade, Esq.**

| | |
|---|---|
| **From:** | Madeleine G. Kvalheim <MGK@kutnerlaw.com> |
| **Sent:** | Monday, September 21, 2020 9:03 AM |
| **To:** | Joshua B. Sheade, Esq. |
| **Cc:** | Jeff Brinen |
| **Subject:** | RE: In re Johnson, Case No. 19-19816 EEB re Ritchie, Dillard, Davies & Johnson, P.C.'s First Set of Discovery Requests to Debtor |
| **Attachments:** | Letter to Sheade re Discovery Responses.pdf |

Josh,

Attached please find correspondence regarding our objections to your client's discovery. I am happy to setup a time tomorrow to discuss.

Thank you,


Madeleine G. Kvalheim, Esq.
Kutner Brinen, P.C.
1660 Lincoln St., Suite 1850
Denver, CO  80264
303-832-3819 Direct
303-832-2400 Main





E-MAIL CONFIDENTIALITY NOTICE:
The contents of this e-mail message and any attachments are intended solely for the addressee(s) and may contain confidential and/or legally privileged information. If you are not the intended recipient of this message or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and any attachments. If you are not the intended recipient, you are notified that any use, dissemination, distribution, copying, or storage of this message or any attachment is strictly prohibited.

**From:** Joshua B. Sheade, Esq. <joshua@berkencloyes.com>
**Sent:** Thursday, September 17, 2020 3:19 PM
**To:** Jeff Brinen <JSB@kutnerlaw.com>
**Cc:** Madeleine G. Kvalheim <MGK@kutnerlaw.com>
**Subject:** RE: In re Johnson, Case No. 19-19816 EEB re Ritchie, Dillard, Davies & Johnson, P.C.'s First Set of Discovery Requests to Debtor

Good Afternoon Jeff:

I neither had when drafting nor now have any intention of harassing Mr. Johnson. The documents sought for production relate to the issue of whether Mr. Johnson would benefit from holding all rights, powers, and responsibilities of a trustee under 11 U.S.C. §§ 1107(a) and 704(a)(2), (5) and (7)-(12), as incorporated by reference under 11 U.S.C. § 1106(a)(1). The Tenth Circuit rationalizes that "there is no limitation on a trustee's power to recover transfers under § 544, so we must assume that power is included with those vested by § 1107(a).

*Zilkha Energy v. Leighton*, 920 F.2d 1520, 1523 (10th Cir.1990); *see also Ute Mesa Lot 1, LLC v. First-Citizens B&T Co.*, 736 F.3d 947, 950 n.2 (10th Cir.2013)(same rational applied to § 547). Herein, Mr. Johnson would benefit from conversion if transfers to Mr. Miller, Mr. Elam, Bestia Principal or CB45, among other insiders, are voidable and recoverable by Mr. Peters as a debtor-in-possession gets to decide whether to pursue such claims. Therefore, the discovery requests seek to understand what type of claims the Chapter 7 Trustee may hold against family, business partners and/or pseudo-agent arising from pre-petition payments/transfers under Sections 544, 547 and/or 548, and post-petition payments/transfers under Section 549.

Furthermore, peer-to-peer/mobile payment services such as Venmo, PayPal and Apple Pay operate akin to financial depositories such that an account holder can conserve, transfer, tender and/or receive funds through their account. Such services enable a person to conduct transactions in an unconditional forum that falls outside the scope of documents a trustee traditionally requests in preparing for a pre-341 Meeting but is nonetheless a resource for determining whether recoverable transfers exist. Therefore, the discovery requests seek production of such information to calculate the sum of recoverable preference payments and voidable transfers.

Last, but not least, Mr. Johnson does not disclose his membership interest in Bestia Principal LLC under *Schedule A/B: Property*. Pursuant to the "Statement of Information" filed with the California Secretary of State on August 12, 2019, Bestia Principal purportedly operates as an agriculture business for which Mr. Miller and Mr. Johnson hold the sole and exclusive membership interests. Such issue raises questions as to any other non-exempt assets Mr. Johnson may have mistakenly forgotten to disclose, and the value thereof. As non-exempt assets are subject to liquidation by Mr. Peters in accordance with 11 U.S.C. § 704(a)(1), Mr. Johnson would benefit from conversion to prevent such transactions and occurrences from arising.

Although the requested information is relevant to the determination of whether Mr. Johnson shall benefit from conversion, Ritchie, Dillard, Davies & Johnson, P.C. would agree to reduce the time frame under Interrogatory Nos. 4 through 6, Nos. 14 through 16, No. 19 and No. 22,  and Request for Production Nos. 1 through 10, No. 10 and No. 26 by two (2) years (i.e. from November 13, 2015 to November 13, 2017) if Mr. Johnson agrees to shorten the document production deadline to twenty-one (21)-days (i.e. October 2, 2020) and produce responses to interrogatories on or before October 9, 2020.

Please feel free to call or e-mail me with any further questions, concerns, thoughts, etc.

Thank you,

Josh Sheade

For the Firm

BERKEN | CLOYES

1159 Delaware Street
Denver, Colorado 80204
Tel.: (303) 623-4357, Ext. 222
Direct: (720) 543-9862
Fax: (720) 554-7853

The information contained in, or attached to, this electronic message is a confidential communication from a law firm, and intended only for the confidential use of the individual(s) named above. Unauthorized interception of this message is a violation of the Electronic Communications Privacy Act, 18 U.S.C. 2510-2521 and 2707-2709. This message may be protected by the attorney-client and/or attorney work product privileges. If you are not the named recipient, or an agent responsible for delivering this transmission to the named recipient, you are hereby notified that you have received this document in error; and any review, disclosure, dissemination, copying, distribution or use of the information

**Ritchie, Dillard, Davies & Johnson, P.C.'s Status Report**

**EXHIBIT 2**

contained in, or attached to, this message is prohibited. If you have received this communication in error, please notify us immediately by e-mail at joshua.sheade@gmail.com or by telephone at (303) 623-4357, Ext. 222; and destroy any copies of this message. Thank you.

---

**From:** Jeff Brinen <JSB@kutnerlaw.com>
**Sent:** Thursday, September 17, 2020 7:36 AM
**To:** Joshua B. Sheade, Esq. <joshua@berkencloyes.com>
**Cc:** Madeleine G. Kvalheim <MGK@kutnerlaw.com>
**Subject:** RE: In re Johnson, Case No. 19-19816 EEB re Ritchie, Dillard, Davies & Johnson, P.C.'s First Set of Discovery Requests to Debtor

Hi Josh,

I've had a chance to review the discovery you issued, and was quite surprised. As we discussed, the Court focused on the Motion to Convert, and specifically the issue of whether conversion from Ch. 7 to Ch. 11 would benefit the Debtor. That indicates the hearing will look to the future, i.e. what will happen if the case is converted. The hearing was set pretty quickly for a short time, one-half day. Your discovery is more in the nature of a Rule 2004 exam, requesting detailed information for the past five years. Just knowing you, I don't believe you intend to harass Mr. Johnson, but I also believe that's the effect of your discovery requests.

I'm asking that you reconsider what it is you need in the way of discovery for the hearing, rather than a broad fishing expedition, one example being Venmo payments for five years. I may be missing what it is you're trying to accomplish, so please help me understand how five years of detailed financial information will assist you or the Court in the upcoming hearing. In the meantime, I've asked my associate, Maddy (copied here) to propose limitations that are more reasonably tailored to the upcoming hearing. I'd like to get this resolved with you.

Please let me know your thoughts.

Thank you,
Jeff


Jeffrey S. Brinen, Esq.
Kutner Brinen, P.C.
1660 Lincoln St., Suite 1850
Denver, CO  80264
303-832-2418 Direct
303-832-2400 Main



E-MAIL CONFIDENTIALITY NOTICE:
The contents of this e-mail message and any attachments are intended solely for the addressee(s) and may contain confidential and/or legally privileged information. If you are not the intended recipient of this message or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and any attachments. If you are not the intended recipient, you are notified that any use, dissemination, distribution, copying, or storage of this message or any attachment is strictly prohibited.

**Ritchie, Dillard, Davies & Johnson, P.C.'s Status Report
EXHIBIT 2**

**From:** Joshua B. Sheade, Esq. <joshua@berkencloyes.com>
**Sent:** Friday, September 11, 2020 11:04 PM
**To:** Jeff Brinen <JSB@kutnerlaw.com>
**Subject:** In re Johnson, Case No. 19-19816 EEB re Ritchie, Dillard, Davies & Johnson, P.C.'s First Set of Discovery Requests to Debtor

Good Evening Jeff:

As mentioned during our telephone call earlier today, please find attached *Ritchie, Dillard, Davies & Johnson, P.C.'s First Set of Interrogatories and Requests for Production of Documents to Alexander Johnson.*

The Creditor-Law Firm thanks Mr. Johnson in advance for his cooperation.

I look forward to further discussing possible avenues to resolve the contested matter for which these discovery requests relate, if any, with you next week. In the meantime, have a good weekend.

Thank you,


Josh Sheade

For the Firm

BERKEN | CLOYES

1159 Delaware Street
Denver, Colorado 80204
Tel.: (303) 623-4357, Ext. 222
Direct: (720) 543-9862
Fax: (720) 554-7853

The information contained in, or attached to, this electronic message is a confidential communication from a law firm, and intended only for the confidential use of the individual(s) named above. Unauthorized interception of this message is a violation of the Electronic Communications Privacy Act, 18 U.S.C. 2510-2521 and 2707-2709. This message may be protected by the attorney-client and/or attorney work product privileges. If you are not the named recipient, or an agent responsible for delivering this transmission to the named recipient, you are hereby notified that you have received this document in error; and any review, disclosure, dissemination, copying, distribution or use of the information contained in, or attached to, this message is prohibited. If you have received this communication in error, please notify us immediately by e-mail at joshua.sheade@gmail.com or by telephone at (303) 623-4357, Ext. 222; and destroy any copies of this message. Thank you.

**Ritchie, Dillard, Davies & Johnson, P.C.'s Status Report**
**EXHIBIT 2**

**Joshua B. Sheade, Esq.**

| | | EXHIBIT 3 |
|---|---|---|
| **From:** | Jeff Brinen <JSB@kutnerlaw.com> | |
| **Sent:** | Friday, November 6, 2020 12:03 PM | |
| **To:** | Joshua B. Sheade, Esq. | |
| **Subject:** | FW: ECU Mobile - Dec 10, 2019 at 9:32 AM.pdf | |
| **Attachments:** | ECU Mobile - Dec 10, 2019 at 932 AM.pdf | |

Josh,

I'm going to send you a number of emails with documents that were provided to the Trustee. After you review these documents, please contact me as my client feels that the requests are unwarranted, and I can't really explain how they're related to the issue before the Court. I appreciate your offer to reduce the time period, but I still don't understand the connection between your requests and the documents.

Thank you,
Jeff


Jeffrey S. Brinen, Esq.
Kutner Brinen, P.C.
1660 Lincoln St., Suite 1850
Denver, CO 80264
303-832-2418 Direct
303-832-2400 Main


 KutnerBrinen, P.C.


E-MAIL CONFIDENTIALITY NOTICE:

The contents of this e-mail message and any attachments are intended solely for the addressee(s) and may contain confidential and/or legally privileged information. If you are not the intended recipient of this message or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and any attachments. If you are not the intended recipient, you are notified that any use, dissemination, distribution, copying, or storage of this message or any attachment is strictly prohibited.

**Ritchie, Dillard, Davies & Johnson, P.C.'s Status Report**
**EXHIBIT 3**

**Joshua B. Sheade, Esq.**

| | |
|---|---|
| **From:** | Jeff Brinen <JSB@kutnerlaw.com> |
| **Sent:** | Friday, November 6, 2020 12:04 PM |
| **To:** | Joshua B. Sheade, Esq. |
| **Subject:** | FW: ECU Mobile - Nov 27, 2019 at 9:16 PM.pdf |
| **Attachments:** | ECU Mobile - Nov 27, 2019 at 916 PM.pdf |

Jeffrey S. Brinen, Esq.
Kutner Brinen, P.C.
1660 Lincoln St., Suite 1850
Denver, CO  80264
303-832-2418 Direct
303-832-2400 Main



E-MAIL CONFIDENTIALITY NOTICE:
The contents of this e-mail message and any attachments are intended solely for the addressee(s) and may contain confidential and/or legally privileged information. If you are not the intended recipient of this message or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and any attachments. If you are not the intended recipient, you are notified that any use, dissemination, distribution, copying, or storage of this message or any attachment is strictly prohibited.

**Joshua B. Sheade, Esq.**

| | |
|---|---|
| **From:** | Jeff Brinen <JSB@kutnerlaw.com> |
| **Sent:** | Friday, November 6, 2020 12:04 PM |
| **To:** | Joshua B. Sheade, Esq. |
| **Subject:** | FW: tahoe docs |
| **Attachments:** | johnson coll 2.pdf; johnson coll.pdf |

Jeffrey S. Brinen, Esq.
Kutner Brinen, P.C.
1660 Lincoln St., Suite 1850
Denver, CO  80264
303-832-2418 Direct
303-832-2400 Main



E-MAIL CONFIDENTIALITY NOTICE:
The contents of this e-mail message and any attachments are intended solely for the addressee(s) and may contain confidential and/or legally privileged information. If you are not the intended recipient of this message or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and any attachments. If you are not the intended recipient, you are notified that any use, dissemination, distribution, copying, or storage of this message or any attachment is strictly prohibited.

**Joshua B. Sheade, Esq.**

| | |
|---|---|
| **From:** | Jeff Brinen <JSB@kutnerlaw.com> |
| **Sent:** | Friday, November 6, 2020 12:05 PM |
| **To:** | Joshua B. Sheade, Esq. |
| **Subject:** | FW: Alexander Johnson |
| **Attachments:** | johnson coll.pdf; NFLSCS-statement.pdf; johnson coll 2.pdf |

Jeffrey S. Brinen, Esq.
Kutner Brinen, P.C.
1660 Lincoln St., Suite 1850
Denver, CO  80264
303-832-2418 Direct
303-832-2400 Main



E-MAIL CONFIDENTIALITY NOTICE:
The contents of this e-mail message and any attachments are intended solely for the addressee(s) and may contain confidential and/or legally privileged information. If you are not the intended recipient of this message or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and any attachments. If you are not the intended recipient, you are notified that any use, dissemination, distribution, copying, or storage of this message or any attachment is strictly prohibited.

**Joshua B. Sheade, Esq.**

| | |
|---|---|
| **From:** | Jeff Brinen <JSB@kutnerlaw.com> |
| **Sent:** | Friday, November 6, 2020 12:06 PM |
| **To:** | Joshua B. Sheade, Esq. |
| **Subject:** | FW: Alexander Johnson |
| **Attachments:** | Cal Prop Pt 1.pdf; Cal Prop Pt 2.pdf; Cal Prop Pt 3.pdf; April 2018.pdf; April 2019.pdf; August 2018.pdf; August 2019.pdf; CB45.pdf; ChiefBeast.pdf; December 2017.pdf; December 2018.pdf; February 2018.pdf; February 2019.pdf; January 2018.pdf; January 2019.pdf; July 2018.pdf; July 2019.pdf; June  2018.pdf; June 2019.pdf; March 2018.pdf; March 2019.pdf; May 2018.pdf; May 2019.pdf; November 2017.pdf; November 2018.pdf; November 2019 (1).pdf; November 2019.pdf; October 2018.pdf; October 2019 (2).pdf; October 2019.pdf; September 2018.pdf; September 2019.pdf |

Josh – this is the last of the emails.
Thanks
Jeff


Jeffrey S. Brinen, Esq.
Kutner Brinen, P.C.
1660 Lincoln St., Suite 1850
Denver, CO  80264
303-832-2418 Direct
303-832-2400 Main



E-MAIL CONFIDENTIALITY NOTICE:
The contents of this e-mail message and any attachments are intended solely for the addressee(s) and may contain confidential and/or legally privileged information. If you are not the intended recipient of this message or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and any attachments. If you are not the intended recipient, you are notified that any use, dissemination, distribution, copying, or storage of this message or any attachment is strictly prohibited.

# BERKEN | CLOYES

Stephen E. Berken, Esq.
stephenberkenlaw@gmail.com

Sean Cloyes, Esq.
sean@berkencloyes.com

November 10, 2020

**Via U.S. Mail**

Eastman Credit Union
P.O. Box 1989
Kingsport, Tennessee 37662

RE: *In re Alexander Johnson*, Case No. 19-19816 EEB (Bankr.D.Colo.); Subpoena to Produce
as Authorized by the United States Bankruptcy Court for the District of Colorado

To Whom This May Concern:

Please be advised that BERKEN CLOYES, P.C. represents the Law Offices of Ritchie, Dillard, Davies &
Johnson, P.C. ("*Creditor*") in their capacity as a creditor to a bankruptcy case filed by Alexander Johnson
("*Debtor*") under Chapter 7 of Title 11 of the United States Code ("*Bankruptcy Code*") within the United
States Bankruptcy Court for the District of Colorado ("*Bankruptcy Court*") on November 13, 2019.
Pursuant to a certain and specific *Minute Order* dated September 1, 2020 ("*Pre-Trial Order*"), the
Bankruptcy Court authorizes the Creditor to conduct discovery in preparation of a hearing set to
commence on December 9, 2020 concerning a *Motion to Convert Chapter 7 Bankruptcy Case to Case
Under Chapter 11 of the Bankruptcy Code Pursuant To 11 U.S.C § 706(b) or, in the Alternative, Dismiss
Bankruptcy Case Pursuant to 11 U.S.C. § 707(b)*. Therefore, the Creditor respectfully requests
documents, records, financial statements and information related to accounts, agreements, transactions,
conduct and occurrences by and between Eastman Credit Union ("*Eastman*") and the Debtor and/or
certain entities for which the Debtor is an officer, director, shareholder, member, employee and/or agent.

Pursuant to the Subpoena to Produce Documents, Information or Objects in a Bankruptcy Case
("*Subpoena*") attached hereto, please produce all documents, records and information related to the
requests enumerated within Exhibit 1 – attached to the Subpoena and incorporated by reference therein
– preferably in electronic format on or before Monday, November 24, 2020 at 5:00 p.m. prevailing
Mountain Standard Time, in accordance with FED.R.BANKR.P. 7026, 9014, 9016 and FED.R.CIV.P. 45.
Furthermore, the Creditor respectfully requests that a representative of Eastman's custodian of records
execute a declaration – either in the form enclosed herewith or one prepared by Eastman in the ordinary
course – when producing documents.

Should Eastman believe certain documents difficult to produce or find helpful to discuss appropriate
search terms, please do not hesitate to contact me – undersigned counsel for the Creditor – via
joshua@berkencloyes.com or (303) 623-4357 at your earliest convenience.

The Law Offices of Ritchie, Dillard, Davies & Johnson, P.C. thank you in advance for your cooperation.

Respectfully,

Joshua B. Sheade, Esq.

Encl.: Subpoena
Exhibit 1 (Production Requests) and Exhibit 2 (Pre-Trial Order) to Subpoena
[proposed] Declaration Pursuant to Fed.R.Evid. 902(11)

---

| Tel.: (303) 623-4357 | Alt.: (719) 520-0003 | Fax: (720) 554-7853 |
1159 Deleware Street, Denver, Colorado 80204

Ritchie, Dillard, Davies & Johnson, P.C. - Status Report

**EXHIBIT 4**

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

District of     Colorado

In re   ALEXANDER JOHNSON
_____
                    Debtor

*(Complete if issued in an adversary proceeding)*

Law Offices of Ritchie, Dillard, Davies & Johnson, P.C.
_____
                    Plaintiff
                v.
Alexander Johnson
_____
                    Defendant

Case No.   19-19816 EEB

Chapter ____ 7 ____

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To:   Eastman Credit Union; P.O. Box 1989, Kingsport, Tennessee 37662
*(Name of person to whom the subpoena is directed)*

☑ *Production*: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: Please see **EXHIBIT 1** attached hereto. In lieu of a representative appearing in-person, production may be made via electronic means on or before Monday, November 24, 2020 at 5:00 p.m.

| PLACE   BERKEN CLOYES, P.C. | DATE AND TIME |
|---|---|
| 1159 Delaware Street, Denver, Colorado 80204 | Monday, November 24, 2020 at 5:00 P.M. |

☐ *Inspection of Premises*: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|
| | |

    The following provisions of **Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016,** are attached – **Rule 45(c), relating to the place of compliance; Rule** 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   November 10, 2020

            CLERK OF COURT                        BERKEN CLOYES, P.C.

                                        OR
_____              _____
    *Signature of Clerk or Deputy Clerk*       Joshua B. Sheade, Atty. Reg. No. 46993
                                       *Attorneys for Ritchie, Dillard, Davies & Johnson, P.C.*

The name, address, email address, and telephone number of the attorney representing the Law Offices of Ritchie, Dillard, Davies & Johnson, P.C., who issues or requests this subpoena, is: Joshua B. Sheade of BERKEN CLOYES, P.C., 1159 Delaware Street, Denver, Colorado 80211; E-mail: joshua@berkencloyes.com; and Telephone No. (303) 623-4357.

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 2)

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: _____
on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____
_____
_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____
_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ _____ .

My fees are $ _____ for travel and $_____ for services, for a total of $_____ .

I declare under penalty of perjury that this information is true and correct.

Date: _____

_____
Server's signature

_____
Printed name and title

_____
Server's address

Additional information concerning attempted service, etc.:

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 3)

## Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
### (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.** The court for the district where compliance is required — and also, after a motion is transferred, the issuing court — may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**Ritchie, Dillard, Davies & Johnson, P.C.'s Status Report**
**EXHIBIT 4**

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION OR OBJECTS
## IN A BANKRUPTCY CASE
### EXHIBIT 1

| | |
|---|---|
| Bankruptcy Case: | *In re Alexander Johnson*, Case No. 19-19816 EEB (Bankr.D.Colo. Nov. 13, 2019). |
| Submitted By: | Law Offices of Ritchie, Dillard, Davies & Johnson, P.C. (“***Creditor***”). |
| Submitted To: | Eastman Credit Union (“***Eastman***”). |
| In connection With: | *Motion to Convert Chapter 7 Bankruptcy Case to Case Under Chapter 11 of the Bankruptcy Code Pursuant to 11 U.S.C. § 706(b) or, in the Alternative, Dismiss Bankruptcy Case Pursuant to 11 U.S.C. § 707(b)* [ECF Dkt. Nos. 74-75 (“***Motion***”)]; and *Minute Order* dated September 1, 2020 [ECF Dkt. No. 95 (“***Pre-Trial Order***”)]. The Pre-Trial Order is attached as **EXHIBIT 2** to the *Subpoena to Produce Documents, Information or Objects in a Bankruptcy Case* and incorporated by reference herein. |

The Creditor respectfully compels Eastman to produce, as follows:

1.  All documents, records and information to include, but not limited to, bank statements, account opening documents, signature cards, check ledgers, cancelled checks, deposit slips, teller deposited checks, mobile deposited checks, wire transfer records, and annual reports for any and all accounts including, but not limited to, checking accounts, savings accounts, direct deposit accounts, money market accounts, investment accounts, retirement accounts, certificate of deposit accounts, trust accounts, operating accounts, payroll accounts, business checking accounts, business savings accounts, loan accounts and/or any other accounts identified by Eastman that Alexander Johnson (“***Debtor***”) – otherwise identified by and through Social Security Number ending xxx-xx-4248 – maintained with Eastman at any time from and/or for the period of January 1, 2017 up to and through January 1, 2020.

2.  All documents, records and information to include, but not limited to, bank statements, account opening documents, signature cards, check ledgers, cancelled checks, deposit slips, teller deposited checks, mobile deposited checks, wire transfer records, and annual reports for any and all accounts including, but not limited to, checking accounts, savings accounts, direct deposit accounts, money market accounts, investment accounts, retirement accounts, certificate of deposit accounts, trust accounts, operating accounts, payroll accounts, business checking accounts, business savings accounts, loan accounts and/or any other accounts identified by Eastman that CB45, LLC (“***CB45***”) – otherwise identified by and through Federal Tax Identification Number (“***EIN***”) ending xx-xxx2136066 – maintained with Eastman at any time from and/or for the period of January 1, 2017 up to and through January 1, 2020.

**Ritchie, Dillard, Davies & Johnson, P.C.'s Status Report**
**EXHIBIT 4**

3.   All documents, records and information to include, but not limited to, bank statements, account opening documents, signature cards, check ledgers, cancelled checks, deposit slips, teller deposited checks, mobile deposited checks, wire transfer records, and annual reports for any and all accounts including, but not limited to, checking accounts, savings accounts, direct deposit accounts, money market accounts, investment accounts, retirement accounts, certificate of deposit accounts, trust accounts, operating accounts, payroll accounts, business checking accounts, business savings accounts, loan accounts and/or any other accounts identified by Eastman that Bestia Principal ("*Bestia*") maintained with Eastman at any time from and/or for the period of January 1, 2017 up to and through January 1, 2020.

4.   All documents, records and information to include, but not limited to, bank statements, account opening documents, signature cards, check ledgers, cancelled checks, deposit slips, teller deposited checks, mobile deposited checks, wire transfer records, and annual reports for any and all accounts including, but not limited to, checking accounts, savings accounts, direct deposit accounts, money market accounts, investment accounts, retirement accounts, certificate of deposit accounts, trust accounts, operating accounts, payroll accounts, business checking accounts, business savings accounts, loan accounts and/or any other accounts identified by Eastman and/or maintained with Eastman for which the Debtor had signatory authority at any time from and/or for the period of January 1, 2017 up to and through January 1, 2020.

5.   All documents, records and information to include, but not limited to, monthly statements, escrow statements, applications, closing statements, electronic files, check ledgers, cancelled checks, deposit slips, payment receipts, wire transfer records, general ledgers, transactions ledgers, annual reports, purchase money security interests, promissory notes and deeds of trusts together with any and all supplements, addendums and/or modifications thereto for any loan(s) including, but not limited to, any and all Small Business Administration loan, line of credit, revolving line of credit (i.e. credit card), unsecured loan or secured loan Eastman granted to the Debtor, either jointly with and/or independently of any other person and/or entity, at any time from and/or for the period of January 1, 2017 up to and through January 1, 2020.

6.   All documents, records and information to include, but not limited to, monthly statements, escrow statements, applications, closing statements, electronic files, check ledgers, cancelled checks, deposit slips, payment receipts, wire transfer records, general ledgers, transactions ledgers, annual reports, purchase money security interests, promissory notes and deeds of trusts together with any and all supplements, addendums and/or modifications thereto for any debts the Debtor incurred to Eastman at any time from and/or for the period of January 1, 2017 up to and through January 1, 2020.

7.   All documents, records and information to include, but not limited to, monthly statements, escrow statements, applications, closing statements, electronic files, check ledgers, cancelled checks, deposit slips, payment receipts, wire transfer records, general ledgers, transactions ledgers, annual reports, purchase money security interests, promissory notes and deeds of trusts together with any and all supplements, addendums and/or modifications thereto for any debts CB45 incurred to Eastman and/or loan(s) including, but not limited to, any and all Small Business Administration loan, line of credit, revolving line of credit

2

(i.e. credit card), unsecured loan or secured loan Eastman granted to CB45, either jointly with and/or independently of any other person and/or entity, at any time from and/or for the period of January 1, 2017 up to and through January 1, 2020.

8.    All documents, records and information to include, but not limited to, monthly statements, escrow statements, applications, closing statements, electronic files, check ledgers, cancelled checks, deposit slips, payment receipts, wire transfer records, general ledgers, transactions ledgers, annual reports, purchase money security interests, promissory notes and deeds of trusts together with any and all supplements, addendums and/or modifications thereto for any debts Bestia incurred to Eastman and/or loan(s) including, but not limited to, any and all Small Business Administration loan, line of credit, revolving line of credit (i.e. credit card), unsecured loan or secured loan Eastman granted to Bestia, either jointly with and/or independently of any other person and/or entity, at any time from and/or for the period of January 1, 2017 up to and through January 1, 2020.

3

EXHIBIT 2

**UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF COLORADO**

**Minute Order**

Date: September 1, 2020

Honorable Elizabeth E. Brown, Presiding
Ruth S. Mares, Law Clerk

In re:  Alexander Johnson,

Case No. 19-19816 EEB
Chapter 7

Debtor.

| Appearances | | Representing |
|---|---|---|
| Counsel | Lindsay Riley* | Trustee | M. Stephen Peters, chapter 7 trustee* |
| Counsel | Jeffrey Brinen* | Debtor | Ritchie, Dillard, Davies & Johnson, P.C. |
| Counsel | Joshua Sheade* | Creditor | |
| Counsel | | Creditor | |
| Counsel | | Creditor | |
| Counsel | | Creditor | |

☒ Telephone appearance
☐ Telephonic appearance

Proceeding:  Non-Evidentiary Hearing on Motion to Convert Chapter 7 Bankruptcy Case to Case Under Chapter 11 of the Bankruptcy Code Pursuant to 11 U.S.C. § 706(b) or, in the Alternative, Dismiss Bankruptcy Case Pursuant to 11 U.S.C. § 707(b) filed by Ritchie, Dillard, Davies & Johnson, P.C. and the Objections thereto filed by the Debtor and the Chapter 7 Trustee. M. Stephen Peters☐ Witnesses Sworn   ☐ See Attached List
Entered
☐ Evidentiary Hearing   ☐ Exhibits

**Orders:**

☒ On or before October 9, 2020, the parties may file additional briefs on any legal issues related to § 706(b) or § 707(b).

☒ The Court will hold a one-half day evidentiary hearing on the Motion on **Monday, October 26, 2020 at 9:30 a.m.**, in Courtroom F, United States Bankruptcy Court for the District of Colorado. The evidentiary hearing will be conducted by Zoom video conference and test issue a separate order regarding procedures for the Zoom video conference and test conference.

1  On or before October 13, 2020, the parties shall:

a   Exchange pre-marked exhibits with one another. Defendant shall send the exhibits in care of Plaintiff's case manager. Plaintiff/movant shall use numbers. Defendant/Respondent shall use letters.¹ For every exhibit exceeding ten (10) pages in length, the party shall sequentially number each page of the exhibit at the bottom of the page.  *Do not file the exhibits with the Court, except as provided in paragraph 2(a)(i) below.*

---

¹ This hearing is considered evidentiary for statistical purposes.

---

b   File with the Court and serve on opposing party(parties) a List of Witnesses and Exhibits, substantially in the form of L.B.F. 9070-1.1.

2  On or before October 19, 2020, the parties shall:

a   File with the Court and serve on opposing party(parties) any written objections to the opposing party's exhibits.

(i)   If written objections are filed, the objector must attach a copy of the contested exhibit for the Court's review, unless the nature of the objection involves the fact that the party proffering the exhibit has failed to adequately identify and/or exchange it.

(ii)   If written objections are not filed, then all objections except as to relevancy will be deemed waived.

(iii)   The parties should be aware, however, that if the party offering the exhibit never refers to the exhibit either during testimony or in closing argument, then in the Court's discretion, it may not review or consider the exhibit despite its admission into evidence.

3  After the hearing, the parties shall retain custody of their own exhibits in accordance with Local Bankruptcy Rule 9070-1(a)(3).

☒ Parties may conduct discovery in this contested matter pursuant to L.B.R. 7026-2

Date: September 1, 2020

BY THE COURT:

Elizabeth E. Brown, U.S. Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

IN RE:

ALEXANDER JOHNSON,

Debtor.

Case No. 19-19816 EEB

Chapter 7

---

### DECLARATION PURSUANT TO FED.R.EVID. 902(11)

I, _____, being of lawful age, do hereby state, aver and declare, as follows:

1. I am capable of making this Declaration as being of sound mind, over the age of eighteen (18) years, and personally acquainted with and knowledgeable of the facts enumerated hereinafter.

2. I am a custodian of records for Eastman Credit Union ("Eastman").

3. On _____, I produced documents, records, communications and electronically stored information ("Production") in response to a Subpoena to Produce Documents, Information or Objects or to Permit Inspection of Premises in a Bankruptcy Case ("Subpoena") dated November 10, 2020 delivered to Eastman by the Law Offices of Ritchie, Dillard, Davies & Johnson, P.C. ("Creditor") in connection with *In re Alexander Johnson*, Case No. 19-19816 JGR ("Bankruptcy Case") before the United States District Court for the District of Colorado ("Bankruptcy Court").

4. The information contained within the Production is stored, maintained, possessed, controlled and/or kept by Eastman in the regular course of business; and it is the regular course of business of Eastman for an employee or representative of Eastman to have knowledge of the act, event, condition, opinion or diagnosis recorded and to make the record or to transmit information thereof to be included in the Production.

5. The information contained within the Production was recorded at or near the time of the act, event, condition, opinion or diagnosis.

6. I hereby certify that the Production consists of exact duplicates of any and all original documents, records, communications and information that Eastman maintains for which relates to the information requested within Exhibit 1 of the Subpoena.

7. I further certify under penalty of perjury that, to the best of my knowledge, Eastman has fully and finally complied with the Subpoena as authorized under the Federal Rules of Bankruptcy Procedure and *Minute Order* entered by the Bankruptcy Court on September 1, 2020, for which the Creditors attached as Exhibit 2 to the Subpoena, by and through the Production submitted to the Creditors.

**Ritchie, Dillard, Davies & Johnson, P.C.'s Status Report**
**EXHIBIT 4**

IN ACCORDANCE WITH 28 U.S.C. § 1746, I DECLARE UNDER PENALTY OF PERJURY THAT I HAVE EXAMINED THE ABOVE-ENUMERATED STATEMENTS WITHIN THE FOREGOING DECLARATION AND, TO THE BEST OF MY KNOWLEDGE, THIS DECLARATION AND MY STATEMENTS HEREIN ARE TRUE, CORRECT AND COMPLETE.

EXECUTED on _____, 2020.

Print Name: _____

Signature: _____

Title: _____

2

# BERKEN | CLOYES

Stephen E. Berken, Esq.
stephenberkenlaw@gmail.com

Sean Cloyes, Esq.
sean@berkencloyes.com

November 10, 2020

**Via U.S. Mail**

Paypal, Inc.
7700 Eastport Parkway
La Vista, Nebraska 68128

        RE:   *In re Alexander Johnson*, Case No. 19-19816 EEB (Bankr.D.Colo.); Subpoena to Produce as
            Authorized by the United States Bankruptcy Court for the District of Colorado

To Whom This May Concern:

Please be advised that BERKEN CLOYES, P.C. represents the Law Offices of Ritchie, Dillard, Davies &
Johnson, P.C. ("*Creditor*") in their capacity as a creditor to a bankruptcy case filed by Alexander Johnson
("*Debtor*") under Chapter 7 of Title 11 of the United States Code ("*Bankruptcy Code*") within the United
States Bankruptcy Court for the District of Colorado ("*Bankruptcy Court*") on November 13, 2019. Pursuant
to a certain and specific *Minute Order* dated September 1, 2020 ("*Pre-Trial Order*"), the Bankruptcy Court
authorizes the Creditor to conduct discovery in preparation of a hearing set to commence on December 9,
2020 concerning a *Motion to Convert Chapter 7 Bankruptcy Case to Case Under Chapter 11 of the
Bankruptcy Code Pursuant To 11 U.S.C § 706(b) or, in the Alternative, Dismiss Bankruptcy Case Pursuant
to 11 U.S.C. § 707(b)*. Therefore, the Creditor respectfully requests documents, records, financial statements
and information related to accounts, agreements, transactions, conduct and occurrences by and between
Paypal, Inc. ("*Paypal*") and the Debtor and/or certain entities for which the Debtor is an officer, director,
shareholder, member, employee and/or agent.

Pursuant to the Subpoena to Produce Documents, Information or Objects in a Bankruptcy Case ("*Subpoena*")
attached hereto, please produce all documents, records and information related to the requests enumerated
within Exhibit 1 – attached to the Subpoena and incorporated by reference therein – preferably in electronic
format on or before Monday, November 24, 2020 at 5:00 p.m. prevailing Mountain Standard Time, in
accordance with FED.R.BANKR.P. 7026, 9014, 9016 and FED.R.CIV.P. 45. Furthermore, the Creditor
respectfully requests that a representative of Paypal's custodian of records execute a declaration – either in
the form enclosed herewith or one prepared by Paypal in the ordinary course – when producing documents.

Should Paypal believe certain documents difficult to produce or find helpful to discuss appropriate search
terms, please do not hesitate to contact me – undersigned counsel for the Creditor – via
joshua@berkencloyes.com or (303) 623-4357 at your earliest convenience.

The Law Offices of Ritchie, Dillard, Davies & Johnson, P.C. thank you in advance for your cooperation.

Respectfully,

Joshua B. Sheade, Esq.

Encl.:  Subpoena
       Exhibit 1 (Production Requests) and Exhibit 2 (Pre-Trial Order) to Subpoena
       [proposed] Declaration Pursuant to Fed.R.Evid. 902(11)

---

| Tel.: (303) 623-4357 | Alt.: (719) 520-0003 | Fax: (720) 554-7853 |
1159 Deleware Street, Denver, Colorado 80204
415 West Church Street, Knoxville, Colorado 37902

Ritchie, Dillard, Davies & Johnson, P.C.'s Status Report

EXHIBIT 4

Vol 1 230

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

District of ___Colorado___

In re ___ALEXANDER JOHNSON___
               Debtor

*(Complete if issued in an adversary proceeding)*

Law Offices of Ritchie, Dillard, Davies & Johnson, P.C.
               Plaintiff
               v.
Alexander Johnson
               Defendant

Case No. ___19-19816 EEB___

Chapter ___7___

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: ___Paypal, Inc., 7700 Eastport Parkway, La Vista, Nebraska 68128___
*(Name of person to whom the subpoena is directed)*

☑ *Production*: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: Please see **EXHIBIT 1** attached hereto. In lieu of a representative appearing in-person, production may be made via electronic means on or before Monday, November 24, 2020 at 5:00 p.m.

| PLACE   BERKEN CLOYES, P.C. | DATE AND TIME |
|---|---|
| 1159 Delaware Street, Denver, Colorado 80204 | Monday, November 24, 2020 at 5:00 P.M. |

☐ *Inspection of Premises*: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: ___November 10, 2020___

CLERK OF COURT

                        OR

_____
*Signature of Clerk or Deputy Clerk*

BERKEN CLOYES, P.C.

Joshua B. Sheade, Atty. Reg. No. 46993
*Attorneys for Ritchie, Dillard, Davies & Johnson, P.C.*

The name, address, email address, and telephone number of the attorney representing the Law Offices of Ritchie, Dillard, Davies & Johnson, P.C., who issues or requests this subpoena, is: Joshua B. Sheade of BERKEN CLOYES, P.C., 1159 Delaware Street, Denver, Colorado 80211; E-mail: joshua@berkencloyes.com; and Telephone No. (303) 623-4357.

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

**Ritchie, Dillard, Davies & Johnson, P.C.'s Status Report
EXHIBIT 4**

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 2)

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: _____
on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____
_____
_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____
_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ _____ .

My fees are $ _____ for travel and $_____ for services, for a total of $_____ .

I declare under penalty of perjury that this information is true and correct.

Date: _____

_____
Server's signature

_____
Printed name and title

_____
Server's address

Additional information concerning attempted service, etc.:

**Ritchie, Dillard, Davies & Johnson, P.C.'s Status Report
EXHIBIT 4**

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 3)

## Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
### (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.** The court for the district where compliance is required — and also, after a motion is transferred, the issuing court — may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

---

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION OR OBJECTS
## IN A BANKRUPTCY CASE
### EXHIBIT 1

| | |
|---|---|
| Bankruptcy Case: | *In re Alexander Johnson*, Case No. 19-19816 EEB (Bankr.D.Colo. Nov. 13, 2019). |
| Submitted By: | Law Offices of Ritchie, Dillard, Davies & Johnson, P.C. ("***Creditor***"). |
| Submitted To: | Paypal, Inc. ("***Paypal***"). |
| In connection With: | *Motion to Convert Chapter 7 Bankruptcy Case to Case Under Chapter 11 of the Bankruptcy Code Pursuant to 11 U.S.C. § 706(b) or, in the Alternative, Dismiss Bankruptcy Case Pursuant to 11 U.S.C. § 707(b)* [ECF Dkt. Nos. 74-75 ("***Motion***")]; and *Minute Order* dated September 1, 2020 [ECF Dkt. No. 95 ("***Pre-Trial Order***")]. The Pre-Trial Order is attached as **EXHIBIT 2** to the *Subpoena to Produce Documents, Information or Objects in a Bankruptcy Case* and incorporated by reference herein. |

The Creditor respectfully compels Paypal to produce, as follows:

1.  All documents, records and information to include, but not limited to, monthly statements, account opening documents, signature cards, transaction ledgers, general ledgers, check ledgers, cancelled checks, deposit slips, deposited checks, wire transfer records, annual reports and/or member agreements concerning, identifying and/or relating to all transactions, purchases, payments, balance transfers, fees, interest, credits, debits, mailing address and physical address associated with each, every, any and all Paypal accounts that Alexander Johnson ("***Debtor***") – otherwise identified by and through Social Security Number ending xxx-xx-4248 – maintained, owned, held and/or was an authorized signer with, by and/or through Paypal covering, relating to and/or prepared at any time from and/or for the period of January 1, 2017 through January 1, 2020.

2.  All documents, records and information to include, but not limited to, monthly statements, account opening documents, signature cards, transaction ledgers, general ledgers, check ledgers, cancelled checks, deposit slips, deposited checks, wire transfer records, annual reports and/or member agreements concerning, identifying and/or relating to all transactions, purchases, payments, balance transfers, fees, interest, credits, debits, mailing address and physical address associated with each, every, any and all Paypal accounts that CB45, LLC ("***CB45***") – otherwise identified by and through Federal Tax Identification Number ("***EIN***") ending xx-xxx2136066 – maintained, owned, held and/or was an authorized signer with, by and/or through Paypal covering, relating to and/or prepared at any time from and/or for the period of January 1, 2017 through January 1, 2020.

3.  All documents, records and information to include, but not limited to, monthly statements, account opening documents, signature cards, transaction ledgers, general ledgers, check ledgers, cancelled checks, deposit slips, deposited checks, wire transfer records, annual

1

reports and/or member agreements concerning, identifying and/or relating to all transactions, purchases, payments, balance transfers, fees, interest, credits, debits, mailing address and physical address associated with each, every, any and all Paypal accounts that Bestia Principal (*"Bestia"*) maintained, owned, held and/or was an authorized signer with, by and/or through Paypal covering, relating to and/or prepared at any time from and/or for the period of January 1, 2017 through January 1, 2020.

4.   All documents, records and information to include, but not limited to, monthly statements, account opening documents, signature cards, transaction ledgers, general ledgers, check ledgers, cancelled checks, deposit slips, deposited checks, wire transfer records, annual reports and/or member agreements concerning, identifying and/or relating to all transactions, purchases, payments, balance transfers, fees, interest, credits, debits, mailing address and physical address associated with each, every, any and all accounts maintained by, through and/or with Paypal for which the Debtor had signatory authority at any time from and/or for the period of January 1, 2017 through January 1, 2020.

5.   All documents, records and information to include, but not limited to, monthly statements, escrow statements, applications, closing statements, electronic files, check ledgers, cancelled checks, deposit slips, payment receipts, wire transfer records, general ledgers, transactions ledgers, annual reports, purchase money security interests, promissory notes and deeds of trusts together with any and all supplements, addendums and/or modifications thereto for any loan(s) including, but not limited to, any and all line of credit, revolving line of credit (i.e. credit card), unsecured loan, mortgage loan or secured loan Paypal granted, approved and/or funded to the Debtor, either jointly with and/or independently of any other person and/or entity, at any time from and/or for the period of January 1, 2017 through January 1, 2020.

6.   All documents, records and information to include, but not limited to, monthly statements, escrow statements, applications, closing statements, electronic files, check ledgers, cancelled checks, deposit slips, payment receipts, wire transfer records, general ledgers, transactions ledgers, annual reports, purchase money security interests, promissory notes and deeds of trusts together with any and all supplements, addendums and/or modifications thereto for any loan(s) including, but not limited to, any and all line of credit, revolving line of credit (i.e. credit card), unsecured loan, mortgage loan or secured loan Paypal granted, approved and/or funded to CB45, either jointly with and/or independently of any other person and/or entity, at any time from and/or for the period of January 1, 2017 through January 1, 2020.

7.   All documents, records and information to include, but not limited to, monthly statements, escrow statements, applications, closing statements, electronic files, check ledgers, cancelled checks, deposit slips, payment receipts, wire transfer records, general ledgers, transactions ledgers, annual reports, purchase money security interests, promissory notes and deeds of trusts together with any and all supplements, addendums and/or modifications thereto for any loan(s) including, but not limited to, any and all line of credit, revolving line of credit (i.e. credit card), unsecured loan, mortgage loan or secured loan Paypal granted, approved and/or funded to Bestia, either jointly with and/or independently of any other person and/or entity, at any time from and/or for the period of January 1, 2017 through January 1, 2020.

2

**UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF COLORADO**

| EXHIBIT 2 |
|---|

### Minute Order

Date: September 1, 2020        **Honorable Elizabeth E. Brown, Presiding**
Ruth S. Mares, Law Clerk

In re:  Alexander Johnson,        Case. No. 19-19816 EEB
Chapter 7

Debtor.

| | Appearances | Representing | |
|---|---|---|---|
| Counsel | Lindsay Riley* | Trustee | M. Stephen Peters, chapter 7 trustee* |
| Counsel | Jeffrey Brinen* | Debtor | |
| Counsel | Joshua Sheade* | Creditor | Ritchie, Dillard, Davies & Johnson, P.C. |
| Counsel | | Creditor | |
| Counsel | | Creditor | |
| Counsel | | Creditor | |

*telephone appearance

Proceedings:  Non-Evidentiary Hearing on Motion to Convert Chapter 7 Bankruptcy Case to Case Under Chapter 11 of the Bankruptcy Code Pursuant to 11 U.S.C. § 706(b) or, in the Alternative, Dismiss Bankruptcy Case Pursuant to 11 U.S.C. § 707(b) filed by Ritchie, Dillard, Davies & Johnson, P.C. and the Objections thereto filed by the Debtor and the Chapter 7 Trustee, M. Stephen Peters☐ Witnesses Sworn     ☐ See Attached List     ☐ Exhibits Entered

☒ Evidentiary Hearing[1]

☐

Orders:

☒ **On or before October 9, 2020**, the parties may file additional briefs on any legal issues related to § 706(b) or § 707(b).

☒ The Court will hold a one-half day evidentiary hearing on the Motion on **Monday, October 26, 2020 at 9:30 a.m.,** in Courtroom F, United States Bankruptcy Court for the District of Colorado.  The evidentiary hearing will be conducted by Zoom video conference.  The Court will issue a separate order regarding procedures for the Zoom video conference and test conference.

1.  **On or before October 13, 2020,** the parties shall:

    a.  Exchange pre-marked exhibits with one another. Defendant shall send the exhibits in care of Plaintiff's case manager.  Plaintiff/Movant shall use numbers. Defendant/Respondent shall use letters.  For every exhibit exceeding ten (10) pages in length, the party shall sequentially number each page of that exhibit at the bottom of the page. *Do not file the exhibits with the Court*, except as provided in paragraph 2(a)(i) below.

---

[1] This hearing is considered evidentiary for statistical purposes.

    b. File with the Court and serve on opposing party(parties) a List of Witnesses and Exhibits, substantially in the form of L.B.F. 9070-1.1.

2. **On or before October 19, 2020,** the parties shall:

    a. File with the Court and serve on opposing party(parties) any written objections to the opposing party's exhibits.

        (i) If written objections are filed, the objector must attach a copy of the contested exhibit for the Court's review, unless the nature of the objection involves the fact that the party proffering the exhibit has failed to adequately identify and/or exchange it.

        (ii) If written objections are not filed, then all objections except as to relevancy will be deemed waived.

        (iii) The parties should be aware, however, that if the party offering the exhibit never refers to the exhibit either during testimony or in closing argument, then in the Court's discretion, it may not review or consider the exhibit, despite its admission into evidence.

3. **After the hearing,** the parties shall retain custody of their own exhibits in accordance with Local Bankruptcy Rule 9070-1(a)(3).

☒ Parties may conduct discovery in this contested matter pursuant to L.B.R. 7026-2.

---

Date: September 1, 2020.

BY THE COURT:

*Elizabeth E. Brown*

_____

Elizabeth E. Brown, U.S. Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

IN RE:

ALEXANDER JOHNSON,

                Debtor.

Case No. 19-19816 EEB

Chapter 7

### DECLARATION PURSUANT TO FED.R.EVID. 902(11)

I, _____, being of lawful age, do hereby state, aver and declare, as follows:

1. I am capable of making this Declaration as being of sound mind, over the age of eighteen (18) years, and personally acquainted with and knowledgeable of the facts enumerated hereinafter.

2. I am a custodian of records for Paypal, Inc. ("Paypal").

3. On _____, I produced documents, records, communications and electronically stored information ("Production") in response to a Subpoena to Produce Documents, Information or Objects or to Permit Inspection of Premises in a Bankruptcy Case ("Subpoena") dated November 10, 2020 delivered to Paypal by the Law Offices of Ritchie, Dillard, Davies & Johnson, P.C. ("Creditor") in connection with *In re Alexander Johnson*, Case No. 19-19816 JGR ("Bankruptcy Case") before the United States District Court for the District of Colorado ("Bankruptcy Court").

4. The information contained within the Production is stored, maintained, possessed, controlled and/or kept by Paypal in the regular course of business; and it is the regular course of business of Paypal for an employee or representative of Paypal to have knowledge of the act, event, condition, opinion or diagnosis recorded and to make the record or to transmit information thereof to be included in the Production.

5. The information contained within the Production was recorded at or near the time of the act, event, condition, opinion or diagnosis.

6. I hereby certify that the Production consists of exact duplicates of any and all original documents, records, communications and information that Paypal maintains for which relates to the information requested within Exhibit 1 of the Subpoena.

7. I further certify under penalty of perjury that, to the best of my knowledge, Paypal has fully and finally complied with the Subpoena as authorized under the Federal Rules of Bankruptcy Procedure and *Minute Order* entered by the Bankruptcy Court on September 1, 2020, for which the Creditors attached as Exhibit 2 to the Subpoena, by and through the Production submitted to the Creditors.

**Ritchie, Dillard, Davies & Johnson, P.C.'s Status Report**
**EXHIBIT 4**

IN ACCORDANCE WITH 28 U.S.C. § 1746, I DECLARE UNDER PENALTY OF PERJURY THAT I HAVE EXAMINED THE ABOVE-ENUMERATED STATEMENTS WITHIN THE FOREGOING DECLARATION AND, TO THE BEST OF MY KNOWLEDGE, THIS DECLARATION AND MY STATEMENTS HEREIN ARE TRUE, CORRECT AND COMPLETE.

EXECUTED on _____, 2020.

Print Name: _____

Signature: _____

Title: _____

# BERKEN | CLOYES

Stephen E. Berken, Esq.
stephenberkenlaw@gmail.com

Sean Cloyes, Esq.
sean@berkencloyes.com

November 10, 2020

**Via U.S. Mail**

Venmo, LLC
117 Barrow Street
New York, NY 10014

RE: *In re Alexander Johnson*, Case No. 19-19816 EEB (Bankr.D.Colo.); Subpoena to Produce as Authorized by the United States Bankruptcy Court for the District of Colorado

To Whom This May Concern:

Please be advised that BERKEN CLOYES, P.C. represents the Law Offices of Ritchie, Dillard, Davies & Johnson, P.C. ("*Creditor*") in their capacity as a creditor to a bankruptcy case filed by Alexander Johnson ("*Debtor*") under Chapter 7 of Title 11 of the United States Code ("*Bankruptcy Code*") within the United States Bankruptcy Court for the District of Colorado ("*Bankruptcy Court*") on November 13, 2019. Pursuant to a certain and specific *Minute Order* dated September 1, 2020 ("*Pre-Trial Order*"), the Bankruptcy Court authorizes the Creditor to conduct discovery in preparation of a hearing set to commence on December 9, 2020 concerning a *Motion to Convert Chapter 7 Bankruptcy Case to Case Under Chapter 11 of the Bankruptcy Code Pursuant To 11 U.S.C § 706(b) or, in the Alternative, Dismiss Bankruptcy Case Pursuant to 11 U.S.C. § 707(b)*. Therefore, the Creditor respectfully requests documents, records, financial statements and information related to accounts, agreements, transactions, conduct and occurrences by and between Venmo, LLC ("*Venmo*") and the Debtor and/or certain entities for which the Debtor is an officer, director, shareholder, member, employee and/or agent.

Pursuant to the Subpoena to Produce Documents, Information or Objects in a Bankruptcy Case ("*Subpoena*") attached hereto, please produce all documents, records and information related to the requests enumerated within Exhibit 1 – attached to the Subpoena and incorporated by reference therein – preferably in electronic format on or before Monday, November 24, 2020 at 5:00 p.m. prevailing Mountain Standard Time, in accordance with FED.R.BANKR.P. 7026, 9014, 9016 and FED.R.CIV.P. 45. Furthermore, the Creditor respectfully requests that a representative of Venmo's custodian of records execute a declaration – either in the form enclosed herewith or one prepared by Venmo in the ordinary course – when producing documents.

Should Venmo believe certain documents difficult to produce or find helpful to discuss appropriate search terms, please do not hesitate to contact me – undersigned counsel for the Creditor – via joshua@berkencloyes.com or (303) 623-4357 at your earliest convenience.

The Law Offices of Ritchie, Dillard, Davies & Johnson, P.C. thank you in advance for your cooperation.

Respectfully,

Joshua B. Sheade, Esq.

Encl.: Subpoena
Exhibit 1 (Production Requests) and Exhibit 2 (Pre-Trial Order) to Subpoena
[proposed] Declaration Pursuant to Fed.R.Evid. 902(11)

| Tel.: (303) 623-4357 | Alt.: (719) 520-0003 | Fax: (720) 554-7853 |
1159 Deleware Street, Denver, Colorado 80204
Ritchie, Dillard, Davies & Johnson, P.C.'s Status Report
EXHIBIT 4

Vol 1 240

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

District of ___Colorado___

In re ___ALEXANDER JOHNSON___
                Debtor

*(Complete if issued in an adversary proceeding)*

Case No. __19-19816 EEB__

Chapter ___7___

Law Offices of Ritchie, Dillard, Davies & Johnson, P.C.
              Plaintiff
            v.

Alexander Johnson
              Defendant

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: __Venmo, LLC; 117 Barrow Street, New York, New York 10014__
          *(Name of person to whom the subpoena is directed)*

☑ *Production*: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:  Please see **EXHIBIT 1** attached hereto. In lieu of a representative appearing in-person, production may be made via electronic means on or before Monday, November 24, 2020 at 5:00 p.m.

| PLACE  BERKEN CLOYES, P.C. | DATE AND TIME |
|---|---|
| 1159 Delaware Street, Denver, Colorado 80204 | Monday, November 24, 2020 at 5:00 P.M. |

☐ *Inspection of Premises*: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|
| | |

     The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: __November 10, 2020__

      CLERK OF COURT               BERKEN CLOYES, P.C.

                    OR

    *Signature of Clerk or Deputy Clerk*        Joshua B. Sheade, Atty. Reg. No. 46993
                                  *Attorneys for Ritchie, Dillard, Davies & Johnson, P.C.*

The name, address, email address, and telephone number of the attorney representing the Law Offices of Ritchie, Dillard, Davies & Johnson, P.C., who issues or requests this subpoena, is: Joshua B. Sheade of BERKEN CLOYES, P.C., 1159 Delaware Street, Denver, Colorado 80211; E-mail: joshua@berkencloyes.com; and Telephone No. (303) 623-4357.

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

**Ritchie, Dillard, Davies & Johnson, P.C.'s Status Report**
**EXHIBIT 4**

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 2)

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ _____ .

My fees are $ _____ for travel and $_____ for services, for a total of $_____ .

I declare under penalty of perjury that this information is true and correct.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information concerning attempted service, etc.:

.

**Ritchie, Dillard, Davies & Johnson, P.C.'s Status Report**
**EXHIBIT 4**

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 3)

## Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
### (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
*(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
*(B) Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
*(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
*(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
*(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
*(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
*(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
*(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
*(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
*(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
*(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.** The court for the district where compliance is required — and also, after a motion is transferred, the issuing court — may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**Ritchie, Dillard, Davies & Johnson, P.C.'s Status Report**
**EXHIBIT 4**

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION OR OBJECTS IN A BANKRUPTCY CASE
#### EXHIBIT 1

| | |
|---|---|
| Bankruptcy Case: | *In re Alexander Johnson*, Case No. 19-19816 EEB (Bankr.D.Colo. Nov. 13, 2019). |
| Submitted By: | Law Offices of Ritchie, Dillard, Davies & Johnson, P.C. ("*Creditor*"). |
| Submitted To: | Venmo, LLC ("*Venmo*"). |
| In connection With: | *Motion to Convert Chapter 7 Bankruptcy Case to Case Under Chapter 11 of the Bankruptcy Code Pursuant to 11 U.S.C. § 706(b) or, in the Alternative, Dismiss Bankruptcy Case Pursuant to 11 U.S.C. § 707(b)* [ECF Dkt. Nos. 74-75 ("*Motion*")]; and *Minute Order* dated September 1, 2020 [ECF Dkt. No. 95 ("*Pre-Trial Order*")]. The Pre-Trial Order is attached as **EXHIBIT 2** to the *Subpoena to Produce Documents, Information or Objects in a Bankruptcy Case* and incorporated by reference herein. |

The Creditor respectfully compels Venmo to produce, as follows:

1. All documents, records and information to include, but not limited to, monthly statements, account opening documents, signature cards, transaction ledgers, general ledgers, check ledgers, cancelled checks, deposit slips, deposited checks, wire transfer records, annual reports and/or member agreements concerning, identifying and/or relating to all transactions, purchases, payments, balance transfers, fees, interest, credits, debits, mailing address and physical address associated with each, every, any and all Venmo accounts that Alexander Johnson ("*Debtor*") – otherwise identified by and through Social Security Number ending xxx-xx-4248 – maintained, owned, held and/or was an authorized signer with, by and/or through Venmo covering, relating to and/or prepared at any time from and/or for the period of January 1, 2017 up to and through January 1, 2020.

2. All documents, records and information to include, but not limited to, monthly statements, account opening documents, signature cards, transaction ledgers, general ledgers, check ledgers, cancelled checks, deposit slips, deposited checks, wire transfer records, annual reports and/or member agreements concerning, identifying and/or relating to all transactions, purchases, payments, balance transfers, fees, interest, credits, debits, mailing address and physical address associated with each, every, any and all Venmo accounts that CB45, LLC ("*CB45*") – otherwise identified by and through Federal Tax Identification Number ("*EIN*") ending xx-xxx2136066 – maintained, owned, held and/or was an authorized signer with, by and/or through Venmo covering, relating to and/or prepared at any time from and/or for the period of January 1, 2017 up to and through January 1, 2020.

3. All documents, records and information to include, but not limited to, monthly statements, account opening documents, signature cards, transaction ledgers, general ledgers, check ledgers, cancelled checks, deposit slips, deposited checks, wire transfer records, annual

1

reports and/or member agreements concerning, identifying and/or relating to all transactions, purchases, payments, balance transfers, fees, interest, credits, debits, mailing address and physical address associated with each, every, any and all Venmo accounts that Bestia Principal ("*Bestia*") maintained, owned, held and/or was an authorized signer with, by and/or through Venmo covering, relating to and/or prepared at any time from and/or for the period of January 1, 2017 up to and through January 1, 2020.

4.   All documents, records and information to include, but not limited to, monthly statements, account opening documents, signature cards, transaction ledgers, general ledgers, check ledgers, cancelled checks, deposit slips, deposited checks, wire transfer records, annual reports and/or member agreements concerning, identifying and/or relating to all transactions, purchases, payments, balance transfers, fees, interest, credits, debits, mailing address and physical address associated with each, every, any and all accounts maintained by, through and/or with Venmo for which the Debtor had signatory authority at any time from and/or for the period of January 1, 2017 up to and through January 1, 2020.

5.   All documents, records and information to include, but not limited to, monthly statements, escrow statements, applications, closing statements, electronic files, check ledgers, cancelled checks, deposit slips, payment receipts, wire transfer records, general ledgers, transactions ledgers, annual reports, purchase money security interests, promissory notes and deeds of trusts together with any and all supplements, addendums and/or modifications thereto for any loan(s) including, but not limited to, any and all line of credit, revolving line of credit (i.e. credit card), unsecured loan, mortgage loan or secured loan Venmo granted, approved and/or funded to the Debtor, either jointly with and/or independently of any other person and/or entity, at any time from and/or for the period of January 1, 2017 up to and through January 1, 2020.

6.   All documents, records and information to include, but not limited to, monthly statements, escrow statements, applications, closing statements, electronic files, check ledgers, cancelled checks, deposit slips, payment receipts, wire transfer records, general ledgers, transactions ledgers, annual reports, purchase money security interests, promissory notes and deeds of trusts together with any and all supplements, addendums and/or modifications thereto for any loan(s) including, but not limited to, any and all line of credit, revolving line of credit (i.e. credit card), unsecured loan, mortgage loan or secured loan Venmo granted, approved and/or funded to CB45, either jointly with and/or independently of any other person and/or entity, at any time from and/or for the period of January 1, 2017 up to and through January 1, 2020.

7.   All documents, records and information to include, but not limited to, monthly statements, escrow statements, applications, closing statements, electronic files, check ledgers, cancelled checks, deposit slips, payment receipts, wire transfer records, general ledgers, transactions ledgers, annual reports, purchase money security interests, promissory notes and deeds of trusts together with any and all supplements, addendums and/or modifications thereto for any loan(s) including, but not limited to, any and all line of credit, revolving line of credit (i.e. credit card), unsecured loan, mortgage loan or secured loan Venmo granted, approved and/or funded to Bestia, either jointly with and/or independently of any other person and/or entity, at any time from and/or for the period of January 1, 2017 up to and through January 1, 2020.

2

**UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF COLORADO**

EXHIBIT
2

*Minute Order*

Date:  September 1, 2020                      **Honorable Elizabeth E. Brown, Presiding**
                                                    Ruth S. Mares, Law Clerk

In re:   Alexander Johnson,                                    Case. No. 19-19816 EEB
                                                                      Chapter 7
            Debtor.

| | Appearances | Representing | |
|---|---|---|---|
| Counsel | Lindsay Riley* | Trustee | M. Stephen Peters, chapter 7 trustee* |
| Counsel | Jeffrey Brinen* | Debtor | |
| Counsel | Joshua Sheade* | Creditor | Ritchie, Dillard, Davies & Johnson, P.C. |
| Counsel | | Creditor | |
| Counsel | | Creditor | |
| Counsel | | Creditor | |

*telephone appearance

Proceedings:  Non-Evidentiary Hearing on Motion to Convert Chapter 7 Bankruptcy Case to Case Under Chapter 11 of the Bankruptcy Code Pursuant to 11 U.S.C. § 706(b) or, in the Alternative, Dismiss Bankruptcy Case Pursuant to 11 U.S.C. § 707(b) filed by Ritchie, Dillard, Davies & Johnson, P.C. and the Objections thereto filed by the Debtor and the Chapter 7 Trustee, M. Stephen Peters☐ Witnesses Sworn      ☐ See Attached List      ☐ Exhibits Entered

☒ Evidentiary Hearing[1]

☐

Orders:

☒ **On or before October 9, 2020**, the parties may file additional briefs on any legal issues related to § 706(b) or § 707(b).

☒ The Court will hold a one-half day evidentiary hearing on the Motion on **Monday, October 26, 2020 at 9:30 a.m.,** in Courtroom F, United States Bankruptcy Court for the District of Colorado.  The evidentiary hearing will be conducted by Zoom video conference.  The Court will issue a separate order regarding procedures for the Zoom video conference and test conference.

1.  **On or before October 13, 2020,** the parties shall:

    a.  Exchange pre-marked exhibits with one another. Defendant shall send the exhibits in care of Plaintiff's case manager.  Plaintiff/Movant shall use numbers.  Defendant/Respondent shall use letters.  For every exhibit exceeding ten (10) pages in length, the party shall sequentially number each page of that exhibit at the bottom of the page. *Do not file the exhibits with the Court*, except as provided in paragraph 2(a)(i) below.

---

[1] This hearing is considered evidentiary for statistical purposes.

    b. File with the Court and serve on opposing party(parties) a List of Witnesses and Exhibits, substantially in the form of L.B.F. 9070-1.1.

2. **On or before October 19, 2020,** the parties shall:

    a. File with the Court and serve on opposing party(parties) any written objections to the opposing party's exhibits.

        (i) If written objections are filed, the objector must attach a copy of the contested exhibit for the Court's review, unless the nature of the objection involves the fact that the party proffering the exhibit has failed to adequately identify and/or exchange it.

        (ii) If written objections are not filed, then all objections except as to relevancy will be deemed waived.

        (iii) The parties should be aware, however, that if the party offering the exhibit never refers to the exhibit either during testimony or in closing argument, then in the Court's discretion, it may not review or consider the exhibit, despite its admission into evidence.

3. **After the hearing,** the parties shall retain custody of their own exhibits in accordance with Local Bankruptcy Rule 9070-1(a)(3).

☒ Parties may conduct discovery in this contested matter pursuant to L.B.R. 7026-2.

Date: September 1, 2020.

BY THE COURT:

*Elizabeth E. Brown*

_____
Elizabeth E. Brown, U.S. Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| IN RE: | Case No. 19-19816 EEB |
| ALEXANDER JOHNSON, | |
| Debtor. | Chapter 7 |

## DECLARATION PURSUANT TO FED.R.EVID. 902(11)

I, _____, being of lawful age, do hereby state, aver and declare, as follows:

1.  I am capable of making this Declaration as being of sound mind, over the age of eighteen (18) years, and personally acquainted with and knowledgeable of the facts enumerated hereinafter.

2.  I am a custodian of records for Venmo, LLC ("Venmo").

3.  On _____, I produced documents, records, communications and electronically stored information ("Production") in response to a Subpoena to Produce Documents, Information or Objects or to Permit Inspection of Premises in a Bankruptcy Case ("Subpoena") dated November 10, 2020 delivered to Venmo by the Law Offices of Ritchie, Dillard, Davies & Johnson, P.C. ("Creditor") in connection with *In re Alexander Johnson*, Case No. 19-19816 JGR ("Bankruptcy Case") before the United States District Court for the District of Colorado ("Bankruptcy Court").

4.  The information contained within the Production is stored, maintained, possessed, controlled and/or kept by Venmo in the regular course of business; and it is the regular course of business of Venmo for an employee or representative of Venmo to have knowledge of the act, event, condition, opinion or diagnosis recorded and to make the record or to transmit information thereof to be included in the Production.

5.  The information contained within the Production was recorded at or near the time of the act, event, condition, opinion or diagnosis.

6.  I hereby certify that the Production consists of exact duplicates of any and all original documents, records, communications and information that Venmo maintains for which relates to the information requested within Exhibit 1 of the Subpoena.

7.  I further certify under penalty of perjury that, to the best of my knowledge, Venmo has fully and finally complied with the Subpoena as authorized under the Federal Rules of Bankruptcy Procedure and *Minute Order* entered by the Bankruptcy Court on September 1, 2020, for which the Creditors attached as Exhibit 2 to the Subpoena, by and through the Production submitted to the Creditors.

**Ritchie, Dillard, Davies & Johnson, P.C.'s Status Report**
**EXHIBIT 4**

IN ACCORDANCE WITH 28 U.S.C. § 1746, I DECLARE UNDER PENALTY OF PERJURY THAT I HAVE EXAMINED THE ABOVE-ENUMERATED STATEMENTS WITHIN THE FOREGOING DECLARATION AND, TO THE BEST OF MY KNOWLEDGE, THIS DECLARATION AND MY STATEMENTS HEREIN ARE TRUE, CORRECT AND COMPLETE.

EXECUTED on _____, 2020.

Print Name: _____

Signature: _____

Title: _____

2

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

District of __Colorado__

In re __ALEXANDER JOHNSON__
_____
Debtor

_(Complete if issued in an adversary proceeding)_

Law Offices of Ritchie, Dillard, Davies & Johnson, P.C.
_____
Plaintiff

v.

Alexander Johnson
_____
Defendant

Case No. __19-19816 EEB__

Chapter ___7___

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: __PDB Sports, Ltd., Attn: Richard P. Slivka; 13655 Broncos Parkway, Englewood, Colorado 80112__
_(Name of person to whom the subpoena is directed)_

☑ _Production_: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: Please see **EXHIBIT 1** attached hereto. In lieu of a representative appearing in-person, production may be made via electronic means on or before Monday, November 24, 2020 at 5:00 p.m.

| PLACE   BERKEN CLOYES, P.C.<br>1159 Delaware Street, Denver, Colorado 80204 | DATE AND TIME<br>Monday, November 24, 2020 at 5:00 P.M. |
|---|---|

☐ _Inspection of Premises_: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|
|  |  |

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: November 10, 2020

CLERK OF COURT

_____
Signature of Clerk or Deputy Clerk

OR

BERKEN CLOYES, P.C.
_____
Joshua B. Sheade, Atty. Reg. No. 46993
_Attorneys for Ritchie, Dillard, Davies & Johnson, P.C._

The name, address, email address, and telephone number of the attorney representing the Law Offices of Ritchie, Dillard, Davies & Johnson, P.C., who issues or requests this subpoena, is: Joshua B. Sheade of BERKEN CLOYES, P.C., 1159 Delaware Street, Denver, Colorado 80211; E-mail: joshua@berkencloyes.com; and Telephone No. (303) 623-4357.

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

**Ritchie, Dillard, Davies & Johnson, P.C.'s Status Report**
**EXHIBIT 4**

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 2)

## PROOF OF SERVICE
**(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)**

I received this subpoena for *(name of individual and title, if any)*: _____
on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the
witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

      I declare under penalty of perjury that this information is true and correct.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information concerning attempted service, etc.:

B2570 (Form 2570) – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 3)

## Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
### (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
*(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
*(B) Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
*(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
*(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
*(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
*(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
*(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
*(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
*(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
*(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
*(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION OR OBJECTS
## IN A BANKRUPTCY CASE
### EXHIBIT 1

| | |
|---|---|
| Bankruptcy Case: | *In re Alexander Johnson*, Case No. 19-19816 EEB (Bankr.D.Colo. Nov. 13, 2019). |
| Submitted By: | Law Offices of Ritchie, Dillard, Davies & Johnson, P.C. ("*Creditor*"). |
| Submitted To: | PDB Sports, Ltd. ("*Denver Broncos*"). |
| In Connection With: | *Motion to Convert Chapter 7 Bankruptcy Case to Case Under Chapter 11 of the Bankruptcy Code Pursuant to 11 U.S.C. § 706(b) or, in the Alternative, Dismiss Bankruptcy Case Pursuant to 11 U.S.C. § 707(b)* [ECF Dkt. Nos. 74-75 ("*Motion*")]; and *Minute Order* dated September 1, 2020 [ECF Dkt. No. 95 ("*Pre-Trial Order*")]. The Pre-Trial Order is attached as **EXHIBIT 2** to the *Subpoena to Produce Documents, Information or Objects in a Bankruptcy Case* and incorporated by reference herein. |

The Creditor respectfully compels the Denver Broncos to produce, as follows:

1.   All documents, records, ledgers, reports, journals and information related to employment of Alexander Johnson ("*Debtor*") – otherwise identified by and through Social Security Number ending xxx-xx-4248 – with the Denver Broncos including, but not limited to, check ledgers, cancelled checks, deposit slips, deposited checks, payroll reports, pay advices, expense reports, Form W-2 and/or Form 1099 received, prepared and/or maintained by the Denver Broncos covering, relating to and/or prepared at any time from and/or for the period of January 1, 2017 up to and through January 1, 2020.

2.   All documents and records related to any and all Uniform Players Contract(s), agreements, executory contract, endorsement agreements, agency relationship, employer-employee relationship and/or ventures, together with any and all addendums, amendments, modifications, and/or novation related, referencing, attached and/or incorporated thereto and/or therein by and between the Denver Broncos and the Debtor including, but not limited to, any and all employment agreements, nondisclosure agreements, non-compete agreements, membership agreements and/or payment histories received, prepared and/or maintained by the Denver Broncos covering, relating to and/or prepared at any time from and/or for the period of January 1, 2017 up to and through January 1, 2020.

3.   All documents, records, forms, schedules, statements, disclosures, reports, and amendments thereto for tax returns that the Denver Broncos filed with the Internal Revenue Service and any jurisdiction within these United States of America including, but not limited to, Colorado Department of Revenue exclusively relating to, identifying and/or naming the Debtor covering, relating to and/or prepared at any time from and/or for the period of January 1, 2017 up to and through January 1, 2020.

4.    All communications, in print and/or electronic format corresponded by mail, electronic means, facsimile and/or hand delivery, together with any and all documents, records and information attached and/or enclosed thereto, by and between the Denver Broncos and the Debtor related to the further and future employment of the Debtor with the Denver Broncos including, but not limited to, proposed terms and conditions of any future employment agreement, accepted terms and conditions of any future employment agreement and/or accepted terms and conditions of any modification(s) of ongoing employment agreement(s), together with any and all negotiations leading to acceptance of each and every agreed upon term and condition covering, relating to, dated and/or corresponded at any time from and/or for the period of January 1, 2017 up to and through January 1, 2020.

5.    All communications, in print and/or electronic format corresponded by mail, electronic means, facsimile and/or hand delivery, together with any and all documents, records and information attached and/or enclosed thereto, by and between the Denver Broncos and any third-person(s) and/or entity acting on behalf of and/or operating in any unofficial, agency, fiduciary and/or advisory capacity related to the further and future employment of the Debtor with the Denver Broncos including, but not limited to, proposed terms and conditions of any future employment agreement, accepted terms and conditions of any future employment agreement and/or accepted terms and conditions of any modification(s) of ongoing employment agreement(s), together with any and all negotiations leading to acceptance of each and every agreed upon term and condition covering, relating to, dated and/or corresponded at any time from and/or for the period of January 1, 2017 up to and through January 1, 2020.

**UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF COLORADO**

EXHIBIT
2

### Minute Order

Date: September 1, 2020

**Honorable Elizabeth E. Brown, Presiding**
Ruth S. Mares, Law Clerk

In re: Alexander Johnson,

Debtor.

Case. No. 19-19816 EEB
Chapter 7

| | Appearances | Representing | |
|---|---|---|---|
| Counsel | Lindsay Riley* | Trustee | M. Stephen Peters, chapter 7 trustee* |
| Counsel | Jeffrey Brinen* | Debtor | |
| Counsel | Joshua Sheade* | Creditor | Ritchie, Dillard, Davies & Johnson, P.C. |
| Counsel | | Creditor | |
| Counsel | | Creditor | |
| Counsel | | Creditor | |

*telephone appearance

Proceedings: Non-Evidentiary Hearing on Motion to Convert Chapter 7 Bankruptcy Case to Case Under Chapter 11 of the Bankruptcy Code Pursuant to 11 U.S.C. § 706(b) or, in the Alternative, Dismiss Bankruptcy Case Pursuant to 11 U.S.C. § 707(b) filed by Ritchie, Dillard, Davies & Johnson, P.C. and the Objections thereto filed by the Debtor and the Chapter 7 Trustee, M. Stephen Peters☐ Witnesses Sworn     ☐ See Attached List          ☐ Exhibits Entered

☒ Evidentiary Hearing[1]

☐

Orders:

☒ **On or before October 9, 2020**, the parties may file additional briefs on any legal issues related to § 706(b) or § 707(b).

☒ The Court will hold a one-half day evidentiary hearing on the Motion on **Monday, October 26, 2020 at 9:30 a.m.,** in Courtroom F, United States Bankruptcy Court for the District of Colorado. The evidentiary hearing will be conducted by Zoom video conference. The Court will issue a separate order regarding procedures for the Zoom video conference and test conference.

1. **On or before October 13, 2020,** the parties shall:

    a. Exchange pre-marked exhibits with one another. Defendant shall send the exhibits in care of Plaintiff's case manager. Plaintiff/Movant shall use numbers. Defendant/Respondent shall use letters. For every exhibit exceeding ten (10) pages in length, the party shall sequentially number each page of that exhibit at the bottom of the page. *Do not file the exhibits with the Court*, except as provided in paragraph 2(a)(i) below.

---

[1] This hearing is considered evidentiary for statistical purposes.

b.  File with the Court and serve on opposing party(parties) a List of Witnesses and Exhibits, substantially in the form of L.B.F. 9070-1.1.

2.  **On or before October 19, 2020,** the parties shall:

a.  File with the Court and serve on opposing party(parties) any written objections to the opposing party's exhibits.

(i)  If written objections are filed, the objector must attach a copy of the contested exhibit for the Court's review, unless the nature of the objection involves the fact that the party proffering the exhibit has failed to adequately identify and/or exchange it.

(ii)  If written objections are not filed, then all objections except as to relevancy will be deemed waived.

(iii)  The parties should be aware, however, that if the party offering the exhibit never refers to the exhibit either during testimony or in closing argument, then in the Court's discretion, it may not review or consider the exhibit, despite its admission into evidence.

3.  **After the hearing,** the parties shall retain custody of their own exhibits in accordance with Local Bankruptcy Rule 9070-1(a)(3).

☒ Parties may conduct discovery in this contested matter pursuant to L.B.R. 7026-2.

Date: September 1, 2020.

BY THE COURT:

_____
Elizabeth E. Brown, U.S. Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

IN RE:

ALEXANDER JOHNSON,

               Debtor.

Case No. 19-19816 EEB

Chapter 7

### DECLARATION PURSUANT TO FED.R.EVID. 902(11)

I, _____, being of lawful age, do hereby state, aver and declare, as follows:

1.    I am capable of making this Declaration as being of sound mind, over the age of eighteen (18) years, and personally acquainted with and knowledgeable of the facts enumerated hereinafter.

2.    I am a custodian of records for PDB Sports, Ltd. ("Denver Broncos").

3.    On _____, I produced documents, records, communications and electronically stored information ("Production") in response to a Subpoena to Produce Documents, Information or Objects or to Permit Inspection of Premises in a Bankruptcy Case ("Subpoena") dated November 10, 2020 delivered to Denver Broncos by the Law Offices of Ritchie, Dillard, Davies & Johnson, P.C. ("Creditor") in connection with *In re Alexander Johnson*, Case No. 19-19816 JGR ("Bankruptcy Case") before the United States District Court for the District of Colorado ("Bankruptcy Court").

4.    The information contained within the Production is stored, maintained, possessed, controlled and/or kept by Denver Broncos in the regular course of business; and it is the regular course of business of Denver Broncos for an employee or representative of Denver Broncos to have knowledge of the act, event, condition, opinion or diagnosis recorded and to make the record or to transmit information thereof to be included in the Production.

5.    The information contained within the Production was recorded at or near the time of the act, event, condition, opinion or diagnosis.

6.    I hereby certify that the Production consists of exact duplicates of any and all original documents, records, communications and information that Denver Broncos maintains for which relates to the information requested within Exhibit 1 of the Subpoena.

7.    I further certify under penalty of perjury that, to the best of my knowledge, Denver Broncos has fully and finally complied with the Subpoena as authorized under the Federal Rules of Bankruptcy Procedure and *Minute Order* entered by the Bankruptcy Court on September 1, 2020, for which the Creditors attached as Exhibit 2 to the Subpoena, by and through the Production submitted to the Creditors.

**Ritchie, Dillard, Davies & Johnson, P.C.'s Status Report**
**EXHIBIT 4**

IN ACCORDANCE WITH 28 U.S.C. § 1746, I DECLARE UNDER PENALTY OF PERJURY THAT I HAVE EXAMINED THE ABOVE-ENUMERATED STATEMENTS WITHIN THE FOREGOING DECLARATION AND, TO THE BEST OF MY KNOWLEDGE, THIS DECLARATION AND MY STATEMENTS HEREIN ARE TRUE, CORRECT AND COMPLETE.

EXECUTED on _____, 2020.

Print Name: _____

Signature: _____

Title: _____

2

# BERKEN | CLOYES

Stephen E. Berken, Esq.
stephenberkenlaw@gmail.com

Sean Cloyes, Esq.
sean@berkencloyes.com

November 10, 2020

**Via U.S. Mail**

LoanCare, LLC
c/o Stearns Lending, LLC
Attn: Legal/Licensing
3637 Sentara Way
Virginia Beach, Virginia 23452

RE:   *In re Alexander Johnson*, Case No. 19-19816 EEB (Bankr.D.Colo.); Subpoena to Produce as Authorized by the United States Bankruptcy Court for the District of Colorado

To Whom This May Concern:

Please be advised that BERKEN CLOYES, P.C. represents the Law Offices of Ritchie, Dillard, Davies & Johnson, P.C. ("***Creditor***") in their capacity as a creditor to a bankruptcy case filed by Alexander Johnson ("***Debtor***") under Chapter 7 of Title 11 of the United States Code ("***Bankruptcy Code***") within the United States Bankruptcy Court for the District of Colorado ("***Bankruptcy Court***") on November 13, 2019. Pursuant to a certain and specific *Minute Order* dated September 1, 2020 ("***Pre-Trial Order***"), the Bankruptcy Court authorizes the Creditor to conduct discovery in preparation of a hearing set to commence on December 9, 2020 concerning a *Motion to Convert Chapter 7 Bankruptcy Case to Case Under Chapter 11 of the Bankruptcy Code Pursuant To 11 U.S.C § 706(b) or, in the Alternative, Dismiss Bankruptcy Case Pursuant to 11 U.S.C. § 707(b)*. Therefore, the Creditor respectfully requests documents, records, financial statements and information related to accounts, agreements, transactions, conduct and occurrences by and between LoanCare, LLC and/or Stearns Lending, LLC ("***LoanCare-obo-Stearns***") and the Debtor and/or certain entities for which the Debtor is an officer, director, shareholder, member, employee and/or agent.

Pursuant to the Subpoena to Produce Documents, Information or Objects in a Bankruptcy Case ("***Subpoena***") attached hereto, please produce all documents, records and information related to the requests enumerated within Exhibit 1 – attached to the Subpoena and incorporated by reference therein – preferably in electronic format on or before Monday, November 24, 2020 at 5:00 p.m. prevailing Mountain Standard Time, in accordance with FED.R.BANKR.P. 7026, 9014, 9016 and FED.R.CIV.P. 45. Furthermore, the Creditor respectfully requests that a representative of LoanCare-obo-Stearns's custodian of records execute a declaration – either in the form enclosed herewith or one prepared by LoanCare-obo-Stearns in the ordinary course – when producing documents.

Should LoanCare-obo-Stearns believe certain documents difficult to produce or find helpful to discuss appropriate search terms, please do not hesitate to contact me – undersigned counsel for the Creditor – via joshua@berkencloyes.com or (303) 623-4357 at your earliest convenience.

The Law Offices of Ritchie, Dillard, Davies & Johnson, P.C. thank you in advance for your cooperation.

Respectfully,

Joshua D. Sheade, Esq.

Encl.:   Subpoena
   Exhibit 1 (Production Requests) and Exhibit 2 (Pre-Trial Order) to Subpoena
   [proposed] Declaration Pursuant to Fed.R.Evid. 902(11)

Ritchie, Dillard, Davies & Johnson, P.C. Status Report
1113 Murfreesboro Road, Franklin, Colorado Springs, Colorado 80904

# EXHIBIT 4

Vol 1 259

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (12/15))

# UNITED STATES BANKRUPTCY COURT

District of ___Colorado___

In re   ALEXANDER JOHNSON
_____
Debtor

*(Complete if issued in an adversary proceeding)*

Case No.   19-19816 EEB

Chapter ____7____

Law Offices of Ritchie, Dillard, Davies & Johnson, P.C.
_____
Plaintiff

v.

Alexander Johnson
_____
Defendant

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: LoanCare, LLC, on behalf of Stearns Lending, LLC; Attn Legal/Licensing, 3637 Sentara Way, Virginia Beach, Virgina 23452
*(Name of person to whom the subpoena is directed)*

☑ *Production*: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: Please see **EXHIBIT 1** attached hereto. In lieu of a representative appearing in-person, production may be made via electronic means on or before Monday, November 24, 2020 at 5:00 p.m.

| PLACE    BERKEN CLOYES, P.C.                              | DATE AND TIME |
|----------------------------------------------------------|---------------|
| 1159 Delaware Street, Denver, Colorado 80204             | Monday, November 24, 2020 at 5:00 P.M. |

☐ *Inspection of Premises*: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|-------|---------------|
|       |               |

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  November 10, 2020

CLERK OF COURT                               BERKEN CLOYES, P.C.

OR

_____                     _____
*Signature of Clerk or Deputy Clerk*         Joshua B. Sheade, Atty. Reg. No. 46993
                                             *Attorneys for Ritchie, Dillard, Davies & Johnson, P.C.*

The name, address, email address, and telephone number of the attorney representing the Law Offices of Ritchie, Dillard, Davies & Johnson, P.C., who issues or requests this subpoena, is: Joshua B. Sheade of BERKEN CLOYES, P.C., 1159 Delaware Street, Denver, Colorado 80211; E-mail: joshua@berkencloyes.com; and Telephone No. (303) 623-4357.

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

**Ritchie, Dillard, Davies & Johnson, P.C.'s Status Report**
**EXHIBIT 4**

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 2)

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ _____ .

My fees are $ _____ for travel and $_____ for services, for a total of $_____ .

I declare under penalty of perjury that this information is true and correct.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information concerning attempted service, etc.:

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 3)

## Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
### (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
*(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
*(B) Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
*(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
*(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
*(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
*(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
*(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
*(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
*(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
*(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
*(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.** The court for the district where compliance is required — and also, after a motion is transferred, the issuing court — may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**Ritchie, Dillard, Davies & Johnson, P.C.'s Status Report**
**EXHIBIT 4**

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION OR OBJECTS
IN A BANKRUPTCY CASE**
EXHIBIT 1

| | |
|---|---|
| Bankruptcy Case: | *In re Alexander Johnson*, Case No. 19-19816 EEB (Bankr.D.Colo. Nov. 13, 2019). |
| Submitted By: | Law Offices of Ritchie, Dillard, Davies & Johnson, P.C. ("*Creditor*"). |
| Submitted To: | LoanCare, LLC, a ServiceLink Company ("*LoanCare*"), on behalf of Stearns Lending, LLC ("*Stearns*"). |
| In connection With: | *Motion to Convert Chapter 7 Bankruptcy Case to Case Under Chapter 11 of the Bankruptcy Code Pursuant to 11 U.S.C. § 706(b) or, in the Alternative, Dismiss Bankruptcy Case Pursuant to 11 U.S.C. § 707(b)* [ECF Dkt. Nos. 74-75 ("*Motion*")]; and *Minute Order* dated September 1, 2020 [ECF Dkt. No. 95 ("*Pre-Trial Order*")]. The Pre-Trial Order is attached as **EXHIBIT 2** to the *Subpoena to Produce Documents, Information or Objects in a Bankruptcy Case* and incorporated by reference herein. |

The Creditor respectfully compels LoanCare to produce, as follows:

1.  All documents, records and information to include, but not limited to, monthly statements, account opening documents, signature cards, check ledgers, cancelled checks, deposit slips, teller deposited checks, mobile deposited checks, wire transfer records, and annual reports for any and all accounts including, but not limited to, checking accounts, savings accounts, direct deposit accounts, money market accounts, investment accounts, retirement accounts, certificate of deposit accounts, trust accounts, operating accounts, payroll accounts, business checking accounts, business savings accounts, loan accounts and/or any other accounts identified by LoanCare and/or Stearns that Alexander Johnson ("*Debtor*") – otherwise identified by and through Social Security Number ending xxx-xx-4248 – maintained with LoanCare and/or Stearns at any time from and/or for the period of January 1, 2018 up to and through January 1, 2020.

2.  All documents, records and information to include, but not limited to, monthly statements, account opening documents, signature cards, check ledgers, cancelled checks, deposit slips, teller deposited checks, mobile deposited checks, wire transfer records, and annual reports for any and all accounts including, but not limited to, checking accounts, savings accounts, direct deposit accounts, money market accounts, investment accounts, retirement accounts, certificate of deposit accounts, trust accounts, operating accounts, payroll accounts, business checking accounts, business savings accounts, loan accounts and/or any other accounts identified by LoanCare and/or Stearns that CB45, LLC ("*CB45*") – otherwise identified by and through Federal Tax Identification Number ("*EIN*") ending xx-xxx2136066 – maintained with LoanCare and/or Stearns at any time from and/or for the period of January 1, 2018 up to and through January 1, 2020.

1

3.  All documents, records and information to include, but not limited to, monthly statements, account opening documents, signature cards, check ledgers, cancelled checks, deposit slips, teller deposited checks, mobile deposited checks, wire transfer records, and annual reports for any and all accounts including, but not limited to, checking accounts, savings accounts, direct deposit accounts, money market accounts, investment accounts, retirement accounts, certificate of deposit accounts, trust accounts, operating accounts, payroll accounts, business checking accounts, business savings accounts, loan accounts and/or any other accounts identified by LoanCare and/or Stearns that Bestia Principal ("*Bestia*") maintained with LoanCare and/or Stearns at any time from and/or for the period of January 1, 2018 up to and through January 1, 2020.

4.  All documents, records and information to include, but not limited to, monthly statements, account opening documents, signature cards, check ledgers, cancelled checks, deposit slips, teller deposited checks, mobile deposited checks, wire transfer records, and annual reports for any and all accounts including, but not limited to, checking accounts, savings accounts, direct deposit accounts, money market accounts, investment accounts, retirement accounts, certificate of deposit accounts, trust accounts, operating accounts, payroll accounts, business checking accounts, business savings accounts, loan accounts and/or any other accounts identified by LoanCare and/or Stearns and/or maintained with LoanCare and/or Stearns for which the Debtor had signatory authority at any time from and/or for the period of January 1, 2018 up to and through January 1, 2020.

5.  All documents, records and information to include, but not limited to, monthly statements, escrow statements, applications, closing statements, electronic files, appraisal reports, comparative market analysis, check ledgers, cancelled checks, deposit slips, payment receipts, wire transfer records, general ledgers, transactions ledgers, annual reports, purchase money security interests, promissory notes and deeds of trusts together with any and all supplements, addendums and/or modifications thereto for any loan(s) including, but not limited to, any and all Small Business Administration loan, line of credit, revolving line of credit (i.e. credit card), unsecured loan, mortgage loan or secured loan LoanCare and/or Stearns granted to the Debtor, either jointly with and/or independently of any other person and/or entity, at any time from and/or for the period of January 1, 2018 up to and through January 1, 2020 including, but not limited to, Loan No. xxxxxx1624 for which servicing transferred from Stearns to LoanCare on or about December 1, 2019.

6.  All documents, records and information to include, but not limited to, monthly statements, escrow statements, applications, closing statements, electronic files, appraisal reports, comparative market analysis, check ledgers, cancelled checks, deposit slips, payment receipts, wire transfer records, general ledgers, transactions ledgers, annual reports, purchase money security interests, promissory notes and deeds of trusts together with any and all supplements, addendums and/or modifications thereto for any debts CB45 incurred to Eastman and/or loan(s) including, but not limited to, any and all Small Business Administration loan, line of credit, revolving line of credit (i.e. credit card), unsecured loan, mortgage loan or secured loan LoanCare and/or Stearns granted to CB45, either jointly with and/or independently of any other person and/or entity, at any time from and/or for the period of January 1, 2018 up to and through January 1, 2020.

**Ritchie, Dillard, Davies & Johnson, P.C.'s Status Report
EXHIBIT 4**

7.    All documents, records and information to include, but not limited to, monthly statements, escrow statements, applications, closing statements, electronic files, appraisal reports, comparative market analysis, check ledgers, cancelled checks, deposit slips, payment receipts, wire transfer records, general ledgers, transactions ledgers, annual reports, purchase money security interests, promissory notes and deeds of trusts together with any and all supplements, addendums and/or modifications thereto for any debts Bestia incurred to Eastman and/or loan(s) including, but not limited to, any and all Small Business Administration loan, line of credit, revolving line of credit (i.e. credit card), unsecured loan, mortgage loan or secured loan LoanCare and/or Stearns granted to Bestia, either jointly with and/or independently of any other person and/or entity, at any time from and/or for the period of January 1, 2017 up to and through January 1, 2020.

**Ritchie, Dillard, Davies & Johnson, P.C.'s Status Report**
**EXHIBIT 4**

**UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF COLORADO**

_Minute Order_

| | | |
|---|---|---|
| Date: September 1, 2020 | | Honorable Elizabeth E. Brown, Presiding<br>Ruth S. Mares, Law Clerk |

EXHIBIT 2

In re: Alexander Johnson,

    Debtor.

Case. No. 19-19816 EEB
Chapter 7

| Appearances | Representing |
|---|---|
| Counsel  Lindsay Riley* | Trustee  M. Stephen Peters, chapter 7<br>Trustee* |
| Counsel  Jeffrey Brown* | Debtor |
| Counsel  Joshua Sheade* | Creditor  Ritchie, Dillard, Davies & Johnson,<br>P.C. |
| Counsel | Creditor |
| Counsel | Creditor |
| Counsel | Creditor |

*Telephone appearance

☒ Evidentiary Hearing¹

Entered

Trustee, M. Stephen Peters,☐ Witnesses Sworn   ☐ See Attached List   ☐ Exhibits

Davies & Johnson, P.C. and the Objections thereto filed by the Debtor and the Chapter 7

Alternative, Dismiss Bankruptcy Case Pursuant to 11 U.S.C. § 707(b) filed by Ritchie, Dillard

Proceeding:  Non-Evidentiary Hearing on Motion to Convert Chapter 7 Bankruptcy Case to

Case Under Chapter 11 of the Bankruptcy Code Pursuant to 11 U.S.C. § 706(b) or, in the

**Orders:**

☒ On or before October 9, 2020, the parties may file additional briefs on any legal issues
related to § 706(b) or § 707(b).

☒ The Court will hold a one-half day evidentiary hearing on the Motion on **Monday, October
26, 2020 at 9:30 a.m.**, in Courtroom F, United States Bankruptcy Court for the District of
Colorado.  The evidentiary hearing will be conducted by Zoom video conference.  The Court will
issue a separate order regarding procedures for the Zoom video conference and test
conference.

1.   **On or before October 13, 2020**, the parties shall:

   a.   Exchange pre-marked exhibits with one another.  Defendant shall use the
exhibits in care of Plaintiff's case manager.  Plaintiff/Movant shall use numbers,
Defendant/Respondent shall use letters.  For every exhibit exceeding ten (10)
pages in length, the party shall sequentially number each page of that exhibit at
the bottom of the page.  **Do not file the exhibits with the Court, except as
provided in paragraph 2(a)(i) below.**

¹ This hearing is considered evidentiary for statistical purposes

---

   b.   File with the Court and serve on opposing party/parties) a List of Witnesses and
Exhibits, substantially in the form of L.B.F. 9070-1.1

2.   **On or before October 19, 2020, the parties shall:**

   a.   File with the Court and serve on opposing party/parties) any written
objections to the opposing party's exhibits.

     (i)   If written objections are filed, the objector must attach a copy of the
contested exhibit for the Court's review, unless the nature of the
objection involves the fact that the party proffering the exhibit has
failed to adequately identify and/or exchange it.

     (ii)   If written objections are not filed, then all objections except as to
relevancy will be deemed waived.

     (iii)   The parties should be aware, however, that if the party offering the
exhibit never refers to the exhibit either during testimony or in closing
argument, then in the Court's discretion, it may not review or consider
the exhibit, despite its admission into evidence.

3.   **After the hearing**, the parties shall retain custody of their own exhibits in
accordance with Local Bankruptcy Rule 9070-1(a)(3).

☒ Parties may conduct discovery in this contested matter pursuant to L.B.R. 7026-2

Date: September 1, 2020

BY THE COURT:

Elizabeth E Brown  U.S. Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

IN RE:

ALEXANDER JOHNSON,

              Debtor.

Case No. 19-19816 EEB

Chapter 7

### DECLARATION PURSUANT TO FED.R.EVID. 902(11)

I, _____, being of lawful age, do hereby state, aver and declare, as follows:

1. I am capable of making this Declaration as being of sound mind, over the age of eighteen (18) years, and personally acquainted with and knowledgeable of the facts enumerated hereinafter.

2. I am a custodian of records for LoanCare, LLC, a ServiceLink Company operating on behalf of Stearns Lending, LLC ("Stearns").

3. On _____, I produced documents, records, communications and electronically stored information ("Production") in response to a Subpoena to Produce Documents, Information or Objects or to Permit Inspection of Premises in a Bankruptcy Case ("Subpoena") dated November 10, 2020 delivered to Stearns by the Law Offices of Ritchie, Dillard, Davies & Johnson, P.C. ("Creditor") in connection with *In re Alexander Johnson*, Case No. 19-19816 JGR ("Bankruptcy Case") before the United States District Court for the District of Colorado ("Bankruptcy Court").

4. The information contained within the Production is stored, maintained, possessed, controlled and/or kept by Stearns in the regular course of business; and it is the regular course of business of Stearns for an employee or representative of Stearns to have knowledge of the act, event, condition, opinion or diagnosis recorded and to make the record or to transmit information thereof to be included in the Production.

5. The information contained within the Production was recorded at or near the time of the act, event, condition, opinion or diagnosis.

6. I hereby certify that the Production consists of exact duplicates of any and all original documents, records, communications and information that Stearns maintains for which relates to the information requested within Exhibit 1 of the Subpoena.

7. I further certify under penalty of perjury that, to the best of my knowledge, Stearns has fully and finally complied with the Subpoena as authorized under the Federal Rules of Bankruptcy Procedure and *Minute Order* entered by the Bankruptcy Court on September 1, 2020, for which the Creditors attached as Exhibit 2 to the Subpoena, by and through the Production submitted to the Creditors.

IN ACCORDANCE WITH 28 U.S.C. § 1746, I DECLARE UNDER PENALTY OF PERJURY THAT I HAVE EXAMINED THE ABOVE-ENUMERATED STATEMENTS WITHIN THE FOREGOING DECLARATION AND, TO THE BEST OF MY KNOWLEDGE, THIS DECLARATION AND MY STATEMENTS HEREIN ARE TRUE, CORRECT AND COMPLETE.

EXECUTED on _____, 2020.

Print Name: _____

Signature: _____

Title: _____

2

# BERKEN | CLOYES

Stephen E. Berken, Esq.
stephenberkenlaw@gmail.com

Sean Cloyes, Esq.
sean@berkencloyes.com

November 10, 2020

**Via U.S. Mail**

Square, Inc.
c/o Cash App
1455 Market Street
San Francisco, California 94103

RE: *In re Alexander Johnson*, Case No. 19-19816 EEB (Bankr.D.Colo.); Subpoena to Produce as Authorized by the United States Bankruptcy Court for the District of Colorado

To Whom This May Concern:

Please be advised that BERKEN CLOYES, P.C. represents the Law Offices of Ritchie, Dillard, Davies & Johnson, P.C. ("*Creditor*") in their capacity as a creditor to a bankruptcy case filed by Alexander Johnson ("*Debtor*") under Chapter 7 of Title 11 of the United States Code ("*Bankruptcy Code*") within the United States Bankruptcy Court for the District of Colorado ("*Bankruptcy Court*") on November 13, 2019. Pursuant to a certain and specific *Minute Order* dated September 1, 2020 ("*Pre-Trial Order*"), the Bankruptcy Court authorizes the Creditor to conduct discovery in preparation of a hearing set to commence on December 9, 2020 concerning a *Motion to Convert Chapter 7 Bankruptcy Case to Case Under Chapter 11 of the Bankruptcy Code Pursuant To 11 U.S.C § 706(b) or, in the Alternative, Dismiss Bankruptcy Case Pursuant to 11 U.S.C. § 707(b)*. Therefore, the Creditor respectfully requests documents, records, financial statements and information related to accounts, agreements, transactions, conduct and occurrences by and between Square, Inc. Cash App ("*Cash App*") and the Debtor and/or certain entities for which the Debtor is an officer, director, shareholder, member, employee and/or agent.

Pursuant to the Subpoena to Produce Documents, Information or Objects in a Bankruptcy Case ("*Subpoena*") attached hereto, please produce all documents, records and information related to the requests enumerated within Exhibit 1 – attached to the Subpoena and incorporated by reference therein – preferably in electronic format on or before Monday, November 24, 2020 at 5:00 p.m. prevailing Mountain Standard Time, in accordance with FED.R.BANKR.P. 7026, 9014, 9016 and FED.R.CIV.P. 45. Furthermore, the Creditor respectfully requests that a representative of Cash App's custodian of records execute a declaration – either in the form enclosed herewith or one prepared by Cash App in the ordinary course – when producing documents.

Should Cash App believe certain documents difficult to produce or find helpful to discuss appropriate search terms, please do not hesitate to contact me – undersigned counsel for the Creditor – via joshua@berkencloyes.com or (303) 623-4357 at your earliest convenience.

The Law Offices of Ritchie, Dillard, Davies & Johnson, P.C. thank you in advance for your cooperation.

Respectfully,

Joshua B. Sheade, Esq.

Encl.: Subpoena
Exhibit 1 (Production Requests) and Exhibit 2 (Pre-Trial Order) to Subpoena
[proposed] Declaration Pursuant to Fed.R.Evid. 902(11)

| Tel.: (303) 623-4357 | Alt.: (719) 520-0003 | Fax: (720) 554-7853 |
1159 Deleware Street, Denver, Colorado 80204
Ritchie, Dillard, Davies & Johnson, P.C. Status Report
10-5 Filed by Square/Johnson, P.C. - Status Report
**EXHIBIT 4**
Vol 1 269

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

District of ___Colorado___

In re ___ALEXANDER JOHNSON___
                   Debtor

*(Complete if issued in an adversary proceeding)*

Law Offices of Ritchie, Dillard, Davies & Johnson, P.C.
                   Plaintiff
                   v.

Alexander Johnson
                   Defendant

Case No. __19-19816 EEB__

Chapter ____7____

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: __Square, Inc., c/o Cash App: 1455 Market Street, San Francisco, California 94103__
*(Name of person to whom the subpoena is directed)*

☑ *Production*: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: Please see **EXHIBIT 1** attached hereto. In lieu of a representative appearing in-person, production may be made via electronic means on or before Monday, November 24, 2020 at 5:00 p.m.

| PLACE: BERKEN CLOYES, P.C. | DATE AND TIME |
|---|---|
| 1159 Delaware Street, Denver, Colorado 80204 | Monday, November 24, 2020 at 5:00 P.M. |

☐ *Inspection of Premises*: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|
| | |

    The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: __November 10, 2020__

                CLERK OF COURT             BERKEN CLOYES, P.C.

                                  OR

        *Signature of Clerk or Deputy Clerk*        Joshua B. Sheade, Atty. Reg. No. 46993
                                       *Attorneys for Ritchie, Dillard, Davies & Johnson, P.C.*

The name, address, email address, and telephone number of the attorney representing the Law Offices of Ritchie, Dillard, Davies & Johnson, P.C., who issues or requests this subpoena, is: Joshua B. Sheade of BERKEN CLOYES, P.C., 1159 Delaware Street, Denver, Colorado 80211; E-mail: joshua@berkencloyes.com; and Telephone No. (303) 623-4357.

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 2)

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: _____
on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true and correct.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information concerning attempted service, etc.:

**Ritchie, Dillard, Davies & Johnson, P.C.'s Status Report**
**EXHIBIT 4**

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 3)

## Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
### (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION OR OBJECTS
## IN A BANKRUPTCY CASE
### EXHIBIT 1

| | |
|---|---|
| Bankruptcy Case: | *In re Alexander Johnson*, Case No. 19-19816 EEB (Bankr.D.Colo. Nov. 13, 2019). |
| Submitted By: | Law Offices of Ritchie, Dillard, Davies & Johnson, P.C. ("*Creditor*"). |
| Submitted To: | Square Cash App, Inc. Cash App ("*Square Cash App Cash App*"). |
| In connection With: | *Motion to Convert Chapter 7 Bankruptcy Case to Case Under Chapter 11 of the Bankruptcy Code Pursuant to 11 U.S.C. § 706(b) or, in the Alternative, Dismiss Bankruptcy Case Pursuant to 11 U.S.C. § 707(b)* [ECF Dkt. Nos. 74-75 ("*Motion*")]; and *Minute Order* dated September 1, 2020 [ECF Dkt. No. 95 ("*Pre-Trial Order*")]. The Pre-Trial Order is attached as **EXHIBIT 2** to the *Subpoena to Produce Documents, Information or Objects in a Bankruptcy Case* and incorporated by reference herein. |

The Creditor respectfully compels Square Cash App to produce, as follows:

1.  All documents, records and information to include, but not limited to, monthly statements, account opening documents, signature cards, transaction ledgers, general ledgers, check ledgers, cancelled checks, deposit slips, deposited checks, wire transfer records, annual reports and/or member agreements concerning, identifying and/or relating to all transactions, purchases, payments, balance transfers, fees, interest, credits, debits, mailing address and physical address associated with each, every, any and all Square Cash App accounts that Alexander Johnson ("*Debtor*") – otherwise identified by and through Social Security Number ending xxx-xx-4248 – maintained, owned, held and/or was an authorized signer with, by and/or through Square Cash App covering, relating to and/or prepared at any time from and/or for the period of January 1, 2017 through January 1, 2020.

2.  All documents, records and information to include, but not limited to, monthly statements, account opening documents, signature cards, transaction ledgers, general ledgers, check ledgers, cancelled checks, deposit slips, deposited checks, wire transfer records, annual reports and/or member agreements concerning, identifying and/or relating to all transactions, purchases, payments, balance transfers, fees, interest, credits, debits, mailing address and physical address associated with each, every, any and all Square Cash App accounts that CB45, LLC ("*CB45*") – otherwise identified by and through Federal Tax Identification Number ("*EIN*") ending xx-xxx2136066 – maintained, owned, held and/or was an authorized signer with, by and/or through Square Cash App covering, relating to and/or prepared at any time from and/or for the period of January 1, 2017 through January 1, 2020.

3.  All documents, records and information to include, but not limited to, monthly statements, account opening documents, signature cards, transaction ledgers, general ledgers, check

ledgers, cancelled checks, deposit slips, deposited checks, wire transfer records, annual reports and/or member agreements concerning, identifying and/or relating to all transactions, purchases, payments, balance transfers, fees, interest, credits, debits, mailing address and physical address associated with each, every, any and all Square Cash App accounts that Bestia Principal ("***Bestia***") maintained, owned, held and/or was an authorized signer with, by and/or through Square Cash App covering, relating to and/or prepared at any time from and/or for the period of January 1, 2017 through January 1, 2020.

4.    All documents, records and information to include, but not limited to, monthly statements, account opening documents, signature cards, transaction ledgers, general ledgers, check ledgers, cancelled checks, deposit slips, deposited checks, wire transfer records, annual reports and/or member agreements concerning, identifying and/or relating to all transactions, purchases, payments, balance transfers, fees, interest, credits, debits, mailing address and physical address associated with each, every, any and all accounts maintained by, through and/or with Square Cash App for which the Debtor had signatory authority at any time from and/or for the period of January 1, 2017 through January 1, 2020.

5.    All documents, records and information to include, but not limited to, monthly statements, escrow statements, applications, closing statements, electronic files, check ledgers, cancelled checks, deposit slips, payment receipts, wire transfer records, general ledgers, transactions ledgers, annual reports, purchase money security interests, promissory notes and deeds of trusts together with any and all supplements, addendums and/or modifications thereto for any loan(s) including, but not limited to, any and all line of credit, revolving line of credit (i.e. credit card), unsecured loan, mortgage loan or secured loan Square Cash App granted, approved and/or funded to the Debtor, either jointly with and/or independently of any other person and/or entity, at any time from and/or for the period of January 1, 2017 through January 1, 2020.

6.    All documents, records and information to include, but not limited to, monthly statements, escrow statements, applications, closing statements, electronic files, check ledgers, cancelled checks, deposit slips, payment receipts, wire transfer records, general ledgers, transactions ledgers, annual reports, purchase money security interests, promissory notes and deeds of trusts together with any and all supplements, addendums and/or modifications thereto for any loan(s) including, but not limited to, any and all line of credit, revolving line of credit (i.e. credit card), unsecured loan, mortgage loan or secured loan Square Cash App granted, approved and/or funded to CB45, either jointly with and/or independently of any other person and/or entity, at any time from and/or for the period of January 1, 2017 through January 1, 2020.

7.    All documents, records and information to include, but not limited to, monthly statements, escrow statements, applications, closing statements, electronic files, check ledgers, cancelled checks, deposit slips, payment receipts, wire transfer records, general ledgers, transactions ledgers, annual reports, purchase money security interests, promissory notes and deeds of trusts together with any and all supplements, addendums and/or modifications thereto for any loan(s) including, but not limited to, any and all line of credit, revolving line of credit (i.e. credit card), unsecured loan, mortgage loan or secured loan Square Cash App granted, approved and/or funded to Bestia, either jointly with and/or independently of any other person and/or entity, at any time from and/or for the period of January 1, 2017 through January 1, 2020.

2

### UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF COLORADO

EXHIBIT 2

### *Minute Order*

Date: September 1, 2020

**Honorable Elizabeth E. Brown, Presiding**
Ruth S. Mares, Law Clerk

In re:   Alexander Johnson,

Case. No. 19-19816 EEB
Chapter 7

Debtor.

|   | Appearances | Representing | |
|---|---|---|---|
| Counsel | Lindsay Riley* | Trustee | M. Stephen Peters, chapter 7 trustee* |
| Counsel | Jeffrey Brinen* | Debtor | |
| Counsel | Joshua Sheade* | Creditor | Ritchie, Dillard, Davies & Johnson, P.C. |
| Counsel | | Creditor | |
| Counsel | | Creditor | |
| Counsel | | Creditor | |

*telephone appearance

**Proceedings:**  Non-Evidentiary Hearing on Motion to Convert Chapter 7 Bankruptcy Case to Case Under Chapter 11 of the Bankruptcy Code Pursuant to 11 U.S.C. § 706(b) or, in the Alternative, Dismiss Bankruptcy Case Pursuant to 11 U.S.C. § 707(b) filed by Ritchie, Dillard, Davies & Johnson, P.C. and the Objections thereto filed by the Debtor and the Chapter 7 Trustee, M. Stephen Peters☐ Witnesses Sworn     ☐ See Attached List          ☐ Exhibits Entered

☒ Evidentiary Hearing[1]

☐

Orders:

☒ **On or before October 9, 2020**, the parties may file additional briefs on any legal issues related to § 706(b) or § 707(b).

☒ The Court will hold a one-half day evidentiary hearing on the Motion on **Monday, October 26, 2020 at 9:30 a.m.,** in Courtroom F, United States Bankruptcy Court for the District of Colorado.  The evidentiary hearing will be conducted by Zoom video conference.  The Court will issue a separate order regarding procedures for the Zoom video conference and test conference.

1. **On or before October 13, 2020,** the parties shall:

   a.   Exchange pre-marked exhibits with one another. Defendant shall send the exhibits in care of Plaintiff's case manager.  Plaintiff/Movant shall use numbers.  Defendant/Respondent shall use letters.  For every exhibit exceeding ten (10) pages in length, the party shall sequentially number each page of that exhibit at the bottom of the page.  *Do not file the exhibits with the Court*, except as provided in paragraph 2(a)(i) below.

---

[1] This hearing is considered evidentiary for statistical purposes.

b.  File with the Court and serve on opposing party(parties) a List of Witnesses and Exhibits, substantially in the form of L.B.F. 9070-1.1.

2.  **On or before October 19, 2020,** the parties shall:

    a.  File with the Court and serve on opposing party(parties) any written objections to the opposing party's exhibits.

        (i)   If written objections are filed, the objector must attach a copy of the contested exhibit for the Court's review, unless the nature of the objection involves the fact that the party proffering the exhibit has failed to adequately identify and/or exchange it.

        (ii)  If written objections are not filed, then all objections except as to relevancy will be deemed waived.

        (iii) The parties should be aware, however, that if the party offering the exhibit never refers to the exhibit either during testimony or in closing argument, then in the Court's discretion, it may not review or consider the exhibit, despite its admission into evidence.

3.  **After the hearing,** the parties shall retain custody of their own exhibits in accordance with Local Bankruptcy Rule 9070-1(a)(3).

☒ Parties may conduct discovery in this contested matter pursuant to L.B.R. 7026-2.

Date: September 1, 2020.

BY THE COURT:

*Elizabeth E. Brown*

_____
Elizabeth E. Brown, U.S. Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

IN RE:

ALEXANDER JOHNSON,

                Debtor.

Case No. 19-19816 EEB

Chapter 7

---

## DECLARATION PURSUANT TO FED.R.EVID. 902(11)

---

I, _____, being of lawful age, do hereby state, aver and declare, as follows:

1. I am capable of making this Declaration as being of sound mind, over the age of eighteen (18) years, and personally acquainted with and knowledgeable of the facts enumerated hereinafter.

2. I am a custodian of records for Cash App, a subsidiary of Square, Inc. ("Square Cash App").

3. On _____, I produced documents, records, communications and electronically stored information ("Production") in response to a Subpoena to Produce Documents, Information or Objects or to Permit Inspection of Premises in a Bankruptcy Case ("Subpoena") dated November 10, 2020 delivered to Square Cash App by the Law Offices of Ritchie, Dillard, Davies & Johnson, P.C. ("Creditor") in connection with *In re Alexander Johnson*, Case No. 19-19816 JGR ("Bankruptcy Case") before the United States District Court for the District of Colorado ("Bankruptcy Court").

4. The information contained within the Production is stored, maintained, possessed, controlled and/or kept by Square Cash App in the regular course of business; and it is the regular course of business of Square Cash App for an employee or representative of Square Cash App to have knowledge of the act, event, condition, opinion or diagnosis recorded and to make the record or to transmit information thereof to be included in the Production.

5. The information contained within the Production was recorded at or near the time of the act, event, condition, opinion or diagnosis.

6. I hereby certify that the Production consists of exact duplicates of any and all original documents, records, communications and information that Square Cash App maintains for which relates to the information requested within Exhibit 1 of the Subpoena.

7. I further certify under penalty of perjury that, to the best of my knowledge, Square Cash App has fully and finally complied with the Subpoena as authorized under the Federal Rules of Bankruptcy Procedure and *Minute Order* entered by the Bankruptcy Court on September 1, 2020, for which the Creditors attached as Exhibit 2 to the Subpoena, by and through the Production submitted to the Creditors.

IN ACCORDANCE WITH 28 U.S.C. § 1746, I DECLARE UNDER PENALTY OF PERJURY
THAT I HAVE EXAMINED THE ABOVE-ENUMERATED STATEMENTS WITHIN THE
FOREGOING DECLARATION AND, TO THE BEST OF MY KNOWLEDGE, THIS
DECLARATION AND MY STATEMENTS HEREIN ARE TRUE, CORRECT AND
COMPLETE.

EXECUTED on _____, 2020.

Print Name: _____

Signature: _____

Title: _____

2

# BERKEN | CLOYES

Stephen E. Berken, Esq.                                                        Sean Cloyes, Esq.
stephenberkenlaw@gmail.com                                         sean@berkencloyes.com

November 10, 2020

**Via U.S. Mail**

Stripe, Inc.
510 Townsend Street
San Francisco, California 94103

RE:     *In re Alexander Johnson*, Case No. 19-19816 EEB (Bankr.D.Colo.); Subpoena to Produce as
Authorized by the United States Bankruptcy Court for the District of Colorado

To Whom This May Concern:

Please be advised that BERKEN CLOYES, P.C. represents the Law Offices of Ritchie, Dillard, Davies &
Johnson, P.C. ("*Creditor*") in their capacity as a creditor to a bankruptcy case filed by Alexander Johnson
("*Debtor*") under Chapter 7 of Title 11 of the United States Code ("*Bankruptcy Code*") within the United
States Bankruptcy Court for the District of Colorado ("*Bankruptcy Court*") on November 13, 2019. Pursuant
to a certain and specific *Minute Order* dated September 1, 2020 ("*Pre-Trial Order*"), the Bankruptcy Court
authorizes the Creditor to conduct discovery in preparation of a hearing set to commence on December 9,
2020 concerning a *Motion to Convert Chapter 7 Bankruptcy Case to Case Under Chapter 11 of the
Bankruptcy Code Pursuant To 11 U.S.C § 706(b) or, in the Alternative, Dismiss Bankruptcy Case Pursuant
to 11 U.S.C. § 707(b)*. Therefore, the Creditor respectfully requests documents, records, financial statements
and information related to accounts, agreements, transactions, conduct and occurrences by and between
Stripe, Inc. ("*Stripe*") and the Debtor and/or certain entities for which the Debtor is an officer, director,
shareholder, member, employee and/or agent.

Pursuant to the Subpoena to Produce Documents, Information or Objects in a Bankruptcy Case ("*Subpoena*")
attached hereto, please produce all documents, records and information related to the requests enumerated
within Exhibit 1 – attached to the Subpoena and incorporated by reference therein – preferably in electronic
format on or before Monday, November 24, 2020 at 5:00 p.m. prevailing Mountain Standard Time, in
accordance with FED.R.BANKR.P. 7026, 9014, 9016 and FED.R.CIV.P. 45. Furthermore, the Creditor
respectfully requests that a representative of Stripe's custodian of records execute a declaration – either in
the form enclosed herewith or one prepared by Stripe in the ordinary course – when producing documents.

Should Stripe believe certain documents difficult to produce or find helpful to discuss appropriate search
terms, please do not hesitate to contact me – undersigned counsel for the Creditor – via
joshua@berkencloyes.com or (303) 623-4357 at your earliest convenience.

The Law Offices of Ritchie, Dillard, Davies & Johnson, P.C. thank you in advance for your cooperation.

Respectfully,

Joshua B. Sheade, Esq.

Encl.:   Subpoena
Exhibit 1 (Production Requests) and Exhibit 2 (Pre-Trial Order) to Subpoena
[proposed] Declaration Pursuant to Fed.R.Evid. 902(11)

**Ritchie, Dillard, Davies & Johnson, P.C. - Status Report**

**EXHIBIT 4**

B2570 (Form 2570)– Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

District of _____Colorado_____

In re __ALEXANDER JOHNSON__
　　　　　　　Debtor

*(Complete if issued in an adversary proceeding)*

Case No. __19-19816 EEB__

Chapter _____7_____

Law Offices of Ritchie, Dillard, Davies & Johnson, P.C.
　　　　　　　Plaintiff
　　　　　　　　v.

Alexander Johnson
　　　　　　　Defendant

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: __Stripe, Inc.; 510 Townsend Street, San Francisco, California 94103__
　　　　　　*(Name of person to whom the subpoena is directed)*

☑ *Production*: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: Please see **EXHIBIT 1** attached hereto. In lieu of a representative appearing in-person, production may be made via electronic means on or before Monday, November 24, 2020 at 5:00 p.m.

| PLACE　BERKEN CLOYES, P.C. | DATE AND TIME |
|---|---|
| 1159 Delaware Street, Denver, Colorado 80204 | Monday, November 24, 2020 at 5:00 P.M. |

☐ *Inspection of Premises*: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|
| | |

　　　　The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: __November 10, 2020__

CLERK OF COURT　　　　　　　　BERKEN CLOYES, P.C.

　　　　　　　　　　　　　　　OR

_____　　　_____
*Signature of Clerk or Deputy Clerk*　　Joshua B. Sheade, Atty. Reg. No. 46993
　　　　　　　　　　　　　　*Attorneys for Ritchie, Dillard, Davies & Johnson, P.C.*

The name, address, email address, and telephone number of the attorney representing the Law Offices of Ritchie, Dillard, Davies & Johnson, P.C., who issues or requests this subpoena, is: Joshua B. Sheade of BERKEN CLOYES, P.C., 1159 Delaware Street, Denver, Colorado 80211; E-mail: joshua@berkencloyes.com; and Telephone No. (303) 623-4357.

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. Civ. P. 45(a)(4).

**Ritchie, Dillard, Davies & Johnson, P.C.'s Status Report**
**EXHIBIT 4**

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 2)

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ _____ .

My fees are $ _____ for travel and $_____ for services, for a total of $_____ .

I declare under penalty of perjury that this information is true and correct.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information concerning attempted service, etc.:

**Ritchie, Dillard, Davies & Johnson, P.C.'s Status Report**
**EXHIBIT 4**

B2570 (Form 2570 - Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 3)

## Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
### (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
*(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
*(B) Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
*(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
*(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
*(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
*(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
*(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
*(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
*(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
*(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
*(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION OR OBJECTS
IN A BANKRUPTCY CASE**
EXHIBIT 1

| | |
|---|---|
| Bankruptcy Case: | *In re Alexander Johnson*, Case No. 19-19816 EEB (Bankr.D.Colo. Nov. 13, 2019). |
| Submitted By: | Law Offices of Ritchie, Dillard, Davies & Johnson, P.C. ("***Creditor***"). |
| Submitted To: | Stripe, Inc. ("***Stripe***"). |
| In connection With: | *Motion to Convert Chapter 7 Bankruptcy Case to Case Under Chapter 11 of the Bankruptcy Code Pursuant to 11 U.S.C. § 706(b) or, in the Alternative, Dismiss Bankruptcy Case Pursuant to 11 U.S.C. § 707(b)* [ECF Dkt. Nos. 74-75 ("***Motion***")]; and *Minute Order* dated September 1, 2020 [ECF Dkt. No. 95 ("***Pre-Trial Order***")]. The Pre-Trial Order is attached as **EXHIBIT 2** to the *Subpoena to Produce Documents, Information or Objects in a Bankruptcy Case* and incorporated by reference herein. |

The Creditor respectfully compels Stripe to produce, as follows:

1.  All documents, records and information to include, but not limited to, monthly statements, account opening documents, signature cards, transaction ledgers, general ledgers, check ledgers, cancelled checks, deposit slips, deposited checks, wire transfer records, annual reports and/or member agreements concerning, identifying and/or relating to all transactions, purchases, payments, balance transfers, fees, interest, credits, debits, mailing address and physical address associated with each, every, any and all Stripe accounts that Alexander Johnson ("***Debtor***") – otherwise identified by and through Social Security Number ending xxx-xx-4248 – maintained, owned, held and/or was an authorized signer with, by and/or through Stripe covering, relating to and/or prepared at any time from and/or for the period of January 1, 2017 up to and through January 1, 2020.

2.  All documents, records and information to include, but not limited to, monthly statements, account opening documents, signature cards, transaction ledgers, general ledgers, check ledgers, cancelled checks, deposit slips, deposited checks, wire transfer records, annual reports and/or member agreements concerning, identifying and/or relating to all transactions, purchases, payments, balance transfers, fees, interest, credits, debits, mailing address and physical address associated with each, every, any and all Stripe accounts that CB45, LLC ("***CB45***") – otherwise identified by and through Federal Tax Identification Number ("***EIN***") ending xx-xxx2136066 – maintained, owned, held and/or was an authorized signer with, by and/or through Stripe covering, relating to and/or prepared at any time from and/or for the period of January 1, 2017 up to and through January 1, 2020.

3.  All documents, records and information to include, but not limited to, monthly statements, account opening documents, signature cards, transaction ledgers, general ledgers, check ledgers, cancelled checks, deposit slips, deposited checks, wire transfer records, annual

1

reports and/or member agreements concerning, identifying and/or relating to all transactions, purchases, payments, balance transfers, fees, interest, credits, debits, mailing address and physical address associated with each, every, any and all Stripe accounts that Bestia Principal ("**Bestia**") maintained, owned, held and/or was an authorized signer with, by and/or through Stripe covering, relating to and/or prepared at any time from and/or for the period of January 1, 2017 up to and through January 1, 2020.

4.   All documents, records and information to include, but not limited to, monthly statements, account opening documents, signature cards, transaction ledgers, general ledgers, check ledgers, cancelled checks, deposit slips, deposited checks, wire transfer records, annual reports and/or member agreements concerning, identifying and/or relating to all transactions, purchases, payments, balance transfers, fees, interest, credits, debits, mailing address and physical address associated with each, every, any and all accounts maintained by, through and/or with Stripe for which the Debtor had signatory authority at any time from and/or for the period of January 1, 2017 up to and through January 1, 2020.

5.   All documents, records and information to include, but not limited to, monthly statements, escrow statements, applications, closing statements, electronic files, check ledgers, cancelled checks, deposit slips, payment receipts, wire transfer records, general ledgers, transactions ledgers, annual reports, purchase money security interests, promissory notes and deeds of trusts together with any and all supplements, addendums and/or modifications thereto for any loan(s) including, but not limited to, any and all line of credit, revolving line of credit (i.e. credit card), unsecured loan, mortgage loan or secured loan Stripe granted, approved and/or funded to the Debtor, either jointly with and/or independently of any other person and/or entity, at any time from and/or for the period of January 1, 2017 up to and through January 1, 2020.

6.   All documents, records and information to include, but not limited to, monthly statements, escrow statements, applications, closing statements, electronic files, check ledgers, cancelled checks, deposit slips, payment receipts, wire transfer records, general ledgers, transactions ledgers, annual reports, purchase money security interests, promissory notes and deeds of trusts together with any and all supplements, addendums and/or modifications thereto for any loan(s) including, but not limited to, any and all line of credit, revolving line of credit (i.e. credit card), unsecured loan, mortgage loan or secured loan Stripe granted, approved and/or funded to CB45, either jointly with and/or independently of any other person and/or entity, at any time from and/or for the period of January 1, 2017 up to and through January 1, 2020.

7.   All documents, records and information to include, but not limited to, monthly statements, escrow statements, applications, closing statements, electronic files, check ledgers, cancelled checks, deposit slips, payment receipts, wire transfer records, general ledgers, transactions ledgers, annual reports, purchase money security interests, promissory notes and deeds of trusts together with any and all supplements, addendums and/or modifications thereto for any loan(s) including, but not limited to, any and all line of credit, revolving line of credit (i.e. credit card), unsecured loan, mortgage loan or secured loan Stripe granted, approved and/or funded to Bestia, either jointly with and/or independently of any other person and/or entity, at any time from and/or for the period of January 1, 2017 up to and through January 1, 2020.

2

**UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF COLORADO**

EXHIBIT
2

## *Minute Order*

Date: September 1, 2020

**Honorable Elizabeth E. Brown, Presiding**
Ruth S. Mares, Law Clerk

In re:   Alexander Johnson,

Case. No. 19-19816 EEB
Chapter 7

Debtor.

| | Appearances | Representing | |
|---|---|---|---|
| Counsel | Lindsay Riley* | Trustee | M. Stephen Peters, chapter 7 trustee* |
| Counsel | Jeffrey Brinen* | Debtor | |
| Counsel | Joshua Sheade* | Creditor | Ritchie, Dillard, Davies & Johnson, P.C. |
| Counsel | | Creditor | |
| Counsel | | Creditor | |
| Counsel | | Creditor | |

*telephone appearance

Proceedings:  Non-Evidentiary Hearing on Motion to Convert Chapter 7 Bankruptcy Case to Case Under Chapter 11 of the Bankruptcy Code Pursuant to 11 U.S.C. § 706(b) or, in the Alternative, Dismiss Bankruptcy Case Pursuant to 11 U.S.C. § 707(b) filed by Ritchie, Dillard, Davies & Johnson, P.C. and the Objections thereto filed by the Debtor and the Chapter 7 Trustee, M. Stephen Peters☐ Witnesses Sworn     ☐ See Attached List       ☐ Exhibits Entered

☒ Evidentiary Hearing[1]

☐

Orders:

☒ **On or before October 9, 2020**, the parties may file additional briefs on any legal issues related to § 706(b) or § 707(b).

☒ The Court will hold a one-half day evidentiary hearing on the Motion on **Monday, October 26, 2020 at 9:30 a.m.,** in Courtroom F, United States Bankruptcy Court for the District of Colorado. The evidentiary hearing will be conducted by Zoom video conference. The Court will issue a separate order regarding procedures for the Zoom video conference and test conference.

1. **On or before October 13, 2020,** the parties shall:

   a. Exchange pre-marked exhibits with one another. Defendant shall send the exhibits in care of Plaintiff's case manager. Plaintiff/Movant shall use numbers. Defendant/Respondent shall use letters. For every exhibit exceeding ten (10) pages in length, the party shall sequentially number each page of that exhibit at the bottom of the page. *Do not file the exhibits with the Court*, except as provided in paragraph 2(a)(i) below.

---

[1] This hearing is considered evidentiary for statistical purposes.

    b.   File with the Court and serve on opposing party(parties) a List of Witnesses and Exhibits, substantially in the form of L.B.F. 9070-1.1.

2. **On or before October 19, 2020,** the parties shall:

    a.   File with the Court and serve on opposing party(parties) any written objections to the opposing party's exhibits.

      (i)     If written objections are filed, the objector must attach a copy of the contested exhibit for the Court's review, unless the nature of the objection involves the fact that the party proffering the exhibit has failed to adequately identify and/or exchange it.

      (ii)     If written objections are not filed, then all objections except as to relevancy will be deemed waived.

      (iii)    The parties should be aware, however, that if the party offering the exhibit never refers to the exhibit either during testimony or in closing argument, then in the Court's discretion, it may not review or consider the exhibit, despite its admission into evidence.

3. **After the hearing,** the parties shall retain custody of their own exhibits in accordance with Local Bankruptcy Rule 9070-1(a)(3).

☒ Parties may conduct discovery in this contested matter pursuant to L.B.R. 7026-2.

Date: September 1, 2020.

BY THE COURT:

_Elizabeth E. Brown_

_____

Elizabeth E. Brown, U.S. Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF COLORADO

IN RE:

ALEXANDER JOHNSON,

Debtor.

Case No. 19-19816 EEB

Chapter 7

### DECLARATION PURSUANT TO FED.R.EVID. 902(11)

I, _____, being of lawful age, do hereby state, aver and declare, as follows:

1.  I am capable of making this Declaration as being of sound mind, over the age of eighteen (18) years, and personally acquainted with and knowledgeable of the facts enumerated hereinafter.

2.  I am a custodian of records for Stripe, Inc. ("Stripe").

3.  On _____, I produced documents, records, communications and electronically stored information ("Production") in response to a Subpoena to Produce Documents, Information or Objects or to Permit Inspection of Premises in a Bankruptcy Case ("Subpoena") dated November 10, 2020 delivered to Stripe by the Law Offices of Ritchie, Dillard, Davies & Johnson, P.C. ("Creditor") in connection with *In re Alexander Johnson*, Case No. 19-19816 JGR ("Bankruptcy Case") before the United States District Court for the District of Colorado ("Bankruptcy Court").

4.  The information contained within the Production is stored, maintained, possessed, controlled and/or kept by Stripe in the regular course of business; and it is the regular course of business of Stripe for an employee or representative of Stripe to have knowledge of the act, event, condition, opinion or diagnosis recorded and to make the record or to transmit information thereof to be included in the Production.

5.  The information contained within the Production was recorded at or near the time of the act, event, condition, opinion or diagnosis.

6.  I hereby certify that the Production consists of exact duplicates of any and all original documents, records, communications and information that Stripe maintains for which relates to the information requested within Exhibit 1 of the Subpoena.

7.  I further certify under penalty of perjury that, to the best of my knowledge, Stripe has fully and finally complied with the Subpoena as authorized under the Federal Rules of Bankruptcy Procedure and *Minute Order* entered by the Bankruptcy Court on September 1, 2020, for which the Creditors attached as Exhibit 2 to the Subpoena, by and through the Production submitted to the Creditors.

**Ritchie, Dillard, Davies & Johnson, P.C.'s Status Report**
**EXHIBIT 4**

IN ACCORDANCE WITH 28 U.S.C. § 1746, I DECLARE UNDER PENALTY OF PERJURY THAT I HAVE EXAMINED THE ABOVE-ENUMERATED STATEMENTS WITHIN THE FOREGOING DECLARATION AND, TO THE BEST OF MY KNOWLEDGE, THIS DECLARATION AND MY STATEMENTS HEREIN ARE TRUE, CORRECT AND COMPLETE.

EXECUTED on _____, 2020.

Print Name: _____

Signature: _____

Title: _____

2

## Joshua B. Sheade, Esq.

| | | |
|---|---|---|
| **From:** | Aaron Conrardy <Aconrardy@wgwc-law.com> | **EXHIBIT 5** |
| **Sent:** | Monday, December 7, 2020 5:05 PM | |
| **To:** | Joshua B. Sheade, Esq. | |
| **Cc:** | Lindsay Riley | |
| **Subject:** | RE: DISERGARD LAST E-MAIL -- RE: In re Johnson, Case No. 19-19816 EEB | |

Yes



Aaron J. Conrardy
Wadsworth Garber Warner Conrardy, P.C.
2580 West Main Street, Suite 200, Littleton, CO 80120
Direct: (303) 296-3945 | Firm: (303) 296-1999
aconrardy@wgwc-law.com

**From:** Joshua B. Sheade, Esq. <joshua@berkencloyes.com>
**Sent:** Monday, December 7, 2020 5:04 PM
**To:** Aaron Conrardy <Aconrardy@wgwc-law.com>
**Cc:** Lindsay Riley <lriley@wgwc-law.com>
**Subject:** DISERGARD LAST E-MAIL -- RE: In re Johnson, Case No. 19-19816 EEB

Aaron:

Please disregard the e-mail below as I misinterpreted the week of December 14 follow-up to be the time period for production under section 704(a)(7) and not a more-detailed response. With that said, should Ritchie, Dillard, Davies & Johnson, P.C. anticipate production contemporaneously or around the same time as the more-detailed follow-up response?

Thank you,


Josh Sheade

For the Firm

### BERKEN | CLOYES

1159 Delaware Street
Denver, Colorado 80204
Tel.: (303) 623-4357, Ext. 222
Direct: (720) 543-9862
Fax: (720) 554-7853

The information contained in, or attached to, this electronic message is a confidential communication from a law firm, and intended only for the confidential use of the individual(s) named above. Unauthorized interception of this message is a violation of the Electronic Communications Privacy Act, 18 U.S.C. 2510-2521 and 2707-2709. This message may be protected by the attorney-client and/or attorney work product privileges. If you are not the named recipient, or an agent responsible for delivering this transmission to the named recipient, you are hereby notified that you have received this document in error; and any review, disclosure, dissemination, copying, distribution or use of the information contained in, or attached to, this message is prohibited. If you have received this communication in error, please notify us immediately by e-mail at joshua.sheade@gmail.com or by telephone at (303) 623-4357, Ext. 222; and destroy any copies of this message. Thank you.

**Ritchie, Dillard, Davies & Johnson, P.C.'s Status Report**
**EXHIBIT 5**

## Joshua B. Sheade, Esq.

**From:** Aaron Conrardy <Aconrardy@wgwc-law.com>
**Sent:** Monday, December 7, 2020 5:02 PM
**To:** Joshua B. Sheade, Esq.
**Cc:** Lindsay Riley
**Subject:** RE: In re Johnson, Case No. 19-19816 EEB

My email says the week of December 14.



Aaron J. Conrardy
Wadsworth Garber Warner Conrardy, P.C.
2580 West Main Street, Suite 200, Littleton, CO 80120
Direct: (303) 296-3945 | Firm: (303) 296-1999
aconrardy@wgwc-law.com

---

**From:** Joshua B. Sheade, Esq. <joshua@berkencloyes.com>
**Sent:** Monday, December 7, 2020 5:01 PM
**To:** Aaron Conrardy <Aconrardy@wgwc-law.com>
**Cc:** Lindsay Riley <lriley@wgwc-law.com>
**Subject:** RE: In re Johnson, Case No. 19-19816 EEB

Aaron:

Per your e-mail below, when may Ritchie, Dillard, Davies & Johnson, P.C. expect the Trustee to provide a "more detailed" follow-up response?

Thank you,

Josh Sheade

For the Firm

### BERKEN | CLOYES

1159 Delaware Street
Denver, Colorado 80204
Tel.: (303) 623-4357, Ext. 222
Direct: (720) 543-9862
Fax: (720) 554-7853

The information contained in, or attached to, this electronic message is a confidential communication from a law firm, and intended only for the confidential use of the individual(s) named above. Unauthorized interception of this message is a violation of the Electronic Communications Privacy Act, 18 U.S.C. 2510-2521 and 2707-2709. This message may be protected by the attorney-client and/or attorney work product privileges. If you are not the named recipient, or an agent responsible for delivering this transmission to the named recipient, you are hereby notified that you have received this document in error; and any review, disclosure, dissemination, copying, distribution or use of the information contained in, or attached to, this message is prohibited. If you have received this communication in error, please notify us immediately by e-mail at joshua.sheade@gmail.com or by telephone at (303) 623-4357, Ext. 222; and destroy any copies of this message. Thank you.

**From:** Joshua B. Sheade, Esq.
**Sent:** Monday, December 7, 2020 5:01 PM
**To:** Aaron Conrardy <Aconrardy@wgwc-law.com>
**Cc:** Lindsay Riley <lriley@wgwc-law.com>
**Subject:** RE: In re Johnson, Case No. 19-19816 EEB

Aaron:

Per your e-mail below, when may Ritchie, Dillard, Davies & Johnson, P.C. expect the Trustee to provide a "more detailed" follow-up response?


Thank you,


Josh Sheade

For the Firm

BERKEN | CLOYES

1159 Delaware Street
Denver, Colorado 80204
Tel.: (303) 623-4357, Ext. 222
Direct: (720) 543-9862
Fax: (720) 554-7853


The information contained in, or attached to, this electronic message is a confidential communication from a law firm, and intended only for the confidential use of the individual(s) named above. Unauthorized interception of this message is a violation of the Electronic Communications Privacy Act, 18 U.S.C. 2510-2521 and 2707-2709. This message may be protected by the attorney-client and/or attorney work product privileges. If you are not the named recipient, or an agent responsible for delivering this transmission to the named recipient, you are hereby notified that you have received this document in error; and any review, disclosure, dissemination, copying, distribution or use of the information contained in, or attached to, this message is prohibited. If you have received this communication in error, please notify us immediately by e-mail at joshua.sheade@gmail.com or by telephone at (303) 623-4357, Ext. 222; and destroy any copies of this message. Thank you.

**From:** Aaron Conrardy <Aconrardy@wgwc-law.com>
**Sent:** Monday, December 7, 2020 1:11 PM
**To:** Joshua B. Sheade, Esq. <joshua@berkencloyes.com>; Lindsay Riley <lriley@wgwc-law.com>
**Subject:** RE: In re Johnson, Case No. 19-19816 EEB

Josh:  Due to time limitations imposed upon this firm and Trustee by the upcoming hearing, it is incredibly difficult to provide a detailed response to your email at this time.  Accordingly, this email is a preliminary response and will be followed up with a more detailed response.

As will be discussed in more detail in a follow-up email, conversion to chapter 11 is not in the best interests of all interested parties including unsecured creditors and the Debtor.  For instance, and without limitation, Trustee is not convinced that chapter 11 is a viable option that will result in a higher dividend to unsecured creditors for a number of reasons that will be discussed in the subsequent email.

Trustee will also provide a response to your request for documentation pursuant to section 704(a)(7).

Please anticipate a more detailed response the week of December 14.

<div align="center">

**Ritchie, Dillard, Davies & Johnson, P.C.'s Status Report
EXHIBIT 5**

</div>

Regards,
Aaron

Aaron J. Conrardy
Wadsworth Garber Warner Conrardy, P.C.
2580 West Main Street, Suite 200, Littleton, CO 80120
Direct: (303) 296-3945 | Firm: (303) 296-1999
aconrardy@wgwc-law.com

**From:** Joshua B. Sheade, Esq. <joshua@berkencloyes.com>
**Sent:** Thursday, December 3, 2020 1:46 PM
**To:** Aaron Conrardy <Aconrardy@wgwc-law.com>; Lindsay Riley <lriley@wgwc-law.com>
**Subject:** In re Johnson, Case No. 19-19816 EEB

Good Afternoon:

The Handbook for Chapter 7 Trustee ("Handbook") provides, in reference to 11 U.S.C. § 704, that "[t]he trustee is a fiduciary charged with protecting the interests of all estate beneficiaries – namely, all classes of creditors, including those holding secured, administrative, priority and non-priority unsecured creditors, as well as the debtor's interest in exemptions and in any possible surplus property." Handbook at p.31. Herein, Mr. Johnson ("Debtor") intends to pay secured creditors in full, discloses sufficient monthly disposable income to pay administrative expenses under a Chapter 11 Plan and his interest in surplus property remains protected under either a Chapter 7 or Chapter 11. Therefore, how is Mr. Peters ("Trustee") acting in the best interest of all remaining beneficiaries – solely and exclusively non-priority unsecured creditors – by challenging the Motion to Convert jointly with the Debtor?

Furthermore, Ritchie, Dillard, Davies & Johnson, P.C. ("Creditor") respectfully requests production of any and all "information concerning the estate and the estate's administration" in accordance with 11 U.S.C. § 704(a)(7) including, but not limited to, a receivables ledger or other mechanism accounting for estate property received to date, any demands for turnover corresponded to the Debtor, and all documents received from the Debtor to date related to preparations for the 341 Meeting of Creditors and investigation of the Debtor's financial affairs.

Pursuant to the Handbook, "a trustee shall have a system in place to timely response to reasonable inquiries…" Handbook at p.58. Therefore, the Creditor looks forward to the Trustee's response to the question posed in paragraph 1 and production of the documents requested pursuant to 11 U.S.C. § 704(a)(7) at your earliest opportunity.

Thank you,


Josh Sheade

For the Firm

BERKEN | CLOYES

1159 Delaware Street
Denver, Colorado 80204
Tel.: (303) 623-4357, Ext. 222
Direct: (720) 543-9862
Fax: (720) 554-7853

## Joshua B. Sheade, Esq.

**EXHIBIT 6**

**From:** Jeff Brinen <JSB@kutnerlaw.com>
**Sent:** Friday, December 4, 2020 2:28 PM
**To:** Joshua B. Sheade, Esq.
**Subject:** RE: In re Johnson, Case No. 19-19816 EEB re Proposed Stipulation to Resolve Joint Objec ons o Exhibits

I'll call Lindsay

Jeffrey S. Brinen, Esq.
Kutner Brinen, P.C.
1660 Lincoln St., Suite 1850
Denver, CO  80264
303-832-2418 Direct
303-832-2400 Main

 KutnerBrinen, P.C.

E-MAIL CONFIDENTIALITY NOTICE:
The contents of this e-mail message and any attachments are intended solely for the addressee(s) and may contain confidential and/or legally privileged information. If you are not the intended recipient of this message or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and any attachments. If you are not the intended recipient, you are notified that any use, dissemination, distribution, copying, or storage of this message or any attachment is strictly prohibited.

---

**From:** Joshua B. Sheade, Esq. <joshua@berkencloyes.com>
**Sent:** Friday, December 4, 2020 2:26 PM
**To:** Jeff Brinen <JSB@kutnerlaw.com>
**Subject:** Re: In re Johnson, Case No. 19-19816 EEB re Proposed Stipulation to Resolve Joint Objections to Exhibits

I left to spend time with ████████ before he left town as I understood the parties to have a deal based on our two calls yesterday, and your call with Lindsey Riley in between. Neither conversation included a precursory requisite to further explain my proof prior to preparing the stipulation. The second conversation involved "good news" that the Trustee was hesitant but you convinced them to agree to the Stipulation and, due to such agreement in principal terms, you suggested what to input for factual recitals causing the dispute and "to just get it done." Nothing more, nothing less, and I complied.

As I am spending time with ████████ after doing what was asked of me, I respectfully request that the joint parties again discuss amongst themselves how the Debtor and Trustee can now walk away from the agreement you informed me that they approved yesterday. Thereinafter, please advise in response hereto whether I can file the Stipulation or need to file a response to the objection, or similar-situated pleading, this weekend.

Thank you,

Josh Sheade

For the Firm



1159 Delaware Street
Denver, Colorado 80204
Tel.: (303) 623-4357, Ext. 222
Fax: (720) 554-7853

The information contained in, or attached to, this electronic message is a confidential communication from a law firm, and intended only for the confidential use of the individual(s) named above. Unauthorized interception of this message is a violation of the Electronic Communications Privacy Act, 18 U.S.C. 2510-2521 and 2707-2709. This message may be protected by the attorney-client and/or attorney work product privileges. If you are not the named recipient, or an agent responsible for delivering this transmission to the named recipient, you are hereby notified that you have received this document in error; and any review, disclosure, dissemination, copying, distribution or use of the information contained in, or attached to, this message is prohibited. If you have received this communication in error, please notify us immediately by e-mail at joshua.sheade@gmail.com or by telephone at (303) 623-4357, Ext. 222; and destroy any copies of this message. Thank you.

On Dec 4, 2020, at 1:46 PM, Jeff Brinen <JSB@kutnerlaw.com> wrote:

Sorry – I'm on conference calls for another 45-60 minutes

That was my understanding. Can you please pick up the phone and explain to Lindsay or Aaron exactly what you explained to me? It was too convoluted for me to provide details, but I did say that you sent it.

Jeffrey S. Brinen, Esq.
Kutner Brinen, P.C.
1660 Lincoln St., Suite 1850
Denver, CO  80264
303-832-2418 Direct
303-832-2400 Main

<image001.png>
E-MAIL CONFIDENTIALITY NOTICE:
The contents of this e-mail message and any attachments are intended solely for the addressee(s) and may contain confidential and/or legally privileged information. If you are not the intended recipient of this message or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and any attachments. If you are not the intended recipient, you are notified that any use, dissemination, distribution, copying, or storage of this message or any attachment is strictly prohibited.

**From:** Joshua B. Sheade, Esq. <joshua@berkencloyes.com>
**Sent:** Friday, December 4, 2020 1:32 PM
**To:** Jeff Brinen <JSB@kutnerlaw.com>

**Subject:** Re: In re Johnson, Case No. 19-19816 EEB re Proposed Stipulation to Resolve Joint Objections to Exhibits

Correct me if I am wrong but did our call yesterday not conclude with the parties agreeing to the terms as drafted and that I was "to just get it done?"Please call my cell phone ASAP today.

Thank you,


Josh Sheade

For the Firm



1159 Delaware Street
Denver, Colorado 80204
Tel.: (303) 623-4357, Ext. 222
Fax: (720) 554-7853


The information contained in, or attached to, this electronic message is a confidential communication from a law firm, and intended only for the confidential use of the individual(s) named above. Unauthorized interception of this message is a violation of the Electronic Communications Privacy Act, 18 U.S.C. 2510-2521 and 2707-2709. This message may be protected by the attorney-client and/or attorney work product privileges. If you are not the named recipient, or an agent responsible for delivering this transmission to the named recipient, you are hereby notified that you have received this document in error; and any review, disclosure, dissemination, copying, distribution or use of the information contained in, or attached to, this message is prohibited. If you have received this communication in error, please notify us immediately by e-mail at joshua.sheade@gmail.com or by telephone at (303) 623-4357, Ext. 222; and destroy any copies of this message. Thank you.



On Dec 4, 2020, at 12:59 PM, Aaron Conrardy <Aconrardy@wgwc-law.com> wrote:


Josh:  We'll discuss your proposal with the Trustee and get back to you.  In the meantime, can you email me proof that you emailed us your exhibits on November 25? I have searched my emails and have not identified an email on that date (or before) with the exhibits.  Nailing that down will help the Trustee analyze the issue.

Thanks,
Aaron

<image002.jpg>

Aaron J. Conrardy
Wadsworth Garber Warner Conrardy, P.C.
2580 West Main Street, Suite 200, Littleton, CO 80120
Direct: (303) 296-3945 | Firm: (303) 296-1999
aconrardy@wgwc-law.com

**From:** Joshua B. Sheade, Esq. <joshua@berkencloyes.com>
**Sent:** Friday, December 4, 2020 12:27 PM
**To:** Jeff Brinen <JSB@kutnerlaw.com>; Lindsay Riley <lriley@wgwc-law.com>; Aaron Conrardy <Aconrardy@wgwc-law.com>
**Subject:** In re Johnson, Case No. 19-19816 EEB re Proposed Stipulation to Resolve Joint Objections to Exhibits

Good Afternoon:

Please find attached a draft of the Stipulation to Resolve Joint Objection to Exhibits and proposed order to be filed contemporaneously therewith. Upon review of the Stipulation and proposed order, please respond hereto with any requested revisions or, if no changes are necessary, your approval and authorization to file with e-signatures affixed to the Stipulation.

In addition, my e-mail containing Ritchie, Dillard, Davies & Johnson, P.C.'s pre-marked and bates stamped exhibits that everyone advises to not have received last week included the original spreadsheets for Creditor's Exhibits 12, 14 and 16. Such spreadsheets are also attached hereto.

Thank you,


Josh Sheade

For the Firm
<image001.jpg>
1159 Delaware Street
Denver, Colorado 80204
Tel.: (303) 623-4357, Ext. 222
Direct: (720) 543-9862
Fax: (720) 554-7853

The information contained in, or attached to, this electronic message is a confidential communication from a law firm, and intended only for the confidential use of the individual(s) named above. Unauthorized interception of this message is a violation of the Electronic Communications Privacy Act, 18 U.S.C. 2510-2521 and 2707-2709. This message may be protected by the attorney-client and/or attorney work product privileges. If you are not the named recipient, or an agent responsible for delivering this transmission to the named recipient, you are hereby notified that you have received this document in error; and any review, disclosure, dissemination, copying, distribution or use of the information contained in, or attached to, this message is prohibited. If you have received this communication in error, please notify us immediately by e-mail at joshua.sheade@gmail.com or by telephone at (303) 623-4357, Ext. 222; and destroy any copies of this message. Thank you.

## Joshua B. Sheade, Esq.

| | |
|---|---|
| **From:** | Joshua B. Sheade, Esq. |
| **Sent:** | Sunday, December 6, 2020 4:14 PM |
| **To:** | Jeff Brinen |
| **Subject:** | RE: In re Johnson, Case No. 19-19816 EEB re Proposed Stipulation to Resolve Joint Objections to Exhibits |

Good Afternoon Jeff:

Sorry to bother you on a Sunday but before I respond to Aaron's e-mail below, I would like to understand if his proposal is what you and he discussed on Friday as what we discussed contained one less condition. My understanding was simply get Trustee and Debtor the separated exhibits by Monday and Debtor and Trustee reserve right to object during the hearing. Nothing about limitations on offering exhibits listed on the LWE filed at Docket No. 107. If that is the case, I will need to file a response and lay out the parties' discovery dispute therein.

I am at the office until 9 pm tonight and would greatly appreciate speaking with you for the twentieth time about the LWE issue tonight. Thus, please call my cell phone at your earliest convenience.

Thank you,

Josh Sheade

For the Firm

### BERKEN | CLOYES

1159 Delaware Street
Denver, Colorado 80204
Tel.: (303) 623-4357, Ext. 222
Direct: (720) 543-9862
Fax: (720) 554-7853

The information contained in, or attached to, this electronic message is a confidential communication from a law firm, and intended only for the confidential use of the individual(s) named above. Unauthorized interception of this message is a violation of the Electronic Communications Privacy Act, 18 U.S.C. 2510-2521 and 2707-2709. This message may be protected by the attorney-client and/or attorney work product privileges. If you are not the named recipient, or an agent responsible for delivering this transmission to the named recipient, you are hereby notified that you have received this document in error; and any review, disclosure, dissemination, copying, distribution or use of the information contained in, or attached to, this message is prohibited. If you have received this communication in error, please notify us immediately by e-mail at joshua.sheade@gmail.com or by telephone at (303) 623-4357, Ext. 222; and destroy any copies of this message. Thank you.

**From:** Aaron Conrardy <Aconrardy@wgwc-law.com>
**Sent:** Sunday, December 6, 2020 10:33 AM
**To:** Joshua B. Sheade, Esq. <joshua@berkencloyes.com>; Jeff Brinen <JSB@kutnerlaw.com>; Lindsay Riley <lriley@wgwc-law.com>
**Subject:** RE: In re Johnson, Case No. 19-19816 EEB re Proposed Stipulation to Resolve Joint Objections to Exhibits

Josh:  I still haven't received evidence that you emailed the exhibits to us.  Nevertheless, Trustee will withdraw his timeliness objection on the following conditions:

1. Each exhibit is delivered to us by 12 noon on Monday, December 7, in a manner that complies with the scheduling order. That is, each exhibit is a separate PDF that is property labelled (e.g. Exhibit 1 – Contact") and all exhibits in excess of 10 pages are numbered at the bottom of the page;

2. Your client is limited to offering exhibits that were listed on its exhibit list filed at Docket No. 107. There will be no further amendments as you've indicated you plan on doing; and

3. Trustee and Debtor reserve all objections (other than as to timeliness of the exhibits being exchanged) for the hearing. In other words, Trustee and Debtor may make their objections during the hearing when exhibits are being offered.

I believe Debtor supports Trustee's proposal, but let's have Jeff weigh in.

If this is acceptable, we can either draft a short stipulation or we can notify Judge Brown of the stipulation prior to opening statements.

Aaron

Aaron J. Conrardy
Wadsworth Garber Warner Conrardy, P.C.
2580 West Main Street, Suite 200, Littleton, CO 80120
Direct: (303) 296-3945 | Firm: (303) 296-1999
aconrardy@wgwc-law.com

---

**From:** Joshua B. Sheade, Esq. <joshua@berkencloyes.com>
**Sent:** Friday, December 4, 2020 12:27 PM
**To:** Jeff Brinen <JSB@kutnerlaw.com>; Lindsay Riley <lriley@wgwc-law.com>; Aaron Conrardy <Aconrardy@wgwc-law.com>
**Subject:** In re Johnson, Case No. 19-19816 EEB re Proposed Stipulation to Resolve Joint Objections to Exhibits

Good Afternoon:

Please find attached a draft of the Stipulation to Resolve Joint Objection to Exhibits and proposed order to be filed contemporaneously therewith. Upon review of the Stipulation and proposed order, please respond hereto with any requested revisions or, if no changes are necessary, your approval and authorization to file with e-signatures affixed to the Stipulation.

In addition, my e-mail containing Ritchie, Dillard, Davies & Johnson, P.C.'s pre-marked and bates stamped exhibits that everyone advises to not have received last week included the original spreadsheets for Creditor's Exhibits 12, 14 and 16. Such spreadsheets are also attached hereto.

Thank you,

Josh Sheade

For the Firm

BERKEN | CLOYES

1159 Delaware Street
Denver, Colorado 80204

<div align="center">**Ritchie, Dillard, Davies & Johnson, P.C.'s Status Report**
**EXHIBIT 6**</div>

Tel.: (303) 623-4357, Ext. 222
Direct: (720) 543-9862
Fax: (720) 554-7853

The information contained in, or attached to, this electronic message is a confidential communication from a law firm, and intended only for the confidential use of the individual(s) named above. Unauthorized interception of this message is a violation of the Electronic Communications Privacy Act, 18 U.S.C. 2510-2521 and 2707-2709. This message may be protected by the attorney-client and/or attorney work product privileges. If you are not the named recipient, or an agent responsible for delivering this transmission to the named recipient, you are hereby notified that you have received this document in error; and any review, disclosure, dissemination, copying, distribution or use of the information contained in, or attached to, this message is prohibited. If you have received this communication in error, please notify us immediately by e-mail at joshua.sheade@gmail.com or by telephone at (303) 623-4357, Ext. 222; and destroy any copies of this message. Thank you.

**Ritchie, Dillard, Davies & Johnson, P.C.'s Status Report**
**EXHIBIT 6**

**Joshua B. Sheade, Esq.**

| | |
|---|---|
| **From:** | Joshua B. Sheade, Esq. |
| **Sent:** | Monday, December 7, 2020 1:47 PM |
| **To:** | Aaron Conrardy; Jeff Brinen; Lindsay Riley |
| **Subject:** | RE: In re Johnson, Case No. 19-19816 EEB re Proposed Stipulation to Resolve Joint Objections to Exhibits |
| **Attachments:** | Discovery Dispute History.pdf |

Good Afternoon:

This e-mail follows production of each exhibit as a separate PDF.

The terms and conditions proposed by the Trustee and Debtor per the e-mail below is the third variation of a stipulation for withdrawal of the *Joint Objection to Exhibits* ("Joint Objection") commencing on Thursday, December 3, 2020, as follows:

1. On December 3, the Debtor advised that he and the Trustee would agree to withdraw the Objection if Ritchie, Dillard, Davies & Johnson, P.C. ("Creditor") agreed to extend the objection deadline up to and through December 7, 2020, which the Creditor accepted. Furthermore, at the request of the Debtor, the Creditor drafted the Stipulation presented on December 4, 2020.
2. On December 4, the Debtor advised that he and the Trustee would agree to withdraw the Objection if the Creditor agreed to the Debtor and Trustee preserving their right to object to the exhibits at the hearing set to commence on December 9, 2020. Furthermore, counsel for the Debtor agreed that me preparing proof of my exhibit disclosure e-mail efforts was no longer necessary. Such telephone call concluded with me informing Mr. Brinen that I required time to discuss the new proposal with the Creditor and Mr. Brinen advising that such time frame for responding to the proposal was acceptable; and
3. On December 6, prior to me having an opportunity to discuss the second proposal with the Creditor, the Trustee tenders the additional conditions per the e-mail below. Furthermore, the introductory statement contradicts Mr. Brinen's statements during our December 4 telephone call.

Although the Debtor and Trustee advise to not receiving the Creditor's pre-marked exhibits via my e-mail on the night of November 25, 2020, no prejudice exists as each and every exhibit are documents that the Joint Respondent possesses, maintains and controls by and through the Debtor. The exhibits are not only the Debtor's records, they are documents the Debtor refused to produce over the course of discovery.

The Objection is the second pre-hearing dispute as the Debtor refused to produce documents in accordance with discovery requests served upon the Debtor on September 11, 2020. The Creditor and Debtor agreed to resolve such dispute by and through the Creditor agreeing to limit the discovery to the requests for production of documents and reduce the time frame to November 13, 2017 instead of November 13, 2015. Although the Debtor agreed to such resolution, he continued to evade full and final production, which required the Creditor to seek the information from third-parties. Upon review of bank statements produced by Eastman Credit Union, the Debtor tendered payments to friends and family via the Square Cash App in the amount of $17,140.00 throughout 2019. Most notably, the Debtor transferred $7,530.00 to Eric Miller and $7,747.50 to undisclosed parties in 2019. As Square Cash App operates as an avenue for transferring and maintaining funds, akin to a bank account, records may show that the Debtor controlled non-exempt funds in his Square Cash App account on November 13, 2019.

Furthermore, on September 11, 2020, counsel for the Trustee proposed that the Creditor simplify the dispute by withdrawing the alternative request for § 707(b) dismissal and advised that the Trustee would not oppose

conversion as administrative expenses would be paid through a Chapter 11 Plan. Thus, the Creditor was quite surprised by the *Joint List of Witnesses and Exhibits*. As of this e-mail, the Creditor continues to await from the Trustee production of documents in accordance with 11 U.S.C. § 704(a)(7) and a response to its December 3, 2020 inquiry, as follows: considering the Debtor reaffirmed his secured debts and discloses sufficient monthly disposable income to pay administrative expenses under a Chapter 11 Plan, how is Trustee acting in the best interest of the remaining beneficiaries by challenging the Motion to Convert jointly with the Debtor?

Based on the aforementioned history of this case, the Creditor will stipulate to the following:

1. Trustee and Debtor shall reserve all objections, other than as to timeliness of the exhibits being exchanged, for the hearing; EXCEPT any and all documents and records the produced by the Debtor or that the Creditor requested from the Debtor but received directly from PayPal and Eastman Credit Union upon the Debtor refusing to respond to the Creditor's discovery requests;
2. Trustee and Debtor shall withdraw their Joint Objection; and
3. The Debtor shall produce a transaction ledger for his Square Cash App for the period of November 1, 2018 through November 13, 2019 and December 2019 statement for UBS Financial Resource Management Account No. 8202, which the Creditor may offer as exhibits at the hearing subject to any objections raised by the Debtor and Trustee other than timeliness.

Although the Creditor hopes that the parties can resolve their issues based on mutually agreeable terms, the Creditor shall seek for the Court to intervene by filing a Status Report laying out the above facts if no agreement is reached prior to the close of business today.


Thank you,


Josh Sheade

For the Firm

**BERKEN | CLOYES**

1159 Delaware Street
Denver, Colorado 80204
Tel.: (303) 623-4357, Ext. 222
Direct: (720) 543-9862
Fax: (720) 554-7853

The information contained in, or attached to, this electronic message is a confidential communication from a law firm, and intended only for the confidential use of the individual(s) named above. Unauthorized interception of this message is a violation of the Electronic Communications Privacy Act, 18 U.S.C. 2510-2521 and 2707-2709. This message may be protected by the attorney-client and/or attorney work product privileges. If you are not the named recipient, or an agent responsible for delivering this transmission to the named recipient, you are hereby notified that you have received this document in error; and any review, disclosure, dissemination, copying, distribution or use of the information contained in, or attached to, this message is prohibited. If you have received this communication in error, please notify us immediately by e-mail at joshua.sheade@gmail.com or by telephone at (303) 623-4357, Ext. 222; and destroy any copies of this message. Thank you.

**From:** Aaron Conrardy <Aconrardy@wgwc-law.com>
**Sent:** Sunday, December 6, 2020 10:33 AM
**To:** Joshua B. Sheade, Esq. <joshua@berkencloyes.com>; Jeff Brinen <JSB@kutnerlaw.com>; Lindsay Riley <lriley@wgwc-law.com>
**Subject:** RE: In re Johnson, Case No. 19-19816 EEB re Proposed Stipulation to Resolve Joint Objections to Exhibits

Josh:  I still haven't received evidence that you emailed the exhibits to us.  Nevertheless, Trustee will withdraw his timeliness objection on the following conditions:

1. Each exhibit is delivered to us by 12 noon on Monday, December 7, in a manner that complies with the scheduling order.  That is, each exhibit is a separate PDF that is property labelled (e.g. Exhibit 1 – Contact") and all exhibits in excess of 10 pages are numbered at the bottom of the page;

2. Your client is limited to offering exhibits that were listed on its exhibit list filed at Docket No. 107.  There will be no further amendments as you've indicated you plan on doing; and

3. Trustee and Debtor reserve <u>all</u> objections (other than as to timeliness of the exhibits being exchanged) for the hearing.  In other words, Trustee and Debtor may make their objections during the hearing when exhibits are being offered.

I believe Debtor supports Trustee's proposal, but let's have Jeff weigh in.

If this is acceptable, we can either draft a <u>short</u> stipulation or we can notify Judge Brown of the stipulation prior to opening statements.

Aaron



| | |
|---|---|
| | Aaron J. Conrardy |
| | Wadsworth Garber Warner Conrardy, P.C. |
| | 2580 West Main Street, Suite 200, Littleton, CO 80120 |
| | Direct: (303) 296-3945 **\|** Firm: (303) 296-1999 |
| | aconrardy@wgwc-law.com |

**From:** Joshua B. Sheade, Esq. <joshua@berkencloyes.com>
**Sent:** Friday, December 4, 2020 12:27 PM
**To:** Jeff Brinen <JSB@kutnerlaw.com>; Lindsay Riley <lriley@wgwc-law.com>; Aaron Conrardy <Aconrardy@wgwc-law.com>
**Subject:** In re Johnson, Case No. 19-19816 EEB re Proposed Stipulation to Resolve Joint Objections to Exhibits

Good Afternoon:

Please find attached a draft of the Stipulation to Resolve Joint Objection to Exhibits and proposed order to be filed contemporaneously therewith. Upon review of the Stipulation and proposed order, please respond hereto with any requested revisions or, if no changes are necessary, your approval and authorization to file with e-signatures affixed to the Stipulation.

In addition, my e-mail containing Ritchie, Dillard, Davies & Johnson, P.C.'s pre-marked and bates stamped exhibits that everyone advises to not have received last week included the original spreadsheets for Creditor's Exhibits 12, 14 and 16. Such spreadsheets are also attached hereto.

Thank you,

Josh Sheade

For the Firm

## BERKEN | CLOYES

1159 Delaware Street
Denver, Colorado 80204
Tel.: (303) 623-4357, Ext. 222
Direct: (720) 543-9862
Fax: (720) 554-7853

The information contained in, or attached to, this electronic message is a confidential communication from a law firm, and intended only for the
confidential use of the individual(s) named above. Unauthorized interception of this message is a violation of the Electronic Communications
Privacy Act, 18 U.S.C. 2510-2521 and 2707-2709. This message may be protected by the attorney-client and/or attorney work product
privileges. If you are not the named recipient, or an agent responsible for delivering this transmission to the named recipient, you are hereby
notified that you have received this document in error; and any review, disclosure, dissemination, copying, distribution or use of the information
contained in, or attached to, this message is prohibited. If you have received this communication in error, please notify us immediately by e-mail
at joshua.sheade@gmail.com or by telephone at (303) 623-4357, Ext. 222; and destroy any copies of this message. Thank you.

**Ritchie, Dillard, Davies & Johnson, P.C.'s Status Report**
**EXHIBIT 6**

### UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF COLORADO

#### *Minute Order*

| Date: December 9, 2020 | **Honorable Elizabeth E. Brown, Presiding** |
|---|---|
| | Ruth S. Mares, Law Clerk |

| In re:   Alexander Johnson, | Case. No. 19-19816 EEB |
|---|---|
| | Chapter 7 |
| Debtor. | |

| Counsel | Appearances | | Representing | |
|---|---|---|---|---|
| Counsel | Lindsay Riley* | | Trustee | M. Stephen Peters, chapter 7 trustee* |
| Counsel | Jeffrey Brinen* | | Debtor | Alexander Johnson* |
| Counsel | Joshua Sheade* | | Creditor | Ritchie, Dillard, Davies & Johnson, P.C. |
| Counsel | | | Creditor | |
| Counsel | | | Creditor | |
| Counsel | | | Creditor | |

*appearance via Zoom video conference

Proceedings:  Evidentiary Hearing on the Motion to Convert Chapter 7 Bankruptcy Case to Case Under Chapter 11 of the Bankruptcy Code Pursuant to 11 U.S.C. § 706(b) or, in the Alternative, Dismiss Bankruptcy Case Pursuant to 11 U.S.C. § 707(b) filed by Ritchie, Dillard, Davies & Johnson, P.C. and the Objections thereto filed by the Debtor and the Chapter 7 Trustee, M. Stephen Peters

☒ Witnesses Sworn:  Alexander Johnson, M. Stephen Peters

☒ Exhibits Entered: Creditor's Exhibits 2 (as to 2020 bank statements only), 22, 23, 35-39; Debtor/Trustee's Exhibits: A, B

☒ Evidentiary Hearing[1]

☒ The creditor withdrew its motion to dismiss under 11 U.S.C. § 707(b) on the record.

Orders:

☒ Based on the findings and conclusions made on the record in open court, the Court DENIED the motion under 11 U.S.C. § 706(b) to convert the case to chapter 11.  A separate judgment will enter.

Date: December 9, 2020.

BY THE COURT:

*Elizabeth E. Brown*

_____
Elizabeth E. Brown, U.S. Bankruptcy Judge

---

[1] This hearing is considered evidentiary for statistical purposes.

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**
Bankruptcy Judge Elizabeth E. Brown

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 19-19816 EEB |
| ALEXANDER JOHNSON, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |

---

### JUDGMENT

---

Pursuant to and in accordance with the findings and conclusions made on the record in open court by the Honorable Elizabeth E. Brown, Bankruptcy Judge, on December 9, 2020 it is hereby

ORDERED AND ADJUDGED that Ritchie, Dillard, Davies & Johnson, P.C.'s motion under 11 U.S.C. § 706(b) to convert this case to chapter 11 is denied.

DATED: December 9, 2020.

APPROVED BY THE COURT:                    FOR THE COURT:

_____           _____
Elizabeth E. Brown                        Deputy Clerk
United States Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| IN RE:<br><br>ALEXANDER JOHNSON,<br><br>Debtor. | Case No. 19-19816 EEB<br><br>Chapter 7 |

## NOTICE OF APPEAL AND STATEMENT OF ELECTION

RITCHIE, DILLARD, DAVIES & JOHNSON, P.C., through undersigned counsel, hereby respectfully submits to the United States Bankruptcy Court for the District of Colorado this Notice of Appeal and Statement of Election, pursuant to FED.R.BANKR.P. 8003 and in substantial conformity with Official Form 417A, and states as follows:

**Part 1: Identify the Appellant**

1.    Name of Appellant:  Ritchie, Dillard, Davies & Johnson, P.C. ("*Creditor*")

2.    Position of Appellant in the bankruptcy case that is the subject of this appeal:

     ☐    Debtor
     ☑    Creditor
     ☐    Trustee
     ☐    Other (describe) _____

**Part 2: Identify the Subject of This Appeal**

1.    Describe the judgment, order, or decree appealed from:  The Creditor appeals the *Judgment* rendered within, and entered on the docket of, the above-captioned bankruptcy case at Docket No. 111; together with the *Minute Order* entered contemporaneously therewith at Docket No. 110.

2.    State the date on which the judgment, order, or decree was entered:  December 9, 2020

**Part 3: Identify the Other Parties to the Appeal**

List the names of all parties to the judgment, order, or decree appealed from and the names, addresses, and telephone numbers of their attorneys:

1.    Alexander Johnson         Jeffrey S. Brinen, Esq.
     ("*Debtor*")             KUTNER BRINEN, P.C.
                           1660 Lincoln Street, Suite 1850
                           Denver, Colorado 80264

2.  M. Stephen Peters, Esq.  Aaron J. Conrardy, Esq.
  (*"Trustee"*)     Lindsay Riley, Esq.
           WADSWORTH GARBER WARNER CONRARDY, P.C.
           2580 West Main Street, Suite 200
           Littleton, Colorado 80120

## Part 4: Optional Election to Have Appeal Heard by District Court

If a Bankruptcy Appellate Panel is available in this judicial district, the Bankruptcy Appellate Panel will hear this appeal unless, pursuant to 28 U.S.C. § 158(c)(1), a party elects to have the appeal heard by the United States District Court. If an appellant filing this notice wishes to have the appeal heard by the United States District Court, check below. Do not check the box if the appellant wishes the Bankruptcy Appellate Panel to hear the appeal.

  ☐  Appellant(s) elect to have the appeal heard by the United States District Court rather than by the Bankruptcy Appellate Panel.

## Part 5: Sign below

DATED this 23rd of December, 2020.

          Respectfully submitted,
          BERKEN CLOYES, P.C.

          Joshua B. Sheade, Atty. Reg. No. 46993
          1159 Delaware Street
          Denver, Colorado 80204
          Tel: (303) 623-4357
          Fax: (720) 554-7853
          Email: joshua@berkencloyes.com
          *Attorneys for Creditor; Ritchie, Dillard, Davies & Johnson, P.C.*

## CERTIFICATE OF SERVICE

The undersigned certifies that on December 23, 2020, I served by the Case Management/Electronic Case Filing ("*CM/ECF*") system, pre-paid first-class mail and/or other acceptable means (i.e., via hand delivery or electronic mail), a true and correct copy of the foregoing **NOTICE OF APPEAL AND STATEMENT OF ELECTION** on all parties against whom relief is sought and those otherwise entitled to service pursuant to the FED.R.BANKR.P. and these L.B.R., at such addresses as follows:

### Via CM/ECF:

M. Stephen Peters, Esq.
CHAPTER 7 TRUSTEE
P.O. Box 4610
Frisco, Colorado 80443

Aaron J. Conrardy, Esq.
Lindsay Riley, Esq.
WADSWORTH GARBER WARNER CONRARDY, P.C.
2580 West Main Street, Suite 200
Littleton, Colorado 80120

Abbey Dreher, Esq.
BARRETT FRAPPIER & WEISSERMAN, LLP
4004 Belt Lane Road, Suite 100
Addison, Texas 75001

Jeffrey S. Brinen, Esq.
KUTNER BRINEN, P.C.
1660 Lincoln Street, Suite 1850
Denver, Colorado 80264

Paul Moss, Esq.
OFFICE FOR THE UNITED STATES TRUSTEE
Byron G. Rogers Federal Building
1961 Stout Street, Suite 12-200
Denver, Colorado 80294

By: _____

Joshua B. Sheade, Esq.
For BERKEN CLOYES, P.C.

3

## UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE TENTH CIRCUIT

| | |
|---|---|
| IN RE ALEXANDER JOHNSON,<br><br>Debtor. | BAP No. CO-20-063 |
| RITCHIE, DILLARD, DAVIES &<br>JOHNSON, P.C.,<br><br>     Appellant,<br><br>v.<br><br>ALEXANDER JOHNSON and M. STEPHEN<br>PETERS, CHAPTER 7 TRUSTEE,<br><br>     Appellees. | Bankr. No. 19-19816-EEB<br>Chapter 7<br><br><br>ORDER DENYING MOTION FOR LEAVE<br>TO APPEAL |

Before **CORNISH** and **LOYD**, Bankruptcy Judges.

In November 2019, Debtor Alexander Johnson filed a chapter 7 bankruptcy. The Law Offices of Ritchie, Dillard, Davies & Johnson, P.C. (the "Appellant"), the Debtor's attorney for certain prepetition matters, filed a proof of claim for the amount of $902,908.82 as well as a motion to dismiss under § 707(b) and to convert the case from chapter 7 to chapter 11 under § 706(b) (the "Motion"). In the Motion, Appellant argued that since no specific grounds for conversion are identified in § 706(b), a court should consider anything relevant that would further the goals of the Code, including maximizing the value of the bankruptcy estate. Both the chapter 7 trustee and the Debtor objected to the Motion. Following a hearing on the Motion,[1] the Bankruptcy Court entered a *Minute Order*, stating that "[b]ased on the findings and conclusions

---

[1] At the hearing on the Motion, Appellant withdrew its motion to dismiss under § 707(b).

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 339 of 516
Case:19-19816-EEB   Doc#:117   Filed:02/16/21   Entered:02/16/21 10:27:16   Page2 of 10

BAP Appeal No. 20-63      Docket No. 17      Filed: 02/16/2021      Page: 2 of 10

made on the record in open court, the Court DENIE[S] the motion under 11 U.S.C. § 706(b) to convert the case to chapter 11."[2]

Appellant appealed the *Minute Order* and related *Judgment* (the "Order"). Because the Order appeared interlocutory, this Court issued an order to show cause why the appeal should not be dismissed.  In response, Appellant filed its *Motion for Leave to Appeal the Conversion Order and Judgment* (the "Motion for Leave"), arguing the Order is final and, in the alternative, requesting leave to appeal.

*Finality*

Pursuant to 28 U.S.C. § 158, this Court has jurisdiction to hear timely-filed appeals from "final judgments, orders, and decrees" of bankruptcy courts within the Tenth Circuit, unless one of the parties elects to have the district court hear the appeal.[3] As such, we first consider whether the Order is a final order. In bankruptcy cases, orders qualify as "final" when they definitively dispose of discrete disputes within the overarching bankruptcy case.[4] The Supreme Court's opinions in *Bullard*[5] and *Ritzen*[6] guide our application of § 158's finality requirement. Thus, we

---

[2] Order at 1. Because the Bankruptcy Court's findings and conclusions were made on the record at the hearing on the Motion and Appellant has failed to provide a transcript of this hearing, this Court does not know what facts were presented or what interests the Bankruptcy Court weighed to conclude that conversion was not appropriate in this case.

[3] 28 U.S.C. § 158(a)(1), (b)(1), and (c)(1); Fed. R. Bankr. P. 8002, 8005; 10th Cir. BAP L.R. 8005-1.

[4] *Ritzen Group, Inc. v. Jackson Masonry, LLC*, 140 S.Ct. 582, 586 (2020) (quoting *Bullard v. Blue Hills Bank*, 575 U.S. 496, 501 (2015)).

[5] 575 U.S. at 499 ("Adjudication of a stay-relief motion is a discrete 'proceeding.' [It] disposes of a procedural unit anterior to, and separate from, claim-resolution proceedings. Adjudication of a stay-relief motion . . . occurs before and apart from proceedings on the merits of creditors' claims: The motion initiates a discrete procedural sequence, including notice and a hearing.")

[6] 140 S.Ct. at 589 ("Adjudication of a stay-relief motion is a discrete 'proceeding.' [It] disposes of a procedural unit anterior to, and separate from, claim-resolution proceedings. Adjudication of a stay-relief motion . . . occurs before and apart from proceedings on the merits

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 340 of 516
Case:19-19816-EEB   Doc#:117   Filed:02/16/21   Entered:02/16/21 10:27:16   Page3 of 10

BAP Appeal No. 20-63      Docket No. 17      Filed: 02/16/2021      Page: 3 of 10

inquire into whether the adjudication of a motion to convert the case from chapter 7 to chapter 11 is a "discrete procedural sequence"[7] that "fixes the rights and obligations of the parties."[8]

Arguing the Order is final, Appellant relies on *In re Vista Foods U.S.A., Inc.*[9] in which this Court held that an order *granting* a motion to convert a case from chapter 11 to chapter 7 is final. Appellant also cites *In re Young,*[10] in which the Tenth Circuit held that an order granting a motion to convert a chapter 7 to chapter 13 was *not* final until confirmation of a chapter 13 plan. Based on these cases, Appellant argues an order denying conversion from chapter 7 to chapter 11 is the equivalent of "allowing the Debtor to remain under Chapter 7," and therefore, such an order is "analogous to [a final order] converting a case from a Chapter 11" to chapter 7 because it "cannot be reconsidered later in the case."[11]

The cases Appellant relies on are inapposite. In this case, the Order denies a motion to convert *from chapter 7 to chapter 11.* An order denying a motion to convert a chapter 7 to chapter 11 is *not* the equivalent of an order granting a motion to convert *from chapter 11 to chapter 7*, which terminates a debtor's right to propose a plan of reorganization in favor of liquidation. Appellant's argument does not persuade us as to the finality of the Order.

As this Court has previously held, an order denying a motion to convert "does not conclude the bankruptcy case; instead, it permits the case as a whole to continue. Furthermore, [such an order] does not resolve a discrete dispute within the larger bankruptcy case; it does not

---

of creditors' claims: The motion initiates a discrete procedural sequence, including notice and a hearing.").

[7] *Ritzen*, 140 S.Ct. at 589.

[8] *Bullard*, 575 U.S. at 499.

[9] 202 B.R. 499, 500 (10th Cir. BAP 1996).

[10] 237 F.3d 1168, 1173 (10th Cir. 2001) (stating in *dicta* that "an order converting to Chapter 7 is necessarily more final in nature than an order converting to Chapter 13.").

[11] Motion for Leave at 5 (quoting *Vista Foods*, 202 B.R. at 500).

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 341 of 516
Case:19-19816-EEB   Doc#:117   Filed:02/16/21   Entered:02/16/21 10:27:16   Page4 of 10

BAP Appeal No. 20-63      Docket No. 17      Filed: 02/16/2021      Page: 4 of 10

determine creditor priorities, nor does it resolve any issues regarding the Debtor's assets."[12] In this case, the Order neither "definitively dispose[s] of [a] discrete dispute[] within the overarching bankruptcy case,"[13] nor does it bring the chapter 7 case to an end. Instead, the parties' rights and obligations remain unsettled. Accordingly, consistent with *Bullard and Ritzen*, we conclude an order denying a motion to convert from chapter 7 to chapter 11 is not final.[14]

### *Leave to Appeal*

Appellant has asked this Court to grant leave to take an interlocutory appeal under 28 U.S.C. § 158(a) and (b) in the event we determine that the Order is not a final order—and Appellees do not object to the relief requested. An interlocutory appeal under subsections (a) and (b) of § 158 "shall be taken in the same matter as appeals of civil proceedings generally are taken to the courts of appeals from the district courts."[15] The standard for interlocutory appeals from

---

[12] *In re Fox*, 241 B.R. 224, 229–30 (10th Cir. BAP 1999) ("order denying a motion to convert . . . is not an order that impacts either the assets of the bankruptcy estate or the priority of creditors" and is not final) (quoting *In re Hayes*, 220 B.R. 57, 61–62 (N.D. Iowa 1998) (holding that an order denying a motion to convert from Chapter 13 to Chapter 7 is not a final order because proceeding under Chapter 13 does not "deny the creditors anything except the power to collect their debts from the debtor's property instead of his future income")); *see also In re Klein/Ray Broad.*, 100 B.R. 509, 510–11 (9th Cir. BAP 1987) (holding that a denial of a motion to convert from Chapter 11 to Chapter 7 is not a final order).

[13] *Ritzen Group,* 140 S.Ct. at 586 (quoting *Bullard*, 575 U.S. at 501).

[14] *Id.*; *Bullard*, 575 U.S. at 501. *See also Gebhardt v. Hardigan*, 512 B.R. 385, 387 (S.D. Ga. 2014) (denial of a motion to convert a case to Chapter 11 pursuant to 11 U.S.C. § 706(b) is interlocutory); *In re Miller*, 2015 WL 13604250, at *4 (C.D. Cal. 2015) (order denying a motion to convert from Chapter 7 to Chapter 11 is not a final order). *See also In re Fox*, 241 B.R. 224, 229–30 (10th Cir. BAP 1999) (concluding an order denying a motion to convert from Chapter 11 to Chapter 7 is not final); *In re Klein/Ray Broad.*, 100 B.R. 509, 510–11 (9th Cir. BAP 1987) (holding that a denial of a motion to convert from Chapter 11 to Chapter 7 is not a final order). *See also Hayes*, 220 B.R. at 61–62 (holding that an order denying a motion to convert from Chapter 13 to Chapter 7 is not a final order because proceeding under Chapter 13 does not "deny the creditors anything except the power to collect their debts from the debtor's property instead of his future income").

[15] 28 U.S.C § 158(c)(2).

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 342 of 516
Case:19-19816-EEB   Doc#:117   Filed:02/16/21   Entered:02/16/21 10:27:16   Page5 of 10

BAP Appeal No. 20-63        Docket No. 17        Filed: 02/16/2021        Page: 5 of 10

district courts to circuit courts of appeals is set forth in 28 U.S.C. § 1292(b). Section § 1292(b)

provides:

> When a district judge, in making in a civil action an order not otherwise
> appealable under this section, shall be of the opinion that such order involves a
> controlling question of law as to which there is substantial ground for difference of
> opinion and that an immediate appeal from the order may materially advance the
> ultimate termination of the litigation, he shall so state in writing in such order. The
> Court of Appeals which would have jurisdiction of an appeal of such action may
> thereupon, in its discretion, permit an appeal to be taken from such order . . . . [16]

Applying the standard for interlocutory appeals set forth in § 1292(b), a bankruptcy

appellate panel may in its discretion grant leave for an interlocutory appeal from a bankruptcy

court order if the order involves a controlling question of law as to which there is substantial

ground for difference of opinion and an immediate appeal from the order may materially advance

the ultimate termination of the litigation.[17] Leave to appeal an interlocutory order should be

granted only in exceptional cases.[18] Appellant has the burden to show the Order meets these

standards.[19]

In the Motion for Leave, Appellant contends the Order involves the following question of

law as to which there is substantial ground for difference of opinion: "whether the Bankruptcy

Court should consider additional factors in determining the appropriateness of conversion under

11 U.S.C. §706(b)."[20] Appellant also argues that granting leave will promote judicial economy

---

[16] 28 U.S.C. § 1292(b).

[17] *See Personette v. Kennedy*, 204 B.R. 764, 770 (10th Cir. 1997) (applying the standard
set forth in 28 U.S.C. § 1292(b) for interlocutory appeals from the bankruptcy court to a
bankruptcy appellate panel); 10 *Collier on Bankruptcy* ¶ 8004.08 (Richard Levin & Henry J.
Sommer eds. 16th ed.) ("courts have generally adopted [the standard set forth in 28 U.S.C.
§ 1292(b)] when considering whether to grant leave to appeal from an order of the bankruptcy
court.").

[18] *In re Fox*, 241 B.R. 224, 232 (10th Cir. BAP 1999); *In re Denton*, 236 B.R. 418, 419
(10th Cir. BAP 1999).

[19] *Id.*

[20] Motion for Leave at 6.

Case 1:22-cv-00332-REB    Document 9-1    Filed 03/03/22    USDC Colorado    Page 343 of 516
Case:19-19816-EEB    Doc#:117    Filed:02/16/21    Entered:02/16/21 10:27:16    Page6 of 10

BAP Appeal No. 20-63    Docket No. 17    Filed: 02/16/2021    Page: 6 of 10

because absent appellate relief, "the bankruptcy court will be required to order and oversee the recovery of the dividends paid to the creditors and the fee paid to the [bankruptcy] trustee."[21] Furthermore, Appellant suggests conflict exists among circuits as to what factors bankruptcy courts should consider when applying § 706(b).

Although Appellant has framed the issue on appeal as fulfilling the prongs of the test for granting interlocutory review, we disagree. Interlocutory review is reserved for exceptional circumstances.[22] Appellant has not presented us with any exceptional factors that would warrant hearing this case now. Additionally, Appellant has failed to show that the issue on appeal involves a substantial ground for difference of opinion.[23] Accordingly, we deny the Motion for Leave and dismiss the appeal.

**SOMERS**, Bankruptcy Judge, dissenting.

I dissent from the majority's decision to deny Appellant's motion for leave to appeal and dismiss Appellant's appeal.[24]

As the majority notes, this Court has jurisdiction to hear timely-filed appeals from "final judgments, orders, and decrees."[25] In my view, the case law on whether an order denying a creditor's motion for conversion from chapter 7 to chapter 11 is final versus interlocutory is not clear and I would not opine on finality. This Court does not need to answer the finality question,

---

[21] *Id.*

[22] *See Fox*, 241 B.R. at 232; *Denton*, 236 B.R. at 419.

[23] *See* Motion for Leave at 6 (Appellant argues "a conflict exists among the circuits as to what factors the Bankruptcy Court should consider in interpreting § 706(b)" and that "there is also a difference of opinion among legal authority regarding the issue" citing only two cases: *Proudfoot Consulting Co. v. Gordon (In re Gordon)*, 465 B.R. 683 (Bankr. N.D. Ga. 2012) and *In re Hardigan*, 490 B.R. 437 (Bankr. S.D. Ga. 2013)).

[24] I express no opinion whatsoever on the merits of this appeal. I look at the legal standard for appeal only, not the validity of Appellant's arguments.

[25] 28 U.S.C. § 158(a)(1), (b)(1), and (c)(1); Fed. R. Bankr. P. 8002, 8005; 10th Cir. BAP L.R. 8005-1.

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 344 of 516
Case:19-19816-EEB   Doc#:117   Filed:02/16/21   Entered:02/16/21 10:27:16   Page7 of 10

BAP Appeal No. 20-63      Docket No. 17      Filed: 02/16/2021      Page: 7 of 10

because the Court also has leave to hear appeals from "interlocutory orders and decrees" with leave of the court.[26] "Section 158(a)(3) provides no guidelines as to when it is appropriate for a district court or a bankruptcy appellate panel to grant leave to bring an interlocutory appeal."[27] Our prior jurisprudence indicates that leave should be granted only in exceptional cases, where the appealed order or judgment involves a controlling question of law for which there is substantial ground for difference of opinion, and where the immediate resolution of the issue will materially advance termination of the litigation.[28] I believe the Court should grant leave to appeal in this case.

Regarding the first factor, the standard for a substantial ground for difference of opinion is met "(i) where 'the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, (ii) if complicated questions arise under foreign law, or (iii) if novel and difficult questions of first impression are presented.'"[29] The Tenth Circuit has not addressed the question of what standard should be applied when a bankruptcy court considers a motion to convert a chapter 7 bankruptcy case to one under chapter 11. At most, other circuit courts have given only glancing attention to the matter.[30] Those circuit courts that give any analysis at all rely on one line of the legislative history of § 706 that says:

---

[26] 28 U.S.C. § 158(a)(3); Fed. R. Bankr. P. 8004.

[27] *In re Fox*, 241 B.R. 224, 232 (10th Cir. BAP 1999).

[28] *Id.*

[29] *Kell v. Crowther*, No. 2:07-CV-00359-CW, 2018 WL 813449, at *2 (D. Utah, 2018) (quoting *Couch v. Telescope, Inc.*, 611 F.3d 629 (9th Cir. 2010)).

[30] S*ee, e.g., In re Takano*, 771 Fed. App'x 805, 806 (9th Cir. 2019) (unpublished) (reviewing denial of creditor's motion to convert chapter 7 case to chapter 11 and stating that court had "broad discretion to convert to a Chapter 11 case based on what will most inure to the benefit of all parties in interest" (internal quotation omitted)); *In re Schlehuber*, 558 Fed. App'x 715, 716 (8th Cir. 2014) (unpublished) (reviewing grant of creditor's motion to convert from chapter 7 to chapter 11 for abuse of discretion, but setting out no standards to guide that discretion); *Matter of Texas Extrusion Corp.*, 844 F.2d 1142, 1161 (5th Cir. 1988) (reviewing bankruptcy court decision to grant conversion of case to chapter 11 after prior conversion from

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 345 of 516
Case:19-19816-EEB   Doc#:117   Filed:02/16/21   Entered:02/16/21 10:27:16   Page8 of 10

BAP Appeal No. 20-63      Docket No. 17      Filed: 02/16/2021      Page: 8 of 10

> Subsection (b) permits the court, on request of a party in interest and after notice and a hearing, to convert the case to chapter 11 at any time. The decision whether to convert is left in the sound discretion of the court, based on what will most inure to the benefit of all parties in interest.[31]

Yes, legislative history can be helpful, but the point remains that the Tenth Circuit has not articulated a standard at all. And even if we adopt other courts' use of that legislative history to put this discretionary standard in place, the controlling legal question is what factors a bankruptcy court should consider when applying its discretion on a creditor's motion to convert a case from chapter 7 to chapter 11 under § 706(b). This is a novel question of law in this Circuit, and that is sufficient to meet the first factor for granting leave to appeal.

I also note that in the circuit court cases just cited, where a "standard" was given for analyzing conversion under § 706(b), the courts *heard the appeal of the issue* to determine if an abuse of discretion was present. The Ninth Circuit, without discussion of finality, heard a direct appeal of the denial of a creditor's motion to convert a chapter 7 case to chapter 11[32]—i.e., the exact procedural posture herein. The Fifth Circuit heard the issue because the bankruptcy court *granted* a creditor's motion to reconvert a case to chapter 11 after it had previously been converted from chapter 11 to chapter 7, and the circuit court ultimately addressed the issue on the appeal taken after plan confirmation.[33] And again, like the Fifth Circuit, the Eight Circuit

---

chapter 11 to chapter 7 and holding the decision whether to reconvert a case back to chapter 11 after a prior conversion from chapter 11 to chapter 7 was "within the discretionary powers of the bankruptcy court based on the court's determination of what will most inure to the benefit of all parties in interest").

[31] H.R. Rep. No. 95-595, at 380 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 5963; S. Rep. No. 95-989, at 94 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5787.

[32] *In re Takano*, 771 Fed. App'x at 805-06. Under 28 U.S.C. § 1291, the Ninth Circuit has jurisdiction to hear "appeals from all *final* decisions" of the District of Guam (emphasis added).

[33] *Matter of Texas Extrusion Corp.*, 844 F.2d at 1161.

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 346 of 516
Case:19-19816-EEB   Doc#:117   Filed:02/16/21   Entered:02/16/21 10:27:16   Page9 of 10

BAP Appeal No. 20-63      Docket No. 17      Filed: 02/16/2021      Page: 9 of 10

heard a debtor's direct appeal of the bankruptcy court's order *granting* a creditor's motion to convert the debtor's case from chapter 7 to chapter 11.[34]

This leads to discussion of the second factor, whether the immediate resolution of the issue will materially advance termination of the litigation.[35] I cannot see how it would not be more efficient to decide the question raised now—an immediate resolution of this issue will materially advance the resolution of the parties' disputes. Again, looking to this Court's prior case law, leave should be granted in cases where prohibiting review would force an appellant to irrevocably lose an important right, and cases where an appellant will effectively be denied review if the proceeding progresses to its natural end.[36]

If Appellant is not now granted leave to appeal the denial of its motion to convert, when will it have the opportunity to do so? After the Debtor's chapter 7 case is finally resolved, and closed? If the bankruptcy court's order is not reviewable until after a decision on the ultimate distributions in the case, how would judicial economy be better served by hearing an appeal at that point? In the Supreme Court's recent opinion in *Ritzen Group, Inc.*, the Supreme Court noted that it would not want to be in a situation where appellants are forced to wait until after a bankruptcy case is over and seek to redo the litigation all over again.[37] The bankruptcy court's order herein impacts the progression of the bankruptcy case in a major way and impacts all creditors' recovery. An order denying conversion from a liquidating chapter to a reorganizing

---

[34] *In re Schlehuber*, 558 Fed. App'x at 716.

[35] *In re Fox*, 241 B.R. 224, 232 (10th Cir. BAP 1999).

[36] *Id.*

[37] *Ritzen Group, Inc. v. Jackson Masonry,* LLC, 140 S. Ct. 582, 591 (2020) ("Immediate appeal, if successful, will permit creditors to establish their rights expeditiously outside the bankruptcy process, affecting the relief sought and awarded later in the bankruptcy case. The rule Ritzen urges would force creditors who lose stay-relief motions to fully litigate their claims in bankruptcy court and then, after the bankruptcy case is over, appeal and seek to redo the litigation all over again in the original court." (internal quotation omitted)).

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 347 of 516
Case:19-19816-EEB   Doc#:117   Filed:02/16/21   Entered:02/16/21 10:27:16   Page10 of 10

BAP Appeal No. 20-63      Docket No. 17      Filed: 02/16/2021      Page: 10 of 10

chapter is the conclusion of a major issue in the case. Will Appellant be left without remedy if leave is not granted now?

Neither Appellee opposes the Appellant's motion, [38] presumably recognizing the above. I would grant the Appellant's motion for leave to appeal.

---

[38] Johnson Response at 2 ("Debtor does not oppose the relief sought in the Motion"). Trustee Response at 2 ("Trustee does not object to the relief sought in the Motion.").

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 348 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page1 of 118

1

```
 1                  UNITED STATES BANKRUPTCY COURT
                       DISTRICT OF COLORADO
 2

 3   IN RE:                     .   Case No.  19-19816 EEB
                                .                  Chapter 7
 4   ALEXANDER JOHNSON,         .
                                .
 5        Debtor.              .
                                .
 6   . . . . . . . . . . . . . .

 7

 8

 9
        TRANSCRIPT OF ZOOM HEARING ON: EVIDENTIARY HEARING ON THE
10     MOTION TO CONVERT CHAPTER 7 BANKRUPTCY CASE TO CASE UNDER
        CHAPTER 11 OF THE BANKRUPTCY CODE PURSUANT TO 11 U.S.C.
11       706(b) OR, IN THE ALTERNATIVE, DISMISS BANKRUPTCY CASE
        PURSUANT TO 11 U.S.C. 707(b) FILED BY RITCHIE, DILLARD,
12     DAVIES & JOHNSON, P.C. AND The OBJECTIONS THERETO FILE DBY
        THE DEBTOR AND THE CHAPTER 7 TRUSTEE, M. STEPHEN PETERS
13

14

15
             BEFORE THE HONORABLE ELIZABETH E. BROWN
16               UNITED STATES BANKRUPTCY JUDGE

17             WEDNESDAY, DECEMBER 9, 2020
                      DENVER, COLORADO
18

19

20

21

22

23   TRANSCRIPT REQUESTED BY:     ONSAGER | FLETCHER | JOHNSON
     TRANSCRIPT ORDERED ON:       MAY 18, 2021
24   TRANSCRIPT DELIVERED ON:     JUNE 2, 2021
     TRANSCRIPT PRICE:            $4.25 PER PAGE; $501.50
25
```

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 349 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page2 of 118

2

```
 1   APPEARANCES:

 2   For the Debtor:                Kutner Brinen Dickey Riley,
                                       P.C.
 3                                  By:  Jeffrey Brinen
                                    1660 Lincoln Street
 4                                  Suite 1720
                                    Denver, CO  80264
 5                                  (303) 832-2400

 6   For the Chapter 7 Trustee,     Wadsworth Garber Warner
     M. Stephen Peters:               Conrardy, P.C.
 7                                  By:  Lindsay Riley
                                    2580 West Main Street
 8                                  Suite 200
                                    Littleton, CO  80120
 9                                  (303) 296-1999

10   For the Creditor/Movant,       Berken Cloyes
     Ritchie Dillard Davies &       By:  Joshua Sheade
11   Johnson P.C.:                  1159 Delaware Street
                                    Denver, CO  80204
12                                  (303) 623-4357

13   For the U.S. Trustee:          Byron G. Rogers Federal
                                       Building
14                                  By:  Paul Moss
                                    1961 Stout Street
15                                  Suite 12-200
                                    Denver, CO  80294
16                                  (303) 312-7995

17   Court Recorder:                Clerk's Office
                                    U.S. Bankruptcy Court
18                                  721 19th Street
                                    Denver, CO  80202
19
     Transcription Service:         AB Litigation Services
20                                  216 16th Street, Suite 600
                                    Denver, CO  80202
21                                  (303) 296-0017

22

23

24
     Proceedings recorded by electronic sound recording;
25   transcript produced by transcription service.
```

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 350 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page3 of 118

3

|  |  |  |  |  | Page |
|---|---|---|---|---|---|
| OPENING STATEMENT BY MR. SHEADE FOR THE MOVANT |  |  |  |  | 25 |
| OPENING STATEMENT BY MR. BRIENAN FOR THE DEBTOR |  |  |  |  | 28 |
| OPENING STATEMETN BY MS. RILEY FOR CHAPTER 7 TRUSTEE |  |  |  |  | 29 |

MOVANT's

| WITNESS: | Direct | Cross | Re-Direct | Re-Cross |
|---|---|---|---|---|
| ALEXANDER JOHNSON |  |  |  |  |
|   By Mr. Sheade | 33 | -- | 67 | -- |
|   By Mr. Brienan | -- | 58 | -- | -- |
| M. STEPHEN PETERS |  |  |  |  |
|   By Mr. Sheade | 72 | -- | 85 | -- |
|   By Ms. Riley | -- | 77 | -- | -- |

| MOVANT'S EXHIBITS: | MARKED | RECEIVED |
|---|---|---|
| No.  35-38 | -- | 34 |
| No.   2 | -- | 44 |
| No.  39 | -- | 51 |
| No.  22 | -- | 55 |
| No.  23 | -- | 56 |

JOINT EXHIBITS:

| No.  A | -- | 35 |
|---|---|---|
| No.  B | -- | 35 |

|  | Page |
|---|---|
| CLOSING ARGUMENT BY MR. SHEAD FOR THE MOVANT | 95 |
| CLOSING ARGUMENT BY MR. BRINEN FOR THE DEBTOR | 102 |
| CLOSING ARGUMENT BY MS. RILEY FOR CHAPTER 7 TRUSTEE | 109 |
| JUDGE'S RULING | 113 |

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 351 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page4 of 118

4

1          (Time Noted:  9:35 a.m.)

2          THE COURT CLERK:  United States Bankruptcy Court

3    for the District of Colorado is now in session, the Honorable

4    Elizabeth E. Brown presiding.

5          THE COURT:  Good morning, all.  We are here in the

6    case of *Alexander Johnson*, it's Case Number 19-19816, and

7    we're here for a trial on a motion to dismiss or convert.

8          Could we have appearances, please, first from our

9    Movant?

10         MR. SHEADE:  Good morning, Your Honor.  Joshua

11   Sheade on behalf of Ritchie, Dillard, Davies & Johnson, P.C.

12         THE COURT:  Thank you.

13         And for our Debtor?

14         MR. BRINEN:  Good morning, Your Honor, Jeff Brinen

15   appearing on behalf of the Debtor, Alexander Johnson.

16         THE COURT:  Thank you.

17         And I think the U.S. Trustee was going to enter

18   later at closing arguments, if I recall correctly.  All

19   right.

20         MR. MOSS:  Your Honor, Paul Moss on behalf of the

21   U.S. Trustee.

22         THE COURT:  Oh, you are there.

23         MR. MOSS:  I am here, Your Honor.  And I was

24   hoping maybe to address the arguments earlier than later, but

25   I'll let the Court decide if -- I don't have a witness or an

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 352 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page5 of 118

5

 1   exhibit list or anything else at this point, Your Honor, so.

 2              THE COURT:  Just some argument.  Well, we may let

 3   you do your argument, at least.

 4              MR. MOSS:  Thank you.  Thank you.

 5              THE COURT:  Okay.

 6              All right.  So thank you, and let's --

 7              MS. RILEY:  Your Honor?

 8              THE COURT:  Yes?

 9              MS. RILEY:  Lindsay Riley on behalf of the Chapter

10   7 Trustee, Stephen Peters.

11              THE COURT:  Thank you.

12              Have I missed anybody else?

13          (No audible response.)

14              THE COURT:  No.  Okay.

15              All right.  I understand that we have an issue

16   that the law firm has raised about discovery.  Mr. Sheade, do

17   you want to explain that to the Court and everybody?

18              MR. SHEADE:  Yes, Your Honor.

19              Over the process, after the request and the grants

20   of the continue -- or, actually, sorry, prior to the request

21   and grant for continuance, discovery requests where served on

22   the Debtor.  As the status report indicates, a response was

23   provided about a week later with a series of objections for

24   almost every request.

25              There was efforts to resolve those -- those

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 353 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page6 of 118

6

1    objections, those issues with the discovery requests, and

2    counsel for Mr. Johnson, for the Debtor and I, had worked

3    professionally, counsel for the Debtor is quite professional.

4    There was, during those conversations, an agreement for a

5    reduction of time so that the objection of the issues, of it

6    being overbroad no longer existed.

7            So the originally the requests were for from

8    November of 2015, so the four-year look back period was the

9    period of request, and for some request the documents

10   requested ended on the petition date, for other requests they

11   went all the way through to the date of those discovery

12   requests.  So there was a oral agreement arrangement that

13   there would be production of documents and the law firm would

14   no longer seek responses from the interrogatories.  It was

15   only trying to keep it as simple as possible.

16           Then on November 6th, production of documents was

17   made, but what was provided was only documents that were

18   produced to the Chapter 7 Trustee as indicated in that email,

19   and we went back to the argument that these documents are not

20   relevant to this proceeding.  Instead of seeking intervention

21   from the Court, you know, and going through the 7026 process,

22   the law firm perused these documents from third parties

23   through a subpoenas, and the subpoenas were sent, or

24   delivered to Eastman Credit Union and numerous online

25   merchants -- or financial depository companies, such as

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 354 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page7 of 118

7

1  Venmo, PayPal, Square.

2          As the evidence -- as the bank statements, if

3  they're admitted, would show there are a plethora of cash out

4  -- Square cash out payments, and Venmo payments, and PayPal

5  payments.  Well, the law firm still does not have the Square

6  cash out payments.  And I apologize, I don't have the actual

7  amount of the total Square cash out payments, but there's a

8  large amount of the payments and we have no knowledge of who

9  all of these payments went to.  There is roughly 7 to $10,000

10 of cash out payments that have an undisclosed person -- or an

11 undisclosed recipient on these bank statements.

12         On top of it there's a request for tax returns,

13 those were never produced.  There's no other way to receive

14 those.  And there was a request for pay devices to get an

15 understanding of the annual income per month, you know,

16 income, and (unintelligible) income, as of the petition date

17 and as of now for feasibility purposes, and those were never

18 produced.

19         There's a subpoena delivered to PDB Sports, who is

20 the entity who owns the Denver Broncos, their trade name is

21 Denver Broncos Football Club, and they only produced W-2s and

22 the NFL player contract, so there still is no pay advices.

23         These are quite relevant to -- in the mindset of

24 the law firm, many of these requests are quite relevant to

25 the issues before the Court.  A big deal is these pay

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 355 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page8 of 118

8

1    advices, because -- sorry, a big deal is this cash out,

2    because there are roughly $4000 calculated that was

3    transferred to a gentleman by the name of, that's on the bank

4    is Eric, and assumingly they'll be acquired testimony that

5    that's Eric Miller (phonetic), and these undisclosed if they

6    reach an amount subject to a fraudulent transfer suit that's

7    another issue, you know, to be brought up in closing

8    argument.  The paid advices also are a big deal because it,

9    like I said, to reiterate, it's relevant to both Schedule I,

10   J, and feasibility and determination of conversion.

11          THE COURT:  So do I take it you can't proceed

12   today because you don't have these documents?

13          MR. SHEADE:  Well, the law firm is a -- is as

14   prepared as possible to proceed.  The law firm is unsure how

15   the Court would decide these issues.  That's only one issue

16   that was raised in the status report.  But the law firm is as

17   prepared as possible, but would request, unfortunately, a

18   second continuance due to the fact that if these do -- or

19   these issues are relevant and should be brought to the Court

20   as a matter of judicial economy, it's better to bring it all

21   up at once instead of on a piecemeal basis.

22          THE COURT:  Okay.  All right.  Thank you.

23          MR. SHEADE:  Thank you.

24          THE COURT:  Mr. Brinen, you want to respond?

25          MR. BRINEN:  Yes.  Thank you, Your Honor.

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 356 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page9 of 118

9

1          Let me just go back and give the Court a little

2    bit of context.  This goes back to originally there was a

3    meeting of creditors, it was continued, and effectively we

4    had what would have been a Chapter 11 meeting of creditors.

5    It was set aside where there were hours spent with the

6    Trustee, Mr. Peters, questioning Mr. Johnson.  We produced

7    significant amounts of documents.  Mr. Sheade was there, he

8    questioned the Debtor extensively.  And after that, there was

9    no further communications.  There was no motion for a 2004

10   exam, there was nothing regarding any potential objection to

11   discharge, dischargeability, nothing.  We continued to work

12   with the Trustee to provide the information requested and

13   determine were non-exempt assets.

14          Then, Mr. Moss, from the U.S. Trustee's Office,

15   filed a motion for an extension of time to file a motion

16   under 707, 706, for a dismissal of conversion seeking a 60-

17   day extension.  We did not oppose that.  You know, we were

18   fine with the U.S. Trustee having the time to completely

19   investigate the case and decide what they wanted to do.

20          After that 60-day deadline passed, Federal

21   Bankruptcy Rule 1017-1, counsel for the Movant filed a motion

22   to join in the SP's motion.  However, the 707 motion was

23   late, the 706 motion was not.  We had a preliminary hearing

24   before the Court and at that hearing the Court came very

25   close, I believe, to deciding that, yes, the deadline was

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 357 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page10 of 118

10

1    missed and, you know, the order that provided the U.S.

2    Trustee with an extension of time pertained only to the U.S.

3    Trustee and not to any other party.

4            At the time, Mr. Sheade indicated that he had seen

5    a case that would somehow allow him to piggyback and relate

6    back in some way to the U.S. Trustee's motion, but that he

7    could not find that case.  And so the Court allowed him an

8    opportunity to bring that up again if he could find the case.

9    As best I could tell, no case has been cited that would

10   enable the Movant to take advantage of the U.S. Trustee's

11   timely motion as far as 707 is concerned.

12           And the Court further stated that my understanding

13   was that the scope of this hearing was rather narrow.  It

14   came down to whether conversion of the Chapter 11 was going

15   to be as the case law states, whether it would inure to the

16   benefit of all parties, including the Debtor, and we set that

17   hearing.  And after that, I received extensive requests for

18   discovery from the Movant that would have been in the nature

19   of an extensive Rule 2004 exam.  Going back years of history

20   and documents, it really had nothing to do with what we're

21   here for today.

22           For the most part, based on the case law, the

23   statutes, and what we're looking at, the question is more

24   prospective than retrospective.  Of course the Debtor's

25   current income and more recent income and the trajectory into

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 358 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page11 of 118

11

1   the future is relevant, but what the Debtor spent on PayPal

2   two years ago, or Venmo, I think the request was so far over

3   the top that we just couldn't come to an agreement

4   ultimately.  We tried to limit the scope, but it was still,

5   it was too much.

6           Now, there's nothing complicated about triggering

7   a dispute, a discovery dispute, and having a hearing before

8   the Court to get that resolved.  For reasons, whatever reason

9   Movant decided, instead of triggering a discovery dispute to

10  seek documents from third parties.  That was their choice,

11  they had a right to do that.  But I still believe that the

12  discovery was over the top.

13          I think that the, as I say, the accent's on the

14  wrong (unintelligible) here.  You know, we're not -- we're

15  not looking at discharge, dischargeability, fraudulent

16  transfers.  We're looking at whether this case should be

17  converted to a Chapter 11 or whether the Debtor should be

18  entitled to a (unintelligible) Chapter 7.

19          The statute is very clear, 706(b), that the Court

20  may -- it's really within the sound discretion of the Court.

21  The Court may convert the case from Chapter 11, the Court may

22  determine that leaving the case in Chapter 7 is where it

23  belongs.  It's based on noticing a hearing and the cases sort

24  of lay out some of the factors that it involved.

25          So my belief, and I submit, Your Honor, that --

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 359 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page12 of 118

12

1  that I don't know where Movant got off track here, but I

2  think they got way off track.  If they wanted to file a 2004

3  exam, they certainly could have.  If they wanted to seek an

4  extension to get the discharge and dischargeability, they

5  certainly could have.  The U.S. Trustee's Office had 60 days

6  to investigate, and did, and determined that they weren't

7  going to seek conversion or dismissal.

8            Mr. Peters has investigated extensively, and we've

9  been working together.  I don't know exactly what Movant's

10 agenda is here, except to steer the Debtor, make the Debtor

11 look bad, try to raise issues with respect to older

12 transactions, that's not going to help the Court in terms of

13 understanding whether the Debtor should be forced into a

14 Chapter 11 against its will for a five-year payment plan.

15 That depends upon the Debtor's perspective income, expenses,

16 and other factors in relation to that, and the balancing

17 between the issue of the Debtor's -- what Congress envisioned

18 as a fresh start versus the Bankruptcy Code's, you know,

19 desire for that creditors be paid as much as reasonably

20 possible, and that's what the Court's going to have to

21 consider.

22            These historical reams of documents, I submit,

23 Your Honor, are you could call them a red herring, they're

24 just not relevant, and at least not to the hearing we have

25 scheduled for today.

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 360 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page13 of 118

13

1          Thank you.

2          THE COURT:  Okay.  Thank you.

3          Let me hear from Mr. Moss.  And you don't have to

4    respond on the discovery dispute, but just on your own what

5    you wanted to tell the Court.

6          MR. MOSS:  Thank you, Your Honor.

7          To provide some background on the U.S. Trustee's

8    involvement in Debtor's case.  Early on, we took a look at

9    the Debtor's pleadings, the Schedules statements, I appeared

10   at the Debtor's 341 meeting, we questioned the Debtor, we

11   reviewed documents from the Debtor, had discussions with the

12   Chapter 7 Trustee, and also had discussions with counsel for

13   Ritchie, Dillard, Davies & Johnson.

14         And on February 18th, the U.S. Trustee requested

15   an extension of time to file a motion to dismiss and/or a

16   complaint to deny discharge.  It wasn't regarding the 706(b)

17   issue, Your Honor, I don't think that there's really a

18   definite deadline in my mind for that, but it was only in

19   regard to the 706(b) -- I'm sorry, the 707(b) and the 727

20   issues.  That motion for extension of time was filed timely

21   and the U.S. Trustee obtained an order on March 18th, at

22   Docket 62, which allowed 60 days additional time for the U.S.

23   Trustee to evaluate and examine the issues.

24         During that period of extension the U.S. Trustee

25   had discussions again with the Chapter 7 Trustee, Debtor's

Case 1:22-cv-00332-REB    Document 9-1    Filed 03/03/22    USDC Colorado    Page 361 of 516
Case:19-19816-EEB    Doc#:142    Filed:06/02/21    Entered:06/02/21 10:25:25    Page14 of 118

14

 1    counsel, counsel for Ritchie, Dillard, and, you know, the

 2    U.S. Trustee vetted legal and factual issues.  There's a lot

 3    of those issues in this case.  Whether the debts are

 4    primarily consumer in nature or not, whether the creditor's

 5    proof of claim was disputed or not, I would note that it is,

 6    whether or not there were assets available for distribution

 7    in this case, and I believe there's at least $100,000 or more

 8    that's available for distribution in this case, and

 9    importantly whether interested creditors were representing

10    their own interest in this case.

11            And we ultimately determined to allow the deadline

12    of April 20th to pass.  There's no mistake on the part of the

13    U.S. Trustee in allowing it to pass, there was no inadvertent

14    step or any mistake in allowing that deadline to pass.  It

15    was -- it was vetted fairly thoroughly at that point, Your

16    Honor.

17            I would note in the case there are only two proofs

18    of claim on file in this case, Your Honor.  There's a proof

19    of claim by Eastman Credit Union of $16,800, and there is one

20    from Ritchie, Dillard, Davies & Johnson for $902,908, and

21    both of these claims are reflected on EF, and they both have

22    standing to pursue their own issues and their own remedies in

23    this case, Your Honor.

24            And Richard -- Ritchie was -- I'm sorry, it's a

25    lot of words, Your Honor, Ritchie, Dillard, Davies & Johnson

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 362 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page15 of 118

15

1    ultimately determined it would file a motion to convert

2    Debtor's Chapter 7 case, and the alternative theory was the

3    707(b) issue, Your Honor.

4            And the U.S. Trustee takes no position on the

5    conversion to Chapter 11.  Should the Court determine that

6    the case convert, we'll set the 341 meeting and we'll move on

7    with that process.  We're not requesting the Court convert

8    the case, but we don't oppose what -- what the -- when I say

9    "the creditor," Your Honor, I'm referring to Ritchie,

10   Dillard, Davies & Johnson, we don't oppose what the

11   creditor's requesting as far as conversion.

12           The U.S. Trustee is not requesting that this Court

13   allow an intervention in this matter under Rule 7024, that's

14   not contemplated under contested matters under Rule 9014(c).

15   We're not requesting substitution of parties under Rule 7025,

16   that appears inapplicable in this case.

17           And regarding the creditors' 7017 argument, as far

18   as the real party in interest, Your Honor, the U.S. Trustee's

19   review of that is that there's nobody that is objecting to

20   the creditor, Ritchie, Dillard, as not being a real party in

21   interest, Your Honor.  And under Rule 7017, I believe it's

22   inapplicable in this matter.  There's been no objection

23   raised by the defendant.  In this case the Debtor, as

24   required under Rule 7017(a)(3), that the Court dismiss this

25   matter for failure to prosecute in the name of the real party

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 363 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page16 of 118

16

1   in interest.

2            There's a case that the creditors cited in Docket

3   104, and that case was *In re Integrated Agri, Incorporated*,

4   and that's found at 313 B.R. 419, and it's a bankruptcy case

5   from the Southern District of Illinois.

6            And at 426 of that case, which the creditors

7   cited, it states, "The real party in interest is" -- I'm

8   sorry.  "The real party in interest principally is typically

9   raised by the defendant defensively who's concerned about the

10  possibility of being subjected to a second suit brought by a

11  person having a substantive interest in the cause of action

12  who may claim not to be bound by the judgment in the first

13  suit."

14           Your Honor, the U.S. Trustee early on made the

15  decision to allow its deadlines to pass and made

16  determinations.  We're not asking for ratification, Your

17  Honor, as we don't plan to be bound by the Court's rulings in

18  this case.  And we're not asking to join it, because we

19  didn't file a motion to dismiss or convert, and we didn't

20  present a witness or exhibit list or anything else regarding

21  today.

22           There is a Tenth Circuit case, *Scheufler versus

23  General Host Corporation*, and that's 126 F.3d 1261, it

24  addresses Rule 17(a) and the real party in interest rule at

25  1270, and states, "The function of Rule 17(a) is simply to

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 364 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page17 of 118

17

1   protect the defendant against a subsequent action by the

2   party actually entitled to recover and to ensure generally

3   that the judgment will have proper effect res judicata."

4          Also, it seems to be required under Rule 17 that

5   one has to show that the meaning of one party, rather than

6   the real party in interest, must be a mistake, or for which a

7   substitution for the real party of interest will cure.

8          And here, Your Honor, there's no mistake that the

9   Movant made itself, it's representing its own interest, it's

10   asking for conversion, Movant is the real party in interest.

11   And it seems as if, though, trying to -- it's unclear to me

12   how Rule 17 applies in this case, Your Honor.  As I said, the

13   U.S. Trustee's not asking to substitute in, to intervene, to

14   ratify, or to join, and the extensive time was only as to the

15   U.S. Trustee and we made those determinations at that time

16   appropriately.

17          I don't know if that, perhaps, states a little bit

18   too much as far as what the U.S. Trustee's point is, Your

19   Honor.

20          There are issues with the case that we looked at

21   factually and legally in our determinations, and some of

22   those proprietary discussions and issues as to why we did not

23   go forward are probably best not discussed in open court, as

24   far as our deliberative process.

25          THE COURT:  Sure.

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 365 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page18 of 118

18

1          MR. MOSS:  But there was a -- there was an

2    understanding as far as the creditor here taking steps that

3    they saw fit to move forward, Your Honor.

4          That's all I have, Your Honor.  Unless the Court

5    has questions.

6          THE COURT:  Thank you.  I do not.  Thank you very

7    much.

8          Ms. Riley, anything you'd like to add at the

9    beginning?

10          MS. RILEY:  I don't have any comments on what Mr.

11    Moss just -- just explained.

12          But going back to what Mr. Brinen had said.  You

13    know, we do echo his concerns, and we would oppose a

14    continuance of this hearing any further.

15          My understanding of the scope of today was the

16    same as Mr. Brinen's, that it was going to be narrowed in

17    scope to whether or not conversion would be in the best

18    interest of all the parties in interest, which includes, of

19    course, the Debtor.

20          I think that the documents Mr. Sheade has been

21    seeking from the Debtor are not relevant to those issues, to

22    the determination of those issues before the Court today.  I

23    think the timing of all of this coming up, you know, the week

24    of trial is a bit suspect in my mind.

25          Requests were also made of the Chapter 7 Trustee

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 366 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page19 of 118

19

1    for the production of documents here within the last week.  I

2    don't understand, you know, why the -- why wait until the

3    very last minute to seek those things if not in some attempt

4    to distract or delay.  And so I would just state that we

5    would oppose a continuance at this time.

6           And on the issue of dismissal, I think the other

7    parties have already spoken and explained thoroughly the

8    reasons why dismissal under 707(b) is inappropriate based on

9    the untimeliness of the motions.

10          THE COURT:  Okay.  Thank you.

11          All right.  Mr. Sheade, do you want to respond?

12          MR. SHEADE:  Yes, please, Your Honor.

13          So the ratification issue, first off, we'll start

14   with the 707(b).  That ratification issue is the only

15   available avenue for the creditor to be able to pursue any --

16   that motion to dismiss, because the -- there is case law that

17   says that 70 -- that Rule 17 does relate back to the original

18   filing, which would be April 20th, for the real party in

19   interest, and it does defeat any objection or request for

20   dismissal based on factual limitations.  But that's up to the

21   U.S. Trustee, and he's spoken on that, I'm not going to make

22   any argument on that.

23          I do understand that the rules do not call for

24   excusable neglect or an extension of the 707(b) deadline, so

25   I'm not going to raise my personal -- personal matters that

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 367 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page20 of 118

20

1  began in early February, late January, which has caused

2  issues.  And no 2004, as Mr. Brinen discussed.  I was

3  traveling a lot to Chicago for personal matters, no

4  extensions, and no joinder, again personal matters.

5          So looking to the basis of this -- of this

6  hearing, my understanding was it also -- based on the

7  discovery requests, the reason for the discovery requests,

8  was based on the issue of whether or not the Court should

9  convert this case to a Chapter 11.  The discovery requests

10  were based on -- on the feasibility of plan payments based --

11  with pay advices and tax returns and assets of the --

12  foreseeable assets of the estate based on fraudulent transfer

13  and preference payments that would be pursued against

14  individuals that received transfers that are inside -- are

15  either statutory or non-statutory, so --

16          THE COURT:  Let me ask a question about that,

17  because in Chapter 7, or in Chapter 11, the preference of

18  fraudulent conveyances can be recovered, so why would that

19  tip the scales towards conversion?  How is it relevant to

20  that specific issue?

21          MR. SHEADE:  Because a in a Chapter 11 it would be

22  relevant to the liquidation analysis, but the Debtor as a

23  debtor-in-possession taking on these responsibilities of the

24  trustee, can pay that amount through future income instead of

25  pursuing claims against his own friends and family, both

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 368 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page21 of 118

21

1    insiders and non-insiders.  And if these transfers are -- are

2    for purposes of these individuals not having access to funds,

3    then if the Debtor is making transfers, is it plausible that

4    he would be paying off -- paying for legal fees to defend

5    those cases?  Would he be paying the trustee for those

6    amounts where that would be a benefit to the Debtor to have

7    it in a Chapter 11, because that could be made over a 60-

8    month payment plan instead of paying it to the trustee, the

9    Chapter 7 Trustee, is the theory.

10             THE COURT:  Okay.

11             And, Mr. Brinen, why wouldn't pay stubs in

12   particular be relevant to feasibility?

13             MR. BRINEN:  I think we did provide pay stubs, and

14   those pay stubs are exhibits in among Mr. Sheade's list, and

15   under the --

16             THE COURT:  Okay.

17             MR. BRINEN:  -- (unintelligible) proceed.  So I

18   think pay stubs are relevant --

19             THE COURT:  Okay.

20             MR. BRINEN:  -- to show that there is current

21   income.

22             THE COURT:  Okay.  Very good.

23             All right.  Then the Court is ruling that the only

24   scope -- the scope of this hearing will be limited to the 706

25   aspect, and that the discovery sought does not appear at this

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 369 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page22 of 118

22

1  time to the Court to be relevant.  So we're going to go

2  forward today, and I'm glad that Mr. Sheade said you were

3  prepared to do so.

4          Mr. Sheade.

5          MR. SHEADE:  Your Honor, may I just state that the

6  exhibit list does state pay advices, with the expectation

7  that the law firm would be receiving those from the -- the

8  Denver Broncos or the Debtor prior to this hearing, but that

9  is not correct.  The law firm has not received the requested

10 pay advices.  The law firm has received W-2s for 2018 and

11 2019 which were provided to the Debtor, the Trustee, and the

12 Court, but there are no pay advices, nor are there tax

13 returns.

14         If I may mention --

15         THE COURT:  Tax returns would be his past income,

16 but you don't have a 2020 pay stub?

17         MR. SHEADE:  No, Your Honor.

18         THE COURT:  Mr. Brinen?

19         MR. BRINEN:  That was provided to anybody that

20 wanted it at the meeting of creditors.  I mean, we know

21 exactly what his -- we could certainly testify about his --

22 his income.  He's got his current contract which states what

23 his compensation is.  I think that's also part of the

24 evidence, as well.  So I don't recall, Your Honor.

25         The fact is that there was -- there was so many

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 370 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page23 of 118

23

 1   documents requested that some got produced, some did not get

 2   produced, and there was never any kind of discovery dispute

 3   that was triggered, so I guess we didn't get to that.  I

 4   thought he had the pay advices.

 5            THE COURT:  Can you quickly --

 6            MR. BRINEN:  (Unintelligible) --

 7            THE COURT:  -- retrieve that and email it to

 8   Counsel?

 9            MR. BRINEN:  When we take our first -- I can -- we

10   take a break I would have to ask my client, Mr. Johnson, if

11   he's got those available electronically.

12            THE COURT:  Why don't we take a five-minute break

13   now and let you do that.

14            MR. BRINEN:  Very good.

15            THE COURT:  Because that does seem very relevant

16   to the Court.

17            MR. BRINEN:  Okay.

18            THE COURT:  Okay.

19            MR. MOSS:  Your Honor?

20            THE COURT:  Yes?

21            MR. MOSS:  Your Honor, for the U.S. Trustee, I

22   have other matters this afternoon with Judge Rosania, does

23   the Court or any party objected to the U.S. Trustee dropping

24   off the evidentiary hearing at this point, Your Honor?

25            THE COURT:  Any parties object?

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 371 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page24 of 118

24

1          (No audible response.)

2              THE COURT:  Not hearing that, and the Court does

3  not.  So thank you, Mr. Moss.

4              MR. MOSS:  Thank you, Your Honor.  Thank you,

5  everybody.  Take care.

6              THE COURT:  All right.

7              THE COURT CLERK:  The Court is now in recess.

8              THE COURT:  For five minutes.

9          (Recess from 10:07 a.m. until 10:18 a.m.)

10             THE COURT CLERK:  Court is reconvened.

11             THE COURT:  Okay.  Mr. Brinen, did you have any

12  luck?

13             MR. BRINEN:  Yes, Your Honor.  And I apologize for

14  the delay, but Mr. Johnson sent me his most recent pay stub,

15  which I put into a PDF and forwarded to the Court, Ms. Riley,

16  and Mr. Sheade.

17             THE COURT:  Excellent.

18             Mr. Sheade, have you gotten it yet?

19             MR. SHEADE:  Yes, Your Honor.  I received the

20  screenshot.

21             THE COURT:  Okay.  Very good.  Then let's go

22  forward.  If we need opening statements, let's do them very

23  briefly.

24             Mr. Sheade, do you want to give any opening?

25             MR. SHEADE:  I can -- I can limit and give a brief

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 372 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page25 of 118

25

1    of what I've prepared, a brief opening statement.

2                THE COURT:  Okay.

3                  OPENING STATEMENT BY MR. SHEADE

4                  ON BEHALF OF CREDITOR/MOVANT

5                MR. SHEADE:  May it please the Court.  This comes

6    -- let me -- I do want to address in opening real quickly one

7    of the issues that was brought up in the status report

8    because it is pertinent here and it deals with the Chapter 7

9    Trustee.

10               The 704 requests were not made to harass, just

11   like the discovery requests were not made to harass.  It was

12   (unintelligible) out of just a surprise to the creditor, as

13   their objection originally was solely based on dismissal not

14   on conversion.  There are no transcript, no recordings, no

15   writing of the communication on the dispute in

16   (unintelligible) opposition to conversion.

17               And what the evidence also will show is that --

18               If I may call Ritchie, Dillard, Davies & Johnson,

19   P.C. through the remainder of this hearing just the "Law

20   Firm"?  Or, and if everybody else would like to --

21               THE COURT:  Yeah.

22               MR. SHEADE:  -- call them the "Law Firm" for --

23               THE COURT:  Of course.

24               MR. SHEADE:  -- simplified sake.

25               THE COURT:  Okay.

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 373 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page26 of 118

26

1          MR. SHEADE:  What will also come out in the

2    testimony is the Debtor, Mr. Johnson, has paid all other

3    creditors post-petition, including the other unsecured

4    creditor, the unsecured debt of Eastman Credit Union, which

5    he's obviously voluntarily allowed to do, but this is a two

6    party dispute, and essentially the Trustee challenging the

7    motion to convert, since 704 provides that their duty and

8    responsibility is to the benefit of all parties, you know, of

9    the estate.

10         So we have one administrative expense claim with

11   two secured debts and two unsecureds.  The secured debts have

12   been reaffirmed and are being paid, the other unsecured debt

13   is being paid, the administrative expense, the current

14   monthly income on IMJ, if it's accurate, there's questions of

15   whether it's accurate, but if it's accurate the $3000 a month

16   on 60 months would pay, I hope, the administrative expenses

17   in full.

18         So essentially the Law Firm sees this matter as

19   the Law Firm fighting with itself, since the Law Firm is the

20   only unprotected party based on the proof of what's being

21   paid to secureds and unsecureds, and what's available for a

22   Chapter 11 plan.  So the motives of the Trustee are -- the

23   Law Firm does question the motives of the -- of the Trustee

24   here.

25         But turning, though, to the motion.  This hearing

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 374 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page27 of 118

27

1  concerns, you know, whether the Court should convert this

2  case.  As discussed within the supplemental briefs, the

3  rationale is that since there are no specific grounds of

4  conversion the Court should consider anything relevant that

5  would further the rules of the bankruptcy.

6         Should the Court find the statute vague, the Court

7  should really weigh both what inures to, not the best

8  interest as Ms. Riley stated, but as the legislative history

9  says what inures, as Mr. Brinen correctly said, what inures

10 to the benefit of the parties.  And I think that is very

11 important to point out, that it's not best interest.  There's

12 not one party is better than anyone else, it's what inures to

13 the benefit of all parties.  And that should be afforded

14 equal weight with the fact that the -- that CEPA left 706(b)

15 alone, they could have added a veto to 706(b), and the

16 purpose of that CEPA was, as legislative history points out,

17 was to cure any loopholes of consumer filings and it was a

18 desire for debtors to take a responsibility for paying their

19 debt if they have the means.

20         Now, the consumer (unintelligible) is not consumer

21 issue, is really, in the eyes of the law firm, a loophole.

22 And 706(b) is a -- is a means by keeping it simple and for

23 any party in interest to make -- to bring it up to thwart the

24 use of this loophole when we do find a debtor can pay his

25 debts, either in a 13, or an 11.  Here, it would have to be

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 375 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page28 of 118

28

 1   an 11 based on the jurisdictional limits.

 2            And with that, the Law Firm will demonstrate how

 3   this inures to the benefit if we're looking not at the statue

 4   strictly but towards all the legislative history, how it

 5   inures to the benefit of the -- of the Debtor.

 6            THE COURT:  Okay.  Thank you.

 7            And any opening, Mr. Brinen?

 8            MR. BRINEN:  Yes, just briefly, Your Honor.

 9                OPENING STATEMENT BY MR. BRINEN

10               ON BEHALF OF DEBTOR, MR. JOHNSON

11            MR. BRINEN:  Your Honor, I believe what the

12   evidence will show here today is a debtor that's been acting

13   in good faith.  Mr. Johnson, you will hear, started playing

14   football, organized football, as a young boy, and his goal

15   has always been to make it to the professional level.  He won

16   a scholarship to the University, he completed the University,

17   and due to some legal problems he was delayed in getting to

18   the NFL for a period of years.

19            And it's unfortunate that that's how it works

20   because, you know, what you'll hear is that at his age, which

21   he's two days from his 29th birthday, he's rather beyond

22   middle aged for -- for a professional football player, he's

23   on the older side.  And you'll hear him talk about what he is

24   likely to end up with the next year, which because of his

25   age, is a one-year contract.  And that if he were to be

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 376 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page29 of 118

29

1    injured this year that it could be career threatening to him,

2    and that if he gets injured next year it could eliminate any

3    further contracts.

4            So you will hear evidence about the problem with

5    stability of his income and his career, and that he has

6    dependents.  And that you will hear evidence from Mr. Peters

7    about what he has done in this case, the nonexempt funds he's

8    collected thus far, which are substantial, and that those

9    funds will be distributed out to creditors as required by the

10   Bankruptcy Code.

11           In the end, I believe the Court will see that

12   based upon the unique nature of Mr. Johnson's profession and

13   career, that a Chapter 11 just doesn't make sense.  It's not

14   in the, it's certainly not in his best interest, probably not

15   in the best interest of the parties in general.

16           Thank you, Your Honor.

17           THE COURT:  Thank you.

18           Ms. Riley.

19               OPENING STATEMENT BY MS. RILEY

20           ON BEHALF OF THE CHAPTER 7 TRUSTEE

21           MS. RILEY:  Yes.  I would echo what Mr. Brinen

22   just said about what I expect the testimony will establish

23   today from the Debtor and from Mr. Peters.

24           I would like to address the implications, or

25   accusations that were made, in the status report, in this

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 377 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page30 of 118

30

 1   email correspondence, regarding the Trustee's motives in this

 2   case.

 3           The Trustee is obligated under Rule 704(a)(1) to

 4   administer the case in a way that benefits all parties and

 5   interests.  And actually, I think the language actually says

 6   "In the best interest of parties in interest."  That doesn't

 7   include just the creditors, it also includes the debtor.

 8           Mr. Peters, I mean, first of all, the accusations

 9   are as baseless and irrelevant as they are offensive.  Mr.

10   Peters has administered this case in the best interest of all

11   the parties, and he will testify today that based on that --

12   based on his experience and the unique circumstances in this

13   case, you know, given the uncertainty of the Debtor's

14   continued employment with the Denver Broncos, it is in the

15   best interest of the parties, the creditors and the Debtor

16   included, that this case remain in a Chapter 7 so that they

17   can receive their distributions as the roughly $130,000 in

18   nonexempt assets that he has gathered to date.

19           THE COURT:  Okay.  Thank you.

20           MS. RILEY:  And, Your Honor, one other thing.  I

21   don't know how you're planning on handling the objection that

22   was filed to exhibits before, if that's something you want to

23   handle before we get into --

24           THE COURT:  Well, is it a -- I mean, you tell me.

25   Usually I have to hear it in context.  So is there some

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 378 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page31 of 118

31

1    overarching argument that you think we ought to address ahead

2    of time?

3                 MS. RILEY:  Yes.  I think it makes sense to

4    address.  So the objection, the joint objection that we filed

5    has to do with the untimeliness of the exchange of exhibits.

6                 THE COURT:  Okay.

7                 MS. RILEY:  And so on the basis of untimeliness

8    alone, I would argue that those exhibits are not -- that they

9    should be excluded entirely.  We have, since we filed the

10   objection, received the exhibits, but we still haven't

11   received the full suite of exhibits.  There's a handful that

12   are still outstanding, and a few of them don't even line up

13   with the Movant's witness and exhibit list.  And so in our --

14   in our objection we reserve the right to assert any further

15   objections because we haven't seen them yet.  So I would --

16                THE COURT:  But I kind of have to know as we go

17   through each one, you know, whether you've seen the document

18   from another source before, what your prejudice is by not

19   having it until now.  Things that haven't been produced as of

20   today will be excluded for certain, but --

21                MS. RILEY:  Uh-huh.

22                THE COURT:  -- things that you got late, you'll

23   need to show me prejudice when each one comes up.

24                MS. RILEY:  All right.  Understood.

25                THE COURT:  Okay.  Okay.

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 379 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page32 of 118

32

 1              All right.  So let's have Movant call your first
 2   witness.
 3              MR. SHEADE:  Yes, Your Honor.  The Law Firm would
 4   like to call Mr. Alexander Johnson, the Debtor.  And that
 5   would be our sole witness, Your Honor.
 6              THE COURT:  Okay.
 7              Mr. Johnson, is he on our screen?
 8              MR. JOHNSON:  Yes, ma'am.  I'm here.
 9              THE COURT:  Very good.  Okay.  The Court's Clerk
10   will have you raise your right hand and she'll administer the
11   oath.
12              THE COURT CLERK:  Do you affirm that the testimony
13   you're about to give in this proceeding shall be the truth,
14   the whole truth, and nothing but the truth, under penalties
15   of perjury?
16              MR. JOHNSON:  Yes, ma'am.
17              THE COURT:  Okay.  Thank you.
18         Whereupon,
19                         ALEXANDER JOHNSON
20         was duly sworn.
21              THE COURT:  Start off by stating your name.  And I
22   don't think you're going to need to spell it, but maybe
23   Johnson is sometimes E-N or O-N, so --
24              THE DEBTOR:  Oh.
25              THE COURT:  I'm doing that for the benefit of any

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 380 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page33 of 118

33

1   court reporter in the future.

2           THE DEBTOR:  All right.  It's Alexander Johnson.

3   Johnson is J-O-H-N-S-O-N.

4           THE COURT:  Okay.  Thank you.

5           Okay.  Go ahead, Mr. Sheade.

6                      DIRECT EXAMINATION

7       BY MR. SHEADE:

8       Q.    Good morning, Mr. Johnson.  My name is Joshua

9   Sheade and I represent the law firm Ritchie, Dillard, Davies

10  & Johnson, P.C.  Is it correct you are the Debtor who filed a

11  Chapter 7 bankruptcy case on November 13th, 2019?

12      A.    Yes, sir.

13          MR. SHEADE:  Your Honor, as a preliminary matter,

14  I would respectfully request permission to treat Mr. Johnson

15  as a hostile witness.

16          THE COURT:  Or an adverse witness?

17          MR. SHEADE:  As an adverse witness, yes, Your

18  Honor.

19          THE COURT:  Anybody object to that?

20          MR. BRINEN:  No objection from the Debtor.

21          THE COURT:  Okay.  All right.  Then that's

22  allowed.

23          MR. SHEADE:  Also, Your Honor, one other

24  preliminary matter before I get into my questions with Mr.

25  Johnson.  Before I need to authenticate any of the Schedules

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 381 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page34 of 118

34

1   or Statements or the declarations that have been filed within

2   this bankruptcy case, I would seek judicial -- for the Court

3   to take judicial notice of:  Exhibits 35, which is the

4   volunteer petition; Exhibit 36, which is Schedule I income;

5   Exhibit 37, Schedule J expenses; and Exhibit 38, Schedules --

6   it's the declaration.

7           THE COURT:  Okay.  Any -- I mean, judicial notice

8   technically is just that something's been filed, to the truth

9   of what's said in it.  So are you offering those for

10  admission as to the whole document, not just that it was

11  filed?  If so, you should move for that.

12          MR. SHEADE:  Yes, Your Honor.  I'm moving for

13  admission of the whole document so far.

14          THE COURT:  Any objection to Exhibits 35 through

15  38?

16      (No audible response.)

17          THE COURT:  Okay.  Not hearing any, they are

18  received.

19      (Movant's Exhibits 35, 36, 37, and 38 were admitted

20  into evidence.)

21          THE COURT:  Go ahead.

22          MR. SHEADE:  And also, sorry, Your Honor, I would

23  also have no objection, so we can get this out of the way, to

24  Schedules A and B as disclosed --

25          THE COURT:  What are they?

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 382 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page35 of 118

35

1          MR. SHEADE:  Those would be -- sorry, Exhibit A is

2   Schedule A and B, that is the joint exhibit, and Exhibit B is

3   the Statement of Financial Affairs.

4          THE COURT:  Okay.  Any objection to those, A and

5   B?

6          MR. BRINEN:  No objection.

7          MS. RILEY:  Judge, are you saying that you don't -

8   - you won't object to our offering them, correct?

9          MR. SHEADE:  That is correct.

10         MS. RILEY:  All right.

11         MR. SHEADE:  They are allowed to be admitted.

12         MS. RILEY:  Thank you.

13         MR. SHEADE:   If the Court allows.

14         MS. RILEY:  Thank you.

15         THE COURT:  Okay.  So they're received.

16       (Debtor's Exhibits A and B were admitted into

17   evidence.)

18         MR. SHEADE:  Okay.  Well, if I may have 30 seconds

19   just to cross out a series of questions, Your Honor?

20         THE COURT:  Okay.

21        (Brief pause)

22         MR. SHEADE:  Okay.

23        (Brief pause)

24         MR. SHEADE:  Okay.

25        (Brief pause)

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 383 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page36 of 118

36

 1              THE COURT:  I only have this scheduled for this
 2   morning, so.
 3              MR. SHEADE:  I'm going to be -- I'm sorry.
 4   There's only one left, I'm try --
 5         (Brief pause)
 6              MR. SHEADE:  Okay.  I'm going to share my screen.
 7         BY MR. SHEADE:
 8         Q.   Mr. Johnson, are you able to see the documents
 9   identified as Exhibit Number 38?  Am I sharing this
10   correctly?
11         A.   Yes, sir.
12         Q.   And can you -- I'm going to, if you don't mind,
13   I'm going to zoom in to this document for you to read more
14   carefully.  Above your signature can you please read that
15   sentence out loud?
16         A.   "Under penalty of perjury I declare that I have
17   read and summary and schedule filing with this declaration
18   and that they are true and correct."
19         Q.   And did you -- did you sign this document on
20   November 25th, 2019?
21         A.   I don't -- I don't see my signature there nowhere.
22   I see my name --
23         Q.   So you --
24         A.   I see my name right there, but I don't see my --
25   is this the bankruptcy filing signing document?

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 384 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page37 of 118

37

1      Q.   Yes.

2      A.   All right.  But I -- I was looking at the

3  document, but I ain't seen no signature, if that's just the

4  recopy of something.  But I know I filed -- I signed the

5  bankruptcy document when -- when I was in office -- when I

6  went in -- went into office at Mr. Jeff's.

7      Q.   Okay.  And you went into your counsel's office to

8  sign this on or about November 25th, 2019?

9      A.   I -- I can't -- I can't remember the exact date,

10  but I know I signed the documents from my bankruptcy.

11      Q.   Okay.  Give me one second, I'm going to --

12      (Brief pause)

13      Q.   Mr. Johnson, can you see the document marked

14  Exhibit A at the bottom, right-hand corner?

15      A.   Your document is a little away.

16      Q.   It's -- okay, here we go.  Now, can you see it?

17      A.   Yes, sir.

18      Q.   Very good.  And can you -- well, at the top of

19  this first page of Exhibit A, can you please tell me the date

20  that this document was filed?

21      A.   11-25-19.

22      Q.   So --

23      A.   Is that the date you're looking at?

24      Q.   Yes, sir.  So that was the same date that you --

25  that your signature is affixed to that declaration, the prior

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 385 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page38 of 118

38

1  document, correct?

2       A.   I don't see no signature.  I -- I assume so, but

3  I'm -- I'm not sure what you're asking right now.

4       Q.   That document is the same date as this document,

5  correct?

6       A.   11-25-19, that is the same date.

7       Q.   So you state under penalty of perjury that there -

8  - that this document is true and correct, is that right?

9       A.   I'm not sure of your question.  Can you say that

10 again, sir?

11      Q.   Okay.  I will move on.  I will -- no reason to

12 answer.

13           Okay.  Now, we're going to turn to Page -- let's

14 see, Page 4 of this document.  And on this -- on Page 4,

15 under Line 17 --

16      A.   All right.

17      Q.   -- you indicate that you have a checking and

18 savings account with Eastman Credit Union, is that correct?

19      A.   I do.

20      Q.   And an investment account with UBS Financial

21 Services, is that correct?

22      A.   I have a banking account with UBS.

23      Q.   Okay.  And do you -- so while we're on Schedule AB

24 I might as well bring this up.  Under Line 18, you state that

25 you have an ownership interest in CB45, is that correct?

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 386 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page39 of 118

39

 1        A.   Yes, sir.

 2        Q.   Do you have an ownership interest in any other

 3   companies?

 4        A.   I do, yes, sir.

 5        Q.   And what would that company be?

 6        A.   Bueno -- Bueno Besta (phonetic) Bestia Principal.

 7             THE COURT:  Can you restate that?

 8             MR. SHEADE:  Can I ask you --

 9             THE WITNESS:  Yeah.  Bestia Principal.

10   BY MR. SHEADE:

11        Q.   Can you spell that for her, for her, please?

12        A.   Best would have been, I don't know maybe --

13             THE COURT:  It's the principal --

14             THE WITNESS:  -- (unintelligible) --

15             THE COURT:  -- that we're confused on, I think.

16             THE WITNESS:  Oh, right.

17             MR. SHEADE:  Your Honor, if I -- if I may?  I

18   might be able to help.

19             THE COURT:  Okay.

20        (Brief pause)

21             MR. SHEADE:  Okay.

22        (Brief pause)

23        BY MR. SHEADE:

24        Q.   Okay.  Mr. Johnson, can you see my screen again?

25        A.   Yes, sir.

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 387 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page40 of 118

40

1       Q.    Have you seen this document before?

2       A.    I believe I have, yes, sir.

3       Q.    Okay.  And do you -- did you participate in the --

4    in the creation of Bestia Principal?

5       A.    No, sir.  My partner filed -- made the LLC for us.

6       Q.    Okay.  Did you sign any documents prior to any

7    creation of the company with the state of California?  Or the

8    formation of the company.

9       A.    Did I sign any documents?

10      Q.    Yes.

11      A.    If I had to have a signature I probably

12   (unintelligible) a lot.  I didn't sign any documents, but I -

13   - I spoke -- spoke to him, my partner on behalf to create a

14   LLC with my name under it with him and partner with him.

15      Q.    Okay.  Can you explain why -- going back --

16            MS. RILEY:  Mr. Sheade, before you move on, was it

17   your intent to admit that exhibit?  Because if so, I would

18   object.

19            MR. SHEADE:  Is it based on prejudice or on --

20   because, no, easily, I'm not looking to admit it, no.  I just

21   brought it up to -- to -- for the spelling of the company.

22            MS. RILEY:  Thank you for the clarification.

23      BY MR. SHEADE:

24      Q.    Mr. Johnson, looking back on Schedule AB, why

25   don't -- why is Bestia Principal not listed as an ownership

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 388 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page41 of 118

41

1   interest?

2       A.   Probably, I think probably it wasn't created by

3   then.

4       Q.   Okay.  And going down to Page 5, on Line 31, it

5   states -- can you please read out loud -- actually,

6   (unintelligible).  Line 31 is about interest and insurance

7   policies.  Do you not hold a injury insurance policy?

8       A.   No, sir.

9       Q.   So you don't have any protections on -- for any

10  injuries in professional football?

11      A.   No, sir.

12      Q.   Okay.  And Number 33, is that a true and correct

13  statement that you have no claims against third parties?

14      A.   What do you mean claims against third parties?

15      Q.   Do you believe that you are owed any money by any

16  other parties as of the filing of this bankruptcy case?

17      A.   No, sir.

18      Q.   Okay.  And then last but not least -- I'm going to

19  skip that question.

20           Okay.  So going back to the bank statements.

21      (Brief pause)

22      Q.   Mr. Johnson, can you see the screen before you?

23      A.   Yes, sir.

24      Q.   And can you tell me what is on this first page?

25      A.   Was that the bank summary account?

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 389 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page42 of 118

42

1    Q.   Now, can you please tell me under what's marked as

2    Exhibit 2, the name on the -- on that document?

3    A.   Alexander J. Johnson.

4    Q.   Is that your name?

5    A.   Yes, sir.

6    Q.   Do you have any dispute that this document isn't

7    your bank statement?

8    A.   No, sir.

9    Q.   If I were to go through very quickly, very

10   quickly, so on this -- this is the bank statement as of

11   November 30th, 2018.  Under the "do not mail" it says

12   Alexander J. Johnson.  Mr. Johnson, do you have any dispute

13   that this isn't your bank statement?

14   A.   No, sir.

15   Q.   The same question for December 31st, 2018.

16   A.   No, sir.

17        MR. SHEADE:  I can go through each and every one I

18   want to admit, but for the sake of time, I move to admit, and

19   see if I get any objections, Exhibit 2, to the extent that

20   it's for -- the statements are November 2018 to October 2020.

21        MS. RILEY:  I --

22        THE COURT:  Any -- go ahead.  Any objection?

23        MR. BRINEN:  Yes, Your Honor.

24        MS. RILEY:  Yes.  Go ahead.

25        MR. BRINEN:  The Debtor objects on the basis of

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 390 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page43 of 118

43

1    relevance.  This document goes back years, and we've already

2    talked about the fact that, you know, the statement Mr.

3    Sheade chose to --

4            THE COURT:  Okay.  I get the gist.

5            MR. BRINEN:  -- (unintelligible).  Yeah.

6            THE COURT:  Ms. Riley, do you have any other bases

7    for an objection?

8            MS. RILEY:  That would be my basis, as well.  That

9    the time frame is not relevant.

10           THE COURT:  Okay.

11           Mr. Sheade, your response?

12           MR. SHEADE:  Your Honor, number one, the bank

13   statements show lifestyle choices that have carried on post-

14   petition.  If the -- number two, it goes to the preference

15   payment portion.  And third, if, at the very least, October

16   2019 through current are quite relevant as showing certain --

17   certain asset -- definite asset issue of the bankruptcy

18   estate.

19           THE COURT:  What are you referring to by assets?

20           MR. SHEADE:  Mr. -- okay, this would be closing,

21   but Mr. Johnson has scheduled that he holds no claims against

22   third parties.  The Statement of Financial Affairs shows that

23   there was a reimbursement prepetition of the $30,000 on the

24   California property.  The bank statements do not show any

25   $30,000 prior to the bankruptcy -- prior to the petition

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 391 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page44 of 118

44

1   date, so that is either the third -- the third-party either

2   holds fair legal title for which Mr. Johnson holds the entire

3   equitable interest, which could be an issue for -- because

4   the Trustee has the opportunity to go sell the property, and

5   it --

6           THE COURT:  Okay.  I am going to have a standing

7   ruling that to the extent that it's to show possible

8   preferences or fraudulent conveyances, it's not relevant to a

9   motion to convert, because those could be pursued in either

10  Chapter 7 or Chapter 11.  We're not here to evaluate a

11  Chapter 11 plan under the best interest of creditors' test,

12  that's not what this is about.  So I don't see the relevancy.

13          As to your statement that they show other assets,

14  is that what you mean, just possible recovery of assets?

15          MR. SHEADE:  Yes, Your Honor.

16          THE COURT:  Okay.

17          MR. SHEADE:  It's an asset very -- very important

18  to the Debtor --

19          THE COURT:  Okay.

20          MR. SHEADE:  -- of any payment.

21          THE COURT:  So same ruling.  And so I'm going to

22  limit this exhibit to only the 2020 bank statements.

23      (Movant's Exhibit 2 was admitted in part into

24  evidence.)

25          MR. SHEADE:  Okay.  May -- Your Honor, may I ask a

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 392 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page45 of 118

45

1    question?  I'll just proceed, Your Honor.

2              THE COURT:  Okay.

3              MR. SHEADE:  So we are limiting it to the 2020

4    statements?

5              THE COURT:  Correct.

6              MR. SHEADE:  Okay.

7         (Brief pause)

8         BY MR. SHEADE:

9         Q.   Mr. Johnson, have you -- have you received any

10   funds from -- first off, who is Tammy Miller (phonetic), Mr.

11   Johnson?

12        A.   It's -- it's Eric Miller's mother who I assigned

13   the (unintelligible) property.

14        Q.   And what is Tammy Miller and Eric Miller's

15   relation to you?

16        A.   They're my family.

17        (Brief pause)

18        Q.   Mr. Johnson, can you see the document on the

19   screen?

20        A.   Yes, sir.

21        Q.   Have you seen this document before?

22        A.   So I believe this is when we signed for our

23   property.

24        Q.   Excuse me, can you repeat that?

25        A.   I believe this is for when we signed for our

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 393 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page46 of 118

46

 1  property.  And, oh, no.  Hold on, let me read it all.

 2        (Brief pause)

 3        Q.    Is this the document that you produced to your

 4  counsel?

 5        A.    Hold on here.

 6        (Brief pause)

 7        A.    I believe -- I believe my partner wrote this up,

 8  so about for -- for our property.

 9        (Brief pause)

10        A.    (Unintelligible).

11        Q.    Did you sign the -- go ahead.

12        A.    Can you say that again?

13        Q.    I'm sorry, I -- I didn't mean to interrupt you.  I

14  apologize.  Can you please go ahead and --

15        A.    Can you say that again?

16        Q.    I apologize for interrupting.  Can you please

17  continue on with what you were saying?

18        A.    I believe this is what my partner wrote up for the

19  property, I believe.

20        Q.    And what --

21        A.    I think.

22        Q.    Did you sign this document?

23        A.    I can't remember if I did or not.  If I did sign

24  it, he -- he signed it on my behalf, I gave him permission to

25  sign it on my behalf, but it looks like that.

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 394 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page47 of 118

47

1      Q.   Did you execute a power -- did you sign a power of

2  attorney?

3      A.   Can you say that again?

4      Q.   Did you -- did you sign any documents to give Mr.

5  Miller permission to sign this document before giving it to

6  the bank?

7      A.   I'm not 100 percent sure about that.  I know for

8  the -- for the property, signing for the property, the -- the

9  lienholder came to my house when I -- where I was living at

10 the time when I signed for the property.

11     Q.   Okay.  Can you -- I'm going to -- I'm going to

12 read out loud the first sentence, if you don't mind.  Tell me

13 if this is true -- if this is a true statement.

14          "Eric Miller has been one of my best friends and

15 is now family since my mother married into the Miller

16 family."

17          MS. RILEY:  I'm going to --

18          THE WITNESS:  (Unintelligible) --

19          MS. RILEY:  I'm going to object, Your Honor.  I

20 don't see the relevance of this line of questioning.

21          THE COURT:  I don't, either.  Can you tell us, Mr.

22 Sheade?

23          MR. SHEADE:  There's a series of payments to Mr.

24 Miller for -- it goes to the property issue, Your Honor.

25 This is litigation that will occur inside a Chapter 11 that

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 395 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page48 of 118

48

1  he'd be saving himself on.  And that goes to the Decker

2  (phonetic) case out of --

3          THE COURT:  Well, let me --

4          MR. SHEADE:  -- (unintelligible) --

5          THE COURT:  Let me understand better what you just

6  said.  This is litigation he will have in Chapter 11 but not

7  in Chapter 7?

8          MR. SHEADE:  Quite (unintelligible) that, Your

9  Honor.

10          THE COURT:  He'll have it in 7, but not in an 11.

11  And what kind of litigation is that?

12          MR. SHEADE:  The issues of the property, that he

13  did not get reimbursed on prior to the petition date so that

14  the Trustee holds a claim for 30,000 or $35,000 against a

15  family member that he has continued to pay post-petition

16  thousands of dollars a month.

17          THE COURT:  Okay.  Why wouldn't that same

18  litigation need to occur in the Chapter 11?

19          MR. SHEADE:  Because it requires -- Chapter 11, as

20  I understand it, in the liquidation analysis would have to

21  demonstrate reconciliation of those collectible funds but not

22  actually litigation.  There could be a confirmable plan that

23  the Law Firm would not object to as the only -- you know, the

24  98 percent of the unsecured class that would forgo the --

25  that litigation against --

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 396 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page49 of 118

49

```
 1                THE COURT:  Okay.  Same thing --

 2                MR. SHEADE:  -- some family members.

 3                THE COURT:  The same thing could happen in Chapter

 4   7, though.  Because he could choose to pay post-petition

 5   dollars that he earns to avoid having a family member sued by

 6   the 7 Trustee.  That can happen in either thing, so I still

 7   don't see the relevance towards a motion to convert.

 8                All right.  Ms. Riley, I know you're chomping at

 9   the bit.

10                MS. RILEY:  Well, I think this just could be

11   avoided, because the money at issue here has already been

12   recovered by the Trustee.

13                THE COURT:  Oh.

14                MS. RILEY:  So there is no litigation on this

15   issue.  There won't be any.

16                MR. SHEADE:  They've been avoid -- Your Honor,

17   okay.  Okay.  All right.  I withdraw the -- I withdraw --

18   withdraw the line of -- of questions, Your Honor.

19                THE COURT:  Okay.

20                MR. SHEADE:  And we'll withdraw any arguments as

21   to the reconciliation issues.

22                So, okay, let's go back to the bank statement.

23           (Brief pause)

24                THE COURT:  Just let me ask, Mr. Sheade, maybe we

25   could short-circuit some things.  Is your only basis for
```

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 397 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page50 of 118

50

1   saying that your client would be better off if he was in an

2   11 is because there are potential avoidance actions that

3   could -- that he might just pay on in Chapter 11 rather than

4   have the litigation?  Is that the only basis for this?

5          MR. SHEADE:  No.  No, Your Honor.  That basis, I'm

6   not even sure that there is a benefit for all beneficiaries,

7   not just -- but for -- the basis for the creditor would be if

8   the --

9          THE COURT:  Well, let's go -- let's go to the most

10  important parts you have that really go towards conversion.

11  So if you want to start with the pay stub, that sounds like a

12  good idea to me.

13         MR. SHEADE:  Yeah, and that's all it's really

14  necessary, Your Honor, would be the benefit to -- to the

15  creditor is that, what the pay stub receipt today shows is

16  that total gross earnings for 2020 have been over $1 million,

17  and also --

18      BY MR. SHEADE:

19      Q.   Mr. Johnson, did you produce this bank -- this

20  bank statement to -- or, sorry, this pay advice to your

21  counsel today?

22         THE COURT:  Let's identify it.  What exhibit

23  number are we making this one?

24         MR. SHEADE:  We would have to -- if we -- if we

25  can identify it as Exhibit 39, please?

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 398 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page51 of 118

51

 1                    THE COURT:  Okay.

 2          BY MR. SHEADE:

 3          Q.   Mr. Johnson, did you produce this Exhibit 39 to

 4    your counsel today?

 5          A.   Yes, sir.

 6          Q.   And did you receive this from your employer?

 7          A.   Yes, sir.

 8                    THE COURT:  Let's move for its admission before

 9    you ask more questions about it.

10                    MR. SHEADE:  Your Honor, I'd move to admit this

11    Exhibit 39.

12                    MR. BRINEN:  No objection.

13                    THE COURT:  Any objection?

14                    MR. BRINEN:  No objection from the Debtor.

15                    MS. RILEY:  No objection here.

16                    THE COURT:  Okay.  It's received.

17          (Movant's Exhibit 39 was admitted into evidence.)

18                    THE COURT:  Go ahead.

19          BY MR. SHEADE:

20          Q.   Mr. Johnson, is it -- is it correct that your

21    year-to-date earnings is over $1 million?

22          A.   Can you -- you repeat that again?

23          Q.    Is it -- is it correct that on this pay stub that

24    your 2020 earnings, as of November 24th, 2020, are over $1

25    million?

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 399 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page52 of 118

52

1        A.    This is -- I wouldn't say my 2020 earnings.    This

2    is a pay stub, and for that million it's for the whole span

3    of three years since I've been playing in the NFL.

4            MR. BRINEN:   Pardon me, Mr. Sheade, could I just

5    ask you to blow up the exhibit a little more?   I don't have

6    glasses strong enough to see it.   Thank you.

7            MR. SHEADE:   Say that again.   Blow it up a little

8    bit more?   I'm sorry.

9            MR. BRINEN:   Please.   Please.

10            MR. SHEADE:   Of course.

11            THE COURT:   And where are you referring to?   What

12    line?

13            MR. SHEADE:   Okay.

14            THE COURT:   I think that column that we need to

15    see is off the side of the page.   Can you -- I don't know the

16    mechanics, but can you scroll over to the right a little bit?

17            THE DEBTOR:   Oh, it's down at the bottom, I

18    believe, what he's looking at.

19            THE COURT:   Oh, okay.

20            MR. SHEADE:   Under --

21            THE DEBTOR:   Under other -- down at the bottom,

22    instead of what you're looking at.   So you got to scroll down

23    a little more.

24            MR. SHEADE:   So you tell me -- okay, so --

25            THE COURT:   Okay.   So now on the left, at the

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 400 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page53 of 118

53

1    bottom, we see year-to-date, 1,024,000 and change.

2          BY MR. SHEADE:

3          Q.   So this -- this $1,024,000 and change is for 2020,

4    correct?

5          A.   No, sir.  It's the -- it's the span of my whole

6    three years of -- with the Broncos.

7          Q.   All right.  Mr. Johnson, YTD means year-to-date,

8    so can you please explain how --

9          A.   Oh.

10         Q.   -- this is three years?

11         A.   Well, on the pay -- on the -- well, it shows you -

12   - it shows you paid, pretax debted -- tax, debt and net pay,

13   and this is the span of what the Broncos have paid me since

14   I've been with them.  It's not for the whole 2020, it's just

15   from the 2018 all the way to -- 2018 all the way to, you

16   know, since I been with the Broncos.

17         Q.   Okay.  Give me one second please.

18         (Brief pause)

19         A.   It say -- it also said "gross net recap" so, like,

20   the recaps from the previous years, the gross net.

21         (Brief pause)

22         Q.   Okay.  Mr. Johnson, under -- I'm looking at

23   Exhibit 22.  On the screen there is, on the far left column,

24   one, two, three, four, five rows down it says, "Employee's

25   first name" and it --

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 401 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page54 of 118

54

 1            THE COURT:  We need to identify the document, get

 2    it admitted or not, and then ask questions about it.  So

 3    let's go through the drill.

 4        BY MR. SHEADE:

 5        Q.   Mr. Johnson, have you seen this document before?

 6        A.   In each -- it looks like it's my taxes.  I'm not

 7    even really sure.  So could you scroll down a little more so

 8    I can see the full thing?

 9        (Brief pause)

10        A.   Yeah, my W-2s on some of this, and my taxes.

11        Q.   And you received this from your employer?

12        A.   My tax -- yes, what's the question?  Did I receive

13    this paper from my employer?

14        Q.   Yes.

15        A.   Oh, this -- they sent me my tax stuff each year,

16    so, yes, sir.

17        Q.   And you use this to prepare your tax returns for

18    that year?

19        A.   My tax -- my tax -- my tax lady prepares all my

20    tax stuff.

21        Q.   Okay.

22            MR. SHEADE:  Your Honor, I -- the Law Firm moves

23    to admit Exhibit 22.

24            THE COURT:  Any objection?

25            MR. BRINEN:  No objection here.

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 402 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page55 of 118

55

1          MS. RILEY:  (Unintelligible).

2          THE COURT:  Okay.  It's received.

3     (Movant's Exhibit 22 was admitted into evidence.)

4     BY MR. SHEADE:

5     Q.   Mr. Johnson, on the right, third, top, right

6 column, can you please tell me the gross wages amount?

7     A.   420,020 400 and 2000 -- 420,483.

8     Q.   Okay.  And is it correct at the bottom of that

9 column, W-2 wages, it says $405,276.65?

10    A.   Yes, sir.

11    Q.   Okay.  And now let's go to Exhibit 23, the same

12 for 2018.  Have you seen this before?

13    A.   This looks like my taxes information.

14    Q.   And at the bottom of the page can you tell me the

15 date on that, the year?

16    A.   2019.

17    Q.   Okay.  And you received this from your employer?

18    A.   Yes, sir.

19         MR. SHEADE:  Your Honor, the Law Firm moves to

20 admit Exhibit 23.

21         THE COURT:  Any objection?

22         MR. BRINEN:  No objection.

23         MS. RILEY:  None.

24         THE COURT:  Okay.  Received.

25         MR. SHEADE:  Thank you, Your Honor.  Sorry for

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 403 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page56 of 118

56

1    interrupting.

2         (Movant's Exhibit 23 was admitted into evidence.)

3         BY MR. SHEADE:

4         Q.   Mr. Johnson, is it correct that gross wages for

5    2019 show $555,093.21?

6         A.   At the top, I believe, yes, sir, it does show

7    that.  Yes, sir.

8         Q.   And W-2 wages show $538,307.21?

9         A.   Yes, sir.

10        Q.   So we have roughly 555,000, and 420,000, so

11   975,000.  Are you -- Mr. Johnson, are you telling me that you

12   won't -- you've made less than $1000 for 2020?

13        A.   No, sir.

14        Q.   So is it not correct that you've made gross wages

15   of $1 million in 2020?

16        A.   No, sir, I haven't made $1 million in 2020 of --

17   no, sir.

18        Q.   Okay.  Moving over.

19             MR. SHEADE:  And this is the last questions, Your

20   Honor.

21        (Brief pause)

22        BY MR. SHEADE:

23        Q.   All right.  Mr. Johnson, can you see the bank

24   statement on the screen?

25        A.   Yes, sir.

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 404 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page57 of 118

57

 1        Q.    Okay.  I'll scroll in for everybody's eyes,

 2   including my own.

 3              Mr. Johnson, on July 20th, did you receive a tax

 4   refund from the state of California for $1877?

 5        A.    Yes, sir.

 6        Q.    And on July 21st, a tax refund of $1326 from the

 7   state of Colorado?

 8        A.    Yes, sir.

 9        Q.    Again, the state of Missouri, $97?

10        A.    I didn't hear you.  Can you say that again?

11        Q.    For the state -- for the state of Missouri, $97?

12        A.    Yes, sir.

13        Q.    Have you turned over these funds to the Trustee?

14        A.    I haven't received my tax refunds from 2019

15   because they sent it -- they -- you know, my tax lady said

16   they either sent -- they were holding it or they sent it to

17   the trustees already, one of the two.

18        Q.    So this -- can you see on the top, right-hand

19   corner, July 31st, 2020?

20        A.    Yes, sir.

21        Q.    So this statement is for 2020, this -- the -- for

22   example, the tax refund of July 20th of $1877, are you

23   telling me that's for 2018 tax returns?

24              MR. BRINEN:  Excuse me, Your Honor, I'm going to

25   object to this line of questioning on the basis of relevance.

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 405 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page58 of 118

58

 1              MS. RILEY:  I (unintelligible) that objection.

 2              MR. SHEADE:  I'll withdraw the questions, Your

 3    Honor.  And I've shown the benefit to the creditor, so I will

 4    -- I'll close -- I'll be -- I'm done -- done with the

 5    witness, Your Honor.

 6              THE COURT:  Okay.  Any cross on the witness?

 7              MR. BRINEN:  Yes, Your Honor.

 8              THE COURT:  Okay.

 9                        CROSS-EXAMINATION

10       BY MR. BRINEN:

11       Q.   Mr. Johnson, let's go back.  When did you start

12    playing organized football?

13       A.   At the age of 7.

14       Q.   Okay.  And at what point did you decide you wanted

15    to make a professional career out of football?

16       A.   When I was 5 years old.

17       Q.   Okay.  And where did you grow up?

18       A.   In Gainesville, Georgia.

19       Q.   Okay.  And how would you describe your family's

20    economic status when you were young?

21       A.   Oh, we lived in a Section 8 house.  We was poor.

22       Q.   Okay.

23       A.   We lived -- yeah, we was poor and lived in a

24    Section 8 house.

25       Q.   And did you attend college?

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 406 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page59 of 118

59

 1          A.   Yes, sir.  At the University of Tennessee.

 2          Q.   Okay.  And how did you pay for your tuition and

 3   books?

 4          A.   Oh, scholarship.  A full ride scholarship for

 5   football.

 6          Q.   Okay.  And did you obtain an undergraduate degree?

 7          A.   I got my sociology in three and half years.

 8          Q.   Okay.  And I understand that because of legal

 9   issues that you were not eligible to play in the NFL after

10   you -- right after you graduated from college, is that right?

11          A.   Yes, sir.

12          Q.   Okay.  And during the time you were waiting for

13   your opportunity with the NFL, were you employed?

14          A.   Yes, I was employed.  I had a few jobs and I

15   worked at -- I worked at John Deere for a little bit, then I

16   became RadCon, radiologic control technician, and I did

17   personal training on the side.

18          Q.   Okay.  Approximately what were your wages in those

19   days?

20               MR. SHEADE:  Your Honor, I'm going to object.

21   It's outside of the scope of the original questions.  The Law

22   Firm was not able to bring up anything in Mr. Johnson's past

23   history and only look prospectively, so --

24               THE COURT:  Okay.  Mr. Brinen?

25               MR. BRINEN:  Well, this does get to the issue of

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 407 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page60 of 118

60

1   what is earning capability will be after playing football,

2   number one.

3            Number two, I'm not asking him leading questions

4   because it is outside the scope.  If Mr. Sheade prefers, we

5   can wait and I can call Mr. Johnson and ask the same

6   questions on direct.  It's just a matter of efficiency.

7            THE COURT:  Mr. Sheade?

8            MR. SHEADE:  If this is going to expedite the

9   hearing then the Law Firm I'll withdraw the objection.

10           THE COURT:  Okay.  Proceed.

11       BY MR. BRINEN:

12       Q.  Mr. Johnson, about what were your earnings before

13   you -- between the time you graduated from college and when

14   you started playing football?

15       A.  It wasn't a lot.  I was making probably, at my

16   first job it was, like, $12 an hour, and then the second one

17   was $14 an hour.

18       Q.  Okay.  And when did you start playing in the NFL

19   approximately?

20       A.  The year of 2018.

21       Q.  Okay.  And about how old were you at that time?

22       A.  I was 27, (unintelligible) 18.  Somewhere in

23   there.

24       Q.  (Unintelligible).  In your experience, is that

25   older than usual to start a football career?

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 408 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page61 of 118

61

1    A.   Yes, sir.  It's very unusual to start at the age I

2    started at, at least.

3    Q.   Okay.  And describe your first season, what did

4    you do your first season?

5    A.   Well, I was just pretty much on the team.  I

6    played in the one game and got, like, 32 plays, and then at

7    the end of the season I got put on practice squad.

8    Q.   Okay.  And how about your second season?

9    A.   I was able to re-sign with the Broncos, after

10   being on practice squad, and then I didn't -- I wasn't able

11   to start playing with the team until, like, five games into

12   the season.

13   Q.   Okay.  And right now, this is your third season?

14   A.   Yes, sir.

15   Q.   Okay.  And you're generally familiar with your

16   contract and how players are compensated in the NFL?

17   A.   Yes, sir.

18   Q.   Okay.  And based upon your current contract, what

19   would your status be next year, next season?

20   A.   My status would be a restricted free agent.

21   Q.   And what does that mean?

22   A.   Pretty much, the Broncos can have the option to

23   pick me up next year or I might not -- they might not pick me

24   up, or they just -- it's in their pretty much

25   (unintelligible), but I'm restricted and it's I don't have no

Case 1:22-cv-00332-REB  Document 9-1  Filed 03/03/22  USDC Colorado  Page 409 of 516
Case:19-19816-EEB  Doc#:142  Filed:06/02/21  Entered:06/02/21 10:25:25  Page62 of 118

62

 1  set guarantee during that thing -- nothing guaranteed for

 2  next year.

 3      Q.   Okay.  And based upon your knowledge and

 4  experience, assuming you stay healthy, can you expect to have

 5  -- what length of contract do you expect to have next year if

 6  the Broncos make you an offer?

 7      A.   It'll be a extension of just a one year, a one-

 8  year deal, if they make me a offer.

 9      Q.   Okay.  And are you familiar with the term called

10  "salary cap"?

11      A.   Yes, sir.

12      Q.   Okay.  What is a salary cap?

13      A.   Pretty much a salary cap is each team individual

14  has it in his -- a salary cap is the money they can fork out

15  to pay -- pay different players throughout the team, so you

16  can't exceed the limit of the salary cap of paying your

17  players on the team.

18      Q.   So if the salary cap is higher, players can be

19  paid more, and if it's lower they can get paid less,

20  generally?

21      A.   Yes, sir.  Also, you don't get a extension of

22  meeting about salary cap.  Due to -- due to COVID, the salary

23  cap for next year's projected to be much lower than in

24  previous years.

25      Q.   And will that, do you believe that will

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 410 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page63 of 118

63

1    necessarily affect your compensation?

2          A.    Yes.   They --

3                MR. SHEADE:   Objection, Your Honor.   It calls for

4    speculation.   As well as Mr. Johnson is not front office

5    management of the Broncos and doesn't have the expertise --

6    has not demonstrated the expertise to, you know, provide the

7    statements that are being called into question.

8                THE COURT:   Sustained.

9          BY MR. BRINEN:

10         Q.    Mr. Johnson, based upon your current contract, if

11   you were to sustain an injury where you were unable to play,

12   say after next week, what would the Broncos owe you for the

13   balance of this season?

14         A.    They would owe me nothing.

15         Q.    Okay.   And if you receive a one-year contract next

16   year and you are injured and unable to play, what will they

17   owe you then?

18         A.    They will owe me nothing.

19         Q.    Okay.   Mr. Sheade brought up the Bestia Principal,

20   and there's another LLC, CB45, what are those?

21         A.    CB45 is my cousin -- cousin (unintelligible)

22   company I started, and then the Bestia Principal is for the

23   property out in California.

24         Q.    Okay.   And is it common that NFL players form

25   entities to promote their jerseys and their number?

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 411 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page64 of 118

64

1      A.   Yes, sir.  There's quite a few guys on the team

2   have their own clothing apparel.

3      Q.   Okay.

4      A.   And, you know, have different LLCs, as well.

5      Q.   Is CB45, has it been profitable for you?

6      A.   No, sir.

7      Q.   Okay.  What position do you play on the Broncos?

8      A.   Middle linebacker.

9      Q.   Okay.  And based upon your knowledge, or your

10  experience, how long do you -- how long do you expect to

11  play?

12     A.   Based on the true numbers of NFL, I'm just pulling

13  up the true numbers of NFL, average -- average linebacker

14  plays three, 3.05 years, and then some of them play 4 to .5 -

15  - 4.85 years based on the average numbers.

16         MR. SHEADE:  Objection, Your Honor.  Calls for an

17  expert, it doesn't --

18         THE COURT:  That would have -- that would have

19  been a good objection, but it was too late.

20         MR. SHEADE:  Okay, Your Honor.

21      BY MR. BRINEN:

22     Q.   Mr. Johnson, do you have any dependents?

23     A.   Yes.  I have a fiancée and a newborn baby girl, 6

24  months.

25     Q.   Okay.  And do you have a financial advisor?

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 412 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page65 of 118

65

1      A.   Yes, I do.

2      Q.   And who is that?

3      A.   My financial advisor --

4           MR. SHEADE:  Objection, Your Honor.  Outside of

5  the scope.  Oh, wait, I'm sorry, I withdraw that, because

6  I've already withdrawn that question.

7           THE DEBTOR:  My financial advisor's name is Dan

8  Allen (phonetic).

9      BY MR. BRINEN:

10     Q.   Okay.  And he's --

11          THE COURT:  I couldn't get the last name.  What

12  was it?

13          THE DEBTOR:  Dan Allen.

14          THE COURT:  Allen, A-L-L-E-N?

15          THE DEBTOR:  Yes, ma'am.

16          THE COURT:  Okay.  Thank you.

17     BY MR. BRINEN:

18     Q.   And Mr. Allen is with UBS Bank?

19     A.   Yes, sir.

20     Q.   Okay.

21          THE DEBTOR:  I'm sorry.  Somebody is at my door.

22          THE COURT:  If you want to take a quick break,

23  we'll all stay here, and you let them know that you're not

24  available.

25          THE DEBTOR:  All right.  Thank you.

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 413 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page66 of 118

66

```
 1              THE COURT:  Sure.

 2        (Brief pause)

 3              THE DEBTOR:  I'm sorry.

 4              THE COURT:  Okay.  Let's go ahead and resume.

 5              MR. BRINEN:  Thank you.

 6        BY MR. BRINEN:

 7        Q.   You just testified that you have a financial

 8   advisor, Mr. Allen, at UBS Bank.  Why do you have a financial

 9   advisor?

10        A.   Pretty much, to help me -- to help me try to

11   balance and secure funds for when I'm done playing.

12   Obviously I know I'm not going to be playing for much of a

13   long time, I started at a later age so I try to just -- try

14   to accumulate and keep my stuff balanced for when I'm done

15   playing.

16        Q.   Okay.  Do you know what you're going to do when

17   you -- your playing career is over?

18        A.   Oh, no, sir.

19        Q.   Okay.  Do you want to convert to a Chapter 11 with

20   a five-year plan?

21        A.   No, sir.

22        Q.   Why is that?

23        A.   Pretty much, it's based on my -- my futures

24   earnings.  I don't know my futures earnings, or is unsure if

25   I'm be playing next year.  Or like you say, if I get hurt I
```

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 414 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page67 of 118

67

 1  won't have no futures earnings.  I'm already turning -- I'm

 2  already turning -- about to turn 29 years old and that's

 3  pretty old to be starting on a free agent -- a free-agent

 4  contract.  So my -- my earnings is unsure, and I got a family

 5  to provide for, and a newborn baby girl, I want -- I don't

 6  want to set myself up for failure and put my -- my family at

 7  a disable to be able to provide for them if I'm not able to -

 8  - not able to perform or play football, and I don't know what

 9  my job will be if I'm (unintelligible) or whatnot.

10          Q.    Okay.  Thank you.

11                MR. BRINEN:  I don't have any further questions.

12                THE COURT:  Any redirect?

13                MR. SHEADE:  Yes, Your Honor.

14                        REDIRECT EXAMINATION

15      BY MR. SHEADE:

16          Q.    Mr. Johnson, do you have a -- do you have an

17  agent?

18          A.    No, sir.

19          Q.    And why do you not have an agent?

20          A.    I have an advisor and he works on my behalf as a -

21  - an agent.  He's not an agent, but he's my advisor and he

22  helps me with everything I need, from --

23          Q.    Is he --

24          A.    -- from the beginning, since 2014.

25          Q.    Mr. Johnson, is the advisor authorized to talk --

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 415 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page68 of 118

68

1   can the advisor talk to the Denver Broncos on your behalf?

2         A.   Yes, sir, he can.

3         Q.   The -- you're not aware that the NFL's rules only

4   allow conversations with authorized agents and the teams?

5         A.   I don't -- I don't know about that rule, sir.  I

6   know I have an advisor and I don't have to have an agent to

7   be in the NFL and my advisor can speak on my behalf.

8         Q.   But can your advisor negotiate a contract with the

9   Denver Broncos?

10        A.   We would negotiate a contract with each other.  He

11  would help me set it up and provide and help me with

12  everything I need to be done.

13        Q.   Okay.  And getting to the -- Mr. Johnson, have you

14  received AFC player of the week awards in 2020?

15        A.   No, sir.  Not that I know of.

16        Q.   Did you receive AFC player of the week awards in

17  2019?

18        A.   I believe I did my, the first two games -- the

19  first game, or something like that.

20        Q.   And, Mr. Johnson, have you conduct -- have you

21  been part of the interviews held with the Denver Post?

22        A.   Yes, sir, I have.  I've been a part of quite a few

23  interviews, yes, sir.

24        Q.   Did -- have you ever made comments to the Denver

25  Post about the length of time you expect to play football?

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 416 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page69 of 118

69

1    A.   If I have, I don't remember it right now, but I

2   could have.

3    Q.   Okay.  So are -- also, Mr. Johnson, do you recall

4   me asking you questions during the 341 meeting?

5    A.   Yes, sir, I remember you being there and asking

6   questions.

7    Q.   And I -- and do you recall me asking you how long

8   you expected to play in the NFL?

9    A.   I can't remember.  I'm not -- I can't remember

10   what exactly the question you asked to me, but if you did,

11   you did.

12    Q.   Okay.  And, Mr. Johnson, going to the injury

13   issue, do you -- you don't have -- again, I'm going to ask

14   this question, again.  You don't have any insurance if you

15   get injured, correct?

16    A.   No, sir.

17    Q.   Why not?

18    A.   Oh, it's -- it's expensive.  It's very expensive.

19   It's a big process to get insurance through, for players in

20   the NFL.  I mean, most guys I think -- I think most guys who

21   do insurance they're, like, at the top pay -- pay poll of

22   getting paid in the NFL, and I'm at the very low poll that's

23   one of the lowest.

24    Q.   Okay.  Mr. Johnson, do you know how much -- how

25   much is in -- how much money is in your UBF account

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 417 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page70 of 118

70

1   currently?

2             MS. RILEY:  Objection.

3             THE DEBTOR:  I can't really --

4             MS. RILEY:  Relevance.

5             THE DEBTOR:  -- the rule book, I can look for you,

6   but --

7             THE COURT:  Hang on just a minute.  There's an

8   objection.

9             Your response, Mr. Sheade?

10            MR. SHEADE:  His answer is that insurance is too

11  expensive.  The question goes to asking to whether he has the

12  funds to insure his --

13            THE COURT:  Okay.

14            MR. SHEADE:  -- his employment.

15            MS. RILEY:  Same objection.

16            THE COURT:  Okay.  Yeah.

17            MS. RILEY:  As to insurance.

18            MR. SHEADE:  Okay.

19            THE COURT:  Sustained.

20        BY MR. SHEADE:

21        Q.   Mr. Johnson, have you been negotiating a -- have

22  you started negotiations with the Denver Broncos?

23        A.   No, sir.

24        Q.   Do you -- do you have any expectation of when you

25  will begin negotiating your 2021 contracts with the Denver

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 418 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page71 of 118

71

1   Broncos?

2        A.   No, sir.   They haven't relayed to me about any

3   contract extension or of negotiating contracts with me.

4        Q.   Okay.

5             MR. SHEADE:   No further questions, Your Honor.

6             THE COURT:   And, Ms. Riley, I totally forgot to

7   give you an opportunity to cross.   Did you want to do that?

8             MS. RILEY:   No, Your Honor.   I don't have any

9   further questions --

10             THE COURT:   Okay.

11             MS. RILEY:   -- for this witness.

12             THE COURT:   Okay.

13        (Witness excused.)

14             THE COURT:   So, Mr. Sheade, do you have other

15   witnesses?

16             MR. SHEADE:   Your Honor, I will briefly call the

17   Chapter 7 Trustee.

18             THE COURT:   Okay.

19             Mr. Peters, if you would raise right hand and be

20   sworn in?

21             THE COURT CLERK:   Do you affirm that the testimony

22   you're about to give in this proceeding shall be the truth,

23   the whole truth, and nothing but the truth, under penalties

24   of perjury?

25             MR. PETERS:   Sorry, I have to unmute.   Yes.

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 419 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page72 of 118

72

1      Whereupon,

2                          M. STEPHEN PETERS

3      was duly sworn.

4                        DIRECT EXAMINATION

5      BY MR. SHEADE:

6      Q.   Good -- is it still morning?  Good morning, Mr.

7  Peters.  How are you today?

8      A.   I'm good, thanks.

9      Q.   Mr. Peters, very -- very briefly.  Have you

10  received funds for the estate in this bankruptcy case?

11      A.   Yes.

12      Q.   And how much have you received directly from Mr.

13  Johnson in this bankruptcy case?

14      A.   I need to do a quick calculation because I

15  received money from the IRS, and that's not directly from Mr.

16  Johnson.  So it's about -- oh, I think about 90,000 through

17  him or his lawyer, directly from him.  Plus, as I said, some

18  other money that I've collected.

19      Q.   Can you explain the breakdown of that 90,000?

20      A.   The numbers, there's about -- I received a check

21  basically over the weekend, or last Friday, for some -- some

22  issues that were outstanding.  And so there's about, I think

23  about eight for what was calculated to be nonexempt wages in

24  the bank account as of the petition date, sort of standard

25  stuff that we collect as Chapter 7 Trustees.

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 420 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page73 of 118

73

1       And then the rest, which is about 53 or 4000 or so

2  is for the balance that was in the investment account on the

3  petition date.  That was the subject of some discussion at

4  the second meeting of creditors.  Some exemption changes,

5  objections, modifications, amendments, that exposed that

6  money which I believe was not exempt and I think was

7  ultimately -- that was ultimately agreed to by the Debtor.

8       So that's -- that's the, if my math is right, so

9  that's about 50, and then -- oh, and then the 27 -- the

10  $37,000 that you were focusing on as part of the -- this the

11  property in California, I did a lot of digging in that.  I

12  think that was discussed at the second meeting of creditors.

13  And Mr. Johnson had received his share of what he had fronted

14  for the purchase of this California property.

15       He, as I recall, he paid for basically the entire

16  down payment, and then the co-owner, Ms. Miller, did pay her

17  share with some adjustments, a little -- a few thousand, 2 or

18  3 or 4000, for some things that I think had been fronted by

19  her.  And so that was 27,000 that I did receive, like, in

20  about March of this year for that.

21       So that's the 27, 50, and maybe 8 or 10 that I've

22  received from Mr. Johnson.

23       Q.   I'm sorry, I have 8 for the nonexempt wages, 53

24  for the, about, for the investment account.  Then 27 came out

25  of his -- of Mr. -- the Debtor's bank account.

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 421 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page74 of 118

74

1          What was the 10 for?  I'm sorry.

2     A.   No, the 20 -- the 27 did not come out of his bank

3  account.  That was the -- the payment that he had received

4  prepetition, shortly prepetition from the co-owner of that

5  California property.  Well, it was, I think, 30.  But by the

6  time of the filing, 3000 had been spent.

7          So if I need to really hone in on the exact

8  numbers I'm going to have to take a little bit of time to do

9  that and sort of figure out the allocation.  As I said, it

10 was $62,500 and change that I got over the weekend.

11         I spoke with Mr. Brinen because I needed sort of a

12 breakdown myself, and he told me he's -- the numbers were, I

13 think, 57,000 and change for the investment account, and then

14 maybe two for credit union account one, and then maybe about

15 five or six for credit union account two.

16         My numbers are not too precise, but the total was

17 62,500 that I got, like, on Friday from Mr. -- from my law

18 firm, from my lawyers who had gotten it from Mr. Brinen.

19 Plus the 44,000 that I had from the -- from our

20 (unintelligible) intercept that we made for tax refunds.

21         THE COURT:  How much for tax refunds?

22         THE WITNESS:  44,215.17, that I got in September

23 of this year.

24     (Brief pause)

25         MR. SHEADE:  Your Honor, based on these questions,

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 422 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page75 of 118

75

1   I'm going -- I'd move to admit, again, the -- I'm sorry, Mr.

2   -- I'm going to lay some foundation.

3        BY MR. SHEADE:

4        Q.   Mr. Peters, did you received tax -- or bank

5   statements from Mr. Johnson's counsel prior to the 341

6   meeting?

7        A.   Yes.  Upon my request, yes.

8        Q.   And what bank statements -- what -- do you recall

9   the months of those bank statements?

10       A.   At the initial meeting of creditors, I think I had

11  them before then, but we realized it was going to take a long

12  time to go through them, because I had looked at the bank

13  statements and identified -- the answer to your question, I

14  think I asked for them one year prepetition, so probably

15  through the fall of 2018, I think.

16       Q.   Okay.

17       A.   So we went through them in great detail at the

18  continued meeting of creditors on January 3rd, because we did

19  that because we knew we didn't have time with our standard

20  seven minutes allocated to a case in our regular docket, so

21  we scheduled to a time convenient for everyone where we could

22  spend a lot of time, which we all did on that date; January

23  3rd, I think it was.

24       Q.   All right.  What am I sharing?  Sorry.

25       (Brief pause)

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 423 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page76 of 118

76

1          Q.   Mr. Peters, does this bank statement -- does this

2    look familiar?  Did you receive this document from -- from

3    Counselor, the Debtor?

4          A.   I don't know.  Can you enlarge it?  It's very

5    small.  Statement date October 31, '19.  I imagine I did.  I

6    --

7                MS. RILEY:  I'm going to object to relevance.

8                MR. SHEADE:  Your Honor -- Your Honor, if I may

9    answer, respond?

10               THE COURT:  Okay.

11               MR. SHEADE:  This goes to, as requested to put on

12   evidence of what inures to the benefit of the creditor, I'm

13   looking under Scanbia (phonetic) analysis on a -- on the real

14   property issue of the reimbursement claim under SOFA.

15               MR. BRINEN:  In that case, Your Honor, I'd also

16   object to relevance.

17               THE COURT:  I think I've already ruled, Mr.

18   Sheade, that it may be fair game for a trustee to go back as

19   long as four years and look for preferences and fraudulent

20   conveyances, but those are claims and causes of actions that

21   accrue in either 7 or 11, and his willingness to spare family

22   and friends from any recovery action exists in both 7 and 11,

23   so I don't see the relevance to determining whether a Chapter

24   11 case is better for all parties than a Chapter 7 case.  So

25   I'm sustaining the objection.

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 424 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page77 of 118

77

1        MR. SHEADE:  Okay.  No further questions, Your

2   Honor.

3        THE COURT:  Okay.  All right.  Do you have --

4   well, okay, does anybody wanted to cross of the Trustee?

5        MS. RILEY:  I would like to, Your Honor.

6        THE COURT:  Okay.

7                    CROSS-EXAMINATION

8   BY MS. RILEY:

9   Q.   Good morning, Mr. Peters.

10  A.   Good morning.

11  Q.   How long have you been a Chapter 7 trustee?

12  A.   Since about 1989.

13  Q.   And what types of cases have you been a trustee

14  on?

15  A.   I'd call it a mixed bag, Chapter 7, of course.

16  And then I have been a Chapter 11 trustee in a handful of

17  cases, as well.

18  Q.   And what are your duties and obligations as a

19  Chapter 7 trustee?

20  A.   There again it's sort of a mixed bag.  We're

21  responsible to collect assets or money for the benefit of

22  creditors with due respect to debtors, as well, but basically

23  try to maximize recovery, balancing the costs of recovery

24  against the amount to be recovered.

25            Also, we are to look at the merits of objecting to

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 425 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page78 of 118

78

 1   the discharge of a debtor under 727, that's part of it, too.

 2   That doesn't happen very often, but, so those -- those --

 3   those things.

 4        Q.   What kind of investigation have you made into Mr.

 5   Johnson's case?

 6        A.   Prepetition -- not prepetition.  Pre-meeting of

 7   creditors I asked for bank statements, which I -- which I

 8   received from Mr. Brinen, and looked at them.  And I had done

 9   sort of a --

10             UNIDENTIFIED MALE:  (Unintelligible) weekend.

11             THE WITNESS:  Oh, sorry.

12             THE COURT:  Somebody needs to mute us.

13        (Brief pause)

14             THE COURT:  Go ahead.

15             THE WITNESS:  And identified the items that looked

16   of interest that were, you know, particularly a little higher

17   dollar value items.  I didn't look at, maybe, 2, 3, $400 or

18   less, to identify them by number.  I think there were, like,

19   65 numbers that I said what, you know, I said we need to go

20   over this, explain this, and so forth.  I sent that to Mr.

21   Brinen so his client could have some time to look at them

22   ahead of time, and then that's where we went into those, from

23   the Easement bank accounts, in depth in January.

24             I asked for documents about this transaction for

25   the California property that Mr. Sheade focused on.  It was

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 426 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page79 of 118

79

1    confusing.  We looked at it and determined that, yeah, this

2    was a property bought between Mr. Johnson and Mr. -- and Ms.

3    Miller.  And as I recall, it was sort of a, they just have a

4    close relationship.  I think he said, maybe this isn't right,

5    something like she was sort of my second to mother.  But her

6    son, I think Eric Miller, and Mr. Johnson were good friends,

7    so that's what they decided to do, to invest in his

8    California property to be split.  But Mr. Johnson fronted

9    most of the down payment, that's what the document showed.

10         The one document that Mr. Sheade showed about the

11   signature that Mr. Johnson had said that they were my -- my

12   close friends and so forth, there were many more.  It was

13   just kind of a complicated California transaction.

14         So a little bit of that long story short, the

15   result was that it looked like about 30,000, maybe a little

16   more, maybe a little less, was owed to Mr. Johnson by his co-

17   owner, Ms. Miller, and that had been received.  And I think

18   that might have been -- showed up in that October bank

19   statement that Mr. Sheade pulled up, and then we didn't get

20   to look at it.  And then that was paid to me by Mr. Johnson

21   at my request, that 27 -- it was 27 is what he represented.

22   And I think that's in his Statement of Financial Affairs or

23   Schedules that shows that's what he had.

24         Q.   And I believe you testified earlier about making

25   some objections to exemptions?

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 427 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page80 of 118

80

1      A.   Yes.   When the Tennessee objections were -- were -

2   - were made -- exemptions were made, I looked to Tennessee

3   law and it was amazing that it was very similar to

4   Colorado's, I remember that.

5           I called a Tennessee trustee to talk to the effect

6   of a wage exemption, because that was claimed, as I recall,

7   75 percent by Colorado in the bank account, because the wages

8   had been deposited in the bank account, and so they can be

9   traced.   And in Colorado, that's pretty much allowed, and I

10  wondered if it was the same in Tennessee.   And the Tennessee

11  trustee said, who had done this a long time, said no, that he

12  was surprised that -- that the exemption, the wage exemption

13  in Colorado would maintain itself and follow to the bank

14  account.   He said that's not how it's done in Tennessee.   So

15  that led me to the conclusion of, well, then, there's no wage

16  exemption in these monies that were put in, if they were from

17  wages. The 27,000 was not from wages, it was from a refund

18  from Ms. Miller.

19          So we did that and the result was an objection to

20  the exemptions.   Then one thing led to another, and they --

21  and amended their exemptions to claim federal only, and there

22  was no exemption claim then, you know, in some of these

23  things, including the USB account.

24      Q.   So is it correct to say that the result of your

25  objection was to free up some additional funds for the

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 428 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page81 of 118

81

1    estate?

2         A.    That would be my judgment.

3         Q.    And that -- I'm not going to go back through and

4    make you re-identify what -- what you've collected so far,

5    but is it fair to say that you've collected roughly $130,000

6    --

7         A.    About 130 --

8         Q.    -- to date?

9         A.    About 135.

10        Q.    And are there any other assets that you've

11   identified that may also be recoverable that you may pursue

12   if this remains in Chapter 7?

13        A.    Yes, I think so.

14        Q.    And what are those?

15        A.    When I received the federal tax refund some of it

16   belongs to Mr. Johnson based upon a pro rata allocation of

17   the income for 2019.  I asked for the state returns so we

18   could do sort of a final accounting, because he owes me for

19   some of those.  I saw the exhibit and there are some from

20   Missouri, and a couple of other states as well.  So we will

21   settle up with that.  I didn't push that because this case

22   might have been converted.  If Mr. Johnson wants to convert

23   it, I have no objection to that.  So when -- when -- if this

24   case remains in a 7 then I will push for those.

25              There was some money, and this was -- this was

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 429 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page82 of 118

82

1    pretty clear, that Mr. Johnson paid to his mother to help

2    her.  I remember asking at the meeting of creditors if he had

3    a legal obligation to do that.  I think he said no, but

4    because it was his mother.  So the suggestion was, well, that

5    might have to be paid back.  That was 4 or 5000, I think.

6              And then the payment to Mr. Miller that I think

7    Mr. Sheade alluded to was, like, shows up in the bank

8    statements, which was discussed at the meeting of creditors

9    for, like, 5000 or something.  And Mr. Johnson, I think, I'm

10   pretty sure said it had been paid back.  And I asked for some

11   evidence of that, I don't have that yet.  But again, those

12   things are, you know, relatively modest dollar amounts, in my

13   opinion.  I haven't pushed it, because there would be no

14   point if this case is converted.

15             So those -- those are there.  That's what --

16        Q.   Do they --

17        A.   -- comes to mind.

18        Q.   I'm sorry for interrupting you.

19             On that same topic, if this case is converted,

20   what happens to the $130,000 that you've collected to date?

21        A.   I will pay it over to, out to -- out to the

22   Debtor, the debtor-in-possession or his lawyer.  So that's

23   what will happen.

24        Q.   And based on your experience and your

25   understanding of the unique circumstances of this case, what

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 430 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page83 of 118

83

1    risks do you see with a conversion to Chapter 11 as it

2    pertains to the interests of creditors and the Debtor?

3          A.    Well, my experience is mostly, maybe, I don't know

4    --

5                MR. SHEADE:  Objection, Your Honor.  Outside the

6    scope.

7                THE COURT:  Overruled.  You may answer.

8                THE WITNESS:  So my experience is in, really, in

9    conversion from 7 to 13, that happens, really, pretty

10   frequently.  I don't know that I've had a case where a 7 has

11   been -- has to be converted to an 11 by someone other than a

12   U.S. Trustee.

13               So in -- so my conclusion is if a debtor is forced

14   to go to a chapter he doesn't -- she -- he or she does not

15   want to do, it really makes the likelihood of success of that

16   conversion, it minimizes it greatly.  They fail in the 13

17   because the debtor is not motivated, things happen, they

18   don't really want to be there, and they usually end back --

19   end up back in a 7.

20               And then I believe the law is that Mr. Johnson

21   would have the right to use this $130,000 in the 11, and

22   that's what -- that's what 11's allow people to do, do what

23   he does.  And then if it came back as a 7, that would be gone

24   and there wouldn't be anything.

25               So it's just one of those things that's kind of

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 431 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page84 of 118

84

1   how it works, but I -- in my opinion, that's why it's like,

2   well, since he's being forced, that just minimizes the

3   likelihood of success.  But if he wants to, then that's -- I

4   know he said he didn't, but if he wanted to, that would be

5   okay I think.  You know, I wouldn't object to that.

6          BY MS. RILEY:

7          Q.   Is it fair to say that your opposition to

8   conversion in this case is based on what you believe in your

9   experience and business judgment to be in the best interest

10  of the parties?

11         A.   Yeah.  As stated, it just -- I can't say from 11

12  experience, but in 13's they, many -- most of them fail.  So

13  it will end up back as a 7.  And the money's gone, and the

14  assets are gone, when they come back.

15             MS. RILEY:  That is all the questions that I have

16  for you, Mr. Peters.  Thank you.

17             THE WITNESS:  All right.

18             THE COURT:  Mr. Brinen, anything?

19        (No audible response.)

20             THE COURT:  You're on mute.

21             MR. BRINEN:  No questions, Your Honor.  Thank you.

22             THE COURT:  Okay.  Thank you.

23             Mr. Sheade, any redirect?

24             MR. SHEADE:  Very quickly, Your Honor.  Very, very

25  quickly.

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 432 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page85 of 118

85

REDIRECT EXAMINATION

BY MR. SHEADE:

Q.   Mr. Peters, can you see my screen share?

A.   I can.

Q.   And this represents Schedule AB?

A.   Uh-huh.

Q.   The property.  You testified that, just now, that that 27,000 was for the funds from Ms. Tammy Miller, is that correct?

A.   Well, that's what Mr. Johnson said, as reflected in the bank statement probably in October or September, shortly prepetition of 2019.

Q.   So, Mr. Peters, what is -- can you tell me how much was stated as nonexempt cash assets on Schedule AB?

A.   Well, I kind of need to see the exemption, because I don't remember.  I don't know, I mean, there's cash of 27,000.  I'm not sure.  If I recall, there was the exemptions in the original petition kind of didn't make sense to me, but I'd need to see them, I don't remember.  But ultimately, ultimately, by hook or by crook, I got the 27.

Q.   And if -- Mr. Peters, as a Chapter 7 trustee, if the 27,000 was for cash, and if you found that there was no payment prior to the petition date of reimbursement as you testified to, what would be your -- your process moving forward?  Would you go --

Case 1:22-cv-00332-REB  Document 9-1  Filed 03/03/22  USDC Colorado  Page 433 of 516
Case:19-19816-EEB  Doc#:142  Filed:06/02/21  Entered:06/02/21 10:25:25  Page86 of 118

86

1           MR. BRINEN:  Objection, Your Honor.

2           MR. SHEADE:  -- (unintelligible) Miller --

3           MR. BRINEN:  Relevance.

4           MS. RILEY:  Same objection.

5           MR. SHEADE:  It's --

6           THE COURT:  Yes.

7           MR. SHEADE:  Sorry, Your Honor.

8           THE COURT:  Your response, Mr. Sheade?

9           MR. SHEADE:  I am only answering questions as to

10   what he testified on, and he had testified that he looked at

11   the October 2019 statements and that he found that it was

12   received, but I -- but if it wasn't, what was -- and I could

13   show that, what would he do, is what I'm asking.

14           THE COURT:  I'm not sure I understand what you

15   just said.  Can you repeat it?

16           MR. SHEADE:  I'm just -- yes, I'm looking to

17   understand if he -- I'm looking to understand his

18   investigation, if there is no October 2019 payment, as he

19   testified to.

20           THE COURT:  I'll allow.

21           THE WITNESS:  So I guess I'll say this.  As in

22   response to your email to my lawyers on Friday where you

23   recited the Trustee handbook at great length, accusing me of

24   not doing my job, you know, breaching fiduciary duty and so

25   forth, so if that had not been paid, then I would proceed to

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 434 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page87 of 118

87

1  potentially sue, dig a little deeper, but maybe sue Ms.

2  Miller.  Say, hey, you know, you got -- Mr. Johnson paid your

3  share of the half of the house and he didn't get his money

4  back, so we either need to sell the house or you -- you pay

5  what would be Mr. Johnson's share that -- that he fronted for

6  an interest that you, Ms. Miller, got in this house or

7  through the limited LLC, whatever it was, that was sort of a

8  giveaway.  That's what I would do as part of my job.

9      Q.   Thank you, Mr. Peters.  And what information did

10  you rely on to determine that the money was reimbursed?

11          MS. RILEY:  I'm going to object on the same basis

12  as before.

13          THE COURT:  Overruled.

14          MS. RILEY:  Relevance.

15          THE COURT:  Overruled.

16      (No audible response.)

17          THE COURT:  You may answer, Mr. Peters.

18          THE WITNESS:  Oh, I'm sorry.  Can you repeat the

19  question?  Sorry.

20      BY MR. SHEADE:

21      Q.   What -- what information did you rely on to -- to

22  determine that Ms. Miller did pay -- make the payment, or the

23  reimbursement, to Mr. Johnson?

24      A.   First of all, in the pretty lengthy list of real

25  estate closing documents, I mean, there might have been 30

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 435 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page88 of 118

88

1   pages, you may have them, I don't know if they're -- if

2   they're in these exhibits somewhere.  I looked at the

3   settlement sheet to kind of check the numbers to see, you

4   know, who did what, the amount of the loan, how much was the

5   down payment, and concluded, yeah, it was right around 30ish

6   that would be Mrs. Miller's share, maybe 31, right in those

7   numbers, it gets confusing.  And then I basically -- I think

8   they came in the bank statement, or I asked and said, well,

9   we need to resolve this.

10          But the money, I can't recall -- I'm pretty sure I

11  recall Mr. Johnson said he had -- he had $27,000 in $100

12  bills, and it was from that.  Maybe he cashed it out of a

13  bank account, I'm not sure.  But at the end it didn't matter

14  if it was cash that Ms. Miller paid him, you know, in

15  currency, or it was put in a bank account, wired or whatnot,

16  but that was the number that I was entitled to, less -- you

17  know, after accounting for three that had been spent

18  prepetition.

19      Q.   Okay.  There was testimony on the best interest of

20  all beneficiaries that you gave your opinion that it is in

21  the best interest of -- of all parties.  Have -- has the

22  estate received sufficient funds to pay the Trustee's

23  attorney's fees to date?

24      A.   As I said, I have about $135,000, more or less,

25  and I think my attorney's fees are about 11 or 12, something

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 436 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page89 of 118

89

1  like that, so, yeah.  Before this hearing, attorney's fees

2  and so forth, but yeah, for sure I do.

3       Q.    If Mr. Johnson has -- if the 2020 statements that

4  have been admitted demonstrate Mr. Johnson has paid $12,000

5  towards the other -- the second unsecured debt, would that

6  not demonstrate that he is paying all debts other than the

7  law firm?

8            MS. RILEY:  Objection to relevance.

9            THE COURT:  What is the relevance to a conversion

10 motion?

11           MR. SHEADE:  But the best interest of the law --

12 of all creditors.  If all of the creditors will be paid, the

13 best interest is the Law Firm, as to the remaining

14 beneficiaries.

15           THE COURT:  I'm going to allow it.

16           THE WITNESS:  Well, I'm not sure I understand the

17 question, Mr. Sheade.  I do know from seeing somewhere in one

18 of these I recall Mr. Johnson paid the law firm $20,000, I

19 think, maybe towards their attorney's fees.  So he did pay

20 them that sometime prepetition.  I did look at that wondering

21 if it might have been a recoverable preference.  I believe it

22 was before 90 days before the petition, and I probably

23 concluded they're not an insider and I could go back a year.

24 But maybe they are, and I --

25           MR. SHEADE:  Mr. Peters, may I stop you?  I

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 437 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page90 of 118

90

1  apologize, I don't mean to interrupt, but I'm going to

2  clarify my question because I -- we all know that that

3  payment was made, and I appreciate you bringing that up.

4       BY MR. SHEADE:

5       Q.   My question is, if the Law Firm is the only

6  creditor that is not continuing to be paid post-petition, is

7  your duty to the Law Firm, and only the Law Firm?

8       A.   What a creditor received by a debtor post-petition

9  doesn't really tell me what the status is of the case, unless

10 it might suggest some sort of collusion or fraud, like

11 suddenly there is huge money that comes out of nowhere and a

12 half a million dollars goes and, like, where was it.  I don't

13 -- I don't know that I -- I particularly scrutinize what the

14 debtor does post-petition because that's their funds received

15 post-petition, of course, are not generally, with a few

16 exceptions, property of the estate.  So I guess I'm -- I

17 guess I'm not sure what -- what you're --

18      Q.   Okay.

19      A.   -- hoping to answer your question.

20           MR. SHEADE:  No further questions.

21           THE COURT:  Thank you.

22           MR. SHEADE:  Thank you, Mr. Peters.  No further

23 questions.

24           THE COURT:  All right.  Do you rest your case, Mr.

25 Sheade?

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 438 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page91 of 118

91

 1                    MR. SHEADE:  Yes, Your Honor.

 2                    THE COURT:  Okay.

 3                    Do parties believe it's necessary to put on any

 4      other evidence for their cases?  I'll ask you first, Mr.

 5      Brinen.

 6                    MR. BRINEN:  Thank you, Your Honor.  I do not need

 7      to put on any further evidence.

 8                    THE COURT:  Okay.

 9                    And, Ms. Riley, do you?

10                    MS. RILEY:  No, I do not, Your Honor.

11                    THE COURT:  Okay.  Do we have the responder's

12      exhibits in evidence?  Do you need to move for any?

13                    MR. BRINEN:  Your Honor, I believe you admitted

14      Exhibits A and B in the very beginning.

15                    THE COURT:  Correct.  Okay.

16                    MR. BRINEN:  So they're -- we're okay.

17                    THE COURT:  All right.

18                    Ms. Riley, any additional ones for you?

19                    MS. RILEY:  No, Your Honor.  Those are joint

20      exhibits.  Thank you.

21                    THE COURT:  Okay.

22                    We're right at noon, and I have a meeting at noon.

23      So what if we do closing arguments at 3:00 or 3:15?  Will

24      that be okay for the lawyers?

25                    MR. BRINEN:  That works for the Debtor, Your

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 439 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page92 of 118

92

 1   Honor, for me.

 2            THE COURT:  Okay.

 3            MS. RILEY:  That's fine for me, as well.

 4            MR. SHEADE:  Your Honor, I always -- I always

 5   enjoy written closings, but -- but I can make myself

 6   available at that time (unintelligible).

 7            THE COURT:  Well, if you all want to do written

 8   closings.  My experience is it's often costly, more time-

 9   consuming, and I don't get to ask my questions I have any, so

10   you don't necessarily know where I want to focus.  But I'm

11   happy to accept it that way if that's what everybody wants to

12   do.

13            MR. BRINEN:  Your Honor, the Debtor opposes

14   written closing arguments.  It's for the reasons you just

15   stated.

16            THE COURT:  Okay.

17            MS. RILEY:  My preference would also be for an

18   oral closing argument.

19            THE COURT:  Okay.  Why don't we say 3:15 today?

20            Trish, can they have the same Zoom numbers and

21   password?

22        (No audible response.)

23            THE COURT:  Or, Ruth, do you know?

24            THE COURT CLERK:  I don't know.  I'm sorry, I

25   don't know if we have to send them a new invitation or --

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 440 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page93 of 118

93

1           THE COURT:  Okay.

2           THE COURT CLERK:  Would you like it by Zoom and

3    not by phone?

4           THE COURT:  Yeah, I would.

5           THE COURT CLERK:  Okay.

6           THE COURT:  And so if we need to send you new

7    ones, watch your email, but otherwise assume that it's the

8    same ones.  And any parties and witnesses are totally able to

9    call in or Zoom in for the closing arguments, as well.  Okay.

10          All right.  So we'll recess until 3:15.  Thank you

11   all.

12          MR. BRINEN:  Thank you, Your Honor.

13          MS. RILEY:  Thank you.

14          MR. BRINEN:  Thank you.

15          THE COURT CLERK:  The Court is now in recess.

16          Parties, this is Trish, and I will, if any of you

17   are remaining, I will leave this same Zoom running.  It will

18   just be no video and no sound.  So if you want to just leave

19   it, you may.  But I will not be sending out a new invitation.

20          MS. RILEY:  All right.  Thank you.

21          MR. BRINEN:  Thank you.

22          MR. SHEADE:  Thank you.

23          THE COURT CLERK:  Thank you.

24       (Recess from 11:58 a.m. until 3:16 p.m.)

25          THE COURT CLERK:  The United States Bankruptcy

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 441 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page94 of 118

94

 1  Court for the District of Colorado is now in session, the

 2  Honorable Elizabeth E. Brown presiding.

 3          THE COURT:  Good afternoon.  We're back on the

 4  record in the case of *Alexander Johnson*, it's Case Number 19-

 5  19816.  And let's just briefly give appearances of the

 6  attorneys.

 7          Since we can't --

 8          MR. SHEADE:  Good afternoon, Your --

 9          THE COURT:  Oh, go ahead.

10          MR. SHEADE:  Good afternoon, Your Honor.  Joshua

11  Sheade on behalf of the law firm Ritchie, Dillard, Davies &

12  Johnson, P.C.

13          THE COURT:  Thank you.

14          MR. BRINEN:  Good afternoon, Your Honor.  Jeff

15  Brinen on behalf of the Debtor, Alexander Johnson.

16          THE COURT:  Thank you.

17          MS. RILEY:  Good afternoon, Your Honor.  Lindsay

18  Riley on behalf of the Chapter 7 Trustee, Stephen Peters.

19          THE COURT:  Thank you.

20          All right.  So let's start with our Movant's

21  closing argument.

22          MR. SHEADE:  Thank you, Your Honor.  Before going

23  forward, the Law Firm respectfully requests some clarity.  I

24  apologize, I didn't write it down.  But as for bank

25  statements that were admitted, was that all prepetition or --

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 442 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page95 of 118

95

1   January 2020 moving forward, so it would be December 2019

2   moving forward?

3                    THE COURT:  January 2020 to the present.

4                    MR. SHEADE:  Okay.  Thank you, Your Honor.

5                    CLOSING ARGUMENT BY MR. SHEADE

6                       ON BEHALF OF THE MOVANT

7                    MR. SHEADE:  So as stated in opening arguments,

8   the bankruptcy court has broad discretion in exercising its

9   power of conversion.  Since there is no specific grounds on

10  determining conversion under 706(b), the Court should

11  consider anything relevant that furthers the goals of the

12  Bankruptcy Code, and that -- those goals are made of

13  maximizing the bankruptcy estate and allowing a debtor an

14  unfortunate -- an honest but unfortunate debtor, to a

15  discharge.

16          In Chapter 7 a discharge exists under 727, in

17  Chapter 11 an individual is entitled to a discharge after a

18  plan payment.  The discharge does exist, and one court has

19  suggested that conversion, the *Scheufler* court rationalizes

20  that conversion was based on the ability to pay a loan

21  because a debtor is not -- there is no constitutional right

22  to a bankruptcy discharge, and the ability to receive a

23  discharge under the proper section of the Bankruptcy Code in

24  and of itself was the benefit to the debtor in that case.

25          Now, before getting to the benefits of the Debtor,

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 443 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page96 of 118

96

1   I would like to start with the easier part of this and what

2   would be the benefit to the creditor based on known income.

3   And based on no income we have -- Mr. Peters testified that

4   the bankruptcy estate has recovered approximately $136,000 in

5   215 -- I'm sorry, $136,215 is what I calculated, and if I'm

6   incorrect I apologize.

7            And then Mr. Peters testified that the

8   administrative expenses at this point would be $11 to

9   $12,000.

10           Now, the Law Firm's calculation based on the

11  originally scheduled unsecured debts, and not the reduced

12  debt, based on the 2020 bank statements will show, but the

13  original calculation of the Easement Credit Union and the

14  Ritchie, Dillard, Davies & Johnson, the Law Firm's proof of

15  claim, we have a approximately 13 percent return.

16           Now, looking at the pay stub that -- for the most

17  recent pay stub that Mr. Johnson, the Debtor, provided,

18  that's over $1 million, and in putting that into the Schedule

19  IJ calculations, what --

20           MR. SHEADE:  Am I frozen?

21           THE COURT:  Yeah.

22           MR. SHEADE:  Okay.

23           THE COURT:  Okay.  You talked about the pay stub

24  showing $1 million --

25           MR. SHEADE:  Yes.

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 444 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page97 of 118

97

1           THE COURT:  -- and then that's when it froze.

2           MR. SHEADE:  Okay.  And I'm back.

3           So based on that amount, when it's input into the

4    Schedule IJ calculation and monthly disposable income,

5    reduced by the Schedule J amounts that are of $10,000, we're

6    looking at a 100 percent plan.  And we can only know what we

7    know and not what we do not know.  Mr. Johnson could receive

8    a $500,000 one-year contract, or Mr. Johnson could receive a

9    three-year $10 million contract.  What we don't know we

10   cannot, you know, speculate here.

11          In addition, as for injury, things of that nature

12   happen all the time.  It's just -- it's just not specified in

13   the football context.  It's where a doctor who has to be on

14   his feet all the time and can't operate any longer because,

15   you know, he loses his legs in a car accident, there are

16   safeguards in the Bankruptcy Code that if a unfortunate event

17   does occur in the future there is the opportunity to convert

18   back to a Chapter 7.

19          Now, I can never pronounce the case, but Mariam

20   (phonetic) -- I believe it's Miramma (phonetic), is that how

21   you pronounce that case?

22          THE COURT:  Yes.

23          MR. SHEADE:  The Law Firm does understand that

24   there is no absolute right to conversion, but the prevention

25   of conversion in those cases is really, it deals with bad

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 445 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page98 of 118

98

1  faith, not with unfortunate events.

2          So at this time frame, based on the income that we

3  have here, we see that the Debtor can pay his debts, the

4  bankruptcy estate would be enlarged greatly, the maximization

5  of the -- of the estate would be a benefit to the creditor

6  and would, you know, adhere to the policies of the Code.

7          As for the more difficult question based on the

8  legislative history of 706(b), whether or not there's a

9  benefit to the Debtor, the Law Firm does strongly urge the

10 Court to recognize that the whole -- this aspect of there is

11 no constitutional right to a discharge and Mr. Johnson would

12 have the same -- this opportunity to a discharge under the

13 more -- under the proper provision for what he bases his

14 income on.

15         Furthermore, there is case -- the case law --

16 there's case law that discusses, for example, In re Baker

17 (phonetic), In re Decker (phonetic), which is out of Alaska -

18 - and I can provide case citations.

19         *In re Gordon* is another example, 465 B.R. 683,

20 Northern District -- Northern District of Georgia, 2012.

21         These cases present examples of the benefit to the

22 debtor there, unlike the *Scheufler* case which a

23 constitutional right issue, they found that it avoided

24 further litigation that would further increase costs.  And

25 that was the basis for dissecting these prepetition payments.

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 446 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page99 of 118

99

1         And I know the Court doesn't want to listen to

2    that, I'm just explaining the basis for it.

3         These prepetition payments could be reconciled

4    through a Chapter 11 plan and litigation could be avoided.

5    The best example is the reconciliation, if any, of the -- the

6    real property, the California real property issue.  Mr.

7    Peters, the Trustee, testified to receiving $27,000, and he

8    believed it was for the real property.  But in the end, he

9    ultimately could not recall if that was the basis.

10         What we do know is the $27,000 in Schedule AB

11   shows that Mr. Johnson maintained cash as of the bankruptcy

12   case, and there's a purported reimbursement of $30,000.

13   Everything else we don't know, and if that is a issue of fair

14   legal title, or an issue of a third-party claim, that is an

15   opportunity to avoid litigation and reconcile that in a

16   Chapter 11 plan as part of the liquidation analysis instead

17   of pursuing claims against his own family or friends.

18         So that was the basis for that.

19         There's also other benefits.

20         Mr. Johnson testified that he recently had a

21   child, and congratulations to the Debtor.  And Mr. Peters

22   testified that if this case was converted to a Chapter 11 the

23   Chapter 7 Trustee has to return all funds to the Debtor.  The

24   return of the funds to the Debtor in the short term allows

25   for this, you know, to hold these funds and be able to afford

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 447 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page100 of
118

100

1    additional family expenses that come with a child.  Also, a

2    Chapter 11 plan would be, the creditor acknowledges that

3    there would be reductions in the Chapter 11 plan, but this is

4    a benefit to the Debtor that he -- of the return of those

5    funds in the short term.

6            Another benefit to the Debtor is, and I must

7    request or ask the Court if I just want to touch on --

8    briefly touch on this, but not going to the specifics, the

9    issue of 707(a), not 707(b).

10           707(a) does not have a time frame for, you know,

11   similar to its counterpart under 707(b), and the Law Firm

12   recognizes this as -- because 707(b) states it's an issue of

13   primarily consumer debt.  The Debtor in this case represents

14   to hold not intermittent debts under the voluntary petitions,

15   if we look there the question of whether these are consumer

16   debts, no; whether these are business debts, instead of

17   answering no and then going to the third line to explain, it

18   said these are business debts.

19           Now, 707(b) states that the presumption of use,

20   you know, issue and determination arises if these are

21   primarily consumer debts, but that's not what we have here.

22   So I bring this up because the Law Firm does still have an

23   opportunity to pursue what is recognized now probably as

24   incorrectly framed a 707(b) argument, but more as a -- the

25   non-exhaustive 707(a) cause argument because of this improper

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 448 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page101 of
118

101

1    classification leading to the allowance of withholding

2    demonstration of whether abuse exists on his -- on his lien

3    tests.

4              And the *Quinn* court, *In re Quinn*, which is a New

5    Mexico case, 490 B.R. 607, provides that the factors -- and

6    the two cases out of New Mexico both were motions to dismiss,

7    in the alternative convert, and it related to a 707(a)

8    argument.

9              "And factors relevant to the evaluation include

10   the debtor's manipulation having the effect of frustrating

11   one particular creditor, debtor's failure to make significant

12   lifestyle changes, sufficient resources to pay substantial

13   portion of debts, inflates expenses to the (unintelligible)

14   of financial well-being, and over utilizing protections of

15   the Bankruptcy Code to conscious detriment of the -- of

16   creditors."

17             I'm not going to go into detailed argument, but

18   conversion here would avoid any further notice and gain under

19   707(a).  And I can go into further argument if the Court has

20   any questions on that.

21             With that said, the Law Firm does believe that a

22   conversion inures to the benefit of all parties and

23   interests, which would include Mr. Johnson, which would

24   include the administration -- administrative expenses of the

25   Chapter 7 Trustee, and the only unsecured creditor that is

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 449 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page102 of 118

102

 1  not continued to be paid, which is the Law Firm.

 2              THE COURT:  Okay.  Thank you.

 3              MR. SHEADE:  Thank you, Your Honor.

 4              THE COURT:  Mr. Brinen.

 5              MR. BRINEN:  Thank you, Your Honor.

 6                  CLOSING ARGUMENT BY MR. BRINEN

 7                   ON BEHALF OF THE DEBTOR

 8              MR. BRINEN:  Just starting with the statute,

 9  706(b), I agree.  It basically says that the notice and a

10  hearing, the Court may convert a case under Chapter 7 to a

11  case under Chapter 11.  It doesn't state that the Court shall

12  do so, and it doesn't state that the debtor has any veto

13  rights.  It's within the sound discretion of the court.

14              Now, looking at some of the cases that have

15  interpreted that, the cases pretty much universally look at

16  the interest of all the parties, including the debtor.

17              In the *Gordon* case, at 465 B.R. 683, a 2012 case

18  out of the Northern District of Georgia, in that case the

19  debtor was a very high paid consultant who had a job with a

20  company that had a restrictive covenant if he were to leave.

21  He left, he violated the covenant.  He was sued, he lost.

22  And what the court said was that it made sense to convert the

23  case to a Chapter 11 in that case because the debtor, Mr.

24  Gordon, had become a pawn in a litigation battle between the

25  former company in the current company.

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 450 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page103 of 118

103

1          Further, that the court seemed to presume that

2     there was a reasonable chance that the former company's

3     judgment would be nondischargeable, and the court said that

4     would be more -- well, I think the court said it would be a

5     preferred method of dealing with it in a Chapter 11.

6          Now, in the case of *In re Smith*, 544 B.R. 126,

7     that's a 2016 case out of the Western District of Texas, in

8     that case the debtors had approximately $2700 and some

9     dollars of monthly disposable income, and I believe in that

10    case the U.S. Trustee's Office moved to put it in a chapter -

11    - convert it to a Chapter 11.  And the court declined to do

12    so stating that it doesn't inure to the benefit of the debtor

13    in that case.  And the court give an example of what it might

14    -- the court said, for example, if the debtors had tax debt

15    that could be paid overtime pursuant to 1129(a)(9)(c), that

16    might make sense.  Otherwise, it did not make sense, even

17    though the debtor had that excess income.

18         The case of *In re Lobera*, L-O-B-E-R-A, at 454 B.R.

19    824, that is a New Mexico case in 2011.  In that case the

20    debtor was a physician.  His IJ schedules show excess monthly

21    income of 18,579.  The moving party to covert to Chapter 11

22    showed that the expenses were inflated and in actuality the

23    debtor might have as much as $33,000 a month of excess

24    income.  But the court didn't convert.  The court said on

25    balance the fresh start for debtors envisioned by Congress

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 451 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page104 of
118

104

1    outweighs what would have been an increased estate.

2            And then the last case I want to cite, Your Honor,

3    is *In re Hardigan* at 490 B.R. 437.  That's a bankruptcy case

4    out of the Southern District of Georgia in 2013.  That's an

5    interesting case because the debtor was a 60-year-old

6    cardiologist employed in a, what appeared to be a prominent

7    cardiologist practice, and he grossed over a half a million

8    dollars a year in income.  At that time, there was about

9    $185,000 available for distribution.

10           The court pointed out, as the other courts have,

11   that the burden in a motion to convert under 706(b) is on the

12   moving party.  And again the court said that it must consider

13   whether a conversion would inure to the benefit -- to the

14   best interest of all parties.

15           And the court looked at some certain factors,

16   including does the debtor have a stable source of income

17   sufficient to repay a meaningful amount of the debt and still

18   provide an opportunity to restore himself to a stable

19   financial position, whether the debts were incurred in a

20   reckless pre-bankruptcy spending spree, and other factors

21   involving the debtor's future.

22           And the court determined that at age 60 a five-

23   year payout under Chapter 11 would leave the debtor with

24   insufficient time to obtain restoration of financial health

25   that a properly applied fresh start requires.

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 452 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page105 of 118

105

1        So now let's look at our case, because I would

2   submit that a 29-year-old linebacker in the NFL, in his third

3   season, is comparable, if not over in effect than a 60-year-

4   old cardiologist.

5        And, Mr. Sheade, I hear what he's saying that, you

6   know, yes, a doctor can get injured, an attorney can get

7   injured, anybody can be injured, and I -- I don't have

8   statistics to cite, but common sense tells us that pro

9   football is a violent sport, there are lots of injuries, and

10  as Mr. Johnson testified, he doesn't have the insurance --

11  insurance, and if he's injured his career could be over and

12  that would be it for him.  Certainly, a much greater

13  likelihood of that happening to him than happening to a

14  doctor, a lawyer, or any other profession, or any other

15  person who doesn't engage in that type of activity.

16        Right now, Mr. Johnson makes good money, there's

17  no question.  I mean, he got confused about his pay stub, but

18  he makes good money.  And --

19        THE COURT:  So were you reading that W-2 to

20  indicate it was $1 million for three years, or for the year-

21  to-date in 2020?

22        MR. BRINEN:  Year-to-date.

23        THE COURT:  Okay.

24        MR. BRINEN:  Yeah.  Because I think that for

25  fairness bonuses and some other -- I mean, that was the gross

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 453 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page106 of 118

106

1    -- gross income --

2              THE COURT:  Okay.

3              MR. BRINEN:  -- year-to-date.

4              And he should make more than that next year, if he

5    stays healthy.

6              I ask that the Court considered the Debtor's age.

7    He testified that in all likelihood, if he finishes this

8    season healthy, he will be a restricted free agent next year

9    and receive a one-year proposal from the -- from the Denver

10   Broncos, and that if he gets hurt that he won't get paid.

11   Each year -- each year he plays he has more wear and tear on

12   his body, and each year he takes the risk of getting injured

13   and having his career cut short, either due to a decreased

14   performance or inability to play because of injury.

15             He testified, Mr. Johnson, that his income between

16   when he graduated from college and when he started playing

17   football, was approximately $12 to $14 an hour.  And he

18   doesn't have plans, he doesn't know what he's going to do

19   when he does retire from football.  As like that doctor in

20   *Hardigan*, take for example if he were to pay out a

21   substantial portion of his income over the next year and then

22   get injured, there's no way he'll be financially

23   rehabilitated.  He'll be in Chapter 7, he'll be starting

24   over, and he won't have the -- he will have lost most of the

25   benefit of what he's worked so hard for.

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 454 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page107 of 118

107

1              I mean, his income is not stable.  It depends upon

2    how he plays, it depends upon his health, it depends upon the

3    salary, it depends upon a lot of different factors, but it's

4    year-to-year right now.

5              THE COURT:  But theoretically, a debtor could

6    propose a Chapter 11 plan that said I will pay my PDI,

7    whatever that is, into the plan for five years, right?

8              MR. BRINEN:  He can, and then -- but -- but we

9    don't even know what that's going to be, because we don't

10   even know how long he's going to play or how what that will

11   be.  But, yes, his projected disposable income for five years

12   could be.

13             But let's just say, for example, like I said, he

14   plays one more year, pays most of it out to the creditors and

15   then gets injured, his career is over and he's got pretty

16   much -- he's got another, if he lives an average lifespan,

17   perhaps maybe 50 years to go with no real likely opportunity

18   to earn the kind of money that he's earning now.  I mean,

19   it's just a short in his career.

20             So yes, he could, but it's certainly isn't in his

21   best -- in his best interest to do so, at all.

22             He has a new baby and a fiancée, and Mr. Sheade

23   talked about the IJ expenses and plugging them in.  The

24   expenses are going to change.  The expenses were put in

25   before he had a child and before he was engaged to be

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 455 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page108 of
118

108

1    married.  He's living in an apartment, I mean, so -- so the

2    expenses will change, and there's a great deal of uncertainty

3    as to what will happen in the Chapter 11.

4            Mr. Johnson testified that he has a financial

5    advisor.  Why does he have a financial advisor at this point?

6    Because he knows -- he knows that he has to make every amount

7    of his earnings count and last, because he's not going to

8    have another chance.

9            This would be different if the debtor was making

10   anywhere near this kind of money and had the likelihood of

11   any reasonable length of career, it's just not the case.

12           The U.S. Trustee, Mr. Moss, explained, they filed

13   the motion, they looked into everything in terms of the

14   information in the Schedules and so forth.  They could have

15   moved to dismiss, they could have done a lot of different

16   things, they could have objected to discharge.  They

17   investigated and after 60 days determined that there was no

18   cause to bring any of that type of litigation.

19           And I submit that -- that in a Chapter 11 it

20   should carry a "careful what you wish for" cautionary note,

21   because, yes, Mr. Peters could return the 135 or $136,000

22   he's collected, but we don't know what's going to happen from

23   there.  We just -- we just don't know.  Perhaps it would --

24   it would be to the benefit of the creditors, perhaps not.

25           But if we consider the interest of all the parties

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 456 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page109 of
118

109

1    as the cases require, it makes no sense to deny the motion to

2    convert.   It may not be in the best interest of the Movant,

3    we don't know, but it's certainly not in the best interest of

4    the Debtor, I would submit, under any scenario; it just

5    isn't.

6              And I believe that the Movant fell considerably

7    short of the burden they had to demonstrate that conversion

8    is in the best interest of all parties, and so I respectfully

9    request that the Court deny the motion to convert.

10             Thank you.

11             THE COURT:   Thank you.

12             Ms. Riley.

13             MS. RILEY:   Thank you, Your Honor.   I'm going to

14   try and keep it short in the interest of time and not to be

15   redundant with what Mr. Brinen has already argued.

16                   CLOSING ARGUMENT BY MS. RILEY

17                 ON BEHALF OF THE CHAPTER 7 TRUSTEE

18             MS. RILEY:   I agree with his assessment of the

19   statues and the case law and their applicability to Mr.

20   Johnson's case.

21             Mr. Sheade warned against, you know, thinking

22   about what we don't know and focusing on what we do know.

23   And what we do know, just as Mr. Brinen reiterated, is the

24   uncertainty of Mr. Johnson's career in the NFL.   We know

25   also, on top of that, that he has a desire to be in a Chapter

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 457 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page110 of 118

110

1   11.   We also know, from Mr. Peter's testimony, that he has

2   already gathered approximately $130,000 in assets that could

3   be distributed to creditors in a Chapter 7 case.

4          He also testified about the risk of a conversion

5   to a Chapter 11.   If Mr. Johnson doesn't remain in the NFL

6   for another five years for the time of the plan, it's likely

7   this case would reconvert to a Chapter 7 case.   Upon

8   conversion to the Chapter 11, the money goes back to the

9   Debtor.   If he uses that money to live on, upon reconversion

10  to Chapter 7, there is a distinct possibility there would be

11  no money left for the creditors.

12         So operating on what we do know, it's the

13  Trustee's position that the prudent approach here, and that

14  which serves the best interest of all of the parties in

15  interest, including the Debtor, is to remain in Chapter 7

16  where the creditors are assured to receive their

17  proportionate distribution of the funds he's collected so far

18  and any funds that he collects in the remainder of the

19  Chapter 7 case.

20         It's not about whether a Chapter 11 could happen,

21  it's about whether or not it is in the interest of the

22  parties, and it was the Movant's burden to establish that

23  beyond a preponderance of the evidence, and I would submit

24  that the evidence before the Court today does not meet that

25  threshold.   And so for that reason, we would ask that the

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 458 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page111 of 118

111

1   motion to convert and to dismiss be denied.

2           THE COURT:  Okay.  Thank you.

3           And the final word to Mr. Sheade.

4           MR. SHEADE:  Thank you, Your Honor.

5           First off, the -- as I understand it, I might be

6   incorrect, but I have read the legislative history to state

7   that it's not whether or not -- it's not about best interest.

8   Best interest is a completely separate test in -- in other

9   sections, it's about benefits.  So we're looking at the

10  benefit to the debtor of discharge and payments over time.

11  We're looking at the benefit to the bankruptcy estate being

12  maximized.  We're looking at the benefit to the Law Firm

13  based on the belief that there's going to be a larger amount

14  paid to creditors if this case were converted to a Chapter

15  11.

16          Even if hypothetically if -- given the

17  hypotheticals of getting injured or not playing,

18  hypothetically if the same income is earned next year as the

19  amount seen on the pay stub admitted into evidence, and

20  reduced by current expenses, since we don't -- I can't, you

21  know, provide a change in expenses, we're look -- the estate

22  would be looking at a $473,000 distribution for -- if he only

23  played one more year.  That's still grossly larger than the

24  amount subject to distributions by -- by the Chapter 7

25  Trustee, 136,000.

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 459 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page112 of
118

112

1        And I'm not trying to create enemies or trying to

2   offend anybody or have a fight, but it's just the Law Firm

3   sees this as, to use a phrase of a colleague in this office,

4   "a dog in the fight," because of the ability to distribute

5   136,000.  But I don't want to go off track and go to that any

6   further than that, but the 473,000, if he only played one

7   year, is still greater than what would be received in a

8   Chapter 7.  And I've already presented on the benefit.

9        I do want to point out that this case also is a --

10  it's stated as a non-consumer and not a -- and not a consumer

11  case.  706(b) is the sole avenue of conversion, and it's very

12  simple to have this be a non-consumer case, not have to do a

13  means test, and go forward and require the attorney time and

14  attention to call that out when there is a capability of

15  paying.  I believe -- the Law Firm believes that 706(b) has

16  been -- as Congress keeps it vague and subject to the

17  discretion of the Court to do whatever -- whatever is in the

18  sound policy of the Code so that we could maximize payment to

19  creditors as well as a benefit to Debtor with the discharge.

20  Thank you.

21        THE COURT:  Thank you.

22        Okay.  I had some time to consider --

23        Somebody's got a lot of feedback in the

24  background.  Maybe now that the Court's going to rule, maybe

25  you could put yourselves on mute so that we could eliminate

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 460 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page113 of
118

113

1   that.   Thank you.

2          All right.   I had some time between my noon

3   meeting and my 2 o'clock conference call to consider a

4   tentative ruling, and then I wanted to wait, obviously, to

5   hear closing arguments and see if something persuaded me

6   otherwise, and I don't think that it has changed my mind, so

7   I'm going to go ahead and rule right now.

8                          COURT'S RULING

9          As Mr. Brinen says, 706(b) gives the Court

10  permission, but does not make it mandatory, to convert a case

11  from a Chapter 7 to a reorganization chapter.   The case law

12  does talk about the benefit to all the parties, and including

13  the debtor.   And I agree with the creditor that the debtor's

14  best interest is not a controlling factor, it's a factor.

15          But all the arguments the creditor advanced for

16  conversion really center on two things.   The first is the

17  potential recovery from preferences and fraudulent

18  conveyances made in the past.   I heard the Trustee's

19  testimony where he convinced me that he thoroughly

20  investigated and concluded that there is not much more that

21  he can recover on transfers, prepetition.   A small amount he

22  testified to, but not a significant amount.

23          But even if there were still significant

24  recoveries possible, as I've said previously, this doesn't

25  tip the scales towards conversion for me because those can be

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 461 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page114 of 118

114

1    pursued, as I've said many times, in either 7 or 11.

2              The liquidation cost -- or the litigation costs

3    that the creditor mentioned are also neutral for me, because

4    the DIP or the Trustee can choose to settle, the Debtor can

5    still choose to repay to avoid his friends and family being

6    sued in either chapter, so all of that is pretty neutral to

7    me.

8              Then I come down to the second ground asserted by

9    the creditor, and that's the ability to capture future

10   income.  And this is clearly the central issue.  It's clear

11   that this would benefit the creditor and any other creditors

12   who have not yet been fully repaid, but it strikes me that

13   this basis alone mirrors 707(b) which tests the projected

14   disposable income and whether it's sufficient to make a

15   meaningful repayment over time.

16             Now, if somebody had brought it to my attention I

17   don't think I would have ever agreed that the legal fees

18   spent fighting to stop the Debtor from being imprisoned would

19   be a business debt, I don't think I would have ever concluded

20   that.  So had the U.S. Trustee pursued the 707(b) and the

21   Debtor fought it on the grounds of these are not primarily

22   consumer debts, I think the Debtor would have lost that.

23             But what's being argued here is basically, as I

24   said, the creditor wants to see the Debtor payout projected

25   disposable income, because it believes that it would make a

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 462 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page115 of
118

115

1   sufficient and meaningful repayment.  If that -- if the

2   Debtor's income were to continue at its present rate, it

3   clearly would.  But I've got the U.S. Trustee telling me that

4   they considered this and made a conscious decision not to

5   pursue it; that's pretty telling to me.

6           And the U.S. Trustee was the only party to

7   request, or to file a request timely, to extend the time to

8   object on a 707(b) basis.  The creditor is not entitled to

9   piggyback on the U.S. Trustee's motion to that extent.  Of

10   course, the creditor's 706(b) motion had no deadline, and so

11   was timely.  But all I really have is what is essentially a

12   707(b) argument.

13           I did find compelling and credible the Debtor's

14   testimony that the Broncos have not begun negotiation on

15   another contract with him.  That even if they did, it would

16   only be a one-year contract, with no entitlement to pay if

17   the Debtor's injured.  He is approaching 29 years of age

18   which makes it less likely that he will be picked up as a

19   free agent.  I hope he will be, but there's no way to predict

20   that.

21           Now, a Chapter 11 debtor can propose a plan based

22   on an unknown income, say pay to creditors 25 percent of

23   whatever his gross income is, or whatever his PDI is.  He

24   could do that type of a plan, but I agree with Mr. Peters'

25   observation that involuntary conversions from Chapter 7 to a

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 463 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page116 of 118

116

1    reorganization case don't have a great track record.  Debtors

2    are not motivated to succeed on those plans.

3            Essentially what's left, in terms of the creditor

4    body, is just this creditor as an unsecured creditor.  And

5    I'm sure that the Law Firm provided great assistance to the

6    Debtor in fighting the criminal and disciplinary proceedings

7    that he was facing, and that work has allowed the Debtor to

8    stay out of jail so that he can pursue his NFL dreams.  So I

9    understand why the Firm would feel outraged that the Debtor

10   could walk away from their debt.  But I see a debtor here who

11   has been extremely forthright and cooperative, in terms of

12   turning over all the money he had to, which the Trustee told

13   us was about 135,000 to date.  He didn't try to hide these

14   funds or to fight his need to turn them over, and I've

15   certainly seen a lot of Chapter 7 debtors who would have done

16   so with this amount of money at stake.

17           Bottom line then is, I see benefit to the creditor

18   with conversion, and I see an obvious disadvantage to the

19   Debtor with a conversion, but this is just not a case where I

20   would exercise my discretion to force the conversion on the

21   Debtor.  It's a tough call, and I can't articulate it

22   probably any better than that so, but that's the Court's

23   ruling.

24           Okay.  All right.  So any housekeeping matters

25   before we recess?

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 464 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page117 of 118

117

1          (No audible response.)

2               THE COURT:  You all are aware that you have to --

3     under the local rules you have to save your exhibits until

4     you know that there is no further appellate rights, because

5     if there's an appeal you have to transmit the exhibits to the

6     appellate court.  So I just want to make sure everybody

7     remembers that.

8               All right.  Anything else housekeeping wise before

9     we recess?

10         (No audible response.)

11              THE COURT:  No.  Okay.

12              All right.  Well, thank you all for your

13    presentation of the evidence and your arguments.  And with

14    that, we will stand in recess.

15              MS. RILEY:  Thank you, Your Honor.

16              THE COURT CLERK:  This Court is now in recess.

17              MR. BRINEN:  Thank you.

18                         *  *  *  *  *

19

20

21

22

23

24

25

Case 1:22-cv-00332-REB   Document 9-1   Filed 03/03/22   USDC Colorado   Page 465 of 516
Case:19-19816-EEB   Doc#:142   Filed:06/02/21   Entered:06/02/21 10:25:25   Page118 of 118

118

1                              CERTIFICATE

2          I, RANDEL RAISON, certify that the foregoing is a

3    correct transcript from the official electronic sound

4    recording of the proceedings in the above-entitled matter, to

5    the best of my ability.

6

7

8    _____          June 2, 2021

9    Randel Raison

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

(COB #237 NtcFilTrans)(09/08)

# UNITED STATES BANKRUPTCY COURT
### District of Colorado

In re:  Alexander Johnson                     Case No.
     Debtor(s)                                **19–19816–EEB**

### NOTICE OF FILING OF TRANSCRIPT
### AND OF DEADLINES RELATED TO RESTRICTION AND REDACTION[1]

     A transcript of the proceeding held on 12/9/2020 was filed on 6/2/2021 . The following deadlines apply:

     The parties have until 6/9/2021 to file with the court a *Notice of Intent to Request Redaction* of this transcript. The deadline for filing a *Request for Redaction* is 6/23/2021 .

     If a request for redaction is filed, the *Redacted Transcript* is due 7/6/2021 . If no such notice is filed, the transcipt may be made available for remote electronic access upon expiration of the restriction period, which is 8/31/2021 unless extended by court order.

     To review the transcript for redaction purposes, you may purchase a copy from the transcriber:

AB Litigation Services
216 16th Street, Suite 600
Denver, CO 80202
(303) 296–0017

or you may view the document at the clerk's office public terminal.

---

[1] The Judciary's privacy policy provides for limiting Social Security and Financial Account numbers to the last four digits, using only initials for the names of minor children, and limiting dates of birth to the year. If such personal identifier information is elicited within court proceedings, this information will appear on the transcript and will become available to the public unless action is take to redact this information.

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF COLORADO**

In re:  JOHNSON, ALEXANDER                    §    Case No. 19-19816
                                             §
                                             §
                                             §

_____Debtor(s)_____

**TRUSTEE'S FINAL REPORT (TFR)**

The undersigned trustee hereby makes this Final Report and states as follows:

1. A petition under Chapter 7 of the United States Bankruptcy Code was filed on 11/13/2019. The undersigned trustee was appointed on 11/13/2019.

2. The trustee faithfully and properly fulfilled the duties enumerated in 11 U.S.C. §704.

3. All scheduled and known assets of the estate have been reduced to cash, released to the debtor as exempt property pursuant to 11 U.S.C. § 522, or have been or will be abandoned pursuant to 11 U.S.C. § 554. An individual estate property record and report showing the disposition of all property of the estate is attached as **Exhibit A**.

4. The trustee realized the gross receipts of          $          133,789.17

       Funds were disbursed in the following amounts:

| | |
|---|---:|
| Payments made under an interim distribution | 0.00 |
| Administrative expenses | 24,008.00 |
| Bank service fees | 2,476.11 |
| Other payments to creditors | 0.00 |
| Non-estate funds paid to 3rd Parties | 2,261.17 |
| Exemptions paid to the debtor | 0.00 |
| Other payments to the debtor | 0.00 |
| Leaving a balance on hand of[1]     $ | 105,043.89 |

The remaining funds are available for distribution.

_____
[1]The balance of funds on hand in the estate may continue to earn interest until disbursed. The interest earned prior to disbursement will be distributed pro rata to creditors within each priority category. The trustee may receive additional compensation not to exceed the maximum compensation set forth under 11 U.S.C. § 326(a) on account of the disbursement of the additional interest.

UST Form 101-7-TFR (5/1/2011)

5. Attached as **Exhibit B** is a cash receipts and disbursements record for each estate bank account.

6. The deadline for filing non-governmental claims in this case was 03/30/2020 and the deadline for filing governmental claims was 05/11/2020. All claims of each class which will receive a distribution have been examined and any objections to the allowance of claims have been resolved. If applicable, a claims analysis, explaining why payment on any claim is not being made, is attached as **Exhibit C**.

7. The Trustee's proposed distribution is attached as **Exhibit D**.

8. Pursuant to 11 U.S.C. § 326(a), the maximum compensation allowable to the trustee is $9,826.40. To the extent that additional interest is earned before case closing, the maximum compensation may increase.

The trustee has received $0.00 as interim compensation and now requests the sum of $9,826.40, for a total compensation of $9,826.40[2]. In addition, the trustee received reimbursement for reasonable and necessary expenses in the amount of $0.00 and now requests reimbursement for expenses of $121.50 for total expenses of $121.50[2].

Pursuant to Fed R Bank P 5009, I hereby certify, under penalty of perjury, that the foregoing report is true and correct.

Date: 09/23/2021              By: /s/ M. Stephen Peters
                                  Trustee

**STATEMENT:** This Uniform Form is associated with an open bankruptcy case, therefore, Paperwork Reduction Act exemption 5 C.F.R. §1320.4(a)(2) applies.

---
[2]If the estate is administratively insolvent, the dollar amounts reflected in this paragraph may be higher than the amounts listed in the Trustee's Proposed Distribution (Exhibit D)

**UST Form 101-7-TFR (5/1/2011)**

# Form 1
## Individual Estate Property Record and Report
## Asset Cases

Exhibit A

Page: 1

**Case No.:** 19-19816

**Case Name:** JOHNSON, ALEXANDER

**For Period Ending:** 09/23/2021

**Trustee Name:** (260020) M. Stephen Peters

**Date Filed (f) or Converted (c):** 11/13/2019 (f)

**§ 341(a) Meeting Date:** 12/19/2019

**Claims Bar Date:** 03/30/2020

| | 1<br>Asset Description<br>(Scheduled And Unscheduled (u) Property)<br><br>Ref. # | 2<br>Petition/<br>Unscheduled<br>Values | 3<br>Estimated Net Value<br>(Value Determined By Trustee,<br>Less Liens, Exemptions,<br>and Other Costs) | 4<br>Property Formally<br>Abandoned<br>OA=§554(a)<br>abandon. | 5<br>Sale/Funds<br>Received by the<br>Estate | 6<br>Asset Fully<br>Administered (FA)/<br>Gross Value of<br>Remaining Assets |
|---|---|---|---|---|---|---|
| 1 | 9100 ROCKY CREEK RD., LOWER, LAKE CA<br>SEE ASSET #10 BELOW | 154,500.00 | 0.00 | | 0.00 | FA |
| 2 | 2007 CHEV TAHOE | 3,287.00 | 9.00 | | 0.00 | FA |
| 3 | 2018 CHEV TAHOE | 41,063.00 | 0.00 | | 0.00 | FA |
| 4 | BEDROOM SET | 2,000.00 | 0.00 | | 0.00 | FA |
| 5 | ELECTRONICS | 1,130.00 | 0.00 | | 0.00 | FA |
| 6 | GOLF CLUBS<br>AFTER ACCOUNTING FOR COSTS OF SALE, TTEE BELIEVES ASSET OF NO VALUE TO ESTATE, SO W LL BE ABANDONED UNDER 11 USC 554C | 250.00 | 0.00 | | 0.00 | FA |
| 7 | WEARING APPAREL (u) | 500.00 | 0.00 | | 0.00 | FA |
| 8 | JEWELRY | 400.00 | 0.00 | | 0.00 | FA |
| 9 | WEEDEATER | 100.00 | 0.00 | | 0.00 | FA |
| 10 | CASH<br>REPRESENTS DOWNPAYMENT MADE BY DEBTOR FOR CO-OWNERS SHARE OF DOWN PAYMENT, FOR ASSET # 1 ABOVE REIMBURSED TO DEBTOR BY COWNER | 27,000.00 | 27,000.00 | | 27,000.00 | FA |
| 11 | EASTMAN BANK ACCT | 17,031.00 | 3,381.00 | | 3,381.00 | FA |
| 12 | EASTMAN CREDIT UNION | 2,025.00 | 2,025.00 | | 2,025.00 | FA |
| 13 | UBS INVESTMENT ACCT | 57,168.00 | 57,168.00 | | 57,168.00 | FA |
| 14 | CB45<br>AFTER ACCOUNTING FOR COSTS OF LIQUIDATION OR SALE OF ASSET AND UNLIKELY VALUE TO ASSET WITHOUT PERSONAL SERVICES OF DEBTOR ASSOIATED THEREWITH, TTEE BELIEVES VALUE IS OF NO OR NOM NAL VALUE SO WILL BE ABANDONED UNDER 11 USC 554C | Unknown | 0.00 | | 0.00 | FA |
| 15 | 401K | 19,639.00 | 0.00 | | 0.00 | FA |
| 16 | SECURITY DEPOSIT | 1,900.00 | 0.00 | | 0.00 | FA |
| 17 | CHIEF BEAST AND CB45 LOGOS<br>AFTER ACCOUNTING FOR COSTS OF LIQUIDATION OR SALE OF ASSET AND UNLIKELY VALUE TO ASSET WITHOUT PERSONAL SERVICES OF DEBTOR ASSOIATED THEREWITH, TTEE BELIEVES VALUE IS OF NO OR NOM NAL VALUE SO WILL BE ABANDONED UNDER 11 USC 554C | Unknown | 0.00 | | 0.00 | FA |
| 18 | SPEED AND BOXING WORKOUT EQUIPMENT | 200.00 | 0.00 | | 0.00 | FA |

# Form 1

## Individual Estate Property Record and Report

## Asset Cases

Exhibit A

Page:  2

**Case No.:**   19-19816

**Case Name:**   JOHNSON, ALEXANDER

**For Period Ending:**   09/23/2021

**Trustee Name:**   (260020) M. Stephen Peters

**Date Filed (f) or Converted (c):**   11/13/2019 (f)

**§ 341(a) Meeting Date:**   12/19/2019

**Claims Bar Date:**   03/30/2020

| Ref. # | 1<br>Asset Description<br>(Scheduled And Unscheduled (u) Property) | 2<br>Petition/<br>Unscheduled<br>Values | 3<br>Estimated Net Value<br>(Value Determined By<br>Trustee,<br>Less Liens, Exemptions,<br>and Other Costs) | 4<br>Property Formally<br>Abandoned<br>OA=§554(a)<br>abandon. | 5<br>Sale/Funds<br>Received by the<br>Estate | 6<br>Asset Fully<br>Administered (FA)/<br>Gross Value of<br>Remaining Assets |
|---|---|---|---|---|---|---|
| 19 | 2019 US AND VARIOUS STATES TAX REFUNDS (u)<br>ESTATE'S SHARE OF  US AND VARIOUS STATES' TAX  ( REFUNDS FROM APPROX  6 STATES) | 0.00 | 41,954.00 | | 41,954.00 | FA |
| **19** | Assets Totals (Excluding unknown values) | **$328,193.00** | **$131,537.00** | | **$131,528.00** | **$0.00** |

**Major Activities Affecting Case Closing:**

> 09/02/2021  waiting on filing of estate tax returns, and atty fee app

**Initial Projected Date Of Final Report (TFR):**  12/01/2020          **Current Projected Date Of Final Report (TFR):**   12/31/2021

# Form 2

## Cash Receipts And Disbursements Record

Exhibit B

Page: 1

| | | |
|---|---|---|
| Case No.: | 19-19816 | |
| Case Name: | JOHNSON, ALEXANDER | |
| Taxpayer ID #: | **-***3926 | |
| For Period Ending: | 09/23/2021 | |

| | |
|---|---|
| Trustee Name: | M. Stephen Peters (260020) |
| Bank Name: | People's United Bank |
| Account #: | ********1628 Checking |
| Blanket Bond (per case limit): | $58,926,307.00 |
| Separate Bond (if applicable): | N/A |

| 1 | 2 | 3 | 4 | | 5 | 6 | 7 |
|---|---|---|---|---|---|---|---|
| Trans. Date | Check or Ref. # | Paid To / Received From | Description of Transaction | Uniform Tran. Code | Deposit $ | Disbursement $ | Account Balance |
| 01/07/20 | {10} | DEBTOR | PAYMENT FOR DOWN PAYMENT  REFUND TO DEBTOR FOR ASSET #1 | 1129-000 | 27,000.00 | | 27,000.00 |
| 03/12/20 | | Transfer Debit to Metropolitan Commercial Bank acct XXXXXX7504 | Transition Debit to Metropolitan Commercial Bank acct XXXXXX7504 | 9999-000 | | 27,000.00 | 0.00 |

| | | | |
|---|---|---|---|
| COLUMN TOTALS | 27,000.00 | 27,000.00 | $0.00 |
| Less: Bank Transfers/CDs | 0.00 | 27,000.00 | |
| Subtotal | 27,000.00 | 0.00 | |
| Less: Payments to Debtors | | 0.00 | |
| NET Receipts / Disbursements | $27,000.00 | $0.00 | |

## Form 2

### Cash Receipts And Disbursements Record

Exhibit B

Page: 2

| | | |
|---|---|---|
| Case No.: | 19-19816 | |
| Case Name: | JOHNSON, ALEXANDER | |
| Taxpayer ID #: | **-***3926 | |
| For Period Ending: | 09/23/2021 | |

| | |
|---|---|
| Trustee Name: | M. Stephen Peters (260020) |
| Bank Name: | Metropolitan Commercial Bank |
| Account #: | ******7504 Checking Account |
| Blanket Bond (per case limit): | $58,926,307.00 |
| Separate Bond (if applicable): | N/A |

| 1 | 2 | 3 | 4 | | 5 | 6 | 7 |
|---|---|---|---|---|---|---|---|
| Trans. Date | Check or Ref. # | Paid To / Received From | Description of Transaction | Uniform Tran. Code | Deposit $ | Disbursement $ | Account Balance |
| 03/12/20 | | Transfer Credit from United Bank acct XXXXXXX1628 | Transition Credit from United Bank acct XXXXXXX1628 | 9999-000 | 27,000.00 | | 27,000.00 |
| 03/31/20 | | Metropolitan Commercial Bank | Bank and Technology Services Fees | 2600-000 | | 21.57 | 26,978.43 |
| 04/30/20 | | Metropolitan Commercial Bank | Bank and Technology Services Fees | 2600-000 | | 43.11 | 26,935.32 |
| 05/29/20 | | Metropolitan Commercial Bank | Bank and Technology Services Fees | 2600-000 | | 41.61 | 26,893.71 |
| 06/30/20 | | Metropolitan Commercial Bank | Bank and Technology Services Fees | 2600-000 | | 45.84 | 26,847.87 |
| 07/31/20 | | Metropolitan Commercial Bank | Bank and Technology Services Fees | 2600-000 | | 44.34 | 26,803.53 |
| 08/31/20 | | Metropolitan Commercial Bank | Bank and Technology Services Fees | 2600-000 | | 41.41 | 26,762.12 |
| 09/09/20 | | IRS | 2019 US TAX REF | | 44,215.17 | | 70,977.29 |
| | {19} | | US TAX REFUND, INCLUDING ESTATE'S SHARE OF STATE REFUNDS $41,954 00 | 1224-000 | | | |
| | | | DEBTORS SHARE OF TAX REFUNDS BASED ON CASE FILING DATE $2,261.17 | 1280-000 | | | |
| 09/30/20 | | Metropolitan Commercial Bank | Bank and Technology Services Fees | 2600-000 | | 95.09 | 70,882.20 |
| 10/30/20 | | Metropolitan Commercial Bank | Bank and Technology Services Fees | 2600-000 | | 113.29 | 70,768.91 |
| 11/30/20 | | Metropolitan Commercial Bank | Bank and Technology Services Fees | 2600-000 | | 109.34 | 70,659.57 |
| 12/05/20 | | DEBTOR, VIA LAW FIRM | VARIOUS ACCOUNTS | | 62,574.00 | | 133,233.57 |
| | {11} | | EASTMAN BANK ACCT $3,381 00 | 1129-000 | | | |
| | {12} | | EASTAMAB ACCT $2,025 00 | 1129-000 | | | |
| | {13} | | INVESTMENT ACCOUNT $57,168 00 | 1129-000 | | | |
| 12/11/20 | 1000 | INTERNATIONAL SURETIES, LTD | 12-1-20 BOND PAYMENT | 2300-000 | | 15.00 | 133,218.57 |
| 12/31/20 | | Metropolitan Commercial Bank | Bank and Technology Services Fees | 2600-000 | | 204.25 | 133,014.32 |
| 01/29/21 | | Metropolitan Commercial Bank | Bank and Technology Services Fees | 2600-000 | | 206.06 | 132,808.26 |
| 02/26/21 | | Metropolitan Commercial Bank | Bank and Technology Services Fees | 2600-000 | | 198.66 | 132,609.60 |
| 03/31/21 | | Metropolitan Commercial Bank | Bank and Technology Services Fees | 2600-000 | | 233.79 | 132,375.81 |
| 04/30/21 | | Metropolitan Commercial Bank | Bank and Technology Services Fees | 2600-000 | | 212.16 | 132,163.65 |
| 05/28/21 | | Metropolitan Commercial Bank | Bank and Technology Services Fees | 2600-000 | | 197.69 | 131,965.96 |
| 06/30/21 | | Metropolitan Commercial Bank | Bank and Technology Services Fees | 2600-000 | | 232.65 | 131,733.31 |

Page Subtotals: $133,789.17   $2,055.86

# Form 2

## Cash Receipts And Disbursements Record

Exhibit B

Page: 3

| | | |
|---|---|---|
| Case No.: | 19-19816 | |
| Case Name: | JOHNSON, ALEXANDER | |
| Taxpayer ID #: | **-***3926 | |
| For Period Ending: | 09/23/2021 | |

| | |
|---|---|
| Trustee Name: | M. Stephen Peters (260020) |
| Bank Name: | Metropolitan Commercial Bank |
| Account #: | ******7504 Checking Account |
| Blanket Bond (per case limit): | $58,926,307.00 |
| Separate Bond (if applicable): | N/A |

| 1 | 2 | 3 | 4 | | 5 | 6 | 7 |
|---|---|---|---|---|---|---|---|
| Trans. Date | Check or Ref. # | Paid To / Received From | Description of Transaction | Uniform Tran. Code | Deposit $ | Disbursement $ | Account Balance |
| 07/30/21 | | Metropolitan Commercial Bank | Bank and Technology Services Fees | 2600-000 | | 211.13 | 131,522.18 |
| 08/09/21 | 1001 | ALEXANDER  J. JOHNSON | DEBTOR'S SHARE OF 2019 US AND CO TAX REFUNDS | 8500-002 | | 2,261.17 | 129,261.01 |
| 08/31/21 | | Metropolitan Commercial Bank | Bank and Technology Services Fees | 2600-000 | | 224.12 | 129,036.89 |
| 09/03/21 | 1002 | WADSWORTH GARBER WARNER, CONRARDY, P.C. | ATTY FEES PER  ORDER OF 9-3-21, DOCKET  #152 | 3210-000 | | 23,204.00 | 105,832.89 |
| 09/13/21 | 1003 | MARK DENNIS | ACCT FEES PER ORDER OF 9-13-21, DOCKET 155 | 3410-000 | | 775.00 | 105,057.89 |
| 09/13/21 | 1004 | MARK DENNIS | ACCT EXPENSES PER ORDER OF 9-13-21, DOCKT 155 | 3420-000 | | 14.00 | 105,043.89 |

| | | | |
|---|---|---|---|
| COLUMN TOTALS | 133,789.17 | 28,745.28 | $105,043.89 |
| Less: Bank Transfers/CDs | 27,000.00 | 0.00 | |
| Subtotal | 106,789.17 | 28,745.28 | |
| Less: Payments to Debtors | | 0.00 | |
| NET Receipts / Disbursements | $106,789.17 | $28,745.28 | |

# Form 2
## Cash Receipts And Disbursements Record

Exhibit B
Page:   4

**Case No.:**          19-19816

**Case Name:**        JOHNSON, ALEXANDER

**Taxpayer ID #:**    **-***3926

**For Period Ending:** 09/23/2021

**Trustee Name:**      M. Stephen Peters (260020)

**Bank Name:**         Metropolitan Commercial Bank

**Account #:**         ******7504 Checking Account

**Blanket Bond (per case limit):** $58,926,307.00

**Separate Bond (if applicable):** N/A

| TOTAL - ALL ACCOUNTS | NET DEPOSITS | NET DISBURSEMENTS | ACCOUNT BALANCES |
|---|---|---|---|
| ********1628 Checking | $27,000.00 | $0.00 | $0.00 |
| ******7504 Checking Account | $106,789.17 | $28,745.28 | $105,043.89 |
| | **$133,789.17** | **$28,745.28** | **$105,043.89** |

Printed: 09/23/21 3:19 PM

# Exhibit C
## Claims Distribution Register

Page: 1

### Case:   19-19816 ALEXANDER JOHNSON

| Claim# | Date | Pri | Claimant / UTC | / Memo | Amount Filed | Amount Allowed | Paid to Date | Claim Balance | Proposed Payment |
|---|---|---|---|---|---|---|---|---|---|
| **Admin Ch. 7 Claims:** | | | | | | | | | |
| 2020 | 12/11/20 | 200 | INTERNATIONAL SURETIES, LTD STE. 420 701 POYDRAS ST. NEW ORLEANS, LA 70139 <2300-00 Bond Payments> 2020 BOND PAYMENT BASED ON ALLOCATION OF BALANCE AS OF 12-1-20 OVER ENTIRE BALANCE OF $2,151,500 | | $ 15.00 | $ 15.00 | $ 15.00 | $ 0.00 | $ 0.00 |
| ACCT EXP | 09/01/21 | 200 | MARK DENNIS SLBIGGS, SINGERLEWAK 2000 S. COLO BLVD., TOWER II STE 200 DENVER, CO 80222 <3420-00 Accountant for Trustee Expenses (Other Firm)> ACCT EXPENSES PER ORDER OF 9-13-21,DOCKET # 155 | | $ 14.00 | $ 14.00 | $ 14.00 | $ 0.00 | $ 0.00 |
| ACCT | 09/01/21 | 200 | MARK DENNIS SLBIGGS, SINGERLEWAK 2000 S. COLO BLVD., TOWER II STE 200 DENVER, CO 80222 <3410-00 Accountant for Trustee Fees (Other Firm)> ACCT FEES PER ORDER OF   9-13-21 DOCKET # 155 | | $ 775.00 | $ 775.00 | $ 775.00 | $ 0.00 | $ 0.00 |
| ATTY | 09/01/21 | 200 | WADSWORTH GARBER WARNER, CONRADY, P.C. 2580 W. MAIN ST. SUITE 200 LITTLETON, CO 80120 <3210-00 Attorney for Trustee Fees (Other Firm)> ATTORNEYS FEES PER ORDER OF  9-3-21  2021,DOCKET #152 | | $ 23,204.00 | $ 23,204.00 | $ 23,204.00 | $ 0.00 | $ 0.00 |
| FEE | 08/30/21 | 200 | M. Stephen Peters Box 4610 Frisco, CO 80443 <2100-00 Trustee Compensation> | | $ 9,826.40 | $ 9,826.40 | $ 0.00 | $ 9,826.40 | $ 9,826.40 |
| TE | 09/23/21 | 200 | M. Stephen Peters Box 4610 Frisco, CO 80443 <2200-00 Trustee Expenses> | | $ 121.50 | $ 121.50 | $ 0.00 | $ 121.50 | $ 121.50 |
| | | | Total for Priority 200:    100% Paid | | $ 33,955.90 | $ 33,955.90 | $ 24,008.00 | $ 9,947.90 | $ 9,947.90 |
| | | | | Total for Admin Ch. 7 Claims: | $ 33,955.90 | $ 33,955.90 | $ 24,008.00 | $ 9,947.90 | $ 9,947.90 |
| **Unsecured Claims:** | | | | | | | | | |
| 1 | 02/14/20 | 610 | Eastman Credit Union PO Box 1989 Kingsport, TN 37662 <7100-00 Section 726(a)(2) General Unsecured Claims> | | $ 16,800.54 | $ 16,800.54 | $ 0.00 | $ 16,800.54 | $ 1,737.14 |

Printed: 09/23/21 3:19 PM                    **Exhibit C**                    Page: 2
**Claims Distribution Register**

### Case:   19-19816 ALEXANDER JOHNSON

| Claim# | Date | Pri | Claimant / UTC | / Memo | Amount Filed | Amount Allowed | Paid to Date | Claim Balance | Proposed Payment |
|---|---|---|---|---|---|---|---|---|---|
| 2 | 02/18/20 | 610 | Ritchie, Dillard, Davies and Johnson P.C 606 West Main Street, SUITE 300 Knoxville, TN 37902 | <7100-00 Section 726(a)(2) General Unsecured Claims> | $ 902,908.82 | $ 902,908.82 | $ 0.00 | $ 902,908.82 | $ 93,358.85 |
| | | | Total for Priority 610:   10.33979% Paid | | $ 919,709.36 | $ 919,709.36 | $ 0.00 | $ 919,709.36 | $ 95,095.99 |
| | | | | Total for Unsecured Claims: | $ 919,709.36 | $ 919,709.36 | $ 0.00 | $ 919,709.36 | $ 95,095.99 |
| | | | | Total for Case: | $ 953,665.26 | $ 953,665.26 | $ 24,008.00 | $ 929,657.26 | $ 105,043.89 |

## TRUSTEE'S PROPOSED DISTRIBUTION

Exhibit D

Case No.: 19-19816
Case Name: ALEXANDER JOHNSON
Trustee Name: M. Stephen Peters

**Balance on hand:**   $   105,043.89

Claims of secured creditors will be paid as follows:

| Claim No. | Claimant | Claim Asserted | Allowed Amount of Claim | Interim Payments to Date | Proposed Payment |
|-----------|----------|---------------|------------------------|-------------------------|------------------|
| | None | | | | |

Total to be paid to secured creditors:   $   0.00
Remaining balance:   $   105,043.89

Applications for chapter 7 fees and administrative expenses have been filed as follows:

| Reason/Applicant | Total Requested | Interim Payments to Date | Proposed Payment |
|------------------|----------------|-------------------------|------------------|
| Trustee, Fees - M. Stephen Peters | 9,826.40 | 0.00 | 9,826.40 |
| Trustee, Expenses - M. Stephen Peters | 121.50 | 0.00 | 121.50 |
| Bond Payments - INTERNATIONAL SURETIES, LTD | 15.00 | 15.00 | 0.00 |
| Attorney for Trustee Fees (Other Firm) - WADSWORTH GARBER WARNER, CONRARDY, P.C. | 23,204.00 | 23,204.00 | 0.00 |
| Accountant for Trustee Fees (Other Firm) - MARK DENNIS | 775.00 | 775.00 | 0.00 |
| Accountant for Trustee Expenses (Other Firm) - MARK DENNIS | 14.00 | 14.00 | 0.00 |

Total to be paid for chapter 7 administrative expenses:   $   9,947.90
Remaining balance:   $   95,095.99

Applications for prior chapter fees and administrative expenses have been filed as follows:

| Reason/Applicant | Total Requested | Interim Payments | Proposed Payment |
|------------------|----------------|------------------|------------------|
| | None | | |

Total to be paid for prior chapter administrative expenses:   $   0.00
Remaining balance:   $   95,095.99

**UST Form 101-7-TFR(5/1/2011)**

In addition to the expenses of administration listed above as may be allowed by the Court, priority claims totaling $0.00 must be paid in advance of any dividend to general (unsecured) creditors.

Allowed priority claims are:

| Claim No. | Claimant | Allowed Amount of Claim | Interim Payments to Date | Proposed Payment |
|---|---|---|---|---|
| None | | | | |

|  | Total to be paid for priority claims: | $ | 0.00 |
|---|---|---|---|
|  | Remaining balance: | $ | 95,095.99 |

The actual distribution to wage claimants included above, if any, will be the proposed payment less applicable withholding taxes (which will be remitted to the appropriate taxing authorities).

Timely claims of general (unsecured) creditors totaling $919,709.36 have been allowed and will be paid *pro rata* only after all allowed administrative and priority claims have been paid in full. The timely allowed general (unsecured) dividend is anticipated to be 10.3 percent, plus interest (if applicable).

Timely allowed general (unsecured) claims are as follows:

| Claim No. | Claimant | Allowed Amount of Claim | Interim Payments to Date | Proposed Payment |
|---|---|---|---|---|
| 1 | Eastman Credit Union | 16,800.54 | 0.00 | 1,737.14 |
| 2 | Ritchie, Dillard, Davies and Johnson P.C | 902,908.82 | 0.00 | 93,358.85 |

|  | Total to be paid for timely general unsecured claims: | $ | 95,095.99 |
|---|---|---|---|
|  | Remaining balance: | $ | 0.00 |

Tardily filed claims of general (unsecured) creditors totaling $0.00 have been allowed and will be paid *pro rata* only after all allowed administrative, priority and timely filed general (unsecured) claims have been paid in full. The tardily filed claim dividend is anticipated to be 0.0 percent, plus interest (if applicable).

Tardily filed general (unsecured) claims are as follows:

| Claim No. | Claimant | Allowed Amount of Claim | Interim Payments to Date | Proposed Payment |
|---|---|---|---|---|
| None | | | | |

|  | Total to be paid for tardily filed general unsecured claims: | $ | 0.00 |
|---|---|---|---|
|  | Remaining balance: | $ | 0.00 |

**UST Form 101-7-TFR(5/1/2011)**

Subordinated unsecured claims for fines, penalties, forfeitures, or damages and claims ordered subordinated by the Court totaling $0.00 have been allowed and will be paid *pro rata* only after all allowed administrative, priority and general (unsecured) claims have been paid in full. The dividend for subordinated unsecured claims is anticipated to be 0.0 percent, plus interest (if applicable).

Subordinated unsecured claims for fines, penalties, forfeitures or damages and claims ordered subordinated by the Court are as follows:

| Claim No. | Claimant | Allowed Amount of Claim | Interim Payments to Date | Proposed Payment |
|---|---|---|---|---|
| | | None | | |

| | | |
|---|---|---|
| Total to be paid for subordinated claims: | $ | 0.00 |
| Remaining balance: | $ | 0.00 |

**UST Form 101-7-TFR(5/1/2011)**

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: JOHNSON, ALEXANDER | § | Case No. 19-19816 |
| | § | |
| | § | |
| | § | |
| Debtor(s) | § | |

### NOTICE OF TRUSTEE'S FINAL REPORT AND
### APPLICATIONS FOR COMPENSATION
### AND DEADLINE TO OBJECT (NFR)

Pursuant to Fed. R. Bankr. P. 2002(a)(6) and 2002(f)(8), please take notice that <u>M. Stephen Peters</u>, trustee of the above styled estate, has filed a Final Report and the trustee and the trustee's professionals have filed final fee applications, which are summarized in the attached Summary of Trustee's Final Report and Applications for Compensation.

The complete Final Report and all applications for compensation are available for inspection at the Office of the Clerk, at the following address:

US Bankruptcy Court

721 19th Street

Denver, CO 80202

Any person wishing to object to any fee application that has not already been approved or to the Final Report, must file a written objection  ON OR BEFORE  OCTOBER 28,  2021  together with a request for a hearing and serve a copy of both upon the trustee, any party whose application is being challenged and the United States Trustee. If no objections are filed, the Court will act on the fee application and the trustee may pay dividends pursuant to FRBP 3009 without further order of the Court.

Date Mailed: <u>10/07/2021</u>                    By: <u>/s/ M. Stephen Peters</u>

                                                                        Trustee

M. Stephen Peters

Box 4610

Frisco, CO 80443

(303) 422-8501

**UST Form 101-7-NFR (10/1/2010)**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF COLORADO**

In re:JOHNSON, ALEXANDER          §          Case No. 19-19816
                                  §
                                  §
                                  §
                                  §
                Debtor(s)

**SUMMARY OF TRUSTEE'S FINAL REPORT**
**AND APPLICATIONS FOR COMPENSATION**

|  |  |  |
|---|---|---|
| *The Final Report shows receipts of :* | $ | 133,789.17 |
| *and approved disbursements of:* | $ | 28,745.28 |
| *leaving a balance on hand of[1]:* | $ | 105,043.89 |

Claims of secured creditors will be paid as follows:

| Claim No. | Claimant | Claim Asserted | Allowed Amount of Claim | Interim Payments to Date | Proposed Payment |
|---|---|---|---|---|---|
| None | | | | | |

|  |  |  |
|---|---|---|
| Total to be paid to secured creditors: | $ | 0.00 |
| Remaining balance: | $ | 105,043.89 |

Applications for chapter 7 fees and administrative expenses have been filed as follows:

| Reason/Applicant | Total Requested | Interim Payments to Date | Proposed Payment |
|---|---|---|---|
| Trustee, Fees - M. Stephen Peters | 9,826.40 | 0.00 | 9,826.40 |
| Trustee, Expenses - M. Stephen Peters | 121.50 | 0.00 | 121.50 |
| Bond Payments - INTERNATIONAL SURETIES, LTD | 15.00 | 15.00 | 0.00 |
| Attorney for Trustee Fees (Other Firm) - WADSWORTH GARBER WARNER, CONRARDY, P.C. | 23,204.00 | 23,204.00 | 0.00 |
| Accountant for Trustee Fees (Other Firm) - MARK DENNIS | 775.00 | 775.00 | 0.00 |
| Accountant for Trustee Expenses (Other Firm) - MARK DENNIS | 14.00 | 14.00 | 0.00 |

[1]The balance of funds on hand in the estate may continue to earn interest until disbursed. The interest earned prior to disbursement will be distributed pro rata to creditors within each priority category. The trustee may receive additional compensation not to exceed the maximum compensation set forth under 11 U.S.C. § 326(a) on account of the disbursement of the additional interest.

**UST Form 101-7-NFR (10/1/2010)**

Total to be paid for chapter 7 administrative expenses:   $   9,947.90
Remaining balance:   $   95,095.99

Applications for prior chapter fees and administrative expenses have been filed as follows:

| Reason/Applicant | Total Requested | Interim Payments to Date | Proposed Payment |
|---|---|---|---|
| None | | | |

Total to be paid for prior chapter administrative expenses:   $   0.00
Remaining balance:   $   95,095.99

In addition to the expenses of administration listed above as may be allowed by the Court, priority claims totaling $0.00 must be paid in advance of any dividend to general (unsecured) creditors.

Allowed priority claims are:

| Claim No. | Claimant | Allowed Amount of Claim | Interim Payments to Date | Proposed Payment |
|---|---|---|---|---|
| None | | | | |

Total to be paid for priority claims:   $   0.00
Remaining balance:   $   95,095.99

The actual distribution to wage claimants included above, if any, will be the proposed payment less applicable withholding taxes (which will be remitted to the appropriate taxing authorities).

Timely claims of general (unsecured) creditors totaling $919,709.36 have been allowed and will be paid pro rata only after all allowed administrative and priority claims have been paid in full. The timely allowed general (unsecured) dividend is anticipated to be 10.3 percent, plus interest (if applicable).

Timely allowed general (unsecured) claims are as follows:

| Claim No. | Claimant | Allowed Amount of Claim | Interim Payments to Date | Proposed Payment |
|---|---|---|---|---|
| 1 | Eastman Credit Union | 16,800.54 | 0.00 | 1,737.14 |
| 2 | Ritchie, Dillard, Davies and Johnson P.C | 902,908.82 | 0.00 | 93,358.85 |

Total to be paid for timely general unsecured claims:   $   95,095.99
Remaining balance:   $   0.00

**UST Form 101-7-NFR (10/1/2010)**

Tardily filed claims of general (unsecured) creditors totaling $0.00 have been allowed and will be paid pro rata only after all allowed administrative, priority and timely filed general (unsecured) claims have been paid in full. The tardily filed claim dividend is anticipated to be 0.0 percent, plus interest (if applicable).

Tardily filed general (unsecured) claims are as follows:

| Claim No. | Claimant | Allowed Amount of Claim | Interim Payments to Date | Proposed Payment |
|---|---|---|---|---|
| None | | | | |

Total to be paid for tardily filed general unsecured claims: $ 0.00
Remaining balance: $ 0.00

Subordinated unsecured claims for fines, penalties, forfeitures, or damages and claims ordered subordinated by the Court totaling $0.00 have been allowed and will be paid pro rata only after all allowed administrative, priority and general (unsecured) claims have been paid in full. The dividend for subordinated unsecured claims is anticipated to be 0.0 percent, plus interest (if applicable).

Subordinated unsecured claims for fines, penalties, forfeitures or damages and claims ordered subordinated by the Court are as follows:

| Claim No. | Claimant | Allowed Amount of Claim | Interim Payments to Date | Proposed Payment |
|---|---|---|---|---|
| None | | | | |

Total to be paid for subordinated claims: $ 0.00
Remaining balance: $ 0.00

Prepared By: /s/ M. Stephen Peters
Trustee

M. Stephen Peters
Box 4610
Frisco, CO 80443
(303) 422-8501

**STATEMENT:** This Uniform Form is associated with an open bankruptcy case, therefore, Paperwork Reduction Act exemption 5 C.F.R. § 1320.4(a)(2) applies.

**UST Form 101-7-NFR (10/1/2010)**

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| IN RE:<br><br>ALEXANDER JOHNSON,<br><br>                               Debtor. | Case No. 19-19816 EEB<br><br>Chapter 7 |

## OBJECTION TO TRUSTEE'S FINAL REPORT

RITCHIE, DILLARD, DAVIES & JOHNSON, P.C. ("***RDD&J***), through undersigned counsel, hereby respectfully submits to the United States Bankruptcy Court for the District of Colorado ("***Court***") this Objection to *Trustee's Final Report (TFR)* [Dkt. No. 158 ("***Final Report***")], pursuant to 11 U.S.C. § 704(a) and FED.R.BANKR.P. 5009(a) ("***Objection***"), and in support thereof, state as follows:

## BACKGROUND

1.   Alexander J. Johnson ("***Debtor***") filed a voluntary petition for bankruptcy relief under Chapter 7 of Title 11 of the United States Code ("***Bankruptcy Code***") within this Bankruptcy Court on November 13, 2019 ("***Petition Date***"). *See* Dkt. No. 1.[1] M. Stephen Peters is the duly appointed Chapter 7 Trustee ("***Trustee***") of the Debtor's bankruptcy estate. Dkt. No. 4.

2.   Pursuant to the Final Report filed on October 7, 2021, the Trustee asserts to have "faithfully and properly fulfilled the duties enumerated in 11 U.S.C. § 704." Dkt. No. 158, p.1. Furthermore, the Final Report provides for a distribution to Eastman Credit Union ("***ECU***") as the holder of an allowed unsecured claim in the amount of $16,800.54. *Id*. at p.12.

3.   On December 9, 2020, the Court presided over an evidentiary hearing ("***Hearing***") on the *Motion of Law Offices of Ritchie, Dillard, Davies & Johnson, P.C. to Convert Chapter 7 Bankruptcy Case to Case Under Chapter 11 of the Bankruptcy Code Pursuant to 11 U.S.C. § 706(b) or, in the Alternative, Dismiss Bankruptcy Case Pursuant to 11 U.S.C. § 707(b)* [Dkt. Nos. 68-69 ("***Motion to Convert***")]. Dkt. No. 110.

4.   At the Hearing, the Court admitted into evidence ECU-maintained monthly Summary of Accounts for the period of January 31, 2020 through October 31, 2020 ("***2020 Bank Statements***"). *Id*. (Exhibit 2 "as to 2020 bank statements only").

5.   Pursuant to the 2020 Bank Statements, the Debtor tendered monthly installments of $1,151.00 to ECU on account of Loan No. x1108, which maintained a principal balance of $7,384.80 as of October 31, 2020. Accordingly, the Debtor remained on schedule to pay the entirety of Proof of Claim No. 1 on or before the maturity date of March 20, 2021. *Cf.* Claim No. 1-1, p.2 (¶6).

---

[1]   Unless otherwise stated, "Dkt. No. ＿＿＿" refers to the docket in the above-captioned Chapter 7 bankruptcy case; styled as, *In re Johnson*, Case No. 19-19816 EEB ("***Bankruptcy Case***").

6.     RDD&J also sought to present evidence of preference payments and fraudulent transfers tendered to insiders in support of the Motion to Convert; and produced any and all such documents and records to the Trustee prior to the Hearing. *See e.g.* Dkt. No. 107-1, pp.2-3. However, six (6)-months after the Hearing, the Trustee dedicated one hour to investigating the three-hundred forty-two (342) pages supporting such allegations of voidable transfers. *See generally* Dkt. No. 159; *see also* Dkt. No. 146, p.9.

7.     Furthermore, the Court admitted into evidence a pay advice for the period of November 10, 2020 through November 24, 2020 ("***November 2020 Paycheck***"), which discloses that the Debtor earned year-to-date net income of $601,473.67. Dkt. No. 110 (Exhibit 22).

8.     At the conclusion of the Hearing, the Court denied the Motion to Convert. Dkt. No. 111.

9.     On December 23, 2020, RDD&J initiated an appeal from the *Minute Order* and *Judgment* within the United States Bankruptcy Appellate Panel of the Tenth Circuit ("***Appellate Court***"). Dkt. No. 114. Pursuant to the *Order Denying Motion for Leave to Appeal* entered on February 16, 2021, the Appellate Court found that "an order denying a motion to convert from chapter 7 to chapter 11 is not final" and dismissed the appeal. Dkt. No. 117.

10.    Notwithstanding FED.R.BANKR.P. 5009(a) affording interested parties thirty (30)-days to object to a final report, the *Notice of Trustee's Final Report and Applications for Compensation and Deadline to Object (NFR)* sets forth an objection deadline of October 28, 2021. Therefore, RDD&J hereby timely files its Objection to the Final Report.

## **RELIEF REQUESTED**

11.    Herein, RDD&J objects to the Final Report representing a full and final administration of the Debtor's bankruptcy estate, pursuant to 11 U.S.C. §§ 704(a)(1), (4), and (5).

12.    Pursuant to FED.R.BANKR.P. 5009, "the purpose of the final report is…to establish the presumption of full administration." *In re Kelco Metals, Inc.*, 532 B.R. 912 (Bankr.N.D.Ill.2015)(citing *In re Wade*, 991 F.2d 402, 406-08 (7th Cir.1993)).

13.    "As an officer of the Court and as a representative of the Debtor's creditors, the Trustee has a duty to realize the maximum return for the estate for further distribution to the Debtor's creditors." *In re Balco Equities, Ltd., Inc.*, 323 B.R. 85, 97 (Bankr.S.D.N.Y.2005)(citing *In re Mondie Forge, Inc.*, 148 B.R. 499, 502 (Bankr.N.D. Ohio 1992)). Accordingly, "[t]he purpose of the final report and accounting, as required by § 704(a)(9), is to insure that bankruptcy trustees disclose and are held accountable for their handling of the estate." *In re Sarnovsky*, 436 B.R. 461, 463 (Bankr.N.D. Ohio 2010) (citing *Lopez-Stubbe v. Rodriguez-Estrada (In re San Juan Hotel Corp.),* 847 F.2d 931, 939 (1st Cir.1988)).

14.    First, the Trustee did not fulfill the duties imposed under 11 U.S.C. § 704(a)(1) as he failed to investigate the voidable transfer claims by conducting only a brief, perfunctory review of the documents and records produced by RDD&J. Although the Trustee closed the estate expeditiously, the lack of an investigation into the financial affairs was not in the best interest of creditors.

2

15. The Trustee also failed to examine proofs of claim in any manner. Although RDD&J provided documentation of the Debtor continuing to tender payments to ECU on account of the indebtedness incurred under Loan x1108 through October 31, 2020, no proof exists that the Trustee investigated whether the Debtor has paid ECU in the entirety.

16. Considering the Trustee has not fulfilled his duty of fully administering the bankruptcy estate for further distribution to the Debtor's creditor(s), the Court should not approve the Final Report.

17. Furthermore, a comparison of the Final Report to the November 2020 pay advice demonstrates that the non-exempt portion of income the Debtor has earned since the Petition Date is no less than five hundred percent (500%) greater than the sum the Trustee proposes to distribute to holders of allowed unsecured claims.

18. As the Appellate Court concluded that the prior denial of the Motion to Convert was not a final order, the Court continues to have the ability to convert the Bankruptcy Case.

19. Accordingly, the Court converting this Bankruptcy Case to a case under Chapter 11of the Bankruptcy Code, pursuant to 11 U.S.C. § 706, still serves the best interests of all parties.

WHEREFORE, Ritchie, Dillard, Davies & Johnson, P.C. respectfully requests that the United States Bankruptcy Court for the District of Colorado enter an Order, (a) disapproving and denying the *Trustee's Final Report (TFR)*; (b) converting the above-captioned Bankruptcy Case to a case under Chapter 11 of the Bankruptcy Code, pursuant to 11 U.S.C. § 706; and (c) grant such other and further relief as this Bankruptcy Court deems just and appropriate.

DATED this 28th of October, 2021.

Respectfully submitted,
BERKEN CLOYES, P.C.


    /s/ Joshua Sheade
Joshua B. Sheade, Atty. Reg. No. 46993
1159 Delaware Street
Denver, Colorado 80204
Tel: (303) 623-4357
Fax: (720) 554-7853
Email: joshua@berkencloyes.com
*Counsel for Ritchie, Dillard, Davies & Johnson, P.C.*

3

## CERTIFICATE OF SERVICE

The undersigned certifies that on October 28, 2021, I served by the Case Management/Electronic Case Filing ("**CM/ECF**") system, pre-paid first-class mail and/or other acceptable means (i.e., via hand delivery or electronic mail), a true and correct copy of the foregoing **OBJECTION TO TRUSTEE'S FINAL REPORT** on all parties against whom relief is sought and those otherwise entitled to service pursuant to the FED.R.BANKR.P. and these L.B.R., at such addresses as follows:

**Via CM/ECF**:

M. Stephen Peters, Esq.
CHAPTER 7 TRUSTEE
P.O. Box 4610
Frisco, Colorado 80443

Jeffrey S. Brinen, Esq.
KUTNER BRINEN, P.C.
1660 Lincoln Street, Suite 1850
Denver, Colorado 80264

Aaron J. Conrardy, Esq.
Lindsay Riley, Esq.
WADSWORTH GARBER WARNER CONRARDY, P.C.
2580 West Main Street, Suite 200
Littleton, Colorado 80120

Paul Moss, Esq.
OFFICE FOR THE UNITED STATES TRUSTEE
Byron G. Rogers Federal Building
1961 Stout Street, Suite 12-200
Denver, Colorado 80294

Abbey Dreher, Esq.
BARRETT FRAPPIER & WEISSERMAN, LLP
4004 Belt Lane Road, Suite 100
Addison, Texas 75001

By:      /s/ *Joshua Sheade*
     Joshua B. Sheade, Esq.
     For BERKEN CLOYES, P.C.

4

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF COLORADO**

In re:  JOHNSON, ALEXANDER

§   Case No. 19-19816
§
§
§

Debtor(s)

**AMENDED TRUSTEE'S FINAL REPORT (TFR)**

The undersigned trustee hereby makes this Final Report and states as follows:

1. A petition under Chapter 7 of the United States Bankruptcy Code was filed on 11/13/2019. The undersigned trustee was appointed on 11/13/2019.

2. The trustee faithfully and properly fulfilled the duties enumerated in 11 U.S.C. §704.

3. All scheduled and known assets of the estate have been reduced to cash, released to the debtor as exempt property pursuant to 11 U.S.C. § 522, or have been or will be abandoned pursuant to 11 U.S.C. § 554. An individual estate property record and report showing the disposition of all property of the estate is attached as **Exhibit A**.

4. The trustee realized the gross receipts of                    $           133,789.17

Funds were disbursed in the following amounts:

| | |
|---|---:|
| Payments made under an interim distribution | 0.00 |
| Administrative expenses | 24,008.00 |
| Bank service fees | 2,476.11 |
| Other payments to creditors | 0.00 |
| Non-estate funds paid to 3rd Parties | 2,261.17 |
| Exemptions paid to the debtor | 0.00 |
| Other payments to the debtor | 0.00 |
| Leaving a balance on hand of[1]  $ | 105,043.89 |

The remaining funds are available for distribution.

_____
[1]The balance of funds on hand in the estate may continue to earn interest until disbursed. The interest earned prior to disbursement will be distributed pro rata to creditors within each priority category. The trustee may receive additional compensation not to exceed the maximum compensation set forth under 11 U.S.C. § 326(a) on account of the disbursement of the additional interest.

5. Attached as **Exhibit B** is a cash receipts and disbursements record for each estate bank account.

6. The deadline for filing non-governmental claims in this case was 03/30/2020 and the deadline for filing governmental claims was 05/11/2020. All claims of each class which will receive a distribution have been examined and any objections to the allowance of claims have been resolved. If applicable, a claims analysis, explaining why payment on any claim is not being made, is attached as **Exhibit C**.

7. The Trustee's proposed distribution is attached as **Exhibit D**.

8. Pursuant to 11 U.S.C. § 326(a), the maximum compensation allowable to the trustee is $9,826.40. To the extent that additional interest is earned before case closing, the maximum compensation may increase.

The trustee has received $0.00 as interim compensation and now requests the sum of $9,826.40, for a total compensation of $9,826.40[2]. In addition, the trustee received reimbursement for reasonable and necessary expenses in the amount of $0.00 and now requests reimbursement for expenses of $121.50 for total expenses of $121.50[2].

Pursuant to Fed R Bank P 5009, I hereby certify, under penalty of perjury, that the foregoing report is true and correct.

Date: 10/29/2021                    By: /s/ M. Stephen Peters
                                              Trustee

**STATEMENT:** This Uniform Form is associated with an open bankruptcy case, therefore, Paperwork Reduction Act exemption 5 C.F.R. §1320.4(a)(2) applies.

_____

[2]If the estate is administratively insolvent, the dollar amounts reflected in this paragraph may be higher than the amounts listed in the Trustee's Proposed Distribution (Exhibit D)

**UST Form 101-7-TFR (5/1/2011)**

# Form 1
## Individual Estate Property Record and Report
## Asset Cases

Exhibit A

Page: 1

**Case No.:** 19-19816

**Case Name:** JOHNSON, ALEXANDER

**For Period Ending:** 10/29/2021

**Trustee Name:** (260020) M. Stephen Peters

**Date Filed (f) or Converted (c):** 11/13/2019 (f)

**§ 341(a) Meeting Date:** 12/19/2019

**Claims Bar Date:** 03/30/2020

| | 1 | 2 | 3 | 4 | 5 | 6 |
|---|---|---|---|---|---|---|
| Ref. # | Asset Description (Scheduled And Unscheduled (u) Property) | Petition/ Unscheduled Values | Estimated Net Value (Value Determined By Trustee, Less Liens, Exemptions, and Other Costs) | Property Formally Abandoned OA=§554(a) abandon. | Sale/Funds Received by the Estate | Asset Fully Administered (FA)/ Gross Value of Remaining Assets |
| 1 | 9100 ROCKY CREEK RD., LOWER, LAKE CA SEE ASSET #10 BELOW | 154,500.00 | 0.00 | | 0.00 | FA |
| 2 | 2007 CHEV TAHOE | 3,287.00 | 9.00 | | 0.00 | FA |
| 3 | 2018 CHEV TAHOE | 41,063.00 | 0.00 | | 0.00 | FA |
| 4 | BEDROOM SET | 2,000.00 | 0.00 | | 0.00 | FA |
| 5 | ELECTRONICS | 1,130.00 | 0.00 | | 0.00 | FA |
| 6 | GOLF CLUBS AFTER ACCOUNTING FOR COSTS OF SALE, TTEE BELIEVES ASSET OF NO VALUE TO ESTATE, SO W LL BE ABANDONED UNDER 11 USC 554C | 250.00 | 0.00 | | 0.00 | FA |
| 7 | WEARING APPAREL (u) | 500.00 | 0.00 | | 0.00 | FA |
| 8 | JEWELRY | 400.00 | 0.00 | | 0.00 | FA |
| 9 | WEEDEATER | 100.00 | 0.00 | | 0.00 | FA |
| 10 | CASH REPRESENTS DOWNPAYMENT MADE BY DEBTOR FOR CO-OWNERS SHARE OF DOWN PAYMENT. FOR ASSET # 1 ABOVE REIMBURSED TO DEBTOR BY COWNER | 27,000.00 | 27,000.00 | | 27,000.00 | FA |
| 11 | EASTMAN BANK ACCT | 17,031.00 | 3,381.00 | | 3,381.00 | FA |
| 12 | EASTMAN CREDIT UNION | 2,025.00 | 2,025.00 | | 2,025.00 | FA |
| 13 | UBS INVESTMENT ACCT | 57,168.00 | 57,168.00 | | 57,168.00 | FA |
| 14 | CB45 AFTER ACCOUNTING FOR COSTS OF LIQUIDATION OR SALE OF ASSET AND UNLIKELY VALUE TO ASSET WITHOUT PERSONAL SERVICES OF DEBTOR ASSOIATED THEREWITH, TTEE BELIEVES VALUE IS OF NO OF NOM NAL VALUE SO WILL BE ABANDONED UNDER 11 USC 554C | Unknown | 0.00 | | 0.00 | FA |
| 15 | 401K | 19,639.00 | 0.00 | | 0.00 | FA |
| 16 | SECURITY DEPOSIT | 1,900.00 | 0.00 | | 0.00 | FA |
| 17 | CHIEF BEAST AND CB45 LOGOS AFTER ACCOUNTING FOR COSTS OF LIQUIDATION OR SALE OF ASSET AND UNLIKELY VALUE TO ASSET WITHOUT PERSONAL SERVICES OF DEBTOR ASSOIATED THEREWITH, TTEE BELIEVES VALUE IS OF NO OR NOM NAL VALUE SO WILL BE ABANDONED UNDER 11 USC 554C | Unknown | 0.00 | | 0.00 | FA |
| 18 | SPEED AND BOXING WORKOUT EQUIPMENT | 200.00 | 0.00 | | 0.00 | FA |

UST Form 101-7-TFR (5/1/2011)

# Form 1

## Individual Estate Property Record and Report

## Asset Cases

Exhibit A

Page: 2

**Case No.:**   19-19816

**Case Name:**   JOHNSON, ALEXANDER

**For Period Ending:**   10/29/2021

**Trustee Name:**   (260020) M. Stephen Peters

**Date Filed (f) or Converted (c):**   11/13/2019 (f)

**§ 341(a) Meeting Date:**   12/19/2019

**Claims Bar Date:**   03/30/2020

| Ref. # | 1<br>Asset Description<br>(Scheduled And Unscheduled (u) Property) | 2<br>Petition/<br>Unscheduled<br>Values | 3<br>Estimated Net Value<br>(Value Determined By<br>Trustee,<br>Less Liens, Exemptions,<br>and Other Costs) | 4<br>Property Formally<br>Abandoned<br>OA=§554(a)<br>abandon. | 5<br>Sale/Funds<br>Received by the<br>Estate | 6<br>Asset Fully<br>Administered (FA)/<br>Gross Value of<br>Remaining Assets |
|---|---|---|---|---|---|---|
| 19 | 2019 US AND VARIOUS STATES TAX REFUNDS (u)<br><br>ESTATE'S SHARE OF  US AND VARIOUS STATES' TAX  ( REFUNDS FROM APPROX  6 STATES) | 0.00 | 41,954.00 | | 41,954.00 | FA |
| **19** | Assets Totals (Excluding unknown values) | **$328,193.00** | **$131,537.00** | | **$131,528.00** | **$0.00** |

**Major Activities Affecting Case Closing:**

   09/02/2021  waiting on filing of estate tax returns, and atty fee app

**Initial Projected Date Of Final Report (TFR):**   12/01/2020        **Current Projected Date Of Final Report (TFR):**   10/29/2021 (Actual)

# Form 2

## Cash Receipts And Disbursements Record

| Case No.: | 19-19816 | Trustee Name: | M. Stephen Peters (260020) |
|---|---|---|---|
| Case Name: | JOHNSON, ALEXANDER | Bank Name: | People's United Bank |
| Taxpayer ID #: | **-***3926 | Account #: | ********1628 Checking |
| For Period Ending: | 10/29/2021 | Blanket Bond (per case limit): | $58,926,307.00 |
| | | Separate Bond (if applicable): | N/A |

| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
|---|---|---|---|---|---|---|
| Trans. Date | Check or Ref. # | Paid To / Received From | Description of Transaction | Uniform Tran. Code | Deposit $ | Disbursement $ | Account Balance |
| 01/07/20 | {10} | DEBTOR | PAYMENT FOR DOWN PAYMENT  REFUND TO DEBTOR FOR ASSET #1 | 1129-000 | 27,000.00 | | 27,000.00 |
| 03/12/20 | | Transfer Debit to Metropolitan Commercial Bank acct XXXXXX7504 | Transition Debit to Metropolitan Commercial Bank acct XXXXXX7504 | 9999-000 | | 27,000.00 | 0.00 |

|  | COLUMN TOTALS | 27,000.00 | 27,000.00 | $0.00 |
|---|---|---|---|---|
| | Less: Bank Transfers/CDs | 0.00 | 27,000.00 | |
| | Subtotal | 27,000.00 | 0.00 | |
| | Less: Payments to Debtors | | 0.00 | |
| | NET Receipts / Disbursements | $27,000.00 | $0.00 | |

## Form 2

**Exhibit B**

Page: 2

## Cash Receipts And Disbursements Record

| | | |
|---|---|---|
| Case No.: | 19-19816 | |
| Case Name: | JOHNSON, ALEXANDER | |
| Taxpayer ID #: | **-***3926 | |
| For Period Ending: | 10/29/2021 | |

| | | |
|---|---|---|
| Trustee Name: | M. Stephen Peters (260020) | |
| Bank Name: | Metropolitan Commercial Bank | |
| Account #: | ******7504 Checking Account | |
| Blanket Bond (per case limit): | $58,926,307.00 | |
| Separate Bond (if applicable): | N/A | |

| 1 | 2 | 3 | 4 | | 5 | 6 | 7 |
|---|---|---|---|---|---|---|---|
| Trans. Date | Check or Ref. # | Paid To / Received From | Description of Transaction | Uniform Tran. Code | Deposit $ | Disbursement $ | Account Balance |
| 03/12/20 | | Transfer Credit from United Bank acct XXXXXXXX1628 | Transition Credit from United Bank acct XXXXXXXX1628 | 9999-000 | 27,000.00 | | 27,000.00 |
| 03/31/20 | | Metropolitan Commercial Bank | Bank and Technology Services Fees | 2600-000 | | 21.57 | 26,978.43 |
| 04/30/20 | | Metropolitan Commercial Bank | Bank and Technology Services Fees | 2600-000 | | 43.11 | 26,935.32 |
| 05/29/20 | | Metropolitan Commercial Bank | Bank and Technology Services Fees | 2600-000 | | 41.61 | 26,893.71 |
| 06/30/20 | | Metropolitan Commercial Bank | Bank and Technology Services Fees | 2600-000 | | 45.84 | 26,847.87 |
| 07/31/20 | | Metropolitan Commercial Bank | Bank and Technology Services Fees | 2600-000 | | 44.34 | 26,803.53 |
| 08/31/20 | | Metropolitan Commercial Bank | Bank and Technology Services Fees | 2600-000 | | 41.41 | 26,762.12 |
| 09/09/20 | | IRS | 2019 US TAX REF | | 44,215.17 | | 70,977.29 |
| | {19} | | US TAX REFUND, INCLUDING ESTATE'S SHARE OF STATE REFUNDS  $41,954 00 | 1224-000 | | | |
| | | | DEBTORS SHARE OF TAX REFUNDS BASED ON CASE FILING DATE  $2,261.17 | 1280-000 | | | |
| 09/30/20 | | Metropolitan Commercial Bank | Bank and Technology Services Fees | 2600-000 | | 95.09 | 70,882.20 |
| 10/30/20 | | Metropolitan Commercial Bank | Bank and Technology Services Fees | 2600-000 | | 113.29 | 70,768.91 |
| 11/30/20 | | Metropolitan Commercial Bank | Bank and Technology Services Fees | 2600-000 | | 109.34 | 70,659.57 |
| 12/05/20 | | DEBTOR, VIA LAW FIRM | VARIOUS ACCOUNTS | | 62,574.00 | | 133,233.57 |
| | {11} | | EASTMAN BANK ACCT  $3,381 00 | 1129-000 | | | |
| | {12} | | EASTAMAB ACCT  $2,025 00 | 1129-000 | | | |
| | {13} | | INVESTMENT ACCOUNT  $57,168 00 | 1129-000 | | | |
| 12/11/20 | 1000 | INTERNATIONAL SURETIES, LTD | 12-1-20 BOND PAYMENT | 2300-000 | | 15.00 | 133,218.57 |
| 12/31/20 | | Metropolitan Commercial Bank | Bank and Technology Services Fees | 2600-000 | | 204.25 | 133,014.32 |
| 01/29/21 | | Metropolitan Commercial Bank | Bank and Technology Services Fees | 2600-000 | | 206.06 | 132,808.26 |
| 02/26/21 | | Metropolitan Commercial Bank | Bank and Technology Services Fees | 2600-000 | | 198.66 | 132,609.60 |
| 03/31/21 | | Metropolitan Commercial Bank | Bank and Technology Services Fees | 2600-000 | | 233.79 | 132,375.81 |
| 04/30/21 | | Metropolitan Commercial Bank | Bank and Technology Services Fees | 2600-000 | | 212.16 | 132,163.65 |
| 05/28/21 | | Metropolitan Commercial Bank | Bank and Technology Services Fees | 2600-000 | | 197.69 | 131,965.96 |
| 06/30/21 | | Metropolitan Commercial Bank | Bank and Technology Services Fees | 2600-000 | | 232.65 | 131,733.31 |

**Page Subtotals:**   **$133,789.17**   **$2,055.86**

{ } Asset Reference(s)      UST Form 101-7-TFR (5/1/2011)                              ! - transaction has been not cleared

## Form 2

## Cash Receipts And Disbursements Record

Exhibit B

Page: 3

| | | |
|---|---|---|
| Case No.: | 19-19816 | |
| Case Name: | JOHNSON, ALEXANDER | |
| Taxpayer ID #: | **-***3926 | |
| For Period Ending: | 10/29/2021 | |

| | |
|---|---|
| Trustee Name: | M. Stephen Peters (260020) |
| Bank Name: | Metropolitan Commercial Bank |
| Account #: | ******7504 Checking Account |
| Blanket Bond (per case limit): | $58,926,307.00 |
| Separate Bond (if applicable): | N/A |

| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
|---|---|---|---|---|---|---|
| Trans. Date | Check or Ref. # | Paid To / Received From | Description of Transaction | Uniform Tran. Code | Deposit $ | Disbursement $ | Account Balance |
| 07/30/21 | | Metropolitan Commercial Bank | Bank and Technology Services Fees | 2600-000 | | 211.13 | 131,522.18 |
| 08/09/21 | 1001 | ALEXANDER  J. JOHNSON | DEBTOR'S SHARE OF 2019 US AND CO TAX REFUNDS | 8500-002 | | 2,261.17 | 129,261.01 |
| 08/31/21 | | Metropolitan Commercial Bank | Bank and Technology Services Fees | 2600-000 | | 224.12 | 129,036.89 |
| 09/03/21 | 1002 | WADSWORTH GARBER WARNER, CONRARDY, P.C. | ATTY FEES PER  ORDER OF 9-3-21, DOCKET  #152 | 3210-000 | | 23,204.00 | 105,832.89 |
| 09/13/21 | 1003 | MARK DENNIS | ACCT FEES PER ORDER OF 9-13-21, DOCKET 155 | 3410-000 | | 775.00 | 105,057.89 |
| 09/13/21 | 1004 | MARK DENNIS | ACCT EXPENSES PER ORDER OF 9-13-21, DOCKT 155 | 3420-000 | | 14.00 | 105,043.89 |

| | | | |
|---|---|---|---|
| COLUMN TOTALS | 133,789.17 | 28,745.28 | $105,043.89 |
| Less: Bank Transfers/CDs | 27,000.00 | 0.00 | |
| Subtotal | 106,789.17 | 28,745.28 | |
| Less: Payments to Debtors | | 0.00 | |
| NET Receipts / Disbursements | $106,789.17 | $28,745.28 | |

# Form 2

## Cash Receipts And Disbursements Record

Exhibit B
Page:   4

| | | | |
|---|---|---|---|
| **Case No.:** | 19-19816 | **Trustee Name:** | M. Stephen Peters (260020) |
| **Case Name:** | JOHNSON, ALEXANDER | **Bank Name:** | Metropolitan Commercial Bank |
| **Taxpayer ID #:** | **-***3926 | **Account #:** | ******7504 Checking Account |
| **For Period Ending:** | 10/29/2021 | **Blanket Bond (per case limit):** | $58,926,307.00 |
| | | **Separate Bond (if applicable):** | N/A |

| | |
|---|---|
| Net Receipts: | $133,789.17 |
| Plus Gross Adjustments: | $0.00 |
| Less Payments to Debtor: | $0.00 |
| Less Other Noncompensable Items: | $2,261.17 |
| Net Estate: | $131,528.00 |

| TOTAL - ALL ACCOUNTS | NET DEPOSITS | NET DISBURSEMENTS | ACCOUNT BALANCES |
|---|---|---|---|
| ********1628 Checking | $27,000.00 | $0.00 | $0.00 |
| ******7504 Checking Account | $106,789.17 | $28,745.28 | $105,043.89 |
| | **$133,789.17** | **$28,745.28** | **$105,043.89** |

UST Form 101-7-TFR (5/1/2011)

Printed: 10/29/21 7:28 AM

# Exhibit C
## Claims Distribution Register

Page: 1

### Case:   19-19816 ALEXANDER JOHNSON

| Claim# | Date | Pri | Claimant / UTC | / Memo | Amount Filed | Amount Allowed | Paid to Date | Claim Balance | Proposed Payment |
|---|---|---|---|---|---|---|---|---|---|

**Admin Ch. 7 Claims:**

| 2020 | 12/11/20 | 200 | INTERNATIONAL SURETIES, LTD | | $ 15.00 | $ 15.00 | $ 15.00 | $ 0.00 | $ 0.00 |
| | | | STE. 420 | | | | | | |
| | | | 701 POYDRAS ST. | | | | | | |
| | | | NEW ORLEANS, LA 70139 | | | | | | |
| | | | <2300-00 Bond Payments> | | | | | | |
| | | | 2020 BOND PAYMENT BASED ON ALLOCATION OF BALANCE AS OF 12-1-20 OVER ENTIRE BALANCE OF $2,151,500 | | | | | | |
| ACCT EXP | 09/01/21 | 200 | MARK DENNIS | | $ 14.00 | $ 14.00 | $ 14.00 | $ 0.00 | $ 0.00 |
| | | | SLBIGGS, SINGERLEWAK | | | | | | |
| | | | 2000 S. COLO BLVD., TOWER II STE 200 | | | | | | |
| | | | DENVER, CO 80222 | | | | | | |
| | | | <3420-00 Accountant for Trustee Expenses (Other Firm)> | | | | | | |
| | | | ACCT EXPENSES PER ORDER OF 9-13-21,DOCKET # 155 | | | | | | |
| ACCT | 09/01/21 | 200 | MARK DENNIS | | $ 775.00 | $ 775.00 | $ 775.00 | $ 0.00 | $ 0.00 |
| | | | SLBIGGS, SINGERLEWAK | | | | | | |
| | | | 2000 S. COLO BLVD., TOWER II STE 200 | | | | | | |
| | | | DENVER, CO 80222 | | | | | | |
| | | | <3410-00 Accountant for Trustee Fees (Other Firm)> | | | | | | |
| | | | ACCT FEES PER ORDER OF   9-13-21 DOCKET # 155 | | | | | | |
| ATTY | 09/01/21 | 200 | WADSWORTH GARBER WARNER, CONRARDY, P.C. | | $ 23,204.00 | $ 23,204.00 | $ 23,204.00 | $ 0.00 | $ 0.00 |
| | | | 2580 W. MAIN ST. | | | | | | |
| | | | SUITE 200 | | | | | | |
| | | | LITTLETON, CO 80120 | | | | | | |
| | | | <3210-00 Attorney for Trustee Fees (Other Firm)> | | | | | | |
| | | | ATTORNEYS FEES PER ORDER OF  9-3-21  2021,DOCKET  #152 | | | | | | |
| FEE | 08/30/21 | 200 | M. Stephen Peters | | $ 9,826.40 | $ 9,826.40 | $ 0.00 | $ 9,826.40 | $ 9,826.40 |
| | | | Box 4610 | | | | | | |
| | | | Frisco, CO 80443 | | | | | | |
| | | | <2100-00 Trustee Compensation> | | | | | | |
| TE | 09/23/21 | 200 | M. Stephen Peters | | $ 121.50 | $ 121.50 | $ 121.50 | $ 121.50 | $ 121.50 |
| | | | Box 4610 | | | | | | |
| | | | Frisco, CO 80443 | | | | | | |
| | | | <2200-00 Trustee Expenses> | | | | | | |
| | | Total for Priority 200: | 100% Paid | | $ 33,955.90 | $ 33,955.90 | $ 24,008.00 | $ 9,947.90 | $ 9,947.90 |
| | | | Total for Admin Ch. 7 Claims: | | $ 33,955.90 | $ 33,955.90 | $ 24,008.00 | $ 9,947.90 | $ 9,947.90 |

**Unsecured Claims:**

| 1 | 02/14/20 | 610 | Eastman Credit Union | | $ 16,800.54 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |
| | | | PO Box 1989 | | | | | | |
| | | | Kingsport, TN 37662 | | | | | | |
| | | | <7100-00 Section 726(a)(2) General Unsecured Claims> | | | | | | |
| | | | CLAIM AMENDED TO BE ZERO  10-29-21 | | | | | | |

Printed: 10/29/21 7:28 AM                    **Exhibit C**                         Page: 2
                              **Claims Distribution Register**

                          Case:    **19-19816 ALEXANDER JOHNSON**

| Claim# | Date | Pri | Claimant / UTC | / Memo | Amount Filed | Amount Allowed | Paid to Date | Claim Balance | Proposed Payment |
|---|---|---|---|---|---|---|---|---|---|
| 2 | 02/18/20 | 610 | Ritchie, Dillard, Davies and Johnson P.C<br>606 West Main Street,<br>SUITE 300<br>Knoxville, TN 37902 | | $ 902,908.82 | $ 902,908.82 | $ 0.00 | $ 902,908.82 | $ 95,095.99 |
| | | | <7100-00 Section 726(a)(2) General Unsecured Claims> | | | | | | |
| | | Total for Priority 610: | 10.53218% Paid | | $ 919,709.36 | $ 902,908.82 | $ 0.00 | $ 902,908.82 | $ 95,095.99 |
| | | | Total for Unsecured Claims: | | $ 919,709.36 | $ 902,908.82 | $ 0.00 | $ 902,908.82 | $ 95,095.99 |
| | | | Total for Case: | | $ 953,665.26 | $ 936,864.72 | $ 24,008.00 | $ 912,856.72 | $ 105,043.89 |

**TRUSTEE'S PROPOSED AMENDED  DISTRIBUTION**

Exhibit D

Case No.: 19-19816
Case Name: ALEXANDER JOHNSON
Trustee Name: M. Stephen Peters

**Balance on hand:**     $                    105,043.89

Claims of secured creditors will be paid as follows:

| Claim No. | Claimant | Claim Asserted | Allowed Amount of Claim | Interim Payments to Date | Proposed Payment |
|---|---|---|---|---|---|
| | None | | | | |

Total to be paid to secured creditors:   $            0.00
Remaining balance:   $        105,043.89

Applications for chapter 7 fees and administrative expenses have been filed as follows:

| Reason/Applicant | Total Requested | Interim Payments to Date | Proposed Payment |
|---|---|---|---|
| Trustee, Fees - M. Stephen Peters | 9,826.40 | 0.00 | 9,826.40 |
| Trustee, Expenses - M. Stephen Peters | 121.50 | 0.00 | 121.50 |
| Bond Payments - INTERNATIONAL SURETIES, LTD | 15.00 | 15.00 | 0.00 |
| Attorney for Trustee Fees (Other Firm) - WADSWORTH GARBER WARNER, CONRARDY, P.C. | 23,204.00 | 23,204.00 | 0.00 |
| Accountant for Trustee Fees (Other Firm) - MARK DENNIS | 775.00 | 775.00 | 0.00 |
| Accountant for Trustee Expenses (Other Firm) - MARK DENNIS | 14.00 | 14.00 | 0.00 |

Total to be paid for chapter 7 administrative expenses:   $          9,947.90
Remaining balance:   $        95,095.99

Applications for prior chapter fees and administrative expenses have been filed as follows:

| Reason/Applicant | Total Requested | Interim Payments | Proposed Payment |
|---|---|---|---|
| | None | | |

Total to be paid for prior chapter administrative expenses:   $            0.00
Remaining balance:   $        95,095.99

**UST Form 101-7-TFR(5/1/2011)**

In addition to the expenses of administration listed above as may be allowed by the Court, priority claims totaling $0.00 must be paid in advance of any dividend to general (unsecured) creditors.

Allowed priority claims are:

| Claim No. | Claimant | Allowed Amount of Claim | Interim Payments to Date | Proposed Payment |
|---|---|---|---|---|
| None | | | | |

|  | | |
|---|---|---|
| Total to be paid for priority claims: | $ | 0.00 |
| Remaining balance: | $ | 95,095.99 |

The actual distribution to wage claimants included above, if any, will be the proposed payment less applicable withholding taxes (which will be remitted to the appropriate taxing authorities).

Timely claims of general (unsecured) creditors totaling $902,908.82 have been allowed and will be paid _pro rata_ only after all allowed administrative and priority claims have been paid in full. The timely allowed general (unsecured) dividend is anticipated to be 10.5 percent, plus interest (if applicable).

Timely allowed general (unsecured) claims are as follows:

| Claim No. | Claimant | Allowed Amount of Claim | Interim Payments to Date | Proposed Payment |
|---|---|---|---|---|
| 1 | Eastman Credit Union | 0.00 | 0.00 | 0.00 |
| 2 | Ritchie, Dillard, Davies and Johnson P.C | 902,908.82 | 0.00 | 95,095.99 |

|  | | |
|---|---|---|
| Total to be paid for timely general unsecured claims: | $ | 95,095.99 |
| Remaining balance: | $ | 0.00 |

Tardily filed claims of general (unsecured) creditors totaling $0.00 have been allowed and will be paid _pro rata_ only after all allowed administrative, priority and timely filed general (unsecured) claims have been paid in full. The tardily filed claim dividend is anticipated to be 0.0 percent, plus interest (if applicable).

Tardily filed general (unsecured) claims are as follows:

| Claim No. | Claimant | Allowed Amount of Claim | Interim Payments to Date | Proposed Payment |
|---|---|---|---|---|
| None | | | | |

|  | | |
|---|---|---|
| Total to be paid for tardily filed general unsecured claims: | $ | 0.00 |
| Remaining balance: | $ | 0.00 |

**UST Form 101-7-TFR(5/1/2011)**

Subordinated unsecured claims for fines, penalties, forfeitures, or damages and claims ordered subordinated by the Court totaling $0.00 have been allowed and will be paid *pro rata* only after all allowed administrative, priority and general (unsecured) claims have been paid in full. The dividend for subordinated unsecured claims is anticipated to be 0.0 percent, plus interest (if applicable).

Subordinated unsecured claims for fines, penalties, forfeitures or damages and claims ordered subordinated by the Court are as follows:

| Claim No. | Claimant | Allowed Amount of Claim | Interim Payments to Date | Proposed Payment |
|---|---|---|---|---|
| None | | | | |

| | | |
|---|---|---|
| Total to be paid for subordinated claims: | $ | 0.00 |
| Remaining balance: | $ | 0.00 |

**UST Form 101-7-TFR(5/1/2011)**

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

In re:                                   )
                                         )
ALEXANDER JOHNSON,                       )        Case No. 19-19816 EEB
                                         )        Chapter 7
                    Debtor               )

---

### CERTIFICATE OF CONTESTED MATTER AND REQUEST FOR HEARING

---

On October 7, 2021, M. Stephen Peters, chapter 7 trustee ("Trustee"), filed a motion or application pursuant to L.B.R. 9013-1 or 2002-1 entitled Trustee's Final Report (the "Report") (Docket No. 158).  Trustee hereby represents and shows the court:

1.      Trustee certifies that service of the Report was timely made on all parties against whom relief is sought and those otherwise entitled to service pursuant to the Fed. R. Bankr. P. and these L.B.R as is shown on the certificate of service, L.B. Form 9013-1.2, previously filed with the Report on October 7, 2021.

2.      An objection to the Report has been filed by the following party:

    a.      Ritchie, Dillard, Davies & Johnson, P.C. ("RDDJ"), (Docket No. 162)

3.      The docket numbers for each of the following relevant documents are:

    a.      the Report and all documents attached thereto and served therewith, (Docket No. 158);
    b.      the notice, (Docket No. 160);
    c.      the certificate of service of the Report and the notice, (Docket No. 161); and
    d.      RDDJ's objection, (Docket No. 162).

4.      Trustee certifies that a good faith effort has been made to resolve this matter by email and telephone without the necessity of a hearing.

5.       Resolution of this contested matter may benefit from a preliminary hearing to resolve the following disputed legal issues:  RDDJ asserts two objections.  First, that the proof of claim filed by Eastman Credit Union ("ECU") was paid in full by Debtor postpetition and should therefore not receive a dividend.  After the Report was filed ECU amended its proof of claim to $0.00 and, to address that amendment, Trustee filed an amended Report at Docket No. 163.  The objection may therefore be overruled.

6.      Second, RDDJ asserts that Trustee only conducted a "perfunctory review" of a potential avoidable transfer claim.  RDDJ's allegation is not supported by any credible evidence and Trustee has explained to RDDJ's counsel the thorough review of the alleged avoidance claim and explained why it was not pursued.  RDDJ has nothing to refute Trustee's efforts and business judgment.  The objection may therefore be overruled at the preliminary hearing.

7.      While Trustee asserts that the Court may overrule RDDJ's objection at a preliminary hearing, to the extent the Court requires an evidentiary hearing, Trustee estimates the hearing will proceed as follows:

    a.    a summary of the factual issues to be tried: Trustee's investigation of an alleged avoidance claim;
    b.    estimate of time required for hearing: 2 hours;
    c.    the number of witnesses anticipated: 1;
    d.    whether expert witness testimony will be required: none; and
    e.    whether any discovery will be necessary and, if so, the nature of, and time required for, the discovery needed: none.

WHEREFORE, Trustee prays that the court set this matter for hearing pursuant to L.B.R. 9013-1.

DATED this 4th day of January, 2022

WADSWORTH GARBER WARNER CONRARDY, P.C.

/s/Aaron J. Conrardy
Aaron J. Conrardy, #40030
2580 W. Main St., Suite 200
Littleton, Colorado 80120
303-296-1999 / 303-296-7600 FAX
aconrardy@wgwc-law.com
*Attorneys for M. Stephen Peters, chapter 7 trustee*

**UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF COLORADO**

**_Minute Order_**

Date:  January 20, 2022                    **Honorable Elizabeth E. Brown, Presiding**
                                           Ruth S. Mares, Law Clerk

In re:   Alexander Johnson,                Case. No. 19-19816 EEB
                                                        Chapter 7
              Debtor.

| Counsel | Appearances | Representing | |
|---|---|---|---|
| Counsel | Aaron Conrardy* | Trustee | M. Stephen Peters, chapter 7 trustee* |
| Counsel | | Debtor | |
| Counsel | Joshua Sheade* | Creditor | Ritchie, Dillard, Davies & Johnson, P.C. |
| Counsel | | Creditor | |
| Counsel | | Creditor | |
| Counsel | | Creditor | |

*telephone appearance

Proceedings:  Non-Evidentiary Hearing on M. Stephen Peters' Chapter 7 Trustee Final Report and the Objection filed by Ritchie, Dillard, Davies & Johnson, P.C.

☐ Witnesses Sworn:

☐ Exhibits Entered:

☒ Evidentiary Hearing[1]

☒ Mr. Sheade described certain transactions and potential asserts which the creditor believed merited further investigation.  Mr. Conrardy and Mr. Peters summarized the trustee's investigation into those assets and transfers. Mr. Sheade stated that the creditor did not want an evidentiary hearing on the matter.

Orders:

☒ For the reasons stated on the record, the creditor's objection is overruled.  The trustee's amended final report (Dkt. #163) and the distributions set forth therein are APPROVED.

Date: January 20, 2022.

                                       BY THE COURT:

                                       _Elizabeth E. Brown_

                                       _____
                                       Elizabeth E. Brown, U.S. Bankruptcy Judge

---

[1] This hearing is considered evidentiary for statistical purposes.

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| IN RE:<br><br>ALEXANDER JOHNSON,<br><br>                              Debtor. | Case No. 19-19816 EEB<br><br>Chapter 7 |

## NOTICE OF APPEAL AND STATEMENT OF ELECTION

RITCHIE, DILLARD, DAVIES & JOHNSON, P.C., through undersigned counsel, hereby respectfully submits to the United States Bankruptcy Court for the District of Colorado this Notice of Appeal and Statement of Election, pursuant to FED.R.BANKR.P. 8003 and in substantial conformity with Official Form 417A, and states as follows:

**Part 1: Identify the Appellant**

1.      Name of Appellant:  Ritchie, Dillard, Davies & Johnson, P.C. ("***Creditor***")

2.      Position of Appellant in the bankruptcy case that is the subject of this appeal:

☐      Debtor
☑      Creditor
☐      Trustee
☐      Other (describe) _____

**Part 2: Identify the Subject of This Appeal**

1.      Describe the judgment, order, or decree appealed from:  The Creditor appeals the *Judgment* rendered within, the above-captioned bankruptcy case at Docket No. 111; together with the *Minute Order* entered contemporaneously therewith at Docket No. 110; and the *Minute Order* approving "the trustee's amended final report (Dkt. #163) and the distributions set forth therein" entered at Docket No. 167.

2.      State the date on which the judgment, order, or decree was entered:  January 20, 2022

**Part 3: Identify the Other Parties to the Appeal**

List the names of all parties to the judgment, order, or decree appealed from and the names, addresses, and telephone numbers of their attorneys:

| | | |
|---|---|---|
| 1. | Alexander Johnson<br>("***Debtor***") | Jeffrey S. Brinen, Esq.<br>KUTNER BRINEN, P.C.<br>1660 Lincoln Street, Suite 1850<br>Denver, Colorado 80264 |

2.   M. Stephen Peters, Esq.       Aaron J. Conrardy, Esq.
     ("*Trustee*")                  Lindsay Riley, Esq.
                                       WADSWORTH GARBER WARNER CONRARDY, P.C.
                                       2580 West Main Street, Suite 200
                                       Littleton, Colorado 80120

## Part 4: Optional Election to Have Appeal Heard by District Court

If a Bankruptcy Appellate Panel is available in this judicial district, the Bankruptcy Appellate Panel will hear this appeal unless, pursuant to 28 U.S.C. § 158(c)(1), a party elects to have the appeal heard by the United States District Court. If an appellant filing this notice wishes to have the appeal heard by the United States District Court, check below. Do not check the box if the appellant wishes the Bankruptcy Appellate Panel to hear the appeal.

☑      Appellant(s) elect to have the appeal heard by the United States District Court rather than by the Bankruptcy Appellate Panel.

## Part 5: Sign below

DATED this 3rd of February, 2022.

                                    Respectfully submitted,
                                    B_____ CLOYES, ____

                                    Joshua B. Sheade, Atty. Reg. No. 46993
                                    1159 Delaware Street
                                    Denver, Colorado 80204
                                    Tel: (303) 623-4357
                                    Fax: (720) 554-7853
                                    Email: joshua@berkencloyes.com
                                    *Attorneys for Ritchie, Dillard, Davies & Johnson, P.C.*

2

## CERTIFICATE OF SERVICE

The undersigned certifies that on February 3, 2020, I served by the Case Management/Electronic Case Filing ("*CM/ECF*") system, pre-paid first-class mail and/or other acceptable means (i.e., via hand delivery or electronic mail), a true and correct copy of the foregoing **NOTICE OF APPEAL AND STATEMENT OF ELECTION** on all parties against whom relief is sought and those otherwise entitled to service pursuant to the FED.R.BANKR.P. and these L.B.R., at such addresses as follows:

**Via CM/ECF:**

M. Stephen Peters, Esq.
CHAPTER 7 TRUSTEE
P.O. Box 4610
Frisco, Colorado 80443

Aaron J. Conrardy, Esq.
Lindsay Riley, Esq.
WADSWORTH GARBER WARNER CONRARDY, P.C.
2580 West Main Street, Suite 200
Littleton, Colorado 80120

Abbey Dreher, Esq.
BARRETT FRAPPIER & WEISSERMAN, LLP
4004 Belt Lane Road, Suite 100
Addison, Texas 75001

Jeffrey S. Brinen, Esq.
KUTNER BRINEN, P.C.
1660 Lincoln Street, Suite 1850
Denver, Colorado 80264

Paul Moss, Esq.
OFFICE FOR THE UNITED STATES TRUSTEE
Byron G. Rogers Federal Building
1961 Stout Street, Suite 12-200
Denver, Colorado 80294

By:  _____

/s/ Joshua B. Sheade, Esq.
For BERKEN CLOYES, P.C.

3

<div align="center">

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**

</div>

| | |
|---|---|
| IN RE:<br><br>ALEXANDER JOHNSON,<br><br>                        Debtor. | Civil Action No. 22-cv-00332-REB-GPG<br>(Bankruptcy Case No. 19-19816 EEB)<br><br>Chapter 7 |

<div align="center">

**DESIGNATION OF ITEMS TO BE INCLUDED IN THE RECORD ON APPEAL**

</div>

RITCHIE, DILLARD, DAVIES & JOHNSON, P.C. ("***Appellant***"), through undersigned counsel, hereby respectfully designates the items to be included in the record on appeal, pursuant to FED.R.BANKR.P. 8009(a), as follows:

**I.      Docket Report for Bankruptcy Case No. 16-19816 EEB**

| | Brief Description of Document or Record | Docket No. | Date Filed |
|---|---|:---:|---|
| 1. | Chapter 7 Voluntary Petition for Individual | 1 | November 13, 2019 |
| 2. | Statement of Financial Affairs | 9 | November 25, 2019 |
| 3. | Schedule A/B: Property | 11 | November 25, 2019 |
| 4. | Schedule C: Property Claimed as Exempt | 12 | November 25, 2019 |
| 5. | Schedule D: Creditors Who Have Claims Secured by Property and/or Schedule E/F: Creditors Who Have Unsecured Claims | 13 | November 25, 2019 |
| 6. | Schedule G: Executory Contracts and Unexpired Leases | 14 | November 25, 2019 |
| 7. | Schedule H: Your Codebtors | 15 | November 25, 2019 |
| 8. | Schedule I: Your Income | 16 | November 25, 2019 |
| 9. | Schedule J: Your Expenditures | 17 | November 25, 2019 |
| 10. | Declaration About an Individual Debtor's Schedules | 18 | November 25, 2019 |
| 11. | Statement of Intention | 19 | November 25, 2019 |
| 12. | Chapter 7 Statement of Current Monthly Income | 20 | November 25, 2019 |
| 13. | Amended Schedule A/B: Property | 25 | December 11, 2019 |
| 14. | Amended Schedule C: Property Claimed as Exempt | 26 | December 11, 2019 |
| 15. | Employee Pay Advice/Income Record | 31 | December 27, 2019 |
| 17. | United States Trustee's Motion to Extend Deadlines to File a…Motion to Dismiss Under 11 U.S.C. § 707 | 47 | February 18, 2020 |

| | Brief Description of Document or Record | Docket No. | Date Filed |
|---|---|---|---|
| 18. | Notice of United States Trustee's Motion | 48 | February 18, 2020 |
| 19. | Confidential Document in Support of Proof of Claim | 51 | February 18, 2020 |
| 20. | Motion to File Under Seal Documentation in Support of Proof of Claim | 52 | February 18, 2020 |
| 21. | Order Granting Motion to File Under Seal | 54 | February 19, 2020 |
| 22. | Amended Schedule C: Property Claimed as Exempt | 55 | February 20, 2020 |
| 23. | Order Granting The United States Trustee's Motion to Extend Deadlines | 62 | March 18, 2020 |
| 24. | Sealed Document: Motion to Convert Chapter 7 Bankruptcy Case to Case Under Chapter 11 | 68 | April 20, 2020 |
| 25. | Sealed Document: Exhibits 1 through 6 of Motion to Convert Chapter 7 Bankruptcy Case | 69 | April 21, 2020 |
| 26 | Motion to File Under Seal Motion to Convert Chapter 7 Bankruptcy Case to Case Under Chapter 11…and Exhibit Incorporated by Reference Therein | 72 | April 28, 2020 |
| 27. | Order Granting Motion to File Under Seal | 73 | April 29, 2020 |
| 28. | [Redacted] Motion to Convert Chapter 7 Bankruptcy Case to Case Under Chapter 11 of the Bankruptcy Code Pursuant to 11 U.S.C. § 706(b) | 74 | May 1, 2020 |
| 29. | Trustee's Objection to Motion to Convert Chapter 7 Bankruptcy Case to Case Under Chapter 11 | 89 | June 8, 2020 |
| 30. | Debtor's Objection to Motion to Convert Chapter 7 Bankruptcy Case to Case Under Chapter 11 | 90 | June 8, 2020 |
| 31. | Certificate of Contested Matter and Request for Hearing | 91 | August 13, 2020 |
| 32. | Minute Order, Date: September 1, 2020 | 95 | September 1, 2020 |
| 33. | Support Brief in Support of Motion to Convert Pursuant to 11 U.S.C. § 706(b) | 104 | November 24, 2020 |
| 34. | Joint List of Witnesses and Exhibits | 105 | November 25, 2020 |
| 35. | [Appellant]'s List of Witnesses and Exhibits | 107 | November 25, 2020 |
| 36. | Status Report | 109 | December 7, 2020 |
| 37. | Minute Order, Date: December 9, 2020 | 110 | December 9, 2020 |
| 38. | Judgment | 111 | December 9, 2020 |

| | **Brief Description of Document or Record** | **Docket No.** | **Date Filed** |
|---|---|---|---|
| 39. | Notice of Appeal and Statement of Election | 114 | December 23, 2020 |
| 40. | Order Denying Motion for Leave to Appeal | 117 | February 16, 2021 |
| 41. | Transcript of Evidentiary Hearing on the Motion to Convert Chapter 7 Bankruptcy Case to Case Under Chapter 11 of the Bankruptcy Code | 142 | June 2, 2021 |
| 42. | Notice of Filing of Transcript and of Deadlines Related to Restriction and Redaction | 143 | June 2, 2021 |
| 43. | Trustee's Final Report (TFR) | 158 | October 7, 2021 |
| 44. | Notice of Trustee's Final Report…and Deadline to Object (NFR) | 160 | October 7, 2021 |
| 45. | Objection to Trustee's Final Report | 162 | October 28, 2021 |
| 46. | Amended Trustee's Final Report (TFR) | 163 | November 1, 2021 |
| 47. | Certificate of Contested Matter and Request for Hearing | 164 | January 4, 2022 |
| 48. | Minute Order, Date: January 20, 2022 | 167 | January 20, 2022 |

## II.   Claims Register for Bankruptcy Case No. 16-19816 EEB

| | **Name of Claimant** | **Claim No.** | **Date Filed** |
|---|---|---|---|
| 1. | Claims Register | -- | -- |
| 2. | Eastman Credit Union | 1-1 | February 14, 2020 |
| 3. | Eastman Credit Union | 1-2 | October 29, 2021 |
| 4. | Ritchie, Dillard, Davies and Johnson P.C. | 2-1 | February 18, 2020 |

DATED this 17th of February, 2022.

Respectfully submitted,
BERKEN CLOYES, P.C.

      /s/ Joshua Sheade
Joshua B. Sheade, Atty. Reg. No. 46993
1159 Delaware Street
Denver, Colorado 80204
Tel: (303) 623-4357
Fax: (720) 554-7853
Email: joshua@berkencloyes.com
*Attorneys for Ritchie, Dillard, Davies & Johnson, P.C.*

3

## CERTIFICATE OF SERVICE

The undersigned certifies that on February 17, 2022, I served by the Case Management/Electronic Case Filing ("**CM/ECF**") system, pre-paid first-class mail and/or other acceptable means (i.e., via hand delivery or electronic mail), a true and correct copy of the foregoing **DESIGNATION OF ITEMS TO BE INCLUDED IN THE RECORD ON APPEAL** on all parties against whom relief is sought and those otherwise entitled to service pursuant to the FED.R.BANKR.P. and these L.B.R., at such addresses as follows:

**Via CM/ECF:**

M. Stephen Peters, Esq.
CHAPTER 7 TRUSTEE
P.O. Box 4610
Frisco, Colorado 80443

Jeffrey S. Brinen, Esq.
KUTNER BRINEN, P.C.
1660 Lincoln Street, Suite 1850
Denver, Colorado 80264

Aaron J. Conrardy, Esq.
Lindsay Riley, Esq.
WADSWORTH GARBER WARNER CONRARDY, P.C.
2580 West Main Street, Suite 200
Littleton, Colorado 80120

Paul Moss, Esq.
OFFICE FOR THE UNITED STATES TRUSTEE
Byron G. Rogers Federal Building
1961 Stout Street, Suite 12-200
Denver, Colorado 80294

Abbey Dreher, Esq.
BARRETT FRAPPIER & WEISSERMAN, LLP
4004 Belt Lane Road, Suite 100
Addison, Texas 75001

By:      /s/ Joshua Sheade
Joshua B. Sheade, Esq.
For BERKEN CLOYES, P.C.

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

IN RE:

ALEXANDER JOHNSON,

              Debtor.

Civil Action No. 22-cv-00332-REB-GPG
(Bankruptcy Case No. 19-19816 EEB)

Chapter 7

---

### STATEMENT OF ISSUES TO BE PRESENTED ON APPEAL

---

RITCHIE, DILLARD, DAVIES & JOHNSON, P.C. ("*Appellant*"), through undersigned counsel, hereby respectfully states the issue to be presented on appeal, pursuant to FED.R.BANKR.P. 8009(a), as follows:

1.      Whether the United States Bankruptcy Court for the District of Colorado ("*Bankruptcy Court*") erred when denying the Appellant's Motion to Convert Chapter 7 Bankruptcy Case to Case Under Chapter 11 of the Bankruptcy Code Pursuant to 11 U.S.C. § 706(b).

2.      Whether the Bankruptcy Court erred by approving the claims distributions set forth in the Trustee's Amended Final Report instead of converting the Chapter 7 Bankruptcy Case to a case under Chapter 11 of the Bankruptcy Code, pursuant to 11 U.S.C. § 706(b).

DATED this 17th of February, 2022.

                            Respectfully submitted,
                            BERKEN CLOYES, P.C.


                              */s/ Joshua Sheade*
                            Joshua B. Sheade, Atty. Reg. No. 46993
                            1159 Delaware Street
                            Denver, Colorado 80204
                            Tel: (303) 623-4357
                            Fax: (720) 554-7853
                            Email: joshua@berkencloyes.com
                            *Attorneys for Ritchie, Dillard, Davies & Johnson, P.C.*

## CERTIFICATE OF SERVICE

The undersigned certifies that on February 17, 2022, I served by the Case Management/Electronic Case Filing ("*CM/ECF*") system, pre-paid first-class mail and/or other acceptable means (i.e., via hand delivery or electronic mail), a true and correct copy of the foregoing **STATEMENT OF ISSUES TO BE PRESENTED ON APPEAL** on all parties against whom relief is sought and those otherwise entitled to service pursuant to the FED.R.BANKR.P. and these L.B.R., at such addresses as follows:

**Via CM/ECF:**

M. Stephen Peters, Esq.
CHAPTER 7 TRUSTEE
P.O. Box 4610
Frisco, Colorado 80443

Jeffrey S. Brinen, Esq.
KUTNER BRINEN, P.C.
1660 Lincoln Street, Suite 1850
Denver, Colorado 80264

Aaron J. Conrardy, Esq.
Lindsay Riley, Esq.
WADSWORTH GARBER WARNER CONRARDY, P.C.
2580 West Main Street, Suite 200
Littleton, Colorado 80120

Paul Moss, Esq.
OFFICE FOR THE UNITED STATES TRUSTEE
Byron G. Rogers Federal Building
1961 Stout Street, Suite 12-200
Denver, Colorado 80294

Abbey Dreher, Esq.
BARRETT FRAPPIER & WEISSERMAN, LLP
4004 Belt Lane Road, Suite 100
Addison, Texas 75001

By:     /s/ *Joshua Sheade*
        Joshua B. Sheade, Esq.
        For BERKEN CLOYES, P.C.

2

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| IN RE: | Civil Action No. 22-cv-00332-REB-GPG |
| ALEXANDER JOHNSON, | (Bankruptcy Case No. 19-19816 EEB) |
| Debtor. | Chapter 7 |

### APPELLANT'S CERTIFICATION OF NO TRANSCRIPT ORDERED

RITCHIE, DILLARD, DAVIES & JOHNSON, P.C. ("***Appellant***"), through undersigned counsel, hereby respectfully submits this Certification of No Transcript Ordered, pursuant to FED.R.BANKR.P. 8009(b)(1), and in support thereof, states as follows:

1.  The Appellant filed a *Notice of Appeal and Statement of Election* within the above-captioned Chapter 7 bankruptcy case before the United States Bankruptcy Court for the District of Colorado ("***Bankruptcy Court***") on February 3, 2022. Dkt. No. 171.[1]

2.  On February 4, 2022, the Bankruptcy Court issued the *Amended Notice of Transmittal of Appeal Pursuant to Rule 8003(d)* [Dkt. No. 173]; and the United States District Court for the District of Colorado docketed the appeal as *In re Johnson*, Civil Action No. 22-cv-00335-REB-GPG ("***Appeal***").

3.  Pursuant to FED.R.BANKR.P. 8009(b)(1), the transcript of the evidentiary hearing on the *Motion to Convert Chapter 7 Case to Case Under Chapter 11 of the Bankruptcy Code* is already on file with the Bankruptcy Court, docketed within the Bankruptcy Case, and designated as an item to be included in the record on appeal. Dkt. Nos. 142-43, 177 at p.3.

4.  Therefore, the Appellant hereby certifies that it is not ordering an additional transcript of the proceedings at issue within the Appeal. *See* FED.R.BANKR.P. 8009(b)(1)(B).

DATED this 17th of February, 2022.

Respectfully submitted,
BERKEN CLOYES, P.C.

   */s/ Joshua Sheade*
Joshua B. Sheade, Atty. Reg. No. 46993
1159 Delaware Street
Denver, Colorado 80204
Tel: (303) 623-4357
Fax: (720) 554-7853
Email: joshua@berkencloyes.com
*Attorneys for Ritchie, Dillard, Davies & Johnson, P.C.*

---

[1]   Unless otherwise stated, "Dkt. No. _____" refers to the docket in the above captioned Chapter 11 bankruptcy case; styled as, *In re Johnson*, Case No. 19-19816 EEB ("***Bankruptcy Case***").

## CERTIFICATE OF SERVICE

The undersigned certifies that on February 17, 2022, I served by the Case Management/Electronic Case Filing ("*CM/ECF*") system, pre-paid first-class mail and/or other acceptable means (i.e., via hand delivery or electronic mail), a true and correct copy of the foregoing **APPELLANT'S CERTIFICATION OF NO TRANSCRIPT ORDERED** on all parties against whom relief is sought and those otherwise entitled to service pursuant to the FED.R.BANKR.P. and these L.B.R., at such addresses as follows:

**Via CM/ECF:**

M. Stephen Peters, Esq.
CHAPTER 7 TRUSTEE
P.O. Box 4610
Frisco, Colorado 80443

Jeffrey S. Brinen, Esq.
KUTNER BRINEN, P.C.
1660 Lincoln Street, Suite 1850
Denver, Colorado 80264

Aaron J. Conrardy, Esq.
Lindsay Riley, Esq.
WADSWORTH GARBER WARNER CONRARDY, P.C.
2580 West Main Street, Suite 200
Littleton, Colorado 80120

Paul Moss, Esq.
OFFICE FOR THE UNITED STATES TRUSTEE
Byron G. Rogers Federal Building
1961 Stout Street, Suite 12-200
Denver, Colorado 80294

Abbey Dreher, Esq.
BARRETT FRAPPIER & WEISSERMAN, LLP
4004 Belt Lane Road, Suite 100
Addison, Texas 75001

By:     /s/ Joshua Sheade
Joshua B. Sheade, Esq.
For BERKEN CLOYES, P.C.

2

# UNITED STATES BANKRUPTCY APPELLATE PANEL
# OF THE TENTH CIRCUIT

---

| | |
|---|---|
| IN RE: ALEXANDER JOHNSON, | BAP No. CO-20-063 |
| Debtor. | |
| RITCHIE, DILLARD, DAVIES & JOHNSON, P.C., | Bankr. No. 19-19816 EEB<br>Chapter 7 |
| Appellant,<br>v. | |
| ALEXANDER JOHNSON and<br>M. STEPHEN PETERS, | |
| Appellees. | |

### Designation of Items to be Included in the Record on Appeal

Appellee, M. Stephen Peters, Chapter 7 Trustee, pursuant to Federal Rule of Bankruptcy Procedure 8009(a)(2), hereby designates the following items to be included in the record on appeal:

Bankruptcy Case No. 19-19816 EEB

1.      Joint Objection to Exhibits filed on December 2, 2020, at Docket No. 108.

2.      Transcript of January 20, 2022 Non-Evidentiary Hearing on M. Stephen Peters' Chapter 7 Trustee Final Report and the Objection filed by Ritchie, Dillard, Davies & Johnson, P.C.

Respectfully submitted,

WADSWORTH GARBER WARNER CONRARDY, P.C.

*/s/ Lindsay S. Riley*
Aaron J. Conrardy, #40030
Lindsay S. Riley, #54771
2580 West Main Street, Suite 200
Littleton, Colorado 80120
(303) 296-1999 /Fax: (303) 296-7600
aconrardy@wgwc-law.com
lriley@wgwc-law.com
*Attorneys for Appellee M. Stephen Peters, Chapter 7 Trustee*

**CERTIFICATE OF SERVICE**

I certify that on the 2nd day of March 2022, I served a true and correct copy of the **DESIGNATION OF ITEMS TO BE INCLUDED IN THE RECORD ON APPEAL** via CM/ECF and United States mail, postage prepaid, to those persons listed below and to the following parties in the attached Creditor Address Mailing Matrix which was obtained from the Court's docket on March 2, 2022:

M. Stephen Peters
Box 4610
Frisco, CO 80443

Alexander Johnson
8164 S. Memphis Way
Englewood, CO 80112

Jeffrey S. Brinen
1660 Lincoln St., Ste. 1850
Denver, CO 80264

Joshua Sheade
Berken Cloyes, P.C.
1159 Delaware Street
Denver, CO 80204

*/s/ Angela Garcia*_____
For Wadsworth Garber Warner Conrardy, P.C.