# District of Colorado
# Claims Register

### 19-19816-EEB Alexander Johnson

**Judge:** Elizabeth E. Brown    **Chapter:** 7

**Office:** Denver    **Last Date to file claims:**

**Trustee:** M. Stephen Peters    **Last Date to file (Govt):**

| | | |
|---|---|---|
| *Creditor:* (18708395)<br>Eastman Credit Union<br>PO Box 1989<br>Kingsport TN 37662 | **Claim No: 1**<br>*Original Filed Date:* 02/14/2020<br>*Original Entered Date:* 02/14/2020<br>*Last Amendment Filed:* 10/29/2021<br>*Last Amendment Entered:* 10/29/2021 | *Status:*<br>*Filed by:* CR<br>*Entered by:* ADI Clerk<br>*Modified:* 10/29/2021 |

Amount claimed: $0.00

*History:*

| Details | | 1-1 | 02/14/2020 Claim #1 filed by Eastman Credit Union, Amount claimed: $16800.54 (DeHerrera, Danielle ) |
|---|---|---|---|
| Details | | 1-2 | 10/29/2021 Amended Claim #1 filed by Eastman Credit Union, Amount claimed: $0.00 (ADI Clerk) |

*Description:*

*Remarks:* (1-2) Account Number (last 4 digits):1108 Filer Comment: Prior claim amended to reflect the debt being paid

| | | |
|---|---|---|
| *Creditor:* (18632096)<br>Ritchie, Dillard, Davies and Johnson P.C<br>606 West Main Street, Suite 300<br>Knoxville, TN 37902 | **Claim No: 2**<br>*Original Filed Date:* 02/18/2020<br>*Original Entered Date:* 02/18/2020 | *Status:*<br>*Filed by:* AT<br>*Entered by:* Joshua Sheade<br>*Modified:* |

Amount claimed: $902908.82

*History:*

| Details | | 2-1 | 02/18/2020 Claim #2 filed by Ritchie, Dillard, Davies and Johnson P.C, Amount claimed: $902908.82 (Sheade, Joshua ) |
|---|---|---|---|

*Description:* (2-1) Services Rendered and Costs Incurred Pursuant to Representation Agreements

*Remarks:*

# Claims Register Summary

**Case Name:** Alexander Johnson
**Case Number:** 19-19816-EEB
**Chapter:** 7
**Date Filed:** 11/13/2019
**Total Number Of Claims:** 2

| Total Amount Claimed* | $902908.82 |
|---|---|

| Total Amount Allowed* | |
|---|---|

*Includes general unsecured claims

**The values are reflective of the data entered. Always refer to claim documents for actual amounts.**

| | Claimed | Allowed |
|---|---|---|
| **Secured** | | |
| **Priority** | | |
| **Administrative** | | |

| Fill in this information to identify the case: | |
|---|---|
| Debtor 1 | Alexander James Johnson |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | District of Colorado |
| Case number | 19-19816-EEB |



FILED
CLERK OF COURT

FEB 1 4 2020

U.S. BANKRUPTCY COURT
DISTRICT OF COLORADO

## Official Form 410

# Proof of Claim
04/19

**Read the instructions before filling out this form.** This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

### Part 1:   Identify the Claim

**1. Who is the current creditor?**

Eastman Credit Union
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes.  From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**Where should notices to the creditor be sent?**

Eastman Credit Union
Name

PO Box 1989
Number     Street

Kingsport        TN        37662
City        State        ZIP Code

Contact phone  423-578-7563

Contact email  ehite@ecu.org

**Where should payments to the creditor be sent? (if different)**

Eastman Credit Union, c/o J. Eric Hite
Name

PO Box 1989
Number     Street

Kingsport        TN        37662
City        State        ZIP Code

Contact phone  423-578-7563

Contact email  ehite@ecu.org

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

___ ___ ___ ___ ___ ___ ___ ___ ___ ___ ___ ___ ___ ___ ___ ___ ___ ___ ___ ___ ___ ___ ___ ___

**4. Does this claim amend one already filed?**

☑ No
☐ Yes.  Claim number on court claims registry (if known) _____      Filed on _____
                                                                              MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes.  Who made the earlier filing? _____

| **Part 2:** | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☐ No

☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor:  __1__  __1__  __0__  __8__

---

**7. How much is the claim?**   $ _____ 16,800.54 . **Does this amount include interest or other charges?**

☑ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

---

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Money Loaned _____

---

**9. Is all or part of the claim secured?**

☑ No

☐ Yes.   The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $_____

**Amount of the claim that is secured:** $_____

**Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $_____

**Annual Interest Rate** (when case was filed) _____%

☐ Fixed

☐ Variable

---

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $_____

---

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

---

| 12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?** | ☑ No | |
|---|---|---|
| | ☐ Yes. *Check one:* | **Amount entitled to priority** |

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).                                                   $_____

☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).                 $_____

☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).                                                                          $_____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).            $_____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).                $_____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies.                $_____

\* Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment.

---

## Part 3:   Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   02/11/2020
                   MM / DD / YYYY

Signature

**Print the name of the person who is completing and signing this claim:**

Name    J. Eric Hite
        First name          Middle name          Last name

Title   Paralegal

Company   Eastman Credit Union
          Identify the corporate servicer as the company if the authorized agent is a servicer.

Address   PO Box 1989
          Number      Street
          Kingsport                         TN        37662
          City                              State     ZIP Code

Contact phone   423-578-7563          Email   ehite@ecu.org

---

DocuSign Envelope ID: 086A15F8-9B0E-4809-99E5-94D9D1D18357





P.O. Box 1989 • Kingsport, TN 37662

**LOAN AND SECURITY AGREEMENTS**
**AND DISCLOSURE STATEMENT**

| LOAN DATE | LOAN NUMBER | ACCOUNT NUMBER | GROUP POLICY NUMBER | MATURITY DATE |
|---|---|---|---|---|
| 5/30/2019 | | | 041-0764-0 | 5/20/2021 |
| LOAN TYPE | LOAN PURPOSE | | | |
| Its Your Money CE | Other Financial Obligations | | | |

| BORROWER 1 | BORROWER 2 |
|---|---|
| NAME AND ADDRESS | NAME (AND ADDRESS IF DIFFERENT FROM BORROWER 1) |
| Alexander James Johnson | |
| 6105 S Parker Rd, Apt 5107 | |
| Aurora, CO 80016 | , |

## TRUTH IN LENDING DISCLOSURE 'e' means an estimate

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments | Total Sale Price |
|---|---|---|---|---|
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you. | The amount of credit provided to you or on your behalf. | The amount you will have paid after you have made all payments as scheduled. | The total cost of your purchase on credit is $ |
| 9.954% | $2,606.03 e | $25,000.00 e | $27,606.03 e | which includes your downpayment of $ |

**Your Payment Schedule Will Be:**

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 23 | $1,150.26 | Monthly   Beginning   6/20/2019 |
| 1 | $1,150.05 e | 5/20/2021 |

**Prepayment:** If you pay off early you will not have to pay a penalty.
**Required Deposit:** The Annual Percentage Rate does not take into account your required deposit, if any.
**Demand:** ☐ This obligation has a demand feature.
☐ All disclosures are based on an assumed maturity of one year.

**Property Insurance:** You may obtain property insurance from anyone you want that is acceptable to the Credit Union.

| Filing Fees | Non-Filing Insurance |
|---|---|
| $0.00 | $ |

**Late Charge:**

A late charge of the lesser of 5% or the maximum allowed by law will be assessed against all past due amounts if your payment is not received within fifteen (15) days of the due date.

**Security:** Collateral securing other loans with the Credit Union may also secure this loan. You are giving a security interest in your shares and dividends and, if any, your deposits and interest in the Credit Union; and the property described below:

| Collateral | Property/Model/Make | Year | I.D. Number | Type | Value | Key Number |
|---|---|---|---|---|---|---|
| | | | | | $ | |
| | | | | | $ | |
| | | | | | $ | |

Other (Describe)
Pledge of Shares $          in Account No.                    $          in Account No.

See your contract documents for any additional information about nonpayment, default, and any required repayment in full before the scheduled date.

## SIGNATURES

By signing, or otherwise authenticating, as Borrower, you agree to the terms of the Loan Agreement. If property is described in the "Security" section of the Truth in Lending Disclosure, you also agree to the terms of the Security Agreement. If you sign as "Owner of Property" you agree only to the terms of the Security Agreement.

**CAUTION: IT IS IMPORTANT THAT YOU THOROUGHLY READ THE AGREEMENT BEFORE YOU SIGN IT.**

DocuSigned by:

| X *Alexander James Johnson* (SEAL) 5/30/2019 | X (SEAL) 5/30/2019 |
|---|---|
| BORROWER 1   32F1D...Alexander James Johnson   DATE | BORROWER 2   DATE |

| X (SEAL) | X (SEAL) |
|---|---|
| ☐ OWNER OF PROPERTY   DATE | ☐ OWNER OF PROPERTY   DATE |

© CUNA Mutual Group, 1999, 2000, 01, 02, 05, 06, 08, All Rights Reserved

KTNN63 (NXX029)-e

DocuSign Envelope ID: 086A15F8-9B0E-4809-99E5-94D9D1D18357

Credit Union **Eastman Credit Union**

Borrower(s)  **Alexander James Johnson**

Loan No. _____   Acct. No. _____

## ITEMIZATION OF THE AMOUNT FINANCED

| Itemization of Amount Financed of $25,000.00  e | Amount Given to You Directly $25,000.00 | Amount Paid on Your Account $0.00  e | Prepaid Finance Charge N/A |
|---|---|---|---|

**Amounts Paid to Others on Your Behalf:  (If an amount is marked with an asterisk (*) we will be retaining a portion of the amount.)**

| To _____ | To _____ |
|---|---|
| To _____ | To _____ |
| To _____ | To _____ |
| To _____ | To _____ |
| To _____ | To _____ |
| To _____ | To _____ |
| To _____ | To _____ |
| To _____ | To _____ |
| To _____ | To _____ |
| To _____ | To _____ |
| To _____  *$ | To _____ |
| To _____  *$ | To _____ |

## LOAN AGREEMENT

In this Loan Agreement ("Agreement") all references to "Credit Union," "we," "our," or "us," mean the Credit Union whose name appears above and anyone to whom the Credit Union assigns or transfers this Agreement. All references to "you," or "your" mean each person who signs, or otherwise authenticates, this Agreement as a borrower.

**1. PROMISE TO PAY** - You promise to pay      $25,000.00      to the Credit Union plus interest on the unpaid balance until what you owe has been repaid.  The interest rate is   9.950%  per year.  This agreement shall be governed by the laws of the state of Tennessee.

**Collection Costs:**

**You promise to pay all costs of collecting the amount you owe under this agreement, including reasonable attorneys' fees of not less than 25% of the amount due, or the amount allowed under state law, and court costs.  All fees and costs incurred will be added to your loan balance and will incur interest at the applicable interest rate.**

**2. PAYMENTS** - You promise to make payments of the amount and at the time shown in the Truth in Lending Disclosure. You may prepay any amount without penalty. If you prepay any part of what you owe, you are still required to make the regularly scheduled payments, unless we have agreed to a change in the payment schedule. Because this is a simple interest loan, if you do not make payments exactly as scheduled, your final payment may be more or less than the amount of the final payment that is disclosed. If you elect voluntary payment protection, we will either include the program fee in your payments or extend the term of your loan. If the term is extended, you will be required to make additional payments of the scheduled amount, until what you owe has been paid. You promise to make all payments to the place we choose. If this loan refinances another loan we have with you, the other loan will be canceled and refinanced as of the date of this loan. Unless otherwise required by law, payments will be applied to amounts owed in the manner we choose.

