**Transcript, APLDIST, MEANSNO, SEAL**

# U.S. Bankruptcy Court
## District of Colorado (Denver)
### Bankruptcy Petition #: 19–19816–EEB

|  |  |
|---|---|
| *Assigned to:* Elizabeth E. Brown | *Date filed:* 11/13/2019 |
| Chapter 7 | *Debtor discharged:* 04/12/2021 |
| Voluntary | *Deadline for objecting to discharge:* 04/20/2021 |
| Asset | *Deadline for financial mgmt. course:* 02/18/2020 |

*Debtor disposition:*  Standard Discharge

| | | |
|---|---|---|
| ***Debtor***<br>**Alexander Johnson**<br>8164 South Memphis Way<br>Englewood, CO 80112<br>ARAPAHOE–CO<br>SSN / ITIN: xxx–xx–4248 | represented by | **Jeffrey S. Brinen**<br>Kutner Brinen Dickey Riley, P.C.<br>1660 Lincoln St, Suite 1720<br>Denver, CO 80264<br>303–832–2400<br>**LEAD ATTORNEY**<br>Email: jsb@kutnerlaw.com |
| ***Trustee***<br>**M. Stephen Peters**<br>Box 4610<br>Frisco, CO 80443<br>303–422–8501<br>peters@msplaw.org | represented by | **Aaron J. Conrardy**<br>2580 W. Main Street<br>Suite 200<br>Littleton, CO 80120<br>303–296–1999<br>Fax : 303–296–7600<br>Email: aconrardy@wgwc–law.com |
| | | **Lindsay Riley**<br>Wadsworth Garber Warner Conrardy, P.C.<br>2580 W Main Street, Suite 200<br>Suite 200<br>Littleton, CO 80120<br>303–296–1999<br>Email: lriley@wgwc–law.com |
| | | **M. Stephen Peters**<br>Box 4610<br>Frisco, CO 80443<br>303–422–8501<br>Fax : 303–473–3118<br>Email: peters@msplaw.org |
| ***U.S. Trustee***<br>**US Trustee**<br>Byron G. Rogers Federal Building<br>1961 Stout St.<br>Ste. 12–200<br>Denver, CO 80294<br>303–312–7230<br>USTPRegion19.DV.ECF@usdoj.gov | represented by | **Paul Moss**<br>Byron G. Rogers Federal Building<br>1961 Stout St.<br>Ste. 12–200<br>Denver, CO 80294<br>303–312–7995<br>Fax : 303–312–7259<br>Email: Paul.Moss@usdoj.gov |

| Filing Date | # | | Docket Text |
|---|---|---|---|
| 03/04/2022 | | 182 | Notice Re: of Filing Transcript for Record on Appeal. Filed by Aaron J. Conrardy on behalf of M. Stephen Peters (related document(s):181 Appeal Transmittal of Record to USDC)... (Attachments: # 1 Other 1.20.22 Transcript) (Conrardy, Aaron) (Entered: 03/04/2022) |

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| IN RE ALEXANDER JOHNSON<br><br>      Debtor. | Bankruptcy Case No. 19-19816 EEB |
| RITCHIE, DILLARD, DAVIES & JOHNSON, P.C.<br><br>          Appellant,<br>  v.<br><br>M. STEPHEN PETERS, Chapter 7 Trustee,<br><br>        Appellee. | U.S. District Court<br>Case No. 22-CV-00332 GPG |

---

### NOTICE OF FILING TRANSCRIPT FOR RECORD ON APPEAL

---

      M. Stephen Peters, chapter 7 trustee, by and through undersigned counsel, hereby gives notice of the filing of the attached Transcript of January 20, 2022 Non-Evidentiary Hearing to be submitted for the Record on Appeal.

      Dated this 4th day of March, 2022.

              Respectfully submitted,

              WADSWORTH GARBER WARNER CONRARDY, P.C.

              */s/Aaron J. Conrardy*
              Aaron J. Conrardy, #40030
              Lindsay S. Riley, #54771
              2580 Main Street, Suite 200
              Littleton, CO 80120
              Phone: (303) 296-1999/Fax: (303) 296-7600
              E-mail: aconrardy@wgwc-law.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 4th day of March, 2022, I delivered a true and correct copy of the foregoing via CM/ECF to the following:

Joshua Sheade
joshua@berkencloyes.com

/s/Angela Garcia
Angela Garcia
Paralegal

1

1                UNITED STATES BANKRUPTCY COURT

2                    DISTRICT OF COLORADO

3

4    IN RE:

5    ALEXANDER JOHNSON, DEBTOR

6    CASE NO.: 19-19816

7    CHAPTER 7

8

9

10

11

12                  TRANSCRIPT OF HEARING

13       BEFORE HONORABLE JUDGE ELIZABETH E. BROWN

14                   JANUARY 20, 2020

15

16

17

18

19

20

21

22

23

24

25

Case 1:22-cv-00332-REB   Document 10-1   Filed 03/07/22   USDC Colorado   Page 6 of 34
Case:19-19816-EEB   Doc#:182-1   Filed:03/04/22   Entered:03/04/22 08:49:31   Page2 of 30

