IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:22-cv-00332-CNS

IN RE: ALEXANDER JOHNSON,

    Debtor.

RITCHIE, DILLARD, DAVIES & JOHNSON, P.C.,

    Appellant,

v.

M. STEPHEN PETERS,

    Appellee.

___

ORDER
___

This is an appeal brought by appellant-creditor Ritchie, Dillard, Davies & Johnson, P.C. ("RDDJ") from the United States Bankruptcy Court for the District of Colorado (the "Bankruptcy Court"). RDDJ contends that the Bankruptcy Court erred in denying its motion to convert debtor-appellee Alexander Johnson's Chapter 7 bankruptcy case to one under Chapter 11, and in approving the distributions to creditors set forth in the bankruptcy trustee's amended final report (*See* ECF No. 15 at 4). Exercising jurisdiction under 28 U.S.C. § 158(a), the Court AFFIRMS the decisions of the Bankruptcy Court.[1]

---

[1] After examining the parties' briefs and appellate records from the Bankruptcy Court proceedings, the Court concludes that oral argument would not materially assist in the resolution of this appeal.

1

## I. BACKGROUND[2]

Mr. Alexander Johnson is the debtor in this bankruptcy case (*See, e.g.,* R. vol. 1 at 407, 460).[3] While in college, Mr. Johnson was charged for alleged criminal activity and retained RDDJ to provide legal services throughout his criminal proceedings (*Id.* at 462-63). These criminal charges prohibited Mr. Johnson from pursuing a career as a professional football player (*Id.* at 463). He was acquitted of his criminal charges in 2018 (*See id.*). RDDJ's representation of Mr. Johnson permitted him to continue pursuing a career as a professional football player (*Id.*).

In 2018, Mr. Johnson signed a one-year contract to play for the Denver Broncos, a professional football team (*See id.* at 407, 460). At the time the Bankruptcy Court issued its oral ruling on RDDJ's conversion motion on December 9, 2020, the Denver Broncos had not yet begun negotiating another one-year contract with Mr. Johnson for his continued employment as a Broncos team member (R. vol. 1 at 462). Mr. Johnson was twenty-nine years old and, based on his age, was not guaranteed to be picked up as a free agent if the Broncos failed to renew his contract (*Id.*).

Mr. Johnson filed for Chapter 7 bankruptcy in November 2019 (Case No. 19-19816-EEB, ECF No. 1). Mr. Johnson disclosed two creditors with unsecured claims: Eastman Credit Union and RDDJ (R. vol. 1 at 35). In May 2020, RDDJ moved to convert Mr. Johnson's Chapter 7 bankruptcy into one under Chapter 11 (Case No. 19-19816-EEB, ECF No. 74). The Bankruptcy

---

[2] This appeal's factual background is drawn from the Bankruptcy Court's December 9, 2020, oral ruling on RDDJ's conversion motion, facts in the appellate record referenced in the Bankruptcy Court's oral ruling, and information from the Bankruptcy Court's case docket (*See* R. vol. 1 at 460-464; *see also* Case No. 19-19816-EEB, United States Bankruptcy Court for the District of Colorado).

[3] On appeal, the parties submitted an appellate record and supplemental appellate record (ECF Nos. 9, 10). Citations to "R." are to the appellate record, and citations to the "Supp. R." are to the supplemental appellate record. Pinpoint page citations are to the ECF number provided at the top of the appellate and supplemental appellate records.

Court denied RDDJ's conversion motion in December 2020 (*See, e.g.*, R. vol. 1 at 463). RDDJ then appealed to the United States Bankruptcy Appellate Panel of the Tenth Circuit (*See, e.g.,* R. vol. 1 at 338). The Bankruptcy Appellate Panel dismissed the appeal because the Bankruptcy Court's ruling denying the conversion motion was interlocutory in nature (*Id.* at 343). Following the Bankruptcy Appellate Panel's decision, the Bankruptcy Court ultimately approved the bankruptcy trustee's amended final report regarding distributions to creditors (Case No. 19-19816-EEB, ECF No. 167).

RDDJ filed its Notice of Appeal to the United States District Court for the District of Colorado in February 2022, appealing the Bankruptcy Court's denial of its conversion motion and the Bankruptcy Court's approval of the bankruptcy trustee's amended final report (*Id.* at ECF No. 171). This appeal is fully briefed.