**3. LOAN PROCEEDS** - If the proceeds of this loan are deposited directly into your account with the Credit Union, interest on this loan begins on the date of deposit. If the proceeds of this loan are delivered to you personally, interest on this loan begins on the date of delivery. If the proceeds of this loan are mailed to you, interest on this loan begins on the date of mailing.

**4. SECURITY FOR LOAN** - This Agreement is secured by all property described in the "Security" section of the Truth in Lending Disclosure. Property securing other loans you have with us also secures this loan, unless the property is a dwelling. A dwelling secures this loan only if it is described in the "Security" section of the Truth in Lending Disclosure for this loan. In addition to your pledge of shares, we may also have what is known as a statutory lien on all individual and joint accounts you have with us. A statutory lien means we have the right under federal law and many state laws to claim an interest in your accounts. We can enforce a statutory lien against your shares and dividends, and if any, interest and deposits, in all individual and joint accounts you have with us to satisfy any outstanding financial obligation that is due and payable to us. We may exercise our right to enforce this lien without further notice to you, to the extent permitted by law.  *For all borrowers:* You pledge as security for this loan all shares and dividends and, if any, all deposits and interest in all joint and individual accounts you have with the Credit Union now and in the future. **The statutory lien and/or your pledge will allow us to apply the funds in your account(s) to what you owe when you are in default.** The statutory lien and your pledge do not apply to any individual Retirement Account or any other account that would lose special tax treatment under state or federal law if given as security.

**5. DEFAULT** - You will be in default under this Agreement if you do not make a payment of the amount required on or before the date it is due. You will be in default if you break any promise you made in connection with this loan or if anyone is in default under any security agreement made in connection with this Agreement. You will be in default if you die, file for bankruptcy, become insolvent or if you made any false or misleading statements in your loan application. You will also be in default if something happens that we believe may materially affect your ability to repay what you owe under this Agreement or if you are in default under any other loan agreement you have with us.

**6. ACTIONS AFTER DEFAULT** - When you are in default, we may demand immediate payment of the entire unpaid balance under this Agreement. You waive any right you have to receive demand for payment, notice of intent to demand immediate payment and notice of demand for immediate payment. We may also apply against what you owe any shares and/or deposits given as security under this Agreement. We may also exercise any other rights given by law when you are in default.

Default Interest Rate: A default ANNUAL PERCENTAGE RATE of up to 18% may be imposed if you are in default under this Agreement. This default rate may also be imposed if you fail to register and list Eastman Credit Union as lien holder within thirty (30) days of receiving your loan proceeds. You agree that Eastman Credit Union has the right to perform any lienholder activities allowed by law and any fees associated with such lienholder activities will be added to your account.

**7. EACH PERSON RESPONSIBLE** - Each person who signs, or otherwise authenticates, this Agreement will be individually and jointly responsible for paying the entire amount owed under this Agreement. This means we can enforce our rights against any one of you individually or against all of you together.

**8. LATE CHARGE** - If you are late in making a payment, you promise to pay the late charge shown in the Truth in Lending Disclosure. If no late charge is shown, you will not be charged one.

**9. DELAY IN ENFORCING RIGHTS** - We can delay enforcing any of our rights under this Agreement any number of times without losing the ability to exercise our rights later. We can enforce this Agreement against your heirs or legal representatives.

**10. CONTINUED EFFECTIVENESS** - If any part of this Agreement is determined by a court to be unenforceable, the rest will remain in effect.

**11. NOTICES** - Notices will be sent to you at the most recent address you have given us in writing. Notice to any one of you will be notice to all.

© CUNA Mutual Group, 1999, 2000, 01, 02, 05, 06, 08, All Rights Reserved

KTNN63 (NXX029)-e

DocuSign Envelope ID: 086A15F8-9B0E-4809-99E5-94D9D1D18357

Credit Union **Eastman Credit Union**

Borrower(s) **Alexander James Johnson**

Loan No.

Acct. No.

## LOAN AGREEMENT

**12. USE OF ACCOUNT -** You promise to use your account for the purpose stated. You acknowledge that this use is for consumer (personal, family or household) purposes. If ECU gives you written permission to do so, you may also use the account for agricultural or commercial purposes, or to purchase real estate. If your account is a student loan, you promise to use the account for one or more qualified higher education expenses as defined in 26 U.S.C. 221.

**13. NO ORAL AGREEMENTS -- THIS NOTE CONSTITUTES A "WRITTEN LOAN AGREEMENT" PURSUANT TO SECTION 26.02 OF THE TEXAS BUSINESS AND COMMERCE CODE, IF SUCH SECTION APPLIES. THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

**14. ELECTRONIC COPIES OF LOAN DOCUMENTS -** You agree that a copy (including a facsimile, scanned or imaged copy) of your loan Agreement or any other documents (including your Security Agreement) may be substituted for and used for any purpose as the original signed documents.

**15. COMPLIANCE AGREEMENT -** You agree to cooperate with the credit union in correcting any clerical errors in your Loan or Security Agreements.  You also agree to take any

actions required to allow Eastman Credit Union to perfect its security interest in the property you have pledged as security for this loan.  You understand and agree that failure to make corrections or complete documents as requested by the credit union is a default of this Agreement.

**16. LIMITED DURABLE POWER OF ATTORNEY -** You hereby irrevocably appoint us and any and all of our agents acting on our behalf as your attorney-in-fact with full authority to execute and record any and all documents, instruments and affidavits necessary to correct any clerical errors in this Agreement, including the description of the Collateral given as security for the loan or errors in calculating your payments under the loan.

**17. AUTHORIZATION TO RELEASE INFORMATION TO GUARANTOR -** You agree that we may release any information about your loan, including your loan payment history, to any individual(s) who have sign a Guaranty Agreement to guarantee payment of your outstanding loan amount.

**18. FEDERAL STUDENT LOAN CONSOLIDATION -** Federal student loan programs offer various repayment options, such as deferment or loan forgiveness. If you consolidate or refinance your federal loans with ECU, you will no longer be eligible to participate in these federal programs. For more information, visit www.ed.gov.

## SECURITY AGREEMENT

In this Agreement all references to "Credit Union," "we," "our" or "us" mean the credit union whose name appears on this document and anyone to whom the Credit Union assigns or transfers this Agreement. All references to the "Loan" mean the loan described in the Loan Agreement that is part of this document. All references to "you" or "your" mean any person who signs, or otherwise authenticates, this Agreement.

**1. THE SECURITY FOR THE LOAN -** You give us what is known as a security interest in the property described in the "Security" section of the Truth in Lending Disclosure that is part of this document ("the Property"). The security interest you give includes all accessions. Accessions are things which are attached to or installed in the Property now or in the future. The security interest also includes any replacements for the Property which you buy within 10 days of the Loan and any extensions, renewals or refinancings of the Loan. It also includes any money you receive from selling the Property or from insurance you have on the Property. If the value of the Property declines, you promise to give us more property as security if asked to do so.

**2. WHAT THE SECURITY INTEREST COVERS/CROSS COLLATERAL PROVISIONS -** The security interest secures the Loan and any extensions, renewals, or refinancings of the Loan.  It also secures any other loans you have now or receive in the future and any other amounts or loans, including any credit card loan, you owe us for any reason now or in the future, except any loan secured by your principal dwelling.  Any security interest that you have given for any prior loan also secures this Loan and all other loans or other amounts you owe now or in the future.  If the property that is the subject of the Security Interest is household goods as defined by the Federal Trade Commission Credit Practices Rule or your principal dwelling, the property will secure only this Loan and not any other amounts you owe.

**3. OWNERSHIP OF THE PROPERTY -** You promise that you own the Property or, if this Loan is to buy the Property, you promise you will use the Loan proceeds for that purpose. You promise that no one else has any interest in or claim against the Property that you have not already told us about. You promise not to sell or lease the Property or to use it as security for a loan with another creditor until the Loan is repaid. You promise you will allow no other security interest or lien to attach to the Property either by your actions or by operation of law.

**4. PROTECTING THE SECURITY INTEREST -** If your state issues a title for the Property, you promise to have our security interest shown on the title. We may have to file what is called a financing statement to protect our security interest from the claims of others. You irrevocably authorize us to execute (on your behalf), if applicable, and file one or more financing, continuation or amendment statements pursuant to the Uniform Commercial Code (UCC) in form satisfactory to us.  You promise to do whatever else we think is necessary to protect our security interest in the Property. You also promise to pay all costs, including but not limited to any attorney fees, we incur in protecting our security interest and rights in the Property, to the extent permitted by applicable law.

**5. USE OF PROPERTY -** Until the Loan has been paid off, you promise you will: (1) Use the Property carefully and keep it in good repair. (2) Obtain our written permission before making major changes to the Property or changing the address where the Property is kept. (3) Inform us in writing before changing your address.

(4) Allow us to inspect the Property. (5) Promptly notify us if the Property is damaged, stolen or abused. (6) Not use the Property for any unlawful purpose. (7) Not retitle Property.

**6. TAXES, PROPERTY INSURANCE, TAXES AND FEES -** You promise to pay all taxes and fees (like registration fees) due on the Property and to keep the Property insured against loss and damage. The amount and coverage of the property insurance must be acceptable to us. You may provide the property insurance through a policy you already have, or through a policy you get and pay for. You promise to make the insurance policy payable to us and to deliver the policy or proof of coverage to us if asked to do so.

If you cancel your insurance and get a refund, we have a right to the refund. If the Property is lost or damaged, we can use the insurance settlement to repair the Property or apply it towards what you owe. You authorize us to endorse any draft or check which may be payable to you in order for us to collect any refund or benefits due under your insurance policy.

If you do not pay the taxes or fees on the Property when due or keep it insured, we may pay these obligations, but we are not required to do so. Any money we spend for taxes, fees or insurance will be added to the unpaid balance of the Loan and you will pay interest on those amounts at the same rate you agreed to pay on the Loan. We may receive payments in connection with the insurance from a company which provides the insurance. We may monitor your loans for the purpose of determining whether you and other borrowers have complied with the insurance requirements of our loan agreements or may engage others to do so. The insurance charge added to the Loan may include (1) the insurance company's payments to us and (2) the cost of determining compliance with the insurance requirements. If we add amounts for taxes, fees or insurance to the unpaid balance of the Loan, we may increase your payments to pay the amount added within the term of the insurance or term of the Loan.

**7. INSURANCE NOTICE -** If you do not purchase the required property insurance, the insurance we may purchase and charge you for will cover only our interest in the Property. The premium for this insurance may be higher because the insurance company may have given us the right to purchase insurance after uninsured collateral is lost or damaged. **The insurance will not be liability insurance and will not satisfy any state financial responsibility or no fault laws.**

**8. LIMITED DURABLE POWER OF ATTORNEY -** You hereby irrevocably appoint us and any and all of our agents acting on our behalf as your attorney-in-fact with full authority to execute and record any and all instruments, affidavits, certificates of title, applications for noting of liens on certificates of title, renewals, and other documents necessary to: (a) effect registrations, transfers of title, applications for title and notations of liens on certificates of title for any and all Collateral; (b) evidence our security interest in any and all Collateral; and (c) do such other things and take such other actions required to title, license and/or perfect our security interest in any and all Collateral.  As used herein, the term "Collateral" means the property (or properties) described in the receipts, vouchers and/or other documents that you have received and/or will receive in the future in connection with an Advance made under this agreement and/or the Plan.  This Limited Power of Attorney shall not terminate or otherwise be affected by your subsequent disability or incapacity.