2

```
 1    APPEARANCES:

 2        FOR THE U.S. TRUSTEE:

 3        M. STEPHEN PETERS

 4        BY: JEROME KERKMAN

 5        5310 Ward Road, Suite G-07

 6        Arvada, Colorado 80002

 7

 8    FOR THE U.S. TRUSTEE:

 9        WADSWORTH GARBER WARNER CONRARDY, P.C.

10        BY: AARON CONRARDY

11        2580 Main Street, Suite 200

12        Littleton, Colorado 80120

13

14    FOR CREDITOR:

15        BERKEN CLOYES, P.C.

16        BY: JOSHUA SHEADE

17        1158 Delaware Street

18        Denver, Colorado 80204

19

20

21

22

23

24

25
```

Case 1:22-cv-00332-REB   Document 10-1   Filed 03/07/22   USDC Colorado   Page 7 of 34
Case:19-19816-EEB   Doc#:182-1   Filed:03/04/22   Entered:03/04/22 08:49:31   Page3 of 30

3

1   JANUARY 20, 2022

2   10:26 A.M.

3          THE COURT:  Okay.  We're here in the case

4   of Alexander Johnson.  It's Case Number 19-19816,

5   and we're here on the trustee's final report.

6          Let's start with appearances, first from

7   the trustee.

8          MR. CONRARDY:  Good morning, Your Honor.

9   This is Aaron Conrardy on behalf of M. Stephen

10  Peters, the Chapter 7 trustee, and Mr. Peters is

11  on the line with us as well.

12         THE COURT:  Very good.

13         Mr. Peters, are you there?

14         MR. PETERS:  I am, Your Honor.  Good

15  morning.  This is Steve Peters.

16         THE COURT:  Very good.  Thank you.

17         All right.  And for the Ritchie, Dillard

18  firm?

19         MR. SHEADE:  Good morning, Your Honor.

20  Joshua Sheade on behalf of Ritchie, Dillard,

21  Davies & Johnson, P.C., who I may, if acceptable

22  to the Court, refer to during this hearing as the

23  creditor.

24         THE COURT:  Okay.  Very good.

25         All right.  So I guess let's -- I would

Case 1:22-cv-00332-REB   Document 10-1   Filed 03/07/22   USDC Colorado   Page 8 of 34
Case:19-19816-EEB   Doc#:182-1   Filed:03/04/22   Entered:03/04/22 08:49:31   Page4 of 30

4

1    like to hear from you, Mr. Sheade, first, what

2    these avoidable preferences and fraudulent

3    transfers are that you think the trustee has not

4    properly investigated.

5        And then I'm going to hear from the

6    trustee as to what he thinks of those claims --

7    potential claims as well as the credit union

8    issue, okay.

9        So let's hear from you, Mr. Sheade.

10       MR. SHEADE:  Yes, Your Honor.  Thank you.

11   First, the creditor raised the -- well, first, I

12   want to get to the issue of the credit union.

13       Within the certificate of contested

14   matter filed by the trustee on January 4th, the

15   creditor does agree that the first issue raised

16   within the objection was resolved by the amended

17   report that followed the amended proof of claim

18   filed by Eastman Credit Union, you know, which

19   shows that the credit union was paid in full and

20   thus is reflected in that amended report.

21       So the creditor does agree with the

22   statements made within the contested matter in

23   relation to the credit union.

24       The second issue raised by the creditor

25   relates not only to the assertion that there are

Case 1:22-cv-00332-REB   Document 10-1   Filed 03/07/22   USDC Colorado   Page 9 of 34
Case:19-19816-EEB   Doc#:182-1   Filed:03/04/22   Entered:03/04/22 08:49:31   Page5 of 30

5

1    avoidable transfer claims, but to the general

2    investigation of the property, the estate, by the

3    trustee.

4         In addition to the assertion that the

5    trustee failed to fully investigate the avoidable

6    transfers, the creditor also doubts the trustee

7    due diligently investigated whether cash funds in

8    the amount of $27,000, as listed within schedule

9    AB, was a repayment of a 50 percent down payment

10   for a loan obtained from (Indiscernible) Lending

11   for the purchase of the real property located at

12   Lower Lake, California.

13        The debtor offered the account that the

14   cash funds maintained by the debtor was a

15   repayment of the down payment.  He offered this

16   account of the previous transaction to the trustee

17   during the 341 meeting of creditors.

18        However, upon information, I believe the

19   trustee did not investigate whether the

20   origination of the cash maintained by the debtor

21   was actually funds received by -- from the third

22   party, 50 percent owner of this California

23   property, as a down -- a return of the 50 percent

24   down payment of the loan.