## II. STANDARD OF REVIEW

A party may appeal "final judgments, orders, and decrees" of a bankruptcy court to either the district court or a bankruptcy appellate panel. 28 U.S.C. §§ 158(a)(1), (c)(1). *See also In re Home Network Builders, Inc.*, No. CIV 06-3355 RBK, 2006 WL 3419791, at *2 (D.N.J. Nov. 22, 2006) ("This Court has appellate jurisdiction over a final order of the Bankruptcy Court pursuant to 28 U.S.C. § 158(a)(1)."). When a party appeals to the district court, a district court "reviews the bankruptcy court's legal conclusions de novo, its factual findings for clear error, and its discretionary decisions for abuse of discretion." *In re St. Charles*, No. 20-CV-03050-PAB, 2022 WL 168715, at *2 (D. Colo. Jan. 19, 2022) (collecting cases).

Because the denial of a conversion motion is a discretionary decision, a district court reviews the bankruptcy court's conversion decision for abuse of discretion. *See In re Schlehuber*,

489 B.R. 570, 573 (B.A.P. 8th Cir. 2013), *aff'd*, 558 F. App'x 715 (8th Cir. 2014); *see also In re Bartmann*, 310 B.R. 663 (B.A.P. 10th Cir. 2004). A bankruptcy court abuses its discretion if its decision is "arbitrary, capricious, whimsical, or manifestly unreasonable." *In re Waldo*, No. 21-4050, 2022 WL 1699072, at *2 (10th Cir. May 27, 2022) (quotation omitted).

### III. ANALYSIS

Having considered the parties' briefs, appellate records, the Bankruptcy Court's orders, the Bankruptcy Court proceedings, and relevant legal authority, the Court affirms the Bankruptcy Court's decisions.

### A. Jurisdiction

Before proceeding to the merits of this appeal, the Court must first examine whether it has appellate jurisdiction. Next, the Court considers Mr. Johnson's argument that RDDJ's conversion appeal is moot because final distributions have occurred (ECF No. 17 at 18). For the reasons set forth below, the Court may properly exercise jurisdiction over this appeal, and the appeal is not moot.

#### 1. *Appellate Jurisdiction & Finality*

This bankruptcy appeal poses a threshold jurisdictional issue: whether the Bankruptcy Court's denial of RDDJ's conversion motion is appealable. RDDJ contends that the Bankruptcy Court's denial of its conversion motion constitutes a final appealable judgment over which the Court may properly exercise jurisdiction (ECF No. 15 at 4). The Court agrees with RDDJ that it has jurisdiction to review the Bankruptcy Court's denial of its conversion motion.

Courts have an independent obligation to ensure that they have jurisdiction over bankruptcy appeals, even if perceived jurisdictional issues have not been raised by the parties. *See*

*In re McCormick*, 812 F.3d 659, 661 (8th Cir. 2016); *In re Sorrells*, 218 B.R. 580, 582 (B.A.P. 10th Cir. 1998) ("[W]e must independently assess whether we have jurisdiction to hear this appeal." (citation omitted)). Where a court lacks jurisdiction over a bankruptcy appeal, the appeal must be dismissed. *See, e.g., McCormick*, 812 F.3d at 661–62.

Courts have jurisdiction over a bankruptcy court's "final judgments, orders, and decrees." § 158(a)(1). Ordinarily, an order is not "final" unless it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Cunningham v. Hamilton Cnty*, 527 U.S. 198, 204 (1999). In the bankruptcy context, the finality requirement is relaxed, and a bankruptcy order may be considered "final" if it "conclusively determines [a] discrete dispute" within the bankruptcy proceeding. *United Phosphorus Ltd. v. Fox (In re Fox)*, 241 B.R. 224, 228 (B.A.P. 10th Cir. 1999); *see also Crossingham Trust v. Baines (In re Baines),* 528 F.3d 806, 809 (10th Cir. 2008). "Ultimately, the pivotal question concerning finality will center on what kind of dispute the order resolves." *In re Fox*, 241 B.R. at 229 (citation omitted).