© CUNA Mutual Group, 1999, 2000, 01, 02, 05, 06, 08, All Rights Reserved

KTNN63 (NXX029)-e

DocuSign Envelope ID: 086A15F8-9B0E-4809-99E5-94D9D1D18357

Credit Union **Eastman Credit Union**          Loan No.                    Acct. No.

Borrower(s) **Alexander James Johnson**

## SECURITY AGREEMENT

**9. DEFAULT -** You will be in default if you fail to make your loan payment by the date it is due. You will be in default if you do not meet your obligations or promise you made under the Loan Agreement or this Security Agreement. You will be in default if you do not negotiate in good faith with your insurance company following the loss or damage to the property. You will be in default if you receive insurance proceeds or other funds to repair the property and you fail to complete those repairs to our satisfaction. You will be in default if you sell the property and fail to apply the proceeds to any amount you owe to us. You will be in default if any property you have given us as security is repossessed by someone else or seized under a forfeiture or similar law. You will be in default if anything happens that gives us a reason to believe that you will not be able to make your payments on any loan obligation you have to us. You will be in default if anything else happens that, in our opinion, significantly affects the value of the property or our security interest in the property.

**10. WHAT HAPPENS IF YOU ARE IN DEFAULT -** When you are in default and after you have been given any time you may have under state law to cure your default, we may, without any advance notice to you, require immediate payment of the outstanding balance of the Loan and take possession of the Property. You agree the Credit Union has the right to take possession of the Property without judicial process if this can be done without breach of the peace. If we ask, you promise to deliver the Property at a time and place we choose. If the Property is a motor vehicle or boat, you agree that we may obtain a key or other device necessary to unlock and operate it, when you are in default. We will not be responsible for any other property not covered by this Agreement that you leave inside the Property or that is attached to the Property. We will try to return that property to you or make it available for you to claim. After we have possession of the Property, we can sell it and apply the money to any amounts you owe us. We will give you notice of any public disposition or the date after which a private disposition will be held. Our expenses for taking possession of and selling the Property will be deducted from the money received from the sale. Those costs may include the cost of storing the Property, preparing it for sale and attorneys' fees as provided in the Loan Agreement, to

the extent permitted under state law or awarded under the Bankruptcy Code. If you have agreed to pay the Loan, you must pay any amount that remains unpaid after the sale money has been applied to the unpaid balance of the Loan and to what you owe under this Agreement.

**Default Interest Rate.** You agree that if you are in default and you have agreed to pay the Loan, we may increase your interest rate on the Loan up to 18% or the maximum allowed by state law.

**11. DELAY IN ENFORCING RIGHTS AND CHANGES IN THE LOAN -** We can delay enforcing any of our rights under this Agreement any number of times without losing the ability to exercise our rights later. We can enforce this Agreement against your heirs or legal representatives. If we change the terms of the Loan, you agree that this Agreement will remain in effect.

**12. CONTINUED EFFECTIVENESS -** If any part of this Agreement is determined by a court to be unenforceable, the rest will remain in effect.

☐ *The following notice applies ONLY when the box at left is marked.*

**13. NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

**14. OTHER PROVISIONS -**

© CUNA Mutual Group, 1999, 2000, 01, 02, 05, 06, 08, All Rights Reserved          KTNN63 (NXX029)-e

DocuSign Envelope ID: 086A15F8-9B0E-4809-99E5-94D9D1D18357

Credit Union  Eastman Credit Union

Loan No.

| BORROWER 1 NAME AND ADDRESS | BORROWER 2 NAME (AND ADDRESS IF DIFFERENT FROM BORROWER 1) |
|---|---|
| Alexander James Johnson | |
| 6105 S Parker Rd, Apt 5107 | |
| Aurora, CO 80016 | , |

OWNER(S) OF COLLATERAL NAME AND ADDRESS

| Collateral | Property/Model/Make | Year | I.D. Number | Lien Amount | Value | Key Number |
|---|---|---|---|---|---|---|
| | | | | $ | $ | |
| | | | | $ | $ | |
| | | | | $ | $ | |

Other (Describe)

Pledge of Shares $ _____ in Account No. _____      $ _____ in Account No. _____

## SECURITY AGREEMENT

In this Agreement all references to "Credit Union," "we," "our" or "us" mean the credit union whose name appears on this document and anyone to whom the Credit Union assigns or transfers this Agreement. All references to the "Loan" mean the loan described in the Loan Agreement that is part of this document. All references to "you" or "your" mean any person who signs, or otherwise authenticates, this Agreement.

**1. THE SECURITY FOR THE LOAN -** You give us what is known as a security interest in the property described in the "Security" section of the Truth in Lending Disclosure that is part of this document ("the Property"). The security interest you give includes all accessions. Accessions are things which are attached to or installed in the Property now or in the future. The security interest also includes any refinancings for the Property which you buy within 10 days of the Loan and any extensions, renewals or refinancings of the Loan. It also includes any money you receive from selling the Property or from insurance you have on the Property. If the value of the Property declines, you promise to give us more property as security if asked to do so.

**2. WHAT THE SECURITY INTEREST COVERS/CROSS COLLATERAL PROVISIONS -** The security interest secures the Loan and any extensions, renewals, or refinancings of the Loan. It also secures any other loans you have now or receive in the future and any other amounts or loans, including any credit card loan, you owe us for any reason now or in the future, except any loan secured by your principal dwelling. Any security interest that you have given for any prior loan also secures this Loan and all other loans or other amounts you owe now or in the future. If the property that is the subject of the Security Interest is household goods as defined by the Federal Trade Commission Credit Practices Rule or your principal dwelling, the property will secure only this Loan and not any other amounts you owe.

**3. OWNERSHIP OF THE PROPERTY -** You promise that you own the Property or, if this Loan is to buy the Property, you promise you will use the Loan proceeds for that purpose. You promise that no one else has any interest in or claim against the Property that you have not already told us about. You promise not to sell or lease the Property or to use it as security for a loan with another creditor until the Loan is repaid. You promise you will allow no other security interest or lien to attach to the Property either by your actions or by operation of law.

**4. PROTECTING THE SECURITY INTEREST -** If your state issues a title for the Property, you promise to have our security interest shown on the title. We may have to file what is called a financing statement to protect our security interest from the claims of others. You irrevocably authorize us to execute (on your behalf), if applicable, and file one or more financing, continuation or amendment statements pursuant to the Uniform Commercial Code (UCC) in form satisfactory to us. You promise to do whatever else we think is necessary to protect our security interest in the Property. You also promise to pay all costs, including but not limited to any attorney fees, we incur in protecting our security interest and rights in the Property, to the extent permitted by applicable law.

**5. USE OF PROPERTY -** Until the Loan has been paid off, you promise you will: (1) Use the Property carefully and keep it in good repair. (2) Obtain our written permission before making major changes to the Property or changing the address where the Property is kept. (3) Inform us in writing before changing your address. (4) Allow us to inspect the Property. (5) Promptly notify us if the Property is damaged, stolen or abused. (6) Not use the Property for any unlawful purpose. (7) Not retitle Property.

**6. PROPERTY INSURANCE, TAXES AND FEES -** You promise to pay all taxes and fees (like registration fees) due on the Property and to keep the Property insured against loss and damage. The amount and coverage of the property insurance must be acceptable to us. You may provide the property insurance through a policy you already have, or through a policy you get and pay for. You promise to make the insurance policy payable to us and to deliver the policy or proof of coverage to us if asked to do so.

If you cancel your insurance and get a refund, we have a right to the refund. If the Property is lost or damaged, we can use the insurance settlement to repair the Property or apply it towards what you owe. You authorize us to endorse any draft or check which may be payable to you in order for us to collect any refund or benefits due under your insurance policy.

If you do not pay the taxes or fees on the Property when due or keep it insured, we may pay these obligations, but we are not required to do so. Any money we spend for taxes, fees or insurance will be added to the unpaid balance of the Loan and you will pay interest on those amounts at the same rate you agreed to pay on the Loan. We may receive payments in connection with the insurance from a company which provides the insurance. We may monitor our loans for the purpose of determining whether you and other borrowers have complied with the insurance requirements of our loan agreements or may engage others to do so. The insurance charge added to the Loan may include (1) the insurance company's payments to us and (2) the cost of determining compliance with the insurance requirements. If we add amounts for taxes, fees or insurance to the unpaid balance of the Loan, we may increase your payments to pay the amount added within the term of the insurance or term of the Loan.

**7. INSURANCE NOTICE -** If you do not purchase the required property insurance, the insurance we may purchase and charge you for will cover only our interest in the Property. The premium for this insurance may be higher because the insurance company may have given us the right to purchase insurance after uninsured collateral is lost or damaged. **The insurance will not be liability insurance and will not satisfy any state financial responsibility or no fault laws.**

**8. LIMITED DURABLE POWER OF ATTORNEY -** You hereby irrevocably appoint us and any and all of our agents acting on our behalf as your attorney-in-fact with full authority to execute and record any and all instruments, affidavits, certificates of title, applications for noting of liens on certificates of title, renewals, and other documents necessary to: (a) effect registrations, transfers of title, applications for title and notations of liens on certificates of title for any and all Collateral; (b) evidence our security interest in any and all Collateral; and (c) do such other things and take such other actions required to title, license and/or perfect our security interest in any and all Collateral. As used herein, the term "Collateral" means the property (or properties) described in the receipts, vouchers and/or other documents that you have received and/or will receive in the future in connection with an Advance made under this agreement and/or the Plan. This Limited Power of Attorney shall not terminate or otherwise be affected by your subsequent disability or incapacity.

**9. DEFAULT -** You will be in default if you fail to make your loan payment by the date it is due. You will be in default if you do not meet your obligations or break any promise you made under the Loan Agreement or this Security Agreement. You will be in default if you do not negotiate in good faith with your insurance company following the loss or damage to the property. You will be in default if you receive insurance proceeds or other funds to repair the property and you fail to complete those repairs to our satisfaction. You will be in default if you sell the property and fail to apply the proceeds to any amount you owe to us. You will be in default if any property you have given us as security is repossessed by someone else or seized under a forfeiture or similar law. You will be in default if anything happens that gives us a reason to believe that you will not be able to make your payments on any loan obligation you have to us. You will be in default if anything else happens that, in our opinion, significantly affects the value of the property or our security interest in the property.

© CUNA Mutual Group, 1999, 2000, 01, 02, 05, 06, 08, All Rights Reserved

KTNN63 (NXX029)-e

DocuSign Envelope ID: 086A15F8-9B0E-4809-99E5-94D9D1D18357

| Credit Union **Eastman Credit Union** | Loan No. | Acct. No. |
|---|---|---|
| Borrower(s) **Alexander James Johnson** | | |

## SECURITY AGREEMENT

**10. WHAT HAPPENS IF YOU ARE IN DEFAULT -** When you are in default and after you have been given any time you may have under state law to cure your default, we may, without any advance notice to you, require immediate payment of the outstanding balance of the Loan and take possession of the Property. You agree the Credit Union has the right to take possession of the Property without judicial process if this can be done without breach of the peace. If we ask, you promise to deliver the Property at a time and place we choose. If the Property is a motor vehicle or boat, you agree that we may obtain a key or other device necessary to unlock and operate it, when you are in default. We will not be responsible for any other property not covered by this Agreement that you leave inside the Property or that is attached to the Property. After we have possession of the Property, we can sell it and apply the money to any amounts you owe us. We will give you notice of any public disposition or the date after which a private disposition will be held. Our expenses for taking possession of and selling the Property will be deducted from the money received from the sale. Those costs may include the cost of storing the Property, preparing it for sale and attorneys' fees as provided in the Loan Agreement, to the extent permitted under state law or awarded under the Bankruptcy Code. If you have agreed to pay the Loan, you must pay any amount that remains unpaid after the sale money has been applied to the unpaid balance of the Loan and to what you owe under this Agreement.
**Default Interest Rate.** You agree that if you are in default and you have agreed to pay the Loan, we may increase your interest rate on the Loan up to 18% or the maximum allowed by state law.