25        But instead of any further investigation,

Case 1:22-cv-00332-REB   Document 10-1   Filed 03/07/22   USDC Colorado   Page 10 of 34
Case:19-19816-EEB   Doc#:182-1   Filed:03/04/22   Entered:03/04/22 08:49:31   Page6 of 30

6

1    accepted the statements offered by the debtor at

2    the 341 meeting.

3           An easy fix to this issue would be for

4    the trustee to investigate bank accounts of the

5    third party to trace the cash funds.  If the third

6    party owner did not repay the debtor for the 50

7    percent share of the loan down payment prior to

8    the petition date, the creditor asserts that an

9    additional asset exists for the trustee to

10   liquidate for the benefit of the estate.

11          In addition, during the investigation

12   going back to the avoidable transfer concerns,

13   during the investigation preceding the 706

14   hearing, the discovery that was produced by -- I

15   don't want to call them financial institutions --

16   but the payment companies, the online transfer

17   companies like -- such as Venmo and PayPal,

18   demonstrate multiple transfers that is over the

19   consumer threshold, you know, or transfers from

20   family members and friends that would allow for

21   both 547 and 548 claims, including, but not

22   limited to, this -- to the so-called "agent of the

23   debtor."  I can't recall his name off the top of

24   my head.  And I apologize.  But there was multiple

25   transfers of thousands of -- thousands of dollars

Case 1:22-cv-00332-REB   Document 10-1   Filed 03/07/22   USDC Colorado   Page 11 of 34
Case:19-19816-EEB   Doc#:182-1   Filed:03/04/22   Entered:03/04/22 08:49:31   Page7 of 30

7

1   to the debtor within both the two-year time frame

2   as well as the 90-day time frame for the 547 and

3   548 claims to exist.

4          With that said, the -- the creditor does

5   recognize that the Court may give that to the

6   trustee's business judgment in regards to the

7   trustee's administration of the estate.

8          So accordingly -- accordingly, to be

9   forthright, not only is the -- was the objection

10  raised by the creditor to bring up these -- these

11  issues and concerns, but the objection was also

12  raised to the final report as an opportunity,

13  whether it be a finding by the Court that the

14  trustee found -- to give deference to -- to the

15  trustee, that the Court finds that the chase --

16  that the estate has been fully administered for

17  the purposes of finality under rule 8802 and 8003

18  since, as the Court may recall and be aware, there

19  was that issue that came up previously in this --

20  or in this case.

21         THE COURT:  You're talking about the

22  interlocutory nature of the appeal and --

23         MR. SHEADE:  Yes, Your Honor.

24         THE COURT:  -- become a final.  I don't

25  need to make a finding.  I just close the case,

Case 1:22-cv-00332-REB   Document 10-1   Filed 03/07/22   USDC Colorado   Page 12 of 34
Case:19-19816-EEB   Doc#:182-1   Filed:03/04/22   Entered:03/04/22 08:49:31   Page8 of 30

8

1   then, obviously, it's final.

2          So the rules are so byzantine in the

3   bankruptcy world for what's interlocutory and --

4   and what's final.  And effectively, the way those

5   -- that case law works, it effectively evades

6   appellate review of a whole lot of things in the

7   bankruptcy world, which I think we -- none of us

8   feel good about.

9          But -- but I think you would have the

10   assurance of finality with the closing of the case

11   so, if I accept the final report.

12          Okay.  I'm not sure I understood all of

13   what you said about these potential avoidance

14   actions.  But let me see if the trustee followed

15   it better than I did.

16          Mr. Peters -- or I'm sorry --

17   Mr. Conrardy.

18          MR. CONRARDY:  Thank you, Your Honor.  I

19   -- I'll have some background information to help

20   the Court understand what investigation that

21   Mr. Peters made.

22          I didn't totally follow everything that

23   Mr. Sheade said.  But I'm hoping that at the end

24   of our presentation you'll see that Mr. Peters

25   made a thorough investigation and concluded that

Case 1:22-cv-00332-REB   Document 10-1   Filed 03/07/22   USDC Colorado   Page 13 of 34
Case:19-19816-EEB   Doc#:182-1   Filed:03/04/22   Entered:03/04/22 08:49:31   Page9 of 30

9

1   there -- you know, whatever transfers there may

2   have been, either through the exercise of his

3   business judgment, they weren't worth pursuing, or

4   there weren't legal merits to it, or he's already

5   made a recovery.  So I don't think he addressed --

6          THE COURT:  Okay.  Before you -- before

7   you embark, I'm -- I'm kind of trying to get a --

8   to assess whether or not I should have a lot of

9   detail in your recitation.  I'm sure it's going to

10  be very helpful.

11          But, at the end of the day, I may say,

12  well, we've got to have a evidentiary hearing on

13  this.  So can you kind of give me a bird's

14  overview first?

15          MR. CONRARDY:  Sure.  I can give you a, a

16  bigger picture.  So, you know, the initial -- at

17  the beginning of the case, the trustee conducted

18  the 341 meeting.  And that meeting was continued

19  because there were a lot of transactions involved

20  here.  And the trustee requested additional

21  documents from trustee's counsel regarding some

22  real estate, bank statements, et cetera.