Generally, a bankruptcy court's denial of a motion to convert a Chapter 7 bankruptcy case to one under Chapter 11 is not final. *See, e.g., In re Miller*, No. BR 9:13-10313-PC, 2015 WL 13604250, at *4 (C.D. Cal. Dec. 2, 2015) ("Generally, an order denying a motion to convert is not a final order . . . . an order denying a motion to convert from Chapter 7 to Chapter 11 is not a final order." (citations omitted)); *Gebhardt v. Hardigan*, 512 B.R. 385, 387–88 (S.D. Ga. 2014) ("Here, the effect of the . . . denial of [motions to convert] is the same: the case will continue to proceed under Chapter 7 . . . . it appropriate to treat the denial of [the motions] as *interlocutory* as well."

(citation omitted) (emphasis added)).[4] Here, the Bankruptcy Appellate Panel previously concluded that the Bankruptcy Court's denial of RDDJ's conversion motion was not final and dismissed RDDJ's appeal as interlocutory (R. vol. 1 at 339-41). In the words of the Bankruptcy Appellate Panel, the Bankruptcy Court's order "denying a motion to convert a chapter 7 to chapter 11 is *not* the equivalent of an order granting a motion to convert *from chapter 11 to chapter 7*," and for this reason the Appellate Panel concluded that "an order denying a motion to convert from chapter 7 to chapter 11 is not final" (R. vol. 1 at 340-41 (original emphasis)).

The Court agrees with the Bankruptcy Appellate Panel that, at the time RDDJ filed its earlier appeal, the Bankruptcy Court's denial of its conversion order was interlocutory in nature (R. vol. 1 at 341). *See also Gebhardt*, 512 B.R. at 387–88. However, the Bankruptcy Appellate Panel reached this conclusion before the Bankruptcy Court approved the bankruptcy trustee's amended final report and its distributions (Case No. 19-19816-EEB, ECF No. 167). The Bankruptcy Court's approval of the trustee's amended final report and its distributions amounts to a final judgment in the Bankruptcy Court proceedings. *See Bullard v. Blue Hills Bank*, 575 U.S.

---

[4] The Court notes that Chapter 7, Chapter 11, and Chapter 13 bankruptcies are meaningfully different. "In a Chapter 7 bankruptcy, the debtor keeps his post-petition income, but in Chapter 11, that income belongs to the estate." *S. River Cap., LLC v. Kane*, No. 21-CV-03493-WHO, 2022 WL 2905354, at *2 (N.D. Cal. July 22, 2022). And as a "general matter, under Chapter 7, the debtor's assets are liquidated and the proceeds distributed among the creditors [but under] Chapter 13 . . . the debtor's assets are not liquidated at all. Rather, the plan agreed to by the debtor and the court is paid over a period of years out of the debtor's disposable income." *In re Young*, 237 F.3d 1168, 1172 (10th Cir. 2001). Given these meaningful differences, courts have concluded that conversions from Chapter 11 or Chapter 13 *to Chapter 7* are final. *See id.* at 1173 ("[U]nder Chapter 7, once the debtor's assets have been liquidated, it is virtually impossible to reassemble them, and therefore an order converting to Chapter 7 is necessarily more final in nature than an order converting to Chapter 13." (citation omitted)); *In re Vista Foods U.S.A., Inc.*, 202 B.R. 499, 500 (B.A.P. 10th Cir. 1996) (concluding that order "converting the [d]ebtor's chapter 11 case to a case under chapter 7 of the Bankruptcy Code [was] final."); *In re Rosson*, 545 F.3d 764, 770 (9th Cir. 2008) ("[A] bankruptcy court order converting a case from one under another chapter of the Bankruptcy Code to one under Chapter 7 is a final and appealable order."). However, unlike these cases, here the Bankruptcy Court *denied* a motion to convert Mr. Johnson's bankruptcy proceedings from Chapter 7 *to* Chapter 11. *See In re Miller*, 2015 WL 13604250, at *4; *see also In re Fox*, 241 B.R. at 230 (concluding that denial of conversion motion was not final because it did "not conclude the bankruptcy case; instead, it permit[ted] the case as a whole to continue [and did] not determine creditor priorities [or] resolve any disputes regarding the [d]ebtor's assets").