**11. DELAY IN ENFORCING RIGHTS AND CHANGES IN THE LOAN -** We can delay enforcing any of our rights under this Agreement any number of times without losing the ability to exercise our rights later. We can enforce this Agreement against your heirs or legal representatives. If we change the terms of the Loan, you agree that this Agreement will remain in effect.
**12. CONTINUED EFFECTIVENESS -** If any part of this Agreement is determined by a court to be unenforceable, the rest will remain in effect.

☐ *The following notice applies ONLY when the box at left is marked.*

**13. NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

**14. OTHER PROVISIONS -**

## SIGNATURES

By signing below, you agree to the terms of this Security Agreement.

| X *Alexander James Johnson* (SEAL) 5/30/2019 | X (SEAL) 5/30/2019 |
|---|---|
| BORROWER 1    Alexander James Johnson    DATE | BORROWER 2    DATE |

DocuSigned by:
32F1DA43886C417...

| X (SEAL) | X (SEAL) |
|---|---|
| ☐ OWNER OF PROPERTY    DATE | ☐ OWNER OF PROPERTY    DATE |

© CUNA Mutual Group, 1999, 2000, 01, 02, 05, 06, 08, All Rights Reserved

**Fill in this information to identify the case:**

Debtor 1    Alexander Johnson

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court    **District of Colorado**

Case number:   **19–19816**

FILED

**U.S. Bankruptcy Court**
**District of Colorado**

10/29/2021

**Kenneth S. Gardner, Clerk**

## Official Form 410
## Proof of Claim

04/19

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed.** That date is on the notice of bankruptcy (Form 309) **that you received.**

### Part 1:   Identify the Claim

| | |
|---|---|
| 1. **Who is the current creditor?** | Eastman Credit Union <br><br> Name of the current creditor (the person or entity to be paid for this claim) <br><br> Other names the creditor used with the debtor |
| 2. **Has this claim been acquired from someone else?** | ☑ No <br> ☐ Yes. From whom? |

3. **Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|
| Eastman Credit Union | |
| Name | Name |
| PO Box 1989 <br> Kingsport TN 37662 | |
| Contact phone    423–578–7563 | Contact phone |
| Contact email    ehite@ecu.org | Contact email |
| Uniform claim identifier for electronic payments in chapter 13 (if you use one): | |

| | |
|---|---|
| 4. **Does this claim amend one already filed?** | ☐ No <br> ☑ Yes. Claim number on court claims registry (if known)    1    Filed on   02/14/2020 <br>                                                MM / DD / YYYY |
| 5. **Do you know if anyone else has filed a proof of claim for this claim?** | ☑ No <br> ☐ Yes. Who made the earlier filing? |

Official Form 410                                  Proof of Claim                                page 1

**Part 2:** Give Information About the Claim as of the Date the Case Was Filed

| | |
|---|---|
| 6. **Do you have any number you use to identify the debtor?** | ☐ No<br>☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor:        1108 |

---

| | |
|---|---|
| 7. **How much is the claim?** | $ 0.00        **Does this amount include interest or other charges?**<br>☑ No<br>☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |

---

| | |
|---|---|
| 8. **What is the basis of the claim?** | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br>Limit disclosing information that is entitled to privacy, such as healthcare information.<br><br>       Money Loaned |

---

| | |
|---|---|
| 9. **Is all or part of the claim secured?** | ☑ No<br>☐ Yes. The claim is secured by a lien on property.<br>**Nature of property:**<br>☐ Real estate.   If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410–A) with this *Proof of Claim.*<br>☐ Motor vehicle<br>☐ Other. Describe: _____<br><br>**Basis for perfection:** _____<br><br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>**Value of property:**       $ _____<br><br>**Amount of the claim that is secured:**       $ _____<br><br>**Amount of the claim that is unsecured:**       $ _____   (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>**Amount necessary to cure any default as of the date of the petition:**       $ _____<br><br>**Annual Interest Rate** (when case was filed)       _____ %<br><br>☐ Fixed<br>☐ Variable |

---

| | |
|---|---|
| 10. **Is this claim based on a lease?** | ☑ No<br>☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____ |

---

| | |
|---|---|
| 11. **Is this claim subject to a right of setoff?** | ☑ No<br>☐ Yes. Identify the property: _____ |

---

Official Form 410                   Proof of Claim                   page 2

| 12. | Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No<br>☐ Yes. *Check all that apply:* | Amount entitled to priority |
|---|---|---|---|
| | A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ _____ |
| | | ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ _____ |
| | | ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ _____ |
| | | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ _____ |
| | | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ _____ |
| | | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_) that applies | $ _____ |
| | | * Amounts are subject to adjustment on 4/1/22 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.**
**18 U.S.C. §§ 152, 157 and 3571.**

Check the appropriate box:

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date     10/29/2021
                     MM / DD / YYYY

/s/  J. Eric Hite

Signature

Print the name of the person who is completing and signing this claim:

| Name | J. Eric Hite |
|---|---|
| | First name    Middle name    Last name |
| Title | Paralegal |
| Company | Eastman Credit Union |
| | Identify the corporate servicer as the company if the authorized agent is a servicer |
| Address | PO Box 1989 |
| | Number   Street |
| | Kingsport, TN 37662 |
| | City   State   ZIP Code |
| Contact phone | 423–578–7563     Email     ehite@ecu.org |

Official Form 410                    Proof of Claim                    page 3

DocuSign Envelope ID: 086A15F8-9B0E-4809-99E5-94D9D1D18357



EASTMAN CREDIT UNION

P.O. Box 1989 • Kingsport, TN 37662



## LOAN AND SECURITY AGREEMENTS AND DISCLOSURE STATEMENT

| LOAN DATE 5/30/2019 | LOAN NUMBER | ACCOUNT NUMBER | GROUP POLICY NUMBER 041-0764-0 | MATURITY DATE 5/20/2021 |
|---|---|---|---|---|
| LOAN TYPE Its Your Money CE | LOAN PURPOSE Other Financial Obligations | | | |

| BORROWER 1 | BORROWER 2 |
|---|---|
| NAME AND ADDRESS | NAME (AND ADDRESS IF DIFFERENT FROM BORROWER 1) |
| Alexander James Johnson | |
| 6105 S Parker Rd, Apt 5107 | |
| Aurora, CO 80016 | |

### TRUTH IN LENDING DISCLOSURE 'e' means an estimate

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments | Total Sale Price |
|---|---|---|---|---|
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you. | The amount of credit provided to you or on your behalf. | The amount you will have paid after you have made all payments as scheduled. | The total cost of your purchase on credit is $ which includes your downpayment of $ . |
| 9.954% | $2,606.03 e | $25,000.00 e | $27,606.03 e | |

**Your Payment Schedule Will Be:**

| Number of Payments | Amount of Payments | When Payments Are Due | |
|---|---|---|---|
| 23 | $1,150.26 | Monthly | Beginning 6/20/2019 |
| 1 | $1,150.05 e | | 5/20/2021 |

Prepayment: If you pay off early you will not have to pay a penalty.
Required Deposit: The Annual Percentage Rate does not take into account your required deposit, if any.
Demand: ☐ This obligation has a demand feature.
☐ All disclosures are based on an assumed maturity of one year.

| Property Insurance: You may obtain property insurance from anyone you want that is acceptable to the Credit Union. | Filing Fees | Non-Filing Insurance |
|---|---|---|
| | $0.00 | $ |

**Late Charge:**

A late charge of the lesser of 5% or the maximum allowed by law will be assessed against all past due amounts if your payment is not received within fifteen (15) days of the due date.

**Security:** Collateral securing other loans with the Credit Union may also secure this loan. You are giving a security interest in your shares and dividends and, if any, your deposits and interest in the Credit Union; and the property described below:

| Collateral | Property/Model/Make | Year | I.D. Number | Type | Value | Key Number |
|---|---|---|---|---|---|---|
| | | | | | $ | |
| | | | | | $ | |
| | | | | | $ | |
| Other (Describe) | | | | | | |
| Pledge of Shares $ | in Account No. | | | $ | in Account No. | |

See your contract documents for any additional information about nonpayment, default, and any required repayment in full before the scheduled date.

### SIGNATURES

By signing, or otherwise authenticating, as Borrower, you agree to the terms of the Loan Agreement. If property is described in the "Security" section of the Truth in Lending Disclosure, you also agree to the terms of the Security Agreement. If you sign as "Owner of Property" you agree only to the terms of the Security Agreement.

**CAUTION: IT IS IMPORTANT THAT YOU THOROUGHLY READ THE AGREEMENT BEFORE YOU SIGN IT.**

DocuSigned by:

| X *Alexander James Johnson* (SEAL) 5/30/2019 | X (SEAL) 5/30/2019 |
|---|---|
| BORROWER 1   32F1D... Alexander James Johnson    DATE | BORROWER 2    DATE |

| X (SEAL) | X (SEAL) |
|---|---|
| ☐ OWNER OF PROPERTY    DATE | ☐ OWNER OF PROPERTY    DATE |

© CUNA Mutual Group, 1999, 2000, 01, 02, 05, 06, 08, All Rights Reserved

KTNN63 (NXX029)-e

DocuSign Envelope ID: 086A15F8-9B0E-4809-99E5-94D9D1D18357

Credit Union **Eastman Credit Union**                    Loan No.                    Acct. No.

Borrower(s) **Alexander James Johnson**

## ITEMIZATION OF THE AMOUNT FINANCED

| Itemization of Amount Financed of $25,000.00 e | Amount Given to You Directly $25,000.00 | Amount Paid on Your Account . $0.00 e | Prepaid Finance Charge N/A |
|---|---|---|---|

Amounts Paid to Others on Your Behalf: (If an amount is marked with an asterisk (*) we will be retaining a portion of the amount.)

| | | |
|---|---|---|
| To | | To |
| To | | To |
| To | | To |
| To | | To |
| To | | To |
| To | | To |
| To | | To |
| To | | To |
| To | | To |
| To | | To |
| To | | To |
| To | | To |
| To | * $ | To |
| To | * $ | To |

## LOAN AGREEMENT

In this Loan Agreement ("Agreement") all references to "Credit Union," "we," "our," or "us," mean the Credit Union whose name appears above and anyone to whom the Credit Union assigns or transfers this Agreement. All references to "you," or "your" mean each person who signs, or otherwise authenticates, this Agreement as a borrower.

**1. PROMISE TO PAY -** You promise to pay      $25,000.00      to the Credit Union plus interest on the unpaid balance until what you owe has been repaid. The interest rate is      9.950% per year. This agreement shall be governed by the laws of the state of Tennessee.