23          Mr. Brinen (phonetic) who represents the

24  debtor -- and by the way, the debtor has been

25  extremely cooperative during this whole case in

10

1    terms of document production.  And we've had

2    numerous calls with Mr. Brinen and the debtor.

3    And it's been our impression that the debtor has

4    been nothing but candid.

5              But anyway, so the -- the meeting of

6    creditors was continued so that Mr. Peters could

7    get some additional documents.  Those documents,

8    like I said, were mostly bank statements.

9              At the meeting of creditors, this case

10   was moved to the end of the docket because

11   Mr. Peters surmised that it was going to take some

12   extra time to go through the questions.

13             At that meeting of creditors, he --

14   Mr. Peters examined debtor about the real estate

15   transactions, and the statement of financial

16   affairs, went through the kind of routine

17   questions asked at a 341 meeting.  And he went

18   through bank statements and accounts -- and

19   investment account statements and asked about 65

20   specific transactions.

21             And we got testimony on all of it.  There

22   were follow-up phone calls.  And -- and we can

23   kind of go into details if the Court wants to.

24   But the bottom line is, after going through all of

25   those transactions, you know, the trustee

Case 1:22-cv-00332-REB   Document 10-1   Filed 03/07/22   USDC Colorado   Page 15 of 34
Case:19-19816-EEB   Doc#:182-1   Filed:03/04/22   Entered:03/04/22 08:49:31   Page11 of
30

11

```
1    concluded in his business judgment that these

2    aren't avoidable transfers, or if there were

3    avoidable transfers, they weren't worth going

4    after.

5            For instance, the debtor disclosed that

6    he, on his statement of financial affairs, that he

7    paid his mom $4700 within the year prior to the

8    bankruptcy, separated into about nine

9    transactions.  So some of them were $200.  Some of

10   them were 1000, but they were gifts to his mom.

11           She -- she lives in Georgia.  She's

12   elderly.  She rents an apartment, and she works at

13   Walgreens.  And Georgia has a 75 percent wage

14   exemption.  So the trustee concluded, look, it's

15   not worth suing her under 548 to get a judgment

16   for $4700 that's basically uncollectable.

17           And so that's kind of an example of some

18   of the analysis that he did with respect to the

19   avoidable transfers.

20           Now, prior to hearing on the motion to

21   convert, we got several documents from Mr. Sheade

22   which were, you know, more bank statements, some

23   Venmo statements, some PayPal statements.

24           I went through those statements.

25   Mr. Peters went through those statements.  And it
```

1    was hundreds and hundreds of pages.  But most of

2    these transactions were less than $100.  And we

3    just didn't see any transfers that would either

4    give rise to an avoidance claim or would justify

5    going after because there wouldn't be a meaningful

6    recovery.

7              And most of the transfers were -- Mr. --

8    the debtor, Mr. Johnson, was selling gear.  You

9    know, he's a football player; and so he has this

10   brand called CB45.  And he has t-shirts, and

11   sweatshirts, and stuff that he sells that have the

12   CB45 brand.  And a lot of the transactions were

13   for, you know, he was selling, you know,

14   sweatshirt.

15             And then he'd get paid.  So there's

16   reasonably current value there.  We talked to

17   Mr. Brinen.  The company that was selling this

18   merchandise isn't making any money.  And -- and

19   some of that is because Mr. Johnson, he -- he's

20   not, you know, he's not Tom Brady.  He's not a

21   huge player.  I think you'd be hard pressed to go

22   to a website like FanDuel and -- and find his

23   merchandise.  Most of these people that were

24   buying the merchandise were friends and family.

25             And -- and now that Mr. Johnson --

13

1   Mr. Johnson last season played six games.  He'd

2   been on injured reserve, and his prospects in the

3   NFL are unknown.  And so when a football player

4   who isn't a marquee player is injured, his -- his

5   brand isn't really worth a whole lot.

6          And so, you know, Mr. Peters is -- is

7   available today, and he can answer questions from

8   the Court, you know, some specific questions on

9   specific transfers that we looked into.

10         But at the end of the day, you know, he

11  did a thorough investigation.  I assisted him with

12  that investigation.  And, if we thought there were

13  avoidance claims that were worth going after,

14  where we can make a decent recovery to -- for the

15  creditors after, you know, attorneys' fees, and

16  risks of litigation, et cetera, we would have went

17  after it.  But we've recovered all the assets that

18  we think are -- make sense to recover.

19         THE COURT:  Okay.  That's a nice

20  overview.

21         Let me ask Mr. Sheade now, would it serve

22  a good purpose to have him go through in a very

23  detailed way and address all of the transactions,

24  and that might assuage your client's concerns?  Or

25  at the end of the day, are you going to still want

Case 1:22-cv-00332-REB   Document 10-1   Filed 03/07/22   USDC Colorado   Page 18 of 34
Case:19-19816-EEB   Doc#:182-1   Filed:03/04/22   Entered:03/04/22 08:49:31   Page14 of 30

14

1    an evidentiary hearing?