496, 502–03 (2015); *see also In re Kristan*, No. BAP EP 08-041, 2008 WL 8664765, at *2 (B.A.P. 1st Cir. Dec. 15, 2008) ("Generally, a bankruptcy court's order approving a trustee's final report and proposed distribution of the bankruptcy estate's assets is a final, appealable order." (citation omitted)); *In re McLaren*, 562 B.R. 309, 319 (Bankr. E.D. Va. 2016) ("In the context of a chapter 7 case with assets to be administered, there is no order more central to payment of creditors than the order approving the trustee's final report . . . [s]ince the [approval] order resolved all of the issues relating to the [trustee's] Final Report, it is a final, appealable order." (citations omitted)).

Because the Bankruptcy Court's approval of the trustee's amended final report constitutes a final judgment—and RDDJ listed this order in its Notice of Appeal—the Court has appellate jurisdiction to review the Bankruptcy Court's interlocutory denial of RDDJ's conversion motion (R. vol. 1 at 504). *See In re Lewis*, 247 F. App'x 998, 1002 (10th Cir. 2007) ("[A] notice of appeal which names the final judgment is sufficient to support review of all earlier orders that merge in the final judgment." (quotations omitted)). And the fact that RDDJ "tried unsuccessfully to obtain an interlocutory appeal" of the conversion order "does not bar [it] from appealing the same order after entry of a final decision." *In re Rambo*, 209 B.R. 527, 529 (B.A.P. 10th Cir.), *aff'd*, 132 F.3d 43 (10th Cir. 1997); *see also id.* ("The general rule is that interlocutory orders merge into the final judgment of the case, and an appeal can be had from these interlocutory orders by timely filing a notice of appeal from the entry of that final judgment." (citation omitted)); *Miller v. Deutsche Bank Nat. Tr. Co.*, No. 12-CV-03279-PAB, 2013 WL 4776054, at *4 (D. Colo. Sept. 4, 2013), *aff'd sub nom. In re Miller*, 577 F. App'x 849 (10th Cir. 2014) (concluding that three interlocutory orders in bankruptcy appeal "were merged into the final order" reviewable on the merits).

 2. *Mootness*

7

Mr. Johnson argues that RDDJ's appeal is moot on constitutional and equitable grounds because the bankruptcy trustee has made final distributions of funds from the estate to its creditors (*See* ECF No. 17 at 18-20). RDDJ contends that its appeal is not moot because the trustee only distributed funds to RDDJ, and this appeal concerns "money changing hands between only the bankruptcy estate" and RDDJ, the estate's sole creditor (ECF No. 22 at 8). The Court agrees with RDDJ that this appeal is not moot.

As RDDJ argues, the appellate record demonstrates that RDDJ would be the sole creditor affected by any relief this Court could fashion (ECF No. 22 at 8). In his final report, the bankruptcy trustee proposed a $1,737.14 payment to one of Mr. Johnson's other unsecured creditors, Eastman Credit Union (R. vol. 1 at 482). At the time the trustee filed the amended final report, no money from Mr. Johnson's estate had been paid to Eastman Credit Union, the amended final report listed "$0.00" for the amount allowed for Eastman Credit Union, Eastman Credit Union had a "$0.00" claim balance, and the trustee's "proposed payment" to Eastman Credit Union was "$0.00" (R. vol. 1 at 496 (capitalization omitted)). In contrast, the amended final report stated that RDDJ had a $902,908.82 claim balance, that RDDJ's "amount allowed" was $902,908.82, and listed $95,095.99 as RDDJ's "proposed payment" (R. vol. 1 at 497 (capitalization omitted); *see also id.* at 499). The bankruptcy trustee's "Final Account and Distribution Report" certifying that Mr. Johnson's estate had been fully administered also shows that Eastman Credit Union was not paid any money, whereas RDDJ's "allowed" claim was $902,908.82 and the claim "paid" to RDDJ was $95,095.99 (Case No. 19-19816-EEB, ECF No. 176 at 5).[5]

---

[5] While the trustee's Final Account was not included in the appellate record, the Court may consider filings in the Bankruptcy Court's docket. *See, e.g., St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) "[F]ederal courts, in appropriate circumstances, may take notice of proceedings in other courts, both