**Collection Costs:**

You promise to pay all costs of collecting the amount you owe under this agreement, including reasonable attorneys' fees of not less than 25% of the amount due, or the amount allowed under state law, and court costs. All fees and costs incurred will be added to your loan balance and will incur interest at the applicable interest rate.

**2. PAYMENTS -** You promise to make payments of the amount and at the time shown in the Truth in Lending Disclosure. You may prepay any amount without penalty. If you prepay any part of what you owe, you are still required to make the regularly scheduled payments, unless we have agreed to a change in the payment schedule. Because this is a simple interest loan, if you do not make payments exactly as scheduled, your final payment may be more or less than the amount of the final payment that is disclosed. If you elect voluntary payment protection, we will either include the program fee in your payments or extend the term of your loan. If the term is extended, you will be required to make additional payments of the scheduled amount, until what you owe has been paid. You promise to make all payments to the place we choose. If this loan refinances another loan we have with you, the other loan will be canceled and refinanced as of the date of this loan. Unless otherwise required by law, payments will be applied to amounts owed in the manner we choose.
**3. LOAN PROCEEDS -** If the proceeds of this loan are deposited directly into your account with the Credit Union, interest on this loan begins on the date of deposit. If the proceeds of this loan are delivered to you personally, interest on this loan begins on the date of delivery. If the proceeds of this loan are mailed to you, interest on this loan begins on the date of mailing.
**4. SECURITY FOR LOAN -** This Agreement is secured by all property described in the "Security" section of the Truth in Lending Disclosure. Property securing other loans you have with us also secures this loan, unless the property is a dwelling. A dwelling secures this loan only if it is described in the "Security" section of the Truth in Lending Disclosure for this loan. In addition to your pledge of shares, we may also have what is known as a statutory lien on all individual and joint accounts you have with us. A statutory lien means we have the right under federal law and many state laws to claim an interest in your accounts. We can enforce a statutory lien against your shares and dividends, and if any, interest and deposits, in all individual and joint accounts you have with us to satisfy any outstanding financial obligation that is due and payable to us. We may exercise our right to enforce this lien without further notice to you, to the extent permitted by law. **For all borrowers:** You pledge as security for this loan all shares and dividends and, if any, all deposits and interest in all joint and individual accounts you have with the Credit Union now and in the future. **The statutory lien and/or your pledge will allow us to apply the funds in your account(s) to what you owe when you are in default.** The statutory lien and your pledge do not apply to any Individual Retirement Account or any other account that would lose special tax treatment under state or federal law if given as security.

**5. DEFAULT -** You will be in default under this Agreement if you do not make a payment of the amount required on or before the date it is due. You will be in default if you break any promise you made in connection with this loan or if anyone is in default under any security agreement made in connection with this Agreement. You will be in default if you die, file for bankruptcy, become insolvent or if you made any false or misleading statements in your loan application. You will also be in default if something happens that we believe may materially affect your ability to repay what you owe under this Agreement or if you are in default under any other loan agreement you have with us.
**6. ACTIONS AFTER DEFAULT -** When you are in default, we may demand immediate payment of the entire unpaid balance under this Agreement. You waive any right you have to receive demand for payment, notice of intent to demand immediate payment and notice of demand for immediate payment. We may also apply against what you owe any shares and/or deposits given as security under this Agreement. We may also exercise any other rights given by law when you are in default.
Default Interest Rate: A default ANNUAL PERCENTAGE RATE of up to 18% may be imposed if you are in default under this Agreement. This default rate may also be imposed if you fail to register and list Eastman Credit Union as lien holder within thirty (30) days of receiving your loan proceeds. You agree that Eastman Credit Union has the right to perform any lienholder activities allowed by law and any fees associated with such lienholder activities will be added to your account.
**7. EACH PERSON RESPONSIBLE -** Each person who signs, or otherwise authenticates, this Agreement will be individually and jointly responsible for paying the entire amount owed under this Agreement. This means we can enforce our rights against any one of you individually or against all of you together.
**8. LATE CHARGE -** If you are late in making a payment, you promise to pay the late charge shown in the Truth in Lending Disclosure. If no late charge is shown, you will not be charged one.
**9. DELAY IN ENFORCING RIGHTS -** We can delay enforcing any of our rights under this Agreement any number of times without losing the ability to exercise our rights later. We can enforce this Agreement against your heirs or legal representatives.
**10. CONTINUED EFFECTIVENESS -** If any part of this Agreement is determined by a court to be unenforceable, the rest will remain in effect.
**11. NOTICES -** Notices will be sent to you at the most recent address you have given us in writing. Notice to any one of you will be notice to all.

© CUNA Mutual Group, 1999, 2000, 01, 02, 05, 06, 08, All Rights Reserved                                                                                                                     KTNN63 (NXX029)-e

DocuSign Envelope ID: 086A15F8-9B0E-4809-99E5-94D9D1D18357

Credit Union **Eastman Credit Union**                                 Loan No.                     Acct. No.

Borrower(s) **Alexander James Johnson**

## LOAN AGREEMENT

**12. USE OF ACCOUNT** - You promise to use your account for the purpose stated. You acknowledge that this use is for consumer (personal, family or household) purposes. If ECU gives you written permission to do so, you may also use the account for agricultural or commercial purposes, or to purchase real estate. If your account is a student loan, you promise to use the account for one or more qualified higher education expenses as defined in 26 U.S.C. 221.

**13. NO ORAL AGREEMENTS -- THIS NOTE CONSTITUTES A "WRITTEN LOAN AGREEMENT" PURSUANT TO SECTION 26.02 OF THE TEXAS BUSINESS AND COMMERCE CODE, IF SUCH SECTION APPLIES. THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

**14. ELECTRONIC COPIES OF LOAN DOCUMENTS** - You agree that a copy (including a facsimile, scanned or imaged copy) of your Loan Agreement or any other documents (including your Security Agreement) may be substituted for and used for any purpose as the original signed documents.

**15. COMPLIANCE AGREEMENT** - You agree to cooperate with the credit union in correcting any clerical errors in your Loan or Security Agreements. You also agree to take any

actions required to allow Eastman Credit Union to perfect its security interest in the property you have pledged as security for this loan. You understand and agree that failure to make corrections or complete documents as requested by the credit union is a default of this Agreement.

**16. LIMITED DURABLE POWER OF ATTORNEY** - You hereby irrevocably appoint us and any and all of our agents acting on our behalf as your attorney-in-fact with full authority to execute and record any and all documents, instruments and affidavits necessary to correct any clerical errors in this Agreement, including the description of the Collateral given as security for the loan or errors in calculating your payments under the loan.

**17. AUTHORIZATION TO RELEASE INFORMATION TO GUARANTOR** - You agree that we may release any information about your loan, including your loan payment history, to any individual(s) who have sign a Guaranty Agreement to guarantee payment of your outstanding loan amount.

**18. FEDERAL STUDENT LOAN CONSOLIDATION** - Federal student loan programs offer various repayment options, such as deferment or loan forgiveness. If you consolidate or refinance your federal loans with ECU, you will no longer be eligible to participate in these federal programs. For more information, visit www.ed.gov.

## SECURITY AGREEMENT

In this Agreement all references to "Credit Union," "we," "our" or "us" mean the credit union whose name appears on this document and anyone to whom the Credit Union assigns or transfers this Agreement. All references to the "Loan" mean the loan described in the Loan Agreement that is part of this document. All references to "you" or "your" mean any person who signs, or otherwise authenticates, this Agreement.

**1. THE SECURITY FOR THE LOAN** - You give us what is known as a security interest in the property described in the "Security" section of the Truth in Lending Disclosure that is part of this document ("the Property"). The security interest you give includes all accessions. Accessions are things which are attached to or installed in the Property now or in the future. The security interest also includes any replacements for the Property which you buy within 10 days of the Loan and any extensions, renewals or refinancings of the Loan. It also includes any money you receive from selling the Property or from insurance you have on the Property. If the value of the Property declines, you promise to give us more property as security if asked to do so.

**2. WHAT THE SECURITY INTEREST COVERS/CROSS COLLATERAL PROVISIONS** - The security interest secures the Loan and any extensions, renewals, or refinancings of the Loan. It also secures any other loans you have now or receive in the future and any other amounts or loans, including any credit card loan, you owe us for any reason now or in the future, except any loan secured by your principal dwelling. Any security interest that you have given for any prior loan also secures this Loan and all other loans or other amounts you owe now or in the future. If the property that is the subject of the Security Interest is household goods as defined by the Federal Trade Commission Credit Practices Rule or your principal dwelling, the property will secure only this Loan and not any other amounts you owe.

**3. OWNERSHIP OF THE PROPERTY** - You promise that you own the Property or, if this Loan is to buy the Property, you promise you will use the Loan proceeds for that purpose. You promise that no one else has any interest in or claim against the Property that you have not already told us about. You promise not to sell or lease the Property or to use it as security for a loan with another creditor until the Loan is repaid. You promise you will allow no other security interest or lien to attach to the Property either by your actions or by operation of law.

**4. PROTECTING THE SECURITY INTEREST** - If your state issues a title for the Property, you promise to have our security interest shown on the title. We may have to file what is called a financing statement to protect our security interest from the claims of others. You irrevocably authorize us to execute (on your behalf), if applicable, and file one or more financing, continuation or amendment statements pursuant to the Uniform Commercial Code (UCC) in form satisfactory to us. You promise to do whatever else we think is necessary to protect our security interest in the Property. You also promise to pay all costs, including but not limited to any attorney fees, we incur in protecting our security interest and rights in the Property, to the extent permitted by applicable law.

**5. USE OF PROPERTY** - Until the Loan has been paid off, you promise you will: (1) Use the Property carefully and keep it in good repair. (2) Obtain our written permission before making major changes to the Property or changing the address where the Property is kept. (3) Inform us in writing before changing your address.

(4) Allow us to inspect the Property. (5) Promptly notify us if the Property is damaged, stolen or abused. (6) Not use the Property for any unlawful purpose. (7) Not retitle Property.

**6. PROPERTY INSURANCE, TAXES AND FEES** - You promise to pay all taxes and fees (like registration fees) due on the Property and to keep the Property insured against loss and damage. The amount and coverage of the property insurance must be acceptable to us. You may provide the property insurance through a policy you already have, or through a policy you get and pay for. You promise to make the insurance policy payable to us and to deliver the policy or proof of coverage to us if asked to do so.

If you cancel your insurance and get a refund, we have a right to the refund. If the Property is lost or damaged, we can use the insurance settlement to repair the Property or apply it towards what you owe. You authorize us to endorse any draft or check which may be payable to you in order for us to collect any refund or benefits due under your insurance policy.

If you do not pay the taxes or fees on the Property when due or keep it insured, we may pay these obligations, but we are not required to do so. Any money we spend for taxes, fees or insurance will be added to the unpaid balance of the Loan and you will pay interest on those amounts at the same rate you agreed to pay on the Loan. We may receive payments in connection with the insurance from a company which provides the insurance. We may monitor our loans for the purpose of determining whether you and other borrowers have complied with the insurance requirements of our loan agreements or may engage others to do so. The insurance charge added to the Loan may include (1) the insurance company's payments to us and (2) the cost of determining compliance with the insurance requirements. If we add amounts for taxes, fees or insurance to the unpaid balance of the Loan, we may increase your payments by the amount added within the term of the insurance or term of the Loan.