2         We're not going to try the merits of

3    these claims.  But we would hear from the trustee,

4    you know, what -- what business judgment he

5    exercised as to the various claims.  And so tell

6    me what your thoughts are, Mr. Sheade.

7         MR. SHEADE:  At the end of the day, Your

8    Honor, the creditor has two questions.  Number one

9    would be in terms of the real property, the --

10        THE COURT:  You'd like to hear more about

11   that real estate transaction?

12        MR. SHEADE:  The -- the return of a 50

13   percent down payment by -- by the third party.

14        THE COURT:  Okay.

15        MR. SHEADE:  And the investigation done

16   to make sure that the -- the cash and -- that was

17   maintained by the debtor was as asserted by the

18   debtor in the 341 meeting exacted that.

19        THE COURT:  Okay.

20        MR. SHEADE:  But the down payment, not

21   something else, so there is not additional claim

22   there.

23        In terms of the avoidable transfers, the

24   concern, to -- to be specific, there was a --

25   there's cash out transfers within the two years

Case 1:22-cv-00332-REB   Document 10-1   Filed 03/07/22   USDC Colorado   Page 19 of 34
Case:19-19816-EEB   Doc#:182-1   Filed:03/04/22   Entered:03/04/22 08:49:31   Page15 of
30

15

1   prior to -- to -- to the petition date to one

2   individual.  I don't want to bring up any specific

3   names since they're non-party party.

4          THE COURT:  Well, go ahead.  If -- if

5   there's a specific person you're worried about,

6   maybe he can answer the question.  So who is it?

7          MR. SHEADE:  But there's a -- Mr. Eric

8   Miller is the third party owner's son.  And the

9   statements during the 341 meeting and during the

10  -- the 706 hearing, is that Mr. Eric Miller was

11  the debtor's best friend, childhood friend and I

12  guess the son of the -- a third party -- 50

13  percent reported on the property.  He received

14  $7530 within those two years and really within 9

15  days pre-petition.

16         THE COURT:  Okay.

17         MR. SHEADE:  And if that's too -- if

18  that's too little of an amount to exercise

19  business judgment --

20         THE COURT:  Well, we'll ask him about the

21  details on those.  Is there another particular

22  transaction that you need more on?

23         MR. SHEADE:  There -- there was just

24  generally without being able to figure out --

25  there's no main parties of the transactions within

Case 1:22-cv-00332-REB  Document 10-1  Filed 03/07/22  USDC Colorado  Page 20 of 34
Case:19-19816-EEB  Doc#:182-1  Filed:03/04/22  Entered:03/04/22 08:49:31  Page16 of
30

16

1    the two years prior to petition date.  There was

2    cash out transfers of another $7747 that, as I

3    said, had no specific name attached to those

4    transfers.  So if there's any investigation to

5    determine who those went to, that could, you know

6    --

7              THE COURT:  Okay.

8              MR. SHEADE:  -- enlarge the amounts paid

9    as well as --

10              THE COURT:  Three different -- three

11    different things.  Is there any more?

12              MR. SHEADE:  If there's any questions

13    asked, information provided in relation to ATM

14    withdrawals of approximately $10,000 within the

15    two years preceding the petition date.

16              And there's approximately -- that -- that

17    will -- we'll leave it at that, Your Honor.

18              THE COURT:  Okay.

19              So, Mr. Conrardy, tell us what you can

20    about first, the -- the return of the down

21    payment.  Was it returned?  Or was -- or was that

22    cash of 27,000 attributable to some other source?

23    Tell us about that.

24              MR. CONRARDY:  Sure.  I -- I can do that.

25              Or, Mr. Peters, would you like to

Case 1:22-cv-00332-REB   Document 10-1   Filed 03/07/22   USDC Colorado   Page 21 of 34
Case:19-19816-EEB   Doc#:182-1   Filed:03/04/22   Entered:03/04/22 08:49:31   Page17 of
30

17

1   explain?  It might be more helpful to the Court to

2   hear it from the trustee.  I'm happy to do it,

3   though.  Mr. Peters, what's your --

4          THE COURT:  Okay.  As long as everybody

5   realizes this is not evidence.  We're just getting

6   a report, okay.

7          MR. CONRARDY:  Sure.

8          THE COURT:  Go ahead, Mr. Peters.

9          MR. PETERS:  That's fine.  I'm willing to

10  do that.

11          So I just want to give a little -- a

12  little background and be respect to everybody's

13  time.  It's 10:45.

14          This debtor, I -- I had not seen any kind

15  of chicanery or sharp practice with.  He's always

16  been straight forward.  This $27,000 issue just

17  seems to keep coming up.