According to Mr. Johnson, this appeal is moot on constitutional and equitable grounds because the trustee has already distributed the bankruptcy estate's funds (ECF No. 17 at 18-19). However, courts have rejected the argument that a bankruptcy appeal is constitutionally moot in cases where, as here, funds from a bankruptcy estate have only been distributed to the case's parties. *See Pookrum v. Bank of Am., N.A.*, 512 B.R. 781, 786 (D. Md. 2014) ("When funds have been distributed only to parties, the issue is not constitutionally moot." (citation omitted)). Courts have further concluded that bankruptcy appeals are not equitably moot when an appellate court could "fashion relief" by ordering a party to return money to a bankruptcy estate. *See, e.g., In re Spirtos*, 992 F.2d 1004, 1006–07 (9th Cir. 1993).[6] The Court finds the reasoning of these cases persuasive. Fundamentally, a bankruptcy appeal is not moot when an appellate court may order one party in a bankruptcy proceeding to return a monetary distribution to a bankruptcy estate or another party. This is precisely the type of relief the Court could fashion in this case. For these reasons, RDDJ's appeal is not constitutionally or equitably moot.

**B. Conversion & Merits**

Having determined that it may exercise appellate jurisdiction over RDDJ's bankruptcy appeal and that the appeal is not moot, the Court proceeds to its merits analysis of RDDJ's appeal.

*1. Plain Language & 11 U.S.C. § 706(b)'s Application*

---

within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." (citations omitted)).

[6] Mr. Johnson cites *In re Carr*, 321 B.R. 702, 706 (E.D. Va. 2005), in support of his argument that RDDJ's appeal is moot (ECF No. 17 at 18). *Carr* provides no support for Mr. Johnson's argument. Central to *Carr*'s conclusion that its appeal was moot was the fact that "the primary transferee [of funds], Carr's ex-wife, [was] not a party to th[e] appeal." *Carr*, 321 B.R. at 707. Unlike *Carr*, here RDDJ is a party to this bankruptcy appeal, and for this reason deciding RDDJ's appeal on the merits would not be a "mere intellectual exercise . . . unable to nullify . . . the distribution of funds to a non-party." *Id.* at 707–08.

RDDJ argues that the Bankruptcy Court erred in denying its conversion motion because the Bankruptcy Court's order is "inconsistent with the plain language" of 11 U.S.C. § 706(b) (ECF No. 15 at 11 (capitalization omitted)). Mr. Johnson contends that the Bankruptcy Court did not err in denying the RDDJ's conversion motion because it correctly interpreted § 706(b)'s plain language and applied the statute in ruling on RDDJ's conversion motion (*See* ECF No. 17 at 10). The Court agrees with Mr. Johnson.

First, the Bankruptcy Court correctly interpreted § 706(b)'s plain language. The Bankruptcy Court determined that § 706(b) "gives the [Bankruptcy] Court permission, but does not make it mandatory, to convert a case from a Chapter 7 to a reorganization chapter" (R. vol. 1 at 460). Under § 706(b), "[o]n request of a party in interest and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 11 of this title at any time." As Mr. Johnson contends, § 706(b) on its face is unambiguously permissive—under the statute, upon the request of a party in interest and after notice and a hearing, "the [bankruptcy] court *may* convert" a Chapter 7 case to one under Chapter 11 (ECF No. 17 at 10-11). *See also* § 706(b) (emphasis added); *In re Home Network Builders*, 2006 WL 3419791, at *3 ("The plain language of § 706(b) specifically states that the Bankruptcy Court 'may' convert a Chapter 7 case to a Chapter 11 case, as opposed to 'shall,' indicating that conversion is in the bankruptcy court's discretion."); *Matter of Texas Extrusion Corp.*, 844 F.2d 1142, 1161 (5th Cir. 1988) ("[D]ecisions to convert [under § 706(b)] are within the discretionary powers of the bankruptcy court based on the court's determination of what will most inure to the benefit of all parties in interest."). "The statute says 'may.' And 'may' does not just suggest discretion, it *clearly* connotes it." *Biden v. Texas*, 142 S. Ct. 2528, 2541 (2022) (quotation omitted). For this reason, the premise of RDDJ's argument that

§ 706(b) did not afford the Bankruptcy Court discretion in ruling on the conversion motion is fundamentally flawed (*See* ECF No. 15 at 11-13).