**7. INSURANCE NOTICE** - If you do not purchase the required property insurance, the insurance we may purchase and charge you for will cover only our interest in the Property. The premium for this insurance may be higher because the insurance company may have given us the right to purchase insurance after uninsured collateral is lost or damaged. The insurance will not be liability insurance and will not satisfy any state financial responsibility or no fault laws.

**8. LIMITED DURABLE POWER OF ATTORNEY** - You hereby irrevocably appoint us and any and all of our agents acting on our behalf as your attorney-in-fact with full authority to execute and record any and all instruments, affidavits, certificates of title, applications for noting of liens on certificates of title, renewals, and other documents necessary to: (a) effect registrations, transfers of title, applications for title and notations of liens on certificates of title for any and all Collateral; (b) evidence our security interest in any and all Collateral; and (c) do such other things and take such other actions required to title, license and/or perfect our security interest in any and all Collateral. As used herein, the term "Collateral" means the property (or properties) described in the receipts, vouchers and/or other documents that you have received and/or will receive in the future in connection with an Advance made under this agreement and/or the Plan. This Limited Power of Attorney shall not terminate or otherwise be affected by your subsequent disability or incapacity.

© CUNA Mutual Group, 1999, 2000, 01, 02, 05, 06, 08, All Rights Reserved

KTNN63 (NXX029)-e

DocuSign Envelope ID: 086A15F8-9B0E-4809-99E5-94D9D1D18357

Credit Union **Eastman Credit Union**  Loan No.  Acct. No.

Borrower(s) **Alexander James Johnson**

## SECURITY AGREEMENT

**9. DEFAULT -** You will be in default if you fail to make your loan payment by the date it is due. You will be in default if you do not meet your obligations or break any promise you made under the Loan Agreement or this Security Agreement. You will be in default if you do not negotiate in good faith with your insurance company following the loss or damage to the property. You will be in default if you receive insurance proceeds or other funds to repair the property and you fail to complete those repairs to our satisfaction. You will be in default if you sell the property and fail to apply the proceeds to any amount you owe to us. You will be in default if any property you have given us as security is repossessed by someone else or seized under a forfeiture or similar law. You will be in default if anything happens that gives us a reason to believe that you will not be able to make your payments on any loan obligation you have to us. You will be in default if anything else happens that, in our opinion, significantly affects the value of the property or our security interest in the property.

**10. WHAT HAPPENS IF YOU ARE IN DEFAULT -** When you are in default and after you have been given any time you may have under state law to cure your default, we may, without any advance notice to you, require immediate payment of the outstanding balance of the Loan and take possession of the Property. You agree the Credit Union has the right to take possession of the Property without judicial process if this can be done without breach of the peace. If we ask, you promise to deliver the Property at a time and place we choose. If the Property is a motor vehicle or boat, you agree that we may obtain a key or other device necessary to unlock and operate it, when you are in default. We will not be responsible for any other property not covered by this Agreement that you leave inside the Property or that is attached to the Property. We will try to return that property to you or make it available for you to claim. After we have possession of the Property, we can sell it and apply the money to any amounts you owe us. We will give you notice of any public disposition or the date after which a private disposition will be held. Our expenses for taking possession of and selling the Property will be deducted from the money received from the sale. Those costs may include the cost of storing the Property, preparing it for sale and attorneys' fees as provided in the Loan Agreement, to

the extent permitted under state law or awarded under the Bankruptcy Code. If you have agreed to pay the Loan, you must pay any amount that remains unpaid after the sale money has been applied to the unpaid balance of the Loan and to what you owe under this Agreement.

**Default Interest Rate.** You agree that if you are in default and you have agreed to pay the Loan, we may increase your interest rate on the Loan up to 18% or the maximum allowed by state law.

**11. DELAY IN ENFORCING RIGHTS AND CHANGES IN THE LOAN -** We can delay enforcing any of our rights under this Agreement any number of times without losing the ability to exercise our rights later. We can enforce this Agreement against your heirs or legal representatives. If we change the terms of the Loan, you agree that this Agreement will remain in effect.

**12. CONTINUED EFFECTIVENESS -** If any part of this Agreement is determined by a court to be unenforceable, the rest will remain in effect.

☐*The following notice applies ONLY when the box at left is marked.*

**13. NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

**14. OTHER PROVISIONS -**

© CUNA Mutual Group, 1999, 2000, 01, 02, 05, 06, 08, All Rights Reserved  KTNN63 (NXX029)-e

DocuSign Envelope ID: 086A15F8-9B0E-4809-99E5-94D9D1D18357

Credit Union Eastman Credit Union

Loan No.

| BORROWER 1 NAME AND ADDRESS | BORROWER 2 NAME (AND ADDRESS IF DIFFERENT FROM BORROWER 1) |
|---|---|
| Alexander James Johnson | |
| 6105 S Parker Rd, Apt 5107 | |
| Aurora, CO 80016 | , |

OWNER(S) OF COLLATERAL NAME AND ADDRESS

| Collateral | Property/Model/Make | Year I.D. Number | Lien Amount | Value | Key Number |
|---|---|---|---|---|---|
| | | | $ | $ | |
| | | | $ | $ | |
| | | | $ | $ | |
| Other (Describe) | | | | | |
| Pledge of Shares $ | | in Account No. | $ | in Account No. | |

## SECURITY AGREEMENT

In this Agreement all references to "Credit Union," "we," "our" or "us" mean the credit union whose name appears on this document and anyone to whom the Credit Union assigns or transfers this Agreement. All references to the "Loan" mean the loan described in the Loan Agreement that is part of this document. All references to "you" or "your" mean any person who signs, or otherwise authenticates, this Agreement.

**1. THE SECURITY FOR THE LOAN** - You give us what is known as a security interest in the property described in the "Security" section of the Truth in Lending Disclosure that is part of this document ("the Property"). The security interest you give includes all accessions. Accessions are things which are attached to or installed in the Property now or in the future. The security interest also includes any replacements for the Property which you buy within 10 days of the Loan and any extensions, renewals or refinancings of the Loan. It also includes any money you receive from selling the Property or from insurance you have on the Property. If the value of the Property declines, you promise to give us more property as security if asked to do so.

**2. WHAT THE SECURITY INTEREST COVERS/CROSS COLLATERAL PROVISIONS** - The security interest secures the Loan and any extensions, renewals, or refinancings of the Loan. It also secures any other loans you have now or receive in the future and any other amounts or loans, including any credit card loan, you owe us for any reason now or in the future, except any loan Secured by your principal dwelling. Any security interest that you have given for any prior loan also secures this Loan and all other loans or other amounts you owe now or in the future. If the property that is the subject of the Security Interest is household goods as defined by the Federal Trade Commission Credit Practices Rule or your principal dwelling, the property will secure only this Loan and not any other amounts you owe.

**3. OWNERSHIP OF THE PROPERTY** - You promise that you own the Property, or, if this Loan is to buy the Property, you promise you will use the Loan proceeds for that purpose. You promise that no one else has any interest in or claim against the Property that you have not already told us about. You promise not to sell or lease the Property or to use it as security for a loan with another creditor until the Loan is repaid. You promise you will allow no other security interest or lien to attach to the Property either by your actions or by operation of law.

**4. PROTECTING THE SECURITY INTEREST** - If your state issues a title for the Property, you promise to have our security interest shown on the title. We may have to file what is called a financing statement to protect our security interest from the claims of others. You irrevocably authorize us to execute (on your behalf), if applicable, and file one or more financing, continuation or amendment statements pursuant to the Uniform Commercial Code (UCC) in form satisfactory to us. You promise to do whatever else we think is necessary to protect our security interest in the Property. You also promise to pay all costs, including but not limited to any attorney fees, we incur in protecting our security interest and rights in the Property, to the extent permitted by applicable law.

**5. USE OF PROPERTY** - Until the Loan has been paid off, you promise you will: (1) Use the Property carefully and keep it in good repair. (2) Obtain our written permission before making major changes to the Property or changing the address where the Property is kept. (3) Inform us in writing before changing your address. (4) Allow us to inspect the Property. (5) Promptly notify us if the Property is damaged, stolen or abused. (6) Not use the Property for any unlawful purpose. (7) Not retitle Property.

**6. PROPERTY INSURANCE, TAXES AND FEES** - You promise to pay all taxes and fees (like registration fees) due on the Property and to keep the Property insured against loss and damage. The amount and coverage of the property insurance must be acceptable to us. You may provide the property insurance through a policy you already have, or through a policy you get and pay for. You promise to make the insurance policy payable to us and to deliver the policy or proof of coverage to us if asked to do so.

If you cancel your insurance and get a refund, we have a right to the refund. If the Property is lost or damaged, we can use the insurance settlement to repair the Property or apply it towards what you owe. You authorize us to endorse any draft or check which may be payable to you in order for us to collect any refund or benefits due under your insurance policy.

If you do not pay the taxes or fees on the Property when due or keep it insured, we may pay these obligations, but we are not required to do so. Any money we spend for taxes, fees or insurance will be added to the unpaid balance of the Loan and you will pay interest on those amounts at the same rate you agreed to pay on the Loan. We may receive payments in connection with the insurance from a company which provides the insurance. We may monitor our loans for the purpose of determining whether you and other borrowers have complied with the insurance requirements of our loan agreements or may engage others to do so. The insurance charge added to the Loan may include (1) the insurance company's payments to us and (2) the cost of determining compliance with the insurance requirements. If we add amounts for taxes, fees or insurance to the unpaid balance of the Loan, we may increase your payments to pay the amount added within the term of the insurance or term of the Loan.

**7. INSURANCE NOTICE** - If you do not purchase the required property insurance, the insurance we may purchase and charge you for will cover only our interest in the Property. The premium for this insurance may be higher because the insurance company may have given us the right to purchase insurance after uninsured collateral is lost or damaged. **The insurance will not be liability insurance and will not satisfy any state financial responsibility or no fault laws.**

**8. LIMITED DURABLE POWER OF ATTORNEY** - You hereby irrevocably appoint us and any and all of our agents acting on our behalf as your attorney-in-fact with full authority to execute and record any and all instruments, affidavits, certificates of title, applications for noting of liens on certificates of title, renewals, and other documents necessary to: (a) effect registrations, transfers of title, applications for title and notations of liens on certificates of title for any and all Collateral; (b) evidence our security interest in any and all Collateral; and (c) do such other things and take such other actions required to title, license and/or perfect our security interest in any and all Collateral. As used herein, the term "Collateral" means the property (or properties) described in the receipts, vouchers and/or other documents that you have received and/or will receive in the future in connection with an Advance made under this agreement and/or the Plan. This Limited Power of Attorney shall not terminate or otherwise be affected by your subsequent disability or incapacity.

**9. DEFAULT** - You will be in default if you fail to make your loan payment by the date it is due. You will be in default if you do not meet your obligations or break any promise you made under the Loan Agreement or this Security Agreement. You will be in default if you do not negotiate in good faith with your insurance company following the loss or damage to the property. You will be in default if you receive insurance proceeds or other funds to repair the property and you fail to complete those repairs to our satisfaction. You will be in default if you sell the property and fail to apply the proceeds to any amount you owe to us. You will be in default if any property you have given us as security is repossessed by someone else or seized under a forfeiture or similar law. You will be in default if anything happens that gives us a reason to believe that you will not be able to make your payments on any loan obligation you have to us. You will be in default if anything else happens that, in our opinion, significantly affects the value of the property or our security interest in the property.

© CUNA Mutual Group, 1999, 2000, 01, 02, 05, 06, 08, All Rights Reserved

KTNN63 (NXX029)-e

DocuSign Envelope ID: 086A15F8-9B0E-4809-99E5-94D9D1D18357
Credit Union **Eastman Credit Union**                    Loan No.                    Acct. No.