18          There was cash that was presented to me

19  at the meeting of creditors because -- because I

20  had said, "Well, what's going on with this and the

21  half -- the half interest?"  And I know I'm

22  jumping ahead of myself a little bit.  But he

23  brought -- brought that in $100 bills.  I said,

24  "Thank you.  But no thank you.  Take it back."

25  Let's get a check.

1        So that money would have been received,

2   as I believe, shortly pre-petition.  Mr. Johnson

3   could have done something with that like lawyers

4   have their clients do, transfer it to exempt

5   property.  There was about a $50,000 and change

6   investment account.  I think there were two of

7   them.

8        The thought by the debtor was that those

9   were exempt and so claimed.  It turned out, no.

10  It just wasn't set up that way.

11       So -- and then there is this house in

12  California, which could have been set up

13  differently.  And so, therefore, with this -- this

14  money that -- that I believe -- I'll get to that

15  in a moment -- but so -- I'm sorry.  I'm a little

16  rambling.

17       So I -- I don't see any -- any -- the --

18  the overview is -- the -- the big picture, I

19  didn't feel this debt like this debtor is like

20  some that you're not sure what you can believe at

21  all, that there's all kinds of shenanigans going

22  on.  I didn't see that all with -- with

23  Mr. Johnson.

24       THE COURT:  Okay.  But did you trace that

25  27,000 that he eventually gave you in the form of

Case 1:22-cv-00332-REB   Document 10-1   Filed 03/07/22   USDC Colorado   Page 23 of 34
Case:19-19816-EEB   Doc#:182-1   Filed:03/04/22   Entered:03/04/22 08:49:31   Page19 of
30

19

1    a check?  Did it come from a return of the down

2    payment, half of it or whatever?

3            MR. PETERS:  So -- so that's right.  It

4    would be -- actually would be a little more like

5    -- like 32 or something like that.  But -- but the

6    representation by Mr. Johnson was that that and

7    been spent.  And that -- that made sense to me.

8            So when I looked at the settlement sheets

9    and everything, all these numbers matched up with

10   a woman named Ms. Miller, who -- who's the co-

11   owner and had been directed to buy this investment

12   by the name that Mr. -- Mr. Sheade forgot -- was

13   Mr. Elam (phonetic), who is Mr. Johnson's advisor

14   of some sort in connection with investments

15   because Mr. Elam used to be in football or

16   something like that.

17           So the answer would be: I did not depose

18   Ms. Miller to say, did you pay this to

19   Mr. Johnson?  We didn't do any kind of discovery.

20   I didn't fly my lawyer to California or Georgia,

21   where she lives, to put her under oath and say,

22   did you pay this back?  It made -- it made no

23   sense to me that he would be offering me this

24   27,000, which is, again, a little short of the

25   payoff because of money he spent.

Case 1:22-cv-00332-REB   Document 10-1   Filed 03/07/22   USDC Colorado   Page 24 of 34
Case:19-19816-EEB   Doc#:182-1   Filed:03/04/22   Entered:03/04/22 08:49:31   Page20 of
30

20

1       Where else would it have come from?  Why

2    would he -- he say -- tell me, this was the -- the

3    return of the down payment from the co-owner if it

4    wasn't from her?

5       And I think there was a suggestion that,

6    well, maybe Mr. Johnson paid this money to her.

7    And so, therefore, he paid the entire amount.  And

8    so really, the down payment is a return of his own

9    money.

10       If -- if that's the case, well, he's paid

11    it back.  If he made an avoidable transfer to her

12    to help her fund this, I got it back.

13       I don't know.  Again, not deposed

14    Ms. Miller, but it just strikes me as bizarre that

15    it would be like, yep, she -- she really didn't

16    pay it back.  Well, then where did this money come

17    from?  And something tells me if we were to depose

18    her and do all that under oath, she would probably

19    say, yeah, I paid it back.

20       I mean, you know, if I look at bank

21    statements, what do I get?  I get what she gives

22    me.  How do I know it's complete?  It's almost

23    like proving a negative.

24       But no, I didn't go down that trail.  To

25    say, did it really come from her?  Where else

1    would -- would it have come from?  So that's --

2             THE COURT:  Okay.

3             MR. PETERS:  -- response to that.  And

4    then the -- the transfers to Mr. Miller, again, it

5    is a good friend or was, I guess, or is of -- of

6    the debtor.

7             The -- the bank statements that I asked

8    for from the debtor for one year pre-petition, I

9    got them.  I marked them up to 65 marks for larger

10   activities like $1100.  I'm looking at it right

11   here, and so forth, and so forth.  And I believe

12   -- we went through these numbers.  I don't know

13   exactly what -- I think Mr. Sheade said there was

14   a -- like a seven -- like a -- I don't know what

15   the ATM withdrawal was.

16            THE COURT:  He said it was cash out of

17   about 7500, maybe 7530, something like that.  Did

18   you see that transaction?

19            MR. PETERS:  And I think he said that was

20   two years pre-petition if I remember.