Second, and contrary to RDDJ's argument, the Bankruptcy Court did not err when—in the discretion afforded under § 706(b)—it considered the benefits to the debtor, Mr. Johnson, as a factor in ruling on RDDJ's conversion motion (ECF No. 15 at 12-13; R. vol. 1 at 460). Certainly, 11 U.S.C. § 706(b) does not on its face "provide guidance on what (or what not) to consider" in ruling on a conversion motion. *Decker v. Off. of the United States Tr.*, 548 B.R. 813, 817 (D. Alaska 2015). Nonetheless, a bankruptcy court clearly "has broad discretion to make conversion decisions under § 706(b)." *In re Kearney*, 625 B.R. 83, 99 (B.A.P. 10th Cir. 2021) (citations omitted). In making its discretionary conversion determination under § 706(b), a bankruptcy court considers the following factors:

1. The debtor's ability to repay the debt;
2. Whether there are immediate grounds for reconversion;
3. Likelihood of a Chapter 11 plan's confirmation; and
4. Whether the parties in interest would benefit from conversion.

*See, e.g., In re First Connecticut Consulting Grp., Inc.*, 579 B.R. 673, 683 (Bankr. D. Conn. 2018) (quotations omitted); *In re Hardigan*, 517 B.R. 374, 379 (S.D. Ga. 2014) (same). These factors are intended to assist a bankruptcy court's determination of "what will most benefit all parties in interest," including debtors. *In re Kearney*, 625 B.R. at 99–100 (quotation omitted); *see also Matter of Texas Extrusion*, 844 F.2d at 1161 ("[D]ecisions to convert are within the discretionary powers of the bankruptcy court based on the court's determination of what will most inure to *the benefit of all parties in interest*." (citation omitted) (emphasis added)); *In re Home Network*

*Builders, Inc.*, No. CIV 06-3355 RBK, 2006 WL 3419791, at *3 (D.N.J. Nov. 22, 2006) (stating bankruptcy courts consider what will "most inure to the benefit of all parties in interest, including both *creditors and debtors*," in making § 706(b) conversion determination (citation omitted) (emphasis added)).[7]

In this case, the Bankruptcy Court considered Mr. Johnson's interests in denying RDDJ's conversion motion—and how, if at all, he would benefit from conversion (*See* R. vol. 1 at 463). The Bankruptcy Court concluded that conversion did not serve Mr. Johnson's interests or benefit him (*Id.* at 463). In doing so, the Bankruptcy Court discussed Mr. Johnson's testimony that the Denver Broncos had not begun negotiating another contract with him, the effect any injury would have on his future income, and the lower likelihood that he would be "picked up as a free agent," given his age (*Id.* at 462). Mr. Johnson's interest in conversion and whether he would benefit from it is one of the non-exhaustive factors the Bankruptcy Court was allowed to consider in ruling on RDDJ's conversion motion. *See In re Home Network Builders, Inc.*, 2006 WL 3419791, at *3 (D.N.J. Nov. 22, 2006).[8] Accordingly, the Court disagrees with RDDJ that the Bankruptcy Court erred in considering Mr. Johnson's interests when ruling on RDDJ's conversion motion, or that § 706(b) precludes bankruptcy courts from considering debtors' interests when making conversion

---

[7] RDDJ contends that the Bankruptcy Court rendered § 706(b) "superfluous" when it suggested an argument RDDJ made before the Bankruptcy Court "mirror[ed]" 11 U.S.C. § 707 (ECF Nos. 15 at 15, 22 at 4; *see also* R. vol. 1 at 461). The Bankruptcy Court's passing suggestion that an argument "mirror[s]" a different statutory provision in the Bankruptcy Code does not render any language in § 706(b) superfluous (R. vol. 1 at 461).

[8] As Mr. Johnson observes, the Bankruptcy Court also considered other factors in ruling on RDDJ's conversion motion, including Mr. Johnson's ability to have his debts fully repaid, that an involuntary conversion from Chapter 7 to Chapter 11 was unlikely to be successful, that potential recoveries could be pursued in either Chapter 7 or Chapter 11, as well as that Mr. Johnson had been cooperative throughout his Chapter 7 proceedings (*See* R. vol. 1 at 461-463).

determinations (*See* ECF No. 15 at 12; R. vol. 1 at 460-63).[9] At bottom, the Bankruptcy Court correctly interpreted and applied § 706(b), and did not abuse its discretion in considering Mr. Johnson's interests in denying RDDJ's conversion motion.[10]

### 2. *Legislative History*

RDDJ argues that the Bankruptcy Court did not consider "the entirety of applicable legislative intent" when "balancing the interest of all parties" and denying RDDJ's conversion motion (ECF No. 15 at 13 (capitalization omitted)). Mr. Johnson contends that the Bankruptcy Court "correctly applied" the relevant legislative history in considering the interests of all parties in denying the RDDJ's conversion motion (ECF No. 17 at 13 (capitalization omitted)). The Court agrees with Mr. Johnson.