Borrower(s) **Alexander James Johnson**

## SECURITY AGREEMENT

**10. WHAT HAPPENS IF YOU ARE IN DEFAULT -** When you are in default and after you have been given any time you may have under state law to cure your default, we may, without any advance notice to you, require immediate payment of the outstanding balance of the Loan and take possession of the Property. You agree the Credit Union has the right to take possession of the Property without judicial process if this can be done without breach of the peace. If we ask, you promise to deliver the Property at a time and place we choose. If the Property is a motor vehicle or boat, you agree that we may obtain a key or other device necessary to unlock and operate it, when you are in default. We will not be responsible for any other property not covered by this Agreement that you leave inside the Property or that is attached to the Property. We will try to return that property to you or make it available for you to claim. After we have possession of the Property, we can sell it and apply the money to any amounts you owe us. We will give you notice of any public disposition or the date after which a private disposition will be held. Our expenses for taking possession of and selling the Property will be deducted from the money received from the sale. Those costs may include the cost of storing the Property, preparing it for sale and attorneys' fees as provided in the Loan Agreement, to the extent permitted under state law or awarded under the Bankruptcy Code. If you have agreed to pay the Loan, you must pay any amount that remains unpaid after the sale money has been applied to the unpaid balance of the Loan and to what you owe under this Agreement.
**Default Interest Rate.** You agree that if you are in default and you have agreed to pay the Loan, we may increase your interest rate on the Loan up to 18% or the maximum allowed by state law.

**11. DELAY IN ENFORCING RIGHTS AND CHANGES IN THE LOAN -** We can delay enforcing any of our rights under this Agreement any number of times without losing the ability to exercise our rights later. We can enforce this Agreement against your heirs or legal representatives. If we change the terms of the Loan, you agree that this Agreement will remain in effect.
**12. CONTINUED EFFECTIVENESS -** If any part of this Agreement is determined by a court to be unenforceable, the rest will remain in effect.

☐*The following notice applies ONLY when the box at left is marked.*
**13. NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

**14. OTHER PROVISIONS -**

## SIGNATURES

By signing below, you agree to the terms of this Security Agreement.

| X _Alexander James Johnson_ (SEAL) 5/30/2019 | X (SEAL) 5/30/2019 |
|---|---|
| BORROWER 1 Alexander James Johnson    DATE | BORROWER 2    DATE |
| X (SEAL) | X (SEAL) |
| ☐ OWNER OF PROPERTY    DATE | ☐ OWNER OF PROPERTY    DATE |

© CUNA Mutual Group, 1999, 2000, 01, 02, 05, 06, 08, All Rights Reserved                    KTNN63 (NXXO29)-e

**Fill in this information to identify the case:**

Debtor 1    Alexander Johnson

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:   District of Colorado

Case number    19-19816 EEB

## Official Form 410

# Proof of Claim

04/19

**Read the instructions before filling out this form.** This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed.** That date is on the notice of bankruptcy (Form 309) that you received.

---

### Part 1:   Identify the Claim

**1. Who is the current creditor?**

Law Offices of Ritchie, Dillard, Davies & Johnson, P.C.
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|
| Berken Cloyes, P.C. <br> Name | Ritchie, Dillard, Davies & Johnson, P.C. <br> Name |
| 1159 Delaware Street <br> Number    Street | 606 West Main Street, Suite 300 <br> Number    Street |
| Denver    CO    80204 <br> City    State    ZIP Code | Knoxville    TN    37902 <br> City    State    ZIP Code |
| Contact phone (303) 623-4357 | Contact phone _____ |
| Contact email joshua@berkencloyes.com | Contact email _____ |

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

__ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known) _____    Filed on _____
   MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? _____

---

| **Part 2:** | **Give Information About the Claim as of the Date the Case Was Filed** |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

**7. How much is the claim?**

$ _____ 902,908.82   **Does this amount include interest or other charges?**

☑ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

<u>Services Rendered and Costs Incurred under Legal Representation Agreements</u> .

**9. Is all or part of the claim secured?**

☑ No

☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $ _____

**Amount of the claim that is secured:** $ _____

**Amount of the claim that is unsecured:** $ _____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $ _____

**Annual Interest Rate** (when case was filed) _____%

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |

\* Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment.

---

**Part 3:   Sign Below**

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  02/14/2020
                   MM / DD / YYYY

Signature

Print the name of the person who is completing and signing this claim:

| | | | |
|---|---|---|---|
| Name | Joshua | B. | Sheade |
| | First name | Middle name | Last name |
| Title | Berken Cloyes, P.C. on behalf of | | |
| Company | Law Offices of Ritchie, Dillard, Davies & Johnson, | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 1195 | Delaware Street | |
| | Number | Street | |
| | Denver | CO | 80204 |
| | City | State | ZIP Code |
| Contact phone | (303) 623-4357 | Email | joshua@berkencloyes.com |

**PRIVILEGE LOG**
**TO PROOF OF CLAIM OF RITCHIE, DILLARD, DAVIES & JOHNSON, P.C.**

| Claim Attachment No. | Description | Privilege Basis |
|---|---|---|
| 1 | Statement Summary for Alexander J. Johnson | NONE |
| 2 | Representation Agreement dated November 20, 2014 | Tenn.Sup.Ct.R. 8, RPC 1.6; Tennessee Code |
| 3 | Representation Agreement dated September 3, 2015 | Tenn.Sup.Ct.R. 8, RPC 1.6; United States Code |
| 4 | Representation Agreement dated July 11, 2017 | Tenn.Sup.Ct.R. 8, RPC 1.6; Tennessee Code |
| 5 | Invoice No. 21458 dated November 28, 2018 | Tenn.Sup.Ct.R. 8, RPC 1.6; Tennessee Code |
| 6 | Invoice No. 225 dated November 28, 2018 | Tenn.Sup.Ct.R. 8, RPC 1.6; Tennessee Code |
| 7 | Invoice No. 21188 dated December 12, 2017 | Tenn.Sup.Ct.R. 8, RPC 1.6; Tennessee Code |
| 8 | Invoice No. 223 dated November 27, 2018 | Tenn.Sup.Ct.R. 8, RPC 1.6; Tennessee Code |
| 9 | Invoice No. 21453 dated October 8, 2018 | Tenn.Sup.Ct.R. 8, RPC 1.6; United States Code |
| 10 | Invoice No. 224 dated November 27, 2018 | Tenn.Sup.Ct.R. 8, RPC 1.6; United States Code |
| 11 | Correspondence to Debtor via Federal Express and E-mail, dated November 28, 2018 | Tenn.Sup.Ct.R. 8, RPC 1.6; United States Code; Tennessee Code |
| 12 | Correspondence to Debtor via Federal Express and E-mail, dated February 14, 2019 | Tenn.Sup.Ct.R. 8, RPC 1.6; United States Code; Tennessee Code |
| 13 | Orders Entered in Legal Matters | Tenn.Sup.Ct.R. 8, RPC 1.6; Tennessee Code |

## STATEMENT SUMMARY:  ALEXANDER JOHNSON LEGAL MATTERS

### (1)  Re:  2014 Legal Matter

Total services rendered…………………………………………………….. $749,337.60

Less payments, advances or credits:
02/23/2015 Advance …………………..….………………………..-$30,000.00
12/14/2018 Alexander Johnson……………………………………..-$20,000.00
Total payments, advances or credits for services rendered…………………….....-$50,000.00

Balance on services rendered……………………………………………………$699,337.60

Expenses incurred…………………………………………………… $66,980.33
Additional expenses paid from trust account…………………………………….$ 2,761.25
Total expenses incurred……………………………………………… $69,741.58

Less payments, advances or credits:
02/23/2015 Advance ……………..……………………………..-$7,500.00
03/17/2015 Advance ………………………………………...........-$3,000.00
11/06/2015 Advance ….…………………………………………-$6,793.65
06/18/2018 Advance ……………………………….…………....-$674.51
07/13/2018 Alexander Johnson…………………………………….-$10,000.00
08/24/2018 Advance ……………………………………………-$6,673.69
11/28/2018 Reimbursement from funds from court for additional
travel expenses for witness……………………………-$6,818.52
Total Payments, advances or credits for expenses incurred………........................ -$41,460.37

Balance due on expenses………………………………………………….. $28,281.20

**Balance due for services rendered and expenses incurred……………………...$727,618.81**

### (2)  Re:  2015 Legal Matter

Services rendered and expenses incurred through 11/28/2018……………………$159,572.64
Payments received………………………………………………………… $0.00

**Balance due for services rendered and expenses incurred……………………...$159,572.64**

### (3)  Re:  2017 Legal Matter

Services rendered and expenses incurred…………………………………….. $15,717.37
Payments received………………………………………………………… $0.00

**Balance due for services rendered and expenses incurred……………………...$15,717.37**


**TOTAL DUE……………………………………………………$902,908.82**

LAW OFFICES OF

## RITCHIE, DILLARD, DAVIES & JOHNSON, P.C.

606 W. MAIN STREET, SUITE 300
KNOXVILLE, TENNESSEE 37902

W. THOMAS DILLARD
WAYNE A. RITCHIE II
WADE V. DAVIES
STEPHEN ROSS JOHNSON
JAMES R. STOVALL

ROBERT W. RITCHIE (1938-2006)
CHARLES W.B. FELS (OF COUNSEL)

November 20, 2014

TELEPHONE (865) 637-0661
FACSIMILE (865) 524-4623
WWW.RDDJLAW.COM

**VIA HAND DELIVERY**
**PERSONAL AND CONFIDENTIAL**
Alexander J. Johnson
3805 Cherokee Wood Ways, Apt. 1522
Knoxville, TN 37920

### RE:   REPRESENTATION AGREEMENT
<span>████████████████</span>

Dear A.J.:

We want to thank you for the opportunity to represent you in the above-referenced matter. It is our desire to maintain a good working relationship with you as this matter proceeds. We will attempt to keep you informed of developments ███████ as they arise. However, you should never feel that you have to wait for our call. If at any time you have a question regarding your ███, please feel free to call and discuss your concern.

This letter confirms the agreement regarding the retainer and expense deposit ███████ and our obligation to you in the course of the representation.

This firm agrees to represent you during ██████████   ████████████████████
███████████   The amount of the non-refundable retainer agreed upon is Fifteen Thousand Dollars and is considered earned when paid. By your signature on this agreement, you are acknowledging the non-refundable nature of the retainer.

The amount of the retainer is based upon several factors:  (1) ██████████████████
████████; (2) ████████████████████; (3) the commitment of the firm to take the ███, thus being available to represent you and precluding our acceptance of other employment; (4) the firm's best estimate of the amount of time which will be expended to represent you; and (5) the experience, reputation and ability of the attorney(s) performing services for you in this matter.

The firm will record time pertaining to your representation at the hourly rate of $400 per hour for Tom Dillard, $375 per hour for Wade Davies and Stephen Johnson, $275 per hour for James Stovall, $200 per hour for George Shields, $90 per hour for paralegals and $75 per hour for law clerks. The parties acknowledge that these rates are those in effect on the date this agreement is being made. The parties understand that the firm's rates may increase, generally on an annual basis, in accordance with the market for the firm's services and, accordingly, the parties agree that the firm may increase its rates and notify the client of the increase by reflecting the increase in the firm's most

Alexander J. Johnson
November 20, 2014
Page -2-

recent written statements for services rendered following the increase.   If the time expended in this
representation exceeds 80% of the non-refundable retainer already paid and/or if
███████████████████████, the firm will consult with you to discuss the necessity of an additional
retainer.