21            THE COURT:  Right.

22            MR. PETERS:  Well, I didn't go look for

23   bank statements older than one year pre-petition

24   because, as Mr. Johnson, testified, before --

25   well, he -- he had been accused of sexual assault.

22

1    And that -- he was exonerated -- and that's led to

2    the about a million dollar attorney fee claim by

3    the Ritchie creditor.

4           So he was impecunious.  He testified a

5    year ago at the dismissal hearing that he worked,

6    I believe, at, I'm pretty sure, John Deere, and

7    was a personal trainer for people, and also did

8    some radiology technology or something like that

9    as an assistant.

10          So I have no reason to go way back

11   thinking, well, how -- how many -- how many

12   thousands of dollars did this guy have a year pre-

13   petition?  Because that was before he had really

14   hooked up with the -- the Broncos because they

15   wouldn't touch him because -- I don't know the

16   dates from when the -- the trial -- there was a

17   trial I understand for which he was exonerated.

18   So I saw no reason to go way back and dig up.

19          I don't know about a $7500 ATM withdrawal

20   two years ago.  If that's the case, okay.  Well,

21   what -- where might that money have gone two years

22   ago?  I don't investigate that kind of thing so

23   long ago.  Well, how am I going to find out where

24   it goes?  Frankly, did he spend it eating out?

25   Did he buy something?  What did other people say?

23

1    And what's the result of that?  I find that, in

2    general, when this kind of thing comes up, that's

3    just unproductive to do that.

4           The other --  the other payments that are

5    discussed that were raised by Mr. Sheade, I would

6    say, Mr. Sheade was at the meeting of creditors

7    where went through this.  I have 65 marked

8    payments.  The larger ones, we talked about them.

9    I assume he listened.  I assume he might have said

10   at that time, well, what about this one?  What

11   about that one?  I don't remember that, of course,

12   at all going back that far.

13          But -- but I identified them again, gave

14   this -- the -- the statements with my markup on

15   them to Mr. Brinen to say, have your client kind

16   of review this so we're not just floundering

17   around and wasting time.  So he should be prepared

18   to explain to me these payments.

19          And they're like -- I'm looking at them

20   now -- here's one for 2002, 1460, 1000.  The 1460

21   went to his advisor in October of '19, Mr. Elam,

22   who I was persuaded was, yeah, that's okay.  It's

23   pretty inexpensive.  Do -- do I -- did we depose

24   Mr. Elam, no, to verify that what he was doing?

25   No.

Case 1:22-cv-00332-REB   Document 10-1   Filed 03/07/22   USDC Colorado   Page 28 of 34
Case:19-19816-EEB   Doc#:182-1   Filed:03/04/22   Entered:03/04/22 08:49:31   Page24 of
30

24

1          But, I mean, like I say, to circle back

2     to the main issue about this -- the 27,000, I --

3     I'm just going to go, well, where else would it

4     have come from?

5          If it's appropriate for us to depose Ms.

6     Miller and fly my lawyer to California and then to

7     Georgia, and get her under oath, and say, did you

8     pay this back?  And where did you get your money?

9     And how me your bank statements.  And show me, did

10    you inherit it?  Who did you inherit from?  How

11    far do we go with this?  It seems to me that's --

12    I mean, if that is what I needed to do, I didn't

13    see that because, again, once more, I think the

14    third time: where would the 27,000 have come from?

15    He gave it to me.  Why wouldn't he have -- I mean,

16    I -- I don't -- like I said, I don't see sharp

17    practice going on here and all kinds of

18    shenanigans and planning.

19         But -- so those are some comments that I

20    have.  I can go on with some other ones as well if

21    appropriate.

22         THE COURT:  No.  I think I'm going to cut

23    you off here.

24         MR. PETERS:  Okay.

25         THE COURT:  I thank you for that.

1          MR. PETERS:  Okay.

2          THE COURT:  So, Mr. Sheade, ball's back

3    in your court.  Do you want an evidentiary hearing

4    on this?  It's going to run up the trustee's fees.

5    It's going to, you know, I don't know if it's

6    going to lead to any more dollars in your client's

7    pocket or not.  But is that what you want?

8          MR. CONRARDY:  Well, this is Aaron

9    Conrardy.  May I have -- insert one short comment

10   before Mr. Sheade answers?

11         THE COURT:  Yes, you may.

12         MR. CONRARDY:  So since my final fee app

13   has already been approved and I've been paid, if

14   this PFR is approved today, I'm not going to ask

15   for any additional fees and all of the work that

16   I've done to, you know, confer with Mr. Sheade,

17   and prepare for this hearing.

18         But I do want Mr. Sheade to know that if

19   -- if we do go to a hearing, and the Court

20   approves this, I'm going to file a supplemental

21   fee app, which is going to decrease the amount of

22   the dividend his client -- and, Mr. Sheade, at

23   this point --

24         THE COURT:  And at this point, he's the

25   only -- he's the only creditor, right?

26

1           MR. CONRARDY:  That's right.  That's

2    right.