As a preliminary matter, RDDJ does not dispute that § 706(b)'s legislative history provides that bankruptcy courts should consider "what will most inure to the benefit of all parties in interest" (ECF No. 15 at 13 (citing H.R. Rep. No. 95-595, 95th Cong., 1st Sess. At 380 (1977)). *See also* S. Rep. No. 95-989, at 94 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5787; *In re Kearney*, 625 B.R. at 99. Instead, RDDJ argues this legislative history is "ambiguous" and does not discuss the weight that must be given to debtors against creditors or other interested parties when ruling on § 706(b)

---

[9] RDDJ appears to elsewhere to argue that it is inappropriate to weigh parties' interests in determining whether conversion from Chapter 7 to Chapter 11 is warranted because debtors "[are] deemed to know that, at some later time, [a Chapter 7] case *could* be converted to Chapter 11" (ECF No. 14 at 14-15 (emphasis added)). Ironically, that's entirely the point of § 706(b): bankruptcy courts may in their discretion convert Chapter 7 cases to Chapter 11 cases after a debtor files for bankruptcy under Chapter 7.

[10] In its Reply brief, RDDJ appears to argue that the Bankruptcy Court erred in determining these factual findings warranted denying conversion (*See* ECF No. 22 at 5-6). The Court is not persuaded by RDDJ's contention that the Bankruptcy Court's conversion determination was based on clearly erroneous factual findings. *See In re Schlehuber*, 489 B.R. at 573 (stating that a bankruptcy court abuses its discretion when its factual findings are "clearly erroneous" (quotation omitted)). The Bankruptcy Court's findings are supported by the factual record, and the Court, "after reviewing all the evidence," has no "definite and firm conviction that a mistake has been made." *In re Kleinhans*, 438 B.R. 355 (10th Cir. BAP 2010) (quotation omitted).

13

conversion motions (ECF No. 15 at 13). In light of these ambiguities, RDDJ contends that the Bankruptcy Court should have "balanced" § 706(b)'s legislative history with the congressional intent of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") (*Id.* at 14).

RDDJ fails to persuade that the Bankruptcy Court erred in failing to consider BAPCPA's congressional intent. Courts interpreting § 706(b) have consistently turned to *its* legislative history—not the legislative history of or congressional intent behind BAPCPA. *See, e.g., In re Kearney*, 625 B.R. at 99 n.110 (citing H.R. Rep. No. 95-595, at 380 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 5963; S. Rep. No. 95-989, at 94 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5787); *In re Home Network Builders, Inc.*, 2006 WL 3419791, at *3 (D.N.J. Nov. 22, 2006) ("[T]he legislative history of § 706(b) . . . offers that the decision whether to convert is left in the sound discretion of the court, based on what will most inure to the benefit of all parties in interest." (citing H.R. Rep. No. 595, 95th Cong., 1st Sess. at 380 (1977); S. Rep. No. 95-989, 95th Cong., 2d Sess. at 94 (1978)). The Court agrees that § 706(b)'s own legislative history provides an obvious basis for interpreting and applying the statute. *See In re First Connecticut Consulting Grp., Inc.*, 579 B.R. 673, 682–83 (Bankr. D. Conn. 2018) ("The legislative history of Section 706(b) reaffirms the [statutory] text's explicit grant of discretion." (citations omitted)). RDDJ identifies nothing specific in the text or legislative history of the BAPCPA that upsets the discretion § 706(b) affords in determining whether conversion is appropriate.[11]

### IV. CONCLUSION

---

[11] In support of its argument, RDDJ unavailingly cites 11 U.S.C. § 1115 and 11 U.S.C. § 1129(a)(15) without explaining which provisions of these statutes, if any, abridge the discretion § 706(b) provides for making conversion determinations (ECF No. 15 at 14; *see also* ECF No. 22 at 3-4).

Consistent with the above analysis, the decisions of the Bankruptcy Court are AFFIRMED.

DATED this 2nd day of February 2023.

BY THE COURT:

_____
Charlotte N. Sweeney
United States District Judge