It is the responsibility of our clients to pay for the normal expenses incurred in the course of
our representation, such as long distance phone calls, copying expenses, postage expenses, court
reporter fees, travel expenses, computerized research services, et cetera.  By mutual agreement,
expenses incurred will be billed to you on a regular basis. If there are any expenses of a substantial
nature, the firm will consult with you prior to incurring those expenses.

Recognizing that storage of closed files is cumbersome and expensive, you and the firm
acknowledge that you may take possession of your physical file at the conclusion of the
representation, and that the firm may beforehand make and retain electronic or physical copies of
some or all of the contents of the file. If you do not take possession of the file within one year of the
conclusion of the representation, you hereby authorize the firm, in the exercise of its discretion, to
destroy your file and any physical or electronic copies at any time.

This letter represents the full agreement between you and the firm in this matter. If you have
any question or disagreement with this letter, please contact us immediately. Otherwise, please sign
the original in the space provided below and return it to the firm.  We have enclosed a copy for your
records.

Sincerely yours,

RITCHIE, DILLARD, DAVIES & JOHNSON, P.C.

*Wade V. Davies*

W. THOMAS DILLARD
WADE V. DAVIES
STEPHEN ROSS JOHNSON

WTD:WVD:SRJ:djr

Enclosure

I have read the representation agreement and understand it
to be the full agreement for fees and expenses ███████.

ALEXANDER J. JOHNSON

LAW OFFICES OF

# RITCHIE, DILLARD, DAVIES & JOHNSON, P.C.

606 W. MAIN STREET, SUITE 300
KNOXVILLE, TENNESSEE 37902

W. THOMAS DILLARD
WAYNE A. RITCHIE II
WADE V. DAVIES
STEPHEN ROSS JOHNSON
JAMES R. STOVALL
GEORGE C. SHIELDS II

September 3, 2015

Via email: ajthebeast45@gmail.com

ROBERT W. RITCHIE (1938-2006)
CHARLES W.B. FELS (OF COUNSEL)

TELEPHONE (865) 637-0661
FACSIMILE (865) 524-4623
WWW.RDDJLAW.COM

## PERSONAL AND CONFIDENTIAL
## ATTORNEY-CLIENT PRIVILEGED

Alexander J. Johnson
3805 Cherokee Wood Ways, Apt. 1522
Knoxville, TN 37920

**Re:**                                    **Civil Matter**

Dear AJ:

Thank you for the opportunity to represent you regarding the
It is our desire to maintain a good
working relationship with you as this matter proceeds. There are two areas which should be
clear at the beginning of any attorney-client relationship to avoid future misunderstandings: one
is our mutual obligation of communication and the other is our mutual understanding as to fees
and expenses. To establish those obligations and responsibilities at the outset, this letter shall
serve as the contract between Ritchie, Dillard, Davies & Johnson, P.C. ("the Firm") and you for
representation in this specific civil matter. Please review this agreement carefully before signing
it to make sure that we're in agreement about all of these terms.

Regarding communication, we will do our best to keep you informed of developments in
the case as they arise. However, you should never feel that you have to wait for our call. If at
any time you have a question regarding the status of the case, please feel free to call us to discuss
your concern.

During the course of our representation in this case, we may contact you and request
information in an effort to comply with certain rules or deadlines. When we do so, it is
absolutely essential to our ability to represent you effectively that you provide the requested
information to us in a timely manner.

This letter also confirms the agreement which you have made with our Firm for the
payment of attorneys' fees and expenses in this specific matter. By your signature on this
agreement, you acknowledge your understanding of the arrangement with this Firm for fees and
expenses for

September 3, 2015
Page #2

The Firm will record time pertaining to your representation at the following hourly rates for the individuals in the Firm who may work on this case: $325 per hour for Wayne Ritchie, $275 per hour for James Stovall, $200 per hour for George Shields, $90 per hour for paralegals and $75 for law clerks. Similarly, the firm will record all expenses incurred in the course of our representation, such as copying, postage, court reporter fees, travel expenses, computerized research services, etc. The firm will consult with you prior to incurring any expenses which are substantial and out of the ordinary in a case of this nature.

The Firm shall record the time expended pertaining to your representation and shall charge you for that time at the rates referenced above. The expenses incurred by the Firm during the course of this representation shall also be recorded and documented.

As a courtesy to you, the Firm will not require a retainer. Further, the Firm understands that you want your obligations to pay the Firm's fees and expenses in this matter to be deferred. To accommodate your inability to pay the Firm for its work, the Firm will defer collection of the fees and expenses incurred in this matter until you receive compensation from employment, which may (or may not) be in the form of a signing bonus, an advance, pay, or other form of compensation and which may be for playing football or for committing to play football professionally or for some other type of employment. By signing this agreement, you acknowledge and agree that the Firm shall have a first lien on any and all such compensation until all of your obligations to the Firm have been fully paid for this civil matter in their entirety. In exchange for the Firm's agreement to defer the fees and expenses owed to the Firm, you specifically agree to pay the Firm in full first before any other financial obligation you have or may become obligated to pay. You specifically acknowledge that the work performed in this matter is expected to be significant █████████████████████████████████████
███████ In other words, you recognize at the outset that this matter is █████████████
████████████████████████████████████████████████████████████████████████
██████████████ By signing this Agreement, you represent to the Firm ███████████
████████████████ to the extent that you have directed the Firm to commit the time and resources necessary to defend this civil matter fully and aggressively, even if the total fees and costs for this matter exceed $50,000 by a significant amount.

This representation agreement shall be effective beginning August 27, 2015, despite its execution at a later date. The Firm shall not be deemed to be advising you on other matters, civil or otherwise, absent a specific written agreement to do so. This agreement may be terminated at any time by either party by providing written notice to the other. Should this agreement be terminated for any reason by any party, you specifically agree to pay all of the Firm's fees and expenses incurred prior to the notice of termination. Should it be necessary to enforce any part of this agreement, the parties recognize and agree that venue for such action shall be Knox

September 3, 2015
Page #3

County, Tennessee; Tennessee law shall govern; and the prevailing party shall be entitled to all of its fees, costs and expenses, including but not limited to attorneys' fees.

This agreement constitutes the entire contract of representation between these parties and shall not be amended or construed to be amended unless the amendment is in writing and signed by the Firm and you.

Recognizing that storage of closed files is cumbersome and expensive, you and the Firm acknowledge that you may take possession of your physical file at the conclusion of the representation, and that the Firm may beforehand make and retain electronic or physical copies of some or all of the contents of the file.  If you do not take possession of the file within one year of the conclusion of the representation, you hereby authorize the Firm, in the exercise of its discretion, to destroy your file and any physical or electronic copies at any time thereafter.

If because of either the client's or another party's financial situation it becomes necessary for the client to obtain accounting advice, counsel from a tax attorney, counsel concerning whether certain debts are dischargeable in bankruptcy, advice concerning estate matters, or the assistance of a financial planner, the parties specifically agree and acknowledge counsel and/or advice will be sought outside the Firm, the parties recognizing that the Firm does not specialize in those areas and that such inquiries would be beyond the scope of and in addition to the legal work that is encompassed by this representation agreement.  When requested or necessary as part of the representation, the Firm may consult with such specialist(s) and bill the costs of those consultations as part of the expenses of the representation.

By the signatures below, the Firm and you acknowledge and confirm their agreement to all of the terms of this contract of representation as set forth above.

Date: 9/3/15

ALEXANDER J. JOHNSON

RITCHIE, DILLARD, DAVIES
& JOHNSON, P.C.

Dated: 9-3-15

By: Wayne A. Ritchie II, Partner

LAW OFFICES OF

# RITCHIE, DILLARD, DAVIES & JOHNSON, P.C.

606 WEST MAIN STREET, SUITE 300
KNOXVILLE, TENNESSEE 37902

W. THOMAS DILLARD
WAYNE A. RITCHIE II
WADE V. DAVIES
STEPHEN ROSS JOHNSON
JAMES R. STOVALL
HEATHER N. GOOD

ROBERT W. RITCHIE (1938-2006)
CHARLES W.B. FELS (OF COUNSEL)

TELEPHONE (865) 637-0661
FACSIMILE (865) 524-4623

WWW.RDDJLAW.COM

July 11, 2017

## PERSONAL AND CONFIDENTIAL

Alexander James Johnson
1337 Woodridge Drive
Knoxville, TN 37919

### RE:   REPRESENTATION AGREEMENT

Dear Alexander:

We want to thank you for the opportunity to represent you in the above-referenced matters. It is our desire to maintain a good working relationship with you as these matters proceed. We will attempt to keep you informed of developments in your cases as they arise. However, you should never feel that you have to wait for our call. If at any time you have a question regarding          , please feel free to call and discuss your concern.

This letter confirms the agreement regarding the retainer          and our obligation to you in the course of the representation.

This firm agrees to represent you in                              . The amount of the non-refundable retainer agreed upon is Five Thousand Dollars ($5,000.00) and is considered earned when paid. By your signature on this agreement, you are acknowledging the non-refundable nature of the retainer.

The amount of the retainer is based upon several factors: (1)          (2) the complexity of the     ; (3) the commitment of the firm to take the     , thus being available to represent you and precluding our acceptance of other employment; (4) the firm's best estimate of the amount of time which

1

will be expended to represent you; and (5) the experience, reputation and ability of the attorney(s) performing services for you in this matter.

The firm will record time pertaining to your representation at the hourly rate of $425 per hour for W. Thomas Dillard and Stephen Ross Johnson, $200 per hour for associates, $90 per hour for paralegals and $75 per hour for law clerks. The parties acknowledge that these rates are those in effect on the date this agreement is being made. The parties understand that the firm's rates may increase, generally on an annual basis, in accordance with the market for the firm's services and, accordingly, the parties agree that the firm may increase its rates and notify the client of the increase by reflecting the increase in the firm's most recent written statements for services rendered following the increase. *If the retainer has been exhausted by two-thirds prior to the conclusion of this matter, the firm will consult with you and may require an additional retainer to complete that phase of the representation.*

It is the responsibility of our clients to pay for the normal expenses incurred in the course of our representation, such as copying expenses, postage expenses, court reporter fees, travel expenses, computerized research services, et cetera. The expenses will be billed to you on a regular basis. If there are any expenses of a substantial nature, the firm will consult with you prior to incurring those expenses.

Recognizing that storage of closed files is cumbersome and expensive, you and the firm acknowledge that you may take possession of your physical file at the conclusion of the representation, and that the firm may beforehand make and retain electronic or physical copies of some or all of the contents of the file. If you do not take possession of the file within one year of the conclusion of the representation, you hereby authorize the firm, in the exercise of its discretion, to destroy your file and any physical or electronic copies at any time.

This letter represents the full agreement between you and the firm in this matter. If you have any question or disagreement with this letter, please contact us immediately. Otherwise, please sign the original in the space provided below and return it to the firm. We have enclosed a copy for your records.

Sincerely yours,

RITCHIE, DILLARD, DAVIES & JOHNSON, P.C.


W. THOMAS DILLARD
STEPHEN ROSS JOHNSON

2

SRJ:kem
Enclosure


I have read the representation agreement
and understand it to be the full agreement
for fees and expenses ▮▮▮▮▮▮.


Alexander James Johnson