3           THE COURT:  Okay.

4           MR. CONRARDY:  And, you know, we've been

5    -- Mr. Peters and I have been doing this a long

6    time, and he's a good trustee.  And, you know,

7    when we see that there are assets that are worth

8    recovering, we get them.  And so I just -- I would

9    just encourage you, Mr. Sheade, to reconsider

10   because I'm not sure that this is a good use of

11   anybody's time to have a hearing.

12          MR. PETERS:  Your Honor, this is Steve

13   Peters.  May I be heard?

14          THE COURT:  No.  I'm -- I'm going to cut

15   it off, Mr. Peters.  Let's hear from Mr. Sheade.

16          MR. PETERS:  Okay.

17          THE COURT:  Are you there, Mr. Sheade?

18          MR. SHEADE:  I apologize, Your Honor.  I

19   -- I put my phone on mute for a second to allow

20   everybody else to speak so I didn't interrupt

21   anybody.  But you can hear me now, correct?

22          THE COURT:  Can.  Yes.  Go for it.

23          MR. SHEADE:  Okay.  Thank you.  Well, the

24   -- the creditors were still, you know, has concern

25   really just about the property, the 27,000.  But

Case 1:22-cv-00332-REB   Document 10-1   Filed 03/07/22   USDC Colorado   Page 31 of 34
Case:19-19816-EEB   Doc#:182-1   Filed:03/04/22   Entered:03/04/22 08:49:31   Page27 of
30

27

1    --

2              THE COURT:  Okay.  You don't need to

3    repeat your concerns.

4              MR. SHEADE:  Because the --

5              THE COURT:  We've heard them.  We tried

6    to answer them.

7              MR. SHEADE:  Sorry for interrupting.

8              THE COURT:  Go ahead.

9              MR. SHEADE:  Okay.  Thank you.  The --

10   the creditor is not going to ask for an

11   evidentiary hearing to further understand the --

12   the creditor understands the -- the financial

13   concern, you know, issues with the evidentiary

14   hearing and is not going to request one.  No, Your

15   Honor.

16             THE COURT:  Okay.  Very good.

17             All right.  Then I -- from what I have

18   heard, the proffer that's been made, I think that

19   the trustee has exercised his business judgment

20   well in choosing -- using true judgment as to what

21   to pursue and what not to pursue.

22             And so I'm going to go ahead and approve

23   this final report.  And -- and then the case will

24   close.  So -- and we'll allow the creditor to

25   pursue his appeal or its appeal.  And we'll see

1    where that goes.

2            But, if there's -- well, I was going to

3    think through with you about the -- if there's no

4    stay pending appeal, and the trustee makes his

5    distribution, the appeal could all become mooted.

6    Maybe not because it's only going to one creditor.

7    I don't know.  Anyways, forget that I even raised

8    that.

9            Okay.  So, if there's nothing further, I

10   will go ahead and recess.  Is there anything

11   further?

12           MR. PETERS:  Yes, Your Honor.  This is

13   Steve Peters.

14           THE COURT:  Oh.

15           MR. PETERS:  I'm -- I'm sort of reluctant

16   to say this.  But when the -- when the Court

17   approves the report, it's easy, and with all due

18   respect to the Court, it should be the amended one

19   at Docket 163.  And there should be a separate

20   order.  Yeah.  There should be an order, I think.

21           THE COURT:  Okay.

22           MR. PETERS:  Not the original one because

23   it was amended --

24           THE COURT:  Thank you.

25           MR. PETERS:  Docket 163.  All right.

Case 1:22-cv-00332-REB   Document 10-1   Filed 03/07/22   USDC Colorado   Page 33 of 34
Case:19-19816-EEB   Doc#:182-1   Filed:03/04/22   Entered:03/04/22 08:49:31   Page29 of 30

29

1    Thank you.  That's all.

2              THE COURT:  The one that shows the credit

3    union was paid off.  Okay.

4              MR. PETERS:  Correct.

5              THE COURT:  We'll -- we'll be sure to

6    check for that.  Thank you.

7              Anything else?  No?  Okay.

8              MR. SHEADE:  No.  Nothing from the

9    creditor.  Yeah.

10             THE COURT:  Okay.

11             Then thank you, all.  And we'll stand in

12   recess.

13             MR. CONRARDY:  Okay.  Thank you, Your

14   Honor.

15             MR. SHEADE:  Thank you, Your Honor.

16             THE CLERK:  This court is now in recess.

17             (Hearing concluded at 10:58 a.m.)

18

19

20

21

22

23

24

25

30

1                    CERTIFICATE OF TRANSCRIPTIONIST

2              I certify that the foregoing is a true

3    and accurate transcript of the digital recording

4    provided to me in this matter.

5              I do further certify that I am neither a

6    relative, nor employee, nor attorney of any of the

7    parties to this action, and that I am not

8    financially interested in the action.

9

10

11

12          _____

13          Julie Thompson, CET-1036

14

15

16

17

18

19

20

21

22

23

24

25